# EXHIBIT B

**Key**: Green represents Plaintiffs' filing; Purple represents Defendants' filing

| Motion Dkt. No. | Date Filed | Opp. Dkt. No. | Topic in Dispute | Party Raising Dispute | Party Responding | Status of Dispute | Parties' Shorthand Positions |
|---|---|---|---|---|---|---|---|
| **I.** | **Disputes Related to Depositions** | | | | | | |
| Dkt. 500 | March 31, 2025 | 506 | OpenAI's designation of Greg Brockman as an "apex" witness and limitations on deposition time | News Plaintiffs | OpenAI | The dispute is fully briefed and the Court has not yet heard argument. | **Plaintiffs' Position:** News Plaintiffs seek an order confirming that OpenAI President Greg Brockman is not subject to the "apex" doctrine and therefore must sit for a standard coordinated deposition in these cases.<br><br>Documents produced by OpenAI prove that Mr. Brockman is "a far cry from the prototypical apex witness, who sits removed from the key facts of the dispute." *Oakley v. MSG Networks, Inc.*, 2024 WL 4134903, at *3 (S.D.N.Y. Sept. 10, 2024). For example, Mr. Brockman personally led OpenAI's efforts to obtain NYT content and to study how OpenAI's products compete with news companies. Dkt. 500-6; Dkt. 500-12. At deposition, another OpenAI employee confirmed Mr. Brockman's active involvement in relevant issues. Dkt. 500-5 (testimony from OpenAI employee Shantanu Jain).<br><br>This dispute is ripe because all plaintiffs have requested Mr. Brockman's deposition and because OpenAI has taken the position that Mr. Brockman should sit for less time than other OpenAI witnesses under the "apex" doctrine. Plaintiffs hope to move forward with his deposition promptly once the parties finalize their deposition protocol, and therefore respectfully seek the Court's guidance on this dispute so the parties can be ready to proceed with his deposition once the protocol is finalized.<br><br>**OpenAI's Position:** This issue is premature for resolution and should be addressed in the parties' renewed discussions on a deposition protocol. There is no legitimate reason why Plaintiffs need Greg Brockman, co-founder and current President of OpenAI, to sit for twelve hours of deposition over two days. Mr. Brockman is an apex witness whose deposition is "disfavored" and given "special scrutiny" in this circuit. This is especially true where, as here, Plaintiffs seek information that is readily available through other means. For example, many of the issues Plaintiffs cite can be explored with other OpenAI fact witnesses or 30(b)(6) designees—Mr. Brockman has not been designated—including |

| Motion Dkt. No. | Date Filed | Opp. Dkt. No. | Topic in Dispute | Party Raising Dispute | Party Responding | Status of Dispute | Parties' Shorthand Positions |
|---|---|---|---|---|---|---|---|
| | | | | | | | OpenAI's relationship with Microsoft and whether OpenAI's products compete with products from news companies like The Times.<br><br>OpenAI looks forward to continuing to meet and confer with Plaintiffs to reach agreement on a deposition protocol. Plaintiffs misstate the confidential discussions among the parties in connection with prior settlement conferences facilitated by this Court. No agreement on deposition coordination was reached, and OpenAI never agreed to present Mr. Brockman or any apex witness for 12 hours. |
| **II.** | **Disputes Related to Custodial Documents** | | | | | | |
| [497](#) - Public<br><br>[499](#) - Sealed | 3/31/25 | [509](#) | OpenAI's request that The Times add three ESI custodians | OpenAI | New York Times | OpenAI had previously submitted letter briefs regarding The Times's ESI custodians in November 2024 and January 2025. ECF 316, 330 (briefing for December discovery conference); ECF 393, 408 (briefing for January discovery conference). The Court denied as premature both motions (ECF 365, 441). | **OpenAI's position**: OpenAI seeks an order compelling the Times to add David Rubin, Michael Greenspon, and Sam Dolnick as custodians (renewing its previous motions, Dkt. 316, 393). At two prior discovery conferences, the Times has represented to OpenAI and the Court that its forthcoming productions from other custodians would render productions from Messrs. Rubin, Greenspon, and Dolnick duplicative.<br><br>These assurances have proven false. A review of the Times's productions to date shows that the overlap between its existing custodians and the three proposed by OpenAI is small. The Times has represented that its production is near complete. However, the 39,329 documents produced so far for the existing custodians that the Times claims cover the same ground has captured only 945 emails that involve the proposed custodians in any way—less than 2.5% of their production. It is clear from that figure alone that the proposed custodians possess nonduplicative documents. The Times argues that the "limited" number of documents produced from the proposed custodians indicates their documents are nonresponsive. But tellingly, The Times has refused to even provide search term hit counts for these custodians in support of that point. And it would not be burdensome for the Times to provide those counts because it has testified that it uses Google Vault to manage its custodial documents, which makes it easy to run hit counts. Moreover, the Times's productions show that each of these three individuals possesses uniquely relevant documents that have not been produced. For example, Rubin worked on presentations to upper management that brand risk stemming from GenAI. *See* Dkt. 499 at 2 (citing NYT_00706693). No current custodian |

3

| Motion Dkt. No. | Date Filed | Opp. Dkt. No. | Topic in Dispute | Party Raising Dispute | Party Responding | Status of Dispute | Parties' Shorthand Positions |
|---|---|---|---|---|---|---|---|
| | | | | | | | properly captures the relevant scope of traditional licensing work performed by Greenspon. The Times reads Dkt. 352 much too broadly; it does not relieve them of their burden of producing documents regarding their allegations of market harm in traditional licensing markets. *See id.* at 2. And Dolnick oversaw GenerativeAI across the company across a period of time that neither replacement custodians Hardiman or Seward adequately cover. *Id.* at 3.<br><br>**The Times's position:** The three custodians OpenAI requests—on top of the 22 custodians already designated in this case—are no more appropriate now than they were in January. OpenAI repeatedly points to the limited number of documents from these specific individuals in The Times's existing productions as somehow proving that they have "uniquely relevant documents," rather than accepting the far more plausible explanation that these individuals do not appear on more of the documents from The Times's 22 custodians because they are not the individuals most likely to be part of responsive exchanges.<br><br>More specifically, David Rubin's high-level role in overseeing brand strategy, subscriptions, advertising, licensing, books, film, television, commerce, and live events is too far attenuated to yield relevant discovery on the specific brand and reputation issues in this case. And OpenAI's claim that the fact that a presentation on which Mr. Rubin comments has not yet been produced shows "it was in neither Frumin nor Han's files" is incorrect. Dkt. 499 at 2. The cited presentation was undergoing privilege review, and has now been produced. With respect to Michael Greenspon, The Times has already designated four custodians with knowledge about licensing negotiations and the licensing market. It has also agreed to produce documents sufficient to show the key terms of relevant licenses (Gen AI and non-AI) from January 1, 2018, to the present. And, the Court has ruled the remainder of OpenAI's request to be irrelevant. *See* Dkt. 352. Finally, with respect to Sam Dolnick, The Times has already designated five custodians specifically related to Gen AI: Zach Seward (the head of the AI Initiatives program), Sam Felix and Rebecca Grossman Cohen (the leads for Gen AI licensing), Alex Hardiman (the lead for AI products), and Barrett Sheridan (the Vice President for Strategy and Operations). OpenAI has not demonstrated why these custodians are insufficient. |

4

| Motion Dkt. No. | Date Filed | Opp. Dkt. No. | Topic in Dispute | Party Raising Dispute | Party Responding | Status of Dispute | Parties' Shorthand Positions |
|---|---|---|---|---|---|---|---|
| [494](#) – Public<br><br>[495](#) - Sealed | 3/31/25 | [510](#) | Date range for Google Workspaces and Slack for six Times custodians | OpenAI | New York Times | OpenAI raised the issue of The Times's narrow custodial date ranges in connection with the October 30, 2024 and January 22, 2025 discovery conferences. The Court ordered the parties to further meet-and-confer. OpenAI diligently pursued meet-and-confer, but The Times has not changed its position. OpenAI and The Times have now filed additional letter briefs on which the Court has not yet heard argument. | **OpenAI's position:** OpenAI seeks an order compelling The Times to expand the date range for its Google Workspace and Slack collection for six key Times custodians back to 2018, when The Times alleges the first acts of infringement occurred. These six custodians are likely to have pre-2022 documents relevant to at least two important issues. First, the custodians are likely to have relevant information regarding when The Times became aware that OpenAI had used a filtered version of Common Crawl (which included Times articles) to train its GPT-3 model, which OpenAI disclosed no later than July 22, 2020. This information is critical to OpenAI's statute of limitations defense, which Judge Stein recently ruled was subject to disputed questions of fact. Second, the custodians are likely to have relevant information regarding the alleged impact of LLMs on The Times's business model. The Times cannot claim that documents about this topic do not exist in this time period if it has not collected or performed a full search for them, and its own reporting shows that The Times was evaluating GPT-3's writing capabilities and the potential implications for The Times's journalists by at least July 2020. The Times has failed to substantiate its claims that this limited additional collection would be unduly burdensome. Indeed, those claims run headlong into the testimony of its custodial 30(b)(6) designee, who testified in deposition that The Times uses an industry standard collection tool—Google Vault—to collect these materials from Google Workspaces (email and Google Drive) used by Times employees. Contrary to The Times' assertions, Vault can be used to perform more complex, boolean searches. See https://support.google.com/vault/answer/2474474. Although The Times has alluded to running a search "across the relevant data" for such documents, it has refused to specify the parameters of that search. The parties have already negotiated search terms; the Times does not explain why it does not simply run those preexisting terms against the identified custodians' data for the proposed date range.<br><br>**The Times's position:** OpenAI's request disregards the parties' agreed upon search protocol. In July 2024, the parties negotiated date ranges for collection and The Times represented that it would collect documents from its custodians beginning from January 1, 2022 (ChatGPT was publicly released in November 2022). Defendants did not object to this proposal. Subsequently, months later, OpenAI demanded that The Times go back and re-collect documents from five custodians for an expanded date range, and The Times did so. OpenAI's yet further demand that The Times once again conduct a collection of an additional four years for six |

| Motion Dkt. No. | Date Filed | Opp. Dkt. No. | Topic in Dispute | Party Raising Dispute | Party Responding | Status of Dispute | Parties' Shorthand Positions |
|---|---|---|---|---|---|---|---|
| | | | | | | | of its most senior custodians' documents and Slack messages is unjustified.<br><br>In any event, OpenAI's request to extend collection four years prior to the public release of ChatGPT makes no sense. Specifically, with respect to evidence of impact on The Times, **OpenAI** has documents relevant to its misconduct from well before 2022, when it used millions of The Times's works to develop its products. However, because much of this unlawful activity came before the public release of OpenAI's GPT product in 2022, The Times is unlikely to have custodial documents relevant to impact from this earlier period. Indeed, in an effort to resolve this issue, The Times ran a broad search across the relevant data back to 2018 for Google Mail messages relating to ChatGPT and OpenAI. None of the documents were responsive, including for OpenAI's statute of limitations defense or to the impact of its LLM products on The Times. Specifically, none of the documents discussed "when The Times became aware that OpenAI had used" Times articles "to train its GPT-3 model" or the impact of ChatGPT on The Times's business model. Accordingly, the Court should deny OpenAI's request. |
| 250 - Sealed<br><br>251 - Public | 4/1/25 | 253 (filed 4/3/25) | Additional CIR ESI Custodians | OpenAI | CIR | OpenAI and CIR have submitted letter briefs, on which the Court has not yet heard argument. | **OpenAI's position:** OpenAI seeks an order compelling CIR to add as custodians Robert Wise, Marla Jones-Newman, Emily Harris, Ruth Murai, and CIR editors possessing documents relating to use of third-party works. CIR's three current custodians are insufficient to cover the over 80 RFPs for which it has agreed to produce responsive documents. In fact, CIR's CEO (and 30(b)(6) custodial deposition witness) admitted during her deposition that these proposed custodians possess "relevant and noncumulative" documents that are not otherwise in the possession of CIR's current custodians. *Coventry Cap. US LLC v. EEA Life Settlements, Inc.*, No. 17-cv-7417, 2021 WL 961750, at *2 (S.D.N.Y. Mar. 15, 2021); *see* Dkt. 250 at 2–3. These "relevant and noncumulative" documents relate to CIR's use of copyright management information, exclusion protocols, employment agreements, use of generative AI and third-party works, and financial analyses—all of which are central to the claims and defenses in this litigation. Id.<br><br>CIR cannot justify its unwillingness to add the proposed custodians. It has not articulated any specific burden it would allegedly suffer from the inclusion of additional custodians, and the size of its organization, alone, is not a sufficient basis for refusing to include custodians possessing |

| Motion Dkt. No. | Date Filed | Opp. Dkt. No. | Topic in Dispute | Party Raising Dispute | Party Responding | Status of Dispute | Parties' Shorthand Positions |
|---|---|---|---|---|---|---|---|
| | | | | | | | "relevant and noncumulative evidence." *Coventry Cap.*, 2021 WL 961750, at *2. Likewise, the fact that CIR has named certain purported "decision-makers" as custodians does not excuse it from adding individuals for which CIR's CEO testified have responsive, noncumulative documents. Lastly, CIR's demand that OpenAI first review its still ongoing productions before seeking additional custodians amounts to nothing more than a delay tactic that CIR has employed throughout this litigation, including by only recently providing the bulk of its document production (with a third of its total document production provided in the last two weeks) and repeatedly failing to comply with the ESI order in responding to OpenAI's search term and custodian proposals. *See* Dkt. 251-1 at 1–2, 6; Dkt. 250-1 at 14. OpenAI has already been prejudiced by CIR's delays and cannot afford to wait any longer.<br><br>**CIR's Position**: The 5 individuals that OpenAI moves for CIR to add as document custodians are not necessary, useful, or appropriate in this case. Indeed, CIR has already agreed to *manually* collect the majority of the discovery OpenAI seeks from these additional individuals (e.g., CIR's use of copyright management information, exclusion protocols, employment agreements, and use of generative AI and third-party works). To the extent CIR's manual collection does not sufficiently capture documents responsive to OpenAI's discovery requests, such additional materials are in the possession of CIR's existing custodians – its CEO, CFO, and VP of Media Sales/Business Development. CIR's 30(b)(6) custodial witness testified that these custodians are the key decisionmakers at CIR regarding any issues relevant to this litigation and are involved in all policy decisions that could have an impact on the strength of CIR's claims or OpenAI's defenses. OpenAI's allegations to the contrary do not support compelling additional custodians. It would be unduly burdensome, not proportional to the needs of the case, and (at best) duplicative to add the custodians identified in OpenAI's motion. |
| | **III.** | **Disputes Related to Plaintiffs' Requests for Inspection** | | | | | |
| 379<br><br>483<br><br>545 | 1/13/25<br><br>3/25/25<br><br>5/12/25 | 420<br><br>491 | OpenAI's Log Output Data | News Plaintiffs | OpenAI | The Court heard argument at the January 22, 2025 conference, | **Plaintiffs' Position:** OpenAI sent a letter to Plaintiffs on March 31, 2025: (1) admitting that OpenAI has destroyed an unacceptably large number of conversations (i.e., prompt and output data) for its ChatGPT Free, Pro, and Plus products since the December 27, 2023, filing of The Times's original complaint, and (2) refusing to suspend its data destruction policies or implement a solution to preserve only relevant output log data. On April |

7

| Motion Dkt. No. | Date Filed | Opp. Dkt. No. | Topic in Dispute | Party Raising Dispute | Party Responding | Status of Dispute | Parties' Shorthand Positions |
|---|---|---|---|---|---|---|---|
| 560 | 5/16/25 | | | | | denied Plaintiffs' premotion Letter (Dkt. 379), and ordered the Parties to meet and confer. Dkt. 441. Plaintiffs filed a separate premotion letter on March 25, 2025 (Dkt. 483), to which OpenAI responded at Dkt. 491. Plaintiffs filed a supplemental letter on May 12, 2025 (Dkt. 545) and on May 13, 2025 the Court ordered supplemental briefing from the parties. Dkt. 550. On May 13, 2025, the Court also ordered OpenAI to preserve and segregate all output log data that would | 11, 2025, OpenAI produced 3 terabytes of information about the output log data it has preserved for ChatGPT Free, Pro, and Plus. After comparing the fraction of destroyed output log data to retained output log data, News Plaintiffs filed a supplemental letter regarding OpenAI's destruction of output log data on May 7, 2025, renewing their request for an order directing OpenAI to preserve all output log data on a going forward basis. OpenAI further appears to have deleted <u>all but the past 30 days' worth</u> of output log data for its API Platform and ChatGPT Enterprise products. *See* Enterprise privacy at OpenAI, OPENAI (Oct. 31, 2024), https://openai.com/enterprise-privacy ("[a]fter 30 days, API inputs and outputs are removed from our systems").<br><br>News Plaintiffs are not seeking personally identifying information and are committed to working with OpenAI and the Court to preserve the privacy of OpenAI's end users. But OpenAI cannot represent that regurgitations and output based intellectual property violations are exceedingly rare, while at the same time depriving News Plaintiffs of the ability to investigate "real world" instances of ChatGPT users circumventing paywalls or generating AI pink slime journalism—users who are far more likely to instruct OpenAI to destroy their conversation data to cover their tracks. On May 13, 2025, this Court issued an interim preservation order directing OpenAI to preserve and segregate all output log data that would otherwise be deleted on a going forward basis until further order of the Court. News Plaintiffs submitted supplemental briefing on May 16 asking this Court to: (a) keep in place its interim preservation order; (b) order OpenAI to promptly provide a declaration and relevant documents, and make available for deposition one or more knowledgeable 30(b)(6) witnesses, on the following topics: (1) the full scope of destroyed output log data for all of its products at issue; (2) any efforts by OpenAI to ascertain whether News Plaintiffs' intellectual property was present in, or was the subject of a request by a user, in the destroyed output data; (3) any alternative sources of relevant information OpenAI has regarding the destroyed output log data; (4) whether the destroyed output log data containing News Plaintiffs' content can be retrieved; and (5) an explanation for certain data contained in OpenAI's March 31 letter, and (c) order OpenAI to perform a search over the full extant output log data for News Plaintiffs' content. |

| Motion Dkt. No. | Date Filed | Opp. Dkt. No. | Topic in Dispute | Party Raising Dispute | Party Responding | Status of Dispute | Parties' Shorthand Positions |
|---|---|---|---|---|---|---|---|
| | | | | | | otherwise be deleted. Dkt. 551. OpenAI filed a motion requesting reconsideration of the order directing it to preserve output logs (Dkt. 558) and this Court denied the motion without prejudice to renewal (Dkt. 559). Plaintiffs filed supplemental briefing on May 16, 2025 (Dkt. 560), and OpenAI's response is due by May 23, 2025. | **OpenAI's Position:** OpenAI is strongly committed to the privacy of its users, and keeping secure its users' information. However, The New York Times, the Chicago Tribune, and other news plaintiffs are seeking to undermine these privacy protections with a sweeping preservation demand and a request for an invasive search through those private user conversations. While on the one hand telling their readers that "America needs strong principles to protect online identity and privacy," The Chicago Tribune Editorial Board, *Editorial: When lawyers apply a law aimed at VHS rentals to the streaming world of today*, Chicago Trib. (Apr. 7, 2025), the same newspapers are urging this Court to prioritize Plaintiffs' wholly speculative conjecture over the privacy of the millions of people who rely on OpenAI to protect their most private and personal requests, thoughts, and concerns. To be clear, OpenAI has not "destroyed" any conversations. The conversations at issue are those that *users* have chosen to delete. ChatGPT users have a right to privacy, which includes the right to delete their conversations about their sensitive information, such as regarding their personal lives, business information, or a relative's medical condition. These are very real and important concerns, especially for these non-parties to the litigation. *See, e.g.*, ECF 49 at 1 (motion to intervene from non-party seeking to object to preservation order). The New York Times and other news plaintiffs want to disregard these basic and long-standing privacy norms, viewing their own interests in this case as more important than those of millions of individuals worldwide. And they are doing so without a single shred of evidence–or even an allegation–that these users are somehow infringing Plaintiffs' works. Plaintiffs' contention that conversations that users delete are more likely to be relevant to their hypothetical claims is based on nothing more than their own *ipse dixit*. That is far from sufficient to impose the unprecedented retention and search requirements that Plaintiffs urge. Plaintiffs' position seems to be that they are entitled to wholesale retention and searching at the expense of OpenAI users' privacy so long as they can hypothesize a theory of supposed relevance, however speculative, unalleged, or remote. That is not how the law works.<br><br>OpenAI fundamentally and strenuously opposes Plaintiffs' demands. As OpenAI's filing on Friday will explain in more detail, although OpenAI has begun to take the steps necessary to comply with the preservation order (e.g., taking steps to retain conversation data for the *millions* of |

| Motion Dkt. No. | Date Filed | Opp. Dkt. No. | Topic in Dispute | Party Raising Dispute | Party Responding | Status of Dispute | Parties' Shorthand Positions |
|---|---|---|---|---|---|---|---|
| | | | | | | | ChatGPT Free, Pro and Plus users), neither the record nor the law supports requiring OpenAI to depart from long-standing privacy norms and retention practices. Nor are Plaintiffs' other requests appropriate or proportionate to the needs of the case. As such, the Order should be vacated and Plaintiffs' motion denied. |
| Dkt. 487 | March 31, 2025 | 508 | News Plaintiffs seek discovery into all versions of Microsoft's "Copilot" product and inspection of the "Deucalion" LLM | News Plaintiffs | Microsoft | The dispute is fully briefed and the Court has not yet heard argument | **Plaintiffs' Position:** This motion to compel addresses two issues relating to Microsoft.<br><br>*First*, Plaintiffs request discovery into all versions of Microsoft's "Copilot" product. Plaintiffs shortly before filing this motion learned that Microsoft has not been providing discovery into its current version of "Copilot"—which was launched October 1, 2024—on the ground that it is a new product that is not covered by the allegations in the Complaints. But the current version of Copilot has the same name as the Copilot product identified in the Complaints, uses the same OpenAI LLMs identified in the Complaints, and performs the same functionality as the Copilot referenced in the Complaints, including regurgitating Plaintiffs' copyrighted articles. Accordingly, Plaintiffs request that the Court grant Plaintiffs' requested discovery into all versions of Microsoft's "Copilot" product, including: (1) updating its responses to News Plaintiffs' interrogatories to encompass information about the refreshed Copilot; (2) searching for and producing documents responsive to News Plaintiffs' requests for production that relate to the refreshed Copilot, including producing documents that were withheld on the basis that they relate to the refreshed Copilot; and (3) producing output log data, source code, training data, and any models for the refreshed Copilot in response to News Plaintiffs' requests for inspection.<br><br>*Second*, Plaintiffs request access to inspect Microsoft's "Deucalion" LLM, which is based off an OpenAI GPT model that Microsoft fine-tuned at OpenAI and commercially deployed in the Copilot product deprecated on October 1, 2024. Plaintiffs have already conducted such an inspection with respect to OpenAI's commercially available LLMs, but Microsoft asserts that Plaintiffs should not be entitled access to inspect Deucalion because the model's outputs were mediated through other layers of software. But irrespective of end user's direct access to the model, the model itself is relevant to News Plaintiffs allegations concerning model memorization, including: (1) the model itself is |

| Motion Dkt. No. | Date Filed | Opp. Dkt. No. | Topic in Dispute | Party Raising Dispute | Party Responding | Status of Dispute | Parties' Shorthand Positions |
|---|---|---|---|---|---|---|---|
| | | | | | | | infringing and not transformative (*e.g.*, because it encodes copies of the asserted works), and (2) memorized (or regurgitated) outputs are further evidence of the extent and nature of Defendants' unauthorized use of News Plaintiffs' content during training and as part of Copilot's outputs.<br><br>**Microsoft's Position:** News Plaintiffs' motion concerning two unrelated discovery requests should be denied; indeed, the first was already denied.<br><br>*First*, Microsoft's Copilot-branded product released on October 1, 2024 ("New Copilot") is a new product that did not exist when the Complaint was filed, was built on an entirely different architecture, involves a separate team, and would necessitate starting over in discovery, making an already expansive case unmanageable. News Plaintiffs have known about New Copilot since its launch, included a blog post about it in The Times's October 2024 request to expand the scope of discovery, which the Court denied. See ECF 365 at 5. As the Court recognized during the December 2024 hearing, if News Plaintiffs want discovery on New Copilot, they can either file a new lawsuit or seek leave to amend under Rules 15 and 16. Adding New Copilot to this case would dramatically increase the scope of discovery, entailing a new set of source code, business documents, technology documents, and ESI from an entirely different set of custodians. The renewed request for discovery into New Copilot should be denied.<br><br>*Second*, News Plaintiffs' demand to test a bare model called Deucalion is disproportionate to the needs of the case and should be denied. Deucalion is a fine-tuned version of GPT3.5 Turbo never made available to the public in the form in which News Plaintiffs seek to test it. There were and are myriad other options for News Plaintiffs to obtain relevant information about the model, including that they (1) had freely available access to Copilot while the Deucalion model was in operation throughout most of 2024, (2) have inspected the GPT3.5 Turbo model's training data, and (3) have the ability to sample user output data to understand actual consumer uses of the Deucalion model in operation. News Plaintiffs equate their request to inspect Deucalion to the inspection of OpenAI's models, but this is misleading. The models OpenAI provided for inspection were publicly available in the form |

11

| Motion Dkt. No. | Date Filed | Opp. Dkt. No. | Topic in Dispute | Party Raising Dispute | Party Responding | Status of Dispute | Parties' Shorthand Positions |
|---|---|---|---|---|---|---|---|
| | | | | | | | inspected, which is not what is sought here. Rather, Plaintiffs seek to force Microsoft to provide Deucalion without the metaprompts, filters, and output mitigations that were all part of Copilot's safety features. Worse, providing the bare model would enable News Plaintiffs to radically distort the model's behavior through adversarial prompting, causing significant prejudice. Adversarial prompting of models has already been an issue in these proceedings, and the issue should not be compounded further. |
| 305[1]<br><br>328 | 11/1/24<br><br>11/20/24 | 305<br><br>345 | OpenAI's Training Data | News Plaintiffs | OpenAI | Resolved. The Court heard argument on December 3, 2024, and on January 22, 2025. The parties subsequently resolved the issue. | **Parties' Joint Statement:** The Parties have met and conferred, and no further action is required from the Court at this time.<br><br>As explained in ECF 462, the parties met and conferred regarding proposed datasets and threshold values for the proposed "N-Gram Search" of OpenAI training data. A dispute arose over OpenAI's implementation of Plaintiffs' proposed search parameters, but the parties have resolved that dispute. OpenAI will now attempt to run an agreed N-gram search on an identified set of training datasets and produce the results. If OpenAI encounters technical difficulties, it will raise them with Plaintiffs for further meet-and-confer discussions. |
| **IV.** | **Disputes Related to OpenAI's Document Productions** | | | | | | |
| Dkt. 489 | March 31, 2025 | 507 | The Times seeks to compel OpenAI to produce discrete financial documents and investor materials concerning OpenAI's valuation and anticipated profits | NYT | OpenAI | The Times filed a similar motion in advance of the January 22, 2025 conference (Dkt. 398). Following argument, the Court ordered the parties to continue to | **Plaintiffs' Position:** The Times on March 31 renewed its January 13, 2025 request for an order requiring OpenAI to produce discrete financial documents and investor materials. The Times has substantially narrowed its request, consistent with this Court's instruction "to think about whether there are particular investments or transactions or particular presentations or other documents . . . that you might want to ask OpenAI to focus on" and to "try to address OpenAI's concern about the request being overbroad." Jan. 22, 2025 Hearing Tr. at 87:12-22. The Court should now adopt The Times's compromise proposal, for OpenAI to produce: (1) documents reflecting internal evaluations of its anticipated profits and OpenAI's valuation, and (2) documents provided to the following OpenAI investors that discuss OpenAI's anticipated profits |

---

[1] Unless otherwise indicated, all docket numbers are from *New York Times Company v. Microsoft Corp., et al.*, Case No. 1:23-cv-11195-SHS.

| Motion Dkt. No. | Date Filed | Opp. Dkt. No. | Topic in Dispute | Party Raising Dispute | Party Responding | Status of Dispute | Parties' Shorthand Positions |
|---|---|---|---|---|---|---|---|
| | | | | | | meet and confer. Dkt. 441. The Times has now renewed its motion. | and valuation: Microsoft, MGX, Thrive Capital, Softbank, and Tiger Global.<br><br>This compromise proposal targets information The Times has not otherwise received. This discovery is also highly relevant, for at least four issues: (i) the first fair use factor—the purpose and character of the use, (ii) OpenAI's ability to pay for copyrighted content, (iii) willfulness and motive, and (iv) damages. For example, as for fair use factor one, "[t]he greater the private economic rewards reaped by the secondary user (to the exclusion of broader public benefits), the more likely the first factor will favor the copyright holder and the less likely the use will be considered fair." *Am. Geophysical Union v. Texaco Inc.*, 60 F.3d 913, 922 (2d Cir. 1994). Yet OpenAI refuses to provide basic discovery into "the private economic rewards" that it anticipates "reap[ing]" for itself and its employees, thus preventing The Times (and the Court) from balancing those "private economic rewards" against the alleged "public benefits" that OpenAI touts. *Texaco*, 60 F.3d at 922. OpenAI below incorrectly suggests The Times has not cited any cases ordering such discovery in a copyright case. *E.g., Daily Palm, LLC v. Bird Rides, Inc.*, 2021 WL 6496853, at *1 (C.D. Cal. Oct. 18, 2021).<br><br>Finally, the burden to OpenAI is minimal. For category (1) OpenAI has admitted these documents are "discrete" and has therefore not even raised any burden argument. And for category (2), OpenAI has already located the "data rooms" it used to share documents with most of these investors, meaning that OpenAI already knows exactly where to find the responsive materials.<br><br>**OpenAI's Position:** The Times seeks to compel OpenAI to produce financial projections, valuations, and documents discussing financial information, which courts have consistently held are not discoverable in copyright actions. *See In re ChatGPT*, Case No. 23-cv-03223-AMO, Dkt. 247 at 2 (N.D. Cal. Jan. 13, 2025); *Phoenix Techs., Ltd. v. Vmware, Inc.*, 2016 WL 5725044, at *2 (N.D. Cal. Sept. 30, 2016); *Bluewater Music Servs. Corp. v. Spotify USA Inc.*, 2018 WL 10152456, at *7 (M.D. Tenn. July 10, 2018); *Kaseberg v. Conaco, LLC*, 2016 WL 3997600, at *7–8 (S.D. Cal. July 26, 2016). |

| Motion Dkt. No. | Date Filed | Opp. Dkt. No. | Topic in Dispute | Party Raising Dispute | Party Responding | Status of Dispute | Parties' Shorthand Positions |
|---|---|---|---|---|---|---|---|
| | | | | | | | Indeed, The Times cannot identify a single case compelling the scope of production they presently demand. The only case they cite concerning discovery in a copyright action (*Daily Palm, LLC v. Bird Rides, Inc.*) addressed the purely legal question of what damages a copyright plaintiff could seek as a matter of law—not the arguments OpenAI has raised here. And, even then, the court ordered far more limited discovery than The Times requests. OpenAI has repeatedly offered to meet and confer about conducting additional reasonable searches for documents relating to relevant, substantive issues that aren't addressed by OpenAI's existing offers to produce, but The Times has flatly ignored those offers.<br><br>Plaintiffs' relevance arguments are flimsy, at best. OpenAI's overall financial projections and valuation are not relevant to fair use factor one because "[t]he question under [fair use] factor one is the purpose and character of the use, not of the alleged infringer." *Byrne v. British Broad. Corp.*, 132 F. Supp. 2d 229, 234 (S.D.N.Y. 2001) (Stein, J.). Regarding "ability to pay," OpenAI has already produced its audited financial statements, and The Times cites no authority showing "ability to pay" is relevant. Nor are the requested documents relevant to willfulness, given that "one's motive to infringe does not bear on the willful nature of his infringement." *Compaq Computer Corp. v. Ergonome Inc.*, 2001 WL 34104827, at *1 (S.D. Tex. June 27, 2001). Projections/valuations also are not relevant to damages, as the orders cited above show. Even if that information might be relevant, The Times cannot explain how they would use it to calculate damages, which courts have consistently held should doom the request. *See, e.g.*, *Structured Asset Sales, LLC v. Sheeran*, 433 F. Supp. 3d 608, 612 (S.D.N.Y. 2020).<br><br>The Times' assertion of minimal burden is unfounded. OpenAI has cited several cases establishing that The Times' requests are disproportionate. The Times cites nothing to the contrary. |
| [322](#)-Sealed<br>[323](#)-Public | 11/19/24 | [339](#) | The Times's RFP 2 (documents OpenAI has submitted to domestic | NYT | OpenAI | The Court heard argument on this motion at the January 22, 2025 | **Plaintiff's position:** The Times maintains its request for an order requiring OpenAI to identify any relevant domestic proceedings in which it has produced documents related to the issues in this case.<br><br>The Court should now adopt The Times's compromise proposal, as reflected in the February 13 chart. Dkt. 462. As a first step, OpenAI |

14

| Motion Dkt. No. | Date Filed | Opp. Dkt. No. | Topic in Dispute | Party Raising Dispute | Party Responding | Status of Dispute | Parties' Shorthand Positions |
|---|---|---|---|---|---|---|---|
| | | | governmental entities relating to the allegations in the Complaint) | | | conference, and ordered the parties to meet-and-confer and to provide a status update in the February 13 chart (Dkt. 462) | should produce any interrogatory responses or responses to written questions that OpenAI submitted for the Delaware Attorney General's investigation into OpenAI's planned transition to a for-profit company. https://www.reuters.com/technology/artificial-intelligence/openais-altman-says-musk-offer-is-tactic-to-try-mess-with-us-2025-02-11/. The Times is targeting this investigation because it addressed whether "the company is 'adhering to its specific charitable purposes for the benefit of the public beneficiaries, as opposed to the commercial or private interests of OpenAI's directors or partners.'" *Id.* According to public reports, OpenAI abandoned its for-profit formal conversion plan based on "discussions" with the Delaware Attorney General. https://www.wsj.com/tech/ai/openai-to-become-public-benefit-corporation-9e7896e0?st=hFrWMK. <br><br>The requested documents are therefore relevant to fair use factor one, particularly insofar as they reveal the extent to which OpenAI is prioritizing commercialization. Indeed, commercialization is not a binary proposition. "The greater the private economic rewards reaped by the secondary user (to the exclusion of broader public benefits), the more likely the first factor will favor the copyright holder and the less likely the use will be considered fair." *Am. Geophysical Union v. Texaco Inc.*, 60 F.3d 913, 922 (2d Cir. 1994). This discovery will shed light on whether OpenAI is prioritizing "private economic rewards" over "broader public benefits." *Id.* Tellingly, OpenAI below does not claim it would be burdensome to comply with The Times's request, which again focuses on just one highly relevant proceeding and on information The Times has not otherwise received.<br><br>**OpenAI's Position:** The Court previously rejected The Times's motion to compel with regard to documents submitted to foreign regulators (ECF 398), and it should deny this parallel motion as well.<br><br>The Times has issued 155 RFPs in this matter, which is 25 more RFPs than had been issued when the Court last heard argument on this motion in January. The pending RFPs canvass all conceivably relevant topics. As relevant here, The Times has also requested all documents submitted to domestic governmental entities, without regard to whether those materials have been produced in response to other RFPs or relate to substantive meet-and-confer efforts. At the January hearing, the Court |

| Motion Dkt. No. | Date Filed | Opp. Dkt. No. | Topic in Dispute | Party Raising Dispute | Party Responding | Status of Dispute | Parties' Shorthand Positions |
|---|---|---|---|---|---|---|---|
| | | | | | | | encouraged The Times to focus its discovery requests on "underlying information . . . relevant to the case," not on materials that might have been deemed relevant in some separate context. (Transcript, Jan. 22, 2025, at 75:1-5). Indeed, with regard to alleged "commercial nature" of OpenAI's business, The Times has already issued an RFP focused on precisely that issue. *See* RFP 11. That RFP has been the subject of motion practice and extensive meet-and-confer discussions. The Times should not be permitted to end-run around those negotiations simply by pointing to public reporting of a state regulator's entirely distinct inquiry. The Times is engaged in a fishing expedition, and its motion to compel should be denied.<br><br>The Times's suggestion that it is offering a narrowed resolution to this RFP is false. It has clarified in meet-and-confer discussions that it expects OpenAI to canvas other, unidentified regulatory engagements for potentially relevant materials. Instead of casting about for materials potentially deemed relevant in other contexts, The Times should, as this Court directed, focus on "underlying information . . . relevant to the case." (Transcript, Jan. 22, 2025, at 75:1-5). |
| **V.** | | | **Updates for Previously Briefed & Argued Disputes Between News Plaintiffs and Microsoft** | | | | |
| 311 | 11/18/24 | 338 | Microsoft's Log Output Data | News Plaintiffs | Microsoft | The Court heard argument at the January 22, 2025 conference, and ordered the Parties to meet and confer and to provide a status update in the February 13 chart (Dkt. 462). | **Plaintiffs' position:** On February 10, 2025, technical experts for The Times and Daily News Plaintiffs attended an informal discussion with Microsoft's outside consultants. No Microsoft employees attended the discussion, and because Microsoft's outside consultants' knowledge of Microsoft's log data was limited to the same materials produced to Plaintiffs, the outside consultants could not answer many of the questions raised during the discussion and previously outlined Plaintiffs' letter correspondence. On February 12, The Times and Daily News Plaintiffs sent a letter to Microsoft to follow up on items that the consultants were not able to answer during the informal discussion and to propose a sampling methodology, and requested responses by February 17. Microsoft responded to that letter on April 25, 2025, answering some of News Plaintiffs' questions but stating that they are still investigating the feasibility and burden of our sampling methodology. News Plaintiffs will continue to meet and confer with Microsoft on discovery into the log data but request that the Court order a date certain by which: (1) the Parties complete their meet and confer as to sampling methodologies of the log |

16

| Motion Dkt. No. | Date Filed | Opp. Dkt. No. | Topic in Dispute | Party Raising Dispute | Party Responding | Status of Dispute | Parties' Shorthand Positions |
|---|---|---|---|---|---|---|---|
| | | | | | | | data, and (2) Microsoft produces the log data according to the agreed upon (or Court ordered) sampling methodologies.<br><br>**Microsoft's Position**: Plaintiffs' initial motion was denied in ECF 365. Since that time, the parties have been working together in good faith to address these issues. The parties held an initial extensive meet and confer session. Microsoft disagrees that its experts were unprepared for that session. Rather, Plaintiffs spent nearly half of the time asking questions that were not in the scope of topics sent in advance of the meeting.<br><br>Microsoft responded to Plaintiffs' February 12 letter, providing answers to 14 of Plaintiffs' 15 questions. At the same time, Microsoft has also been working on streamlining the process by creating faster and more efficient means of accessing the data, both in order to answer Plaintiffs' questions and in support of the ultimate project of sampling the data.<br><br>After the MDL is organized so that all data matters can be addressed on a uniform basis, the parties should have another informal conversation about log data. The log data is stored in an unstructured format and therefore reporting scripts must be run on data to create samples. This process has proven quite challenging as has the overall effort to understand the data. A further meet and confer session will be productive in enabling Plaintiffs to formulate their sampling strategy. After that, sampling efforts are likely to require testing and iteration before any approach can be confirmed. There is no need for deadlines regarding the ongoing process of addressing log data to be set at this time. |
| 396 | 1/13/25 | 407 | The Times's RFPs 61 (documents concerning licensing negotiations) | NYT | Microsoft | The Court heard argument on this motion at the January 22, 2025 conference, and ordered the parties to | **Plaintiff's position:** The Times has substantially narrowed its request for licensing negotiation documents for deals that were never executed, which The Times has been seeking since January. Because Microsoft has still not committed to producing any such documents, The Times respectfully asks the Court to adopt its compromise proposal, summarized below.<br><br>These requested documents and communications are relevant to The Times's allegation that there is a market for the at-issue data. FAC ¶ 155; |

17

| Motion Dkt. No. | Date Filed | Opp. Dkt. No. | Topic in Dispute | Party Raising Dispute | Party Responding | Status of Dispute | Parties' Shorthand Positions |
|---|---|---|---|---|---|---|---|
| | | | | | | meet-and-confer and to provide a status update in the February 13 chart (Dkt. 462) | see *A&M Recs., Inc. v. Napster, Inc.*, 239 F.3d 1004, 1016 (9th Cir. 2001) ("Fair use, when properly applied, is limited to copying by others which does not materially impair the marketability of the work which is copied." (quoting *Harper & Row Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 566-67 (1985)). For example, if communications show that Microsoft was willing to pay a news organization a certain amount of money to use their content for Microsoft Copilot, that admission would be relevant to assessing the market for news data, even if that deal never materialized. <br><br> At the January 22 hearing, this Court instructed The Times to "narrow the scope of [the request] to what the market might be in the News cases," Jan. 22, 2025 Tr. at 103:7-9, and to meet and confer and file a supplemental letter about the status of the parties' negotiations. Dkt. 441. Consistent with that guidance, The Times has narrowed its request to documents and communications regarding licensing negotiations that did not result in an executed agreement, but limited to (1) Journalism content providers, as the parties have agreed to define that term to resolve other RFPs, and (2) negotiations that moved far enough along where a party prepared a term sheet. The Times has also agreed to narrow the scope of the models and products for this RFP to those the parties have already agreed to be in scope for discovery. The one exception is "refreshed" Copilot. As summarized, Dkt. 487, Plaintiffs contend that "refreshed" Copilot should be subject to discovery, and the Court's ruling on that dispute should inform whether Microsoft produces licensing negotiation documents related to "refreshed" Copilot. <br><br> **Microsoft's Position:** Plaintiffs' initial motion was denied in ECF 441, but the parties have continued to meet and confer. As an initial matter, The Times's apparent introduction of "all versions" of Copilot, which Microsoft takes to refer to the newer product that is the subject of the briefs at ECF 487 and 508, is a step backward, as it expands the scope of the request when the parties are trying to narrow and get to agreement. Indeed, Microsoft asked in the parties' most recent written correspondence on this issue, on March 31, to confirm that The Times's current proposal was "still limited to the models and products at issue in the case (setting aside, ... our dispute about what products are subject to discovery, as set out in your motion filed today)." The Times never responded; it appears the answer is no. |

| Motion Dkt. No. | Date Filed | Opp. Dkt. No. | Topic in Dispute | Party Raising Dispute | Party Responding | Status of Dispute | Parties' Shorthand Positions |
|---|---|---|---|---|---|---|---|
| | | | | | | | As Microsoft has communicated to The Times, Microsoft will be producing additional documents in response to this RFP beyond what is set out in Microsoft's served written response. Microsoft is continuing to evaluate the scope of those additional documents and whether such documents would be responsive to the scope articulated in The Times's previous proposal. Since The Times expanded its request to include "all versions" of Copilot, Microsoft <u>needed to restart some aspects of its evaluation of</u> that request. For all these reasons, the parties should continue to meet and confer, and no relief is warranted at this time. |