## UNITED STATES DISTRICT COURT

## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE: OPENAI, INC., | 25-md-3143 (SHS) (OTW) |
| COPYRIGHT INFRINGEMENT LITIGATION | **MEMORANDUM OF LAW IN SUPPORT OF MOTION TO APPOINT THE JOSEPH SAVERI LAW FIRM, LLP AS INTERIM LEAD COUNSEL FOR THE CONSOLIDATED CLASS CASE UNDER FED R. CIV. P. 23(G)(3)** |
| This Document Relates To: | |
| All Actions | |

**TABLE OF CONTENTS**

**Page(s)**

I.    INTRODUCTION ........................................................................................ 1

II.    ARGUMENT ............................................................................................... 3

      A.    JSLF Has Done the Most to Identify and Investigate the Case, and Further has Done the Most to Advance the Consolidated Cases .......................................... 4

            1.    JSLF was the first firm to identify and investigate the case ...................... 4

            2.    In June 2023, JSLF filed the first copyright infringement case against OpenAI ................................... 6

            3.    JSLF has substantially advanced the first-filed *Tremblay* Action through fact discovery .................................. 6

      C.    Joseph Saveri and the Joseph Saveri Law Firm Has the Class Action Experience and Copyright Knowledge Required to Effectively Prosecute this Consolidated Action ................................ 8

      D.    JSLF Has Committed and Will Continue to Dedicate Ample Resources to Prosecute this Consolidated Action Effectively and Efficiently ........................... 10

      E.    JSLF has Demonstrated the Ability to Coordinate and Work Cooperatively with the Other Firms Involved in the Class Cases .................................. 11

      F.    JSLF has the Support of Other Counsel in the N.D. Cal. Consolidated Class Case. ....................................... 13

      G.    BSF Supports JSLF for Interim Lead Counsel, But Is Ready To Serve as Liaison Counsel or Chair of a Plaintiffs' Steering Committee, or Any Role the Court May Desire. ......................................... 16

III.    CONCLUSION ......................................................................................... 21

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Andersen v. Stability AI Ltd.*
  3:23-cv-00201-WHO (N.D. Cal.) ........................................................................... 10, 13, 14

*In re Capacitors Antitrust Litigation*
  17-md-02801-JD (N.D. Cal.) ........................................................................................ 9, 11

*Chabon v. OpenAI, Inc.*
  23-cv-04625-CRB (N.D. Cal. 2023) ................................................................................... 2

*Doe 1 v. GitHub, Inc.*
  4:22-cv-06823 (N.D. Cal.) ....................................................................................... 10, 13

*In re Google Generative AI Copyright Litigation*
  3:23-cv-03440-EKL (N.D. Cal.) ....................................................................................... 10

*In re High-Tech Employee Antitrust Litigation*
  5:11-cv-02509 (N.D. Cal.) ................................................................................................ 9

*Jones v. Varsity Brands, LLC*
  2:20-cv-02892-SHL (W.D. Tenn.) ...................................................................................... 9

*Kadrey, et al v. Meta Platforms, Inc.*
  3:23-cv-03417-VC (N.D. Cal.) ................................................................................. passim

*In Re Mosaic LLM Litigation*
  3:24-cv-01451-CRB (N.D. Cal.) ............................................................................... passim

*Nazemian v. NVIDIA Corporation*
  4:24-cv-01454 (N.D. Cal.) ...................................................................................... passim

*In re Outpatient Medical Center Employee Antitrust Litigation*
  1:21-cv-00305 (E.D. Ill.) ................................................................................................. 9

*In re Restasis Antitrust Litigation*
  MDL No. 02819 (NG) (LB) (E.D.N.Y) ............................................................................. 9

*Silverman v. OpenAI, Inc.*
  23-cv-03416 (N.D. Cal.) ........................................................................................... passim

*Tremblay v. OpenAI, Inc.*
  3:23-03223 (N.D. Cal.) ............................................................................................ passim

*In Re: Visa Debit Card Antitrust Litigation*
  1:24-cv-07435-JGK (S.D.N.Y.) .................................................................................... 9, 10

**Statutes**

Fed. R. Civ. P. 23(g)(1)(A)(i) ............................................................................................. 3, 4

Fed. R. Civ. P. 23(g)(1)(A)(iv) ............................................................................................. 10

Fed. R. Civ. P. 23(g)(1)(B) ................................................................................................... 3

Fed. R. Civ. P. 23(g)(3) ......................................................................................................... 3

**Other Authorities**

California *Daily Journal* ......................................................................................................... 9

Kate Knibbs, *Meet the Lawyer Leading the Human Resistance Against AI*, *Wired*,
    https://www.wired.com/story/matthew-butterick-ai-copyright-lawsuits-openai-meta/
    (Nov. 22, 2023) ................................................................................................................ 14

Melissa Lipman, *Lieff Cabraser Antitrust Chief to Launch Own Firm* (May 1, 2012),
    *available at* https://www.law360.com/articles/335937/lieff-cabraser-antitrust-chief-
    to-launch-own-firm ......................................................................................................... 9

## I.    INTRODUCTION

The Joseph Saveri Law Firm, LLP (JSLF), which has led the consolidated *Tremblay* Actions since their inception, is best positioned to advance the case to summary judgment, class certification, and ultimately to trial. The N.D. Cal. Class Plaintiffs therefore move the Court to appoint Mr. Joseph Saveri and JSLF, as interim lead counsel pursuant to Federal Rule of Civil Procedure 23(g). JSLF best satisfies the Rule 23(g) criteria for the following reasons:

- JSLF has a proven track record as class counsel, managing and litigating high-stakes, multidistrict class actions to successful resolution;

- JSLF pioneered the first wave of cases challenging the unauthorized use of copyrighted works to train generative AI large language models ("LLMs"), including *Tremblay v. OpenAI*, No. 3:23-03223 (N.D. Cal.), the first case filed in this MDL;

- JSLF has, along with its co-counsel, substantively and procedurally advanced the *Tremblay* Action resulting in *Tremblay* being the most advanced related case in this multidistrict litigation as recognized by this Court; and

- JSLF has shown strong collaboration with co-counsel, as evidenced by the unanimous support for its leadership in the consolidated class case.

For these reasons, Mr. Saveri and JSLF are prepared to serve the current plaintiffs, the soon-to-be consolidated class, and the Court, with the highest level of expertise, professionalism, and efficiency on behalf of the class. JSLF is fully prepared to advance the soon-to-be consolidated class case through resolution. A broad consensus of counsel support the motion, seeking unity behind JSLF leadership. To the extent the Court so desires, Boies Schiller Flexner LLP also stand ready to serve as liaison counsel, chair of a Plaintiffs' steering

committee, or any role the Court so requests or requires. It is also valuable for the N.D. Cal. plaintiffs to have their own voice in leadership, and to ensure a diversity of viewpoints and approaches.

JSLF, in collaboration with Matthew Butterick, first investigated and researched OpenAI's unlawful conduct involving training AI language models on copyrighted works. Their work produced the first two complaints challenging OpenAI's practices—*Tremblay v. OpenAI, Inc.,* No. 3:23-03223 (N.D. Cal.) and *Silverman v. OpenAI, Inc.*, No. 23-cv-03416 (N.D. Cal.). Filing of those complaints preceded filing of similar complaints in the United States. Indeed, all subsequent cases in this MDL—not only in the Northern District of California but elsewhere— have largely emulated the allegations and the claims first set out by JSLF in the *Tremblay* and *Silverman* Actions. Without JSLF and Matthew Butterick, it is possible that no case of this type would ever have been filed, and OpenAI's unlawful practices would have proceeded unchallenged.

As recognized by the Court, the consolidated N.D. Cal. cases[1] are the most advanced of all the cases that are now part of this multidistrict litigation. JSLF has also managed the cooperative and collaborative work between the Northern District of California and Southern District of New York class cases. In addition, JSLF has already devoted thousands of hours to the prosecution of this litigation, building a strong case, notwithstanding the complicated, technical nature of the matter and the obstacles of litigating against a well-resourced adversary.

In addition to pioneering expertise in this generative AI litigation, JSLF and its attorneys have decades of experience prosecuting and resolving Rule 23 class actions and other complex

---

[1] *Tremblay v. OpenAI, Inc.*, No. 3:23-cv-03223 (N.D. Cal.); *Silverman v. OpenAI, Inc.*, No. 23-cv-03416 (N.D. Cal.); *Chabon v. OpenAI, Inc.*, No. 23-cv-04625 (N.D. Cal.) (collectively, the "*Tremblay Action*").

litigation, including through trials and appeals. The firm has ample resources, having led and prosecuted antitrust and other complex cases to resolution and record-setting results during the past decade.

Further, JSLF has the support (and the ability to count on the resources of) all the experienced and well-qualified law firms representing the *Tremblay* Plaintiffs—Boies Schiller Flexner LLP (BSF) (which is the only firm in these cases headquartered in New York City), Cafferty Clobes Meriwether & Sprengel (CCMS) (which filed the first non-JSLF led case in the country and has been working together cooperatively and effectively coordinating with JSLF since then to help direct and litigate these cases), and Matthew Butterick. These firms unanimously support Mr. Saveri and JSLF as interim lead counsel as the best and most appropriate choice under Rule 23(g). Each firm is committed to bringing their resources and expertise for the benefits of Plaintiffs and the Class under JSLF's continued leadership, consistent with the dictates of Rules 1 and 23, and this Court's guidance.

## II.    ARGUMENT

Rule 23(g) authorizes courts to "designate interim counsel to act on behalf of a putative class before determining whether to certify the actions as a class action." Fed. R. Civ. P. 23(g)(3). Rule 23(g) requires that courts consider four key factors in appointing class counsel: "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A). The Court may also consider "any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(g)(1)(B).

Each of the factors supports the appointment of Joseph Saveri and JSLF as Interim Lead Counsel to prosecute the Consolidated Action.

**A.    JSLF Has Done the Most to Identify and Investigate the Case, and Further has Done the Most to Advance the Consolidated Cases.**

**1.    JSLF was the first firm to identify and investigate the case.**

Mr. Saveri and JSLF, along with Matthew Butterick, were the first to identify and investigate the claims giving rise to this consolidated litigation. Fed. R. Civ. P. 23(g)(1)(A)(i). JSLF filed the *Tremblay* Action against OpenAI on June 28, 2023, two months prior to any other firm filing a related case. In large measure, the complaint became the model for all subsequently filed cases.

OpenAI's ChatGPT product was first introduced in November 2022. Beginning that year and continuing through the first half of 2023, JSLF undertook significant steps to identify, investigate, and advance the claims against OpenAI for training its language models on the *Tremblay* Plaintiffs and other authors' copyrighted works. In addition to researching the details of OpenAI's generative AI products, Mr. Saveri and JSLF hired numerous experts, including experts on neural networks, artificial intelligence, copyright pirating, and economics. JSLF retained and consulted with copyright experts, including David Nimmer, author of *Nimmer on Copyright*, the authoritative copyright treatise. JSLF performed substantial work investigating the merits of Plaintiffs' claims, including extensive investigation of the AI industry as to OpenAI. JSLF conducted investigations to analyze and make a preliminary assessment of the damages and the viability of Plaintiffs' claims. JSLF conducted extensive legal and factual research regarding Plaintiffs' claims under federal and state law. JSLF also investigated OpenAI's web of affiliates to determine the proper entities to name as defendants.

In addition, based on the discovery taken (described below), the *Tremblay* Plaintiffs identified additional claims against OpenAI as well as against Microsoft Corporation.[2] Before filing these claims, the *Tremblay* Plaintiffs conducted significant research regarding the substantive claims as well as related issues including preemption, standing, and class certification. The investigation resulted in the proposed amended complaint, which is currently the subject of a motion for leave to amend filed on March 4, 2025. *See* Tremblay Action, ECF No. 370.

Indeed, the time JSLF invested and the expense it has incurred demonstrate the firm's commitment to this case. JSLF attorneys, document reviewers, paralegals and professional staff have logged thousands of hours prosecuting it. Declaration of Joseph R. Saveri ("Saveri Decl."), ¶ 28. JSLF has also incurred hundreds of thousands of dollars *in costs*, most of which derive from charges by experts JSLF has retained to evaluate issues and provide related analysis, reports and testimony. Saveri Decl., ¶ 29.

---

[2] The claims include: (1) Direct Copyright Infringement against all Defendants; (2) Vicarious Copyright Infringement against Microsoft only; (3) Violation of the UCL (Cal. Bus. & Prof. Code §§ 17200 et seq.) against all Defendants; (4) Violation of the California Comprehensive Computer Data Access and Fraud Act (CDAFA) against OpenAI; (5) Violation of the DMCA anti-circumvention provision (17 U.S.C. § 1201) against all Defendants; (6) Violation of the DMCA (17 U.S.C. § 1201(b)(1))–removal of copyright management information against all Defendants (7); Conversion against OpenAI; (8) Unjust Enrichment / Quasi-Contract against all Defendants; (9) Breach of Contract as a Third-Party Beneficiary against all Defendants; (10) Violation of the Computer Fraud and Abuse Act (18 U.S.C. § 1030) against all Defendants; (11) Larceny / Receipt of Stolen Property (Cal. Penal Code § 496(a), (c)) against all Defendants; and (12) Conspiracy to Restrain Trade (15 U.S.C. § 1) against all Defendants. As noted, the proposed Amended Complaint, like it its predecessor, is the broadest and most inclusive of the pending class action complaints, and all others constitute a subset or part of the more broad *Tremblay* complaints.

      2.      **In June 2023, JSLF filed the first copyright infringement case against OpenAI.**

On June 28, 2023, author Paul Tremblay filed *Tremblay v. OpenAI, Inc.*, No. 3:23-cv-03223 (N.D. Cal.), initiating this groundbreaking and important litigation. Silverman, Christopher Golden, and Richard Kadrey filed *Silverman v. OpenAI, Inc.*, No. 3-23-cv-03416 (N.D. Cal.) soon thereafter. The first-filed *Tremblay* and *Silverman* Complaints were based on facts JSLF and Matthew Butterick uncovered in their initial investigation. The *Tremblay* and *Silverman* Complaints allege that OpenAI created large language models in violation of the *Tremblay* and *Silverman* Plaintiffs' rights, including claims for Direct Copyright Infringement (17 U.S.C. § 106). These were the first cases in the United States bringing such claims and asserting these theories on behalf of authors with copyrighted works.

      3.      **JSLF has substantially advanced the first-filed *Tremblay* Action through fact discovery.**

The Court recently observed that "it's time" for resolution of these centralized matters, in light of (among other things) the public's interest in seeing them resolved. May 22, 2025 Tr. at 36:12-18. The *Tremblay* Plaintiffs agree. No counsel has done more to advance these actions than JSLF, working shoulder-to-shoulder with the other counsel in the *Tremblay* consolidated action.

Since initiating this litigation in June 2023, JSLF has substantially developed the litigation in compliance with Judge Martínez-Olguín's directives to advance the *Tremblay* Action. For example, the court in *Tremblay* was the first to enter a protective order. Saveri Decl., ¶ 19. It was also the first to enter an ESI protocol. Saveri Decl., ¶ 20. Following months of document discovery, the *Tremblay* Plaintiffs initiated deposition discovery, noticing the first depositions pursuant to Rules 30(b)(1) and 30(b)(6). Saveri Decl., ¶ 21-22.

Much of the discovery taken in this case to date was taken in the *Tremblay* Action by JSLF and the other firms in N.D. Cal. Indeed, the *Tremblay* Plaintiffs were also tasked with balancing the needs for advancing the case while coordinating with the other less advanced cases. Judge Martínez-Olguín imposed a fact discovery deadline of April 28, 2025, stating the court was unlikely to modify it, allowing only for a "modest extension," if needed. CMC Tr., 14:25-15:1 (Nov. 26, 2024). JSLF pushed to complete document discovery and depositions by that date. Saveri Decl., ¶ 26. JSLF and its co-counsel team first noticed fact depositions in November, 2024. Saveri Decl., ¶ 22. On January 24, 2025, after months of meet and confers, motion practice, and ongoing coordination efforts, Mr. Saveri took the first fact deposition of an OpenAI witness. Saveri Decl., ¶ 23. The depositions of two of JSLF's four Plaintiff clients have been completed, the remaining ten were scheduled, and all of the *Tremblay* Plaintiffs' productions are substantially complete. Saveri Decl., ¶ 24. The *Tremblay* Plaintiffs also conducted at least 20 visits to OpenAI's source code and training data room, more than any other plaintiffs. Saveri Decl., ¶ 27.

JSLF has also:

- substantially advanced third-party discovery, including OpenAI's acquisition of copyrighted data, its knowledge that such data was pirated, its efforts to acquire that data regardless, and its licensing agreements with content creators;

- managed and directed offensive and defensive efforts, including assigning depositions among various co-counsel firms based on their relative expertise and knowledge;

- participated in and led efforts to resolve this case through mediation, including before Magistrate Judge Sallie Kim in N.D. Cal. and jointly with the *Authors Guild* Plaintiffs;

- hired numerous experts and consultants, including Redgrave Data (to consult on issues related to the discovery of ESI), David Nimmer (to evaluate and opine on legal theories), Mark Seeley (a renowned expert on copyright collective licensing issues), and Professor Crista Lopes (who has undertaken efforts to review and inspect OpenAI's source code and training data) as well as those located by co-counsel firms;

- managed and coordinated co-counsel firms, including assigning principal responsibility for various tasks such as drafting written discovery and other pleadings;

- taken a leading role in thirteen different offensive discovery disputes,[3] and six defensive discovery disputes[4];

- led management of the review and handling of the many documents produced by Defendants, including hosting the documents on a review platform, and

- organized and hosted weekly meetings with co-counsel, among other things.

**C.      Joseph Saveri and the Joseph Saveri Law Firm Has the Class Action Experience and Copyright Knowledge Required to Effectively Prosecute this Consolidated Action.**

JSLF is led by Joseph Saveri, its founder and name partner. Mr. Saveri has 35 years of experience in class action and other complex litigation, including leading dozens of multidistrict

---

[3] *See Tremblay* Action, ECF Nos. 136, 139, 143, 157, 163, 204, 217, 237, 242, 244, 246, 279, 314.

[4] *See Tremblay* Action, ECF Nos. 153, 212, 248, 249, 337, 352.

and other class actions. Saveri Decl., ¶ 9. Mr. Saveri is one of the most accomplished and

respected attorneys in the country.[5] He was included in Lawdragon's inaugural list of Leading AI

& Legal Tech Advisors and named by the California *Daily Journal* as one of the Top Artificial

Intelligence Lawyers in California in 2024. As a result of his advocacy in AI-related cases, Mr.

Saveri has also been featured in 2024 by the *Daily Journal* as a Top Intellectual Property

Lawyer. This month, *Law360* recognized him as one of its prestigious "Titans of the Plaintiffs

Bar." Saveri Decl., ¶ 6. In addition, Mr. Saveri has developed a reputation as one of the nation's

leading attorneys specializing in antitrust law, and class actions. Mr. Saveri is rated an AV

preeminent by LexisNexis Martindale-Hubbell and has consistently been ranked a "Band 1"

(highest ranking) attorney by Chambers USA in its "Antitrust: Mostly Plaintiff" and "Antitrust:

Plaintiff" categories for many years. Saveri Decl., ¶¶ 5-6. Representative examples of JSLF's

recent appointments as lead counsel in cases involving a range of subject matter include: *In Re

Mosaic LLM Litigation*, 3:24-cv-01451-CRB (N.D. Cal.) (involving artificial intelligence

products); *In re Capacitors Antitrust Litigation*, No. 17-md-02801-JD (N.D. Cal.); *In re Restasis

Antitrust Litigation*, MDL No. 02819 (NG) (LB) (E.D.N.Y); *In re High-Tech Employee Antitrust

Litigation*, No. 5:11-cv-02509 (N.D. Cal.); *In re Cipro Cases I and II*, JCCP Nos. 4154 and 4220

(San Diego County Sup. Ct.); *In re Outpatient Medical Center Employee Antitrust Litigation*,

No. 1:21-cv-00305 (E.D. Ill.); *In Re: Visa Debit Card Antitrust Litigation*, No. 1:24-cv-07435-

JGK (S.D.N.Y.); *Jones v. Varsity Brands, LLC*, No. 2:20-cv-02892-SHL (W.D. Tenn.); and *Le v.

Zuffa*, *LLC* D/B/A/ Ultimate Fighting Championship, No. 2:15-cv-01045-RFB (D. Nev.). Saveri

---

[5] For example, David Balto, former policy director at the FTC described Mr. Saveri as the
"Michael Jordan of plaintiffs' antitrust." *See* Melissa Lipman, *Lieff Cabraser Antitrust Chief to
Launch Own Firm*, LAW360 (May 1, 2012), *available at*
https://www.law360.com/articles/335937/lieff-cabraser-antitrust-chief-to-launch-own-firm.

Decl., ¶ 4. Many of the cases were groundbreaking in their own right and represented record settlements at the time.

Mr. Saveri has tried numerous class actions and other complex cases. Saveri Decl., ¶¶ 4; 9. In the Southern District of New York, Mr. Saveri was recently appointed lead counsel in *In Re: Visa Debit Card Antitrust Litigation*, No. 1:24-cv-07435-JGK (S.D.N.Y.). His work has resulted in numerous successful resolutions, both before and after trial. As of today, Mr. Saveri and the firm's attorneys have obtained over $5 billion for their clients. JSLF also has extensive experience trying complex cases and has the experience, ability, and will to take this litigation to trial. *See* Saveri Decl., ¶¶ 4; 9; 12. Additional information about JSLF's trial experience can be found in its firm resume. Saveri Decl., Ex. A.

Lastly, JSLF and its lawyers have and continue to devote a significant portion of their practice to litigating seven separate artificial intelligence copyright class action suits, which present class claims and underlying facts similar to those involved here.[6]

### D.     JSLF Has Committed and Will Continue to Dedicate Ample Resources to Prosecute this Consolidated Action Effectively and Efficiently.

As demonstrated by the thousands of hours and out of pocket costs expended to date, Mr. Saveri and JSLF have the attorney and financial resources needed to prosecute this action in the best interests of the proposed class. *See* Fed. R. Civ. P. 23(g)(1)(A)(iv). JSLF, along with its co-counsel, are ably staffed with attorneys, investigators, paralegals and professional staff required

---

[6] *See, e.g., Doe 1 v. GitHub, Inc.*, No. 4:22-cv-06823 (N.D. Cal.) (initial complaint filed Nov. 3, 2022); *Andersen v. Stability AI Ltd.*, No. 3:23-cv-00201-WHO (N.D. Cal.) (initial complaint filed January 12, 2023); *Kadrey, et al v. Meta Platforms, Inc.* No. 3:23-cv-03417-VC (N.D. Cal.) (initial complaint filed July 7, 2023); *In re Google Generative AI Copyright Litigation*, No. 3:23-cv-03440-EKL (N.D. Cal.); *Nazemian v. NVIDIA Corporation*, No. 4:24-cv-01454 (N.D. Cal.) (initial complaint filed Mar. 8, 2024). In one such case, JSLF was appointed interim lead counsel. *See In Re Mosaic LLM Litigation*, 3:24-cv-01451-CRB (N.D. Cal) (initial complaint filed Mar. 8, 2024).

to successfully prosecute this case. In addition to partners Joseph Saveri, Cadio Zirpoli, and Christopher Young, JSLF has devoted numerous younger lawyers, document review attorneys, paralegals, and in-house professional staff and investigators to this case.

JSLF and its co-counsel are committed to litigating the case efficiently and economically. JSLF has the unique advantage of its broad experience leading similar cases. JSLF will institute regular timekeeping and reporting to ensure that work is performed in an efficient manner and to ensure that all professional time associated with this consolidated action is of the highest quality, without duplication or inefficiency. Finally, JSLF is entirely self-funded, with no litigation funder arrangements or similar obligations, nor does JSLF intend to form such arrangements. JSLF can independently finance this litigation through trial, evidenced by JSLF investing almost $9 million in costs to take the *Capacitors* litigation to trial—twice. *See* Saveri Decl., ¶ 12 n.2.

JSLF maintains its home office in San Francisco, California, where OpenAI is also headquartered and where most, if not all, of the depositions of OpenAI witnesses have occurred and are likely to occur in the future.[7] Further, OpenAI maintains its source code and training data inspection room in San Francisco within blocks of JSLF's offices.

### E.  JSLF Has Demonstrated the Ability to Coordinate and Work Cooperatively with the Other Firms Involved in the Class Cases

The *Tremblay* Plaintiffs and JSLF have consistently sought to organize actions against OpenAI and Microsoft before a single court. Indeed, the *Tremblay* Plaintiffs pointed out the benefits of doing so over a year ago, when they recognized that centralization would "avoid the judicial inefficiency and likely contradictory rulings that will result in parallel and near-identical

---

[7] A number of JSLF's co-counsel in *Tremblay* are also based in San Francisco.

class actions proceed in two different districts." *See Authors Guild* Action, ECF No. 71-1 at 12. OpenAI, of course, resisted centralization then.[8]

Since that time, JSLF has committed itself to coordinating discovery with plaintiffs' counsel in the New York actions while balancing and tending to its own separate case schedule in the N.D. Cal. before centralization.[9] Specifically, when the *Tremblay* Court ordered the *Tremblay* Plaintiffs to coordinate depositions with the parties to the New York cases, JSLF and its co-counsel participated in numerous meet-and-confer calls with all other counsel to coordinate the action, and participated in joint mediation with the *Authors Guild* Plaintiffs and defense counsel.

JSLF has consistently embraced opportunities to collaborate and divide labor with the other firms involved in the class and news plaintiff cases. For example, for several of the fact depositions that have been taken thus far, JSLF effectively divided deposition time and topics with lawyers from the *Authors Guild* matter and news cases to minimize or eliminate duplication wherever possible. Saveri Decl., ¶ 18.

If appointed, consistent with its conduct to date, JSLF will continue to work cooperatively with the other law firms representing other plaintiffs in the MDL. JSLF's established relationships and history of effective collaboration with the other firms involved in the MDL actions position JSLF to foster consensus, delegate tasks judiciously, and maintain seamless communication among all plaintiffs' counsel, including the law firms representing the

---

[8] The *Authors Guild* Plaintiffs also opposed.

[9] Coordination efforts were also hamstrung by OpenAI and Microsoft, who to this day, continue to resist sharing its documents across the various cases.

New York class cases at the direction of Mr. Saveri and JSLF.[10] JSLF will leverage its expertise

and ability to promote consensus to present the consolidated class plaintiffs' unified position on

all pretrial matters.

Additionally, JSLF's strategic location and established infrastructure allow the firm to

coordinate closely with all parties and efficiently manage discovery, depositions, and expert

analysis. JSLF's deep bench of attorneys, paralegals, and professional staff, combined with

substantial financial resources and a demonstrated ability to independently fund large-scale

litigation, ensures that JSLF will vigorously prosecute this action through resolution. Indeed,

JSLF has already invested tens of thousands of hours and significant out-of-pocket costs,

reflecting the firm's unwavering commitment to the class.

F.    **JSLF Has the Support of Other Counsel in the N.D. Cal. Consolidated Class Case.**

Mr. Saveri and JSLF also have the support of other counsel of record, who have also filed

cases challenging OpenAI's ChatGPT AI products. Matthew Butterick, who supports the

appointment of Mr. Saveri and JSLF as interim lead counsel, is the primary architect of the first

wave of AI copyright cases, including *Tremblay v. OpenAI* and six others. Mr. Butterick is not

only a lawyer, but also possesses decades of experience in software, writing, and the visual arts,

which enabled him to develop the original insights and theories into the legal problems posed by

---

[10] Regardless of outcome, JSLF is committed to maintaining cooperation and collaboration with its fellow class counsel in this matter. It has worked with each firm on this and other class action matters and expect to do so in the future. JSLF has continuing co-counsel relationships with the various other firms in this multidistrict proceeding: JSLF is co-counsel with BSF in several of the noteworthy putative copyright class actions against artificial intelligence companies (*Doe 1 v. GitHub, Inc.*, No. 4:22-cv-06823 (N.D. Cal.); *Andersen v. Stability AI Ltd.*, No. 3:23-cv-00201-WHO (N.D. Cal.); *Kadrey v. Meta Platforms, Inc.* No. 3:23-cv-03417-VC (N.D. Cal.)), and co-counsel with the *Authors Guild* counsel in several others (*Nazemian v. NVIDIA Corporation*, No. 4:24-cv-01454 (N.D. Cal.); *In Re Mosaic LLM Litigation*, 3:24-cv-01451-CRB (N.D. Cal)). In each of these cases, JSLF has demonstrated the ability to work cooperatively with the teams of lawyers representing the Class Plaintiffs.

generative AI. *See* Kate Knibbs, *Meet the Lawyer Leading the Human Resistance Against AI*, *Wired*, https://www.wired.com/story/matthew-butterick-ai-copyright-lawsuits-openai-meta/ (Nov. 22, 2023).

Bryan L. Clobes, and his law firm Cafferty Clobes, who filed the first non-JSLF case in the country, also support the appointment of Mr. Saveri and JSLF as interim lead counsel. Mr. Clobes and Cafferty Clobes are working effectively alongside JSLF in four separate artificial intelligence lawsuits,[11] demonstrating strong collaboration and a proven ability to work together effectively. Mr. Clobes and CCMS have over thirty years of experience leading, managing and litigating a full range of national class action cases and have recovered tens of billions of dollars for their many clients against defendants from all industry segments. Mr. Clobes and Cafferty Clobes have decades of experience successfully leading large MDLs involving a full range of federal and state claims against Fortune 500 companies. *See* https://caffertyclobes.com. Indeed, over the last thirty plus years, Mr. Clobes and Cafferty Clobes have led, managed and litigated hundreds of antirust and other class actions to successful resolution. He has also represented Fortune 100 companies and state attorneys' general in various large, national MDL proceedings. During the past twenty-five years, Mr. Clobes has achieved and maintained the highest rating, AV Plus, from Martindale Hubbell, and been named a "Super Lawyer".

Mr. Clobes currently represents award-winning authors Andre Dubus III, Andrew Sean Greer, David Henry Hwang, Jacqueline Woodson, Jason Reynolds, Junot Díaz, Laura Lippman, Matthew Klam, Rachel Louise Snyder, Rebecca Makkai, Susan Orlean, and Ta-Nehisi Coates in this case and three other copyright infringement class actions brought on behalf of authors against

---

[11] *See Tremblay* Action; *Andersen v. Stability AI Ltd.*, No. 3:23-cv-00201-WHO (N.D. Cal.); *Kadrey, et al v. Meta Platforms, Inc.* No. 3:23-cv-03417-VC (N.D. Cal.), and *Nazemian v. NVIDIA Corporation*, No. 4:24-cv-01454 (N.D. Cal.).

companies that have pirated their work for use to train and develop generative-AI large language models ("LLMs"). *See Kadrey et al. v. Meta Platforms, Inc.*, No. 3:23-cv-03417-VC (N.D. Cal); *In re Mosaic LLM Litigation*, No. 3:24-cv-01451-CRB (N.D. Cal.); *Nazemian et al. v. Nvidia Corp.*, No. 4:24-cv-01454-JST). Mr. Clobes and Cafferty Clobes have helped lead, manage and litigate all aspects of these four AI LLM cases and have been working very effectively in these cases with JSLF and all of the other firms representing Plaintiffs in the various cases in this MDL proceeding. Many of the cases referred to on the firm's website were also collaborative efforts with many of these same law firms.

As explained further in the next section, BSF also supports JSLF's appointment. BSF itself has already served as interim lead counsel in a highly similar copyright infringement action against a tech giant in relation to its generative AI training.

A broad consensus has coalesced in support of JSLF. All the Plaintiffs in the consolidated class support the appointment of JSLF as interim lead counsel. Plaintiffs Paul Tremblay, Sarah Silverman, Christopher Golden, and Richard Kadrey each have retained JSLF and entrust Mr. Saveri and JSLF with pursuing their claims against OpenAI. The other Plaintiffs in the consolidated California class case, Ta-Nehisi Coates, Junot Díaz, Andrew Sean Greer, David Henry Hwang, Matthew Klam, Laura Lippman, Rachel Louise Snyder, and Jacqueline Woodson, retained Cafferty Clobes and Bryan Clobes, and have worked closely with JSLF and support the appointment of Mr. Saveri as interim lead counsel. In addition, Nicholas Basbanes and Nicholas Ngagoyeanes, who also filed a complaint against OpenAI (which has since been consolidated with the *Authors Guild* Action), support the appointment of Mr. Saveri as interim lead counsel.

G.    **BSF Supports JSLF for Interim Lead Counsel, But Is Ready To Serve as Liaison Counsel or Chair of a Plaintiffs' Steering Committee, or Any Role the Court May Desire**

As noted above, BSF supports the appointment of Mr. Saveri and his firm as interim lead counsel for the Class Cases and is prepared to dedicate its substantial experience and resources to advancing the claims in the Class Cases under JSLF's leadership. If, however, the Court prefers to appoint a firm that has a significant presence and history of litigating MDLs and class actions in this District, in addition to having devoted substantial resources to advancing the *Tremblay* plaintiffs' claims, then BSF is available to serve in any capacity the Court desires—including as liaison counsel, or chair of a steering committee.

Should the Court so decide, BSF has devoted substantial time and effort to advancing discovery and developing the *Tremblay* plaintiffs' claims against OpenAI and their proposed claims against Microsoft. BSF's proactive approach quickly produced key results in discovery. After BSF joined this case, it led the pursuit to secure the production of ChatGPT-4's largest dataset in native format. Further, upon the *Tremblay* Plaintiffs' discovery in January 2025 that Microsoft knowingly exchanged training data for pirated copyrighted works from OpenAI, BSF worked quickly to pursue further discovery on those new facts and propose an amended complaint before this case was centralized in the MDL.

In the *Tremblay* action specifically, BSF has, in conjunction with JSLF, had a key role in moving the case forward, including:

1.  *Rapid engagement and discovery issuance*. After appearing for the *Tremblay* plaintiffs in December 2024, BSF worked with JSLF and issued over 100 additional document requests, targeting key unaddressed or under-addressed areas. The plaintiffs also issued additional interrogatories, the first since December 2023. BSF also immediately began

16

meeting and conferring with OpenAI on most of the discovery from the *Tremblay*
plaintiffs.

2. *Substantial investment of attorney time and resources*. In just six months, BSF attorneys
   and staff have invested well over 2,000 hours in litigating the *Tremblay* plaintiffs' claims
   and meeting court's deadline for the close of fact discovery, which had been April 28,
   2025. This substantial investment reflects BSF's role and commitment to advancing the
   case.

3. *Securing OpenAI's Colang dataset*. BSF, along with Matthew Butterick, took over an
   effort to compel the native production of OpenAI's English Colang Dataset, the largest
   GPT-4 training set, which has already revealed tens of thousands of instances of potential
   copyright infringement of book content. BSF also negotiated and implemented a detailed,
   modern security protocol for native dataset production, which has set a precedent for
   future native productions, enabling faster, more thorough review of large datasets than
   similar inspection protocols in this MDL. Magistrate Judge Ona Wang even remarked at
   the Discovery Status Conference on May 27, 2025 that she had followed that
   development and considered borrowing the approach for use in the MDL. May 27, 2025
   Tr. at 20:5-21:14.

4. *Expanding and strengthening the case*. While mindful of the Court's guidance at the
   CMC, pre-consolidation, BSF led the effort to amend the complaint in the *Tremblay*
   action to add new claims and parties. Much of the evidence underlying the amendments
   was produced after BSF appeared in the action, and BSF worked expeditiously with JSLF
   and other co-counsel to review the discovery, research and develop the claims supported
   by that discovery, and seek to amend the complaint.

17

5. *Contributing to the expert effort*. BSF located and disclosed two key experts who were retained by JSLF on behalf of the *Tremblay* Plaintiffs: a data engineering expert (Ayyub Ibrahim of the University of California – Berkeley) and a torrenting expert (Prof. David Choffnes of Northeastern University), who are already doing important work and uncovering key facts. BSF is in further discussions with leading-edge LLM experts and economists about joining the plaintiffs in the Class Cases.

6. *Aggressive pursuit of offensive discovery*. BSF played a major role in pursuing offensive discovery. For example, BSF has led an effort to obtain data from OpenAI that it believes was needed to prevent regurgitation of text. BSF also worked to uncover OpenAI's use of pirated copyrighted works in LibGen well into 2022 after it claimed in an interrogatory response that its use at discontinued in 2021. BSF also propounded RFAs and secured key admissions of infringement by OpenAI of the works at issue. Furthermore, BSF continues to push to correct numerous production deficiencies, including with respect to Slack messages and hyperlinks. BSF is also leading the *Tremblay* plaintiffs' challenges to OpenAI's many clawbacks of documents and its many privilege assertions and withholding of documents in discovery.

7. *Key role in depositions.* BSF took three of eight depositions for the *Tremblay* plaintiffs and was scheduled to take several more prior to the JPML transfer order. These depositions included OpenAI's Vice President of Strategy and Operations, and its Vice President of Product and former Head of Applied, which included several ChatGPT models.

BSF's support of JSLF is based off of its own leadership in similar generative AI cases. BSF was appointed interim lead counsel in *Kadrey et al. v. Meta Platforms, Inc.*, No. 23-cv-

03417 (N.D. Cal.) (hereafter *Meta*), another significant copyright class action involving large language models on behalf of some of the same plaintiffs in the *Tremblay* action. Dkt. 232. In *Meta*, BSF coordinated a team of nearly two dozen attorneys across five law firms (including JSLF) to complete fact discovery in less than three months, complete expert discovery, and brief and argue summary judgment. After BSF was appointed lead counsel, the *Meta* plaintiffs quickly achieved several key victories that shaped the legal landscape for GenAI copyright claims, including: (1) obtaining leave to amend the complaint to add new claims, thereby expanding the scope and impact of the case; (2) driving the expansion of the case to target Meta's use of peer-to-peer file sharing (torrenting) to copy and distribute massive troves of copyrighted works from online shadow libraries of pirated works, including LibGen—a novel and significant theory in the context of AI model training and deployment; and (3) securing an extension of the discovery period to ensure the plaintiffs had additional time to develop their claims.

The *Meta* action substantially overlaps with the Class Cases in this Court, both in terms of legal theories and factual issues, making BSF's role and experience as interim lead counsel in the *Meta* action directly relevant to the continued and efficient prosecution of the Class Cases. *See, e.g.*, *In re Insulin Pricing Litig.*, 2017 WL 4122437, at *3 (D.N.J. Sept. 18, 2017) (appointing as lead counsel firms that "successfully litigated similar claims against comparable defendants"). Based on this experience, BSF knows what it takes to lead a case like this one, and its support of JSLF reflects that.

The firm's many achievements include leading roles in major complex cases for plaintiffs and defendants. In one recent notable case in this District, BSF served as co-lead counsel in litigation against JPMorgan Chase & Co. on behalf of victims of Jeffrey Epstein. Judge Rakoff granted final approval of the $290 million settlement between JPMorgan and the class of victims,

resolving claims that the bank kept Epstein as a client despite its knowledge of his sex trafficking scheme. Judge Rakoff remarked, "in my 27 years on the bench, I have not seen such a good settlement arrive in such a short order, of a case of similar complexity," underscoring the firm's efficiency and effectiveness in handling highly complex and sensitive matters. BSF has been named to The American Lawyer's "A-List," received multiple "Litigation Department of the Year" honors, and is consistently ranked in Chambers USA and Legal 500 for its litigation prowess.

The BSF team in this case is led by David Boies, one of the most celebrated trial lawyers in the country who has litigated some of the most consequential legal issues of the past several decades (and won at trial); along with veteran trial lawyers Maxwell Pritt, the Administrative Partner of BSF's San Francisco and a veteran of several of the largest technology-related litigations in the past decade, including *Waymo v. Uber*; and Jesse Panuccio, the former third-ranking official at the U.S. Department of Justice (acting Associate Attorney General of the United States).

Again, BSF supports JSLF as interim lead counsel and believes Mr. Saveri's leadership will efficiently and effectively advance the Class Cases, as has been the case for the *Tremblay* action. But to the extent the Court decides otherwise, BSF is ready to serve. In all events, it is paramount that counsel for the Northern District of California plaintiffs—the original filers and the plaintiffs who brought these actions first and progressed them furthest—maintain their leadership position in this consolidated action.

In sum, all of the plaintiffs and law firms in the consolidated California class case support the appointment of Mr. Saveri and JSLF as interim lead counsel. No other firm can boast such wide and deep support from co-counsel and their clients.

### III.    CONCLUSION

For the foregoing reasons, JSLF and Joseph Saveri satisfy the criteria set forth in Rule 23(g). The *Tremblay* Plaintiffs respectfully request the Court appoint JSLF as interim lead counsel for the consolidated class.

By:  /s/ *Joseph R. Saveri*

     Joseph R. Saveri

JOSEPH SAVERI LAW FIRM

Joseph R. Saveri

jsaveri@saverilawfirm.com

601 California Street, Suite 1505

San Francisco, CA 94108

Telephone: (415) 500-6800

*Attorney for Paul Tremblay, et al*


Bryan L. Clobes

135 South LaSalle Street, Suite 3210

Chicago, IL 60603

Telephone: (312) 782-4880

Email: bclobes@caffertyclobes.com

*Attorney for Paul Tremblay, et al*

By:  /s/ *David Boies*

     David Boies

BOIES SCHILLER FLEXNER LLP

David Boies

Dboies@bsfllp.com

333 Main Street

Armonk, NY 100504

Telephone: (914) 749-8201

*Attorney for Paul Tremblay, et al*


Matthew Butterick

1920 Hillhurst Avenue, 406

Los Angeles, CA 90027

Telephone:   (323) 968-2632

Facsimile:   (415) 395-9940

Email:     mb@butcoricklaw.com

*Attorney for Paul Tremblay, et al*