**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

IN RE: OPENAI, INC. COPYRIGHT
INFRINGEMENT LITIGATION

Transfer From the United States District
Court for the District of Delaware:
ZIFF DAVIS, et al. v. OPENAI, INC. et al., No.          25-md-3143 (SHS) (OTW)
1:25-cv-04315-SHS-OTW

**PLAINTIFFS ZIFF DAVIS, INC., ZIFF DAVIS, LLC, IGN ENTERTAINMENT, INC.,
AND EVERYDAY HEALTH MEDIA, LLC'S MEMORANDUM OF LAW IN
OPPOSITION TO OPENAI, INC, ET AL.'S PARTIAL MOTION TO STAY**

Plaintiffs Ziff Davis, Inc., Ziff Davis, LLC, IGN Entertainment, Inc., and Everyday Health

Media, LLC ("Plaintiffs" or "Ziff Davis"), by and through their undersigned counsel, respectfully

submit this response in opposition to the motion by defendants OpenAI, Inc., OpenAI GP, LLC,

OpenAI, LLC, OpenAI Opco LLC, OpenAI Global LLC, OAI Corporation and OpenAI Holdings,

LLC ("Defendants" or "OpenAI") for a partial stay of three of the causes of actions in Ziff Davis's

nine-count complaint, as well as a stay related to certain AI models ("Motion"), for the reasons set

forth herein.

I.      **PRELIMINARY STATEMENT**

On April 3, 2025, the United States Judicial Panel on Multidistrict Litigation ("JPML")

centralized twelve actions against OpenAI. The JMPL's decision stemmed from OpenAI's motion

to consolidate cases that "share factual questions arising from allegations that [OpenAI] used

copyrighted works, without consent or compensation, to train their large language models (LLMs),

such as GPT-4, which underlie defendants' generative artificial intelligence products[.]" MDL

Transfer Order, ECF No. 1 at 2. OpenAI successfully argued that consolidation was necessary "to

prevent duplicative discovery," representing that "significant discovery[1]" remains for the consolidated cases. The JPML agreed, emphasizing that despite "differences in claims and the underlying material alleged to be infringed," the "substantial overlap in factual questions and discovery relating to defendants' training of their LLMs" warranted centralization. *Id* at 2-3.

Less than three weeks after the JPML's ruling, ***and before any proceedings took place*** in the instant multi-district litigation (the "MDL"), Ziff Davis filed a timely action arising from the same overlapping factual questions. OpenAI itself notified the JPML, leading to consolidation of Ziff Davis's action into the MDL before the initial Case Management Conference ("CMC"). Even before its consolidation was formalized Ziff Davis had been working with the other news plaintiffs, and at the CMC, the Court appointed Ziff Davis's counsel to be part of the leadership committee.

Having secured the advantages of consolidation, OpenAI immediately sought to weaponize the MDL by seeking to stay certain of Ziff Davis's claims—a proposal the Court rejected at the CMC. Without seeking reconsideration, OpenAI now tries again. Yet it still fails to show any compelling basis for why these originally-filed claims should be stayed.

Although it decries the supposed burden of additional discovery and warns about potential delay, OpenAI provides zero support as to either. While vaguely referencing prior document productions, OpenAI speculates only that Ziff Davis's claims will result in the investiture of "similar effort, time, and resources" (Mot. at 8), a claim that is unsubstantiated and almost certainly untrue. OpenAI also fails to explain why additional discovery that may be required would substantially affect the case schedule to which it has already agreed. In fact, it is OpenAI that foments delay here by bringing this motion, forcing Ziff Davis to defend and the Court to revisit an argument already raised and rejected.

---

[1] *See The Center for Investigative Reporting, Inc. v. OpenAI, Inc. et al.* (1:24-cv-04872) (SHS)(OTW), ECF No. 125 at 2-3.

At the same time, OpenAI argues that Ziff Davis would not be harmed by a stay but provides no explanation as how, when, or even where Ziff Davis would be able to proceed with its claims in full. Given the interrelatedness of its additional causes of action to its other claims, and to claims made by the other plaintiffs in this MDL, being forced to wait to proceed on its timely and well-pled claims for a year or longer would severely prejudice Ziff Davis, particularly in light of ongoing infringement and the speed with which the world continues to adopt OpenAI's technology. OpenAI's stay proposal effectively forces Ziff Davis, OpenAI and this Court (or another court) go through this process twice: engage in fact discovery, expert discovery, and presumably summary judgment on some causes of action and AI models, only to repeat the process at some later date for the others, all of which fundamentally rely on the same factual basis. OpenAI should not be permitted to immediately force another party into the very kind of fractured proceeding it expressly told the JPML it wished to avoid.

## II.    LEGAL STANDARD

Federal courts possess an inherent power to stay proceedings on their dockets. *Landis v. N. Am. Co.,* 299 U.S. 248 (1936). But as the Supreme Court also pronounced in *Landis*, "only in rare circumstances will a litigant in one cause be compelled to stand aside while litigants in another settles the rule of law that will define the rights of both." *Id.* at 255. Accordingly, the "movant bears the burden of establishing its need for such a stay." *Id.* (quoting *LaSala v. Needham & Co., Inc.*, 399 F.Supp.2d 421, 427 (S.D.N.Y. 2005)). To do so, it "must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else." *Frilando v. Dutchess Sch. of Driving, Inc.*, No. 15 Civ. 3972 (VB), 2016 WL 9503817, at *1 (S.D.N.Y. Apr. 18, 2016) (internal quotation marks omitted).

While the decision to stay is a matter of discretion, courts in this Circuit typically consider the following factors: 1) the private interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed; 2) the private interest of and burden on the defendants; 3) the interests of the courts; 4) the interests of persons not parties to the civil litigation; and 5) the public interest. *See Rankine v. Levi Strauss & Co*., 674 F.Supp.3d 57, 68 (S.D.N.Y. 2023) (quoting *Kappel v. Comfort*, 914 F. Supp. 1056, 1058 (S.D.N.Y. 1996)). In multidistrict litigations, stays of cases or claims are exceedingly rare early in the proceeding, as discussed further below, and the *Kappel* factors decisively disfavor a stay here, especially given the nature and purpose of this MDL.

### III.    ARGUMENT

#### A.    The Court Has Already Denied OpenAI's Stay Request.

In both the Joint Initial CMC Statement, ECF No. 166 at 71, and again at the CMC itself, OpenAI argued the Ziff Davis action should be stayed in its entirety or only "proceed[] on the common issues that are currently pled in these coordinated proceedings, the claims and the products currently in the case." Hearing Tr. 67:4-14, May 22, 2025. This latter argument is *precisely* the one it now makes again on this motion. The Court rejected this argument at the CMC:

> MR. SLAUGHTER: […] All we're suggesting is, as a tagalong action, which can be treated differently and should be, it should not unduly expand the scope. It has, as I said, additional claims; it proposes additional products which will have all of the impacts --
> THE COURT: Yeah, but Ms. Brook's point was you wanted the MDL.
> MR. SLAUGHTER: […] We're prepared to proceed — and we think we should — on the common issues and on the common claims.
> THE COURT: All right. This is what you do: We have a complaint. You file your response. You can move to dismiss on any grounds you want, but we've got a complaint.
> MR. SLAUGHTER: Thank you, your Honor.
> THE COURT: I think that handles it.

*Id.* at 68:21-25; 69:1-17. OpenAI wanted an MDL and got it. Ziff Davis's timely action was, *per OpenAI's request*, then duly transferred into this MDL. The Court made clear that OpenAI must

now deal with Ziff Davis's complaint as it would any other. Indeed, OpenAI in fact has now filed a partial motion to dismiss some of Ziff Davis's claims. *See* ECF No. 52.

In addition, OpenAI completely mischaracterizes the colloquy and ruling at the CMC. The Court did *not*, as OpenAI would now have it, rule that Ziff Davis "may not add new causes of action or products [and] must stick to the models in the case." Mot. at 5. The Court's ruling on that issue was unequivocally limited to a pending "consolidated class action complaint" and, again, only to those "causes of actions and products" [that] "have already been asserted in ***these cases***" (emphasis added, referencing the class actions). Hearing Tr. 20:15-23, May 22, 2025. OpenAI clearly recognized that this holding applied solely to class plaintiffs' consolidated complaint when it later attempted—and failed—to compel the court to apply that limitation to Ziff Davis.

Pursuant to Local Civil Rule 6.3, "a notice of motion for reconsideration must be served within 14 days after the entry of the court's order being challenged." Even then, such a motion will only be granted if the "[movant] identifies 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'" *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust*, 729 F.3d 99, 104 (2d Cir. 2013). Nothing in the Rule limits this procedure to written orders, and OpenAI's time to challenge this Court's denial of OpenAI's request for a stay expired on June 5, 2025, long before it filed this motion. Even if this were not so, the Court should deny OpenAI's request on the same basis as it did at the CMC, and for all of the other reasons set forth below.

### B.    OpenAI Cannot Demonstrate the Need for a Stay

On this motion, OpenAI asks the Court for two different things. First, it argues that the Court should entirely stay certain of Ziff Davis's causes of action (Counts 4, 5, and 7). Second, it seeks a stay of discovery with respect to certain AI models, regardless of the causes of action to

which such models relate. Throughout its motion, Open AI repeatedly and generically references Ziff Davis's new "claims and models" (Mot. at 4-8) but utterly fails to delineate them for the purpose of applying the *Kappel* factors, effectively asking the Court to issue a blanket stay over anything OpenAI deems to be "new," without supporting its motion as to each, or even in the aggregate. Below, we address the causes of action and additional models separately.

### i.    *Ziff Davis Will Be Prejudiced by a Partial Stay*

**Causes of Action.** Ziff Davis seeks to litigate together all the causes of action it has asserted in this proceeding due to their fundamental interconnectedness and the significant burden bifurcation would impose. The causes of action are predicated on a core set of factual questions that largely overlap with those that underpin the claims already being asserted by other plaintiffs in this MDL, with narrow additional facts for discovery. Forcing Ziff Davis to wait to move forward with some of these claims and proceed with fact discovery on them at some undetermined later time and in some undetermined context would inflict severe prejudice on Ziff Davis for the reasons more fully stated below.

OpenAI cites no authority suggesting that the existence of non-overlapping issues in an MDL—let alone substantially overlapping ones—is a basis for staying portions of a plaintiff's claim. On the contrary, on deciding to consolidate the prior actions into this MDL, the JPML considered and dismissed the notion that differences in underlying claims—including differences in industry, content (fiction versus non-fiction), form of infringement (input versus output), and diversity of causes of action (e.g., copyright infringement versus DMCA[2] claims)—presented an obstacle to centralization.[3] *See* MDL Transfer Order, ECF No. 1 at 3 ("[D]ifferences in claims and

---

[2] Digital Millenium Copyright Act.

[3] Specifically, these differences included "class action cases [brought] by authors of fiction and non-fiction works (primarily novels) who allege that their copyrighted works were infringed when defendants used them as input in the training of their LLMs," as opposed to "News plaintiffs assert[ing] that millions of their copyrighted works (newspaper

the underlying material alleged to be infringed […] do not present a significant obstacle to centralization given the substantial overlap in factual questions and discovery relating to defendants' training of its LLMs.").

The principle that factual overlap among these cases eclipses their marginal differences applies with great force to Ziff Davis's claims. Each of Ziff Davis's theories of liability arise from a "substantial overlap in factual questions and discovery relating to defendants' training of its LLMs." All of Ziff Davis's theories of liability fundamentally hinge on the same core factual inquiries: whether and how OpenAI accessed, copied, used, and distributed Ziff Davis's copyrighted works in and in connection with its training of its LLMs. Staying Ziff Davis's "new" theories of liability, all of which arise from substantially overlapping conduct already at issue in this case, would necessitate redundant efforts in gathering and presenting evidence related to the creation and content of OpenAI's training datasets and the relationship of Ziff Davis's copyrighted works thereto.

Specifically, while OpenAI seeks to stay Ziff Davis's DMCA cause of action under 17 U.S.C. § 1202(b)(3) for distribution of works with copyright management information ("CMI") removed, other Plaintiffs already assert DMCA claims under 17 U.S.C. § 1202(b)(1),[4] the elements of which largely overlap with those of a § 1202(b)(1) claim, with the added requirement of showing a "distribution" of copies of the work with CMI removed.[5] The additional element of distribution

---

articles) were infringed both when used as input in the training of defendants' LLMs and by the LLMs output," and that certain "DMCA plaintiffs, unlike plaintiffs in the other cases, do not allege copyright infringement. Instead, they allege that defendants violated the Digital Millennium Copyright Act (DMCA)."

[4] Moreover, one of the other News Plaintiffs, The Intercept, already asserted a 17 U.S.C. § 1202(b)(3) claim, although that claim was later dismissed. *See* Opinion and Order in *The Intercept Media, Inc. v. OpenAI, Inc. et al.* (1:24-cv-01515), ECF No. 127 at 26 ("Intercept Media Opinion and Order").

[5] The elements of a § 1202(b)(1) claim are the existence of CMI on the allegedly infringed work, intentional removal or alteration of that CMI, and defendant's knowledge that CMI removal "'[would] induce, enable, facilitate, or conceal' copyright infringement." Intercept Media Opinion and Order at 20 (citing & quoting *Fischer v. Forrest*, 968 F.3d 216, 223 (2d Cir. 2020)); *see also* 17 U.S.C. § 1202(b)(1). The elements of a 1202(b)(3) claim are the existence of CMI on the allegedly infringed work; knowing distribution of works or copies of works with CMI removed or

hardly warrants a stay, especially as written document requests in this case from other plaintiffs have already sought documents related to CMI that will likely capture distribution to a large degree,[6] such that any additional discovery of the distribution component is likely to be limited.

Similarly, the factual basis for Ziff Davis's DMCA claim for circumvention of technical measures under 17 U.S.C. § 1201(a)(1)(A) overlaps with the factual allegations of—and documents sought in discovery by—other news plaintiffs. Ziff Davis alleges that OpenAI has circumvented the very robots.txt instructions that OpenAI itself promulgated and then touted as an effective way to avoid scraping by its bot. Compl. ¶¶ 7, 107, 122 & 233–40. In their Complaint, the *Daily News* plaintiffs alleged that OpenAI "approved and continues to monitor and support these Custom GPTs on its platform notwithstanding its alleged promise to respect website owners' robots.txt instructions that block OpenAI's bots and representation that it 'led the AI industry in providing a simple optout process for publishers … to prevent [its] tools from accessing their sites.'" *Daily News LP v. Microsoft Corporation et al.*, 1:24-cv-03285, ECF No. 1 ¶ 152 (*citing & quoting OpenAI and Journalism,* OPENAI (Jan. 8, 2024), https://openai.com/blog/openai-and-journalism). And again, written document requests in the consolidated news cases sought information about OpenAI's actions with respect to robots.txt instructions, leading to OpenAI running broad search terms such as "(robot OR crawl* OR bot OR spider OR robots.txt) w/15 (data OR content OR index)." Any additional discovery needed by Ziff Davis will again be targeted.

---

altered, and defendant's knowledge that the distribution will "induce, enable, facilitate, or conceal an infringement." *Id.* at 26 (*citing & quoting Mango v. BuzzFeed, Inc.*, 970 F.3d 167, 171 (2d Cir. 2020)).

[6] First Set of Requests for Document Production Nos. 7 & 48 and Third Set of Requests for Document Production No. 65 in *The Center for Investigative Reporting, Inc. v. OpenAI, Inc. et al.* (1:24-cv-04872). These requests led to agreed-upon search terms such as "CMI OR (copyright w/3 management)."

Finally, Ziff Davis's cause of action for unjust enrichment is pled in the alternative, seeking to hold OpenAI accountable for its use of Ziff Davis source material *if* the Court were to find that OpenAI has not used copyrightable expression when training its models. This claim turns on exactly which aspects of Ziff Davis's works OpenAI is exploiting for training—expressive content or information about that content. OpenAI fails to explain what (if any) additional discovery would be needed to address this claim that has not already been sought in discovery by other Plaintiffs, or that Ziff Davis might seek in connection with claims not subject to this partial motion.

**Models.** With respect to AI models, all of the challenged models are iterations or direct descendants of the models already at issue in the MDL, meaning they almost undoubtedly share substantial commonalities in their development, training data, and operational mechanisms. Indeed, the models specifically identified in the Complaint are those central to demonstrating OpenAI's alleged infringing activities as they relate to Ziff Davis, as Ziff Davis conducted a significant amount of its testing on these newer models in particular. *See* Compl. ¶ 161 & Ex. E (output generated using 4o and o3 models). OpenAI fails to explain how the inclusion of new models would materially impact discovery (and certainly OpenAI presents no facts supporting its contention, as discussed below). Ziff Davis is entitled to explore any key differences in the newer models. Forcing Ziff Davis to proceed in this MDLsigs only on older models will severely undermine its ability to present its case on the merits when many of the key examples underlying its claims result from the use of "newer" models.

Again, OpenAI sought an MDL here. Having received what it sought, OpenAI now asks the Court to stay discovery concerning what Open AI conclusively labels "out-of-scope" models. This is a self-serving attempt to artificially narrow the scope of the very MDL it wanted. Investigating newer models will, by necessity, entail examining the same core technological

underpinnings and developmental processes already at the heart of this MDL. While OpenAI vaguely posits that each of its models is somehow vastly different from prior iterations, it makes no effort to support this bald assertion, and all available evidence points to the fact that LLMs are developed in similar ways: they harness vast databases of content, they are based on "transformer" architecture, there are two basic steps in training (pre-training and fine-tuning), and they generate predictive output based on their training.[7] Differences may arise in the architectural parameters and in the fine-tuning process,[8] but OpenAI has not made out a case that these types of distinctions will drive a substantial difference in the manner in which the case will proceed or discovery will be conducted.

On the other hand, should Ziff Davis be forced to wait to pursue its claims over subsequent model iterations, both sides would be compelled to later endure essentially the same foundational discovery, including but not limited to duplicative investigation into the core architecture, training methodologies, and data curation practices that demonstrably apply across all versions of GPT, and repetitive deposition testimony from the same key OpenAI personnel responsible for the development of the underlying architecture and technology. And OpenAI provides no explanation for how Ziff Davis's case can meaningfully proceed without discovery into all of the models relevant to all of its claims, including those OpenAI has not moved to dismiss or stay. Finally, while Ziff Davis does not anticipate that differences between models will cause any unreasonable expansion of discovery or proceedings, the ways in which OpenAI has altered its training processes (including fine tuning) for newer model iterations may well impact the infringement analysis, in terms of how and what content is being memorized and how it is later retrieved.

---

[7] Vaswani, A., Shazeer, N., Parmar, N., Uszkoreit, J., Jones, L., Gomez, A. N., Kaiser, Ł., & Polosukhin, I., *Attention Is All You Need*., ArXiv.org (June 12, 2017) (last revised Aug. 2, 2023), https://doi.org/10.48550/arXiv.1706.03762.

[8] *See, e.g.,* Huzefa Chawre, *Fine-Tuning LLMs: Overview, Methods, and Best Practices*, Turing (Nov. 21, 2023) https://www.turing.com/resources/finetuning-large-language-models

OpenAI's contention that Ziff Davis somehow "delayed" in filing this action is baseless. Ziff Davis exercised its fundamental right to file a timely action within the bounds of the applicable statutes of limitations. No law, rule, or principle compels an injured party to initiate an action simultaneously with actions brought by unrelated plaintiffs in other jurisdictions, especially in a matter of this gravity and complexity. OpenAI attempts to rely on two cases for this contention (*see* Mot. at 11), neither of which is remotely applicable. The first, *Royal Park*, involved a lawsuit concerning the depletion of trust assets due to litigation expenses and focused on the exigency of the claimed harm and the plaintiffs' actions contradicting that claim, as opposed to the passage of time within a statutory period. *See Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co.*, No. 17 Civ. 5916 (AJN), 2018 WL 3849840 (S.D.N.Y. Aug. 10, 2018). The second, *In Re Bank of America*, involved a temporary stay of proceedings in an MDL regarding class certification pending a Supreme Court decision that could influence class standing. *In re Bank of Am. Cal. Unemp. Benefits Litig.*, No. 21 MD 2992, 2024 WL 4219987 (S.D. Cal. Sept. 17, 2024). This was a procedural delay for judicial efficiency, not an issue of a plaintiff's "tardiness" in initiating a claim. OpenAI's attempt to argue that Ziff Davis will suffer no prejudice because it "waited more than a year" after initial communications regarding infringement is utterly devoid of legal or factual support.

Finally, allowing a partial stay as to the newer models at issue in Ziff Davis's case carries an unacceptable risk of evidence spoliation and irreversible loss. Disputes relating to OpenAI's preservation of data, including the deprecation of models, missing or inaccessible datasets, discarded data policies and the deletion of output logs for OpenAI's enterprise and API products are already central issues in this case,[9] and there is no guarantee OpenAI will not continue to

---

[9] By Defendant's own admission "there is no infrastructure even available to even retain that data because that data is actively managed by the actual customer themselves." Hearing Tr. 16:18-21, May 27, 2025.

exercise default policies of extensive data deletion after 30 days.[10] OpenAI has admitted, for instance, that certain of its products have already been "deprecated," and this Court has noted that "there is considerable volume data that's been lost, not to be recovered."[11] The integrity of discovery therefore demands that all relevant models at issue remain within the purview of this unified MDL. In light of this documented history of data loss and the inherent risk of further spoliation, granting a partial stay would not only jeopardize Ziff Davis's ability to prove its case but also fundamentally undermine the integrity of these proceedings.

        **ii.**        ***The Interests of the Court Do Not Favor a Partial Stay***

OpenAI argues that a partial stay is "consistent with the Court's objective to streamline the MDL proceedings" (Mot. at 5), but as discussed above, this contradicts OpenAI's own arguments and representations when it sought the MDL and the reasoning of the JPML in granting OpenAI's application, and it misrepresents the Court's prior rulings at the CMC. Severing the Complaint by staying causes of action or by isolating certain models for later proceedings would lead to protracted and inefficient litigation, inevitably resulting in duplicative discovery efforts and undermining principles of judicial economy. OpenAI has not articulated *any* viable pathway for Ziff Davis to meaningfully prosecute its claims without discovery into these demonstrably relevant models, nor has it substantiated its assertions that such discovery would be unduly burdensome on OpenAI or the Court. A partial stay would therefore not only fragment the discovery process and delay the resolution of critical disputes, but would also effectively ask the Court to devise a bespoke litigation approach for Ziff Davis alone, on claims that largely dovetail with the claims brought by other Plaintiffs in the MDL.

---

[10] *Id* at  42:9-10,
[11] *Id.* at 42:11-13.

Granting even a partial stay this early in an MDL would be unprecedented. Although there is ample authority for stays being granted in tag-along cases pending a decision by the JPML, *see*, *e.g.*, *Royal Park Invs. SA/NV v. Bank of Am. Corp.*, 941 F. Supp.2d 367, 370 (S.D.N.Y. 2013),[12] and tag-along cases transferred into an MDL much later in the MDL proceedings are sometimes stayed, *see*, *e.g.*, *Tennessee Med. Ass'n v. United Healthgroup Inc.*, No. 00-1334-MD, 2014 WL 12837582, at *1 (S.D. Fla. Jan. 16, 2014), OpenAI has provided no authority—because none exists—in which a stay as to claims arising from the same factual questions in a transferred action was granted immediately after transfer into the MDL but before any substantive decisions were pending before the Court.

The cases OpenAI relies on in support of its position are inapposite. *In re Ford Motor Co. Bronco II Prods. Liab. Litig.*, No. Civ. A. 95-1966, 1996 WL 148294 (E.D. La. Apr. 1, 1996), concerned a tag-along case ("*Kloster*") that was transferred nearly two years after the MDL was instituted. Even then, the MDL court initially suggested that *Kloster* was transferred "early enough for the court to expect compliance with any deadlines imposed by the court that had not yet passed." *Id.* at *2. However, "Kloster did not so comply." *Id.* Instead, Kloster moved for class certification "well after the deadline . . . and after the core plaintiffs had filed their class certification motion and defendant had responded thereto." *Id.* at *1. Still, the defendants did not move to stay; instead, the MDL court determined that plaintiff's failure to comply with its imposed

---

[12] *See also Meyers v. Bayer AG*, 143 F.Supp.2d 1044, 1046–47 (E.D. Wis.2001) (staying the question of whether there was federal question jurisdiction pending the results of proceedings before the JPML seeking to transfer the case to another district); *Aikins v. Microsoft Corp.*, No. A. 00–0242, 2000 WL 310391, at *1 (E.D. La. Mar. 24, 2000) (declining to decide a motion to remand because "the purpose of the JPML is to promote judicial economy and to prevent inconsistent rulings [and] [t]his case presents questions of fact similar to the other actions pending before the JPML."); *Rivers v. Walt Disney Co.*, 980 F.Supp. 1358, 1362 (C.D. Cal.1997) (stating that "a majority of courts have concluded that it is often appropriate to stay preliminary pretrial proceedings while a motion to transfer and consolidate is pending with the MDL Panel because of the judicial resources that are conserved.").

deadlines, *and* the fact that plaintiff's motion was "virtually identical" to the prior class definition, justified a stay of plaintiffs' late-filed *motion*.

Similarly, Open AI mischaracterizes *Tennessee Med.*, where—after **thirteen years** in the MDL—the Court designated one case to be the central action and issued stay orders as to *all* remaining actions pending resolution of the central issue in the lead case. *Tennessee Med. Ass'n*, 2014 WL 12837582. Further, while the cited decision presents only limited background, it appears that the stays were unopposed and even supported by the other plaintiffs.

*Garza v. Organon USA, Inc.* involved a motion to stay pending possible transfer into MDL proceedings and not, as here, when such action had already been transferred and consolidated. *See* No. 13-cv-04988 RS, 2013 WL 6443433 (N.D. Cal. Dec. 9, 2013).

Nothing in the fact patterns of *In re Ford, Tennessee* or *Garza* is at all comparable to the current case. Ziff Davis filed a timely complaint based on the same underlying questions of fact mere weeks after the MDL was ordered. Defendants identified the action to the JPML due to these similarities. The action was transferred prior to the CMC. Ziff Davis has not missed any deadlines (because no such deadlines have yet been imposed), and it is well positioned to catch up with the other Plaintiffs on discovery efforts within the current discovery timelines. Moreover, nothing in any of the cases cited by OpenAI even remotely suggests that all tag-along actions should be stayed pending resolution of the central claims, and it cites no case law—because none exists—for any such proposition, which would undermine the very purpose of a multidistrict litigation to ensure that all relevant discovery and other pretrial proceedings take place in a coordinated fashion, and that none of the plaintiffs are prejudiced by duplicative discovery or inconsistent rulings on pretrial matters. *See* Federal Judicial Center, Manual for Complex Litigation, Fourth (2004), § 20.1, §

20.13 and § 20.131. The interests of the Court do not favor a stay here, but rather militate against one.

### iii.    The Burden on OpenAI Does Not Favor a Partial Stay

OpenAI's arguments as to burden are entirely unsupported. OpenAI asserts that, absent a partial stay, it would be "forced to expend significant time and resources" on "new claims and models" (Mot. at 8), yet it offers no evidence to support this claim beyond merely tallying the number of documents already exchanged. While OpenAI highlights its document production to other plaintiffs, the reality is that discovery, as OpenAI has stated, remains far from complete. The parties have exchanged initial productions, but with only four depositions conducted to date, a vast and critical range of discovery avenues remains unexplored. The parties have now agreed on a case schedule that requires the completion of fact discovery by February 27, 2026, giving Ziff Davis and OpenAI over eight months to conduct such discovery. ECF No. 211.

OpenAI's cries of "burden" are particularly unfounded given the extensive discovery that it seeks from Ziff Davis. Already, OpenAI has served over *300* written discovery requests on Ziff Davis, so the discovery burden on Ziff Davis—which is starting from scratch—is enormous. In contrast, to date Ziff Davis has served only 22 additional written requests on OpenAI thus far, including several "me too" requests requiring OpenAI to *update* the documents already provided to the other news plaintiffs as if propounded by Ziff Davis. The MDL procedure is not intended to afford the defendant carte blanche for seeking one-way discovery from new plaintiffs.

A party seeking a stay bears the burden of showing that a stay is warranted. *Frilando v. Dutchess Sch. of Driving, Inc.*, No. 15 Civ. 3972 (VB), 2016 WL 9503817 (S.D.N.Y. Apr. 18, 2016). Certainly, OpenAI has not presented any evidence, through declarations or otherwise, that this is the case. Nor has it substantiated its arguments with any facts whatsoever. And the eight

months remaining in the discovery period should give OpenAI ample time to make training data and source code for the additional models available for inspection, especially as the burden of inspection largely falls on Ziff Davis, not on OpenAI.

OpenAI has therefore failed to "make out a clear case of hardship or inequity in being required to go forward" with all claims and models in this case, as required under the standard of this Circuit. *Frilando*, 2016 WL 9503817, at *1.

### iv.    The Interests of Non-Parties and the Public Do Not Favor a Partial Stay

Finally, the interests of non-parties and the public are decidedly *not* served by a partial stay. OpenAI's assertion that litigating Ziff Davis's claims will "slow everything down" into a "never-ending process" (Mot. at 8) is a gross mischaracterization. It also ignores the fact that the need to address newer models is a direct result of OpenAI's continuous, rapid iteration of allegedly infringing products *during* active litigation. Ziff Davis's claims and the models they implicate are inextricably linked to the core issues of this MDL. Indeed, the public interest demands a comprehensive, rather than splintered, resolution to this complex technological dispute. The public needs full transparency and a holistic understanding of the impact of OpenAI's products on Ziff Davis's claims. This cannot be achieved by artificially segmenting claims that are factually and technologically intertwined; such a piecemeal approach only perpetuates uncertainty and inhibits the public's right to clarity regarding novel technological impacts. Unlike the cases cited by Defendants—*see e.g.*, *In re OxyContin Antitrust Litig.*, in which a stay was granted because an identical action had already been transferred into the MDL; *Kennedy v. Aegis Media Ams., Inc.*, in which a stay was warranted where the impact of a Second Circuit decision "may be temporary," as it was the Supreme Court that would ultimately settle an important issue of law bearing on the

action—Courts routinely favor comprehensive resolution in multidistrict litigation to serve the public interest and ensure judicial economy. *See* Manual for Complex Litig. §§ 20.1, 20.3.

In its motion, OpenAI tries to invoke this Court's denying the Class Plaintiffs leave to amend to their Complaint as grounds for why Ziff Davis's claims should be stayed. In contrast— as this Court emphasized during the CMC—Ziff Davis's claims ***are already in the case***. OpenAI fails to explain how or when these claims would be litigated, much less efficiently. Under OpenAI's approach, Ziff Davis (and OpenAI) would seek discovery only as to certain claims and older models through the MDL proceedings. Then, once the matter is remanded back to the District of Delaware, the parties would have to ***re-do*** much of that discovery but focusing on the new models and additional claims. Many of the same witnesses (on both sides) would need to be re-deposed, documents would need to be collected again and trial would be far off. That would defeat the purpose of the MDL in the first place.

## IV.    CONCLUSION

**OpenAI has not met its burden to establish the need for a stay.** The Court should deny OpenAI's partial motion to stay proceedings and, for the sake of judicial efficiency, allow Ziff Davis's case to proceed in full.

Dated:  New York, New York
        June 23, 2025

                                                  Respectfully submitted,

Lacy H. ("Lance") Koonce, III
Matthew A. Leish
Gili Karev
Mariella Salazar
Clara Cassan
KLARIS LAW PLLC
161 Water Street
New York, NY 10038
Telephone: (646) 779-4882
lance.koonce@klaris.com
matthew.leish@klarislaw.com
gili.karev@klarislaw.com
mariella.salazar@klarislaw.com
clara.cassan@klarislaw.com

Guy Ruttenberg
Ruttenberg IP Law, A Professional
Corporation
1801 Century Park East
Suite 1920
Los Angeles, CA 90067
Telephone: (310) 627-2270
ZD-AICopyright@ruttenbergiplaw.com

***Attorneys for Plaintiffs Ziff Davis, Inc.,
Ziff Davis, LLC, IGN Entertainment, Inc.,
and Everyday Health Media, LLC***

To:

**LATHAM & WATKINS LLP**
Andrew M. Gass (*pro hac vice*)
*andrew.gass@lw.com*
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Telephone: 415.391.0600

Sarang V. Damle
*sy.damle@lw.com*
Elana Nightingale Dawson (*pro hac vice*)
*elana.nightingaledawson@lw.com*

555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Telephone: 202.637.2200

Rachel R. Blitzer
*rachel.blitzer@lw.com*
Herman H. Yue
*herman.yue@lw.com*
Luke A. Budiardjo
*luke.budiardjo@lw.com*
1271 Avenue of the Americas
New York, NY 10020
Telephone: 212.906.1200

Allison S. Blanco (*pro hac vice*)
*allison.blanco@lw.com*
650 Town Center Drive 20th Floor
Costa Mesa, CA 92626
Telephone: 714.540.1235
*Attorneys for OpenAI*

**MORRISON & FOERSTER LLP**
Joseph C. Gratz (pro hac vice)*
jgratz@mofo.com
425 Market Street
San Francisco, CA 94105
Telephone: 415.268.7000

Rose S. Lee (pro hac vice)
roselee@mofo.com
707 Wilshire Boulevard, Suite 6000
Los Angeles, CA 90017
Telephone: 213.892.5200

Carolyn M. Homer (pro hac vice)
cmhomer@mofo.com
2100 L Street, NW, Suite 900
Washington, DC 20037
Telephone: 202.650.4597

Jocelyn E. Greer
jgreer@mofo.com
Emily C. Wood
ewood@mofo.com
Eric K. Nikolaides
enikolaides@mofo.com

250 West 55th Street
New York, NY 10019
Telephone: 212.468.8000

**KEKER, VAN NEST & PETERS LLP**
Robert A. Van Nest (*pro hac vice*)
*rvannest@keker.com*
Paven Malhotra
*pmalhotra@keker.com*
Michelle S. Ybarra (*pro hac vice*)
*mybarra@keker.com*
Nicholas S. Goldberg (*pro hac vice*)
*ngoldberg@keker.com*
Thomas E. Gorman (*pro hac vice*)
*tgorman@keker.com*
Katie Lynn Joyce (*pro hac vice*)
*kjoyce@keker.com*
Sarah Salomon (*pro hac vice*)
*ssalomon@keker.com*
R. James Slaughter (*pro hac vice*)*
*rslaughter@keker.com*
Christopher S. Sun (*pro hac vice*)
*csun@keker.com*
Andrew F. Dawson (*pro hac vice*)
*adawson@keker.com*
Andrew S. Bruns (*pro hac vice*)
*abruns@keker.com*
Edward A. Bayley (*pro hac vice*)
*ebayley@keker.com*
Ryan K. Wong (*pro hac vice*)
*rwong@keker.com*
Spencer McManus (*pro hac vice* pending)
*smcmanus@keker.com*
Olivia C. Malone (*pro hac vice* pending)
*omalone@keker.com*
Bilal A. Malik (*pro hac vice* pending)
*bmalik@keker.com*
633 Battery St.
San Francisco, CA 94111
Telephone: 415.391.5400

*Attorneys for Defendants OpenAI, Inc.,*
*OpenAI LP, Openai GP, LLC, OpenAI, LLC,*
*OpenAI Opco LLC, OpenAI Global LLC,*
*OAI Corporation, LLC, and OpenAI Holdings, LLC*