**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------- X
                                                         :
                                                         :
                                                         :
*In re OpenAI, Inc. Copyright Infringement*              :        No. 1:25-md-03143-SHS-OTW
*Litigation*                                             :
                                                         :
                                                         :
                                                         :
-------------------------------------------------------- X


**STIPULATION & ORDER RE: DISCOVERY OF**
**ELECTRONICALLY STORED INFORMATION**

To expedite the flow of discovery material and to facilitate the consistency in the format of the documents to be produced by the parties in *In Re: OpenAI, Inc. Copyright Infringement Litigation*, 1:25-md-03143 (S.D.N.Y.); *Tremblay, et al. v. OpenAI, Inc., et al.*, No. 3:23-cv-03223 (N.D. Cal.), 1:25-cv-03482 (S.D.N.Y.) (consolidated in *In Re OpenAI ChatGPT Litigation*, No. 3:23-cv-03223 (N.D. Cal.)); *Silverman, et al. v. OpenAI, Inc., et al.*, No. 3:23-cv-03416 (N.D. Cal.), 1:25-cv-03483 (S.D.N.Y.) (consolidated in *In Re OpenAI ChatGPT Litigation*, No. 3:23-cv-03223 (N.D. Cal.)); *Chabon, et al. v. OpenAI, Inc., et al.*, No. 3:23-cv-04625 (N.D. Cal.), 1:25-cv-03291 (S.D.N.Y.) (consolidated in *In Re OpenAI ChatGPT Litigation*, No. 3:23-cv-03223 (N.D. Cal.)); *Petryazhna v. OpenAI, Inc., et al.*, No. 5:24-cv-04710 (N.D. Cal.), 1:25-cv-03297 (S.D.N.Y.) (formerly *Millette v. OpenAI, Inc., et al.*); *Authors Guild, et al. v. OpenAI, Inc., et al.*, No. 1:23-cv-08292 (S.D.N.Y.); *Alter, et al. v. OpenAI, Inc., et al.*, No. 1:23-cv-10211 (S.D.N.Y.); *The New York Times Co. v. Microsoft Corp., et al.*, No. 1:23-cv-11195 (S.D.N.Y.); *Basbanes, et al. v. Microsoft Corp., et al.*, No. 1:24-cv-00084 (S.D.N.Y.); *Raw Story Media, Inc., et al. v. OpenAI, Inc., et al.*, No. 1:24-cv-01514 (S.D.N.Y.); *The Intercept Media, Inc. v. OpenAI, Inc., et al.*, No. 1:24-cv-01515 (S.D.N.Y.); *Daily News LP, et al. v. Microsoft Corp., et al.*, No. 1:24-cv-03285 (S.D.N.Y.); *The Center for Investigative Reporting, Inc. v. OpenAI, Inc., et al.*, No. 1:24-cv-04872 (S.D.N.Y.); and *Ziff Davis, Inc. et al. v. OpenAI, Inc. et al.*, No. 1:25-cv-00501 (D. Del.), No. 1:25-cv-04315 (S.D.N.Y.), the parties, by and through their respective counsel, hereby stipulate and agree to the terms of this Stipulation & Order Re: Discovery of Electronically Stored Information (the "ESI Protocol" or "Order").

1.     This Order supplements all other discovery rules and orders. It streamlines electronically stored information ("ESI") production to promote a "just, speedy, and inexpensive determination" of this action, as required by Federal Rule of Civil Procedure 1.

2.      This Order may be modified in the Court's discretion or by stipulation.

3.      This Order will govern discovery in this action and any actions subsequently transferred to this Court pursuant to Rule 7.1 of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation or otherwise centralized with this litigation (centralized as *In re: OpenAI, Inc. Copyright Litigation*, No. 1:25-md-03143 (S.D.N.Y.) (collectively, the "Centralized Actions," and each individually, an "Action")).

4.      This Order shall supersede the following prior orders and stipulations governing the discovery of electronically stored information:

   a.      ECF No. 175, *In re OpenAI ChatGPT Litigation*, Case No. 3:23-cv-03223 (N.D. Cal.);

   b.      ECF No. 201, *Authors Guild, et al. v. OpenAI, Inc., et al.*, No. 1:23-cv-08292 (S.D.N.Y.);

   c.      ECF No. 172, *Alter, et al. v. OpenAI, Inc., et al.*, No. 1:23-cv-10211 (S.D.N.Y.);

   d.      ECF No. 98, *Basbanes, et al. v. Microsoft Corp., et al.*, No. 1:24-cv-00084 (S.D.N.Y.);

   e.      ECF No. 251, *The New York Times Co. v. Microsoft Corp., et al.*, No. 1:23-cv-11195 (S.D.N.Y.);

   f.      ECF No. 147, *Daily News LP, et al. v. Microsoft Corp., et al.*, No. 1:24-cv-03285 (S.D.N.Y.);

   g.      ECF No. 130, *The Center for Investigative Reporting, Inc. v. OpenAI, Inc., et al.*, No. 1:24-cv-04872 (S.D.N.Y.); and

   h.      ECF No. 151, *The Intercept Media, Inc. v. OpenAI, Inc., et al.*, No. 1:24-

cv-01515 (S.D.N.Y.).

5.    The parties are aware of the importance the Court places on cooperation and commit to cooperate in good faith throughout the matter consistent with this Court's expectations.

6.    As related solely to negotiations regarding custodians and custodial search terms occurring on or after the date of entry of this Order[1], the producing party will conduct a reasonable investigation to identify custodians and use search terms reasonably calculated to identify responsive materials consistent with the parties' discovery obligations pursuant to the Federal Rules of Civil Procedure. The producing party will in the first instance propose search terms and custodians and corresponding hit reports. The parties will negotiate in good faith, including by meeting and conferring, to identify custodians and search terms. The producing party will provide hit reports for proposed search terms to inform such negotiations. The requesting party will make any counterproposal within 10 business days. If the requesting party makes a proposal for additional search terms for current custodians, the producing party must respond within five business days by either accepting a proposal, rejecting it and providing a hit report for the requesting party's proposal, or making a counterproposal and providing a hit report for both the requesting party's proposal and the producing party's counterproposal. If the requesting party makes a proposal for additional custodians, the producing party must respond within 10 business days by either accepting a proposal, rejecting it, or making a counterproposal and providing a hit report. All hit reports will allow the receiving party to understand (a) how many documents the producing party will be reviewing (in total, including all terms previously requested by the

---

[1] For the avoidance of doubt, all search terms and custodian negotiations that occurred prior to the date of entry of this Order are governed by the ESI orders and agreements between the parties that existed at the time of the negotiations. However, productions made after the date of entry of this Order are governed by this Order, even to the extent such productions are pursuant to search term and custodian negotiations that occurred prior to the date of entry of this Order.

receiving party) if the proposal is accepted; (b) how many more documents the producing party will have to review if the proposal is accepted relative to defendants' proposal; and (c) aggregate and unique hits for each term.

7.      The parties disclosed at the outset of this litigation any use of enterprise messaging tools, such as Slack or MS Teams, including the type of subscription and retention settings in place. The parties will disclose any material change in the use of such enterprise messaging tools since those initial disclosures.

8.      Nothing in this Order shall be construed to waive a requesting party's right to move the Court to compel production of documents from additional custodians, nor shall anything in this Order be construed to waive a producing party's right to oppose any such motion to compel.

9.      Nothing in this Order prevents the parties from agreeing to use technology assisted review and other techniques insofar as their use improves the efficacy of discovery.

10.     If a party elects to use Technology Assisted Review (TAR)[2] to cull the documents to be reviewed or produced, the parties will meet and confer in good faith regarding the use of TAR and proposed TAR Protocol.

11.     **Production Format for ESI.**

a.     **Culling/Filtering.** Each party will use its best efforts to filter out common system files and application executable files by using a commercially reasonable hash identification process. Hash values that may be filtered out during this process are located in the National Software Reference Library ("NRSL") NIST hash set list. Additional culling of system file types, other non-user generated files, or processing artifacts based on file extension may

---

[2] TAR refers to the application of machine learning and other advanced analytical technologies to the process of identifying, coding, and categorizing ESI based on relevance to specific legal matters. TAR methodologies may include predictive coding, clustering, and conceptual analysis. For the avoidance of doubt, TAR does not include the use of keyword searches.

include, but are not limited to: WINNT, LOGS, DRVS, Channel Definition Format (cdf), Creatures Object Sources (cos), Dictionary file (dic), Executable (exe), Label Pro Data File (IPD), Office Data File (NICK), Office Profile Settings (ops), Outlook Rules Wizard File (rwz), Scrap Object, System File (dll), Temporary File (tmp), Windows Error Dump (dmp), Windows NT/2000 Event View Log file (evt), Program Installers, timezone files, and font files (e.g., fntdata, ttf).

      b.    **Unsupported File Types.** For unsupported file type documents that cannot be reviewed on a discovery platform, the parties may produce a placeholder slip sheet to the requesting party indicating that the document is an unsupported file type. If necessary, the parties will meet and confer about reasonable alternative options for review and production of those file types.

      c.    **Deduplication.** Each producing party shall de-duplicate ESI on a global level (across all custodians) prior to production. The basis for such de-duplication shall be the MD5 or SHA1 hash values, or some other later agreed to de-duplication method such as full text de-duplication. For generating either the MD5 or SHA1 hash values for email, the parties shall instruct their ESI processing vendors to take attachments into account for such hash value generation. The producing party will make reasonable efforts to prevent identical Slack or similar messages from being produced multiple times in different formats.

      d.    **Backup Data.** Absent a showing of good cause, no party need restore any form of media upon which backup data is maintained in a party's normal or allowed processes, including, but not limited to, backup tapes, disks, SAN, disaster recovery systems, and other forms of media, to comply with its discovery obligations in the present case.

      e.    **Imaging.** Except as otherwise provided in this Order, all documents existing in electronic format (e.g., Word, PDF, webpage files) shall be produced as 300 DPI TIFF

black and white images with 1-bit depth and with a Bates number stamped on each page, document metadata (including extracted or OCR text), and a link to the associated extracted or OCR text file. The parties will consider re-producing select and specifically identified color documents as paginated color JPGs upon reasonable request by the receiving party.

f. **Native Format.** Spreadsheet-type files (e.g., Microsoft Excel), PowerPoint files, and Multimedia files (video, audio, voicemail, etc.) should be produced in native format unless they require redaction. Documents produced in native format should be named according to the Bates number assigned, with the Confidentiality designation appended to the Bates numbers with a hyphen. Single-page Bates-stamped TIFF image slip sheets will be included for each document produced in native format. The slip sheets will display the Bates number of the native file, the Confidentiality endorsement, and an endorsement stating, "File Produced Natively."

g. **Redactions of Native Documents.** Regardless of a document's redacted status, all available metadata fields that do not contain privileged or protected information will be provided with that document. For redactions on documents produced natively, the following specifications will govern:

   i. Spreadsheet-type files which require redactions will be redacted natively.

   ii. Presentation type files which require redactions will be printed to TIFF for redaction and redacted (rather than redacted in native). The producing party shall make reasonable efforts to ensure that any presentations produced only as TIFF images because of redactions are formatted so as to be legible, and the following printing options shall be enabled:

1. PowerPoint Print to TIFF Options

- Print notes pages

- Print hidden slides

- Print comments

iii. Document type files which require redactions will be printed to TIFF for redaction. The producing party shall make reasonable efforts to ensure that any documents produced only as TIFF images with redactions are formatted so as to be legible, and the following printing options shall be enabled:

1. Word to TIFF Options

- Enable "All Markup"

- Print "All Pages" with "Print Markup" selected

- Print "List of Markup"

h.    **Family Relationships.** All attachments, addendums, enclosures, and/or exhibits to a parent document will be, to the extent reasonably possible, produced immediately following the parent document and identified as they relate to the respective parent document with the parent/child relationship intact. Such attachments, addendums, enclosures, and/or exhibits will be replaced with a slip sheet where an attachment is withheld. (For the avoidance of doubt, the foregoing sentence does not authorize a party to withhold a document or otherwise limit the parties' obligations to produce documents.) The parties will indicate on the slip sheet the basis for withholding the document.

i.    **Voluminous and Highly Confidential Technical Materials.** Source code, training data, artificial intelligence models, and certain other specified voluminous or highly

confidential technical materials shall be governed by the terms of the parties' separately negotiated access and inspection agreement(s). To the extent that user conversation and/or output data is produced or made available for inspection, the parties shall meet and confer as to whether such user conversation and/or output data shall be produced or made available for inspection pursuant to this Order, another existing agreement, or a new agreement. The parties shall meet and confer regarding the production of any other structured data files or structured data sources that may contain relevant information.

12.     **Hyperlinked Documents and Communications.** The parties will not attempt to access the producing party's internal Google hyperlinks contained in produced documents other than through the ordinary discovery process, including the hyperlink-request process described in paragraph 13 below. The parties may request permission from the Court to redact such hyperlinks, or unique identifiers contained within hyperlinks, prior to their inclusion in court filings, exhibits, or materials to be relied upon at trial.

13.     **Requesting Hyperlinked Documents.** Each receiving party group may collectively request a reasonable number of hyperlinked documents referenced in documents within the producing party's production, which will include any requests made by the receiving party in an Action prior to the entry of this ESI Protocol. The receiving party will make these requests by providing to the producing party a list of hyperlinks and corresponding Bates numbers. The requested hyperlinks must refer to discrete stand-alone documents and not to, e.g., directories, landing pages, data sources, databases, or dynamic dashboards. The parties agree to meet and confer in good faith to resolve any disputes concerning the timing and appropriateness of production of the requested documents and communications. The parties reserve all rights to move to compel where agreement is not reached.

14.    **Metadata.** Load or Concordance DAT files should include, where applicable and to the extent it exists and was captured at the time of the collection, the information listed in Exhibit A attached hereto. To the extent that metadata does not exist or is not reasonably accessible or available for any documents produced, nothing in this Order shall require any party to extract, capture, collect, or produce such metadata.

15.    **Privilege Logs.** A party that withholds documents, ESI, and any other materials and information on the grounds of attorney-client privilege, attorney work-product protection, and/or any other applicable privilege, immunity, or protection from discovery, shall produce a privilege log. The following documents and communications need not be included in a privilege log:

  a. Privileged communications exclusively between a party and its outside or in-house counsel on or after September 9, 2023; Defendants and the Ziff Davis Plaintiffs, as well as any plaintiffs in Actions not yet filed, will meet and confer to select applicable dates for that Action;

  b. Work product performed by a party at the direction of its outside or in-house counsel on or after September 9, 2023; Defendants and the Ziff Davis Plaintiffs will meet and confer to select dates for that Action;

  c. Privileged or work product documents or communications between a party and its outside or in-house counsel related to the following lawsuits and investigations: *Doe 1, et al. v. GitHub, Inc. et al.*, No. 4:22-cv-06823-JST (N.D. Cal.); *In Re: OpenAI, Inc. Copyright Infringement Litigation*, 1:25-md-03143 (S.D.N.Y.); *Tremblay, et al. v. OpenAI, Inc., et al.*, No. 3:23-cv-03223 (N.D. Cal.), 1:25-cv-03482 (S.D.N.Y.) (consolidated in *In Re OpenAI ChatGPT*

*Litigation*, No. 3:23-cv-03223 (N.D. Cal.)); *Silverman, et al. v. OpenAI, Inc., et al.*, No. 3:23-cv-03416 (N.D. Cal.), 1:25-cv-03483 (S.D.N.Y.) (consolidated in *In Re OpenAI ChatGPT Litigation*, No. 3:23-cv-03223 (N.D. Cal.)); *Chabon, et al. v. OpenAI, Inc., et al.*, No. 3:23-cv-04625 (N.D. Cal.), 1:25-cv-03291 (S.D.N.Y.) (consolidated in *In Re OpenAI ChatGPT Litigation*, No. 3:23-cv-03223 (N.D. Cal.)); *Petryazhna v. OpenAI, Inc., et al.*, No. 5:24-cv-04710 (N.D. Cal.), 1:25-cv-03297 (S.D.N.Y.) (formerly *Millette v. OpenAI, Inc., et al.*); *Authors Guild, et al. v. OpenAI, Inc., et al.*, No. 1:23-cv-08292 (S.D.N.Y.); *Alter, et al. v. OpenAI, Inc., et al.*, No. 1:23-cv-10211 (S.D.N.Y.); *The New York Times Co. v. Microsoft Corp., et al.*, No. 1:23-cv-11195 (S.D.N.Y.); *Basbanes, et al. v. Microsoft Corp., et al.*, No. 1:24-cv-00084 (S.D.N.Y.); *Raw Story Media, Inc., et al. v. OpenAI, Inc., et al.*, No. 1:24-cv-01514 (S.D.N.Y.); *The Intercept Media, Inc. v. OpenAI, Inc., et al.*, No. 1:24-cv-01515 (S.D.N.Y.); *Daily News LP, et al. v. Microsoft Corp., et al.*, No. 1:24-cv-03285 (S.D.N.Y.); *The Center for Investigative Reporting, Inc. v. OpenAI, Inc., et al.*, No. 1:24-cv-04872 (S.D.N.Y.); and *Ziff Davis, Inc. et al. v. OpenAI, Inc. et al.*, No. 1:25-cv-00501 (D. Del.), No. 1:25-cv-04315 (S.D.N.Y.); the pending Federal Trade Commission Investigation, FTC File No. 232-3044, and any other subsequently filed or commenced lawsuits or investigations relating to OpenAI.

16.    The privilege log shall be produced in Excel format and include:

a.    A unique number for each entry on the log

b.    Date of document for all ESI and to the extent known or discernible for all hard copy documents. For emails this should be the sent date of the document and

for loose ESI this should be the last-modified or creation date of the document;

c.  The custodian of the document.  For emails this should be populated with the metadata extracted from the Custodian(s) field.  For loose ESI, this should be populated with the Custodian value assigned to the instance of the document in question;

d.  The Bates range of the document or family if the privileged entry is produced with redactions. This can be populated with metadata extracted from the BegDoc and EndDoc fields;

e.  The author of the document. For emails, this should be populated with the metadata extracted from the "Email From" field associated with the file.  For loose ESI, this should be populated with the metadata extracted from the "Author" field.  For hard copy documents, this will be populated with the "Custodian" field.;

f.  The recipient(s) of the document where reasonably ascertainable. For emails, this will be populated with the metadata extracted from the "Email To" field associated with the document. Separate columns will be included for the metadata extracted from the "CC" and "BCC" fields, where populated. For messages, where available, the parties will provide the "All Participants" and "Active Participants" fields—or their equivalent for messaging platforms other than Slack (e.g., WhatsApp, Signal)[3];

g.  Whether the document is being withheld or redacted;

h.  The type of privilege being asserted, for example: (a) AC for Attorney/Client,

---

[3] The parties may instead produce the "All Participants" and "Active Participants" metadata for withheld documents if the field information is voluminous.

(b) WP for Attorney Work Product, (c) CI for Common Interest;

i.  The reason for the redaction. If more than one reason, separate by semi-colons;

j.  The legal participants to the document, including any in-house or outside counsel, as well as their staff, by name. This can be accomplished by providing a separate list of legal participants only as to log entries previously served. For log entries not previously served, legal participants must be identified on an entry-by-entry basis.

k.  Nothing in this paragraph 17 of this Order shall be read to preclude the parties from logging documents categorically or read to be inconsistent with Local Rule 26.2.

17.    Within 30 days of the entry of this Order, the parties shall serve privilege logs for documents reviewed and withheld or redacted and produced by the parties on or before the date of the entry of this Order. The parties shall serve privilege logs for documents reviewed and withheld or redacted and produced after the date of the entry of this Order within 30 days after they were reviewed and withheld or redacted and produced, but in all cases no later than seven days after the close of fact discovery. The failure of any party to produce a privilege log is not a basis for another party to withhold a privilege log.

18.    Except as expressly set forth herein, all challenges to an assertion of privilege within a privilege log must be brought in accordance with Paragraph IV(b) of this Court's Individual Practices in Civil Cases. For logs served on or before January 28, 2026, parties shall have 60 days after receipt of a privilege log to review and challenge any assertion of privilege contained therein. For logs served after January 28, 2026, parties shall have until the later of (a) 30 days after receipt of a privilege log or (b) March 29, 2026 to review and challenge any assertion of privilege contained

therein. Nothing in this paragraph 18 shall prevent a party from, in good faith, challenging an assertion of privilege based on new, previously unavailable information, so long as such challenge is brought within 60 days of receipt of such new information. The parties will agree to accommodate reasonable requests for extensions of up to 30 additional days to challenge any assertion of privilege within a privilege log, particularly where the log is voluminous.

19.    **Non-Party Documents.** Any party that issues a non-party subpoena shall timely notify other parties when it receives non-party productions of documents, ESI, or other responses from the non-party, and shall provide copies of all such productions in the format in which they were received from the non-party to the other parties. If the non-party produces documents or ESI that are not Bates labeled, the receiving party will Bates-label the documents or ESI before producing a copy to the other parties if the produced documents or ESI are of the type so requiring consistent with other provisions of this Order. Nothing in this Protocol precludes a receiving party from reviewing a non-party production of documents or ESI and applying (if the non-party produced documents without a confidentiality designation) or elevating a confidentiality designation (e.g., elevating documents designated as CONFIDENTIAL to ATTORNEYS' EYES ONLY) if the production contains confidential or extremely sensitive information.

20.    **Technical Variances.** Recognizing that each producing party may experience production issues due to data systems or files that may not be fully compatible with the technical specifications set forth herein, any practice or procedure set forth herein may be varied by agreement of the parties, and confirmed in writing, to accommodate such issues and/or where such variance is deemed appropriate to facilitate the timely and economical production of documents or ESI. No Party shall unreasonably object to any such variance.

21.    **Reproduction as Natives.** The parties agree that to the extent any party seeks

production in native format of specifically identified ESI produced originally in TIFF form, the producing party shall respond reasonably and in good faith to any such request.

22.  **No Waiver of Privilege.** Pursuant to Fed. R. Evid. 502(d) and (e), the disclosure during discovery of any communication, information, or material that is protected by the attorney-client privilege or work-product protection, as defined by Fed. R. Evid. 502(g), shall not waive the privilege or protection in the above-captioned case, or any other federal or state proceeding, for either that communication, information, or material or the subject matter of the same, unless there is an intentional waiver of the privilege or protection to support an affirmative use of such communication, information, or material in support of the party's claim or defense, in which event the scope of any such waiver shall be determined by Fed. R. Evid. 502(a)(2) and (3). The parties' separately negotiated Stipulated Protective Order governs the inadvertent disclosure of material protected by the attorney-client privilege, work-product protection, common-interest privilege, or any other applicable privilege or protection.

**IT IS SO STIPULATED**, through Counsel of Record.

Dated: July 25, 2025

MORRISON & FOERSTER LLP

By: _/s/ Carolyn M. Homer_

 Joseph C. Gratz (*pro hac vice*)
 JGratz@mofo.com
 425 Market Street
 San Francisco, CA  94105-2482
 Telephone:  (415) 268-7000
 Facsimile:  (415) 268-7522

 Rose S. Lee (*pro hac vice*)
 RoseLee@mofo.com
 707 Wilshire Boulevard
 Los Angeles, CA  90017
 Telephone:  (213) 892-5200
 Facsimile:  (213) 892-5454

 Carolyn M. Homer (*pro hac vice*)
 CMHomer@mofo.com
 2100 L Street, NW
 Suite 900
 Washington, DC  20037
 Telephone:  (202) 650-4597
 Facsimile:  (202) 887-0763

 Emily C. Wood
 EWood@mofo.com
 Eric K. Nikolaides
 ENikolaides@mofo.com
 250 W. 55th Street
 New York, NY  10019-9601
 Telephone:  (212) 468-8000
 Facsimile:  (212) 468-7900

 Attorneys for Defendants
 OPENAI, INC., OPENAI LP, OPENAI GP,
 LLC, OPENAI, LLC, OPENAI OPCO LLC,
 OPENAI GLOBAL LLC, OAI
 CORPORATION, LLC, and OPENAI
 HOLDINGS, LLC

Dated: July 25, 2025           LATHAM & WATKINS LLP

By: * /s/ Allison S. Blanco*
Andrew Gass (*pro hac vice*)
andrew.gass@lw.com
505 Montgomery Street, Suite 2000
San Francisco, CA  94111
Telephone:  (415) 391-0600

Sarang Damle
sy.damle@lw.com
Elana Nightingale Dawson (*pro hac vice*)
elana.nightingaledawson@lw.com
555 Eleventh Street NW, Suite 100
Washington, DC  20004
Telephone:  (202) 637-2200

Rachel R. Blitzer
rachel.blitzer@lw.com
Herman H. Yue
herman.yue@lw.com
Luke Budiardjo
luke.budiardjo@lw.com
1271 Avenue of the Americas
New York, NY  10020
Telephone:  (212) 906-1200

Allison S. Blanco (*pro hac vice*)
allison.blanco@lw.com
650 Town Center Drive, Suite 2000
Costa Mesa, CA  92626
Telephone:  (714) 540-1235

Attorneys for Defendants
OPENAI, INC., OPENAI LP, OPENAI GP,
LLC, OPENAI, LLC, OPENAI OPCO LLC,
OPENAI GLOBAL LLC, OAI
CORPORATION, LLC, and OPENAI
HOLDINGS, LLC

Dated: July 25, 2025

KEKER, VAN NEST & PETERS LLP

By: _/s/ Chris S. Sun_
  Robert A. Van Nest (*pro hac vice*)
  RVanNest@keker.com
  R. James Slaughter (*pro hac vice*)
  RSlaughter@keker.com
  Paven Malhotra
  PMalhotra@keker.com
  Michelle S. Ybarra (*pro hac vice*)
  MYbarra@keker.com
  Nicholas S. Goldberg (*pro hac vice*)
  NGoldberg@keker.com
  Thomas E. Gorman (*pro hac vice*)
  TGorman@keker.com
  Katie Lynn Joyce (*pro hac vice*)
  KJoyce@keker.com
  Christopher S. Sun (*pro hac vice*)
  csun@keker.com
  Andrew S. Bruns (*pro hac vice*)
  ABruns@keker.com
  Andrew Dawson (*pro hac vice*)
  ADawson@keker.com
  Edward A. Bayley (*pro hac vice*)
  EBayley@keker.com
  Sarah Salomon
  Ssalomon@keker.com
  633 Battery Street
  San Francisco, CA 94111-1809
  Telephone: (415) 391-5400
  Facsimile: (415) 397-7188

  Attorneys for Defendants
  OPENAI, INC., OPENAI LP, OPENAI GP,
  LLC, OPENAI, LLC, OPENAI OPCO LLC,
  OPENAI GLOBAL LLC, OAI
  CORPORATION, LLC, and OPENAI
  HOLDINGS, LLC

Dated:  July 25, 2025                    Respectfully submitted,

*/s/ Jared B. Briant*
Jared B. Briant (admitted *pro hac vice*)
FAEGRE DRINKER BIDDLE & REATH LLP
1144 Fifteenth Street, Suite 3400
Denver, CO  80202
Telephone:  (303) 607-3500
Facsimile:  (303) 607-3600
Email:  jared.briant@faegredrinker.com

Jeffrey S. Jacobson
FAEGRE DRINKER BIDDLE & REATH LLP
1177 Avenue of the Americas, 41st Floor
New York, NY  10036
Telephone:  (212) 248-3140
Email:  jeffrey.jacobson@faegredrinker.com

Annette L. Hurst (admitted *pro hac vice*)
ORRICK, HERRINGTON & SUTCLIFFE LLP
The Orrick Building, 405 Howard Street
San Francisco, CA  94105-2669
Telephone:  (415) 773-5700
Facsimile:  (415) 773-5759
Email:  ahurst@orrick.com

Christopher Cariello
ORRICK, HERRINGTON & SUTCLIFFE LLP
51 West 52nd Street
New York, NY  10019
Telephone:  (212) 506-3778
Facsimile:  (212) 506-5151
Email:  ccariello@orrick.com
        mrshapiro@orrick.com

Sheryl Koval Garko (admitted *pro hac vice*)
Laura Brooks Najemy (admitted *pro hac vice*)
ORRICK, HERRINGTON & SUTCLIFFE LLP
222 Berkeley Street, Suite 2000
Boston, MA  02116
Telephone:  (617) 880-1800
Facsimile:  (617) 8801-1801
Email:  sgarko@orrick.com
        lnajemy@orrick.com

*Attorneys for Defendant Microsoft Corporation*

Dated:  July 25, 2025

/s/ Davida Brook
Davida Brook *(admitted pro hac vice)*
SUSMAN GODFREY L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, CA  90067
Telephone:  (310) 789-3100
Facsimile:  (310) 789-3150
dbrook@susmangodfrey.com

**Attorney for Plaintiff**
**The New York Times Company and**
**News Plaintiffs' Liaison Counsel**

/s/ Steven Lieberman
Steven Lieberman (SL8687)
ROTHWELL, FIGG, ERNST &
MANBECK, P.C.
901 New York Avenue, N.W., Suite 900 East
Washington, DC  20001
Telephone:  (202) 783-6040
Facsimile:  (202) 783-6031
slieberman@rothwellfigg.com

**Attorney for Plaintiffs**
**Daily News, LP; The Chicago Tribune Company, LLC;**
**Orlando Sentinel Communications Company, LLC;**
**Sun-Sentinel Company, LLC; San Jose Mercury-News,**
**LLC; DP Media Network, LLC; ORB Publishing,**
**LLC; and Northwest Publications, LLC**

/s/ Matthew Topic
Matthew Topic *(pro hac vice)*
LOEVY & LOEVY
311 North Aberdeen, 3rd Floor
Chicago, IL  60607
Telephone:  (312) 243-5900
Facsimile:  (312) 243-5902
matt@loevy.com

**Attorney for Plaintiff**
**The Center for Investigative Reporting, Inc.**

/s/ Lacy H. Koonce, III
Lacy H. ("Lance") Koonce, III
KLARIS LAW PLLC
161 Water Street
New York, NY  10038
Telephone:  (646) 779-4882

19

lance.koonce@klaris.com

***Attorney for Plaintiffs Ziff Davis, Inc.,
Ziff Davis, LLC, IGN Entertainment, Inc.,
Everyday Health Media, LLC, Mashable, Inc.
and CNET Media, Inc.***

*/s/ Justin A. Nelson*
Justin A. Nelson (*pro hac vice*)
1000 Louisiana Street, Suite 5100
Houston, TX  77002
Telephone:  (713) 651-9366
jnelson@susmangodfrey.com

***Interim Lead Counsel for Class Plaintiffs***

**IT IS ORDERED** that the foregoing Agreement is approved.

Dated:  7/25/2025

_____

ONA T. WANG
United States Magistrate Judge

**EXHIBIT A**

| Field | Data Type | Paper | Native Files & Email Attachments | Email |
|---|---|---|---|---|
| BegDoc | Integer - Text | Starting Bates # | Starting Bates # | Starting Bates # |
| EndDoc | Integer - Text | Ending Bates # | Ending Bates # | Ending Bates # |
| BegAttach | Integer - Text | Starting bates # of document family | Starting bates # of document family | Starting bates # of document family |
| EndAttach | Integer - Text | Ending bates # of document family | Ending bates # of document family | Ending bates # of document family |
| Custodians | Text – paragraph Separate entries with ";" | | All names of people the document was collected from even if removed from production as a duplicate | All names of people the document was collected from even if removed from production as a duplicate |
| From | Text - paragraph | | | Sender of message |
| To | Text – paragraph Separate entries with ";" | | | Recipients of message |
| CC | Text – paragraph Separate entries with ";" | | | Copied recipients |
| BCC | Text – paragraph Separate entries with ";" | | | Blind copied recipients |
| Subject | Text - paragraph | | | Subject of message |
| DateSent | Date (mm/dd/yyyy) | | | Date message sent |
| DateReceived | Date (mm/dd/yyyy) | | | Date message received |
| FileName | Text - paragraph | | Name of original file including extension | Name of original file including extension |

| Field | Data Type | Paper | Native Files & Email Attachments | Email |
|---|---|---|---|---|
| FileExtension | Text | | Extension of original file | Extension of original file |
| DateCreated | Date/Time (mm/dd/yyyy) | | Date file was created | |
| DateModified | Date/Time (mm/dd/yyyy) | | Date file was last modified | |
| Author | Text - paragraph | | Document author from metadata | |
| Confidentiality | Single choice | Designation branded onto the document | Designation branded onto the document | Designation branded onto the document |
| FullText | Link | Link to the extracted or OCR text file | Link to the extracted or OCR text file | Link to the extracted or OCR text file |
| DocLink | Link | Link to the native file | Link to the native file | Link to the native file |
| MD5Hash | Text | | The MD5Hash value of the file | The MD5Hash value of the file |
| AttachNam | Text – paragraph Separate entries with ";" | | | File name of the attachment, with any attachments separated by semi-colon |
| PgCount | Integer | Number of pages in the item | Number of pages in the item | Number of pages in the item |
| Custodian | Text – paragraph | Name of person or source from whose/which files the item is produced | Name of person or source from whose/which files the item is produced | Name of person or source from whose/which files the item is produced |
| Parent Date/Sort Date | Date/Time (mm/dd/yyyy) | | The date associated with a family's parent record, which is assigned as follows:<br><br>Loose Edocs populated with 1st occurrence of Date Last | The date associated with a family's parent record, which is assigned as follows:<br><br>Emails populated with 1st occurrence: Date Sent or Date Received or Date Last Modified. |

| Field | Data Type | Paper | Native Files & Email Attachments | Email |
|---|---|---|---|---|
| | | | Modified or Date Created. | Email attachments populated from the date above. Outlook Appointments populated with 1st occurrence of Start Date or Date Last Modified. |
| TimeReceived | Time | | | Time email or calendar item was received (Date and time fields may be combined) |
| FileSize | Integer | | Size (in kilobytes) of the source native file | Size (in kilobytes) of the source native file |
| SourceFilePath | Text – paragraph | | The directory structure or path where the original file was stored on the party's source computer system, ending in the filename. Any container name (such as ZIP or PST containers) is included in the path. | The directory structure or path where the original file was stored on the party's source computer system, ending in the filename. Any container name (such as ZIP or PST containers) is included in the path. |
| SourceParty | Text – paragraph | Name of entity or party producing the item | Name of entity or party producing the item | Name of entity or party producing the item |
| RecordType | Single choice | | Indicates item type (e.g., email, edoc, attachment) | Indicates item type (e.g., email, edoc, attachment) |
| FileType | Single choice | | (e.g., Outlook, Adobe Acrobat, MS Word, etc.) | (e.g., Outlook, Adobe Acrobat, MS Word, etc.) |

| Field | Data Type | Paper | Native Files & Email Attachments | Email |
|---|---|---|---|---|
| TimeSent (hh:mmAM/PM) | Time | | | (e.g., Outlook, Adobe Acrobat, MS Word, etc.) |
| Number of Attachments | Integer | | | Number of attached, embedded or grouped items |
| TimeCreated (hh:mm AM/PM) | Time | | Time the item was created (Date and time fields may be combined) | |
| ModifiedBy | Text – paragraph | | Person who last modified or saved the item, as populated in the metadata or document properties of the native file | |
| LastModTime (hh:mm AM/PM) | Time | | Time the item was last modified | |
| Title | Text - paragraph | | Any value populated in the Title field of the source file metadata or item properties | |
| Redacted | Single choice | User-generated field that will indicate redactions with the word "REDACTED". Otherwise, blank. | User-generated field that will indicate redactions with the word "REDACTED". Otherwise, blank. | User-generated field that will indicate redactions with the word "REDACTED". Otherwise, blank. |
| ProdVol | Text | Production Volume # | Production Volume # | Production Volume # |

In addition, to the extent a party produces documents from Google Vault or Google Drive, that party will produce the following metadata fields[4]:

| Metadata Field | Data Type | Paper, Hard Copy, or Scanned Files | Native Files & Email Attachments | Email | Messages (Texts, collaboration platform chats, other messaging applications) |
|---|---|---|---|---|---|
| gDrive_Title | Text - paragraph | | Name of the document as stored in Google Drive | | |
| gDrive_DateCreated | Date/Time (mm/dd/yyyy, HH:MM AM/PM) | | Date and time Google Drive document was created | | |
| gDrive_DateModified | Date/Time (mm/dd/yyyy, HH:MM AM/PM) | | Date and time Google Drive document was last modified | | |
| gDrive_DocID[5] | Integer – Text | | Google Drive File ID | | |

To the extent a party produces Slack communications, that party will produce the following metadata fields:

---

[4] If a party has not collected Google Vault or Google Drive documents for this litigation as of the date of entry of this Order but does so in the future, that party will make its best efforts to provide the following fields or fields that provide the metadata identified in those fields.
[5] To the extent the parties' productions include links to documents using a platform other than Google Drive, the parties will meet and confer regarding the provision of metadata comparable to the metadata fields agreed to for Google Vault or Google Drive documents. To the extent that Class Plaintiffs' productions include links to documents using Google Drive that were not collected using Google Vault, the parties will meet and confer regarding the provision of information comparable to the agreed to metadata fields.

| Metadata Field | Data Type | Paper, Hard Copy, or Scanned Files | Native Files & Email Attachments | Email | Messages (Texts, collaboration platform chats, other messaging applications) |
|---|---|---|---|---|---|
| AllParticipants | Text – paragraph<br><br>Separate entries with ";" | | | | List of all participants<br><br>names, email addresses, and/or<br><br>telephone numbers who are part of identified chat, channel or group. |
| ActiveParticipants | Text – paragraph<br><br>Separate entries with ";" | | | | List of all active participants<br><br>names, email addresses, and/or<br><br>telephone numbers who are part of identified chat, channel or group. |

To the extent a party produces communications from an instant messaging platform other than Slack (e.g., WhatsApp, Signal, Teams), the parties will produce metadata fields similar to "AllParticipants" and "ActiveParticipants" where available.[6]

---

[6] If a party has not collected communications from Slack or similar instant messaging platforms (e.g., WhatsApp, Signal) for this litigation as of the date of entry of this Order but does so in the future, that party will make its best efforts to provide these fields or fields that provide the metadata identified in those fields.