# EXHIBIT 3

P5MVOPEC

1   UNITED STATES DISTRICT COURT
    SOUTHERN DISTRICT OF NEW YORK
2   ------------------------------x

3   IN RE:  OpenAI INC. COPYRIGHT
    INFRINGEMENT LITIGATION          25 MD 3143 (SHS)(OTW)
4
    ------------------------------x
5
                         New York, N.Y.
6                          May 22, 2025
                          10:10 a.m.
7

8   Before:

9                        HON. SIDNEY H. STEIN,

10                              District Judge

11                        HON. ONA T. WANG,

12                           Magistrate Judge

13                    APPEARANCES

14   SUSMAN GODFREY LLP
        Attorneys for Authors Guild and Alter Class Plaintiffs
15   BY:  JUSTIN NELSON
        -and-
16   LIEFF CABRASER HEIMANN & BERNSTEIN LLP
    BY:  RACHEL GEMAN
17        -and-
    COWAN DeBAETS ABRAHAMS & SHEPPARD LLP
18   BY:  SCOTT J. SHOLDER
        -and-
19   CAFFERTY CLOBES MERIWETHER & SPRENGEL LLP
    BY:  BRYAN L. CLOBES
20

21   SUSMAN GODFREY LLP
        Attorneys for Plaintiff The New York Times Company
22   BY:  DAVIDA BROOK

23   ROTHWELL FIGG ERNST & MANBECK PC
        Attorneys for Plaintiff Daily News LP and
        The New York Times Company
24   BY:  STEVEN M. LIEBERMAN
        JENNIFER MAISEL
25

P5MVOPEC

1                         APPEARANCES (continued)

2    BURSOR & FISHER PA
          Attorneys for Plaintiffs David Millette
3           and Petryazhan Ruslana
     BY:   JULIAN C. DIAMOND

4

     BOIES SCHILLER FLEXNER LLP
5         Attorneys for Tremblay Plaintiffs
     BY:   DAVID BOIES
6          JESSE PANUCCIO
           MAXWELL V. PRITT
7          DAVID L. SIMONS
           -and-
8    JOSEPH SAVERI LAW FIRM
     BY:   JOSEPH R. SAVERI
9          CHRISTOPHER K. L. YOUNG

10   LOEVY & LOEVY
          Attorneys for CIR, The Intercept Media, and Raw Story
11   BY:   MATTHEW TOPIC

12   KLARIS LAW
          Attorneys for Ziff Davis Plaintiffs
13   BY:   LANCE COONCE

14   LAW OFFICE OF MATTHEW BUTTERICK
          Attorneys for Plaintiff Sarah Silverman
15   BY:   MATTHEW BUTTERICK

16   KEKER VAN NEST & PETERS LLP
          Attorneys for Defendant OpenAI Inc., et al
17   BY:   R. JAMES SLAUGHTER
           NICHOLAS S. GOLDBERG

18

     LATHAM & WATKINS LLP
19        Attorneys for Defendants
     BY:   ANDREW GASS
20         -and-
     ORRICK HERRINGTON & SUTCLIFFE LLP
21   BY:   ANNETTE L. HURST
           -and-
22   FAEGRE DRINKER BIDDLE & REATH LLP
     BY:   JEFFREY S. JACOBSON
23         -and-
     MORRISON & FOERSTER LLP
24   BY:   JOSEPH C. GRATZ

25   Also Present:  Guy Ruttenberg, Esq.

P5MVOPEC

```
 1              (Case called)

 2              THE DEPUTY CLERK:  Counsel, please state your names

 3    for the record.

 4              MR. NELSON:  Good morning, your Honors.

 5              THE COURT:  Good morning.

 6              MR. NELSON:  Justin Nelson from Susman Godfrey,

 7    representing the consolidated Alter and Authors Guild classes.

 8              Thank you.

 9              THE COURT:  Good morning.

10              MS. GEMAN:  Good morning, your Honors.

11              Rachel Geman; Lieff, Cabraser, Heimann & Bernstein,

12    also representing the Authors Guild and Alter class plaintiffs.

13              MS. BROOK:  Good morning, your Honors.

14              Davida Brook of Susman Godfrey, on behalf of *The New*

15    *York Times*.  And while I'll allow my colleagues to introduce

16    themselves, I will note that my client is here with us today as

17    well; we have Diane Brayton, Karen Chesley, and Demetri

18    Blaisdell, all from *The Times*.

19              THE COURT:  Where are they?

20              MS. BROOK:  In the audience.

21              THE COURT:  All right.  Good morning.

22              MR. LIEBERMAN:  Good morning, your Honors.

23              Steven Lieberman from Rothwell Figg, on behalf of *The*

24    *New York Times* and *The Daily News* plaintiffs.

25              THE COURT:  Good morning.
```

P5MVOPEC

1            MS. MAISEL:  Good morning, your Honors.

2            Jennifer Maisel from Rothwell Figg, also on behalf of

3    *The New York Times* and *The Daily News* plaintiffs.

4            MR. DIAMOND:  Good morning, your Honor.

5            Julian Diamond from the law firm Bursor & Fisher, on

6    behalf of Petryazhan Ruslana, also known as the *Millette*

7    matter.

8            THE COURT:  Thank you.

9            MR. BOIES:  Good morning, your Honor.

10           David Boies, of Boies Schiller Flexner, on behalf of

11   the Tremblay class plaintiffs.

12           With me today are my partners Max Pritt and Jesse

13   Panuccio.

14           THE COURT:  Where are they?

15           All right.  Good morning.

16           MR. SAVERI:  Good morning, your Honor.

17           I'm Joseph Saveri, Joseph Saveri Law Firm.  Also we

18   represent the Tremblay Northern District of California

19   consolidated class plaintiffs.

20           I'm here with my partner Christopher Young.

21           THE COURT:  Good morning.

22           MR. SAVERI:  Good morning.

23           MR. TOPIC:  Good morning.

24           Matt Topic, Loevy & Loevy, for Center for

25   Investigative Reporting, The Intercept, Raw Story, and

P5MVOPEC

1  alternate.

2          THE COURT:  Good morning.

3          MR. COONCE:  Good morning, your Honors.

4          Lance Coonce with Klaris Law, representing the Ziff

5  Davis entities.  And with me are several of my colleagues from

6  Klaris:  Guy Ruttenberg, from Ruttenberg IP; and George

7  Wukoson, for my client Ziff Davis.

8          THE COURT:  Good morning.

9          And Ziff Davis just hit the MDL docket this morning or

10  last night.

11          MR. GRATZ:  Good morning, your Honor.

12          Joe Gratz from Morrison & Foerster, on behalf of

13  OpenAI.

14          MR. GOLDBERG:  Good morning, your Honors --

15          THE COURT:  Just a moment.

16          I have Mr. Gratz on the appearance sheet as with Keker

17  & Van Nest.  That's wrong?

18          MR. GRATZ:  Yes, your Honor.  I'm with Morrison &

19  Foerster.  Thank you, your Honor.

20          MR. GOLDBERG:  Good morning, your Honors.

21          Nick Goldberg of Keker, Van Nest & Peters for OpenAI.

22          MR. SLAUGHTER:  Good morning, your Honors.

23          James Slaughter Keker, Van Nest & Peters, on behalf of

24  OpenAI.

25          THE COURT:  Good morning.

P5MVOPEC

1          MS. HURST:  Good morning, your Honor.

2          Annette Hurst, from Orrick, Herrington & Sutcliffe, on

3    behalf of Microsoft.

4          MR. JACOBSON:  Good morning, your Honors.

5          Jeffrey Jacobson from Faegre Drinker, also on behalf

6    of Microsoft.

7          MR. GASS:  And good morning, your Honors.

8          Andy Gass from Latham & Watkins, on behalf of OpenAI.

9          THE COURT:  Is that everybody?

10          All right.  Thank you.

11          Here's what I want to do.  We have a couple of hours,

12    if we need it.  I'd like to get some parameters set for how

13    we're going to conduct the MDL.  I thought about some of these

14    issues and have views.  And I'd like some discussion on others.

15    And I intend to decide what I can today and, if need be, not

16    decide some things pending my thinking about it.

17          The proposed agenda in the report — I'll refer to the

18    report that came in two days late as "the report," the parties

19    will know what I'm talking about.  And that agenda on page 2 is

20    fine.  I'll basically follow it as we go through things.

21          I think the first one is appointment of plaintiffs'

22    leadership counsel.

23          To begin with, I think everybody agrees that we should

24    have two simultaneous tracks on the plaintiffs' side, that is,

25    the authors' actions — which I'll call the class actions — on

P5MVOPEC

1   one track, and the news actions on the second track.  And

2   they'll go forward together.

3          And as of now, at least, on the class actions, we have

4   Tremblay, Silverman and Chabon, which have been all

5   consolidated, so I'll refer to them as the Tremblay action.

6   We've got the Millette action, which I'll refer to as the

7   Petryazhan action.  We have Authors Guild and Alter, which I'll

8   refer to as the Authors Guild action.  And we've got Basbanes,

9   which has been stayed.

10         On the news actions, we have *The New York Times*, *The*

11  *Daily News*, and The Center for Investigative Reporting, which

12  I'll probably refer to as CIR.  And those have been -- they're

13  coordinated simply or consolidated for pretrial purposes only.

14         We have Raw Story, which was before Judge McMahon

15  here.  We have The Intercept Media, which was before Judge

16  Rakoff.  And again, starting today, we have Ziff Davis.

17         Those are the actions in this MDL as far as I know.

18         So that's really the first decision.  I'll get a

19  minute order -- not a minute order, I'll get an order out with

20  my decisions of today.  That's the first one that will have two

21  tracks for plaintiffs.

22         On the news plaintiffs leadership counsel, at page 9,

23  the news plaintiffs are requesting four law firms with six

24  attorneys be a leadership committee; and that Ms. Brook also be

25  the liaison for the plaintiffs to both the Court and the

P5MVOPEC

1    defendants.

2              So would somebody like to speak on behalf of that

3    briefly?  That does seem to me to make sense.  It's a little

4    overstuffed.  But then I'll want to hear from anyone who

5    opposes that.  In other words, a leadership committee of the

6    news plaintiffs, four firms, six attorneys; and to make

7    Ms. Brook the liaison attorney.

8              As I see the liaison attorney, it would assist the

9    Court greatly if there's somebody who can coordinate the

10   plaintiffs' positions and meet with the defendants before any

11   application is made to the Court.  I think that will

12   significantly smooth things over.  There's been some rough

13   patch, I think, with the class action people here, but I think

14   that liaison person will help that.

15             Anyone want to speak -- that's where I am now.

16             Who would like to speak against that, if anyone?

17             All right.  Well, then I'll do that.  I'm appointing a

18   leadership committee on behalf of the news plaintiffs of Susman

19   Godfrey, Rothwell Figg, Loevy & Loevy, and Klaris Law, with the

20   attorneys of Ian Crosby, Davida Brook for Susman Godfrey;

21   Steven Lieberman and Jennifer Maisel for Rothwell Figg; Matthew

22   Topic for Loevy & Loevy; and Lance Cooney for Klaris Law.

23             All right.  And the division, by the way, of myself

24   and Magistrate Judge Wang will be:  Magistrate Judge Wang will

25   handle discovery matters.

P5MVOPEC

1          I don't think I need to do anything with the

2   defendants; they seem to be operating together.

3          But now let's turn to the class plaintiffs' leadership

4   counsel.  I have an issue with that.  I think it's an

5   invitation for delay and for disputation to have all of these

6   people be leads and involved in the leadership committee.

7          So why doesn't somebody for the plaintiffs — for the

8   class plaintiffs — tell me why it's a good idea to have all of

9   those people and all of those firms.  The request, to be

10  specific, is four firms as leadership counsel, two from the

11  Authors Guild, two from Tremblay; three interim co-leads;

12  steering committee with a chair.

13         Why doesn't somebody tell me why that bad idea is a

14  good idea.

15         MS. GEMAN:  Happy to, your Honor -- your Honors.

16         Rachel Geman.

17         THE COURT:  I'm going to ask, because the mics don't

18  seem to be picking it up, to speak -- everyone who wants to

19  speak, first of all, identify who you are and who your client

20  is, because I'm just getting to know you.  And speak from the

21  podium.  I think that will be better.

22         MS. GEMAN:  Thank you, your Honor.

23         THE COURT:  I won't hide the ball.  I really think I

24  need one interim lead class counsel.  I think that's going to

25  be most efficient.  And then the work of class counsel can be,

P5MVOPEC

1    you know, divided by the lead counsel.  But having all these

2    people I don't think makes sense for class.  I'm willing to do

3    it, I think, for news; they seem to be better organized.  But

4    for class, I'm concerned.

5           Go ahead.

6           MS. GEMAN:  That you, your Honor.

7           So Rachel Geman, Lieff Cabraser, for Authors Guild and

8    Alter, and here speaking on behalf of the proposed unanimous

9    leadership slate.

10          Your Honor, this case is somewhat unusual in that we

11   are not writing from a blank slate.  We have had an efficient

12   current leadership structure, as your Honor noted, of three

13   interim co-lead firms.  With the integration of the *Tremblay*

14   matter, the *Tremblay* consolidated matters, we simply propose a

15   modification to make that three into four.  This reflects the

16   work that already has been done.

17          With respect to delay and disputations, we actually

18   believe that this structure will ensure the most efficient

19   prosecution of the case.  And there has been no -- there have

20   been no disputes.

21          There is no authority of which we're aware requiring a

22   sole lead.  We understand this is up to your Honor.

23          THE COURT:  We're agreed.  There's no requirement.

24   It's a case management issue.  And this is the beginning of the

25   MDL.  It's not the beginning of the cases; *Tremblay* is farther

P5MVOPEC

1    along.  In fact, the California cases were started earlier.

2    But I do want to set up a structure that will be speedy and

3    efficient, whatever Rule 1 is, to lead to a resolution.

4            MS. GEMAN:  Sure.

5            And here we believe a group will do that.  That might

6    sound counterintuitive, but we work together very well, very

7    closely; we work not only on this case, but other similar AI

8    cases.  This is a big case that is quite far along, and we

9    believe there would be actually more disruption were we to

10   upend the current structure.

11           It seems as though your Honor notes a distinct issue,

12   which is sort of a coordination with the Court.  And that does

13   not seem -- and ensuring that that would happen seamlessly and

14   with consistently is not inconsistent with an actual leadership

15   structure that has more than one firm.

16           THE COURT:  I'm sorry, say that again.  I lost that.

17           MS. GEMAN:  Yeah.  It seems like your Honor is putting

18   your finger on two different issues.  One issue is the number

19   of firms that are the leadership firms.  And a distinct issue

20   might be ensuring as an administrative matter that your Honor

21   can turn to -- or the Court can turn for administrative matters

22   to one firm or one person.  We respectfully submit in the class

23   context those things are somewhat distinct.

24           We believe that in terms of the prosecution of the

25   case, everything that goes on in the day-to-day --

P5MVOPEC

1          THE COURT:  Let me stop you.

2          I'm not sure they are distinct.  They are two

3     different functions, I agree with that.  But they are not

4     distinct to the extent that having multiple co-leads makes it

5     more difficult for the co-leads to coordinate in order to

6     present a single view to the liaison counsel to deal with the

7     defendants and then the Court.

8          MS. GEMAN:  Your Honor, I would refer to the work

9     that's already been done on a consistent proposal by the

10    current proposed lead as an example of past is prologue.

11         THE COURT:  No.  But without pushing it too far, it

12    seems to me all that means is that the various plaintiffs firms

13    — which are appropriately competing for positions here — have

14    sort of called a standoff and everybody is a chief.

15         MS. GEMAN:  I would respectfully push back against

16    that.  It's not a standoff, it's a collaborative work.  We have

17    weekly calls.  We have a subpoena group where we meet and

18    confer.  We jointly participated in ADR.  We have jointly

19    handled the depositions that have occurred to date.  I'm not

20    talking about a patina of stating something to the Court, I'm

21    talking about the reality of how the case has proceeded.

22         I would also note that there are more than two

23    options.  Your Honor has mentioned this possibility of one

24    lead.  We have proposed four leads with a steering committee.

25    It would seem to us that, consistent with most big cases that

P5MVOPEC

1    we're all involved with, that, at minimum, there should be two

2    or three leads and some assistance from the lawyers with whom

3    we've been ably working this whole time.  So I would request --

4              THE COURT:  All right.  Thank you.

5              MS. GEMAN:  Thank you.

6              THE COURT:  Would somebody like to speak against that

7    structure?

8              MR. SAVERI:  Your Honor, if I may.

9              THE COURT:  Sure.  Go ahead.

10             MR. SAVERI:  Joseph Saveri, on behalf of the Tremblay

11   plaintiffs in California.

12             THE COURT:  Yes.

13             MR. SAVERI:  I'd like to note a couple of things.

14             First, your Honor, I — my office — filed the first

15   case in the country.  We started this litigation.  And so --

16             THE COURT:  Bring the mic up to you, sir.

17             MR. SAVERI:  I apologize.  Is that better, your Honor?

18             THE COURT:  Yes.

19             MR. SAVERI:  So, your Honor, first, we did file the

20   first case.  Since that time, we have been prosecuting the case

21   diligently.  There was certainly a time --

22             THE COURT:  Well, *Tremblay* is further along, I'm

23   pretty sure.  I don't really have a good handle yet on the

24   California cases, but they are further along than we are.  But

25   I don't know how efficient it's been.

P5MVOPEC

1           MR. SAVERI:  And I wanted to get to that, your Honor.

2           THE COURT:  Ma'am, you can sit down.

3           MR. SAVERI:  Since the time that the Tremblay cases

4    were filed and the actions were initiated in the Southern

5    District of New York, despite the fact that the cases were

6    proceeding on separate tracks, which, in my experience doing

7    class actions for decades now, is quite unusual.

8           Despite that, there has been a remarkable amount of

9    coordination between the class plaintiffs representing the

10   respective groups.  Despite the fact there wasn't an MDL,

11   despite the fact that the cases were proceeding on separate

12   tracks, we've actually done a remarkable job coordinating.

13   That includes coordinating on things like scheduling, we have

14   taken joint depositions in this case, we have gone to a

15   consolidated mediation in this case.

16          And so, again, this isn't like -- this is not a case

17   where this is the first day of an MDL.  This is a very unusual

18   case where we are something like — depending on how you count —

19   18 to 24 months in.  There has been substantial work done I

20   guess on the west coast by the Tremblay plaintiffs, but also

21   the lawyers who have been before you since the beginning of the

22   cases in the Southern District of New York.

23          It's very important to me that that coordination that

24   we've been able to establish be not disrupted but now be

25   continued.  And so I want to allay and address any concerns

P5MVOPEC

1     that the Court has about — I think you used the word

2     "disputation" or disagreement among the class plaintiffs.

3          To the contrary, there is remarkable alignment and

4     collaboration and agreement on key issues.  We are now in one

5     place.  We are anxious to continue our work together.  And so

6     the leadership structure that's been presented to your Honor I

7     think reflects the hard work we've done and what we plan and

8     intend to do in the future.

9          THE COURT:  All right.  Thank you.

10         I asked for somebody -- if anyone wants to speak

11    against the plaintiffs' position.

12         MR. SLAUGHTER:  Thank you, your Honor.

13         James Slaughter, Keker, Van Nest & Peters, on behalf

14    of OpenAI.

15         THE COURT:  Just let me find you here, sir.

16         MR. SLAUGHTER:  Take your time.

17         THE COURT:  Yes, sir.

18         MR. SLAUGHTER:  Thank you, your Honor.

19         Your Honor is correct, there should be one interim

20    lead counsel appointed under Rule 23(g) on behalf of the class.

21    This case was brought to the MDL precisely because there was a

22    lack of coordination and a lack of efficiency amongst

23    plaintiffs.

24         THE COURT:  Why do you say that?  What leads you to

25    say that?  I know there was papers put into the JPML, but why

P5MVOPEC

1    do you say that was the reason?

2            MR. SLAUGHTER:  I say a reason, your Honor.  One of

3    the reasons was a lack of coordination.  We obviously want to

4    make sure that there aren't duplicative inconsistent rulings.

5    But certainly a focus of the JPML briefing was a lack of

6    coordination of depositions because the cases were proceeding

7    on different schedules in different courts; and so there was a

8    lack of coordination and efficiency amongst the plaintiffs and

9    an inability to prosecute the case efficiently.

10           Unfortunately, that has continued since the JPML

11   order.  There have been, since April 3rd, more than two dozen

12   third-party subpoenas served by various plaintiffs on 13

13   different --

14           THE COURT:  Well, that's going to end.

15           Go ahead.

16           MR. SLAUGHTER:  Thank you, your Honor.

17           So we think that there's got to be one lead counsel.

18   We think that that person has to be able to speak on behalf of

19   all counsel.  And if you'll see from the C&C statement, your

20   Honor, they have vastly — between California and New York —

21   different views on what the class may or may not be.  And that

22   lead counsel needs to propose a single complaint and needs to

23   get everybody on the same page; because right, now we're not.

24   And we agree fundamentally with your Honor that there should be

25   a single counsel to be able to do those things.

1          THE COURT:  All right.  Anyone else?

2          I'll give you an opportunity.

3          MS. GEMAN:  Thank you, your Honor.

4          MR. JACOBSON:  Your Honor, Jeffrey Jacobson from

5     Faegre Drinker, on behalf of Microsoft.

6          Mostly, your Honor, Ms. Hurst is going to be

7     addressing the Court with respect to the issues in this case.

8     I'm here because I'm sort of the class action guy; been doing

9     this a long time.

10          I came at this similarly to the way your Honor did.  I

11     differ from Mr. Slaughter in the sense that I don't -- I'm not

12     here speaking saying that there needs to be one counsel versus

13     a structure.  There are some very good attorneys on the other

14     side of this case, and they can work together.

15          And, you know, the "who" is none of my business.

16          The "what," however, is very much our business.

17          And with respect to Mr. Saveri and how well they've

18     been working together, your Honor saw the proposal about where

19     they are right now.  We don't know as we sit here what the

20     proposed class is; we don't know what the proposed causes of

21     action are; and we don't know what Microsoft products are at

22     issue.

23          THE COURT:  Wait.  Wait.  That's "easy."  I mean, we

24     need a single consolidated class action complaint.  That will

25     come.  That will give you what you're asking for.  I don't

P5MVOPEC

1  think that directly addresses the composition of a class action

2  leadership.

3          MR. JACOBSON:  It may, your Honor, only in the

4  following sense:  I don't disagree with that, except for the

5  fact that in their proposal, they didn't explain how they are

6  going to get there.

7          If, when I sit down and Ms. Geman stands back up,

8  Ms. Geman says, Your Honor, we've got a plan.  And in a week or

9  two weeks or whatever the date is that your Honor sets, we're

10  going to have a consolidated complaint and here's what -- and

11  here's how we're going to get there, your Honor may be in one

12  place.

13          But part of the issue is that right now, as your Honor

14  may or may not be aware, because you're just kind of getting to

15  know the California cases, there are different competing

16  motions for leave to amend that Microsoft and OpenAI both

17  oppose.  One would add an antitrust claim in this case.  One

18  would add Microsoft products that haven't been the subject of

19  any discovery.  There's a lot going on behind the scenes here.

20          And so when I see my friends on the other side stand

21  up and say, We've been working very well together, it's been

22  two months since consolidation.  And the proposal that came in

23  did not give you a timeline about what's coming in, what it's

24  going to say, and how they are going to get there.

25          And so I'm standing up just very briefly, and I'll

P5MVOPEC

1    stop in 15 more seconds and let the plaintiffs have back at it.

2    But I just want to be clear, the "who" is none of my business;

3    it's up to them.  It's not that I disagree with Mr. Slaughter

4    that we would like -- we need to have one person we're dealing

5    with.  Because right now, the current structure is that for

6    anything they want to do, they need the approval of everybody

7    at that table, half of that table, the entire gallery and the

8    jury box.  I'm sorry, half the gallery and the jury box.  And

9    that's a lot of people.

10           So, so long as they empower someone or a couple of

11   someones, I'm good.  I think OpenAI will be good.  But we've

12   got to, as your Honor said, get ourselves to a place where

13   there is a complaint or a proposed complaint, because if they

14   want to add products and causes of action, we're going to want

15   to have something to say about it if your Honor will let us.

16           Thank you.

17           THE COURT:  All right.  Ms. Geman.

18           MS. GEMAN:  Super briefly, your Honor.

19           We agree with your comment that it's a little bit

20   apples and oranges between the leadership and what the

21   consolidated complaint that we propose to file by June 10th is.

22           But getting to the heart of the matter, if your Honor

23   is not inclined to accept our proposal, we would respectfully

24   request that we have until 5 o'clock today to submit something

25   with whatever the number is that your Honor wants.

P5MVOPEC

1          THE COURT:  Well, I want one interim lead counsel for

2    the class action plaintiffs.  You can do that by 5 today?

3          MS. GEMAN:  Yes, your Honor.

4          THE COURT:  All right.  By 5 today, submit who the

5    proposed interim lead counsel is for the class action

6    plaintiffs.  All right?

7          And then, assuming there's no dispute, assuming you

8    can present me with one person, I'll want a consolidated

9    amended class action complaint.  When do you think your team —

10   you or, rather, the lead counsel — can have that in order, in

11   shape?

12         MS. GEMAN:  We had proposed June 10th, your Honor.  Is

13   that date agreeable?

14         THE COURT:  That's acceptable.

15         Assuming there's a single proposed class action

16   interim lead plaintiff today, a consolidated class action

17   complaint should be filed by June 10, all right.  No new

18   products and no new causes of action that have not been

19   asserted -- well, no new products or causes of action; only

20   those that have been already asserted in these cases.  None of

21   the new ones on the proposed amended complaints; just the

22   causes of action that are already existing and the products

23   that are already existing.

24         All right.

25         MS. GEMAN:  Your Honor --

P5MVOPEC

1          THE COURT:  Go ahead.

2          MS. GEMAN:  At the risk of further frustrating your

3     Honor, may one of the other counsel be heard on the subject of

4     the proposed amendments, if your Honor would like to address

5     that now?

6          THE COURT:  Yes, of course.

7          I'm sorry, were you done?

8          MS. GEMAN:  I wanted to turn -- yes, your Honor.  I

9     wanted to turn the floor to Mr. Nelson -- or Mr. Saveri about

10     the subject of the amended complaints, if your Honor will

11     allow.

12          THE COURT:  Yes, of course.

13          MR. DIAMOND:  Before that, can we have a point of

14     clarification, your Honor?

15          I think all the parties agree that the *Millette* matter

16     is not included in this structure.

17          THE COURT:  The what?

18          MR. DIAMOND:  The *Millette* matter, also known as the

19     *Petryazhan* matter.

20          THE COURT:  That's the YouTube, yeah.  Go ahead.

21          MR. DIAMOND:  I just wanted to make sure this is not

22     including the *Petryazhan* matter; is that correct?

23          THE COURT:  Well, the *Petryazhan* matter, what's the

24     nature of the stay that the parties have agreed in?  I take it

25     it's stayed pending class action certification, is that it?

P5MVOPEC

1        MR. DIAMOND:  Yes, your Honor, and/or motion for

2   summary judgment.

3        THE COURT:  Yeah, I understand.

4        MR. DIAMOND:  Discovery only opened in our case a mere

5   few days before consolidation.

6        THE COURT:  Get me a stipulation of the parties.  Can

7   you do it by tomorrow?

8        MR. DIAMOND:  Yes, your Honor.

9        THE COURT:  That's staying the *Millette* or *Petryazhan*

10   — I never know how to pronounce it — action pending either

11   class certification or motions for summary judgment.

12        MR. DIAMOND:  Yes, your Honor.

13        THE COURT:  That takes care of that.

14        Sir.

15        MR. SAVERI:  Joseph Saveri again.

16        So on the issue of --

17        THE COURT:  Let me find you on the list.  Sorry.

18        MR. SAVERI:  On an unrelated note, I'm listed as an

19   attorney at Saveri & Saveri, which is ironic to me, considering

20   that was my father's firm.  And I haven't worked for them since

21   I was a young boy.  So I guess I'll have to correct that.

22        THE COURT:  I have you under Saveri Law Firm.  What is

23   the correct --

24        MR. SAVERI:  Joseph Saveri Law Firm.

25        When I checked in, it said Saveri & Saveri, Inc.,

P5MVOPEC

```
 1    which, as it happens, was my father's law firm many years ago.

 2              THE COURT:  All right.  So you want us to have you

 3    under Joseph R. Saveri Law Firm?

 4              MR. SAVERI:  Yes.

 5              THE COURT:  Done.

 6              MR. SAVERI:  Thank you, your Honor.

 7              Okay.  So on the consolidated complaint, I want to

 8    make sure I understand your guidance.  We had intended to, by

 9    the date that's inserted in the schedule --

10              THE COURT:  Proposed schedule.

11              MR. SAVERI:  The schedule that's found at page 39 of

12    the joint status conference statement.

13              THE COURT:  Yes, that's the plaintiffs' proposed

14    schedule.

15              MR. SAVERI:  Yeah.  To file the consolidated class

16    action complaint by June 10th.  And we had intended — but I

17    think it's different than what -- the direction your Honor just

18    gave — that we would take that opportunity to synthesize the

19    complaints, including causes of action or complaints or facts

20    which have not been -- which were outside the complaints that

21    are at issue in the respective cases.

22              I understood, but I want to make sure I heard you

23    correctly, that the amended -- the consolidated complaint would

24    only include the claims and causes of action --

25              THE COURT:  And products.
```

P5MVOPEC

1        MR. SAVERI:  -- and products that are subject to the
2   operative complaints in the respective cases.
3        THE COURT:  Yes.
4        MR. SAVERI:  And so we would intend, consistent with
5   the motions that are already on file, to amend those complaints
6   pursuant to Rule 15.  But I guess I wanted to get your Honor's
7   sense about how you would like to sequence that.
8        And there's another issue which I guess we will
9   resolve or deal with --
10       THE COURT:  But wait.  Let's make sure we're talking
11  about the same thing.
12       MR. SAVERI:  Yes, your Honor.
13       THE COURT:  What I'm proposing, in order to move this
14  forward, is by June 10, a single consolidate -- not a proposed
15  complaint, a single consolidated class action complaint on
16  behalf of all the plaintiffs.
17       MR. SAVERI:  Yes.
18       THE COURT:  That's what I see.
19       And what I'm doing — I'll hear discussion — is
20  limiting it to the claims that already exist in the action.  So
21  I don't foresee motions to further amend the complaints.  And
22  because there's a new complaint that will be a single complaint
23  going forward — and I'm limiting it to the claims that have
24  already existed — there's no room for proposed amendments.
25       MR. SAVERI:  So I want to make sure I understand, your

P5MVOPEC

1    Honor, that we have, based on the discovery that we've taken

2    and further analysis of the case, proposed supplementation of

3    the complaints that are at issue in the respective cases.

4            Based on the evidence that we've developed and our

5    further analysis of the case, we are interested in pursuing

6    those claims, including additional products, additional causes

7    of action.

8            And so it is our position that we would be entitled to

9    amend, and we would seek -- and we have sought leave in the

10   respective courts pursuant to Rule 15.

11           And so my question to your Honor is:  How would you

12   like us to organize that and proceed?

13           THE COURT:  All right.  Let me hear from -- I actually

14   don't intend to permit further amendments, but let me hear from

15   the defendants.

16           It seems to me all that would do would be to invite

17   another round of Rule 12(b)(6) motions, and would expand

18   discovery, if you're talking antitrust or additional DMCA

19   claims.  I don't know what the proposals are.  It would extend

20   discovery; it would require briefing and determination of the

21   12(b)(6) motions.  It would slow everything down, when the

22   parties have already had full opportunity, it seems to me, to

23   assert their claims.

24           If I'm going to allow amended claims, new claims, new

25   products, it would be a never-ending process.

P5MVOPEC

1              But let me hear from the defendants.

2              The argument is that the plaintiffs have a right to

3     amend under Rule 15.

4              MS. HURST:  Thank you, your Honor.

5              An Annette Hurst from Orrick, Harrington & Sutcliffe,

6     for Microsoft.

7              THE COURT:  Again, I'm sorry, let me find you.

8              Yes.  Go ahead.

9              MS. HURST:  We agree with the Court that those

10    alterations to the scope of the claims should not be permitted.

11    The one thing that all parties agree is that the case should be

12    on the same simultaneous track schedule as the Court noted, and

13    that we should have a single summary judgment deadline to

14    address all these fair use defenses at once, so the Court just

15    has to deal with all that once.

16             What the plaintiffs are proposing, the class

17    plaintiffs are proposing, is it would completely frustrate that

18    objective.

19             THE COURT:  No, but what -- I'm sorry, go ahead.  I

20    should let the parties talk.

21             MS. HURST:  Well, your Honor, not only would they

22    propose to add antitrust claims, which would dramatically alter

23    the scope of the case and necessitate 12(b)(6) motions, as the

24    Court has noted, but the proposed additional products,

25    especially for Microsoft, your Honor, could double or triple

P5MVOPEC

1    the existing size of fact discovery in this case, when,

2    otherwise, we are poised for the completion of document

3    discovery and embarking on depositions.

4         Do they have a right to amend?  They don't have a

5    right to amend under Rule 15, your Honor.  We're not within --

6         THE COURT:  Leave to amend should be freely granted.

7         MS. HURST:  Your Honor, certainly that's true.  But in

8    the MDL, the Court has the discretion to put administrability

9    and the need for efficiency in the orderly conduct of the

10   proceedings ahead of that.

11        And, your Honor, certainly this is not a situation

12   where they're forfeiting claims with respect to additional

13   products and the like.  Once the Court has ruled on the variety

14   of legal defenses and such, if there are additional claims that

15   can be brought against subsequent products, then those cases

16   can still be brought, your Honor.

17        So nobody is forfeiting anything.  But the Court

18   certainly has the discretion, as the administrator of the MDL,

19   to decide that in the orderly conduct of the proceedings, we

20   should lock this down where it is and get on with it on the

21   unified schedule that all parties agree we should have.

22        If they have amended claims, it will derail that.

23        Right now the parties are not that far different in

24   terms of when they say that single summary judgment deadline

25   should be.  The plaintiffs say March of '26, the defendants say

P5MVOPEC

1    November of '26.  But if Mr. Saveri's proposal to start

2    amending the pleadings is accepted, that would have to change.

3              THE COURT:  Excuse me.

4              You're talking about three to six months, if not more,

5    in delay.

6              MS. HURST:  Absolutely.

7              It's more than that, your Honor.  Because if the scope

8    of the pleadings is augmented, then the fact discovery is back

9    to, I know, square two in terms of documents and depositions.

10             THE COURT:  All right.

11             But let me go back to Mr. Saveri's point, which was,

12   if we don't have an absolute right to amend, certainly the

13   Court should be liberal, pursuant to the federal rules, in

14   granting leave to amend.

15             MS. HURST:  Your Honor, it's not necessary --

16             THE COURT:  I think that's his best point.

17             MS. HURST:  Yeah.  Your Honor, certainly the Court has

18   the discretion to say if they have additional claims, they can

19   be brought in separate proceedings.

20             THE COURT:  I'm sorry, what does that mean?

21             MS. HURST:  Well, your Honor, they can file separate

22   claims for antitrust, if that's what Mr. Saveri wants to do.

23   And that case can be stayed pending the orderly resolution of

24   the MDL proceedings.  I mean, obviously we don't encourage

25   that.  But to allow it to become at issue in the MDL would

P5MVOPEC

1    derail the single unified schedule that all parties agree that

2    we should have.

3            Your Honor, Microsoft even offered a tolling agreement

4    to the plaintiffs in New York when they proposed to

5    dramatically augment by adding products and, you know, doubling

6    or tripling the size of the case, just because we recognize

7    that, you know, there's not a forfeiture.  However, your Honor,

8    it is also true that the Court has the discretion to deny under

9    Rule 15 in order to conduct the MDL in an orderly fashion.

10           THE COURT:  All right.  Thank you.

11           Response.

12           MR. SAVERI:  Thank you, your Honor.

13           Again, Joseph Saveri.

14           We believe under the rule we are entitled to make the

15   motion under Rule 15 to amend the complaint.  That amendment

16   would be based on facts that have come up in the discovery that

17   we've taken, and that would be true in the ordinary course in

18   litigation in federal court.  We don't think that the peculiar

19   or the particular posture of this proceeding would change those

20   substantive or procedural rights under the Federal Rules of

21   Civil Procedure.

22           THE COURT:  But there's no right to amend, sir.

23           MR. SAVERI:  No, but with the right to move to amend.

24   We are entitled to make the motion, based on the requirements

25   of Rule 15, to seek to leave to amend the complaint based on

P5MVOPEC

1    the case law and the rule itself.

2            Now, we're prepared to do that.  In fact, we did that.

3    The respective cases did that in the respective district courts

4    prior to the MDL proceeding.  So we've had that motion on file

5    — those respective motions on file — for some time, and they

6    have not been addressed by the respective courts.

7            So all we're really asking for is to have a ruling on

8    the motion for leave to amend that have been pending for some

9    time.  By your Court's order, I understand it, the consolidated

10   complaint isn't going to add any new claims; it's just going to

11   bring together what's already at issue in the respective

12   courts.  It's going to be a little bit of work because they

13   don't fit exactly together, but that's our job and that's why

14   we need a little time to do that.

15           But once we have done that, we would be -- we would

16   like to -- and I don't want to -- I'm not arguing we have an

17   automatic right to do that, but we should be entitled to make

18   the motion to apply to the Court under Rule 15 to amend those

19   pleadings.  And that's all we're seeking to preserve.

20           The other point, your Honor — and maybe this is a

21   different point — is, at some point we have to deal with the

22   fact that there are protective orders that have been issued in

23   the respective cases that, at least for right now, prevent me

24   from having any access to the discovery record that was created

25   in the Southern District and vice versa.

P5MVOPEC

1             And if we were going to do any kind of work together,

2    we need to address that.  That might apply to the complaint,

3    but that's a different issue.  But I just want to flag that.

4    Because right now, that is an impediment for us to try and get

5    together.

6             THE COURT:  All right.

7             MR. SAVERI:  So, your Honor, I don't have anything

8    else to add on that point.

9             MR. BOIES:  Your Honor, could I just make one

10   practical suggestion?

11            The Court obviously has the discretion to manage the

12   docket, and either grant or deny the motion to amend.

13            But this is an MDL.  The idea that we are going to now

14   take claims that could be adjudicated, that are clearly

15   overlapping, and file them in another court, I just don't think

16   that is consistent with what the MDL was intended to do.  The

17   antitrust claim clearly involves the same conduct as the

18   underlying claims.

19            THE COURT:  But in terms of managing the MDL, an

20   antitrust claim will send this skittering off into the unknown.

21            MR. BOIES:  Your Honor, it may be that the right thing

22   to do is to file it separately.

23            THE COURT:  I'm sorry.

24            MR. BOIES:  It may be that the right thing to do is to

25   file it separately.  But I suspect that what's going to happen,

P5MVOPEC

1    because the discovery is so overlapping, that they are going to

2    move to bring it here as a tagalong.  So now what you're going

3    to have -- now, if they say they are not going to bring it here

4    as a tagalong is a different situation.  But given my

5    experience with the way defendants operate, I think --

6    including when I'm representing them, I think that they are

7    going to move to bring it here as a tagalong.

8           Then what you're going to have, is you're going to

9    have that case here anyway.  And now the argument is going to

10   be whether you stay that case, which I think would be quite

11   unfair.

12          THE COURT:  Would be?

13          MR. BOIES:  Quite unfair until this case, which may go

14   on for two years, gets decided.

15          Now, if they tell you that they are not going to bring

16   it here as a tagalong, I'll sit down.  And we can bring the

17   case in another court and another court can adjudicate it.

18          But I suspect what they are going to want to do is —

19   because it does have overlap in terms of discovery — they are

20   going to want to bring it here.  And then they are going to be

21   asking you to stay it.  And this is going to be taking place

22   now two or three months from now.

23          So I just think, as a practical matter, the Court

24   needs to consider how that antitrust claim — which is a serious

25   claim — is going to get adjudicated.  If it's going to be in

P5MVOPEC

1    the MDL, then I think we ought to put it into the consolidated

2    complaint.

3             THE COURT:  All right.  Let me hear -- please.

4             And then I'll hear from a defendant.

5             MS. GEMAN:  Thank you, your Honors.  Rachel Geman.

6             A brief substance -- a brief process point on the

7    Alter AG case, and then a brief substance point that I think

8    will allay your Honors' concerns.

9             As Magistrate Judge Wang knows, we did have a hearing

10   about issues in connection with amendments.  Magistrate Judge

11   Wang ordered us to file an amended complaint by April 15th.

12            We, the Authors Guild plaintiffs, submitted a proposed

13   amended complaint to defendants on March 19th.  Many weeks went

14   by.  Nevertheless, despite the, sort of, lack of

15   coordination/cooperation on that, we did file the proposed

16   complaint by April 11th.  This was timely.

17            But even if those facts were not true, I just want to

18   be very transparent about what our proposed amendments are to

19   show the Court that they will not slow down discovery, and

20   that, in fact, they will be efficient.

21            With your Honor's permission, I'll just say three

22   things.

23            Your Honor did not mention parties, but just again, in

24   the interest of transparency, a minority of the plaintiffs have

25   wholly owned loan-out companies, like many, many writers.  And

P5MVOPEC

1    so just in the interest of fulsome plaintiff addition, we added

2    those loan-outs.  To be clear, we have already produced the

3    discovery from those loan-outs; they are essentially the same

4    as the plaintiffs.  There might be a couple more documents, but

5    that's basically done.  So that's issue one.  And we don't read

6    your Honor's ruling, if it is unmodified, to preclude that

7    administrative step.

8          The second addition that we want to note is that we

9    made explicit models that were already in the case that the

10   Honorable Judge Wang had indicated that discovery was limited

11   to certain models.  In our amended complaint, we just simply

12   name what they are as to having them be sort of grouped by

13   functional reference.

14         The third point I'd like to make is that we have

15   proposed adding a vicarious liability claim against Microsoft.

16   We already have a contributory infringement claim against

17   Microsoft, and we can proffer that we do not believe the

18   vicarious claim would add any marginal new discovery.

19         So for these reasons, we want to be transparent about

20   what we see as still permitted under your Court's order, unless

21   the Court modifies the order for more broad amendments.  And

22   this hopefully shows the Court that this is not going to slow

23   this case down.  We are pushing to be trial-ready in August of

24   2026.

25         THE COURT:  You didn't talk about the antitrust issue.

P5MVOPEC

1          MS. GEMAN:  Well, your Honor, just to be very

2   explicit, I'm talking about the proposed amended complaint in

3   the *Authors Guild/Alter* matter.  That was about which we sought

4   a motion to amend to file on April 11th in this court.

5          THE COURT:  All right.  Let me hear from a defendant.

6          And address Mr. Boies's point about tagalongs.

7          MS. HURST:  Thank you, your Honor.

8          I do think this underscores why there is the necessity

9   of a single interim lead counsel for the class cases.

10          I think we've heard --

11          THE COURT:  All right.  That's done.

12          MS. HURST:  -- very different visions here.

13          Your Honor, even the news plaintiffs note that they

14   would not like in footnote 21 any amended complaints to result

15   in the extension of discovery or delay of the case schedule.

16          THE COURT:  Let me look at that footnote.

17          All right.  Go ahead.

18          MS. HURST:  The news plaintiffs and the defendants are

19   on the same page here, your Honor, that these proposed

20   amendments to add antitrust claims, to add products which would

21   extend -- dramatically extend the scope of the case would

22   derail the schedule and should not be permitted.

23          THE COURT:  What about Mr. Boies's point that all that

24   will do will lead to plaintiffs filing complaints, additional

25   complaints, and then ask that they be joined as tagalongs?

P5MVOPEC

1              MS. HURST:  Well, your Honor, the only reason they

2       would need to file the complaints is if they are concerned

3       about statute of limitations issues.  And it seems to me the

4       parties ought to be able to work that out and have tolling

5       agreements so that plaintiffs do not feel that that is

6       necessary.

7              But if they decline to engage in such negotiation and

8       feel it's necessary, then they -- and that they do need to

9       file, then probably the way they've characterized it, there

10      would be overlapping allegations and we would seek to stay

11      those proceedings.

12             I think we should be able to work that out so that

13      it's unnecessary.  And we can get to the substance of the

14      issues here, which are so important for this technology which

15      is being implemented all across the country --

16             THE COURT:  No, that's a fair point.  Go ahead.

17             MS. HURST:  I mean, you know --

18             THE COURT:  It seems to me it's time.  It's time.

19             MS. HURST:  Yes.

20             THE COURT:  Although it's a brand-new MDL, in my view.

21      The cases have been -- especially the California cases, have

22      been going on.  It seems to me there's a public interest in

23      these things being resolved.  I am very concerned about

24      amendments and amendments and amendments.

25             Go ahead.

P5MVOPEC

1           MS. HURST:  Your Honor, I think the defendants agree

2    with the Court and submit on that basis.

3           THE COURT:  Okay.  Look, I don't think I'm saying

4    anything that the parties disagree with.  It seems to me that

5    ultimately these matters will resolve themselves on the fair

6    use defense.  That's what everybody has been -- that's the

7    subtext here.

8           And it seems to me, in the interest of all the parties

9    and the Court, that that issue be -- that there be discovery on

10   it; that it be -- discovery be closed when appropriate; that

11   there be cross-motions -- that there be motions for summary

12   judgment — I'm not telling you how to brief it.  And my

13   educated guess is that that all will be leading to a fair use

14   opinion.

15          These amendments, including the antitrust amendment,

16   are not getting us there.  So I am going to maintain my

17   position that the consolidated amended class action complaint

18   include simply the products and causes of action that have

19   already been asserted.

20          The parties should discuss the tolling issue.  It

21   seems to me that's a more efficient way to resolve it.  Then

22   there's no issue of a statute of limitations.  But, if need be,

23   I'll handle any tagalong actions that come.

24          That's the ruling of the Court.

25          The three weeks from today still stands, assuming the

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

P5MVOPEC

1  plaintiffs are able to present a single lead by the end of the

2  day.  If they can't, they should submit competing proposals to

3  me by next Wednesday.  But I take the statement that the

4  plaintiffs think they can resolve that amongst themselves at

5  face value.

6          All right.  Let's move on.

7          MS. GEMAN:  Your Honor, just very briefly, at the risk

8  of sounding obtuse — Rachel Geman — was our recitation of our

9  view that the amendments that we've laid out for the *Authors*

10 *Guild* case permissibly within the scope of your ruling?

11 Namely, that those amendments and tweaks are permitted.  Was

12 our understanding correct?

13         THE COURT:  Tell me what they are.

14         MS. GEMAN:  Yes, your Honor.

15         The inclusion of a vicarious infringement claim

16 against Microsoft.  Currently, there is a direct and a

17 contributory claim, so this would not entail new discovery.

18         The second is making --

19         THE COURT:  No, but won't it involve the 12(b)(6)

20 motion?

21         MS. GEMAN:  I mean, that would be a question for

22 defendants.  There was no 12(b)(6) motion on the direct or

23 contributory claims; and so I would respectfully be surprised

24 if, certainly as a pleading matter, they would say that we

25 don't satisfy the vicarious standard.

P5MVOPEC

1          THE COURT:  You're saying you think as a pleading

2    matter they would move is what you just said.

3          MS. GEMAN:  No, no.  Your Honor, I'm saying that they

4    didn't -- there was no 12(b)(6) motion on direct infringement,

5    contributory infringement.  We have not heard, and I can be

6    corrected --

7          THE COURT:  But I had those in *New York Times*, *Daily*

8    *News* and CIR.

9          MS. GEMAN:  I will be corrected by Microsoft if I'm

10   wrong, but I do not believe that the concern raised by

11   Microsoft about the vicarious claim was one of the statement of

12   the elements, but, rather, as part of a welter of discussions

13   about impact on the case.

14         So that would be a question for Microsoft as to

15   whether they would intend to move on a 12(b)(6).  Our goal is

16   to keep the current schedule.  So if I had a choice between

17   jettisoning that claim -- but I have to say, your Honor, that I

18   don't respectfully see a basis to move to dismiss that claim,

19   but that is a question for Microsoft.

20         Moving to the other two issues, one is simply

21   housekeeping, making explicit models that are already in the

22   case.

23         And the third issue --

24         THE COURT:  If there are any models already in the

25   case, that's okay.

P5MVOPEC

1          MS. GEMAN:  Thank you, your Honor.

2          THE COURT:  But they have to be in the case already.

3          MS. GEMAN:  Thank you, your Honor.

4          THE COURT:  Okay.

5          MS. GEMAN:  The third issue was simply the fact that a

6   minority of the plaintiffs have loan-out companies, and so

7   those companies would be added as party plaintiffs.

8          To repeat, we have already produced --

9          THE COURT:  I don't see any issue with that.

10         Do the defendants see an issue with adding loan-out

11  companies?  I take it these have to do with individual authors,

12  is that it, setting up loan-out companies.

13         MS. GEMAN:  Yes, your Honor.

14         THE COURT:  So that there's some separation of the

15  individual and his or her company.

16         MS. GEMAN:  Yes, your Honor.

17         THE COURT:  Okay.

18         MS. HURST:  Your Honor, we do think the loan-out

19  companies changes the fourth-factor analysis and would

20  necessitate potentially significant additional discovery

21  related to not only those companies, but the markets in which

22  they participate for assessing fourth-factor issues.  It could

23  inject a variety of secondary economic considerations related

24  to the exploitation of the works in those cases that are not

25  currently present.

P5MVOPEC

1              And we also would have said, your Honor, that if it's

2      a standing problem for particular named plaintiffs, they knew

3      about their ownership and exclusive arrangements with respect

4      to their rights when they first filed the case.  So that is

5      also — especially in this MDL context — a matter of undue delay

6      on their part.  And it could have a significant effect on the

7      scope of discovery.

8              So, your Honor, I would say, in sum, we don't have a

9      problem with adding the vicarious liability claim.  I think

10     that's just a different legal theory for facts that are already

11     alleged.  And I would agree with Ms. Geman that that's not

12     going to substantially alter the scope of anything; it's

13     already in the cases writ large.

14             I don't know what models Ms. Geman is referring to.

15     So what I would propose, your Honor, is that the plaintiffs

16     provide their proposed class consolidated complaint to the

17     defendants first, to ensure that we agree that, you know, the

18     matters that they present are not beyond the existing scope of

19     the case or reasonable alterations that we've already indicated

20     that we agree to.  And then if the parties are unable to agree

21     on that, then they present the motion with whatever are the

22     contested issues.

23             THE COURT:  Ms. Geman, speak to the issue of loan-outs

24     substantially changing the discovery and the fair use analysis,

25     because that's what I want to focus on.

P5MVOPEC

1          MS. GEMAN:  Thank you, your Honor.

2          So I feel very confident in saying that there is zero

3     impact.  This is simply a matter of an author having a loan-out

4     company.  It doesn't change issues about how the books were

5     acquired in this case; it doesn't change issues --

6          THE COURT:  Does it change profitability issues?

7          MS. GEMAN:  It does not, your Honor.  Because this is

8     simply an administrative thing for a writer to have sort of a

9     company to get their royalties.  Your Honor is certainly

10    correct that commercialness is a fair use issue, but that goes

11    to the nature of defendants' use; it has nothing to do with

12    whether a plaintiff has a loan-out company.

13         I can submit to you, your Honor, that one of the other

14    cases that Mr. Nelson and I are prosecuting is against a

15    company called Anthropic.  In that case, there are plaintiffs

16    and their loan-out companies.  There was no issue with the

17    depositions because the plaintiff is the loan-out company.  And

18    the depositions were completed.

19         Just a data point, the defendants first asked

20    questions to the plaintiff in her capacity as a writer.  And

21    then they sort of put on a different hat and asked questions to

22    them as a loan-out, but it was all the same people, all the

23    same questions.

24         There is zero delay here.  We submit that this

25    amendment is timely and this is just administratively

1  convenient.

2          I feel very strongly in saying this has -- should have

3  zero impact on factor four.  And --

4          THE COURT:  Go ahead.

5          MS. GEMAN:  And then did your Honor have another

6  question about impact on Rule 23?  I just want to make sure

7  I've answered your Honor's questions.

8          THE COURT:  No, I don't think there is an impact on

9  Rule 23.

10          MS. GEMAN:  I would also note, your Honor, that your

11  Honor has expressed the importance — and Ms. Hurst has

12  expressed the importance — of streamlining.  The loan-outs are

13  already in the Tremblay class.  And so this is really more of

14  an interest in conforming the cases.  This is, to us, a very

15  important issue that will not create more discovery because,

16  again, this discovery has been produced and will make life

17  easier later on.

18          THE COURT:  Discovery has been what?

19          MS. GEMAN:  Meaning to the extent that some of the

20  plaintiffs have a loan-out company and there are documents --

21  oh, I'm sorry.  I said the word "produced."

22          THE COURT:  Thank you.

23          MS. GEMAN:  I'm not going to submit that literally

24  every document has been produced; but in the main, there has

25  been no withholding of documents simply for the ancillary fact

P5MVOPEC

1    that someone has a loan-out.

2                    Thank you, your Honor.

3                    THE COURT:  I understand.

4                    Mr. Saveri.

5                    MR. SAVERI:  Your Honor, thank you.

6                    Joseph Saveri again.

7                    I just want to point out that this issue with the

8    loan-out corporations, the loan-out corporations are already in

9    our case.

10                    THE COURT:  They are in *Tremblay* already.

11                    MR. SAVERI:  Yeah.

12                    THE COURT:  That's relevant.  Go ahead.

13                    MR. SAVERI:  And then also, because of that, the

14    discovery in the *Tremblay* case has already -- this has already

15    been a focus of the discovery in *Tremblay*, both in terms of

16    document discovery and also, I defended one of the class

17    plaintiffs' deposition.  And this was a subject of the

18    interrogation at the deposition.

19                    THE COURT:  No, but the fact that you're telling me

20    it's in *Tremblay* goes toward my allowing the loan-outs in the

21    consolidated amended complaint.  I understand that.

22                    MR. SAVERI:  Yes.

23                    THE COURT:  The fact that you're telling me it was a

24    major subject of discussion in the deposition squints in the

25    direction of what the defendant just said, that is, it would

P5MVOPEC

1  add additional discovery here, if it was such a major subject

2  of the *Tremblay* depositions.

3          MR. SAVERI:  Your Honor is correct.

4          To the extent that there is analogous discovery to the

5  *Tremblay* case that has not been conducted here, I'm not

6  familiar with the discovery in the *AG* case.  I just know, your

7  Honor, that with respect to the clients I represent, this issue

8  is already on the table; the discovery has been on the table;

9  and, in fact, depositions have focused on it.  So from our

10  perspective, this doesn't add any delay because we've been

11  undertaking the prosecution of those claims already.

12          THE COURT:  All right.

13          Here's what I'm going to do:  Judge Wang tells me that

14  in an Alter discussion there were explicit models laid out as

15  to what the specifics ones were.  I'm going to allow those in

16  the amendment.

17          I am going to allow the loan-outs, given the fact that

18  it's in *Tremblay*.  Plaintiffs here are nodding aggressively.

19  And there seems to be no real dispute about the vicarious

20  infringement claims.  So that should clear up what the

21  consolidated amended complaint can have.

22          In terms of antitrust, you'll either work out a

23  tolling agreement or drop it or bring it as a separate action.

24          All right.  Let's move on.

25          And I think I've indicated this already, but this is

P5MVOPEC

1    not going to work unless there's some cooperation here, some

2    streamlining.  And the theory is with a single interim class

3    action counsel, plus the agreed-upon group of lawyers for the

4    news plaintiffs, the plaintiffs will speak with one voice, that

5    is, the single interim plaintiffs' class action counsel.  And

6    they will interact with Ms. Brook as liaison counsel, who will

7    be speaking also with the news plaintiffs and then the

8    defendants.

9           So that by the time it gets to the Court, there's

10   either been agreement, or an application can be made by the

11   Court with your telling me, We tried to work this out — that

12   would be Ms. Brook speaking for that on behalf of the

13   plaintiffs.  That's the streamlining that I envision here.  And

14   I've already handled that in terms of the complaint moving it

15   forward.

16          Okay.  The duties of counsel will be largely what's in

17   the manual on complex litigation.  I'll set it forth in an

18   order.

19          Compensation of leadership counsel.  I'm certainly not

20   going to deal with that now.

21          Consolidation of the class actions — I've handled

22   that.

23          Additional claims — I've handled that.

24          I don't need a consolidation of the news plaintiffs'

25   complaint.  Everybody agrees consolidation of the news

P5MVOPEC

1    plaintiffs is unnecessary.

2         My notes say *The Times* has an unopposed motion to

3    amend the complaint to add a 1202(b)(1) claim, DMCA claim; is

4    that right, *Times*?

5         MS. BROOK:  Yes, your Honor, with one clarification.

6    It's not a new claim, it's just to replead the one that the

7    Court dismissed, so that it is in line with the ones that the

8    Court has allowed to go forward as to *The Daily News* and other

9    news plaintiffs.

10        THE COURT:  All right.  So why don't you get me a

11   stipulation that says what it is, and that it's unopposed, and

12   I'll sign it.

13        MS. BROOK:  Thank you, your Honor.

14        THE COURT:  I guess it doesn't have to be a

15   stipulation if you have the agreement from the other side.  I

16   leave that to you.

17        Bifurcation damages.  I'm not going to do that now.  I

18   mean, I don't see any need for bifurcation, unless there's a

19   need to slow this down, so I'm not going to do it.  If anybody

20   wants to argue otherwise, I'll hear it.

21        Okay.  No bifurcation of damages.

22        This is important — everything is important — but the

23   issue of class certification versus summary judgment, which

24   comes first.  I feel fairly strongly about this.  I've thought

25   about all these things, that, again, on my theory, that we're

P5MVOPEC

1   most likely moving toward a determination of fair use, of the

2   affirmative defense of fair use.  The way to get there sooner

3   rather than later is by having class certification after

4   summary judgment motions.

5            Anyone want to argue otherwise?

6            In other words, summary judgment briefing for

7   discovery, summary judgment briefing, decision, class

8   certification issues.

9            Sir.

10           MR. NELSON:  Thank you, your Honor.

11           Justin Nelson from Susman Godfrey.

12           THE COURT:  Just let me find you.  Yes, I have you.

13           MR. NELSON:  Thank you.

14           We do believe that the class certification issue

15   should come before or certainly, if nothing else,

16   simultaneously with.  And we understand your Honor's position,

17   just to be clear.  Courts have done it both ways.

18           THE COURT:  Yes.

19           MR. NELSON:  And if your Honor decides that, it is

20   perfectly within your discretion to do so.

21           We do think from a staging perspective it would be

22   more appropriate to do class certification first.  I just

23   argued class certification in the *Anthropic AI* case — which

24   overlaps with these claims — last week in front of Judge Alsup

25   in the Northern District of California.  There is a summary

P5MVOPEC

1   judgment hearing today in *Anthropic* that my partner Rohit Nath

2   is handling.  And there are ways to stage it.  By the way, the

3   only reason they have summary judgment now — because we're in

4   the middle of fact discovery there — is because the defendants

5   wanted an early summary judgment motion on fair use.

6          THE COURT:  Wait, wait, wait.  I'm sorry.  Let me slow

7   down a little so I understand that.

8          Discovery is ongoing.  Nonetheless, Judge Alsup is

9   having a summary judgment -- has brought on a summary judgment

10  motion even though discovery is ongoing?

11         MR. NELSON:  Yes, your Honor.  At defendants' request

12  there, because of the common issue involving fair use --

13         THE COURT:  But fair use is for nonexclusive factors.

14  It seems to me, essentially, cover the waterfront in terms of

15  discovery.

16         MR. NELSON:  Your Honor, we believe that we win on the

17  merits right now in that *Anthropic* case, but we do have --

18         THE COURT:  On summary judgment.

19         MR. NELSON:  On summary judgment.  Well, to oppose

20  their summary judgment.  We have not cross-moved, your Honor.

21         THE COURT:  Okay.

22         MR. NELSON:  But we believe that we will prevail on

23  that motion with prejudice; but to the extent that the Court

24  disagrees, obviously there is more discovery to come.

25         The point actually is that there are a huge amount of

P5MVOPEC

1    common issues.  The common issues on the class side, with all

2    the books, go factor by factor by factor.  There are certainly

3    some issues that require discovery.  There have been expert

4    reports preliminarily submitted, there were expert reports for

5    class certification that came in with the class certification

6    motion and response.

7         Our concern with pushing back class certification is

8    the concern that your Honor identified just a few minutes ago,

9    which is that we believe quite strongly that the cases should

10   be resolved quickly; and that pushing back class certification,

11   in fact, will delay ultimate resolution.  And we can do it in

12   the course of fact discovery and stage it with it, so that we

13   are teed up along with the news cases so that we can do it

14   simultaneously.

15        If your Honor grants class certification, of course,

16   they have a right to a 23(f), it would not delay the other

17   cases.  But at least we have that issue already in the hopper,

18   so to speak, if the Court, the Second Circuit, decides to grant

19   a stay during the 23(f) process.

20        If, of course, we believe that --

21        THE COURT:  Wait.  I'm sorry.

22        Just do that 23(f) point again.

23        MR. NELSON:  So, your Honor, if your Honor grants a

24   class, presumably they are going to move for interlocutory

25   appeal.  The Second Circuit will decide whether to stay that

P5MVOPEC

1    part of it during the course of the 23(f) appeal or not.  But

2    regardless, the individual actions are going to go forward.

3    The summary judgment is going to go forward; certainly even the

4    summary judgment with respect to the book authors can proceed

5    in their individual capacities.  So it will not delay the

6    resolution of the fair use issues.

7         If your Honor — we think inappropriately so — were to

8    deny class certification, that actually would be important to

9    know earlier so that, therefore, there could be individual

10   suits that would be brought, presumably tagalonged to this same

11   MDL.  And instead of having, you know, one class action, we

12   would have tens or hundreds of thousands of individual actions

13   with the same point, which is why we believe a class is

14   superior, but we'll get to that whenever we get to that.

15        But the point is it will not delay the schedule,

16   right, in terms of the main issue of fair use.

17        Your Honor, if we wanted to, we could hold a summary

18   judgment hearing next month on fair use on their argument.  I

19   mean, I'm not saying that they want to do that or should do

20   that.  I'm saying that the issues are fairly joined right now.

21   There are certainly some factual issues --

22        THE COURT:  Yeah, but they are fairly joined, I agree

23   with that, but they are not fairly discovered yet.

24        MR. NELSON:  Well, let's take, for example, one

25   example, okay, which is we have two theories of infringement.

P5MVOPEC

1    The first is the piracy that occurred.  And under *Andy Warhol*,

2    each use is a separate infringement.  That piracy, that initial

3    download, we have the facts for that.  We know what's going on

4    in the market.  We know that widespread use of piracy would

5    destroy it under factor four.  So with literally a couple of

6    months more of discovery, maybe with a few expert reports, we

7    can get certainly to a resolution of the piracy use of that.

8         Now, there's a separate issue with respect to

9    training, right, which is that they -- if whatever happens,

10   even if they lawfully acquired it, despite the fact that, for

11   example, in the movie context, there's an FBI screen saying

12   that you can't use it except for personal uses, and they

13   take -- however they acquired it, they take it for training

14   without a license.  Yes, there will be some issues there.

15        Again, we can do that discovery, I think, quite

16   quickly.  And so we believe that those issues are common across

17   all of the class, and that your Honor can stage it so that by

18   the time we get to summary judgment, we can have a class

19   certification certainly hearing, if not an order prior to that.

20        We do expect that in this instance, for example, your

21   Honor would not -- whenever your Honor rules, even on our

22   schedule, would not be the first court to consider class

23   certification, given that Judge Alsup has that issue under

24   advisement right now on a class that mirrors what we have

25   proposed certainly in the *Alter* and *Authors Guild* amended

P5MVOPEC

1    complaint here.

2            So we do believe that it would be appropriate to stage

3    that first.  But, if nothing else, if not first, at least at

4    the same time as summary judgment so that we can proceed first.

5    Remember, the *Authors Guild* and *Alter* class actions were the

6    first filed cases in this Court.  And we want to proceed.

7    There is ongoing harm to the market.  And having that --

8            THE COURT:  I don't understand.  Obviously we're going

9    to proceed, that's not at issue.  The question is --

10           MR. NELSON:  Proceed as a class.

11           THE COURT:  This question is the order in which I take

12    the disputes.

13           MR. NELSON:  Absolutely, your Honor.  That is 100

14    percent right.

15           THE COURT:  Discovery is going forward.  That's

16    irrelevant to this issue.

17           MR. NELSON:  Correct.

18           But final resolution for the class obviously cannot

19    happen until the class resolution is resolved.

20           THE COURT:  Right.

21           MR. NELSON:  And so being --

22           THE COURT:  But that's probably, as you point out, an

23    interim appeal.  You haven't yet talked about the possibility

24    of the Second Circuit staying things below while the appeal

25    goes forward.

P5MVOPEC

1          MR. NELSON:  The Second Circuit certainly could stay

2     it with respect to the class side of it.  But, again, for the

3     individuals, they have the claims in their individual

4     capacities anyway.  The fair use analysis will be the same.

5     And certainly for the news plaintiffs, which has nothing to do

6     with this, they will be going forward regardless.

7          So our only point, your Honor — and I hear you — and

8     again, it would not be inappropriate --

9          THE COURT:  Why don't you conclude.  Go ahead.

10         MR. NELSON:  We want to be able to go to trial with a

11    class as fast as possible.  We believe that the best way to do

12    that is to stage class certification first or simultaneously

13    with summary judgment, so we can do that.

14         Thank you, your Honor.

15         THE COURT:  Okay.  Thank you.

16         Well, that puts a different slant on it.

17         Let me hear from any defendant who wants to tell me

18    that they agree with my initial thinking.

19         MR. SLAUGHTER:  Thank you, your Honor.

20         James Slaughter, Keker, Van Nest & Peters, on behalf

21    of OpenAI.  And I know Ms. Hurst, on behalf of Microsoft, will

22    want to be heard on this issue as well.

23         Your Honor had it exactly right in your first

24    inclination, that the orderly process and the efficient process

25    here is, as the Second Circuit endorsed in the *Authors Guild v.*

P5MVOPEC

1    *Google* matter, 721 F.3d 132, which is to have summary judgment

2    precede class certification precisely because in a copyright

3    action such as this and such as existed in the *Google Books*

4    case, the fair use defense "in the first instance will

5    necessarily inform and perhaps moot our analysis of many class

6    certification issues."  So the efficient way, as the Second

7    Circuit endorsed, is to proceed with class -- with a summary

8    judgment first.

9         The idea that it would be equally efficient to do it

10   simultaneous is defeated just by what the *Google Books* case

11   said, which is, the whole purpose of doing the fair use

12   analysis initially as part of the dispositive motions is to get

13   that information and to get those rulings because it will

14   necessarily inform the class cert. analysis.

15        So your Honor's inclination was exactly right, and we

16   think that that's the way that we should proceed.

17             MS. HURST:  Your Honor, I would just briefly add as

18   well --

19             THE COURT:  For the record, say your name, please.

20             MS. HURST:  Yes, your Honor.

21             Ms. Hurst, for Microsoft.

22        I think the reason plaintiffs are incorrect about the

23   effect of a 23(f) appeal is that the dividing line would not be

24   between class and individual claims.  But the fact that there's

25   this overlap between the fair use factors and the class

P5MVOPEC

1    certification considerations means that a 23(f) appeal would

2    bring the fair use consideration to a halt.  And that would

3    affect not only the class plaintiffs, the individual-named

4    plaintiffs in their capacity, but also the news plaintiffs who

5    are basically opt-out class plaintiffs here.

6              And so to have the 23 considerations either

7    simultaneously or before the fair use defense would completely

8    stymie what we're trying to accomplish here and, as

9    Mr. Slaughter noted, deprive the Court of the efficiency of

10   fair use going first.

11             THE COURT:  In the Second Circuit, it seems to me that

12   there's a strong preference for certification following summary

13   judgment.  So I'm going to do what I consider the standard

14   procedure in the Second Circuit.  I'd be interested in

15   following what happens in that Alsup case; but here, we're

16   going to do summary judgment first.

17             MR. NELSON:  Thank you, your Honor.

18             THE COURT:  I'm inclined to have the parties schedule

19   reply expert reports, given the obligation of the party that

20   bears the burden of proof to go first.  As of now, I'll allow

21   reply expert reports.

22             Next is the technology tutorial.

23             I accept the point that was made in the report that

24   we've already had it.  But I can tell you, each time I hear it,

25   I learn a little more and I feel a little more comfortable with

P5MVOPEC

 1    the technology.  So A, I don't mind hearing it for the second

 2    time; and B, undoubtedly there's more that the parties will

 3    want to tell me — tell us — in terms of technology.  So I'm

 4    strongly inclined to have the second technology tutorial and

 5    I'm not foreclosing additional ones.  But right now -- I think

 6    I have a pretty good grasp of it, but we're going to have a

 7    second technology tutorial.

 8            Have the parties talked about dates for that?  I'm

 9    pretty flexible.

10            MS. BROOK:  Davida Brook of Susman Godfrey.

11            No, your Honor.  But I'm happy to have that

12    conversation with both my friends on the class side and on the

13    defense side and report some dates to the Court.

14            THE COURT:  Yes, please.

15            MS. BROOK:  Does the Court want to give some

16    parameters on how soon it would like that tutorial?

17            THE COURT:  I don't think there's an emergent need,

18    but certainly I would think June or early July, something like

19    that.

20            MS. BROOK:  That you, your Honor.

21            THE COURT:  Okay.

22            MR. SLAUGHTER:  Thank you, your Honor.

23            James Slaughter, on behalf of OpenAI.

24            We'll work with the plaintiffs to schedule that and

25    propose a date to your Honor.

P5MVOPEC

1          THE COURT:  Okay.

2          Protective order.  That's going to be handled.  I

3    believe the parties have a conference next week.

4          JUDGE WANG:  Tuesday morning.

5          THE COURT:  So that will be handled then, along with

6    ironing out a deposition protocol and discovery schedules.

7    Again, Judge Wang will be handling discovery, including

8    third-party discovery.

9          I think that basically handles everything except the

10   case schedule, okay.  Now, surprise, surprise, the plaintiffs'

11   proposed schedule was too aggressive and the defendants'

12   proposed schedule was too unaggressive.

13         I think, given the rulings today, that will help the

14   parties amend their schedule.  Certainly the ordering of

15   summary judgment and a certification, certainly the timing on

16   the consolidated class action complaint, certainly no

17   additional claims should help the parties do that, come up with

18   another schedule.  If you can come up with a joint schedule,

19   fine.  If you can't, submit something to me.

20         When do the parties want to do it?  We're talking

21   about -- are we talking about June 10 for the consolidated

22   complaint?

23         MS. BROOK:  Yes, your Honor.

24         Davida Brook of Susman Godfrey.

25         We would appreciate there being a date certain for the

P5MVOPEC

1    parties to submit either a stipulated schedule or disputed

2    schedules for the Court's consideration.  And June 10th or,

3    frankly, earlier would be perfectly amenable to, I believe,

4    both the news plaintiffs and the class plaintiffs.

5            MR. SLAUGHTER:  Your Honor, James Slaughter, on behalf

6    of OpenAI.

7            Part of the issue there is we will not -- if we do it

8    on June 10, we will not have had the benefit of seeing that

9    proposed consolidated class action complaint.

10           THE COURT:  I think the consolidated complaint should

11   come first, I agree with that.

12           MR. SLAUGHTER:  So can I suggest, your Honor, perhaps

13   two weeks after June 10 to submit proposed schedules so that we

14   can take into account what we learned from the proposed class

15   action complaint?

16           MS. BROOK:  Your Honor, might I suggest that's maybe a

17   little too unaggressive, maybe mine was a little too

18   aggressive.  Shall we split the baby and do one week after

19   June 10th.

20           THE COURT:  That's exactly what was bubbling to the

21   surface.  One week after June 10, which I assume is June 17.

22           MS. BROOK:  Thank you, your Honor.

23           MR. SLAUGHTER:  Thank you, your Honor.

24           MS. BROOK:  And, your Honor, if I may, just to clarify

25   — perhaps this is for Magistrate Judge Wang as well — I would

P5MVOPEC

1    posit that that schedule should include all the discovery

2    deadlines as well, and we'll submit a complete schedule for

3    your Honors' consideration.

4            THE COURT:  Yes.

5            MS. BROOK:  Thank you.

6            THE COURT:  Is there a briefing schedule on the Raw

7    Story motion for reconsideration?  I just don't know the state

8    of that.

9            MR. TOPIC:  Good morning.  Matt Topic, Loevy & Loevy,

10   for Raw Story and Alter Net, who are the two plaintiffs

11   together in that case.

12           We filed the motion to reconsider, and then the

13   briefing was stayed by your first order.  So we do not have a

14   briefing schedule.  I'm also happy to just argue it out right

15   now if the Court would like.  It's very straightforward.

16           THE COURT:  Let me hear it.

17           MR. TOPIC:  So what we're seeking --

18           THE COURT:  I'm sorry.

19           MR. GRATZ:  Your Honor, Joe Gratz, representing

20   OpenAI.

21           We would like the benefit of an opposition brief

22   before oral argument.

23           THE COURT:  I fully understand that.  But this is a

24   preview.  This is an appetizer here.  No, no, the brief --

25           MR. GRATZ:  I look forward to serving the second

1      course of appetizers.

2                  THE COURT:  All right.

3                  Starting to fall apart here.  Go ahead.

4                  MR. TOPIC:  I apologize if I'm responsible for that.

5            So Judge McMahon denied us leave to file an amended

6      complaint that would have brought the Raw Story DCMA claim in

7      line with the allegations that your Honor has allowed for CIR

8      and for *Daily News*, and you've now allowed --

9                  THE COURT:  I know.  But it seems to me the issue is,

10     if I can say, a cute one; that is, if I deny the motion for

11     reconsideration, it goes to the Second Circuit, and we get a

12     nice clear, hopefully, determination on that DMCA claim.

13           If, on the other hand, I say it's as I had already

14     determined it, then it gets folded into this.  It's the, I

15     don't know, perhaps unseemly position that two different judges

16     have come out two different ways.  No, that's not unseemly,

17     that's the way the law developments.

18           But here, it would be simply because the case was sent

19     to another judge, there's the possibility of the opposite

20     result.  I'm not sure that's a good way to run the railroad.

21                 MR. TOPIC:  We cited some cases, including Second

22     Circuit cases, that talk about this situation where there has

23     been an MDL created.  The transferee judge, your Honor, has the

24     ability and the obligation to correct any decisions by the

25     prior judge that you believe to be erroneous.  And the point of

P5MVOPEC

1    the MDL — and we heard it again today from the defendants — was

2    to have consistent rulings.  And we have two irreconcilable

3    inconsistent rulings that, according to their own arguments for

4    why there should have been an MDL, those should be brought into

5    conformance with each other.

6                THE COURT:  Preview.

7                MR. GRATZ:  Course two of appetizers, your Honor.

8                Joe Gratz at Morrison & Foerster, for OpenAI.

9                First of all, your Honor is right.  Denying the motion

10   for reconsideration will allow this issue to go to the Second

11   Circuit and will allow us to get some additional guidance on

12   the issue presented which may shed light for other claims.

13               The second point --

14               THE COURT:  Yes.  But now that it's under my aegis,

15   how can I in good faith let something proceed where I've stated

16   my disagreement with it?

17               MR. GRATZ:  The answer, your Honor, is that Judge

18   McMahon's order is a final order.  It granted with prejudice a

19   motion to dismiss.  And that is a final order that is subject

20   only to perfection into a judgment and then appeal, or a Rule

21   60 motion to amend a final order.

22               And the standard to amend a final order is much higher

23   than, Well, there's a new judge assigned.  It's that something

24   was overlooked or there's been an intervening change in law,

25   none of which, as we look forward to outlining in our

P5MVOPEC

1    opposition, is met here.

2              The other issue, your Honor, is that the standards

3    applied in the cases are actually -- the cases are actually not

4    in conflict, because in the *Raw Story* case, there was no

5    showing of any of Raw Story's material appearing in the output,

6    despite an opportunity to amend to add that allegation.  It's

7    just not there in the same way that it is in, for example, the

8    *CIR* case, where your Honor reached his view on the 1202 issue.

9              And so for all of those reasons, we think that the

10   right course is to enter final -- deny the Rule 60 motion,

11   because the standard isn't met, enter final judgment, and have

12   it go to the Second Circuit, where they can tell us something.

13             THE COURT:  So you have a MDL where the transferee

14   judge is allowing there to be differing views on the record.

15             MR. GRATZ:  So I don't think there are differing

16   views, your Honor, because I think the standard that your Honor

17   applied in the *CIR* case, if applied to the facts pleaded in the

18   *Raw Story* case would actually lead to dismissal because the

19   basis in the *CIR* case for standing was that they could make it

20   output at least some of their stuff.

21             And in the *Raw Story* case, even after an opportunity

22   to amend, there is not such an allegation.  And that's what

23   makes those two things not incompatible.  But this is just a

24   different set of facts that does not meet the standard your

25   Honor set in ruling on the motions to dismiss.

P5MVOPEC

1            THE COURT:  When can you get your opposition briefing?

2            MR. GRATZ:  Two days, your Honor.

3            THE COURT:  Absolutely.

4            MR. GRATZ:  I guess two days would put us on Saturday.

5    So can I have till Monday, your Honor.

6            THE COURT:  Monday is a holiday.  You can have till

7    Tuesday.

8            MR. GRATZ:  Tuesday.  Thank you, your Honor.

9            THE COURT:  And that's May 27.

10           And what do you want for a reply?

11           MR. TOPIC:  Could I have one week, your Honor?

12           THE COURT:  June 2 for reply in *Raw Story*.

13           Where do we stand on Ziff Davis?  As I said, it just

14    hit the docket today.

15           MS. BROOK:  Your Honor, I'll refer to my colleague

16    Mr. Coonce to the extent things get too specific.  But on

17    behalf of the news plaintiffs, including Ziff Davis, I think

18    there's just a couple quick requests.

19           We've already been working incredibly well with

20    counsel for Ziff Davis who have come in and made every effort

21    to get up to speed as quickly as possible.  To that end, I

22    believe they have three main requests for this Court, one of

23    which is they need a date set for the answer to their pending

24    complaint.  That would have been due, your Honor, absent this

25    MDL proceeding, earlier this week on May 20th.

P5MVOPEC

1            I'll propose — though I don't believe we have run this

2     by defense counsel yet, but I'll propose June 10th, the same

3     date that class plaintiffs have been ordered to submit their

4     consolidated amended complaint.

5            That's issue one, your Honor.

6            THE COURT:  Just a moment.

7            The request was what now?

8            MS. BROOK:  The request, your Honor, was for

9     June 10th, whereas it was previously due May 20th.

10            THE COURT:  All right.  I have no problem with that.

11            June 10th for the answer due in Ziff Davis.

12            Go ahead.  What else?

13            MS. BROOK:  Two other related points, your Honor.

14            One, I believe that counsel for Ziff Davis would

15     appreciate guidance from this Court that discovery as to Ziff

16     Davis is considered open; and that they can start participating

17     in that process freely as of this afternoon.

18            THE COURT:  Seems to me they should.

19            JUDGE WANG:  Yes.  And we'll see you on Tuesday as

20     well.

21            MS. BROOK:  Thank you, your Honor.

22            They look forward to it.

23            THE COURT:  Do they?

24            MS. BROOK:  On a related note, I believe they have

25     made a request already of counsel for OpenAI that they make the

P5MVOPEC

1    previously propounded discovery -- previously issued discovery

2    to the other news plaintiffs available to Ziff Davis

3    immediately.  They've agreed to abide by the existing

4    protective order in the news cases pending any entry of a more

5    consolidated protective order.  And so, again, on a related

6    note, they would just request that OpenAI make that discovery

7    available as soon as practicable.

8            JUDGE WANG:  Can OpenAI do that?

9            MR. SLAUGHTER:  Your Honor, James Slaughter; Keker,

10   Van Nest & Peters, on behalf of OpenAI.

11           I'll need to check with my colleagues on that, judges,

12   and can get back to be prepared to respond to that, if it's

13   okay with you, your Honors, when we have the conference on

14   Tuesday, the 27th, with respect to that.

15           I did want to respond just on the documents.  I did

16   just want to respond to a couple of things.

17           One, with respect to response to the complaint,

18   June 10 is acceptable obviously for the response to the

19   complaint.  It's a response.  And not necessarily --

20           THE COURT:  What you're saying is you intend to move

21   to dismiss, is that what you're saying?

22           MR. SLAUGHTER:  Well, it depends, your Honor.  The

23   answer is potentially.  And it depends upon what's in that case

24   as a tagalong and not.  Consistent with what your Honor ruled

25   earlier today, we understand that these consolidated MDL

P5MVOPEC

1    proceedings are going to be the claims that were -- existed as

2    of the dates of the respected news and class plaintiffs

3    complaints.

4        The Ziff Davis complaint is broader; it has additional

5    products, it has additional claims. As a tagalong action, your

6    Honor, you obviously have authority to manage that docket. And

7    consistent with what you suggested earlier, there's either

8    going to have to be, sort of, two ways forward: Either Ziff

9    Davis is stayed or it proceeds on the common issues that are

10   currently pled in these coordinated proceedings, the claims and

11   the products currently in the case. And we can proceed on

12   those common issues, but we don't want — for the same reasons

13   that your Honor articulated earlier — to have this tagalong

14   case then upset the applecart with respect to the other issues.

15       MS. BROOK: Your Honor, Davida Brook of Susman

16   Godfrey.

17       I think Mr. Boies had it right. You can't have your

18   cake and eat it too. It would be very uncommon for a court to

19   stay all cases at this point in an MDL proceeding. OpenAI

20   moved to transfer the *Ziff Davis* case to this Court, to this

21   MDL. And it has now been transferred. Their case is largely

22   duplicative with the existing cases. They have agreed against

23   maybe --

24       THE COURT: Well, I thought the suggestion was made

25   that it's not.

P5MVOPEC

 1          MS. BROOK:  I don't know if my friend on the other

 2    side was saying that it's not largely duplicative.  There are

 3    some differences.  But it is largely duplicative; it is largely

 4    overlapping.  Most of the discovery has already taken place.

 5    And the discovery schedule that was put forth by either of the

 6    plaintiffs, the proposed schedule or by the defendants, would

 7    allow for Ziff Davis, as currently pled, to be incorporated

 8    into this MDL.  And we think that they, having moved Ziff Davis

 9    into this action, into this courtroom, that should be allowed

10    to proceed.

11          MR. SLAUGHTER:  May I be heard, your Honor?

12          THE COURT:  Yes.

13          MR. SLAUGHTER:  Of course, we had an obligation under

14    the JPML rules to make our motion; so the suggestion that it

15    was our choice is inaccurate.

16          And, of course, tagalong cases are often treated

17    differently than the core actions.  We're not suggesting,

18    contrary to what my -- what Ms. Brook suggested, we're not

19    suggesting staying the core actions.  We're prepared and want

20    to proceed swiftly.

21          All we're suggesting is, as a tagalong action, which

22    can be treated differently and should be, it should not unduly

23    expand the scope.  It has, as I said, additional claims; it

24    proposes additional products which will have all of the

25    impacts --

P5MVOPEC

1          THE COURT:  Yeah, but Ms. Brook's point was you wanted

2     the MDL.

3          MR. SLAUGHTER:  We had an obligation, your Honor,

4     under the JPML's rules to notify the JPML and transfer into the

5     court, absolutely.  But that doesn't mean, your Honor, that

6     this case, which admittedly could have been brought a year ago,

7     their allegations in their complaint say, Hey, we've been

8     talking to you about this for a year, that it should come in

9     and then expand discovery and expand claims.  We're prepared to

10    proceed — and we think we should — on the common issues and on

11    the common claims.

12         THE COURT:  All right.  This is what you do:  We have

13    a complaint.  You file your response.  You can move to dismiss

14    on any grounds you want, but we've got a complaint.

15         MR. SLAUGHTER:  Thank you, your Honor.

16         THE COURT:  That's by June 10.

17         I think that handles it.

18         We need a schedule.

19         First we need a lead counsel for the class actions.

20         We need an agreed-upon schedule between the parties or

21    competing schedules to me.

22         We've got the Ziff Davis motion.

23         The parties will proceed with discovery.

24         There's a conference next Tuesday with Judge Wang on

25    discovery that will involve, at a minimum, not only a schedule,

P5MVOPEC

1    but deposition protocols and protective orders.  Let's get all

2    of those out of the way, and then we can move forward.

3              All right.  I think we've done quite a bit.

4              Unless there's anything else -- oh, I know.  I don't

5    think -- Magistrate Judge Wang thinks we don't need monthly

6    discovery meetings.  The judge is certainly capable of calling

7    meetings when she thinks it's appropriate, and the parties are

8    certainly capable of telling her that they want a conference.

9              All right.

10             JUDGE WANG:  I'll add to that, and we'll get into it

11   more on Tuesday morning, but the structure we've had with the

12   S.D.N.Y. cases, with limited deadlines for filing and then the

13   charts, have been extremely helpful to the Court, and I plan to

14   continue that.

15             So for the new lawyers and the new parties who have

16   recently been brought into the court, you'll see what we mean

17   when you look at the dockets.  Thanks.

18             THE COURT:  All right.  This MDL has been launched.

19             Let's have clear sailing ahead.

20             Thank you, all.

21                           *    *    *

22

23

24

25

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300