**Paul W. Winters**
6211 W. Northwest Hwy.
Suite C200B
Dallas, TX 75205
Paul@connectedps.com
214-876-3148


**Date:** 8/14/2025

**Clerk of Court**
Daniel Patrick Moynihan U.S. Courthouse
Room 120
500 Pearl Street
New York, NY 10007

**RE:** Motion to Intervene – *The New York Times Company v. Microsoft Corporation, et al.*
Case No. 1:23-cv-11195 (SHS)-OTW

Dear Clerk of Court:

Enclosed please find the original and required copies of my **Motion to Intervene** in the above-referenced matter for filing with the Court.

Please file the enclosed document in accordance with the Federal Rules of Civil Procedure and the Court's Local Rules. Kindly date-stamp and return the enclosed copy in the self-addressed stamped envelope provided for my records.

Thank you for your assistance.

Respectfully submitted,

**Paul W. Winters**

Enclosures: Motion to Intervene + Certificate of Service

## Service Log - Motion to Intervene

This log documents the service of the Motion to Intervene by Paul W. Winters in Case No. 1:23-cv-11195 (SHS)-OTW, including email service to counsel and mailing to the Court.

Date/Time of Service: 8/14/2025 12:09PM

Method: Email (BCC)

Recipients:

icrosby@susmangodfrey.com;    dbrook@susmangodfrey.com;    ebarron@susmangodfrey.com;

gwallace@susmangodfrey.com;    kpeaslee@susmangodfrey.com;    slieberman@rothwellfigg.com;

jmaisel@rothwellfigg.com;    andrew.gass@lw.com;    joe.wetzel@lw.com;    sy.damle@lw.com;

alli.stillman@lw.com;    jgratz@mofo.com;    roselee@mofo.com;    Eahurst@orrick.com;

Eccariello@orrick.com

Date/Time of Service: 8/14/2025

Method: USPS Mail    9590 9402 8165 3030 5552 67

Recipients: Clerk of Court

Daniel Patrick Moynihan U.S. Courthouse

Room 120

500 Pearl Street

New York, NY 10007

Clerk of Court, U.S. District Court for the Southern District of New York

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

THE NEW YORK TIMES COMPANY,
Plaintiff, v.

OPENAI, INC., et al.,
Defendants.

Case No. 1:23-cv-11195 (SHS)-OTW

## NOTICE OF MOTION TO INTERVENE AND FOR PROTECTIVE ORDER

PLEASE TAKE NOTICE that upon the accompanying Memorandum of Law, Declaration of
Paul W. Winters, proposed Protective Order, and Exhibits A–D, the undersigned will move this
Court, at the United States Courthouse, 500 Pearl Street, New York, NY, on a date and time to
be determined, for an Order:

1. Granting Movant's motion to intervene pursuant to Fed. R. Civ. P. 24(a) or, in the
alternative, Rule 24(b); and
2. Modifying the Court's preservation order to exclude Movant's personal ChatGPT
conversations from indefinite retention, or in the alternative, requiring anonymization or
redaction of any preserved data belonging to Movant.

Dated: August 14, 2025 Dallas, Texas

Respectfully submitted,

Paul W. Winters
6211 W. Northwest Hwy.,
Suite C200B
Dallas, TX 75205
(214) 876-3148
Paul@Connectedps.com
Pro Se

## MOTION TO INTERVENE AND FOR PROTECTIVE ORDER

Movant Paul W. Winters, pro se, moves this Court pursuant to Fed. R. Civ. P. 24 and 26(c) for an Order:

1. Granting intervention for the limited purpose of challenging the preservation order;
2. Modifying said order to exclude Movant's ChatGPT account data from indefinite retention; or
3. In the alternative, requiring that any such preserved data be anonymized or redacted to remove all personal, proprietary, and confidential content.

MEMORANDUM OF LAW IN SUPPORT
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK


THE NEW YORK TIMES COMPANY,
Plaintiff, v.


OPENAI, INC., et al.,
Defendants.


Case No. 1:23-cv-11195 (SHS)-OTW


## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO INTERVENE AND FOR PROTECTIVE ORDER

### PRELIMINARY STATEMENT

Non-party Paul W. Winters respectfully moves to intervene in this action for the limited purpose of challenging the application of this Court's preservation order to his private, unrelated communications with OpenAI's ChatGPT service.

Mr. Winters is a resident of Texas with no connection to the New York Times Company, OpenAI's model training practices, or the alleged acts underlying this litigation.

Nevertheless, the preservation order presently in place requires OpenAI to indefinitely retain all user conversations — including Mr. Winters' deleted and temporary chats — without his consent and without any nexus to the claims or defenses in this case.

This blanket retention is overly broad, disproportionate under Fed. R. Civ. P. 26(b)(1), and infringes upon Movant's statutory and constitutional privacy rights.

Less intrusive means are available to preserve relevant evidence without sweeping up the data of wholly uninvolved users.

## STATEMENT OF FACTS

1. Movant is a paying subscriber to OpenAI's ChatGPT service, based in Dallas, Texas.
2. Prior to the Court's preservation order, OpenAI maintained a 30-day retention policy for deleted and temporary chats.
3. On or about June 2025, this Court entered a preservation order requiring retention of "all user conversations," overriding the normal deletion schedule.
4. Movant has no relationship with any party in this litigation and no knowledge of the facts in dispute.
5. The indefinite retention of Movant's chats exposes him to ongoing privacy risks and deprives him of control over his own communications.

## I. THE COURT SHOULD PERMIT LIMITED INTERVENTION UNDER RULE 24

Rule 24(a)(2) permits intervention as of right where the movant: (1) has an interest relating to the property or transaction at issue; (2) is situated such that disposing of the action may impair that interest; and (3) is not adequately represented by existing parties. Here:
- Interest: Movant has a recognized privacy interest in his own stored communications. See Whalen v. Roe, 429 U.S. 589, 599–600 (1977).
- Impairment: The preservation order prevents deletion of his chats and increases the risk of unauthorized access.
- Inadequate Representation: Neither Plaintiff nor Defendant represents the privacy interests of unrelated users.
Alternatively, permissive intervention is appropriate under Rule 24(b) where the movant raises a question of law — here, the scope and proportionality of discovery orders — in common with the main action.
See Butler, Fitzgerald & Potter v. Sequa Corp., 250 F.3d 171, 176 (2d Cir. 2001).

## II. THE PRESERVATION ORDER SHOULD BE MODIFIED UNDER RULE 26(c)

Rule 26(c)(1) authorizes courts to "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense" by forbidding or limiting discovery.
The Court's discretion to limit discovery is broad. See Seattle Times Co. v. Rhinehart, 467 U.S. 20, 34–35 (1984).
A. Overbreadth and Irrelevance — Discovery must be relevant and proportional. Retaining the private conversations of unrelated users fails both requirements.
B. Privacy and Statutory Protections — The Stored Communications Act (18 U.S.C. §§ 2701–2712) prohibits unauthorized access to and retention of stored electronic communications except under lawful, targeted process.
Indefinite bulk retention without individualized process runs contrary to the Act's intent.
C. Less Intrusive Alternatives Exist — The Court can preserve potentially relevant data while excluding accounts with no connection to the claims, anonymizing preserved data, or permitting opt-out for uninvolved users.

## III. THE BALANCE OF HARMS FAVORS MODIFICATION

Harm to Movant: Ongoing retention of personal data heightens the risk of breaches or unauthorized disclosures — harms recognized by courts as legitimate privacy interests. See Martindell v. Int'l Tel. & Tel. Corp., 594 F.2d 291, 295 (2d Cir. 1979).

Harm to Parties: Minimal — the parties retain all relevant data, and unrelated users' conversations have no probative value.

Public Interest: Favors limiting intrusive discovery and protecting the privacy of uninvolved individuals.

See In re Grand Jury Subpoena to Amazon.com, 246 F.R.D. 570, 572–73 (W.D. Wis. 2007).

## CONCLUSION

For the foregoing reasons, Movant respectfully requests that this Court grant his motion to intervene for the limited purpose of seeking relief from the preservation order, and issue a protective order excluding his account data — and the data of similarly situated non-parties — from indefinite retention.

Dated: August 14, 2025 Dallas, Texas


Respectfully submitted,

Paul W. Winters
6211 W. Northwest Hwy.,
Suite C200B
Dallas, TX 75205
(214) 876-3148
Paul@Connectedps.com
Pro Se

**PROPOSED PROTECTIVE ORDER**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

The New York Times Company,
Plaintiff,
v.
OpenAI, Inc., et al.,
Defendants.

Case No. 1:23-cv-11195 (SHS)-OTW

ORDER MODIFYING PRESERVATION ORDER AS TO NON-PARTY PAUL W. WINTERS

Upon consideration of non-party Paul W. Winters's Motion to Intervene and for Protective
Order, and good cause appearing, IT IS HEREBY ORDERED that:

1. The Court's preservation order shall not require retention of the ChatGPT account data of
Paul W. Winters.
2. OpenAI, Inc. is authorized to delete all conversations, metadata, and other stored
communications associated with Mr. Winters's account, except as required by other lawful
obligations.
3. If deletion is not feasible, OpenAI shall anonymize or permanently redact all such data
before retention.
4. This Order is without prejudice to other non-parties' rights to seek similar relief.

SO ORDERED.

Dated: _____, 2025
New York, New York

_____
Hon. Sidney H. Stein
United States District Judge

Exhibit A: OpenAI's prior 30-day deletion policy (archived copy or screenshot)

Exhibit B: Preservation Order in NYT v. OpenAI (docket copy)

Exhibit C: Correspondence or public statement from OpenAI acknowledging retention obligations

Exhibit D: Redacted examples of non-relevant ChatGPT conversations, including NDA-protected contract reviews and business strategy discussions.

**EXHIBIT A**

**OpenAI's Prior 30-Day Deletion Policy**
Below is an excerpt from OpenAI's 'Chat and File Retention Policies' page as it appeared prior to
June 2025.
It outlines the 30-day deletion policy for deleted and temporary chats, which was in place before the
Court's
preservation order in The New York Times Company v. OpenAI.
"When you delete a chat, the chat is removed from your account immediately and scheduled for
permanent deletion from
OpenAI systems within 30 days, unless otherwise required by law or for security purposes.
Temporary Chat mode: Your chats are automatically deleted from OpenAI systems within 30 days,
even without manual deletion."
Source: Archived from OpenAI Help Center - 'Chat and File Retention Policies in ChatGPT'
(https://help.openai.com/en/articles/8983778-chat-and-file-retention-policies-in-chatgpt)

**EXHIBIT B**

**Preservation Order in NYT v. OpenAI**
A copy of the Court's preservation order entered in Case No. 1:23-cv-11195 (SHS)-OTW
requiring retention of all user conversations, regardless of relevance to the case.
(Source: SDNY docket entry, June 2025.  https://docs.justia.com/cases/federal/district-
courts/new-york/nysdce/1%3A2023cv11195/612697/

**EXHIBIT C**

**OpenAI Statement on Retention Obligations**
Below is an excerpt and summary from OpenAI's public statement dated June 5, 2025, titled
"How we're responding to The New York Times' data demands in order to protect user
privacy."
Key Points:
- The New York Times obtained a preservation order requiring OpenAI to retain all user
conversations indefinitely.
- OpenAI expressed concerns about the impact on user privacy and stated it has historically
had a
deletion policy (30 days for deleted or temporary chats).
- The order applies to most ChatGPT accounts (Free, Plus, Pro, Team) and certain API
accounts.
- Enterprise, Edu, and Zero Data Retention API accounts are exempt.

- All retained data is stored in a secure, segregated system accessible only to a small legal/security
team.
- OpenAI is actively appealing the scope of the preservation order.
Source: Archived OpenAI blog post / Help Center article (June 5, 2025

# EXHIBIT D

**Redacted Examples of Non-Relevant ChatGPT Conversations**
These excerpts are representative examples of ChatGPT conversations belonging to non-party Paul W. Winters. They contain proprietary business information, NDA-protected content, and confidential strategic materials unrelated to the claims or defenses in The New York Times Company v. OpenAI, Inc., et al.
All sensitive names, financial figures, and identifying details have been redacted. These examples are provided solely to demonstrate the non-relevance of Movant's stored conversations to the litigation.

**Example 1 - NDA-Protected Contract Review**
Date: [Redacted]
Subject: Review of Merchant Services ISO Agreement for [Redacted Client Name]
Excerpt (Redacted):
User: "Review Section 7.2 for potential breach triggers and ensure Processor retains full offset rights..."
ChatGPT: "Section 7.2 as currently drafted allows... [redacted]... to terminate without penalty, which could
undermine CPS's position."
Relevance: Confidential merchant services agreement analysis, unrelated to NYT v. OpenAI.

**Example 2 - Business Strategy & Partnership Structuring**
Date: [Redacted]
Subject: Equity Investment Negotiation Framework with [Redacted Partner]
Excerpt (Redacted):
User: "Draft a counter-proposal for $5M cash plus IP transfer at a 20% equity stake valuation..."
ChatGPT: "Based on prior market comps... [redacted]... propose a 3-year lockup with performance triggers."
Relevance: Proprietary strategic investment terms, unrelated to NYT v. OpenAI.

**Example 3 - Regulatory Compliance Research**
Date: [Redacted]
Subject: PCI DSS and SEC Compliance Requirements for Digital Wallet Launch
Excerpt (Redacted):
User: "Summarize the latest PCI DSS v4.0 changes for transaction processing..."ChatGPT:
"Version 4.0 requires additional multi-factor authentication... [redacted]... updates to encryption
protocols."
Relevance: Compliance methodology unrelated to NYT v. OpenAI.

**Example 4 - Vendor Contract Risk Assessment**
Date: [Redacted]
Subject: Risk Review of Processing Agreement with [Redacted Vendor Name]
Excerpt (Redacted):
User: "Identify termination clauses that could allow early exit by the vendor..."
ChatGPT: "Section 14(b) allows... [redacted]... if regulatory changes occur."
Relevance: Confidential vendor risk assessment, unrelated to NYT v. OpenAI.

Exhibit A - OpenAI's Prior 30-Day Deletion Policy (Archived)

Below is an excerpt from OpenAI's 'Chat and File Retention Policies' page as it appeared prior to June 2025.

It outlines the 30-day deletion policy for deleted and temporary chats, which was in place before the Court's

preservation order in The New York Times Company v. OpenAI.

"When you delete a chat, the chat is removed from your account immediately and scheduled for permanent deletion from

OpenAI systems within 30 days, unless otherwise required by law or for security purposes.

Temporary Chat mode: Your chats are automatically deleted from OpenAI systems within 30 days, even without manual deletion."

Source: Archived from OpenAI Help Center - 'Chat and File Retention Policies in ChatGPT'
(https://help.openai.com/en/articles/8983778-chat-and-file-retention-policies-in-chatgpt)

The New York Times Company v. Microsoft Corporation et al

Exhibit B

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x
IN RE:                                                   :
                                                         :
OPENAI, INC.,                                            :          25-md-3143 (SHS) (OTW)
COPYRIGHT INFRINGEMENT LITIGATION,                       :
                                                         :
                                                         :          **ORDER**
This Document Relates To:                                :
**23-cv-11195**                                          :
                                                         :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

**ONA T. WANG, United States Magistrate Judge:**

The Court is in receipt of OpenAI's motion for reconsideration, (ECF Nos. 39-1, 40), of

my May 13, 2025, order directing Defendant OpenAI to preserve and segregate all output log

data that would otherwise be deleted on a going forward basis until further order of the Court

(the "May 13 Preservation Order"). (*See* ECF 33). For the reasons below, OpenAI's motion is

**DENIED without prejudice to renewal.**

**I.    OPENAI'S MOTION FOR RECONSIDERATION IS DENIED**

The Court assumes familiarity with the facts of this case. As described in the May 13

Preservation Order, the parties in Case No. 23-cv-11195 raised with the Court and discussed in

January 2025 a discovery dispute concerning OpenAI's deletion of ChatGPT output log data.

(*See* 23-cv-11195, ECF 379); (23-cv-8292, ECF 327, "Tr. Jan. 22, 2025").[1] The News Plaintiffs re-

raised this dispute on May 7, 2025. (*See* ECF Nos. 22-1, 24, 27). In essence, the News Plaintiffs

allege that OpenAI has been deleting a significant portion of ChatGPT Free, Pro, and Plus output

---

[1] The transcript for the January 22, 2025, discovery status conference that took place before me is currently
located at 23-cv-8292, ECF No. 327, and 24-cv-00084, ECF 135. The docket text incorrectly states that the January
22 confrence took place before Judge Stein.

                                    Dockets.Justia.com

log data since December 27, 2023. (*See* ECF 29). In the May 13 Preservation Order, I directed OpenAI to preserve and segregate the output log data due to be deleted, and scheduled an in-person status conference (the "May 27 Spoliation Conference") regarding this dispute for May 27, 2025. (*See* ECF 32, 33). On May 15, Defendant OpenAI filed the extant motion for reconsideration of my May 13 Preservation Order. (*See* ECF Nos. 39-1, 40).

OpenAI's motion for reconsideration is **DENIED without prejudice to renewal** because OpenAI fails to put forth any facts or law that the Court did not consider and that would compel a different conclusion. *See In re Iraq Telecom Limited*, 18-MC-458 (LGS) (OTW), 2019 WL 5080007, at *1 (S.D.N.Y. Oct. 10, 2019) ("The movant carries the heavy burden of 'pointing to controlling decisions or data that the court overlooked—matters, in other words, that might reasonably be expected to alter the conclusion reached by the Court.'") (quoting *Shrader v. CSX Transp. Inc.*, 70 F.3d 255, 257 (2d Cir. 1995)); *Vincent v. Money Store*, 03-CV-2876 (JGK), 2011 WL 5977812, at *1 (S.D.N.Y. Nov. 29, 2011) (holding whether to grant a motion for reconsideration is left to the "sound discretion of the district court.").[2]

## II.    MOTION FOR MODIFICATION

In the alternative, the Court construes OpenAI's filing as a motion for modification of the May 13 Preservation Order, and will address OpenAI's arguments below.

OpenAI advances two principal interrelated arguments in support of its motion for reconsideration. First, OpenAI argues, in essence, that the deleted output log data are not

---

[2] Reconsideration is an "extraordinary remedy to be employed sparingly in the interests of finality and conservation of scarce judicial resources." *RST (2005) Inc. v. Research in Motion Ltd.*, 597 F. Supp. 2d 362, 365 (S.D.N.Y. 2009)

relevant.[3] Second, OpenAI argues that preserving all output log data is not proportional to the needs of this case.[4]

As an initial matter, the Court entered the May 13 Preservation Order, in part, because the Court's question to OpenAI at the January 22 conference—whether they could identify the "legal issue here about why you can't, as opposed to why you would not" retain and segregate the output log data for the users that asked for their chat logs to be delete—remained unanswered. OpenAI's recent filing answers this question, representing they are now "taking the steps it can to comply with the Order despite the many practical and engineering challenges compliance entails." (ECF 40). Having resolved this question, the Court will address OpenAI's concerns regarding relevance and proportionality.

### A. Relevance

The relevance of ChatGPT output log data as a whole is not in dispute.[5] However, implicit in OpenAI's argument is that there is no material difference between the pool of output log data that is being deleted and the pool of output log data that is being retained; thus, the deletion of output log data marked for deletion in the ordinary course of business would have no effect on the representative sample drawn, and thus no impact on this litigation

---

[3] Specifically, OpenAI argues that the May 13 Preservation Order is "contrary to law" because there is no basis to believe that the data it covers is relevant or that preserving it "will advance this litigation … as opposed to cumulative of the billions of conversations OpenAI has retained." (ECF 40).

[4] OpenAI suggests that because they are preserving "*tens of billions* of conversations," the small number of conversations that they have destroyed cannot materially advance Plaintiffs' claims. (ECF 40). OpenAI also argues that it is inappropriate to "disregard [OpenAI's] users' privacy interests based on Plaintiffs' unsupported speculation about what *might* exist, even though they have not even begun to analyze what *does* exist." (*Id.*).

[5] The New York Times's very first letter motion on this dispute clearly also sets out why the output logs are relevant: that ChatGPT <u>outputs</u> directly infringe the Times's copyrights. (*See* Case No. 23-cv-11195, ECF 379) (emphasis added); (*see also* Tr. Jan. 22, 2025, at 44).

The Court explicitly addressed this underlying assumption at the January 22 conference:

> But hypothetically, say, a ChatGPT user who had been using, found some way to get around the pay wall, right, and was getting The New York Times content somehow as the output, found a way to do it. And then hears about this case and says, Oh, woah, you know, I'm going to ask them to delete all of my searches and not retain any of my searches going forward.
>
> I mean, isn't that directly the problem?

(Tr. Jan. 22, 2025, at 38). OpenAI's letter does not address this open question, while Plaintiffs raise questions about the deletion process that challenge underlying assumptions about the deleted output log data.

### B. Proportionality

OpenAI argues that preserving and segregating the output log data marked for deletion is not proportional to the needs of the case, but this question also remains open. OpenAI has partially addressed this concern by citing technological difficulties and privacy considerations with preservation, and the Court ultimately directed the parties to continue to meet and confer on this issue. (*See* Tr. Jan. 22, 2025, at 44-46); (*see also* 23-CV-11195, ECF 441).

Accordingly, at present, there is insufficient cause to warrant modification of the May 13 Preservation Order, and the Court expects to discuss with the parties the open questions of relevance and proportionality of preserving and segregating the output log data marked for deletion at the May 27 Spoliation Conference.

### III.   CONCLUSION

In sum, OpenAI's motion for reconsideration is **DENIED without prejudice to renewal,** and to the extent OpenAI's letter is a motion to modify the May 13 Preservation Order, such motion is also **DENIED without prejudice to renewal**. OpenAI may incorporate their renewed

motion, if any, in line with their supplemental brief currently due on **May 23, 2025.** OpenAI's

brief may be up to 15 pages, not including exhibits, if any.

The parties should come to the May 27 Spoliation Conference prepared to discuss

(1) the underlying assumptions identified above related to the total pool of output log data and

the pool of deleted output log data with respect to effects on sampling and (2) the

proportionality of preserving and segregating output log data for purposes of this litigation on a

going forward basis. The Court appreciates that OpenAI has already begun to take necessary

steps to comply with the May 13 Preservation Order to preserve and segregate output log data

for purposes of this litigation, notwithstanding the technological difficulties it may entail, and

the contractual obligations it may have with its users. The parties are strongly encouraged to

continue to meet and confer on this issue, particularly with respect to the technological

challenges of preservation and segregation. The parties are also strongly encouraged to include

in their briefing proposals to resolve this issue, including potential limitations on going forward

preservation or a means to determine whether the retained output logs marked for deletion

differ in any material way from the retained logs.

    **SO ORDERED.**


                                                                         _s/ Ona T. Wang_

Dated: May 16, 2025                                    **Ona T. Wang**
        New York, New York                   **United States Magistrate Judge**

Exhibit C - OpenAI Statement on Retention Obligations

Below is an excerpt and summary from OpenAI's public statement dated June 5, 2025, titled "How we're responding to The New York Times' data demands in order to protect user privacy."

Key Points:
- The New York Times obtained a preservation order requiring OpenAI to retain all user conversations indefinitely.
- OpenAI expressed concerns about the impact on user privacy and stated it has historically had a deletion policy (30 days for deleted or temporary chats).
- The order applies to most ChatGPT accounts (Free, Plus, Pro, Team) and certain API accounts.
- Enterprise, Edu, and Zero Data Retention API accounts are exempt.
- All retained data is stored in a secure, segregated system accessible only to a small legal/security team.
- OpenAI is actively appealing the scope of the preservation order.

Source: Archived OpenAI blog post / Help Center article (June 5, 2025).

## Exhibit D - Redacted Examples of Non-Relevant ChatGPT Conversations

These excerpts are representative examples of ChatGPT conversations belonging to non-party Paul W. Winters.

They contain proprietary business information, NDA-protected content, and confidential strategic materials unrelated
to the claims or defenses in The New York Times Company v. OpenAI, Inc., et al.

All sensitive names, financial figures, and identifying details have been redacted. These examples are provided solely
to demonstrate the non-relevance of Movant's stored conversations to the litigation.

### Example 1 - NDA-Protected Contract Review

Date: [Redacted]
Subject: Review of Merchant Services ISO Agreement for [Redacted Client Name]

Excerpt (Redacted):
User: "Review Section 7.2 for potential breach triggers and ensure Processor retains full offset rights..."
ChatGPT: "Section 7.2 as currently drafted allows... [redacted]... to terminate without penalty, which could undermine CPS's position."

Relevance: Confidential merchant services agreement analysis, unrelated to NYT v. OpenAI.

### Example 2 - Business Strategy & Partnership Structuring

Date: [Redacted]
Subject: Equity Investment Negotiation Framework with [Redacted Partner]

Excerpt (Redacted):
User: "Draft a counter-proposal for $5M cash plus IP transfer at a 20% equity stake valuation..."
ChatGPT: "Based on prior market comps... [redacted]... propose a 3-year lockup with performance triggers."

Relevance: Proprietary strategic investment terms, unrelated to NYT v. OpenAI.

### Example 3 - Regulatory Compliance Research

Date: [Redacted]
Subject: PCI DSS and SEC Compliance Requirements for Digital Wallet Launch

Excerpt (Redacted):
User: "Summarize the latest PCI DSS v4.0 changes for transaction processing..."

ChatGPT: "Version 4.0 requires additional multi-factor authentication... [redacted]... updates to encryption protocols."

Relevance: Compliance methodology unrelated to NYT v. OpenAI.

## Example 4 - Vendor Contract Risk Assessment

Date: [Redacted]
Subject: Risk Review of Processing Agreement with [Redacted Vendor Name]

Excerpt (Redacted):
User: "Identify termination clauses that could allow early exit by the vendor..."
ChatGPT: "Section 14(b) allows... [redacted]... if regulatory changes occur."

Relevance: Confidential vendor risk assessment, unrelated to NYT v. OpenAI.

## Certificate of Service

I hereby certify that on this date, a copy of the foregoing Motion was served on all counsel of record via the Court's CM/ECF system and by first-class mail to the following:

Ian B. Crosby
Susman Godfrey LLP
One Manhattan West, 50th Floor
New York, NY 10001-8602
Email: icrosby@susmangodfrey.com

Davida P. Brook
Susman Godfrey LLP
One Manhattan West, 50th Floor
New York, NY 10001-8602
Email: dbrook@susmangodfrey.com

Elisha Barron
Susman Godfrey LLP
One Manhattan West, 50th Floor
New York, NY 10001-8602
Email: ebarron@susmangodfrey.com

Genevieve Vose Wallace
Susman Godfrey LLP
One Manhattan West, 50th Floor
New York, NY 10001-8602
Email: gwallace@susmangodfrey.com

Katherine (Katy) Peaslee
Susman Godfrey LLP
One Manhattan West, 50th Floor
New York, NY 10001-8602
Email: kpeaslee@susmangodfrey.com

Steven Lieberman
Rothwell Figg Ernst & Manbeck, P.C.
901 New York Avenue, NW, Suite 900 East
Washington, DC 20001
Email: slieberman@rothwellfigg.com

Jennifer B. Maisel
Rothwell Figg Ernst & Manbeck, P.C.
901 New York Avenue, NW, Suite 900 East

Washington, DC 20001
Email: jmaisel@rothwellfigg.com

Andrew M. Gass
Latham & Watkins LLP
1271 Avenue of the Americas
New York, NY 10020
Email: andrew.gass@lw.com

Joseph R. (Joe) Wetzel
Latham & Watkins LLP
1271 Avenue of the Americas
New York, NY 10020
Email: joe.wetzel@lw.com

Sarang (Sy) V. Damle
Latham & Watkins LLP
1271 Avenue of the Americas
New York, NY 10020
Email: sy.damle@lw.com

Allison (Alli) L. Stillman
Latham & Watkins LLP
1271 Avenue of the Americas
New York, NY 10020
Email: alli.stillman@lw.com

Joseph C. Gratz
Morrison & Foerster LLP
250 West 55th Street
New York, NY 10019-9601
Email: jgratz@mofo.com

Allyson Bennett
Morrison & Foerster LLP
250 West 55th Street
New York, NY 10019-9601
Email: (served via ECF and firm address)

Rose S. Lee
Morrison & Foerster LLP
250 West 55th Street
New York, NY 10019-9601
Email: roselee@mofo.com

Annette L. Hurst
Orrick Herrington & Sutcliffe LLP
51 West 52nd Street
New York, NY 10019-6142
Email: Eahurst@orrick.com

Christopher J. Cariello
Orrick Herrington & Sutcliffe LLP
51 West 52nd Street
New York, NY 10019-6142
Email: Eccariello@orrick.com

Dated: _8-14_ , 2025

Respectfully submitted,

Paul W. Winters
Pro Se Intervenor