**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE:<br><br>OPENAI, INC.<br>COPYRIGHT INFRINGEMENT<br>LITIGATION<br><br><br>This Document Relates To:<br><br>ZIFF DAVIS, INC. et al. v. OPENAI, INC. et al., No. 1:25-cv-04315 | 1:25-md-03143 (SHS) (OTW)<br><br>**MEMORANDUM OF LAW IN OPPOSITION TO OPENAI'S MOTION TO DISMISS ZIFF DAVIS'S FIRST AMENDED COMPLAINT**<br><br>**ORAL ARGUMENT REQUESTED** |

## TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................................ 1

II.   LEGAL STANDARD .......................................................................................... 3

III.  ARGUMENT ....................................................................................................... 3

   A.    Ziff Davis States a Claim for Violation of Section 1201(A)(1) of the DMCA ............... 3

     1.    Background: the Robots Exclusion Protocol and OpenAI's "GPTBot" and Blocking Instructions ...................................................................................................... 3

     2.    Ziff Davis Has Stated a Claim for Relief. ................................................ 4

   B.    Ziff Davis's Unjust Enrichment Claim Is Not Preempted. ........................... 10

   C.    Ziff Davis Has Adequately Stated a Section 1202(b)(3) Claim. .................... 15

     1.    Background: OpenAI Knowingly Distributes Copies of Ziff Davis's Works Stripped of Their CMI. .................................................................................................. 16

     2.    Ziff Davis Has Stated a Claim for Relief. ................................................ 17

     a.    Ziff Davis Adequately Alleges "Distribution." ........................................ 18

     b.    Ziff Davis Adequately Alleges Distribution of Complete Works. ............... 19

     c.    OpenAI's Remaining Arguments Are Without Merit. ............................... 20

   D.    Ziff Davis Adequately Alleges That Its Famous Marks are Famous for Its Trademark Dilution Claim. ......................................................................................................... 22

   E.    Ziff Davis Properly States Contributory Infringement and 1202(b)(1) Claims. ............ 24

IV.   CONCLUSION .................................................................................................. 26

## TABLE OF AUTHORITIES

**CASES**

*Advance Mag. Publishers Inc. v. Vogue Int'l*, 123 F. Supp. 2d 790 (D.N.J. 2000) ...................... 23

*Altera Corp. v. Clear Logic, Inc.*, 424 F.3d 1079 (9th Cir. 2005) ................................. 13

*Andersen v. Stability AI Ltd.*, 744 F. Supp. 3d 956 (N.D. Cal. 2024) ........................................ 15

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...................................................................... 3, 21

*Associated Press v. Meltwater U.S. Holding, Inc.* 931 F. Supp. 2d 537 (S.D.N.Y. 2013). ............ 6

*Barnes v. Block*, No. 22 Civ. 07236 (LTS) (RWL), 2025 WL 1736519 (S.D.N.Y. June 23, 2025)

........................................................................................................................ 12

*Barnes v. Block*, No. 22 Civ. 07236, 2025 WL 1736519 (S.D.N.Y. June 23, 2025) .................... 12

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................................ 3

*Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296 (2d Cir. 2004) ............................ 11

*Computer Assocs. Int'l, Inc. v. Altai, Inc.,* 982 F.2d 693 (2d Cir. 1992) ...................................... 13

*DHI Group, Inc. v Kent*, No. CV H-16-1670, 2017 WL 4837730 (S.D Tex. Oct. 26, 2017) ......... 5

*Doe 1 v. GitHub, Inc.*, No. 22 Civ. 06823, 2024 WL 235217 (N.D. Cal. Jan. 22, 2024) ............. 15

*Field v. Google Inc.*, 412 F. Supp. 2d 1106 (D. Nev. 2006) ................................................ 6

*Fischer v. Forrest*, 286 F. Supp. 3d 590 (S.D.N.Y. 2018) ................................................ 19

*Foad Consulting Grp., Inc. v. Azzalino*, 270 F.3d 821 (9th Cir. 2001) ...................................... 11

*Healthcare Advocates, Inc. v. Harding, Earley, Follmer & Frailey*, 497 F. Supp. 2d 627 (E.D.
Pa. 2007) ........................................................................................................ 3, 5

*Interior Elec. Inc. Nevada v. T.W.C. Constr., Inc.*, No. 2:18 Civ. 01118, 2022 WL 22868066 (D.
Nev. Aug. 12, 2022) ........................................................................................ 11

*Jackson Nat'l Life Ins. Co. v. Kennedy,* 741 A.2d 377 (Del. Ch. 1999) ...................................... 11

*JCW Software, LLC v. Embroidme.com, Inc.*, No. 10 Civ. 80472, 2012 WL 13015051 (S.D. Fla.
May 29, 2012) .................................................................................................. 8

*Kadrey v. Meta Platforms, Inc.*, No. 23 Civ. 03417, 2023 WL 8039640 (N.D. Cal. Nov. 20,
2023) .............................................................................................................. 14

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 387 F.3d 522 (6th Cir. 2004) .............. 7, 8

*LivePerson, Inc. v. 24/7 Customer, Inc.*, 83 F. Supp. 3d 501 (S.D.N.Y. 2015) .......................... 10

*Luv N' Care, Ltd. v. Regent Baby Prods. Corp.*, 841 F. Supp. 2d 753 (S.D.N.Y. 2012) ....... 23, 24

*Mango v Buzzfeed Inc.*, 970 F.3d 167 (2d Cir. 2020) .................................................... 15

*Methyl Tertiary Butyl Ether (MTBE) Prod. Liab. Litig.*, 725 F.3d 65 (2d Cir. 2013) .................. 10

*Nat'l Car Rental Sys., Inc. v. Computer Assocs. Int'l*, 991 F.2d 426 (8th Cir. 1993) .................. 13

*PR Acquisitions, LLC v. Midland Funding LLC*, No. 2017 Civ. 0465, 2018 WL 2041521 (Del. Ch. Apr. 30, 2018) ..................................................................................................... 11

*Roberts v. BroadwayHD LLC*, 518 F. Supp. 3d 719 (S.D.N.Y. 2021) ................................ 18, 21

*State ex rel. Jennings v. Monsanto Company*, 299 A.3d 372 (Del. 2023) .................................... 11

*Thomson Reuters Enter. Ctr. GmbH v. Ross Intel. Inc.*, 694 F.Supp.3d 467 (D. Del. 2023) ....... 13

*Torah Soft Ltd. v. Drosnin*, 224 F. Supp. 2d 704 (S.D.N.Y. 2002). ........................................... 12

*Universal City Studios, Inc. v. Reimerdes*, 111 F. Supp. 2d 294 (S.D.N.Y. 2000) .................... 5, 7

*Wellness Publishing v. Barefoot*, No. 02-3773, 2008 WL 108889 (D.N.J. Jan. 9, 2008)) ........... 13

*Yout, LLC v. Recording Indus. Ass'n of Am., Inc.*, 633 F. Supp. 3d 650 (D. Conn. 2022) ............. 7


**STATUTES**
17 U.S.C. § 1201(a)(1) ...................................................................................................... 1, 4, 5
17 U.S.C. § 1201(a)(3)(A) ............................................................................................................ 8
17 U.S.C. § 1202 ......................................................................................................................... 21
17 U.S.C. § 1202(b)(1) ........................................................................................................... 2, 24
17 U.S.C. § 1202(b)(3) .................................................................................................. 2, 15, 19, 20


**OTHER AUTHORITIES**
"Overview of OpenAI Crawlers," *OpenAI API Platform*, https://platform.openai.com/docs/bots (last visited Aug. 27, 2025). ................................................................................................. 4

"Prompt engineering," *OpenAI API Platform*, https://platform.openai.com/docs/guides/prompt-engineering (last visited on Aug. 27, 2025) ..................................................................... 23

Internet Engineering Task Force, "RFC 9309: Robots Exclusion Protocol," https://www.ietf.org/rfc/rfc9309.html ("REP Specification") ("The 'Allow' and 'Disallow' lines . . . indicate whether accessing a URI that matches the corresponding path is allowed or disallowed.") .................................................................................................................... 4

## I.    INTRODUCTION

The OpenAI defendants' ("OpenAI") Motion to Dismiss attempts to sidestep the Ziff Davis plaintiffs' ("Ziff Davis") well-pleaded claims by mischaracterizing both the law and the allegations in the First Amended Complaint ("FAC"). First, contrary to OpenAI's assertions, the FAC clearly alleges that OpenAI systematically and on a massive scale crawls Ziff Davis's websites to scrape Ziff Davis's copyrighted content in direct violation of specific technological measures—robots.txt directives—implemented expressly to block OpenAI's GPTBot. These measures, which OpenAI itself promulgated and publicly pledged to honor, are effective technological controls under Section 1201 of the Digital Millennium Copyright Act ("DMCA"), and Ziff Davis's allegations of circumvention are more than sufficient at the pleading stage.

OpenAI's argument that "robots.txt files" are mere "preferences" ignores both the technical function of the Robots Exclusion Protocol and legal precedent holding that such directives, particularly when adopted by web scraping bot operators, constitute technological measures under Section 1201(a). OpenAI attempts to tie "circumvention" under Section 1201(a) to the effectiveness of an access control measure, but (1) it is irrelevant whether or not a measure sometimes can be bypassed, and (2) even if it were relevant, it would be a factual issue inappropriate to resolve on a motion to dismiss. Ziff Davis's factual allegations—detailing the implementation of OpenAI's own bot blocking instructions and its subsequent, repeated circumvention of those instructions—meet and exceed the requirements for stating a claim.

OpenAI's preemption argument regarding unjust enrichment similarly fails. Ziff Davis does not seek to redress violations of any right that is "equivalent" to any exclusive right under the Copyright Act, but rather seeks, at least in the alternative, to recover for aspects of OpenAI's LLM development and training processes that OpenAI claims do *not* affect such rights, and therefore

1

may instead constitute an unjust retention of a benefit (the unauthorized use of Ziff Davis's materials to improve OpenAI's models and products) without compensation.

OpenAI's challenges to the DMCA Section 1202(b)(3) claim likewise misstate both the law and Ziff Davis's allegations. Ziff Davis plausibly alleges that OpenAI distributed registered works stripped of their copyright management information ("CMI"), both through its public release of training datasets and through product outputs regurgitating entire articles without attribution. The FAC provides numerous concrete, specific examples of distribution of Ziff Davis's copyrighted content without CMI, and includes well-pleaded allegations of OpenAI's knowledge of both the removal and the actual and potential infringement of that content. This meets and exceeds the statutory requirements.

Ziff Davis supports its trademark dilution claim with robust allegations of fame, history, reach, spend, circulation, and global recognition of Ziff Davis's marks, which again exceed the standards accepted by this Court. OpenAI's attempt to recast these allegations as "niche fame" is contradicted by the breadth and depth of Ziff Davis's consumer reach and industry recognition.

Finally, OpenAI's arguments regarding contributory infringement and Section 1202(b)(1) are unavailing. As this Court held with respect to similar claims by other plaintiffs in this MDL, the law does not require knowledge of specific instances of infringement at the pleading stage, and Ziff Davis's allegations of widespread, well-publicized infringing outputs and intentional removal of CMI are more than sufficient to state a claim for violation of the DMCA under Section 1202(b)(1).

Ziff Davis's claims are well-pleaded, supported by detailed factual allegations, and fully cognizable under governing law. OpenAI's Motion to Dismiss should be denied in its entirety.

## II.    LEGAL STANDARD

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In evaluating such a motion, a court must draw all reasonable inferences in Plaintiffs' favor and assume all well-pleaded factual allegations to be true. *Id.* In so doing, the Court may rely upon "facts stated on the face of the complaint and in documents appended to the complaint or incorporated in the complaint by reference, as well as to matters of which judicial notice may be taken." *See* Order, Dkt. 514 at 10, *New York Times Co. v. Microsoft et al.*, No. 23 Civ. 11195 (S.D.N.Y. Apr. 4, 2025) ("News MTD Order").

## III.    ARGUMENT

### A.    <u>Ziff Davis Has Adequately Stated a Section 1202(a)(1) Claim.</u>

Accepting the FAC's allegations as true, as the Court must do at the pleading stage, Ziff Davis amply pleaded a plausible Section 1201(a)(1) claim. Further, contrary to OpenAI's contentions, courts recognize that a robots.txt directive is an access control measure within the meaning of Section 1201(A)(1) when such directive is designed to block access by bots whose operators pledge to honor the directives. *See Healthcare Advocates, Inc. v. Harding, Earley, Follmer & Frailey*, 497 F. Supp. 2d 627, 631–32, 643 (E.D. Pa. 2007). And by bypassing and avoiding the directives that it pledged to honor, OpenAI has circumvented the access control measure under the statute. OpenAI's argument glosses over this key distinction: that OpenAI contravened its own public promises not to scrape Ziff Davis's content.

#### 1.    Background: the Robots Exclusion Protocol and OpenAI's "GPTBot" and Blocking Instructions

To protect against unauthorized access to content from automated web crawler agents (or

"bots"), website operators host public, machine-readable directives in the Robots Exclusion Protocol ("REP") syntax in files called robots.txt. FAC ¶ 117. REP directives are placed in a robots.txt file in the root directory of a website and function as technological mandates to instruct a bot accessing a website which areas the operator chooses to "allow" or "disallow"—in the REP syntax—the bot to crawl. *Id.* ¶¶ 117–18. Per the REP, a "disallow" directive acts as a gate that forecloses a bot's access to specified content.[1] *Id.* ¶ 118.

OpenAI operates a bot called "GPTBot" that, in its words, "crawl[s] content that may be used in training [its] generative AI foundation models." FAC ¶ 116. Thus, GPTBot accesses and copies (or "scrapes") existing content to create training datasets for OpenAI LLMs. *Id.*[2] Apparently in response to objections from content owners like Ziff Davis, OpenAI published technical instructions for website operators to "opt out" of GPTBot scraping, providing that adding two lines of instruction code to a website's robots.txt file would "disallow GPTBot to access your site." FAC ¶ 119 (the foregoing being OpenAI's "Blocking Instructions"). Despite Ziff Davis implementing OpenAI's Blocking Instructions, OpenAI nonetheless continued to scrape on a massive scale, violating both Ziff Davis's REP directives implementing the Blocking Instructions and OpenAI's own public pledge to obey them millions of times. *Id.* ¶¶ 120–26.

### 2. Ziff Davis Has Stated a Claim for Relief.

To state a claim for relief under Section 1201(a)(1), Ziff Davis must plausibly plead that (1) its REP directive disallowing GPTBot is a "technical measure that effectively controls access" to Ziff Davis's works, and (2) that OpenAI circumvented that measure. Ziff Davis has easily met

---

[1] Internet Engineering Task Force, "RFC 9309: Robots Exclusion Protocol," https://www.ietf.org/rfc/rfc9309.html ("REP Specification") ("The 'Allow' and 'Disallow' lines . . . indicate whether accessing a URI that matches the corresponding path is allowed or disallowed.")

[2] *Quoting* "Overview of OpenAI Crawlers," *OpenAI API Platform*, https://platform.openai.com/docs/bots (last visited Aug. 27, 2025).

that burden.

      a.   *Ziff Davis Has Adequately Alleged that its REP "Disallow" Directives "Effectively Control Access to a [Copyright-Protected] Work."*

Section 1201(a)(1) prohibits circumventing "a technological measure that effectively controls access to" a copyrighted work. Under Section 1201(a)(3)(B), such a measure qualifies if, in the ordinary course, it requires the application of information, or a process or a treatment, with the authority of the copyright owner, to gain access to the work." This is a purpose-based test: a measure qualifies if its function is to control access. *See Universal City Studios, Inc. v. Reimerdes*, 111 F. Supp. 2d 294, 318 (S.D.N.Y. 2000).

Here, Ziff Davis amply alleged facts to satisfy this requirement. Ziff Davis implemented the REP "disallow" directive to GPTBot in accordance with OpenAI's Blocking Instructions. Per OpenAI's Blocking Instructions, and in accordance with the REP, GPTBot is designed to check for such directives and only access the copyrighted works on the website that are not "disallowed." These allegations are sufficient, particularly at the pleading stage.

Courts recognize that REP directives can constitute technological measures under Section 1201(a)(1), particularly when designed to block access by bots whose operators pledge to honor them. In *Healthcare Advocates, Inc. v. Harding, Earley, Follmer & Frailey*, the court found that REP directives to the Internet Archive constituted technological measures effectively controlling access to copyrighted website content where the Internet Archive had adopted an exclusion policy based on those directives. *See* 497 F. Supp. 2d 627, 631–32, 643 (E.D. Pa. 2007). Similarly, in *DHI Group, Inc.,* the court found it plausible, at the pleading stage, that REP directives serve as safeguards for automated technologies. *DHI Group, Inc. v Kent*, No. CV H-16-1670, 2017 WL 4837730, at *5 & *5 n.1 (S.D Tex. Oct. 26, 2017) ("Whether [the robots.txt file containing REP directives] actually qualifies [as an effective technological protection measure] in this case will be

5

determined definitively at summary judgment or by a jury. At the motion to dismiss stage, it simply must be plausible.")

Analyses from other courts likewise confirm that REP directives (implemented in robots.txt files) are industry standards for controlling automated access to web content. *Associated Press v. Meltwater U.S. Holding, Inc.* 931 F. Supp. 2d 537, 563 (S.D.N.Y. 2013). "Robots.txt protocol [was] designed by industry groups to instruct cooperating web crawlers not to access all or part of a website that is publicly viewable," and "[i]f a website owner uses the robots.txt file to give instructions about its site to web crawlers, and a crawler honors the instruction, then the crawler should not visit any pages on the website." *Id.* Indeed, "[t]he Internet industry has widely recognized the robots.txt file as a standard for controlling automated access to Web pages since 1994." *Field v. Google Inc.*, 412 F. Supp. 2d 1106, 1113 (D. Nev. 2006) ("[i]f Google's robot encounters a robots.txt file" with a disallow directive covering it, "then it will not crawl the owner's Web site").

Here, OpenAI has not just adopted a policy of exclusion based on REP directives; it has promulgated precise Blocking Instructions using an REP disallow directed to GPTBot and pledged that implementing them will "disallow GPTBot to access your site." Nevertheless, OpenAI instead circumvented this technological protection measure.

OpenAI's principal argument why Ziff Davis's REP disallow implementation does not constitute an effective technological protection measure is that it is too easily ignored and circumvented. But the statute does not require a technological measure to be impervious—a question of fact not appropriate, in any event, to decide on a motion to dismiss—and courts have repeatedly held that even easily bypassed measures can qualify under Section 1201(a). Courts have arrived at a "legal consensus that the fact that a person may deactivate or go around a

6

[technological measure] does not 'mean that the technology fails to offer "effective control,"' because so holding would render the DMCA 'nonsensical.'" *Yout, LLC v. Recording Indus. Ass'n of Am., Inc.*, 633 F. Supp. 3d 650, 672 (D. Conn. 2022) (citing 4 Nimmer on Copyright § 12A.03); *see also Universal City Studios, Inc. v. Reimerdes*, 111 F. Supp. 2d 294, 317–18 (S.D.N.Y. 2000) (if an alternative means of access rendered a technological measure "ineffective," then "the statute [would] offer protection where none is needed but . . . withhold protection precisely where protection is essential"). "[A] precondition for DMCA liability is not the creation of an impervious shield to the copyrighted work . . . . Otherwise, the DMCA would apply only when it is not needed." *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 387 F.3d 522, 549 (6th Cir. 2004). As a result, "the relative strength or weakness of a technological measure is not dispositive regarding its efficacy" within the meaning of the DMCA. *Yout*, 633 F. Supp. 3d at 672. This is particularly true at the pleading stage.

OpenAI mischaracterizes the law by insisting that ***only*** mechanisms like "password protection, encryption measures, and activation and validation keys" can support the finding of an effective technological protective measure. Mot. at 7, 9. On the contrary, an effective technological protection measure is simply one that functions to restrain access in the ordinary course. *Yout*, 633 F. Supp. 3d at 665. Ziff Davis's REP directives implement OpenAI's own Blocking Instructions; they are designed to restrain OpenAI's GPTBot from scraping and copying the copyrighted contents of covered Ziff Davis websites. *See* FAC ¶¶ 119–28. It is difficult to imagine a technological measure designed to more deliberately control access in the ordinary course. OpenAI's contention (which is outside the pleadings) that REP directives purportedly can be bypassed with relative ease would not change the results. *Yout,* 633 F. Supp. 3d at 665. Rather, its function as an access control that directs and restricts the manner in which content can be retrieved

brings it squarely within Section 1201(a)'s protective scope.

OpenAI's argument that Ziff Davis's websites' millions of monthly visits demonstrate the ineffectiveness of its REP directives highlights OpenAI's critical misapprehension of the technology at issue. *See* Mot. at 8, 12. REP directives target automated bots like GPTBot, not human users. Ziff Davis's relevant REP directives are targeted to GPTBot. *See* FAC ¶¶ 119–20. Such measures are not designed, as OpenAI confusingly argues, to prevent "any other users from accessing those same websites [through] commonplace internet browsers." Mot. at 12. Nor do they "leave [another] route wide open" to scraping such content because those websites remain available for perusal by humans. Mot. at 8, 9, 12 (quoting *Lexmark Int'l.*, 387 F.3d at 547).[3] "Numerous courts have embraced the proposition that it is irrelevant whether alternative means of access to the work exist." *JCW Software, LLC v. Embroidme.com, Inc.*, No. 10 Civ. 80472, 2012 WL 13015051, at *10 (S.D. Fla. May 29, 2012) (collecting cases). By ignoring, bypassing, and avoiding these guardrails, OpenAI plainly thwarted Ziff Davis's technological control mechanism to access Ziff Davis's protected content specifically for the purpose Ziff Davis was attempting to prevent.

> b. *Ziff Davis Has Adequately Alleged that OpenAI "Circumvented" the REP Directives.*

To "circumvent a technological measure" under Section 1201 means "to descramble a scrambled work, to decrypt an encrypted work, **or otherwise to avoid, bypass,** remove, deactivate,

---

[3] *Lexmark* does not support OpenAI's argument. There, the "authentication sequence" at issue was found not to be a technical measure because it did not prevent access to the copyrighted work, not because the sequence itself was ineffective. *Lexmark Int'l.*, 387 F.3d at 549 ("[o]ur reasoning does not turn on the *degree* to which a measure controls access to a work. It turns on the textual requirement that the challenged circumvention device must indeed circumvent *something* . . . . Because Lexmark has not directed any of its security efforts . . . to ensuring that its copyrighted work . . . cannot be read and copied, it cannot lay claim to having put in place a 'technological measure that effectively controls access to a work protected under [the copyright statute]).'").

or impair a technological measure, without the authority of the copyright owner[.]" *Id.* § 1201(a)(3)(A) (emphasis added). Ziff Davis has adequately alleged that with its REP disallow directives in place, OpenAI scraped covered website content millions of times (even while continuing to tout its REP directive compliance). *See* FAC ¶¶ 5, 109, 121–28, 241, 243, 245. OpenAI thus avoided and bypassed this technological protection mechanism.

OpenAI argues that Ziff Davis failed to allege circumvention because there was no conduct constituting circumvention by OpenAI, as OpenAI purportedly could "ignore" the Ziff Davis's REP without an affirmative act. Mot. at 13–14. OpenAI designed and operated GPTBot and chose how to do so, including whether to follow bot protocols like the REP. The allegations in the FAC show that GPTBot avoids and bypasses the REP step of checking and following disallow directives. *See* FAC ¶¶ 121–26, 240–46. OpenAI's Blocking Instructions make clear that it was cognizant of this step and thus that designing and operating GPTBot to avoid and bypass it were affirmative, even willful, acts. Thus, by coding and using its bots to bypass and avoid Ziff Davis's REP directives, OpenAI has committed an affirmative act of circumvention of a technological access control measure. Here, OpenAI provided instructions for how content providers like Ziff Davis can avoid having their content scraped by OpenAI, and OpenAI then circumvented the very instructions that it provided. At least at the pleading stage, Ziff Davis' allegations are more than sufficient.

### c. *OpenAI Arguments Are Inappropriate to Decide on a Motion to Dismiss.*

Whether REP is an access control measure (it is), or whether OpenAI actually "circumvented" such measure by ignoring the Blocking Instructions (it did), as OpenAI argues in its motion, are questions of fact unsuitable for resolution at the motion to dismiss stage. For instance, OpenAI relies on *Lexmark*, *MDY*, and *Agfa* for the contention that REP does not "control

access," Mot. at 19, but these cases are inapplicable because they were decided after evidentiary hearings or at summary judgment, not the pleading stage. *LivePerson*—the sole case OpenAI cites that was decided on the same procedural posture—was dismissed for plaintiff's failure to even specify the alleged technological measure in the complaint. *LivePerson, Inc. v. 24/7 Customer, Inc.*, 83 F. Supp. 3d 501, 511 (S.D.N.Y. 2015). Here, by contrast, Ziff Davis clearly alleges: the "measure" at issue was the specific REP anti-scraping directives (following OpenAI's Blocking Instructions) aimed at OpenAI's GPTBot, s*ee* FAC ¶¶ 118, 121, 126–128, 240–41; and the affirmative act of circumvention was OpenAI designing and operating its GPTBot to avoid and bypass Ziff Davis's REP directives. *See supra* III(A)(2)(b). Ziff Davis has therefore duly alleged "both the existence of a technological measure and actions constituting circumvention within the meaning of the Digital Millennium Act," *LivePerson, Inc.*, 83 F. Supp. 3d at 509. Further development of the factual record may well conclusively determine the specific operation of OpenAI's bot and the precise manner in which it evades Ziff Davis's REP directives following OpenAI's Blocking Instructions, but the factual allegations in Ziff Davis's pleading are more than sufficient to state a claim to relief that is plausible on its face.

The Court should thus deny OpenAI's motion and sustain Count V of the FAC.

### B. <u>Ziff Davis's Unjust Enrichment Claim Is Not Preempted</u>.

OpenAI argues that Ziff Davis's unjust enrichment claim is preempted by Section 301 of the Copyright Act.[4] Under established precedent, "the party asserting that federal law preempts

---

[4] OpenAI also states that the class plaintiffs in the *Tremblay* case brought an unjust enrichment claim, and that "[t]he Northern District of California court dismissed that claim as insufficient and another state law claim rooted in similar factual allegations as preempted." Mot. at 6 (citing *Tremblay v. OpenAI, Inc.*, 716 F. Supp. 3d 772, 782–83 (N.D. Cal. 2024); *Tremblay v. OpenAI, Inc.*, 742 F. Supp. 3d 1054, 1058–59 (N.D. Cal. 2024)). For clarity's sake, the *Tremblay* court did *not* dismiss the class plaintiffs' unjust enrichment claim on preemption grounds, but because the plaintiffs had not alleged all of the elements of unjust enrichment. *See Tremblay*, 716 F. Supp. 3d at 782–83. The court did later dismiss a separate claim under California's Unfair Competition Law on the grounds of preemption.

state law bears the burden of establishing preemption." *In re Methyl Tertiary Butyl Ether (MTBE) Prod. Liab. Litig.*, 725 F.3d 65, 96 (2d Cir. 2013). Particularly at the pleading stage, OpenAI does not meet its burden here. *See Interior Elec. Inc. Nevada v. T.W.C. Constr., Inc.*, No. 2:18 Civ. 01118, 2022 WL 22868066, at *1 (D. Nev. Aug. 12, 2022) ("it is premature to determine whether [copyright] statute bars parts of [plaintiff's] common-law claims").

As an initial matter, there is no "field" preemption by the Copyright Act. *Foad Consulting Grp., Inc. v. Azzalino*, 270 F.3d 821, 827 (9th Cir. 2001) ("In enacting the Copyright Act, Congress did not preempt the field."). Rather, Section 301 preempts state-law claims[5] **only** if—and only to the extent that—"(1) the particular work to which the claim is being applied falls within the type of works protected by the Copyright Act under 17 U.S.C. §§ 102 and 103, **and** (2) the claim seeks to vindicate legal or equitable rights that are equivalent to one of the bundle of exclusive rights already protected by copyright law under 17 U.S.C. § 106." *Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 305 (2d Cir. 2004). "The first prong of this test is called the 'subject matter requirement,' and the second prong is called the 'general scope requirement.'" *Id.* Ziff Davis does not challenge the first prong on this motion. However, the general scope requirement "is satisfied only when the state-created right . . . involve[s] acts of reproduction, adaptation, performance, distribution or display." *Briarpatch*, 373 F.3d at 305–06 (citations omitted). In addition, "the state law claim must not include any extra elements that make it qualitatively different from a copyright infringement claim." *Id.*

---

[5] "Unjust enrichment is the unjust retention of a benefit to the loss of another, or the retention of money or property of another against the fundamental principles of justice or equity and good conscience." *PR Acquisitions, LLC v. Midland Funding LLC*, No. 2017 Civ. 0465, 2018 WL 2041521, at *14 (Del. Ch. Apr. 30, 2018) (internal citations omitted). The elements are: "(1) an enrichment, (2) an impoverishment, (3) a relation between the enrichment and impoverishment, (4) the absence of justification and (5) the absence of a remedy provided by law." *Jackson Nat'l Life Ins. Co. v. Kennedy,* 741 A.2d 377, 393-94 (Del. Ch. 1999) (citation omitted); *but see State ex rel. Jennings v. Monsanto Company*, 299 A.3d 372, 390-91 (Del. 2023) (last element not required if claim brought in court of equity). Ziff Davis pleads that OpenAI has been enriched by using Ziff Davis content to improve the performance of OpenAI's LLMs, without compensation or justification, causing financial harm. *See* FAC ¶¶ 233-37.

Here, Ziff Davis does not seek, under its unjust enrichment claim, to vindicate any right "equivalent" to any exclusive right protected by copyright law. Rather, it seeks to redress any aspects of OpenAI's LLM development and training processes that do *not* affect such rights. More fundamentally, these issues are not susceptible to resolution at the pleading stage.

Much, of course, remains unknown about the training and operation of OpenAI's models that will only become clearer during fact discovery.[6] However, what *is* known suggests there may be aspects of OpenAI's use of Ziff Davis works that do not touch on Ziff Davis's exclusive copyright interests, but nevertheless enrich OpenAI at Ziff Davis's expense and without any justification, giving rise—at least in the alternative (*see* Fed. R. Civ. P. 8(d)(2)-(3))—to a claim for unjust enrichment. For example, as discussed below, courts have held that unjust enrichment claims that include allegations of certain types of improper "use" (particularly to develop new technology) can provide the types of "extra elements" that can defeat a preemption defense, and OpenAI itself has claimed in other MDL cases—and presumably will here—that it does not replicate expressive content during training.[7] If it could prevail in whole or part on such an argument Ziff Davis would be entitled, again at least in the alternative, to seek redress under the law of unjust enrichment. *See Barnes v. Block*, No. 22 Civ. 07236, 2025 WL 1736519 (S.D.N.Y. June 23, 2025) (citation omitted) ("It is precisely the purpose of pleading in the alternative to allow a Plaintiff to advance separate theories of recovery premised on a disputed fact.")

In *Thomson Reuters Enter. Ctr. GmbH v. Ross Intel. Inc.*, the court examined a copyright preemption defense in a case involving the alleged copying of Westlaw headnotes to train an AI

---

[6] For instance, if some of the training at issue took place outside of the United States, such acts would be extraterritorial and an unjust enrichment claim based on those acts could not be preempted. *See Torah Soft Ltd. v. Drosnin,* 224 F. Supp. 2d 704, 716 (S.D.N.Y. 2002).
[7] *See*, *e.g.*, OpenAI's Answer to Second Amended Complaint of The New York Times, Dkt. 635 ¶ 101, *New York Times Co. v. Microsoft et al.*, No. 23 Civ. 11195 (S.D.N.Y. Jun. 11, 2025)

model. It held that unjust enrichment claims based on contract provisions barring the sharing of passwords and the installation or operation of third-party software on plaintiff's products—which the court characterized as "govern[ing] use and manipulation of" plaintiff's website—were not preempted because the restrictions did not concern exclusive rights under copyright law. 694 F.Supp.3d 467, 488 (D. Del. 2023), *vacated in part*, 765 F.Supp.3d 382 (D. Del. 2025), *motion to certify appeal granted*, No. 20 Civ. 613 (SB), 2025 WL 1488015 (D. Del. May 23, 2025) (citing *Altera Corp. v. Clear Logic, Inc.*, 424 F.3d 1079, 1090 (9th Cir. 2005) and *Wellness Publishing v. Barefoot*, No. 02-3773, 2008 WL 108889 (D.N.J. Jan. 9, 2008)).

In *Altera*, the Ninth Circuit held that "[a] state law tort claim concerning the unauthorized use of the software's end-product is not within the rights protected by the federal Copyright Act" and thus not preempted. *Altera*, 424 F.3d at 1090. The plaintiff, a semiconductor chip maker, brought an unjust enrichment claim against a competitor that asked customers to send it digital files generated by plaintiff's chips ("bitstreams") so that the defendant could manufacture its own chips for the customers despite contractual terms restricting customers from doing so. *Id.* at 1089. The court found that "[t]he right at issue is not the reproduction of the software . . . but is more appropriately characterized as the *use* of the bitstream." *Id.* (emphasis added). In *Nat'l Car Rental Sys., Inc. v. Computer Assocs. Int'l*, the plaintiff alleged that its software was only permitted to be used internally by licensee, but had been used for other purposes. 991 F.2d 426, 427–28 (8th Cir. 1993). The court held that the "processing of data for third parties is the prohibited act" and that it did not implicate exclusive copyright interests. 991 F.2d at 432–33 (citations omitted). The court disagreed with defendant that plaintiff was really alleging that defendant "distributed the 'functionality' of the program," noting that "the distribution right is only the right to distribute *copies* of the work" and that "copyright protection in computer software does not extend to the

13

software's function." 991 F.2d at 434 (citing *Computer Assocs. Int'l, Inc. v. Altai, Inc.,* 982 F.2d 693, 704 (2d Cir. 1992)).

Here, Ziff Davis's unjust enrichment claim does not extend to OpenAI's copying of its registered works (which underlies Ziff Davis's copyright infringement claims), but to OpenAI's claimed extra-copyright *use* of information about those works to develop, improve, and operate its LLMs. Ziff Davis alleges that training includes the "break[ing] down the third-party content into small units of text (words and sub-words) called "tokens," which are encoded as numbers (FAC ¶ 79); "processing" these tokenized numbers to train the models (*id.*); iteratively "sampling" from the content to improve response (*id.* ¶ 80); and using Ziff Davis's works "to repeatedly adjust model parameters until the model can accurately predict the next token in a particular sequence" (*id.* ¶ 233). At a minimum Ziff Davis is entitled, on these allegations, to argue in the alternative the tokenization, processing and sampling of Ziff Davis's proprietary works for training purposes unjustly enriches OpenAI, and this is especially true to the extent OpenAI itself claims that such processes do not constitute copying in the first instance.

OpenAI notes that several courts in California have found unjust enrichment claims involving allegations of AI training to be preempted. *See* Mot. at 16. But those cases are neither binding on this Court nor persuasive. In the first two cases, the courts reached their conclusions without even considering whether the *uses* being challenged were qualitatively different from exclusive copyright interests. In *Kadrey v. Meta Platforms, Inc.*, the court simply stated in a conclusory fashion that the unjust enrichment claim was preempted because it "relies on the same rights contained in the Copyright Act." No. 23 Civ. 03417, 2023 WL 8039640, at *2 (N.D. Cal. Nov. 20, 2023). The Court in *Andersen v. Stability AI Ltd.*, noted that the plaintiffs asserted that the "crux" of their unjust enrichment claim "revolved not around plaintiffs' works but around

plaintiffs themselves and their 'artistic personas,'" but held that this theory was not found in the complaint, which on its face alleged only a claim "tied instead to use of plaintiffs' works." 744 F. Supp. 3d 956, 972 (N.D. Cal. 2024) (allowing plaintiffs leave to replead). Finally, in *Doe 1 v. GitHub, Inc.*, the Court found that the unjust enrichment claim was preempted because unlike the claim in *Altera*, which involved "the unlawful use of an end-product or output," the claim in *Doe 1* involved—based on the explicit language of plaintiffs' pleadings—"the unauthorized reproduction of [plaintiffs'] code to prepare derivative works," an exclusive copyright interest. No. 22 Civ. 06823, 2024 WL 235217, at *7 (N.D. Cal. Jan. 22, 2024). By contrast, here Ziff Davis explicitly alleges that OpenAI has used its materials to train and improve its models through iterative processing. FAC ¶¶ 79–81.

At the very least, it is premature for the Court to find preemption at this stage of the litigation, when so much remains unresolved about the nature of OpenAI's training and models and Ziff Davis has sufficiently pled "extra elements" necessary to sustain an unjust enrichment claim.

### C. Ziff Davis Has Adequately Stated a Section 1202(b)(3) Claim.

To plead a claim under Section 1202(b)(3), one must allege "(1) the existence of CMI in connection with a copyrighted work; and (2) that a defendant distributed works or copies of works; (3) while knowing that CMI has been removed or altered without authority of the copyright owner or the law; and (4) while knowing, or having reasonable grounds to know that such distribution will induce, enable, facilitate, or conceal an infringement." *Mango v Buzzfeed Inc.*, 970 F.3d 167, 171 (2d Cir. 2020) (cleaned up); *see also* News MTD Order at 19 (applying this standard). As detailed below, the FAC adequately alleges that Ziff Davis's copyrighted works included CMI; that OpenAI distributed those works; that it did so know while knowing that CMI has been

removed without authority; and that OpenAI knew or reasonably should have known that such distribution would induce, enable, facilitate, or conceal an infringement.

### 1. Background: OpenAI Knowingly Distributes Copies of Ziff Davis's Works Stripped of Their CMI.

When OpenAI scrapes content from websites to use as training data, it intentionally removes CMI associated with those copyrighted works. FAC ¶¶ 178, 183, 191, 248, 253. Among other things, OpenAI strips copyright notices, bylines, authorship information, names, titles of works, and terms of use. *Id.* To do so, OpenAI has used software tools such as Dragnet and Newspaper—tools that are specifically designed to separate and extract article body text from identifying information about the content—to create content datasets devoid of CMI. *Id.* ¶¶ 179–84. OpenAI even created and then publicly distributed under an open-source license a sample of one of its content datasets containing hundreds of full-text Ziff Davis articles devoid of CMI. *Id.* ¶¶ 183–84.

OpenAI deliberately removed CMI from Ziff Davis content to conceal its own infringement and to facilitate its own further infringement by itself and others. By stripping CMI, OpenAI has enabled the direct distribution—particularly via API access—of CMI-free copies of Ziff Davis Works to customers (including corporate partners), apparently freeing them to exploit paraphrased or nearly identical versions of the content. *Id.* ¶¶ 188–91. OpenAI's deliberate CMI removal additionally makes it more difficult for Ziff Davis and other rightsholders to detect infringement. *Id.* ¶ 190.

As the specific examples of verbatim output demonstrate, OpenAI is aware that its LLMs tend to generate and distribute verbatim copies of the content it uses in its training datasets, and was specifically aware of regurgitation of Ziff Davis content once put on notice by Ziff Davis in early 2024. *See id.* ¶¶ 9, 160, 171–73. OpenAI was so aware of infringing output that it appears to

have made significant technical changes to its products and systems in direct responses to these tendencies and allegations in an apparent effort to rebut these allegations. *Id.* ¶161. Despite this, OpenAI's LLMs continue to generate verbatim and closely paraphrased content from Ziff Davis's articles. *Id.* ¶167. The FAC includes multiple examples of these verbatim infringing outputs stripped of CMI. *Id.*; *see also* Ex. E. Ziff Davis further alleges affirmative acts of distribution through OpenAI's products and models—governed by user agreements transferring ownership of outputs to OpenAI's business and consumer users—and *Canvas* tool allowing further modification, copying, and sharing along of those outputs.

As yet another example, OpenAI also distributed Ziff Davis copyrighted works devoid of CMI as part of the WebText training dataset that it made publicly available on GitHub. *See* FAC ¶¶ 64, 130, 140, 140 n.66, 179–184, Ex. D. This dataset contains the full text of at least hundreds of Ziff Davis copyrighted works. *Id.* ¶¶ 138, 184. As Ziff Davis alleges, and as OpenAI touted in a paper published with the release of GPT-2, OpenAI used software tools called Dragnet and Newspaper to copy Ziff Davis Works when creating the WebText dataset and remove CMI. *Id.* ¶¶ 179–82. As a result, each relevant record in the dataset contains the full body text of a Ziff Davis work—but stripped of the CMI that originally appeared on the Ziff Davis web page containing the work. *Id.* ¶¶ 182–84. OpenAI also distributed this data to the public via GitHub under a license that went far beyond mere public display to grant "any person obtaining a copy" of this software and data broad and unrestricted rights, including the right to "use, copy, modify, merge, publish, distribute, sublicense, and/or sell copies." *Id.* ¶¶ 138, 140 & 140 n.66.

## 2. Ziff Davis Has Stated a Claim for Relief.

OpenAI challenges the sufficiency of Ziff Davis's allegations that (i) the works were "distributed" stripped of CMI, and (ii) "complete" works (or copies thereof) were distributed with

their CMI removed or altered, and it raises general challenges to the claim unfounded in statute. Mot. at 18–20. OpenAI's challenges are without merit.

### a. Ziff Davis Has Adequately Alleged "Distribution."

OpenAI argues that Ziff Davis fails to allege "distribution," partly by complaining that Ziff Davis itself generated examples of CMI-less content Mot. at 18–19. This circular argument is spurious. For notice pleading purposes, it is sufficient for Ziff Davis to allege (and demonstrate through examples) that the LLMs are capable of producing content that does not contain CMI, and that if such output is distributed to users, in all cases it would be without Ziff Davis's authorization, which is precisely as Ziff Davis has alleged here (*see* FAC ¶¶ 183–86). *Roberts v. BroadwayHD LLC*, 518 F. Supp. 3d 719.

OpenAI then argues that LLM output is merely a "public display" under the Copyright Act, not a distribution. Mot. at 19–20. This Court has previously held that "[w]hile courts have understood 'distribution' under the DMCA to require a sale or transfer of ownership extending beyond that of a mere public display . . . it is not clear whether an LLM output is a mere 'public display' or something more." News MTD Order at 28 (citations and quotations omitted).

In any event, Ziff Davis additionally alleges that OpenAI purports to assign all of its rights in any outputs from its models and products through both its consumer Terms of Use and its Business Terms, which state that OpenAI "hereby assign[s] to you all our right, title, and interest, if any, in and to Output." FAC ¶ 170. Demonstrating an independent means of distribution, Ziff Davis further alleges that "OpenAI provides various options to assist users in distribution of output, including "copy," conversion to audio ("reading aloud"), "share," "archive," or "edit" using OpenAI's separate editing tool, *Canvas. Id.* ¶ 169.[8] OpenAI does not seriously dispute that this

---

[8] Ziff Davis also pleads that by providing access to its GenAI models through an API, "OpenAI directly distributes CMI-free copies of Ziff Davis Works, including the Registered Works, to its customers." FAC ¶ 190.

constitutes "distribution," instead arguing that Ziff Davis has not provided examples of OpenAI "allegedly selling or transferring ownership of a Ziff Davis work." Mot. at 20. However—even setting aside that a plaintiff is not required to **prove** its claim at the pleading stage—OpenAI's Terms of Use apply to all users and take effect automatically upon use of OpenAI's services. *See* FAC ¶ 170. That means that all output from OpenAI's API and ChatGPT products are "distributed," pursuant to this language. At a minimum, by demonstrating that Ziff Davis output is regurgitated without CMI, Ziff Davis has plausibly pleaded "distribution" of its content without CMI.

Further, as explained above, OpenAI also distributed Ziff Davis copyrighted works devoid of CMI as part of the WebText training dataset that it made publicly available on GitHub. *See* FAC ¶¶ 64, 130, 140, 140 n.66, 179–184, Ex. D. By making the data available under such a license to the public on GitHub—"distribution" in plain meaning—OpenAI knowingly transferred and disseminated copies of CMI-less content—constituting "distribution" within the meaning of 17 U.S.C. 1202(3)(b). OpenAI does not address these allegations in its Motion.

In short, Ziff Davis more than adequately pleads facts that plausibly support the "distribution" element of a Section 1202(b)(3) claim.

> *b. Ziff Davis Has Adequately Alleged Distribution of Complete Works.*

There is also no serious dispute that Ziff Davis alleges distribution of "complete works" stripped of their CMI. OpenAI also argues that Ziff Davis "has not sufficiently alleged distribution of complete 'works' or 'copies of [them]' from which CMI 'has been removed or altered.'" Mot. at 20 (citing 17 U.S.C. § 1202(b)(3)). OpenAI cites to this Court's News MTD Order, which held, *inter alia*, that output regurgitations in the respective underlying complaints were only excerpts from articles. Mot. at 19 (citing News MTD Order at 28–29 (citing *Fischer v. Forrest*, 286 F. Supp.

3d 590, 609 (S.D.N.Y. 2018))). Instead, OpenAI contends that "many" of Ziff Davis's "alleged regurgitations are just excerpts of the articles in question" (Mot. at 20), thereby implicitly conceding that there are at least some examples where "the underlying work has been substantially or entirely reproduced." News MTD Order at 28 (citing *Fischer*, 286 F. Supp. 3d at 609). In particular, the examples found in Exhibit E at pages 1–3 show regurgitation of entire articles, with only their title, author, and publication date (that is, CMI) omitted. OpenAI does not contend otherwise. And the WebText data—examples of which are in Exhibit D and throughout the FAC— contains *only* whole Ziff Davis articles devoid of CMI.

At the pleading stage, these examples amply demonstrate that OpenAI knowingly reproduced and reproduces Ziff Davis content in its entirety, but with its CMI stripped out.

### c. OpenAI's Remaining Arguments Are Without Merit.

Apart from its challenges to the claim elements, OpenAI also suggests that the Court should reject Ziff Davis's claim supposedly because it is "far afield . . . from the factual circumstance Section 1202(b)(3) was designed to address." Mot. at 18. But nothing in the letter or spirit of Section 1202(b)(3), or in the case law cited by OpenAI, suggests that the statute is limited to circumstances where the defendant has "intentionally removed the 'gutter credit' on a photograph." *Id.* Further, even if a user knows the URL, that does not necessarily mean that the user has actually reviewed the original content or will take the time to do so after viewing CMI- less output from OpenAI. Indeed, Ziff Davis alleges in this case that the outputs from OpenAI products are substitutive, meaning a user who receives a CMI-less version of an article may *never* visit the underlying web pages bearing CMI. *See* FAC ¶¶ 8, 194, 237. Even as to the limited examples discussed by OpenAI, OpenAI cites no authority suggesting that a defendant has

immunity for knowingly distributing works with their CMI removed, just because a user may be able to access the work directly.

Section 1202 was designed to "ensure the integrity of the electronic marketplace by preventing fraud and misinformation" and "to protect consumers from misinformation as well as authors and copyright owners from interference with the private licensing process." H.R. Rep. No. 105-551, at 10–11 (1998). And as this Court has noted, the DMCA was, broadly, enacted to combat piracy. News MTD Order at 28. Outputs from OpenAI's products that do not contain CMI contribute to market fraud and misinformation, especially where they act as substitutes for the original works.

Equally misplaced is OpenAI's accusation that Ziff Davis used "engineered" prompts to generate the outputs—a hollow argument it has raised repeatedly in the MDL cases. *See* OpenAI Memorandum in Support of Motion to Dismiss, Dkt. 52 at 2, *New York Times Co. v. Microsoft et al.*, No. 23 Civ. 11195 (S.D.N.Y. Feb. 26, 2024). There are a vast number of different prompts users can input, and their scopes will not be known until OpenAI provides output logs for review in this case. Further, user prompts are not always spontaneous, and users routinely share prompting strategies online. OpenAI itself recognizes "prompt engineering" as an important method for producing desired outcomes. *See* "Prompt engineering," *OpenAI API Platform*, https://platform.openai.com/docs/guides/prompt-engineering (last visited on Aug. 27, 2025). The fact that Ziff Davis has provided multiple examples of a prompt producing CMI-less output is sufficient to demonstrate, as a matter of pleading, that this behavior occurs. *See*, *e.g., Roberts v. BroadwayHD LLC*, 518 F. Supp. 3d 719 (S.D.N.Y. 2021) (applying *Iqbal/Twombly* standard to find allegations of individual knowledge, control, and financial benefit from activities sufficient to support reasonable inference of liability for infringement).

More fundamentally, contrary to OpenAI's suggestion, Ziff Davis's claim is not limited to instances where the user "possesses a URL to the source website" (Mot. at 18) or to the instances of all alleged "engineered prompts." Again, Ziff Davis is not required to prove its claim at the pleading stage, much less without the benefit of discovery. At the pleading stage, Ziff Davis is only required to set forth facts that plausibly state the elements of a claim. It has done so here, and OpenAI's motion should be denied.

### D.  Ziff Davis Has Adequately Alleged That Its Famous Marks are Famous for Its Trademark Dilution Claim.

As the Court previously confirmed, "a complaint plausibly alleges that a trademark is famous when the allegations include attributes of the mark such as 'nationwide recognition and respect; [continuous] and pervasive use of the mark; [substantial investments] in promoting and advertising the mark throughout the United States and internationally; [significant publicity] relating to the marks; and that 'products bearing the [plaintiff's] marks are sold throughout the United States.'" News MTD Order at 36 (collecting cases). As OpenAI notes, the Court previously concluded that this bar was met by relying on allegations "that [] each of their publications has been in circulation for more than 100 years;" that "millions of consumers access the trademark dilution plaintiffs' publications in print and digital format, which are circulated under the Diluted Trademarks;" and that "their publications have received widespread recognition for their achievements including numerous Pulitzer Prizes, which constitute the most prestigious and highly publicized national journalism award." Mot. at 21.

Ziff Davis clears these hurdles with respect to its Famous Marks. *See* FAC ¶¶ 35–52, 55–56: Ziff Davis has published news and media content under the Ziff Davis Mark for nearly one hundred years, and its other Famous Marks have each persisted for two to four decades, thriving as major websites for most of the history of the world wide web (launched in 1990), and in the

case of the PCMAG Mark preceding it in PCMag's magazine form. *Id.* ¶¶ 32, 56. Millions of customers access Ziff Davis's websites, which are made available under the Famous Marks. *See id.* ¶¶ 33, 44, 56. Ziff Davis's publications circulated under the Famous Marks have received widespread recognition and numerous prizes. *See id.* ¶ 37. It has substantially invested in promoting and advertising its publications under the Famous Marks throughout the United States and internationally. *Id.* ¶¶ 47–50. Publications bearing the Famous Marks receive more inbound traffic than any of its key peers, including *The New York Times*. *See* FAC ¶ 44.

OpenAI's assertion that Ziff Davis has failed to allege recognition of its marks, as opposed to its brands, is also meritless. Mot. at 22. For each of Ziff Davis's publications, the mark, the brand, and the publication name are identical and inseparable. For instance, Mashable.com publishes and is widely recognized under the MASHABLE Mark; Lifehacker.com publishes and is widely recognized under the LIFEHACKER Mark, and so forth for all of Ziff Davis's Famous Marks. *See* FAC ¶ 56. The deficiency in *Luv N' Care, Ltd. v. Regent Baby Prods. Corp.*, 841 F. Supp. 2d 753, 757 (S.D.N.Y. 2012), as cited by OpenAI (Mot. at 22), was that the plaintiffs there alleged only that the products sold under their marks were well-known, without alleging that the marks themselves had achieved such fame. *Id.* That is not the case here. Ziff Davis's "product" is the publication itself, and the public knows, refers to, and recognizes each publication by its corresponding Famous Mark. And for each of these Famous Marks, Ziff Davis alleges facts regarding revenue, consumer reach and awards. FAC ¶ 56.

Finally, with respect to OpenAI's argument that Ziff Davis's brands have only "niche" fame, that is demonstrably untrue. Although *IGN* is, in fact, "one of the world's leading games and entertainment media brands" (Mot. at 24), and *Mashable* is indeed "a leading source for technology worldwide" (*id.*)*,* that does not strip them of ***also*** having general public recognition.

*See, e.g., Advance Mag. Publishers Inc. v. Vogue Int'l,* 123 F. Supp. 2d 790, 799 (D.N.J. 2000) ("'Vogue' as applied to fashion" is "as a matter of law [both] distinctive and famous"). *Mashable* has 12.9 million monthly unique visitors and 22.7 million followers across social media platforms. FAC ¶ 56. *IGN* reaches more than 360 million monthly users across 110 countries, 20 languages and 37 platforms. *Id.* These marks are universally known and recognized for their premier and trustworthy content and are far cry from the "[niche] fame limited to a particular channel of trade, segment of industry or service, or geographic region" described in the cases cited by OpenAI. *Luv N' Care*, 841 F. Supp. 2d at 758. That OpenAI may disagree with Ziff Davis's well-pleaded allegations is not a basis for dismissing a claim.

**E.  <u>Ziff Davis Properly States Contributory Infringement and 1202(b)(1) Claims</u>.**

While in its initial brief OpenAI stated that it would "not relitigate these claims" (*see* OpenAI Memorandum in Support of Motion to Dismiss, Dkt. 53 at 23, *Ziff Davis, Inc. v. OpenAI, Inc.,* No. 25 Civ. 04315 (S.D.N.Y June 10 2025)), it now makes a cursory attempt to reiterate unsuccessful arguments solely to "preserve its position on these legal issues in this litigation." Mot. at 25.

OpenAI summarily contends that (1) the contributory infringement claim should fail because Ziff Davis does not allege that OpenAI had "specific knowledge" of infringing outputs; and the 1202(b)(1) claim should fail (2) for lack of standing and (3) because Ziff Davis does not allege facts showing the removal of CMI from the allegedly infringed work. Mot. at 25. There is no basis for dismissal on any of these grounds. Each cursory argument has already been rejected by this Court. *See* News MTD Order at 15–19.

First, "knowledge of specific infringements is not required to support a finding of contributory infringement," and by alleging "widely publicized" instances "of copyright

infringement" and including "numerous examples of infringing outputs in their complaints," the Court found that other News Plaintiffs plausibly alleged end-user infringement. News MTD Order at 15 (citation omitted). Here, there is no question that OpenAI has knowledge of its infringing outputs—and has even made technical changes to its systems in response to legal claims relating to such outputs—and that Ziff Davis has adequately alleged such knowledge. *See* FAC ¶¶ 159, 160 & n.74, 161, 162, 166, 167. Even with those guardrails in place, Ziff Davis has identified and included numerous examples of infringing outputs in its FAC. *See id.* ¶¶ 167–68; Ex. E. These allegations are plainly "sufficient at the pleading stage to establish a plausible inference that defendants possessed actual or constructive knowledge of third-party infringement." News MTD Order at 17.

Second, this Court previously determined that by alleging that OpenAI's intentional removal of CMI from works "conceals and facilitates copyright infringement," similarly situated plaintiffs had alleged facts sufficient for both Article III and statutory standing. News MTD Order at 24. These harms bear a "close relationship" to traditional copyright infringement "sufficient to satisfy the injury-in-fact requirement of Article III[.]" Moreover, "their alleged harms are fairly traceable to defendants' conduct; and they have alleged that they are "person[s] injured by" defendants' violation of section 1202(b), as required by section 1203(a)." *Id.* Here, Ziff Davis has made similar factual allegations that overwhelmingly support standing. FAC ¶¶ 178–92, 248–56.

Lastly, OpenAI argues that Ziff Davis does not "allege facts showing that the alleged CMI removal could 'induce, enable, facilitate, or conceal an infringement' of copyright," or that OpenAI would have "reasonable grounds to know" this would occur. Mot. at 25. Yet Ziff Davis has pleaded specific facts showing that OpenAI deliberately removed CMI, that this removal could conceal its own infringement and facilitate infringement by others, and that it knew or had reason

to know of the same. *See*, *e.g.*, FAC ¶¶ 178–91 (detailing OpenAI's deliberate use of software tools such as Dragnet and Newspaper to "copy Ziff Davis Works [when] creating the WebText dataset, removing such CMI and extracting only the text content of websites"); *id.* ¶¶ 179, 180, n.86 (citing specific discussions by OpenAI of its deliberate use of such tools to remove CMI); *id.* ¶ 184 (providing visual examples of verbatim copies of Ziff Davis Works devoid of CMI in only the small sample of WebText that OpenAI made public); *id.* ¶¶ 9, 160 (alleging OpenAI's knowledge that its LLMs generate copies of content, including Ziff Davis Works); *id.* ¶ 161, 171– 72 (alleging knowledge of inducement based on output monitoring and changes to product design based thereon); *id.* ¶ 173 (alleging knowledge of inducement because OpenAI indemnifies end users accused of infringement). This Court has already concluded that such allegations are sufficient to state a claim for relief and should do so here. *See* News MTD Order at 24–27.

## IV.    <u>CONCLUSION</u>

As OpenAI states in its motion, several Ziff Davis's claims are novel to this MDL (Mot. at 1), and others are pleaded differently than other MDL plaintiffs' similar claims. Although OpenAI would like to exclude those claims to streamline its defense, it sought to consolidate multiple cases into a single MDL and must live with the consequences. Ziff Davis's claims are supported by existing law and by the facts alleged in the FAC. OpenAI's motion should be denied in its entirety.

DATED: August 27th, 2025

Respectfully submitted,

  /s/ Lacy H. Koonce, III

Lacy H. ("Lance") Koonce, III
Matthew A. Leish
Gili Karev
Mariella Salazar
Clara Cassan
**KLARIS LAW PLLC**
161 Water Street
New York, NY 10038
Telephone: (646) 779-4882
lance.koonce@klaris.com
matthew.leish@klarislaw.com
gili.karev@klarislaw.com
mariella.salazar@klarislaw.com
clara.cassan@klarislaw.com

Guy Ruttenberg
Ruttenberg IP Law, A Professional
Corporation
1801 Century Park East
Suite 1920
Los Angeles, CA 90067
Telephone: (310) 627-2270
ZD-AICopyright@ruttenbergiplaw.com

***Attorneys for Plaintiffs Ziff Davis,
Inc., Ziff Davis, LLC, IGN
Entertainment, Inc., Everyday Health
Media, LLC, Mashable, Inc., and
CNET Media, Inc.***

To:

**LATHAM & WATKINS LLP**
Andrew M. Gass (pro hac vice)
andrew.gass@lw.com
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Telephone: 415.391.0600

Sarang V. Damle
sy.damle@lw.com
Elana Nightingale Dawson (pro hac vice)
elana.nightingaledawson@lw.com
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Telephone: 202.637.2200

Rachel R. Blitzer
rachel.blitzer@lw.com
Herman H. Yue
herman.yue@lw.com
Luke A. Budiardjo
luke.budiardjo@lw.com
1271 Avenue of the Americas
New York, NY 10020
Telephone: 212.906.1200

Allison S. Blanco (pro hac vice)
allison.blanco@lw.com
650 Town Center Drive 20th Floor
Costa Mesa, CA 92626
Telephone: 714.540.1235
Attorneys for OpenAI

MORRISON & FOERSTER LLP
Joseph C. Gratz (pro hac vice)*
jgratz@mofo.com
425 Market Street
San Francisco, CA 94105
Telephone: 415.268.7000

Rose S. Lee (pro hac vice)
roselee@mofo.com
707 Wilshire Boulevard, Suite 6000
Los Angeles, CA 90017
Telephone: 213.892.5200

Carolyn M. Homer (pro hac vice)
cmhomer@mofo.com
2100 L Street, NW, Suite 900
Washington, DC 20037
Telephone: 202.650.4597

Jocelyn E. Greer
jgreer@mofo.com
Emily C. Wood
ewood@mofo.com
Eric K. Nikolaides
enikolaides@mofo.com
250 West 55th Street
New York, NY 10019
Telephone: 212.468.8000

KEKER, VAN NEST & PETERS LLP
Robert A. Van Nest (pro hac vice)
rvannest@keker.com
Paven Malhotra
pmalhotra@keker.com
Michelle S. Ybarra (pro hac vice)
mybarra@keker.com
Nicholas S. Goldberg (pro hac vice)
ngoldberg@keker.com
Thomas E. Gorman (pro hac vice)
tgorman@keker.com
Katie Lynn Joyce (pro hac vice)
kjoyce@keker.com
Sarah Salomon (pro hac vice)
ssalomon@keker.com
R. James Slaughter (pro hac vice)*
rslaughter@keker.com
Christopher S. Sun (pro hac vice)
csun@keker.com
Andrew F. Dawson (pro hac vice)
adawson@keker.com
Andrew S. Bruns (pro hac vice)
abruns@keker.com
Edward A. Bayley (pro hac vice)
ebayley@keker.com
Ryan K. Wong (pro hac vice)
rwong@keker.com
Spencer McManus (pro hac vice pending)
smcmanus@keker.com
Olivia C. Malone (pro hac vice pending)

29

omalone@keker.com
Bilal A. Malik (pro hac vice pending)
bmalik@keker.com
633 Battery St.
San Francisco, CA 94111
Telephone: 415.391.5400

*Attorneys for Defendants OpenAI, Inc.,*
*OpenAI LP, OpenAI GP, LLC, OpenAI, LLC,*
*OpenAI Opco LLC, OpenAI Global LLC,*
*OpenAI Corporation, LLC, and OpenAI Holdings, LLC*