**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE:<br><br>OPENAI, INC.,<br>COPYRIGHT INFRINGEMENT LITIGATION<br><br>This Document Relates To:<br><br>ZIFF DAVIS, INC. et al v. OPENAI, INC. et al.,<br>No. 1:25-cv-04315 | 25-md-03143 (SHS) (OTW)<br><br>**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF OPENAI DEFENDANTS' MOTION TO DISMISS**<br><br>ORAL ARGUMENT REQUESTED |

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ..................................................................................................................1

II. ARGUMENT .........................................................................................................................2

    A. Ziff Davis's Section 1201(a)(1) Claim Should Be Dismissed................................2

    B. Ziff Davis's Unjust Enrichment Claim Is Preempted ..............................................6

    C. Ziff Davis Has Not Stated a Section 1202(b)(3) Claim...........................................8

    D. Ziff Davis Does Not Allege Fame for its Trademark Claim .................................10

    E. Counts 3 and 6 Are Flawed....................................................................................11

III. CONCLUSION....................................................................................................................11

## TABLE OF AUTHORITIES

Page(s)

### CASES

*Agfa Monotype Corp. v. Adobe Systems, Inc.*,
 404 F. Supp. 2d 1030 (N.D. Ill. 2005) ............................................................................................3

*Altera Corp. v. Clear Logic, Inc.*,
 424 F.3d 1079 (9th Cir. 2005) .........................................................................................................7

*Andersen v. Stability AI Ltd.*,
 700 F. Supp 3d. 853 (N.D. Cal. 2023) .............................................................................................9

*Ardis Health, LLC v. Nankivell*,
 No. 11-cv-5013, 2012 WL 5290326 (S.D.N.Y. Oct. 23, 2012) .......................................................7

*Associated Press v. Meltwater U.S. Holdings, Inc.*,
 931 F. Supp. 2d 537 (S.D.N.Y. 2013) ..............................................................................................5

*Couponcabin LLC v. Savings.com, Inc.*,
 No. 2:14-cv-39, 2016 WL 3181826 (N.D. Ind. June 8, 2016) .....................................................2, 3

*DHI Group, Inc. v. Kent*,
 No. 16-cv-1670, 2017 WL 4837730 (S.D. Tex. Oct. 26, 2017) ..................................................4, 5

*Dish Network L.L.C. v. World Cable Inc.*,
 893 F. Supp. 2d 452 (E.D.N.Y. 2012) .............................................................................................6

*Doe 1 v. GitHub, Inc.*,
 No. 22-cv-06823-JST, 2024 WL 235217 (N.D. Cal. Jan. 22, 2024) ...............................................7

*E.A. Sween Co., Inc. v. A&M Deli Express Inc.*,
 787 F. App'x 780 (2d Cir. 2019) ..............................................................................................10, 11

*Einiger v. Citigroup, Inc.*,
 No. 14-cv-4570, 2014 WL 4494139 (S.D.N.Y. Sept. 12, 2014) .....................................................7

*Field v. Google*,
 412 F. Supp. 2d 1106 (D. Nev. 2006) ..............................................................................................5

*Green v. United States Dep't of Just.*,
 111 F.4th 81 (D.C. Cir. 2024) ..........................................................................................................1

*Healthcare Advocates, Inc. v. Harding Earley, Follmer & Frailey*,
 497 F. Supp. 2d 627 (E.D. Pa. 2007) ......................................................................................1, 4, 6

*Hines v. Chappel Music Corp.*,
   No. 20-cv-3535, 2022 WL 3646206 (S.D.N.Y. Aug. 23, 2022)..............................................8

*In re Jackson*,
   972 F.3d 25 (2d Cir. 2020)....................................................................................................6

*Kelly v. Arriba Soft Corp.*,
   77 F. Supp. 2d 1116 (C.D. Cal. 1999) ..................................................................................8

*Kodadek v. MTV Networks, Inc.*,
   152 F. 3d 1209 (9th Cir. 1998) .............................................................................................6

*Lexmark International, Inc. v. Static Control Components, Inc.*,
   387 F.3d 522 (6th Cir. 2004) ................................................................................................3

*LivePerson, Inc. v. 24/7 Customer, Inc.*,
   83 F. Supp. 3d 501 (S.D.N.Y. 2015).....................................................................................1

*Luv N' Care, Ltd. v. Regent Baby Prods. Corp.*,
   841 F. Supp. 2d 753 (S.D.N.Y. 2012).................................................................................10

*Moser Pilon Nelson Architects, LLC v. HNTB Corp.*,
   No. 05-cv-422, 2006 WL 2331013 (D. Conn. Aug. 8, 2006).......................................................8

*National Car Rental System, Inc. v. Computer Assoc. Intern., Inc.*,
   991 F.2d 426 (8th Cir. 1993) ................................................................................................7

*The New York Times v. Microsoft, No. 1:23-cv-11195*
   (S.D.N.Y. Apr. 4, 2025).......................................................................................................9

*Thomson Reuters Enter. Centre GmbH v. Ross Intelligence Inc.*,
   694 F. Supp. 3d 467 (D. Del. 2023)......................................................................................7

*Walker Wear LLC v. Off-White LLC*,
   624 F. Supp. 3d 424 (S.D.N.Y. 2022).................................................................................10

**STATUTES**

15 U.S.C § 1125(c)(2)....................................................................................................................2

15 U.S.C § 1125(c)(2)(A) ............................................................................................................10

17 U.S.C. § 507(b) .......................................................................................................................10

17 U.S.C. § 1201................................................................................................................. *passim*

17 U.S.C. § 1201(a) .......................................................................................................................1

17 U.S.C. § 1201(a)(3)(A) ....................................................................................................1, 2, 5

17 U.S.C. § 1202(b)(1) ..................................................................................................2, 11

17 § 1202(b)(3) ..........................................................................................................2, 8, 9

## OTHER AUTHORITIES

GPT-2 Output Dataset, GitHub, https://github.com/openai/gpt-2-output-
    dataset/commits/master/ ...........................................................................................9

Tiernan Ray, *OpenAI Has An Inane Text Bot, and I Still Have a Writing Job*, ZD
    Net (May 8, 2019), https://www.zdnet.com/article/openai-has-an-inane-text-
    bot-and-i-still-have-a-writing-job/ .........................................................................10

I.  INTRODUCTION

Ziff Davis's opposition confirms what is clear from the Amended Complaint—it pleads several claims foreclosed by law.

Most notably, Ziff Davis asserts a Section 1201 claim based on conduct Section 1201 does not prohibit.  Section 1201 applies when (a) there is a "technological measure that effectively controls access to a copyrighted work," and (b) the defendant takes an affirmative act to circumvent that measure.  17 U.S.C. § 1201(a); *LivePerson, Inc. v. 24/7 Customer, Inc.*, 83 F. Supp. 3d 501, 509 (S.D.N.Y. 2015).  "Technological measures" include, for instance, "password protection, DVD encryption, and activation and validation keys." *Id.* at 510.  Section 1201 is intended to protect against "circumvent[ing] [such] digital locks." *Green v. United States Dep't of Just.*, 111 F.4th 81, 99 (D.C. Cir. 2024).

No matter how Ziff Davis tries to spin it, a robots.txt file is not akin to password protection or encryption, for the simple reason that robots.txt does not prevent access to any part of a Ziff Davis website.  Ziff Davis admits as much by alleging that OpenAI "continued" to scrape its website after Ziff Davis allegedly implemented a contrary robots.txt preference, which OpenAI allegedly "ignored."  First Amended Complaint ("FAC"), ECF 105 ¶ 121.  OpenAI disputes those allegations.  Nevertheless, accepting them as true, they are fatal to Ziff Davis's claim: if robots.txt were a Section 1201-qualifying measure that "effectively control[led] access," OpenAI could not have simply "ignore[d]" it, *see id.*; it would have had to perform some affirmative act to "circumvent" it, *see* 17 U.S.C. § 1201(a)(3)(A).  Ziff Davis's own cited authority confirms that circumvention requires "*affirmatively* perform[ing] an action that *disables or voids* the measure." *Healthcare Advocates, Inc. v. Harding Earley, Follmer & Frailey*, 497 F. Supp. 2d 627, 644 (E.D. Pa. 2007) (emphasis added).  OpenAI's first motion to dismiss pointed out this flaw in Ziff Davis's

1

claim. *See* ECF 53 at 11–12. In response, Ziff Davis still fails to allege any affirmative act of circumvention.

As to its unjust enrichment claim, Ziff Davis asks this Court to part ways with *every* other court to have considered the same claim in comparable circumstances. Those courts all concluded that, when the claim is based on the same conduct as a copyright infringement claim, it is preempted. Ziff Davis cannot avoid that outcome here.

Ziff Davis's defenses of its other claims are equally flawed. The Section 1202(b)(3) claim fails because Ziff Davis has not alleged that unlawful "distribution" of CMI-less Ziff Davis articles occurred. The federal trademark claim fails because Ziff Davis has not alleged that the marks are "widely recognized by the general consuming public." 15 U.S.C. § 1125(c)(2). And the contributory infringement and Section 1202(b)(1) claims fail for the reasons OpenAI explained in its motion and prior briefing. Each of these claims should be dismissed.

## II.   ARGUMENT

### A.   Ziff Davis's Section 1201(a)(1) Claim Should Be Dismissed

OpenAI's motion presents two questions that are properly decided on a motion to dismiss:[1] whether Ziff Davis's allegations, accepted as true, establish that (1) robots.txt files are "an access control measure," and (2) "OpenAI actually 'circumvented' such measure by ignoring the Blocking Instructions." *See* ECF 163 ("Opp.") 9. They do not.

***Access Control Measures.*** A "technological measure" under Section 1201 must "effectively control[] access to a work." 17 U.S.C. § 1201(a)(3)(A). The Amended Complaint's allegations make clear, however, that the robots.txt file at issue did not "control access." Rather,

---

[1] Courts regularly decide exactly what is at issue here—whether the factual allegations, when accepted as true, give rise to a claim under the statute at issue. ECF 141 ("Mot.") 13–14 (collecting cases); *see also, e.g.*, *Couponcabin LLC v. Savings.com, Inc.*, No. 2:14-cv-39, 2016 WL 3181826 (N.D. Ind. June 8, 2016).

it allegedly provided "instructions" and "directives," Opp. 5; FAC ¶ 117, leaving Ziff Davis's websites just as accessible *after* it allegedly implemented robots.txt as *before*. FAC ¶ 121. That factual allegation is fatal to this claim. *See, e.g.*, *Couponcabin*, 2016 WL 3181826, at *6 (dismissing Section 1201 claim because the technological measures did not control access when "website remain[ed] accessible").

Resisting that result, Ziff Davis argues that Section 1201 adopts a "*purpose*-based test," so any measure with the "purpose" of "controlling access" to a work—even mere instructions like robots.txt—qualifies. Opp. 5. Not so. The statute is agnostic as to a measure's "*purpose.*" What the statute addresses is what a measure *does*. *See* Mot. at 7–13. That is why measures requiring application of "information" (*e.g.*, a password) or some "process or [] treatment" (*e.g.*, decryption) to "gain access to the work" qualify under Section 1201. *Id.*; § 1201(a)(3)(B). Measures that merely convey preferences *without* rendering the work inaccessible do not. *See, e.g.*, *Agfa Monotype Corp. v. Adobe Systems, Inc.*, 404 F. Supp. 2d 1030, 1036 (N.D. Ill. 2005) (machine-readable "bits" that "passive[ly]" communicate "preferences" do not qualify).

This is precisely the distinction the Sixth Circuit made in *Lexmark International, Inc. v. Static Control Components, Inc.*, 387 F.3d 522 (6th Cir. 2004). In that case, the Sixth Circuit rejected a Section 1201 claim based on an "authentication sequence" that controlled whether a printer would run, but did not prevent anyone from accessing the printer's copyrighted computer program. *Id.* at 546–57. As OpenAI pointed out in its motion, the court reasoned: "Just as one would not say that a lock on the back door of a house 'controls access' to a house whose front door does not contain a lock and just as one would not say that a lock on any door of a house 'controls access' to the house after its purchaser receives the key to the lock, it does not make sense to say that this provision of the DMCA applies to otherwise-readily-accessible copyrighted works." *Id.*

3

Ziff Davis has no answer for *Lexmark*, but nevertheless urges this Court to issue a ruling contrary to the leading authority on this issue. This Court should decline that invitation.

Equally unavailing is Ziff Davis's reliance on *Harding, supra*, and *DHI Group, Inc. v. Kent*, No. 16-cv-1670, 2017 WL 4837730 (S.D. Tex. Oct. 26, 2017). Opp. 5–6. Both cases, unlike this one, involved measures *in addition to* robots.txt. In *Harding*, the defendant retrieved archived screenshots of plaintiff's website from the Wayback Machine, which stored them on its servers for public access. 497 F. Supp. 2d at 630–31. The Wayback Machine implemented a "block[]" that denied "public access" to archived content when the website's owners employed robots.txt. *Id.* at 631. The plaintiff alleged that the defendant accessed blocked content by "manipulat[ing] the Wayback Machine." *Id.* at 630.

The court found that, in the specific context presented, the *combination* of the plaintiff's robots.txt files *and* the Wayback Machine's blocking systems constituted a qualifying technological protection measure. *See id.* at 643. But the court emphasized that "the robots.txt protocol … *by itself* is *not* analogous to digital password protection or encryption." *Id.* (emphasis added). It thus warned that its "finding should *not* be interpreted as a finding that a robots.txt file universally qualifies as a technological measure that controls access to copyrighted works under the DMCA." *Id.* Ziff Davis ignores that warning and asks this Court to do the same. The Court should decline Ziff Davis's request that it disregard the key distinction between *Harding* and this case—the presence of an additional "block" in *Harding* did control access in the ordinary course. There is no additional "block" alleged here.

*DHI* in turn, involved allegations that the defendant circumvented a "robot.txt file, monitoring software, and firewall software"—allegations the court found stated a Section 1201 claim. 2017 WL 4837730, at *5. Although the court there included a footnote about the

4

plausibility of robots.txt files serving as technological protective measures given the allegations in that case, its discussion was based on *Harding* which, as explained above, involved more than just robots.txt instructions, like those at issue here. *Id.* at *5 & n.1.[2]

Ziff Davis falls back on a strawman argument, saying that "OpenAI's principal argument" is that robots.txt are insufficient because "they are too easily ignored and circumvented." Opp. 6. That is not OpenAI's argument. The parties agree that a technological measure's effectiveness does *not* turn on how difficult it is to bypass. Opp. 7. The question is whether a measure "effectively controls" access. The Amended Complaint makes clear the robots.txt instructions at issue did not "effectively control" access.

***Circumvention.***  Ziff Davis concedes that it must allege that OpenAI "perform[ed] an action that disables or voids the measure" at issue. But Ziff Davis has not alleged any such affirmative act. *See* Mot. 13–14. Ziff Davis argues—without citing a single case—that it satisfied the affirmative act requirement by alleging that OpenAI's web crawler *did not* take the additional step of "checking and following" Ziff Davis's robots.txt "disallow directives." Opp. 9. That allegation is false. But even accepting it as true, all that establishes is a *failure* to heed an instruction, not an *affirmative act of circumvention.*

Failing to take a step does not qualify as "circumvention," which the statute defines with active verbs. *See* 17 U.S.C. § 1201(a)(3)(A) ("to descramble," "to decrypt," "or otherwise to avoid, bypass, remove, deactivate, or impair a technological measure"). Courts routinely dismiss Section 1201 claims when, as here, they lack allegations of some "affirmative[]" step to circumvent an actual technological block. *See, e.g.*, *Dish Network L.L.C. v. World Cable Inc.*, 893 F. Supp.

---

[2] Ziff Davis cites *Associated Press v. Meltwater U.S. Holdings, Inc.*, 931 F. Supp. 2d 537, 563 (S.D.N.Y. 2013), and *Field v. Google*, 412 F. Supp. 2d 1106 (D. Nev. 2006), to argue that other courts "confirm" robots.txt files "are industry standard for controlling access to web content." But neither case addressed Section 1201.

5

2d 452, 465 (E.D.N.Y. 2012) (dismissing Section 1201 claim where "the room was already unlocked, and therefore the Defendants did not have to 'break in' to gain access to the copyrighted work"). Indeed, the very case on which Ziff Davis extensively relies confirms as much. *See Harding*, 497 F. Supp. 2d at 644 (Section 1201's text "impl[ies] that a person circumvents a technological measure only when he a*ffirmatively performs* an action that disables or voids the measure that was installed to prevent them from accessing the copyrighted material") (emphasis added); *see also id.* ("lack of permission is not circumvention under the DMCA").

### B. Ziff Davis's Unjust Enrichment Claim Is Preempted

Ziff Davis's sole argument against preemption is that its claim is about the "extra-copyright *use* of information about [its articles]" and therefore not about a right under the Copyright Act. Opp. 12, 14. What Ziff Davis ignores is that its copyright infringement claim and its unjust enrichment claim are based on the exact same conduct—OpenAI's alleged use of Plaintiffs' copyrighted works in LLM training. *See* FAC ¶ 210 ("Through the storage, processing, and reproduction of [articles] … to train its LLMs … OpenAI has directly infringed upon Plaintiffs' exclusive rights [under copyright]."); ¶ 233 (alleging unjust enrichment based on allegation that "OpenAI's LLMs are trained by using encoded versions of source materials, including Plaintiffs' Registered Works"). Where, as here, a state-law claim is based on the same conduct that underlies a copyright infringement claim, the state-law claim is preempted. *See, e.g.*, *Kodadek v. MTV Networks, Inc.*, 152 F. 3d 1209, 1212–13 (9th Cir. 1998).

Ziff Davis cannot escape preemption by asserting that, notwithstanding the allegations in the Amended Complaint, its unjust enrichment claim targets "extra-copyright *use*" of its works rather than their "reproduction." Opp. 14. What matters is the "nature" of the asserted state-law claim, not what is said in an opposition brief. *See In re Jackson*, 972 F.3d 25, 53 (2d Cir. 2020). For this reason, "[c]ourts have generally concluded that the theory of unjust enrichment protects

6

rights that are essentially 'equivalent' to rights protected by the Copyright Act; thus, unjust enrichment claims related to the *use* of copyrighted material are generally preempted." *Ardis Health, LLC v. Nankivell*, No. 11-cv-5013, 2012 WL 5290326, at *10 (S.D.N.Y. Oct. 23, 2012); *see, e.g.*, *Einiger v. Citigroup, Inc.*, No. 14-cv-4570, 2014 WL 4494139, at *7 (S.D.N.Y. Sept. 12, 2014). Contrary to Ziff Davis's suggestion, Opp. 14–15, multiple generative AI plaintiffs have attempted the same preemption-dodge at the pleading stage and have failed. *See* Mot. 16 (collecting cases).

The cases Ziff Davis relies on to argue otherwise are inapposite because they involved claims that, unlike those here, were based on acts distinct from those that could support a copyright claim. *National Car Rental System, Inc. v. Computer Assoc. Intern., Inc.*, for example, involved a software licensee's "processing of data for third parties," which violated a contractual obligation—a prohibition on such processing—that "[n]one of the exclusive copyright rights grant … of their own force." 991 F.2d 426, 428, 432–33 (8th Cir. 1993). Ziff Davis's other cases are of a piece, addressing conduct outside the scope of the Copyright Act's protections. *See Altera Corp. v. Clear Logic, Inc.*, 424 F.3d 1079 (9th Cir. 2005) (tortious interference claim alleging that defendant induced plaintiffs' customers to use software in violation of licenses to create replacement microchips); *Thomson Reuters Enter. Centre GmbH v. Ross Intelligence Inc.*, 694 F. Supp. 3d 467, 487–488 (D. Del. 2023) (tortious interference claim alleging that defendant induced third-party to breach "anti-bot and password-sharing [contract] provisions").[3]

Ziff Davis also asks this Court to allow it to plead unjust enrichment "in the alternative." Opp. 14. But "[a] plaintiff may not overcome the preemptive scope of the Copyright Act merely

---

[3] Indeed, *Altera* did not even involve a claim for copyright infringement. *See Altera*, 424 F.3d at 1081; *see also Doe 1 v. GitHub, Inc.*, No. 22-cv-06823-JST, 2024 WL 235217, at *7 (N.D. Cal. Jan. 22, 2024) (distinguishing *Altera* and explaining why it did not save the plaintiffs' unjust enrichment claim from preemption).

7

by arguing that an unjust enrichment claim can be pleaded in the alternative." *Hines v. Chappel Music Corp.*, No. 20-cv-3535, 2022 WL 3646206, at *4 (S.D.N.Y. Aug. 23, 2022) (collecting cases). The Court should reject Ziff Davis's request that it depart from well-established law.

Finally, notwithstanding Ziff Davis's contention to the contrary, a finding of preemption is not premature. Opp. 15. "[C]ourts routinely grant motions to dismiss state-law claims on the basis of [copyright] preemption." *Moser Pilon Nelson Architects, LLC v. HNTB Corp.*, No. 05-cv-422, 2006 WL 2331013, at *11 (D. Conn. Aug. 8, 2006) (collecting cases). This Court should do the same.

C.  **Ziff Davis Has Not Stated a Section 1202(b)(3) Claim**

Ziff Davis's Section 1202(b)(3) claim should also be dismissed. Ziff Davis has not plausibly alleged that the absence of CMI on a ChatGPT output has ever "concealed" or will ever "conceal" that Ziff Davis is the source of the output's content, as is necessary to state a claim. Mot. 18. Rather, Ziff Davis's own exhibit shows that, to obtain an allegedly infringing output, ChatGPT needed to be given a prompt that *included* the URL of the work at issue. *See* FAC, Ex. E at 7, 9–16. In other words, the alleged distributions at issue in the Amended Complaint only occur, if at all, when the person using ChatGPT *already possesses* the article's URL, which means the absence of CMI could not "conceal" the source of the text. Mot.18. And nothing Ziff Davis says is to the contrary. *See* Opp. 20–21. The claim should be dismissed for that reason alone. *Kelly v. Arriba Soft Corp.*, 77 F. Supp. 2d 1116, 1122 (C.D. Cal. 1999) (rejecting Section 1202(b)(3) claim because users could "click[]" to reach a website "where any associated [CMI] would be available").

Ziff Davis's claim must also be dismissed because it has not alleged that OpenAI unlawfully distributed complete copies of the works at issue. Ziff Davis focuses on two alleged distributions, but neither is sufficient. First, Ziff Davis alleges that OpenAI distributes its works

8

in ChatGPT and API outputs. But Ziff Davis does not allege that OpenAI ever distributed a specific Ziff Davis work to anyone other than Ziff Davis. An alleged distribution to Ziff Davis of Ziff Davis works without CMI is not unlawful and conceals nothing.[4] As to alleged distribution to others, all Ziff Davis says, in conclusory fashion, is that OpenAI's models *may* allow customers to "more freely exploit LLM output without the infringing nature of that output being obvious." FAC ¶ 190. But Ziff Davis does not plausibly allege this has ever actually happened.

Second, Ziff Davis for the first time asserts that OpenAI's publication on Github of a "sample" of the WebText dataset that contains CMI-less excerpts from its articles constitutes a "distribution" in violation of Section 1202(b)(3). Opp. 17–20. Ziff Davis makes no mention of this allegation in the section of the Amended Complaint that addresses its Section 1202(b)(3) claim. *See* FAC ¶¶ 257–59. In any case, none of the 10 examples Ziff Davis provides support its claim. Each page of the relevant exhibit shows screenshots of original articles and records from the "sample" OpenAI allegedly published. *Id.,* Ex. D. But six of the screenshots do not contain any CMI. *Id.* at 5–10; *Andersen v. Stability AI Ltd.*, 700 F. Supp 3d. 853, 872 (N.D. Cal. 2023) (must plead "exact type of CMI included in [each] work"). For the other four, the "sample" concludes with an ellipsis or "Read More," indicating that it is *not* in fact a complete copy of the article. FAC, Ex. D at 1–4; Order, Dkt. 514 at 34, *The New York Times v. Microsoft, No. 1:23-cv-11195* (S.D.N.Y. Apr. 4, 2025) ("News MTD Order") at 28–29 (complete copy required). Moreover, the WebText "sample" was allegedly uploaded to Github with OpenAI's GPT-2 release in *2019—i.e., six years* prior to the filing of this action.[5] Ziff Davis was aware of this by at least

---

[4] Ziff Davis also relies on a provision of OpenAI's Terms of Use to argue that a distribution has occurred, Mot. 18, but a contractual provision cannot transform a display into a distribution.
[5] GPT-2 Output Dataset, GitHub, https://github.com/openai/gpt-2-output-dataset/commits/master/; FAC ¶ 140 n.66 (incorporating by reference).

9

May 2019, when one of its websites reported on that release and assigned a reporter to "download[] the code" from Github.[6] The claim is therefore time-barred. 17 U.S.C. § 507(b).

### D. Ziff Davis Does Not Allege Fame for its Trademark Claim

Ziff Davis's allegations as to the eight marks underlying its dilution claim fall short. The claim should be dismissed as to the ZIFF DAVIS mark because Ziff Davis does not allege that the mark has been diluted, *see* FAC ¶175, or that the mark is "widely recognized by the general consuming public." 15 U.S.C. § 1125(c)(2)(A). Ziff Davis contends it has shown the mark is recognized by the general public because (i) Ziff Davis's corporate entity has used that mark "for nearly one hundred years," and (ii) websites owned by that entity have earned revenue. *See* Opp. 22. But what matters is whether the mark is widely recognized by the public, not whether it has been used for a long time or whether a company's websites have generated revenue. *See* Mot. 22–24. And here, Ziff Davis's allegations do not establish, *inter alia*, wide recognition of the ZIFF DAVIS mark.

Ziff Davis's allegations as to the seven remaining marks are insufficient because they establish, at best, "niche fame." *Luv N' Care, Ltd. v. Regent Baby Prods. Corp.*, 841 F. Supp. 2d 753, 757 (S.D.N.Y. 2012) (rejecting claim of "fame among baby product consumers"); *see also Walker Wear LLC v. Off-White LLC*, 624 F. Supp. 3d 424, 430 (S.D.N.Y. 2022) (rejecting claim of "fame within the design or streetwear industry"). Ziff Davis does not attempt to defend each of these marks individually. Instead, it offers generalized arguments about alleged "recognition." Opp. 23. Ziff Davis first relies on industry recognition, which is insufficient to state a claim. Opp. 23 (citing FAC ¶ 37); *see E.A. Sween Co., Inc. v. A&M Deli Express Inc.*, 787 F. App'x 780, 786

---

[6] Tiernan Ray, *OpenAI Has An Inane Text Bot, and I Still Have a Writing Job*, ZD Net (May 8, 2019), https://www.zdnet.com/article/openai-has-an-inane-text-bot-and-i-still-have-a-writing-job/.

(2d Cir. 2019) ("industry awards" not sufficient). Ziff Davis then contends that these marks "*also* hav[e] general public recognition." Opp. 23. But the only cited allegations are about the number of global page visits to two of its properties (*IGN* and *Mashable*). *Id.* Statistics regarding global traffic to *websites* do not establish that the *marks* are widely recognized among the *American* public. *E.A. Sween*, 787 F. App'x at 786; Mot. 23. This claim must therefore be dismissed.

### E.     Counts 3 and 6 Are Flawed

OpenAI's motion argued that the contributory infringement and Section 1202(b)(1) claims are legally flawed, while acknowledging that the Court's News MTD Order held otherwise. Mot. 24–25. Ziff Davis does not meaningfully defend either claim, beyond pointing to the Court's prior order. OpenAI maintains that both claims should be dismissed.

## III.    CONCLUSION

OpenAI requests that the Court dismiss Counts 3–8 of Ziff Davis's Amended Complaint.

Dated: September 10, 2025

<table>
<tr><td>

*/s/ Andrew M. Gass*
**LATHAM & WATKINS LLP**
Andrew M. Gass (*pro hac vice*)
  andrew.gass@lw.com
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Telephone: 415.391.0600

Sarang V. Damle
  sy.damle@lw.com
Luke A. Budiardjo
  luke.budiardjo@lw.com
1271 Avenue of the Americas
New York, NY 10020
Telephone: 212.906.1200

Elana Nightingale Dawson (*pro hac vice*)
  elana.nightingaledawson@lw.com
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Telephone: 202.637.2200

</td><td>

*/s/ Joseph C. Gratz*
**MORRISON & FOERSTER LLP**
Joseph C. Gratz (*pro hac vice*)*
  jgratz@mofo.com
Tiffany Cheung (*pro hac vice*)
  tcheung@mofo.com
Caitlin Sinclaire Blythe (*pro hac vice*)
  cblythe@mofo.com
425 Market Street
San Francisco, CA 94105
Telephone: 415.268.7000

Rose S. Lee (pro hac vice)
  roselee@mofo.com
707 Wilshire Boulevard, Suite 6000
Los Angeles, CA 90017
Telephone: 213.892.5200


*/s/ R. James Slaughter*
**KEKER, VAN NEST & PETERS LLP**
Robert A. Van Nest (pro hac vice)
  rvannest@keker.com
R. James Slaughter (pro hac vice)*
  rslaughter@keker.com
Paven Malhotra
  pmalhotra@keker.com
Michelle S. Ybarra (pro hac vice)
  mybarra@keker.com
633 Battery St.
San Francisco, CA 94111
Telephone: 415.391.5400

</td></tr>
</table>

*Attorneys for OpenAI Defendants*

\*All parties whose electronic signatures are included herein have consented to the filing of this document, as contemplated by Rule 8.5(b) of the Court's ECF Rules and Instructions.

**CERTIFICATE OF COMPLIANCE**

In accordance with Local Civil Rule 7.1(c), I certify that the foregoing Memorandum of Law is 3,495 words, exclusive of the caption page, table of contents, table of authorities, and signature block. The basis of my knowledge is the word count feature of the word-processing system used to prepare this memorandum.

Dated: September 10, 2025

                                                    */s/ Andrew M. Gass*
                                                      Andrew M. Gass