**KEKER VAN NEST & PETERS**    **LATHAM & WATKINS LLP**    **MORRISON FOERSTER**

November 18, 2025

*VIA ECF*

Hon. Ona T. Wang
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, NY 10007-1312

cc: All Counsel of Record (via ECF)

Re:  **_OpenAI's Motion to Compel Ziff Davis to Add ESI Custodians_**
*In re OpenAI Inc. Copyright Infringement Litigation*, No. 1:25-md-03143-SHS-OTW
This Document Relates to: *Ziff Davis, Inc. et al v. OpenAI, Inc. et al*,
no. 1:25-cv-04315-SHS-OTW

Dear Magistrate Judge Wang:

    OpenAI respectfully requests that the Court compel Ziff Davis to add Vivek Shah (Ziff Davis's CEO), Ray Philip (Ziff Davis's VP of SEO), Bill Elward (EHG's VP of SEO), and Marat Gaziev (IGN's VP of Audience Growth) as ESI custodians.[1]  Ziff Davis identified all four individuals as having unique, relevant knowledge. OpenAI's review of Ziff Davis's recent document productions confirms that all four individuals possess unique, relevant, and non-duplicative knowledge that justifies their inclusion as ESI custodians.  OpenAI requested that Ziff Davis designate these individuals as custodians in correspondence and telephonic meet and confers between October 24 and October 31, 2025.  Ziff Davis did not respond to the request within the ten day deadline mandated by the ESI Order.  *See* ECF No. 371 ¶ 6.  In a meet and confer on November 18, 2025, Ziff Davis confirmed it was refusing to designate these individuals as custodians.

---

[1] IGN Entertainment, Inc. ("IGN") is one of Ziff Davis's portfolio companies and a named plaintiff.  Everyday Health Media, LLC is a named plaintiff and Everyday Health Group is listed as a portfolio brand, *see Ziff Davis, Inc.,* ECF No. 105-1; OpenAI will collectively refer to both as EHG.

November 18, 2025
Page 2

### I. The Court should designate Mr. Shah as a custodian.

Mr. Shah has been identified in Ziff Davis's initial disclosures as "reasonably likely to have discoverable information" on "Ziff Davis and its portfolio of properties and brands; strategic oversight of creation and protection of Ziff Davis' content; [and] impact of Defendants' conduct on Ziff Davis' business." *See* Ex. 1.

The documents that Ziff Davis has produced to date confirm that Mr. Shah has unique and relevant knowledge. Mr. Shah directed Ziff Davis's efforts to leverage and incorporate OpenAI's products into Ziff Davis's portfolio companies. For example, Mr. Shah has discussed ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ *See* Ex. 2. Mr. Shah was also involved in discussions about "▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ *See* Ex. 3. These efforts culminated with Mr. Shah ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. *See* Ex. 4; Ex. 5; Ex. 6; Ex. 7. Indeed, documents produced to date show that Mr. Shah exchanged emails with OpenAI executives without including anyone else at Ziff Davis ▇▇▇▇▇▇. *See* Ex. 8. Given this unique knowledge, alone, he should be a custodian.

Mr. Shah also spearheaded efforts, both internally and externally, related to ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ *See* Ex. 9; Ex. 10. This included analyses intended to ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ *See* Ex. 9. He was also directly involved in high-level discussions regarding key acquisitions that influenced how Ziff Davis content could be used in OpenAI's products. *See* Ex. 11. For example, one such acquisition, ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ *Id.* This information illuminates how Ziff Davis assessed the extent to which OpenAI's products used, derived value from, or affected Ziff Davis content; how Ziff Davis quantified or capitalized on that impact; and how Ziff Davis positioned itself strategically through acquisitions to compete or collaborate with OpenAI's products.

### II. The Court should designate Messrs. Philip, Elward, and Gaziev as custodians.

Ziff Davis should also designate the three individuals identified in its interrogatory responses—Messrs. Philip, Elward, and Gaziev—as custodians. Ziff Davis has identified all three as having "knowledge of . . . internet search performance metrics for [its] digital publications . . . and all revenue tracking related thereto." *See* Ex. 12; *OneBeacon Ins. Co. v. Forman Int'l, Ltd.*, No. 04 Civ. 2771 (RWS), 2006 WL 3771010, at *6 (S.D.N.Y. Dec. 15, 2006). Notably, although all three individuals are listed as knowledgeable about the same general subject area, their knowledge is distinct, not overlapping because each person's expertise pertains to a ***different Ziff Davis plaintiff***.



November 18, 2025
Page 3

      Unsurprisingly, Ziff Davis's document productions to date demonstrate that each of these individuals possess unique, relevant knowledge that warrants adding them as ESI custodians. OpenAI only discovered these individuals' unique, responsive documents because they were included on emails produced from other ESI custodians. As such, Messrs. Philip, Elward, and Gaziev should be added as ESI custodians to ensure that relevant and responsive documents in their possession are properly collected and produced.

      Messrs. Philip, Elward, and Gaziev each oversee SEO[2] within different parts of the Ziff Davis portfolio of companies: Mr. Philip does so across Ziff Davis, Mr. Elward at EHG, and Mr. Gaziev at IGN. Thus, all three have unique, relevant knowledge regarding ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Mr. Philip, as VP of SEO at Ziff Davis, was evidently the key decisionmaker behind the company-wide move to ▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇ *See* Ex. 13. Similarly, Mr. Elward raised concerns about ▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ *See* Ex. 14. Mr. Elward also put together slides ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. *Id.* Finally, Mr. Gaziev has unique, relevant knowledge as to ▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ *see* Ex. 15, which is directly relevant to whether OpenAI was diverting traffic or advertising revenue from IGN, or otherwise causing market harm. Their communications concerning OpenAI's crawlers go to the heart of a key issue: whether OpenAI caused the alleged harm Ziff Davis asserts. And given that Messrs. Philip, Elward, and Gaziev each have "knowledge of . . . internet search performance metrics for [its] digital publications . . . and all revenue tracking related thereto," they are the individuals most likely to possess documents that directly undermine Ziff Davis's assertion that OpenAI "caus[es] Ziff Davis to lose traffic and revenue." *See* ECF No. 105 ¶ 197.

      Beyond ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇, Mr. Gaziev and Mr. Elward possess unique, relevant knowledge as to how Ziff Davis and its portfolio companies internally assessed the opportunities and risks posed by OpenAI and its products, including the potential impact on traffic, content strategy, and monetization. In particular, Mr. Gaziev discussed whether ▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ *See* Ex. 16. Mr. Gaziev was also asked to talk with content leads about how ▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ *See* Ex. 17. Similarly, Mr. Elward wrote about the ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ *See* Ex. 18. Indeed, Mr. Elward drafted a memorandum on ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇, and an email unequivocally stating that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇. *See* Ex. 19; Ex. 20. All of

---

[2] SEO refers to search engine optimization, which is the process of improving a website's visibility in search engine results to attract more organic (non-paid) traffic.

November 18, 2025
Page 4

this information is relevant to internal evaluation of potential licensing relationships with OpenAI and its assessment of whether partnering with or opposing OpenAI aligned with Ziff Davis's (or any of the portfolio companies') business and content strategy. Mr. Gaziev's and Mr. Elward's unique role in these respective discussions bears directly on Ziff Davis's understanding of how OpenAI's products interact with its content, whether such use was viewed as competitive or collaborative, and the extent to which Ziff Davis's (or any of the portfolio companies') decisions were motivated by market, strategic, or legal considerations—all of which are central to the fair use and market harm analyses.

*   *   *

For the foregoing reasons, OpenAI respectfully requests that the Court order Ziff Davis add Vivek Shah, Ray Philip, Bill Elward, and Marat Gaziev as ESI custodians.

Respectfully,

| KEKER, VAN NEST & PETERS LLP[3] | LATHAM & WATKINS LLP | MORRISON & FOERSTER LLP |
|---|---|---|
| /s/ Christopher S. Sun | /s/ Elana Nightingdale Dawson | /s/ Rose S. Lee |

---

[3] All parties whose electronic signatures are included herein have consented to the filing of this document.