**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE:<br><br>OPENAI, INC.,<br>COPYRIGHT INFRINGEMENT LITIGATION<br><br>This Document Relates To:<br><br>ZIFF DAVIS, INC. et al v. OPENAI, INC. et al.,<br>No. 1:25-cv-04315 | 25-md-03143 (SHS) (OTW)<br><br>**MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO FILE SECOND AMENDED COMPLAINT** |

## TABLE OF CONTENTS

Page

I.      INTRODUCTION ...........................................................................................................1

II.     PROCEDURAL HISTORY.........................................................................................2

III.    LEGAL STANDARD...................................................................................................4

IV.     ARGUMENT ................................................................................................................4

        A.      Ziff Davis Does Not and Cannot Allege That Robots.txt Directives are
                Section 1201-Qualifying Measures.................................................................5

        B.      Ziff Davis Cannot Allege That Crawling a Website Notwithstanding a
                Robots.txt "Disallow" is an Act of Circumvention ................................10

V.      CONCLUSION............................................................................................................14

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

## CASES

*A.P., N.P., C.P., T.K.P., v. Dannhauser, et al.*,
No. 25-1030, 2025 WL 3120444 (2d Cir. Nov. 7, 2025) ..........................................................4

*Agfa Monotype Corp. v. Adobe Sys., Inc.*,
404 F. Supp. 2d 1030 (N.D. Ill. 2005) ................................................................................1, 6

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ...............................................................................................................13

*Associated Press v. Meltwater U.S. Holdings, Inc.*,
931 F. Supp. 2d 537 (S.D.N.Y. 2013) ......................................................................................8

*Dish Network L.L.C. v. World Cable Inc.*,
893 F. Supp. 2d 452 (E.D.N.Y. 2012) ..............................................................................11, 12

*Hausler v. JP Morgan Chase Bank, N.A.*,
127 F. Supp. 3d 17 (S.D.N.Y. 2015) .......................................................................................6

*Hoodho v. Holder*,
558 F.3d 184 (2d Cir. 2009) .....................................................................................................6

*I.M.S. Inquiry Mgmt. Sys., Ltd. v. Berkshire Info. Sys., Inc.*,
307 F. Supp. 2d 521 (S.D.N.Y. 2004) ...............................................................................11, 12

*Jin v. Metropolitan Life Ins. Co.*,
310 F.3d 84 (2d Cir. 2002) .......................................................................................................4

*Jones v. Schneiderman*,
974 F. Supp. 2d 322 (S.D.N.Y. 2013) ....................................................................................13

*Jordan v. Chase Manhattan Bank*,
91 F. Supp. 3d 491 (S.D.N.Y. 2015) ........................................................................................4

*Lexmark Int'l, Inc. v. Static Control Components, Inc.*,
387 F.3d 522 (6th Cir. 2004), *abrogated on other grounds by eBay Inc. v.
MercExchange, L.L.C.*, 547 U.S. 388 (2006) .....................................................................7, 9

*LivePerson, Inc. v. 24/7 Customer, Inc.*,
83 F. Supp. 3d 501 (S.D.N.Y. 2015) ........................................................................10, 11, 12, 13

*MDY Indus., LLC v. Blizzard Entertainment, Inc.*,
629 F.3d 928 (9th Cir. 2010) ....................................................................................................9

*Sookul v. Fresh Clean Threads, Inc.*,
   754 F. Supp. 3d 395 (S.D.N.Y. 2024)...................................................................13

*TechnoMarine SA v. Giftports, Inc.*,
   758 F.3d 493 (2d Cir. 2014).........................................................................................4

*Universal Studios, Inc. v. Corley*,
   273 F.3d 429 (2d Cir. 2001).......................................................................................11

*Yates v. United States*,
   574 U.S. 528 (2015)...................................................................................................13

## STATUTES

17 U.S.C.
   § 1201(a)(1) ...................................................................................................2, 5, 10
   § 1201(a)(1)(A)..................................................................................................1, 7
   § 1201(a)(3)(A)...............................................................................................11, 12
   § 1201(a)(3)(B)..................................................................................................5, 7
   § 1201(c)(3) .........................................................................................................13

## RULES

Federal Rule of Civil Procedure
   11.........................................................................................................................8
   12(b)(6)................................................................................................................4
   15(a)(2) ...............................................................................................................4

## OTHER AUTHORITIES

Joe Hindy, *Bluesky Proposes New Privacy Settings For Its Users*, Mashable (Mar.
   16, 2025), https://mashable.com/article/bluesky-proposes-new-privacy-
   settings-for-users;..................................................................................................8

## I.    INTRODUCTION

Ziff Davis's motion for leave to amend should be denied because its proposed new allegations do not cure the fundamental defect in its Section 1201 claim.[1]  As the Court recognized at the November 13 hearing, Ziff Davis's "robots.txt directives" are not technological measures that "effectively control access" to copyrighted works under Section 1201—they are merely precatory statements that express a preference or request.  *See* Nov. 13 Hr'g Tr. 8:18–21 ("COURT: . . . it seems to me that Mr. Gratz is right that there's nothing here that controls access. It still seems to be the term he used, 'precatory.'").

Ziff Davis's attempt to shift focus to how users can configure web crawlers to interact with robots.txt files is beside the point.  The "technological measures" under Section 1201, which Ziff Davis says are its "robots.txt directives," must themselves effectively control access to the work. But Ziff Davis's robots.txt files do nothing, by their own operation, to restrict access: a user can access Ziff Davis's copyrighted content, whether with a crawler or otherwise, regardless of what Ziff Davis's "robots.txt directives" say.  In other words, Ziff Davis's robots.txt files express preferences, not permissions.

OpenAI's alleged voluntary decision to honor those directives does not transform the directives into locks or gates that "effectively control" access. 17 U.S.C. § 1201(a)(1)(A); *see also Agfa Monotype Corp. v. Adobe Sys., Inc.*, 404 F. Supp. 2d 1030, 1036–37 (N.D. Ill. 2005).  A robots.txt file is a notice—akin to a sign saying "please use the revolving door" or "don't step on the lawn."  ECF 141 at 15 ("MTD"); Nov. 13 Hr'g Tr. 19–20.  And a voluntary decision to heed that notice does not turn the sign into a locked gate.  Because the proposed new facts do not—and

---

[1] This Motion follows the convention of the Motion for Leave to Amend, referring to Plaintiffs collectively as "Ziff Davis" in the singular.  *See, e.g.*, ECF 239.

cannot—allege that OpenAI circumvented any technological measure that actually controls access, Ziff Davis's Section 1201(a)(1) claim remains legally defective. Accordingly, the Proposed Second Amended Complaint is futile, and the Court should deny Ziff Davis's motion for leave to amend.

## II.    PROCEDURAL HISTORY

On April 24, 2025, Ziff Davis filed its initial complaint in this action, asserting seven causes of action, including one under 17 U.S.C. § 1201(a)(1). ECF 1 ("Compl."). Ziff Davis contended that OpenAI violated Section 1201 because "robots.txt instructions" are "technological measures" that "effectively control access" to a work, and OpenAI allegedly circumvented those measures by "disregard[ing]" them. Compl. ¶¶ 234, 236. On June 10, 2025, OpenAI moved to dismiss, *inter alia*, Ziff Davis's Section 1201 claim because "robots.txt instructions" do not constitute access controls under Section 1201 and Ziff Davis did not allege that OpenAI circumvented any such measures. ECF 53 at 6–12. Rather than respond to the motion, Ziff Davis filed its First Amended Complaint. ECF 105 ("FAC"). In its FAC, Ziff Davis newly characterized a robots.txt file as a "digital gate," although it continued to also allege that the file is an "instruction[]" that OpenAI allegedly "ignore[d]." *Id.* ¶ 121.

On July 30, 2025, OpenAI again moved to dismiss Ziff Davis's Section 1201 claim, explaining that it continued to suffer from the same fundamental defects as Ziff Davis's initial Section 1201 claim—that Ziff Davis is seeking to pursue a claim for conduct the Digital Millenium Copyright Act ("DMCA") does not prohibit. MTD at 7–14. This time, Ziff Davis opposed OpenAI's motion, contending that its characterization of a robots.txt file as a "digital gate" means that the file effectively controls access to its websites, and that OpenAI had circumvented Ziff Davis's control by reconfiguring OpenAI's bots to "bypass[] the [Robots Exclusion Protocol] step of checking and following disallow directives." ECF 163 at 4–10, 9. OpenAI thus explained in

its reply why, notwithstanding Ziff Davis's contentions to the contrary, a robots.txt file is precatory and thus cannot give rise to a claim under Section 1201.  ECF 178 at 2–6.

On October 8 and November 13, 2025, the Court heard argument on OpenAI's motion to dismiss.  During the November 13 hearing, Ziff Davis told the Court that it could amend its complaint to add "newly discovered evidence" that "is additional support for why Claim 5, the 1201(a)(1) claim, should not be dismissed."  Nov. 13 Hr'g Tr. 3:23–4:4.  When the Court asked OpenAI for its position on leave to amend, OpenAI explained that "amendment would be futile" because none of the allegedly new evidence changes the fact that "robots.txt statements are precatory; they are expressions of preference or wish that are not self-enforcing [and] that can be ignored."  *Id.* at 6:7–14.  In response, the Court expressed its understanding of OpenAI's argument, analogizing robots.txt files to a "don't step on the lawn" directive.  *Id.* at 6:19–20.  Ultimately, the Court gave Ziff Davis leave to move to amend and "put these facts in," *id.* at 8:7–11—that is, whatever facts Ziff Davis claimed to have to support its Section 1201 claim.

On November 17, 2025, Ziff Davis filed a motion to amend its complaint, ECF 239 ("Mot."), along with its Proposed Second Amended Complaint ("PSAC"), ECF 239-2.  The PSAC, like the two complaints before it, still contains a Section 1201 claim based on Ziff Davis's contention that its robots.txt files are technological measures that effectively control access to copyrighted works and that OpenAI circumvented those measures.  PSAC ¶¶ 115–48.  In the PSAC, Ziff Davis added a number of allegations about how web crawlers allegedly work and what OpenAI allegedly did with respect to OpenAI's own web crawlers.

Ziff Davis alleges that web crawlers or "bots" are "automated software application[s] that access websites."  PSAC ¶ 118.  According to Ziff Davis, "[r]eputable companies . . . configure their bots to automatically access and read . . . robots.txt code," *id.* ¶ 122, *i.e.*, the websites'

"machine-readable instructions in source text files," *id.* ¶ 120. Ziff Davis refers to this "reputable" configuration of bots as "REP-compliant." *Id.* ¶ 124. Ziff Davis contends that, once a bot has been "configure[d] . . . to automatically access and read" robots.txt files, Ziff Davis's robots.txt files will stop that bot from accessing Ziff Davis's website per Ziff Davis's preferences. *Id.* ¶¶ 122–24. Ziff Davis further alleges that, if a developer initially configures a bot to be "REP-compliant"—that is, to access and read robots.txt files—then the developer must "reconfigure" the bot in order for that bot to then "ignore" robots.txt directives. *Id.* ¶ 124. Such "reconfigur[ation]," according to Ziff Davis, constitutes a circumvention of Ziff Davis's robots.txt files. *Id.* ¶¶ 124, 261. According to Ziff Davis, OpenAI violated Section 1201 by "reconfigur[ing]" OpenAI's own crawlers to "ignore" Ziff Davis's "directives." *Id.* ¶¶ 144–45.

## III.  LEGAL STANDARD

Under Federal Rule of Civil Procedure 15(a)(2), "the district court has the discretion to deny leave [to amend] if there is a good reason for it, such as futility, bad faith, undue delay, or undue prejudice to the opposing party." *A.P., N.P., C.P., T.K.P., v. Dannhauser, et al.*, No. 25-1030, 2025 WL 3120444, at *2 (2d Cir. Nov. 7, 2025) (citing *Jin v. Metropolitan Life Ins. Co.*, 310 F.3d 84, 101 (2d Cir. 2002)). "Granting leave to amend is futile if a revised claim still could not withstand a motion to dismiss pursuant to Rule 12(b)(6)." *Jordan v. Chase Manhattan Bank*, 91 F. Supp. 3d 491, 510 (S.D.N.Y. 2015); *see also TechnoMarine SA v. Giftports, Inc.*, 758 F.3d 493, 505–06 (2d Cir. 2014) (affirming denial of leave to amend where plaintiff's proposed amendment could not "cure its pleading deficiencies" as a matter of law) (collecting cases).

## IV.  ARGUMENT

The Court should deny Ziff Davis's Motion for Leave to File a Second Amended Complaint because the proposed complaint suffers from the exact same deficiencies as the two prior ones, and thus, amendment would be futile. Ziff Davis's Section 1201 claim continues to

fail for all the reasons OpenAI set forth in its Motion to Dismiss and reply.  *See* MTD at 6–14; ECF 178 at 2–6.  First, Ziff Davis does not (and cannot) allege that robots.txt directives are technological measures that effectively control access under Section 1201 of the DMCA.  Second, Ziff Davis fails to allege that OpenAI circumvented any such measures.

### A.    Ziff Davis Does Not and Cannot Allege That Robots.txt Directives are Section 1201-Qualifying Measures

Ziff Davis has not cured, and cannot cure, the fundamental deficiency with its Section 1201 claim: it is seeking to pursue a claim for conduct that Section 1201 does not address, let alone prohibit.  Ziff Davis concedes that, "[t]o state a claim under Section 1201(a)(1), Ziff Davis must plausibly plead that . . . the robots.txt code used on its websites to block GPTBot is a 'technical measure that effectively controls' access to Ziff Davis's works."  Mot. at 9.  Ziff Davis's own allegations, however, confirm that a robots.txt file does not effectively control access to anything. That alone is fatal to Ziff Davis's claim, rendering its proposed amendment futile.

As OpenAI explained in its Motion to Dismiss, MTD at 7, to qualify as a "technological measure" that can give rise to a claim under Section 1201(a)(1), the measure must, "in the ordinary course of its operation, require[] the application of information, or a process or a treatment, with the authority of the copyright owner, to gain access to the work."  17 U.S.C. § 1201(a)(3)(B).  Ziff Davis continues to contend that the "technological measure" at issue here is "the robots.txt code used on [Ziff Davis] websites."  Mot. at 9; *see* PSAC ¶¶ 122–24.  The allegations in the PSAC, however, reaffirm what the allegations in the prior two complaints established—that robots.txt files do not effectively control access to anything.

As Ziff Davis explains, robots.txt files are "directives" that can be saved to a website's root path in order for website operators to communicate their preferences as to web crawling.  PSAC

¶ 120; *see also* Compl. ¶¶ 115–16; FAC ¶¶ 117–18; Mot. at 12.[2]    Robots.txt files include preferences, in the form of "instructions," that tell specific crawlers how the website operator would like the crawler to behave when visiting the website.  PSAC ¶ 120.

The law is clear that where, as here, an alleged "technological measure" merely expresses a preference that can be "ignored," it does not qualify as a "technological measure" that "effectively controls access" for purposes of a Section 1201 claim.  That was the case in *Agfa Monotype Corp.*, where the alleged "technological measure" amounted to the "passive" communication of a party's "preferences," that "in the ordinary course of [their] operation, [did not] require[ ] the application of information, or a process or a treatment, with the authority of the copyright owner, to gain access" to the work at issue.  404 F. Supp. 2d at 1035–36.

So too here.  Ziff Davis admits that the directives in its robots.txt files can be "ignore[d]." PSAC ¶¶ 122, 131, 145.  That is because web crawlers have to be "configure[d]" "to automatically access and read" robots.txt files.  *Id.* ¶ 122.  In other words, crawler operators must affirmatively tell the bot to access, read, and interpret robots.txt instructions.  But if the crawler operator does not do this, its crawler can freely access a website without reading a robots.txt file at all.  *See id.* And if crawlers are *not* configured to read those files, or if they are configured to ignore the instructions in those files, nothing stops the crawler from accessing or scraping a website.  *See id.*; *see also id.* ¶ 124.  Thus, even according to Ziff Davis's own allegations, Ziff Davis's robots.txt files do *not*, "in the ordinary course of [their] operation," "require[] the application of information,

---

[2] Ziff Davis cannot disclaim the factual allegations in its two prior complaints as "a party is bound by the admissions in his pleadings."  *See Hausler v. JP Morgan Chase Bank, N.A.*, 127 F. Supp. 3d 17, 37 (S.D.N.Y. 2015) ("When a party makes a judicial admission, that party normally is bound by that admission throughout the course of the proceeding."); *Hoodho v. Holder*, 558 F.3d 184, 191 (2d Cir. 2009) ("[F]acts admitted by a party are judicial admissions that bind that party throughout the litigation.").

or a process or a treatment, with the authority of the copyright owner, to gain access to" Ziff Davis's copyrighted works, as is necessary to state a claim.  17 U.S.C. § 1201(a)(3)(B).  Instead, robots.txt files merely express Ziff Davis's preferences regarding access to its sites—preferences that Ziff Davis concedes a party can choose to "ignore[.]"  PSAC ¶¶ 122, 145.

Ziff Davis attempts to avoid that reality by alleging that, because "[r]eputable companies that operate crawlers . . . configure their bots to automatically access and read the robots.txt code," Ziff Davis's robots.txt code effectively controls access to its websites.  PSAC ¶ 122.  Rather than support its position, however, Ziff Davis's allegation confirms that its robots.txt files do *not* qualify as "technological measure[s] that effectively control[] access" within the meaning of Section 1201. 17 U.S.C. § 1201(a)(1)(A).

To qualify as a "technological measure" under Section 1201, the "measure" *itself* must "in the ordinary course of its operation, require[] the application of information, or a process or a treatment, *with the authority of the copyright owner,* to gain access to the work."  17 U.S.C. § 1201(a)(3)(B) (emphasis added).  One example is a password: the owner or another authorized party must issue a password to a user for the user to access the work.  Ziff Davis's own allegations establish that its robots.txt files do not qualify.  According to Ziff Davis, its robots.txt files only affect whether a bot can access Ziff Davis's works when the bot's *user chooses* to "configure their bots to automatically access and read the robots.txt code."  PSAC ¶ 122.  Because access turns on the *user's* decision, rather than the copyright owner's, the robots.txt instructions are not a technological measure that effectively controls access.  *Cf. Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 387 F.3d 522, 547 (6th Cir. 2004), *abrogated on other grounds by eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006) (measure that "leaves another route [of access] wide open" is not a qualifying "technological measure," even if it "restricts one form of access").  A

7

sign saying "keep off the grass" only keeps you off the grass if you decide to read and follow the sign; the same is true of robots.txt. That a delivery person has been instructed to follow "keep off the grass" signs and faithfully executes the instruction does not mean those signs are anything but precatory.

Ziff Davis tries to elide that concession by arguing, in its motion to amend, that "processing and complying with robots.txt directives represent ***default*** web crawler behavior, not optional conduct." Mot. at 13 (citing PSAC ¶¶ 122–24) (emphasis in original). That is not, however, what the Proposed Second Amended Complaint says—presumably because Ziff Davis knows that is not universally true for all bots, and thus cannot be alleged in compliance with Rule 11.[3]  What the PSAC says is that "[r]eputable companies that operate crawlers . . . configure their bots to automatically access and read the robots.txt code." PSAC ¶ 122. Once so configured, the bot is what Ziff Davis calls an "REP-compliant bot" for which "default compliance is hardwired into bot architecture." *Id.* ¶¶ 122–24. In other words, it is only once a company *chooses* to configure a bot to automatically access and read the robots.txt code that the bot follows robots.txt instructions, but that occurs only so long as that company *chooses* to continue that configuration, which the company can change at any time. Those allegations confirm that Ziff Davis's robots.txt files do not control access at all. Whether a bot has access turns not on the alleged access control measure (Ziff Davis's robots.txt files) but on what third-party users *choose* to do (or not do).

---

[3] Indeed, Plaintiff Mashable, Inc., a Ziff Davis publication, has described "robots.txt" as "a suggestion rather than a hard rule." Joe Hindy, *Bluesky Proposes New Privacy Settings For Its Users*, Mashable (Mar. 16, 2025), https://mashable.com/article/bluesky-proposes-new-privacy-settings-for-users; *see also Associated Press v. Meltwater U.S. Holdings, Inc.*, 931 F. Supp. 2d 537, 563 (S.D.N.Y. 2013) (The "[r]obots.txt protocol . . . was designed by industry groups to instruct *cooperating* web crawlers not to access all or part of a website that is publicly viewable" and depends on the crawler "honor[ing] the instruction.") (emphasis added); ECF 163 at 6 (citing this language).

Ziff Davis's Section 1201 claim also fails because, as OpenAI has previously explained, regardless of how any web crawler is configured, Ziff Davis's robots.txt directives leave "another relevant form of 'access'" open: access via any web browser. *Lexmark*, 387 F.3d at 547; *see also MDY Indus., LLC v. Blizzard Entertainment, Inc.*, 629 F.3d 928, 952–53 (9th Cir. 2010); *see* MTD at 12–13. As the Sixth Circuit explained in its seminal *Lexmark* decision: "Just as one would not say that a lock on the back door of a house "controls access" to a house whose front door does not contain a lock . . . it does not make sense to say that this provision of the DMCA applies to otherwise-readily-accessible copyrighted works." *Lexmark*, 387 F.3d at 547. Here, Ziff Davis's own allegations confirm that, even with its robots.txt directives in place, its websites remain accessible, including through commonplace internet browsers, to OpenAI and anyone else who wants to access them. *See* PSAC ¶ 36; *see also* MTD at 12–13.

Finally, Ziff Davis makes two arguments about newly alleged facts in the PSAC that do nothing to salvage its claim.[4] First, Ziff Davis alleges that several OpenAI employees used words like "block[]" or "ban[]" when referring to robots.txt. *See* PSAC ¶ 125. Ziff Davis argues that the way OpenAI employees allegedly referred to robots.txt files "reflects an internal understanding . . . that robots.txt directives function as binding technical restrictions, not merely advisory suggestions." Mot. at 14. But that is both incorrect and irrelevant. Whether robots.txt do or do not qualify as "access controls" under Section 1201 turns on the statute and the technological measure itself, not on how individual employees allegedly characterize that technology. Further, the documents on which Ziff Davis relies refute, rather than support, its

---

[4] Likewise, Ziff Davis's rhetoric that OpenAI's conduct was "intentional[]," *see, e.g.*, PSAC ¶¶ 124, 263, and "willful[]," *id.* ¶ 148, is inapposite to the questions before the Court: whether robots.txt directives are Section 1201-qualifying measures and whether crawling a website notwithstanding a robots.txt disallow is an act of circumvention.

position.  They show that OpenAI employees were talking about how OpenAI would *choose* to configure OpenAI's *crawlers*, not how robots.txt files themselves operate.  *See, e.g.*, ECF 239-8 (Mot., Ex. G); *see also* Mot. at 16–18.  The fact that a *user* can *choose* whether its crawlers can access particular works, *regardless* of what a robots.txt directive says, confirms that robots.txt directives do not "thwart unauthorized access to a protected work" as Section 1201 requires.  *See LivePerson, Inc. v. 24/7 Customer, Inc.*, 83 F. Supp. 3d 501, 511 (S.D.N.Y. 2015).

Second, Ziff Davis claims that OpenAI allegedly "pledged" to honor robots.txt directives before later allegedly choosing to disregard these directives.  Mot. at 14; PSAC ¶¶ 127–30.  Again, even if true, Ziff Davis undermines its own argument.  If OpenAI at one time "pledged" to use a bot configured to follow Ziff Davis's robots.txt preferences, that was a voluntary expression of a choice that *OpenAI* made—not a control effectuated by the robots.txt file *Ziff Davis* implemented.  Indeed, the fact that OpenAI can allegedly "ignore" robots.txt directives at will illustrates that Ziff Davis's robots.txt are not a technical measure that effectively controls access to Ziff Davis's works.  *See* PSAC ¶ 120 (describing robots.txt as a "polic[y]"); *id.* ¶ 122 (acknowledging bots can be "configured to ignore" robots.txt instructions); *see also* FAC ¶ 121 (alleging "OpenAI, using its GPTBot . . . actively ignore[d] the disallow measure").

**B.    Ziff Davis Cannot Allege That Crawling a Website Notwithstanding a Robots.txt "Disallow" is an Act of Circumvention**

Ziff Davis's Section 1201(a)(1) claim is also futile because Ziff Davis also has not, after three attempts, alleged that OpenAI engaged in an act of circumvention—a separate and independent requirement to state a claim under Section 1201(a)(1).  In other words, even if Ziff Davis had successfully alleged a technological measure that controlled access—which it has not— its Section 1201 claim would still fail because it has not successfully alleged circumvention, which it clearly cannot.

Ziff Davis agrees that, to state a claim, it needs to allege "that OpenAI circumvented" the technological measure at issue. Mot. at 9. As OpenAI has previously explained, to plead circumvention, a plaintiff must allege that the defendant "affirmatively perform[ed] an action that disables or voids the measure" that effectively controls access, *LivePerson, Inc.*, 83 F. Supp. 3d at 509, like "descrambl[ing] a scrambled work" or "decrypt[ing] an encrypted work," 17 U.S.C. § 1201(a)(3)(A). *See* MTD at 13. As the statutory examples make clear, the relevant "action" that constitutes "circumvention" must be something akin to "breaking and entering (or hacking) into computer systems." *LivePerson*, 83 F. Supp. 3d at 509. That makes sense, because the DMCA "targets the circumvention of digital walls guarding copyrighted material"; "a cause of action under the DMCA does not accrue upon unauthorized and injurious access alone." *I.M.S. Inquiry Mgmt. Sys., Ltd. v. Berkshire Info. Sys., Inc.*, 307 F. Supp. 2d 521, 532 (S.D.N.Y. 2004) (quoting *Universal Studios, Inc. v. Corley*, 273 F.3d 429, 443 (2d Cir. 2001)).

Courts have accordingly held that merely breaching contractual restrictions, or using a tool in an "unauthorized" manner, is insufficient to show circumvention. *See id.* (no DMCA liability where "[d]efendant did not surmount or puncture or evade any technological measure" by "us[ing] a password intentionally issued by plaintiff to another entity" when allegedly accessing plaintiff's "protected website without plaintiff's authorization"); *see also Dish Network L.L.C. v. World Cable Inc.*, 893 F. Supp. 2d 452, 465 (E.D.N.Y. 2012) (dismissing Section 1201 claim where "the room was already unlocked, and therefore the Defendants did not have to 'break in' to gain access to the copyrighted work"). In other words, not every act that a rightsholder disapproves of constitutes a "circumvention" under the DMCA.

Ziff Davis now alleges that OpenAI initially configured its crawler to check a website's robots.txt file before crawling that website. PSAC ¶ 144. Because OpenAI did so, Ziff Davis

11

contends, OpenAI's alleged later "reconfiguration" of its crawler to "ignore" Ziff Davis's robots.txt directives constitutes circumvention.  Mot. at 21; PSAC ¶ 144.  These allegations simply build on Ziff Davis's prior theory of circumvention; Ziff Davis has repeatedly attempted to suggest that OpenAI "circumvented" robots.txt disallows by "ignor[ing]" the instruction and "continu[ing] to actively" access Ziff Davis's sites "without abatement."  FAC ¶ 121; *see also* ECF 1 ¶ 117 (alleging that OpenAI "continued to actively" access its public website "[d]espite Ziff Davis's implementation of the robots.txt instructions").  This tortured theory still fails, for three reasons: (1) to begin ignoring something is not the same as circumventing it; (2) the act of "reconfigur[ation]" affected only OpenAI's own crawler—it did nothing to the alleged technological measure (Ziff Davis's robots.txt directives); and (3) interpreting "circumvention" to cover a mere change in a party's behavior without any change in accessibility at all would dangerously expand the scope of that term.

First, as OpenAI explained, continuing to do an act despite purported instructions or directives to the contrary does not constitute "circumvention" because circumvention requires some affirmative act to render the alleged access control ineffective.  *See* MTD at 13–14; *see also LivePerson, Inc.*, 83 F. Supp. 3d at 509 ("a person circumvents a technological measure only when he *affirmatively* performs an action that disables or voids the measure" (emphasis added) (quoting *Dish Network L.L.C., Inc.*, 893 F. Supp. 2d at 466)).  Section 1201(a)(3)(A) defines circumvention by using active verbs—e.g., "descramble," "decrypt," "bypass, remove, deactivate, or impair"— that result in a measure being rendered inoperative.  *Cf. I.M.S. Inquiry Mgmt. Sys., Ltd.*, 307 F. Supp. 2d at 532 (avoiding and bypassing "permission to engage" with a "technological measure from the measure's author" does not constitute circumvention).  "Ignor[ing]" instructions and continuing conduct are not affirmative acts that render a measure inoperative, and neither

constitutes the type of affirmative "breaking" or "hacking" that the statute requires. Indeed, merely "ignoring" something is not affirmative at all.

Although Ziff Davis accuses OpenAI of "bypass[ing]" its robots.txt instructions, PSAC ¶ 122, "bypass" must be read in light of the active, affirmative verbs that surround it.[5]  "[T]he canon of noscitur a sociis teaches that a word is 'given more precise content by the neighboring words with which it is associated,' and thus 'avoids ascribing to one word a meaning so broad that it is inconsistent with the company it keeps.'"  *Sookul v. Fresh Clean Threads, Inc.*, 754 F. Supp. 3d 395, 411 (S.D.N.Y. 2024) (citation omitted); *see Yates v. United States*, 574 U.S. 528, 543 (2015) (*noscitur* canon "avoid[s] . . . giving unintended breadth to the Acts of Congress" (citation omitted)).  Here, the meaning of "bypass" is constrained by terms like "descramble," "deactivate," and "impair," suggesting that the "bypass," too, must require an affirmative act, or at least some act that renders the measure inoperative.  Ignoring a robots.txt directive, or passively failing to read it in the first place, does not qualify.  *Cf.* 17 U.S.C. § 1201(c)(3) (users are not obligated to design products to "provide for a response to any particular technological measure").

Second, the active conduct Ziff Davis does allege—"reconfigurat[ion]"—does not qualify as circumvention either.  The "reconfigur[ation]" at issue involves altering or removing code from *OpenAI*'s *own crawler*.  This does nothing to "disable[] or void[] the measure," *i.e.*, the robots.txt file.  *LivePerson*, 83 F. Supp. 3d at 509.  Changing lines of code in OpenAI's crawler does not affect the actual robots.txt file in any way, nor does it constitute hacking or frustrating the robots.txt file.  Put differently, although Ziff Davis now attempts to allege some kind of active conduct, it is

---

[5] This Court need not accept the contention that OpenAI "bypassed" anything at all, which is a legal conclusion and need not be taken as true even at this stage.  *See, e.g.*, *Jones v. Schneiderman*, 974 F. Supp. 2d 322, 348 (S.D.N.Y. 2013) ("It is axiomatic that a Court is not required to accept as true a complaint's legal conclusions." (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009))).

the *wrong kind* of conduct. OpenAI's conduct did not, and could not, frustrate the operation of a technical measure itself. Indeed, Ziff Davis's argument would lead to the absurd result that a measure could be "circumvented" simply by a user changing their mind—not by a website changing their allegedly protective measures. A delivery person does not actively circumvent a "keep off the grass" sign when, after initially keeping off the grass, he reconsiders and takes a shortcut across the lawn.

Finally, in the specific context of robots.txt, Ziff Davis's argument implies that a crawler operator who initially configured their crawlers to follow robots.txt instructions and later altered the configuration would be subject to liability, while one who *never* set their crawlers to follow with robots.txt directives would not. That result would be absurd, and is almost certainly not what Congress intended. A measure that is subject to the whim of users cannot effectively control access, *supra* IV.A, and alleged changes of heart by users cannot constitute "circumventions."

## V.    CONCLUSION

For the foregoing reasons, OpenAI respectfully requests that this Court deny Ziff Davis's motion for leave to amend its complaint.

Dated: November 20, 2025

/s/ Elana Nightingale Dawson
**LATHAM & WATKINS LLP**
Andrew M. Gass (*pro hac vice*)
  andrew.gass@lw.com
505 Montgomery Street, Suite 2000
San Francisco, CA 94111
Telephone: 415.391.0600

Sarang V. Damle
  sy.damle@lw.com
Luke A. Budiardjo
  luke.budiardjo@lw.com
1271 Avenue of the Americas
New York, NY 10020
Telephone: 212.906.1200

Elana Nightingale Dawson (*pro hac vice*)
  elana.nightingaledawson@lw.com
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Telephone: 202.637.2200

/s/ Joseph C. Gratz
**MORRISON & FOERSTER LLP**
Joseph C. Gratz (*pro hac vice*)*
  jgratz@mofo.com
Tiffany Cheung (*pro hac vice*)
  tcheung@mofo.com
Caitlin Sinclaire Blythe (*pro hac vice*)
  cblythe@mofo.com
425 Market Street
San Francisco, CA 94105
Telephone: 415.268.7000

Rose S. Lee (*pro hac vice*)
  roselee@mofo.com
707 Wilshire Boulevard, Suite 6000
Los Angeles, CA 90017
Telephone: 213.892.5200

/s/ R. James Slaughter
**KEKER, VAN NEST & PETERS LLP**
Robert A. Van Nest (*pro hac vice*)
  rvannest@keker.com
R. James Slaughter (*pro hac vice*)*
  rslaughter@keker.com
Paven Malhotra
  pmalhotra@keker.com
Michelle S. Ybarra (*pro hac vice*)
  mybarra@keker.com
633 Battery St.
San Francisco, CA 94111
Telephone: 415.391.5400

*Attorneys for OpenAI Defendants*

* All parties whose electronic signatures are included herein have consented to the filing of this document, as contemplated by Rule 8.5(b) of the Court's ECF Rules and Instructions.

15

**CERTIFICATE OF COMPLIANCE**

In accordance with Local Civil Rule 7.1(c), I certify that the foregoing Memorandum of Law is 4,617 words, exclusive of the caption page, table of contents, table of authorities, and signature block. The basis of my knowledge is the word-count feature of the word-processing system used to prepare this memorandum.

Dated: November 20, 2025

*/s/ Elana Nightingale Dawson*