# EXHIBIT A

**Exhibit A (News Chart)**

**Key:** Green represents Plaintiffs' filing; Purple represents Defendants' filing.

| Motion | Date Filed | Opp. | Topic in Dispute | Moving Party | Responding Party | Status | Parties' Positions |
|---|---|---|---|---|---|---|---|
| **I.** | **Motions Filed During Week of November 17** | | | | | | |
| Dkt. 765 (Unredacted)<br><br>Dkt. 766 (Public Filing) | 11/18/25 | Dkt. 835 (Sealed Filing)<br><br>Dkt. 838 (Public Filing) | Microsoft click-through rate data | News Plaintiffs | Microsoft | This dispute is fully briefed and the court has not yet heard argument. | **News Plaintiffs' Position**: News Plaintiffs request an order compelling Microsoft to produce click-through-rate ("CTR") data for its Bing Chat product—sometimes referred to by Microsoft as "original" Copilot. Specifically, for each of News Plaintiffs' websites, Microsoft should produce data sufficient to compare the CTR for Bing Chat with the CTR for Microsoft's longstanding Bing search product, for the time period February 7, 2023 (when Bing Chat was released) to September 30, 2024 (when Bing Chat was deprecated, according to Microsoft). Discovery, including 30(b)(6) deposition testimony, has proven that Microsoft can readily provide and/or generate this data, which is relevant to at least News Plaintiffs' harm allegations as well as fair use factor four, particularly insofar as the data reveals that Bing Chat diminishes traffic to News Plaintiffs' sites.<br><br>**Microsoft's Position:** Microsoft has diligently and in good faith collected and reviewed more than a million documents and has produced hundreds of thousands of documents in response to News Plaintiffs' document requests, including detailed search performance data concerning traffic from Bing (including Bing Chat) to News Plaintiffs' websites. To date, Microsoft has been unable to locate the disaggregated Bing Chat CTR data News Plaintiffs are requesting. Microsoft's investigation is continuing, but in the meantime, it cannot produce data that it does not have. |
| 779 (Public Filing)<br><br>775 (Sealed Motion) | 11/18/25 | 807 | CIR's Slack Messages | OpenAI | CIR | | **OpenAI's Position:** OpenAI's Position: OpenAI seeks an order requiring CIR to (1) cease auto-deletion of its custodians' Slack communications, including messages and relevant channels; and (2) provide sworn responses to OpenAI's questions regarding CIR's Slack preservation efforts, the scope of CIR's deletion of its custodian's Slack messages, and available mitigations or recovery options for the deleted Slack data. While CIR now states that it will "address[]" OpenAI's questions regarding the deleted Slack messages, it has not committed to actually answering |

| Motion | Date Filed | Opp. | Topic in Dispute | Moving Party | Responding Party | Status | Parties' Positions |
|---|---|---|---|---|---|---|---|
| | | | | | | | OpenAI's questions. It has also only committed to collecting Slack messages for "designated custodians," rather than *all* custodians. Given the upcoming depositions and OpenAI's repeated requests for these messages, CIR should be ordered to answer OpenAI's questions by December 8, 2025 and preserve Slack messages for all of its custodians. OpenAI reserves its right to seek further relief in light of CIR's responses.<br><br>CIR failed to timely issue a litigation hold and failed to suspend routine deletion of its Slack messages (or manually collect its custodians' messages, as it clearly could have done), despite its duty to preserve relevant evidence once litigation was reasonably anticipated. As a result, CIR has continued to automatically delete all Slack chats after 30 days, including direct messages for CIR custodians, for all but a single channel. This has resulted in the continuing destruction of untold numbers of Slack communications of CIR's custodians–each a "key player" to whom CIR's preservation duty extended, *Pippins v. KPMG LLP*, 2011 WL 4701849, at *5 (S.D.N.Y. Oct. 7, 2011). CIR's continuing Slack message deletion also contradicts its prior representations that reasonable preservation steps were taken. The handful of Slack messages CIR has produced confirms that CIR's three custodians have relevant, responsive Slack communications.<br><br>**Plaintiff's Position:** CIR disagrees with the suggestion that it deliberately destroyed relevant Slack communications. CIR will provide OpenAI with a sworn declaration by December 8, 2025 answering the questions raised in OpenAI's motion and will revise its approach to Slack retention to begin manually collecting all Slack messages for the designated custodians every 30 days. |
| Dkt. [776](#)/ [778](#) | 11/18/25 | Dkt. [821](#) | Date Range for OpenAI Document Productions | Ziff Davis | OpenAI | This dispute is fully briefed and the court has not yet heard argument. | **Ziff Davis Position:** Ziff Davis seeks an Order requiring OpenAI to update its production based on tailored search terms up through August 8, 2025—which is commensurate with the discovery that OpenAI has requested (and already obtained) from Ziff Davis. OpenAI refuses to collect or produce documents (or to use any search terms whatsoever) beyond July 10, 2024, apart from certain cherry-picked documents. |

| Motion | Date Filed | Opp. | Topic in Dispute | Moving Party | Responding Party | Status | Parties' Positions |
|---|---|---|---|---|---|---|---|
| | | | | | | | Even setting aside any claims that are subject to OpenAI's pending motion to stay, Ziff Davis's claims are based on factual allegations that occurred up through 2025. Indeed, OpenAI has propounded (and Ziff Davis has responded to) discovery that encompass (often time explicitly) events and documents through mid-2025. Even in its pending motion to compel additional custodians (Dkt. 792), OpenAI seeks additional discovery based upon documents and events occurring well in 2025. In response to OpenAI's requests, Ziff Davis has already produced upwards of 89,000 documents—of which 24,000 documents post-date the July 10, 2024 cutoff that OpenAI unilaterally imposed for its own production. Ziff Davis seeks an order requiring a mutual discovery cutoff at least for the narrowed search terms that apply to the Ziff Davis case, which Ziff Davis has provided to OpenAI.<br><br>**OpenAI's Position**: Ziff Davis's motion should be denied for the following reasons. *First*, OpenAI has already produced extensive discovery (including 119,522 documents that hit on a Ziff Davis search term or News search term not specific to other News plaintiffs) through July 2024 that addresses the vast majority of Ziff Davis's allegations. And the few post-July 2024 allegations are allegations of "continued" conduct or conduct that takes the "same approach" as the pre-July 2024 conduct. Thus, OpenAI's pre-July 2024 discovery adequately covers Ziff Davis's demands. *Second*, Ziff Davis's motion is disproportionate to the needs of the case and inconsistent with the scope of the MDL. Expanding *all* discovery by 13 months, at least 35 custodians, and running over 200 search terms would yield minimal relevant material (as the last of the models at issue across the MDL cases was released in July 2024) will impose disproportionate burden and disrupt the MDL schedule. Ziff Davis's request is an improper end-run around OpenAI's pending motion to stay, which squarely addresses the question of the scope of appropriate discovery in the *Ziff Davis* action. Regardless, as stated in OpenAI's response to Ziff Davis's November 14 email, should Ziff Davis identify targeted post-July 2024 categories, OpenAI would be willing to consider. *Third*, Ziff Davis's unilateral decision to apply a broader cutoff to its own productions, despite OpenAI's offer to confer over a reasonable mutually applied date range, should not impact the cutoff date that |

3

| Motion | Date Filed | Opp. | Topic in Dispute | Moving Party | Responding Party | Status | Parties' Positions |
|---|---|---|---|---|---|---|---|
| | | | | | | | OpenAI and other Plaintiffs have applied in the MDL. Finally, Ziff Davis's argument regarding OpenAI's motion to compel additional custodians is a red herring. OpenAI includes evidence from 20 exhibits, of which only 5 are dated in 2025, to show each individual's unique, relevant knowledge justifying adding them as custodians. OpenAI's motion is not a request for additional document collection and production through 2025. |
| 791 (Public Filing)<br><br>789 (Sealed Motion) | 11/18/25 | 808 | CIR's Google Analytics Data | Defendants | CIR | | **Defendants' Position:** Defendants jointly move to compel CIR to (1) explain through a declaration or deposition why it failed to preserve CIR's pre-2023 web traffic data, which it maintained on Google Analytics; and, (2) produce website traffic data from 2023 through 2024, which CIR admits it has the ability to access on Google Analytics  CIR does not dispute the relevance of this data, but has failed to preserve much of it (pre-2023 data) and failed to produce the remainder (2023 and 2024 data).  This Google Analytics data (the same type of data provided by the New York Times and which is forthcoming from the Daily News Plaintiffs) is necessary to test one of CIR's core theories of market harm: that the advent of Defendants' accused products has led to a sharp reduction in CIR domain web traffic. The Google Analytics data is responsive to numerous RFPs, including OpenAI RFP Nos. 25-26, 138, 151, 203, and 228-31, and Microsoft RFP Nos. 75-77, 158, and 173.  The limited website traffic data that CIR has produced to date does not come close to satisfying its Rule 26 obligations, and is not a sufficient substitute for its Google Analytics data because it does not provide the detailed user demographics, referral sources, user acquisition channels, and subscriber visits necessary to test the veracity of CIR's claimed harmed to its website traffic, subscriptions, and revenue. *See* Am. Compl. ECF 88 ¶¶ 6, 52.  CIR has failed to articulate why it did not preserve the pre-2023 data, nor has it proffered any burden associated with providing an export of the 2023 and 2024 data.<br><br>**Plaintiff's Position:** The Court should deny the motion because (1) the cited RFPs do not cover this raw data, (2) CIR has already produced monthly web traffic data (e.g., total page views, total users, total sessions, and the like) for the requested time period, and (3) Defendants cite no proportional need for |

4

| Motion | Date Filed | Opp. | Topic in Dispute | Moving Party | Responding Party | Status | Parties' Positions |
|---|---|---|---|---|---|---|---|
| | | | | | | | the data. Defendants' request for a declaration addressing Defendants' claim that CIR was required to download data from Google is therefore unfounded as well. |
| Dkt. 770 | 11/18/25 | Dkt. 805 | OpenAI Responses to Interrogatories | Daily News Plaintiffs | OpenAI | This dispute is fully briefed and the court has not yet heard argument. | **Daily News Position:** *Daily News* Plaintiffs seek an order compelling OpenAI to supplement its deficient responses to Interrogatory Nos. 9, 11, and 13.  Interrogatory No. 9 seeks an identification of Custom GPTs used to access content behind paywalls.  Interrogatory No. 11 seeks the basis for OpenAI's decision not to launch its "Media Manager," which was a tool to enable content owners to specify how their works are used for machine learning.  Interrogatory No. 13 seeks information relating to the market for OpenAI's products and services.  The information sought by these interrogatories is relevant to *Daily News* Plaintiffs' direct, contributory, and willful copyright infringement claims, as well as fair use factors 1 and 4.<br><br>**OpenAI's Position**: OpenAI has already provided complete responses to Interrogatory Nos. 9, 11, and 13, consistent with Federal and Local Rules.  The additional discovery Plaintiffs seek via interrogatories should be sought through depositions, document requests, and expert discovery.  Interrogatory No. 9—which demands identification of all third-party custom GPTs that could access publishers' content behind paywalls— seeks information about millions of third-party, user-created GPTs beyond OpenAI's control.  An open-ended audit of third-party conduct and code would be necessary, if even possible. OpenAI has offered to identify each custom GPT that it has been "made aware of" that purports to "circumvent paywalls" but Plaintiffs continue to insist on an overbroad, unnecessary, and practically impossible canvassing of all GPTs. If Plaintiffs' current position, however, is that they would be satisfied with a response that identifies custom GPTs OpenAI has been made "aware of" that purports to "circumvent paywalls," OpenAI is willing to provide a supplemental response.  Regarding Interrogatory No. 11, contrary to Plaintiffs' assertion that OpenAI did not identify any basis for its decision to delay Media Manager, OpenAI already explained the reason.  Moreover, OpenAI has designated a Rule 30(b)(6) witness, making further supplementation of its interrogatory response unnecessary. |

| Motion | Date Filed | Opp. | Topic in Dispute | Moving Party | Responding Party | Status | Parties' Positions |
|---|---|---|---|---|---|---|---|
| | | | | | | | Finally, OpenAI's response to Interrogatory No. 13 is more than sufficient—OpenAI provided detailed descriptions and cited specific documents, and in fact provided a more substantive response than Plaintiffs' own response to OpenAI's corresponding interrogatory, where Plaintiffs relied only on a third-party website that provides estimates on "the global print media market." Plaintiffs' motion should therefore be denied. |
| 790 (Public Filing) 797 (Corrected Sealed Filing) | 11/18/25 | 837 (Sealed Filing) | Request to Ziff Davis to Add Four ESI Custodians | OpenAI | Ziff Davis | This dispute is fully briefed and the court has not yet heard argument. | **OpenAI's Position:** OpenAI respectfully requests that the Court compel Ziff Davis to designate four custodians. The first, Vivek Shah (Ziff Davis's CEO), personally met with OpenAI employees to discuss potential partnerships. The documents establish that he (not Karen Oh or Joey Fortuna) led those discussions. He also possesses direct knowledge of (1) Ziff Davis's internal efforts to address the use of its content in connection with OpenAI's products, (2) Ziff Davis's potential attempts to customize OpenAI's models, and (3) the anticipated impact of OpenAI's products on Ziff Davis's business. Indeed, Ziff Davis itself has acknowledged that Mr. Shah is reasonably likely to have discoverable information concerning the alleged impact of Defendants' conduct. Ziff Davis has represented that the remaining three requested individuals—Ray Philip, Bill Elward, and Marat Gaziev—each have knowledge of the performance of *different* digital publications and related revenue. Tellingly, Ziff Davis cannot identify any existing custodians with duplicative knowledge. The documents produced to date confirm that this knowledge concerns different Ziff Davis properties and further extends to Ziff Davis's attempts to disallow OpenAI's access to those different properties—facts that directly implicate Ziff Davis's allegations that OpenAI circumvented Ziff Davis's access control measures. Ziff Davis's produced documents also establish that Mr. Gaziev and Mr. Elward possess unique knowledge of ChatGPT's impact on the traffic and revenue for various Ziff Davis properties. Ziff Davis contends that OpenAI has not identified any unique documents produced by the requested individuals in its existing production. But that argument underscores the problem: these individuals are not yet custodians—which is |

| Motion | Date Filed | Opp. | Topic in Dispute | Moving Party | Responding Party | Status | Parties' Positions |
|--------|-----------|------|------------------|--------------|------------------|--------|--------------------|
| | | | | | | | precisely why no such documents have been produced. On the current record, there is evidence that the proposed custodians possess non-cumulative, non-duplicative information that goes to central issues in the case. Indeed, Ziff Davis has expressly conceded that they possess relevant knowledge and has not identified any existing custodian whose materials would be duplicative of theirs.<br><br>**Ziff Davis's Position:** Over a few short months, Ziff Davis has reviewed over 300,000 documents from 13 custodians, producing nearly 90,000 documents. OpenAI, by contrast, has refused to add new custodians, refused to adjust the timeframe for its production to match the timeline for Ziff Davis's production, and has produced fewer than 100 documents (other than cross-productions). OpenAI first sought to add 22 new Ziff Davis custodians, then abandoned its request when Ziff Dais demonstrated they were unnecessary. It now seeks to add four different custodians, although Ziff Davis again has explained why none have relevant unique documents. OpenAI makes no effort to explain what categories of documents it believes are missing or to show that it does not already have what it needs from existing custodians.<br><br>As to Mr. Shah, the documents OpenAI cites confirm that custodians Karen Oh and Joey Fortuna took the laboring oar in the discussions OpenAI identifies as relevant. OpenAI argues Mr. Shah was involved in discussions about training a custom OpenAI model, but on its face the cited email shows no response from Mr. Shah, and the Court has rejected requests for discovery relating to News Plaintiffs' use of ChatGPT. Similarly, on the face of a document OpenAI says reflects "high-level discussions regarding key acquisitions," Ms. Oh is the primary executive leading this effort, not Mr. Shah, and no such "acquisition" was even completed. As to Mssrs. Philip, Gaziev and Elward, nothing in the documents suggest, as OpenAI argues, they were key decision-makers regarding efforts to prevent OpenAI's access to Ziff Davis, partnering with OpenAI, or examining the impact of ChatGPT on Ziff Davis. Their emails copy multiple other existing custodians who took more primary roles on these issues. |

| Motion | Date Filed | Opp. | Topic in Dispute | Moving Party | Responding Party | Status | Parties' Positions |
|--------|-----------|------|------------------|--------------|------------------|--------|--------------------|
| | | | | | | | |
| Dkt. 788 | 11/18/25 | Dkt. 817 | OpenAI Responses to RFAs | Ziff Davis | OpenAI | This dispute is fully briefed and the court has not yet heard argument. | **Ziff Davis Position:** Ziff Davis moves to test the sufficiency of OpenAI's responses to the Ziff Davis specific Requests for Admission (RFAs) and/or to deem each of those RFAs "admitted." Ziff Davis served 416 RFAs, but those Requests consist of eight topics that walk through each of the Ziff Davis brands/publications and/or specific models/products/training stages. For context, OpenAI served 175 RFAs on Ziff Davis, and Ziff Davis responded to all of them. Yet, OpenAI has not substantively responded to any of the Ziff Davis specific RFAs. Instead, OpenAI copied and pasted over 1200 pages of boilerplate objections. After repeated discussions, OpenAI offered to answer some of those RFAs (without specifying any timetable for doing so)—but even as to those RFAs, OpenAI insisted that it would only respond if Ziff Davis agreed to withdraw 21 other RFAs. OpenAI failed to explain why any of those 21 RFAs are particularly objectionable or even difficult to answer. OpenAI's boilerplate objections should be overruled.<br><br>**OpenAI's Position**: Ziff Davis's motion omits the key facts. It has served 2,044 RFAs on OpenAI. Despite the excessive number and numerous substantive defects, OpenAI has offered to respond to the majority—including 395 of the 416 RFAs that Ziff Davis independently served and 948 of the 1,628 RFAs that Ziff Davis jointly served with the other News Plaintiffs—in an effort to avoid burdening the Court.<br><br>Unable to justify the extraordinary burden imposed by its RFAs, Ziff Davis now attempts to shift focus to the 21 RFAs outside OpenAI's offer. But OpenAI never "insisted that it would only respond if Ziff Davis agreed to withdraw 21 other RFAs." To the contrary, OpenAI has already offered and will respond to 1,343 of the RFAs served by Ziff Davis. OpenAI has repeatedly invited Ziff Davis to identify the RFAs it viewed as most important so the parties could prioritize and resolve the dispute. Ziff Davis, however, refused and instead demanded responses to every RFA it served. |

| Motion | Date Filed | Opp. | Topic in Dispute | Moving Party | Responding Party | Status | Parties' Positions |
|---|---|---|---|---|---|---|---|
| | | | | | | | Ziff Davis also is wrong that OpenAI failed to explain why any of those 21 RFAs are particularly objectionable. As set forth in OpenAI's objections, Ziff Davis's RFAs suffer from substantive defects. First, they attempt to use Rule 36 as a discovery device, seeking information that should instead be pursued through document requests, interrogatories, or depositions. They seek new information, not confirmation of facts already known. Moreover, some RFAs seek admissions on ultimate issues in dispute, which courts routinely find improper under Rule 36. Such RFAs demand that OpenAI admit liability on the very claims in dispute, which Rule 36 does not permit. Finally, many RFAs are vague and ambiguous, preventing OpenAI from reasonably discerning their scope. |
| Dkt. 648 (Public Filing) Dkt. 648-1 (Public Filing) Dkt. 648-2 (Public Filing) Dkt. 648-3 (Public Filing) Dkt. 648-4 (Public Filing) Dkt. 648-5 (Public Filing) | 11/18/25 | Dkt. 668 (Public Filing) Dkt. 813 (Public Filing) | Microsoft's Refusal to ID Contract(s) for Express License Defense | The Times | Microsoft | This dispute was fully briefed at Dkts. 148 & 168; argued at the June 25, 2025 conference; and decided at Dkt. 270. The Times's follow-on motion at Dkt, 648 was argued at the October 29, 2025 conference and decided at Dkt. 724. The Times's second follow-on motion is fully briefed and the Court has not yet | **The Times's Position**: The Times seeks to enforce the Court's October 30, 2025 Order requiring Microsoft to produce a 30(b)(6) witness to testify about the basis of its express license defense. Dkt. 724 at 2. The Court's October 30 Order was clear: "The parties are directed to conduct the already-planned 30(b)(6) deposition within which this dispute is a noticed topic, and then meet and confer on whether additional discovery may be necessary after that deposition." Dkt. 724 at 2. This deposition should take place by December 11. **Microsoft's Position:** Microsoft has complied with this Court's orders related to discovery into its express license defense and will continue to do so. The Times is, once again, misinterpreting this Court's directive as requiring Microsoft to provide a 30(b)(6) witness "now." ECF 767 at 1, 3. The Court did not direct the deposition to occur within a specific timeframe. Instead, the Court ordered that it occur during an "already-planned 30(b)(6) deposition," which Microsoft understands to mean that the deposition should occur in the ordinary course of discovery. ECF 715 at 2. Consistent with that guidance and the Court's schedule for contention interrogatories, Microsoft proposes identifying a witness for the proper scope of this topic on or around January 9, 2026, which is the deadline for answering contention interrogatories. This will ensure that the parties do not waste time on discovery |

| Motion | Date Filed | Opp. | Topic in Dispute | Moving Party | Responding Party | Status | Parties' Positions |
|---|---|---|---|---|---|---|---|
| Dkt. 767 | | | | | | heard argument. | related to agreements on which Microsoft does not intend to rely for its express license defense. |
| Dkt. 774 | 11/18/25 | Dkt. 826 (Public Filing) Dkt. 830 (Sealed Filing) | Defendants' 30(b)(6) Topics to The Times | The Times | Defendants | This dispute is fully briefed and the court has not yet heard argument. | **The Times's Position**: The Times seeks a protective order as to portions of three of Defendants' proposed 30(b)(6) topics: (1) Topic 2, which seeks testimony about The Times's understanding of copyright law, (2) Topic 5, which seeks testimony about Times reporters' awareness of Defendants' misconduct, and (3) Topic 20, which seeks testimony about complaints about The Times's reporting. Defendants have now accepted The Times's proposal for Topic 2—leaving two topics in dispute. <br><br> The Court should endorse The Times's proposed scope for these topics, as follows: for Topic 5, non-privileged, non-work-product, non-expert knowledge of use of The Times's Copyrighted Works-In-Suit for training Defendants' Generative AI Models, excluding reporting. For Topic 20, The Times's proposal tracks this Court's June 25, 2025 Order at Times Dkt. 711—The Times will provide a witness on BrandTracker, but not a witness on errors or corrections over a decade (as Defendants seek). <br><br> **Defendants' Position**: On Topic 2, Defendants have agreed to The Times's compromise offer. <br><br> The Times agrees that Topic 5 is relevant, and that OpenAI is entitled to testimony related to its statute of limitations defense. However, The Times simply refuses to ensure that its 30(b)(6) designee is adequately prepared. Defendants are not asking The Times to "canvas the newsroom," they ask only that The Times's 30(b)(6) designee be prepared to discuss what specific reporters who reported on OpenAI in 2020 and earlier knew and shared with the broader Times organization. <br><br> Topic 20 is relevant both to The Times's trademark dilution claim and its allegations about its reputation throughout its pleadings. Defendants are entitled to evidence to probe. The Times's actual reputation and alternative causes of any harm to that reputation, and the Court's previous comments do not |

| Motion | Date Filed | Opp. | Topic in Dispute | Moving Party | Responding Party | Status | Parties' Positions |
|---|---|---|---|---|---|---|---|
| | | | | | | | preclude such testimony. Moreover, The Times fails to state why it would be unduly burdensome to prepare a designee on a set of 6 specific documents. |
| **II.** | **Other Filings** | | | | | | |
| Dkt. 394 (Public Filing) Dkt. 394-1 (Public Filing) Dkt. 394-2 (Public Filing) Dkt. 394-3 (Public Filing) Dkt. 394-4 (Public Filing) Dkt. 394-5 (Public Filing) Dkt. 394-6 (Public Filing) Dkt. 398 (Public Filing) | 7/30/25 | Dkt. 435 (Sealed Filing) Dkt. 435-1 (Sealed Filing) Dkt. 436 (Public Filing) Dkt. 436-1 (Public Filing) Dkt. 436-2 (Public Filing) Dkt. 403 (Public Filing) Dkt. 403-1 (Public Filing) Dkt. 403-2 (Public Filing) Dkt. 403-3 | OpenAI's Production of Output Log Data | News Plaintiffs | OpenAI | The Court granted News Plaintiffs' motion to compel on November 7, 2025. Dkt. 734. | **News Plaintiffs' Position**: Pursuant to this Court's orders dated November 7, 2025 (Dkt. 734) and November 13, 2025 (Dkt. 750), News Plaintiffs sent an email to OpenAI confirming that OpenAI is diligently working to de-identify the 20 million consumer ChatGPT logs and has not deleted or otherwise modified those logs (except with respect to the substitution of approximately 5% of the logs from News Plaintiffs' original request that OpenAI had previously deleted). OpenAI alleged for the first time in connection with the filing of this chart that it is removing sample data logs that are "associated with accounts that potentially implicate specific privilege, safety or security issues," and has not identified these logs with specificity. News Plaintiffs object to OpenAI's modification of the sample.<br><br>If OpenAI has not produced the de-identified 20 million consumer ChatGPT logs in advance of the December 4, 2025, discovery conference, News Plaintiffs respectfully request that this Court order OpenAI to do so immediately, particularly given the rapidly approaching close of fact discovery in February.<br><br>**OpenAI's Position**: On November 12, 2025, OpenAI requested reconsideration of the Court's November 10 order compelling production of 20 million data logs containing private, third-party ChatGPT conversations without regard to relevance or responsiveness to News Plaintiffs' own discovery requests. The request for reconsideration remains pending, and OpenAI has now filed an objection to the November 10 order, Dkt. 840. OpenAI renews its request to stay enforcement of its November 12 order given the significant and unprecedented impacts of the order on user privacy, as detailed in OpenAI's briefing.<br><br>In the interim, OpenAI continues to work diligently to complete the complex de-identification process, including additional privacy protections, and prepare a secure platform that would facilitate review of any of the 20 million data logs that contain private, third-party ChatGPT conversations that are produced. As OpenAI informed News Plaintiffs by letter dated September 12, as part of that process, OpenAI is, *inter alia*, removing and |

11

| Motion | Date Filed | Opp. | Topic in Dispute | Moving Party | Responding Party | Status | Parties' Positions |
|---|---|---|---|---|---|---|---|
| Dkt. 398-1 (Public Filing) Dkt. 398-2 (Public Filing) Dkt. 398-3 (Public Filing) Dkt. 398-4 (Public Filing) Dkt. 656 (Public Filing) Dkt. 656-1 (Public Filing) Dkt. 656-2 (Public Filing) Dkt. 656-3 (Public Filing) Dkt. 656-4 (Public Filing) Dkt. | 10/15/25 | (Public Filing) Dkt. 403-4 (Public Filing) Dkt. 403-5 (Public Filing) Dkt. 403-6 (Public Filing) Dkt. 410 Dkt. 679 Dkt. 679-1 Dkt. 681 Dkt. 681-1 Dkt. 717 | | | | | substituting from the sample data logs relating to conversations that are generated by out-of-scope models or are associated with accounts that potentially implicate specific privilege, safety or security issues. |

| Motion | Date Filed | Opp. | Topic in Dispute | Moving Party | Responding Party | Status | Parties' Positions |
|---|---|---|---|---|---|---|---|
| 719<br><br>Dkt. 742<br><br>Dkt. 752 (Reply)<br><br>Dkt. 840 | 10/30/25<br><br><br>11/12/25<br><br><br><br>11/24/25 | Dkt. 746 | | | | | |
| Dkt. 642 (Sealed Filing)<br><br>Dkt. 642-1 (Sealed Filing)<br><br>Dkt. 642-2 (Sealed Filing)<br><br>Dkt. 643 (Public Filing)<br><br>Dkt. 643-1 (Public Filing)<br><br>Dkt. 643-2 (Public Filing) | 10/14/25 | Dkt. 665 (Public Filing) | Motion regarding text and social media messages | OpenAI | Daily News | The Court heard argument at the September 30, 2025 conference. | **OpenAI's Position:** This dispute is fully briefed and argued and the Parties await the Court's ruling. Defendants remain concerned with Daily News Plaintiffs' failure to collect and search its custodians' text and social media messages, despite their use of text and social media to communicate about relevant and potentially responsive matters.  OpenAI thus seeks an order requiring Plaintiffs to do what Plaintiffs themselves told the Court is required—collect from any custodian who "might have used" messaging platforms "to communicate about issues responsive to [ ] discovery requests." Dkt. 643.  Even now, Plaintiffs admit they collected from a more limited set of custodians than Plaintiffs demanded OpenAI collect from.  Depositions are underway and the discovery cutoff is approaching. Defendants respectfully request the Court's guidance.<br><br>***Daily News* Plaintiffs' Position**: *Daily News* Plaintiffs collected and searched custodians' text and social media messages where, based on the detailed custodial telephone process, it was determined by outside counsel that messages likely existed containing relevant and responsive subject matter such as to justify the burden of collection.  Defendants have not identified any evidence suggesting that any of the messages not collected are relevant or responsive. |

13

| Motion | Date Filed | Opp. | Topic in Dispute | Moving Party | Responding Party | Status | Parties' Positions |
|--------|-----------|------|------------------|--------------|------------------|--------|--------------------|
| Dkt. 643-3 (Public Filing)<br><br>Dkt. 643-4 (Public Filing)<br><br>Dkt. 643-5 (Public Filing)<br><br>Dkt. 643-6 (Public Filing)<br><br>Dkt. 643-7 (Public Filing)<br><br>Dkt. 643-8 (Public Filing) | | | | | | | |
| *Times* Dkt. 311 (Public Filing) Dkt. 311-1 | 11/18/24 | *Times* Dkt. 338 (Public Filing Dkt. 338-1 | Microsoft's output log data | News Plaintiffs | Microsoft | The Court heard argument at the January 22, 2025 conference, and ordered the Parties to | **News Plaintiffs' Position:** Microsoft has represented that it built a "metadata table" to perform keyword searches over an agreed-on set of fields in the output log data, and that, as of November 18, 2025, it is currently running News Plaintiffs' requested searches over that metadata table. Microsoft has represented that the search results will be ready in advance of the December 4 conference and will be produced to News Plaintiffs. Microsoft initially represented that it will respond to News Plaintiffs' remaining requests and questions regarding the |

| Motion | Date Filed | Opp. | Topic in Dispute | Moving Party | Responding Party | Status | Parties' Positions |
|---|---|---|---|---|---|---|---|
| (Public Filing) Dkt. 311-2 (Public Filing) Dkt. 311-3 (Public Filing) Dkt. 311-4 (Public Filing) Dkt. 311-5 (Public Filing) | | (Public Filing) | | | | meet and confer. | output log data by November 21, 2025. But now Microsoft says it "expects . . . to respond the week of November 24, 2025." In view of these representations, News Plaintiffs do not seek guidance from this Court at this time. However, if Microsoft has not responded by the hearing, News Plaintiffs request that the Court order Microsoft to promptly produce the reports that News Plaintiffs have requested by no later than December 8. **Microsoft's Position:** Microsoft has built the metadata table, and, as previously communicated to News Plaintiffs, is currently running keyword searches, the results of which are expected to be ready in advance of the December 4 conference. Microsoft is still investigating News Plaintiffs' remaining requests and questions regarding the output log data, which has taken longer than anticipated due to the technical nature of some of the requests. Microsoft expects it will be able to respond the week of November 24, 2025. Microsoft does not believe guidance from the Court is required. |
| Dkt. 318 (Public Filing) Dkt. 358 (Public Filing) | 7/18/25 | Dkt. 352 (Public Filing) | Sealing requests related to the parties' briefing about the preservation order | OpenAI | News Plaintiffs | The dispute is fully briefed and the Court has not yet ruled on it. | **Joint Position**: The parties respectfully alert the Court that various motions to seal materials submitted in support of discovery motions are fully briefed and remain pending. The only opposed motion to seal is ECF 318, relating to ECF 293. The Opposition to the motion to seal is ECF 352, and the Reply is ECF 358. |

15