**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE:<br><br>OPENAI, INC.,<br>COPYRIGHT INFRINGEMENT LITIGATION<br><br>This Document Relates To:<br><br>ZIFF DAVIS, INC. et al v. OPENAI, INC. et al.,<br>No. 1:25-cv-04315 | 25-md-03143 (SHS) (OTW)<br><br>**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO STAY**<br><br>ORAL ARGUMENT REQUESTED |

3938072

I.  **INTRODUCTION**

The parties to this MDL proceeding have disagreed on just about every issue, but, as noted in advance of the initial case management conference, "Plaintiffs and Defendants agree on a key procedural step: the Court should order a <u>single</u> pre-trial schedule across <u>all</u> cases in this MDL leading to a <u>single</u> date to file dispositive motions." ECF 47 at 31 (emphases in original).[1] This, of course, makes sense. These cases are in one MDL because the factual and legal issues overlap and the interests of the Court, the parties, and the public favor efficiently resolving the important issues these cases raise on one schedule and in one set of summary judgment motions.

Given these considerations, OpenAI raised concerns at the very outset of this MDL about whether *Ziff Davis*—a tag-along action—should be stayed and whether it could successfully catch up with the ongoing discovery in these proceedings. Ziff Davis justified joining these coordinated proceedings midstream by assuring the Court that it could—and would—keep pace with such a schedule. For months, it maintained that posture, repeating as recently as a few weeks ago that it was on track to meet the February 27 fact discovery cutoff. *See, e.g.,* ECF 904, 11/13/2025 Hearing Tr. at 40:17-21. In reality, however, Ziff Davis was falling further and further behind. It repeatedly missed deadlines and violated Court orders, impeded OpenAI's efforts to move discovery forward, and declined to participate meaningfully in the streamlined, coordinated discovery process that is the hallmark of MDLs like this one.

Now, Ziff Davis has reversed course. With fewer than three months remaining before the close of fact discovery, *see* ECF 238, Ziff Davis has announced that it cannot meet the MDL schedule and proposes instead a bespoke, months-long extension designed to accommodate the

---

[1] Unless otherwise specified, "ECF" citations refer to the docket in these MDL proceedings, *In re OpenAI Inc. Copyright Infringement Litig.*, MDL No. 1:25-md-3143 (S.D.N.Y.).

1

backlog of discovery it created. That proposal, which would delay summary judgment briefing, is untenable. It would fracture these coordinated proceedings into an unwieldy "double-track" system, inject inefficiencies through overlapping and duplicative discovery, disrupt expert report and summary judgment deadlines in the core MDL cases, and contravene the very purpose of MDL coordination. Nor is such an accommodation necessary: the Court has already stayed substantial portions of Ziff Davis's claims, *see* ECF 968, and, by stipulation, has stayed other tag-along news cases, *see, e.g.,* ECF 984. The simplest and most efficient solution is to place *Ziff Davis* on the same track as those already-stayed actions, rather than create a custom schedule to accommodate Ziff Davis.

For these reasons, OpenAI now seeks a stay of the entire *Ziff Davis* action. The relevant factors overwhelmingly support that result. A stay promotes judicial economy by preventing duplicative discovery, avoiding disruption to expert sequencing, and ensuring that the Court's forthcoming rulings in the other News Cases can guide and streamline any subsequent litigation of Ziff Davis's claims. A stay also prevents substantial prejudice to OpenAI, which would otherwise face months of unnecessary and duplicative discovery and tactical disadvantages in expert disclosures. Ziff Davis, by contrast, cannot identify any meaningful prejudice from a stay—especially because a stay would cure the very prejudice it previously claimed would result from bifurcating the litigation of its claims. The public and non-party interests likewise favor an orderly, efficient MDL process rather than the piecemeal, resource-intensive approach Ziff Davis proposes. Because a stay is the only mechanism that avoids prejudice and preserves the efficiency of these coordinated proceedings, the Court should stay the *Ziff Davis* action in its entirety.

II.   **BACKGROUND**

    A.    **The *Ziff Davis* action is a tag-along case that has always lagged behind the core News Cases.**

Ziff Davis filed its initial complaint against OpenAI on April 24, 2025, three weeks **after** the Judicial Panel on Multidistrict Litigation consolidated twelve related actions into this MDL. *See Ziff Davis, Inc. et al. v. OpenAI, Inc. et al.*, No. 1:25-cv-00501 (D. Del.), ECF 1; ECF 1. OpenAI notified the JPML of the potential tag-along action, and Ziff Davis's complaint was transferred to SDNY and consolidated with the MDL proceedings in May 2025. *See In re OpenAI Inc. Copyright Infringement Litig.*, MDL No. 3143, ECF 87; ECF 41; *Ziff Davis, Inc. et al. v. OpenAI, Inc. et al.*, MDL Related Case No. 1:25-cv-04315 (S.D.N.Y.), ECF 27. By waiting to file its complaint until after the MDL was created, Ziff Davis joined these proceedings significantly behind the other News Cases, some of which had been pending for nearly two years by the time the JPML issued its consolidation order, and after Plaintiffs in those cases had already participated in more than a year of discovery.

### B. OpenAI repeatedly raised concerns about Ziff Davis's ability to complete discovery on time and the possibility it might derail the current MDL case schedule.

OpenAI immediately recognized and informed the Court that Ziff Davis's late addition to the MDL posed serious potential concerns, most obviously because there was a high likelihood that Ziff Davis would be unable to keep up with discovery given how far behind it was relative to the other News Plaintiffs. As a result, OpenAI proposed either "staying the Ziff-Davis action in light of its tardiness, or limiting the scope of its claims to the claims asserted in the other News actions" to ensure that all parties could "us[e] this MDL proceeding to efficiently move the parties through common issues and discovery." ECF 47 at 72. Indeed, the parties specifically informed the Court that they all agreed that there should be *one* schedule: "Plaintiffs and Defendants agree on a key procedural step: the Court should order a <u>single</u> pre-trial schedule across <u>all</u> cases in this MDL leading to a <u>single</u> date to file dispositive motions." *Id.* at 31 (emphases in original).

Plaintiffs waved away any concerns about keeping up with the schedule. They assured the

3

Court that "[a]bsorbing [the *Ziff Davis* action] into the News Cases w[ould] be seamless" and that all Plaintiffs could, and would, abide by the same case schedule. *Id*. at 8, 11. Indeed, Plaintiffs were so confident of that fact that they originally proposed a schedule designed to "bring discovery to a rapid close" on November 21, 2025—a full three months before the now-current deadline— assuring the Court that this deadline "provide[d] ample time for the parties to complete discovery" because there was "not much discovery left to go." *Id*. at 40-42. They further affirmed that all Plaintiffs—including Ziff Davis—"agree[d] the most efficient resolution of this case for all involved necessitates firm deadlines, set in advance, that all sides understand the Court will not move absent agreement and/or good cause." *Id*. at 39; *see also id*. at 69 ("Ziff Davis generally supports the schedule proposed by Plaintiffs, including the fact discovery cutoff and subsequent deadlines.").

This same cycle played out at the initial case management conference. OpenAI reiterated that Ziff Davis's tardiness threatened to undermine the entire purpose of the MDL if Ziff Davis could not keep up with discovery: "[W]e don't want—for the same reasons that your Honor articulated earlier—to have this tagalong case then upset the applecart with respect to the other issues." *See* ECF 80, 05/22/2025 Hearing Tr. at 67:12-14. But Plaintiffs again assured the Court that Ziff Davis was ready and able to complete discovery alongside the other parties to the MDL, even under Plaintiffs' proposed schedule—one that the Court itself acknowledged was "aggressive." *See id*. at 68:4-8 (News Plaintiffs' Liaison Counsel) ("Most of the discovery has already taken place. And [Plaintiffs' proposed] discovery schedule . . . would allow for Ziff Davis, as currently pled, to be incorporated into this MDL."). And Plaintiffs specifically promised the Court that summary judgment, including on fair use, would not be affected. *See id*. at 53:2-54:13.

Based on these representations, the Court added *Ziff Davis* to the News Cases and declined

4

to stay the case. *See* ECF 60. For its part, OpenAI acted immediately to integrate Ziff Davis into ongoing discovery efforts. Just nine days after the Court opened discovery in *Ziff Davis*, OpenAI cross-produced over a million pages of documents from the other News Cases to ensure that Ziff Davis could keep up. Meanwhile, Ziff Davis continued to tell the Court, at every opportunity, that its inclusion in the MDL would not threaten the case schedule. For example, in response to OpenAI's partial motion to stay Ziff Davis's complaint, ECF 136,[2] Ziff Davis claimed it was "well positioned to catch up with the other Plaintiffs on discovery efforts within the current discovery timelines," ECF 252 at 14. In response to OpenAI's motion to set a substantial completion date for Ziff Davis's production of documents, ECF 381, Ziff Davis assured the Court that no such date was necessary because it was "working zealously to abide by the schedule entered in this case," ECF 433 at 1. And at a hearing mere weeks ago, Ziff Davis *again* told the Court that it could complete discovery on the current MDL schedule. *See* ECF 904, 11/13/2025 Hearing Tr. at 40:17-21 (The Court: "Your position is . . . all the discovery can be done on the current track of late February?" Ziff Davis: "First of all, we think it can be.").

      **C.    Ziff Davis has been unable to keep pace with the other News Cases, just as OpenAI predicted.**

Despite these representations, Ziff Davis's conduct quickly revealed that it was not prepared to, or not intending to, participate in discovery at the pace required to stay on track with the other News Cases. Examples of Ziff Davis's lack of urgency are bountiful. After the parties agreed on a date certain to exchange initial proposed ESI search terms and custodians in July 2025, Ziff Davis unilaterally pushed that date twice, and then still blew past its own subsequent deadline.

---

[2] OpenAI moved to stay the portions of Ziff Davis's complaint that (1) relate to OpenAI's models that are outside the scope of the MDL, and (2) involve claims that are not currently being litigated by other MDL parties. *See generally* ECF 136. The Court granted OpenAI's motion to stay as to the out-of-scope models and dismissed two of Ziff Davis's out-of-scope claims. ECF 968.

*See* Declaration of Andrew S. Bruns ("Bruns Decl.") Ex. A. In doing so, it violated a Court order. *See* ECF 451. Ziff Davis then failed to produce a single document until October 24—less than a month before the date by which Ziff Davis previously assured the Court it could complete ***all fact discovery***. *See* ECF 47 at 40, 69; Bruns Decl. Ex. B. It then violated the governing ESI order by failing to timely serve a privilege log for its withheld and redacted documents. *See* ECF 371 at 13 (requiring service of privilege logs within 30 days of production); Bruns Decl. Ex. C.

These delays have plagued not only document production, but deposition scheduling as well. Ziff Davis sat on OpenAI's request to begin scheduling depositions for nearly two weeks and has only proposed dates for four witnesses of the at least twenty-two that will be taken. *See* Bruns Decl. Exs. D-E. Even then, it has refused to complete production of the core documents relevant to those two witnesses' depositions—including documents as basic as copies of Ziff Davis's Asserted Works—before the depositions. *See* ECF 355 at 5 (requiring substantial completion of such documents "at least 14 days before the scheduled deposition"); Bruns Decl. Ex. F. After OpenAI elected not to proceed with two of the three witnesses' depositions due to Ziff Davis's failure to produce documents, Ziff Davis has declined to offer alternate dates. *See* Bruns Decl. Ex. G (stating that Ziff Davis "do[es] not know when [the witnesses] will be made available again."). And on top of all this, Ziff Davis waited nearly a month to substantively respond to OpenAI's Rule 30(b)(6) notice and still has not served actual responses and objections, further delaying OpenAI's ability to take nonduplicative depositions of Ziff Davis witnesses. *See* Bruns Decl. Ex. H.

**D.    In a sharp about-face, Ziff Davis now concedes it cannot adhere to the current case schedule.**

Despite having repeatedly assured the Court that it could, and would, keep up with the existing case schedule, Ziff Davis has now—as a consequence of its own actions and delay—changed its tune. On a meet and confer on December 12, Ziff Davis stated for the first time that it

6

3938072

would be unable to meet the February 27 fact discovery cutoff. *See* Bruns Decl. ¶ 3. Later that day, it filed a letter asking the Court to substantially adjust the case schedule for that reason, noting expressly that "the February 27, 2026 fact discovery cutoff no longer seems viable as it relates to *Ziff Davis*." ECF 963 at 3. Indeed, Ziff Davis has further acknowledged that the extension it is requesting will impact the timing of summary judgment, noting that "[a]t this point, there is a strong likelihood that any summary judgment motion (including as to a 'fair use' defense) will be met with a Rule 56(d) Declaration." *Id.*

This reversal of course is stark. Ziff Davis once implored the Court to keep its case on track with the other News Cases because to do otherwise would "not only fragment the discovery process and delay the resolution of critical disputes, but would also effectively ask the Court to devise a bespoke litigation approach for Ziff Davis alone, on claims that largely dovetail with the claims brought by other Plaintiffs in the MDL." ECF 252 at 12. But it now asks for exactly that—a bespoke litigation approach for Ziff Davis alone that would inconvenience the Court and prejudice OpenAI. *See* ECF 963.

OpenAI met and conferred with Ziff Davis about its requested schedule. During that conference, Ziff Davis suggested delaying the close of fact discovery ***by three months***, which would force OpenAI and Ziff Davis to continue conducting depositions ***after*** the May 8 deadline for rebuttal expert reports in the other News Cases and leave fewer than ninety days before summary judgment. *See* Bruns Decl. ¶ 4; *id.*, Ex. I. Ziff Davis's proposal also unilaterally excises reply expert reports from the schedule, contrary to the Court's ruling at the initial case management conference. *See id.* ¶ 4; ECF 80, 05/22/2025 Hearing Tr. at 56:18-21. As in its letter to the Court, Ziff Davis has thus far failed to explain how its proposed extension could avoid upending expert discovery and dispositive motions. And, as of filing, Ziff Davis still has not proposed any specific

7

alternative schedule that it can commit to adhering to and that would not affect the broader MDL schedule. To the contrary, as described in more detail below, Ziff Davis's proposal would not only severely prejudice OpenAI, but would also require an extension of the expert discovery dates and would likely push back, by months, the deadlines to brief and hear summary judgment. Faced with Ziff Davis's extraordinary and impractical proposal, OpenAI now seeks a stay of the *Ziff Davis* action.

### III.   LEGAL STANDARD

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Louis Vuitton Malletier S.A. v. LY USA, Inc.*, 676 F.3d 83, 96 (2d Cir. 2012) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). Courts in the Second Circuit consider five factors in deciding whether a stay is appropriate: "(1) the private interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed; (2) the private interests of and burden on the defendants; (3) the interests of the courts; (4) the interests of persons not parties to the civil litigation; and (5) the public interest." *Kappel v. Comfort*, 914 F. Supp. 1056, 1058 (S.D.N.Y. 1996); *see also Gallagher v. Boehringer Ingelheim Pharms., Inc.*, No. 22-cv-10216 (LJL), 2023 WL 402191, at *9 (S.D.N.Y. Jan. 25, 2023) (applying the *Kappel* factors in the MDL context). These factors are balanced with the principal aim of avoiding unfair prejudice to either party. *Am. Steamship Owners Mut. Prot. & Indem. Ass'n, Inc. v. Lafarge N. Am., Inc.*, 474 F. Supp. 2d 474, 482 (S.D.N.Y. 2007), *aff'd sub nom. New York Marine & Gen. Ins. Co. v. Lafarge N. Am., Inc.*, 599 F.3d 102 (2d Cir. 2010).

### IV.   ARGUMENT

All *Kappel* factors favor a stay. Without one, the parties and the Court will be mired in duplicative and overlapping proceedings for months, hindering the ultimate resolution of common

8

issues of fact and law.

### A. The interests of the Court favor staying the *Ziff Davis* case in its entirety.

It is axiomatic that a stay is warranted where it would serve judicial economy. *See, e.g., LaSala v. Needham & Co.*, 399 F. Supp. 2d 421, 427 (S.D.N.Y. 2005); Manual for Complex Litig. § 22.314 (4th ed. 2004). Indeed, "[c]ourts in this district routinely issue stays when awaiting the outcome of proceedings which bear upon the case, even if such proceedings are not necessarily controlling of the action to be stayed." *Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co.*, No. 17-cv-5916 (AJN), 2018 WL 3849840, at *2 (S.D.N.Y. Aug. 10, 2018) (internal citation omitted). Accordingly, "[i]n determining whether a stay is appropriate, the Court must consider whether the interests of efficient judicial administration and comprehensive disposition of litigation is better served through an order to stay the proceedings." *Id.* (internal citation omitted).

There can be no serious dispute that staying the *Ziff Davis* case would be a more efficient use of judicial resources than granting Ziff Davis's proposed extension. Granting Ziff Davis's request for a three-month extension, *see* Bruns Decl. ¶ 4, would alter the existing schedule, ECF 238, in at least the following ways:

| Event | Existing Schedule | Ziff Davis's Proposal |
| --- | --- | --- |
| Close of fact discovery | February 27, 2026 | May 27, 2026 |
| Exchange of opening expert reports | April 10, 2026 | June 5, 2026 |
| Exchange of rebuttal expert reports | May 8, 2026 | June 26, 2026 |

This would invite chaos. Ziff Davis's complaint was initially consolidated into this MDL due to "questions of fact that are common" to the other MDL cases, ECF 41 at 1, but under Ziff Davis's proposed double-track schedule, it would proceed with expert reports and summary judgment on a different factual record than the other News Plaintiffs. Allowing *Ziff Davis* to limp

9

along in the background only risks that developments in its case will derail the other cases. As just one example, any post-February 27 discovery in the *Ziff Davis* case may bear on the parties' expert reports in the other News Cases, inviting amended reports or, at the very least, endless disputes about whether such reports should be permitted and what evidence they may contain. And any extension to fact discovery and expert reports is sure to have a cascading effect on summary judgment briefing in *Ziff Davis*, creating an unwieldy state of affairs where the Court must adjudicate dispositive motions on two separate tracks.

Ziff Davis's proposal thus ignores the Court's admonition against "throwing the tight schedule into disarray," ECF 724, 10/08/25 Hearing Tr. at 37:16-17, and would wreak havoc on expert report and dispositive motions deadlines across all consolidated cases. It would also pervert the MDL process and waste the Court's limited resources with duplicative litigation and avoidable motions practice. *See Harris v. Wyeth, Inc.*, No. 4-cv-7615 (NRB), 2012 WL 2317338, at *1 (S.D.N.Y. June 15, 2012) (observing that one MDL plaintiff's request to extend fact discovery past the coordinated discovery cut-off "would seem to undermine the very purpose of MDL proceedings, which is to coordinate and complete shared pretrial matters such as generic discovery").

A stay, meanwhile, would simplify proceedings for the Court. The Court's rulings on the remaining parties' dispositive motions will establish clear precedent that will guide the eventual litigation of the *Ziff Davis* action and any other stayed tag-along cases. For example, the Court may resolve key questions common to all cases—whether OpenAI's use was fair, what constitutes an infringing output, whether plaintiffs' CMI-removal claims are viable, etc.—that would lead to far more efficient proceedings in the trailing cases, including Ziff Davis's. Even if the Court does not resolve certain issues on summary judgment in the MDL, its order will help identify the key

questions on which summary judgment in the tag-along cases will turn, thereby allowing the parties to target their discovery efforts towards answering those questions. Doing so would streamline discovery and avoid burdening this Court with unnecessary discovery disputes. A stay would also give OpenAI and Ziff Davis the opportunity to explore settlement with the benefit of the Court's MDL rulings, which could obviate further discovery, expense, and use of the Court's resources. *See LaSala*, 399 F. Supp. 2d at 429 ("granting a stay furthers the long-recognized public and judicial policy in favor of the settlement of disputes"); *In re OxyContin Antitrust Litig.*, No. 04-md-1603 (SHS), 2012 WL 5184949, at *6-7 (S.D.N.Y. Oct. 19, 2012) (finding that the interests of the Court "weigh in favor of a stay" where a stay would increase the likelihood that the stayed case is "resolved on other grounds or settled before trial").

Courts in similar circumstances have concluded that a stay is the only appropriate course. In *In re Ford Motor Co. Bronco II Products Liability Litigation*, for example, a tag-along plaintiff's case was transferred to MDL proceedings long after the JPML consolidated five other pending cases, but the tag-along plaintiff was allowed to join the MDL midstream in part because it "led [defendant] to believe" that it would not derail the case schedule and would file a motion for class certification concurrently with the other plaintiffs. No. CIV. A. 95-1966, 1996 WL 148294, at *1 (E.D. La. Apr. 1, 1996). Instead, though, the tag-along plaintiff sought to file its class certification motion long after the parties in the core MDL proceeding had already litigated the issue. In other words, the tag-along plaintiff sought "a second bite at the class certification apple—having had the privilege of crafting a certification motion with the benefit of [defendant's] complete opposition to the core plaintiffs' motion." *Id*. As the court observed, this unworkable situation is "illustrative of the administrative problems which inevitably arise as a result of the addition of tag-along actions" that cannot keep up; "[t]o ameliorate such problems, I have found it

11

3938072

beneficial in other multidistrict litigation to stay proceedings related to the tag-along actions until the core proceedings have been completed." *Id.*, at *2; *see also Tennessee Med. Ass'n v. United Healthgroup Inc.*, No. 00-1334-MD, 2014 WL 12837582, at *1 (S.D. Fla. Jan. 16, 2014) (describing "a series of stay orders as to all tag-along actions pending resolution of [the core MDL] case").

Ziff Davis's delay has caused the same administrative problems here, because "[a]lthough [Ziff Davis] was consolidated herein early enough for the [C]ourt to expect compliance with any deadlines imposed by the [C]ourt that had not yet passed, [Ziff Davis] did not so comply." *In re Ford Motor Co.*, 1996 WL 148294, at *2. Ziff Davis's failure to keep up now poses myriad administrative problems that threaten the core MDL proceedings and almost ensure wasted judicial resources absent a stay. The Court should therefore stay the *Ziff Davis* case entirely.

### B. The burden and prejudice faced by OpenAI also favors a stay.

For many of the same reasons, OpenAI would be prejudiced if a stay is not entered. Ziff Davis joined these coordinated proceedings—and avoided an immediate stay—by representing to OpenAI and the Court that it could and would proceed with discovery swiftly. As a result of these representations, OpenAI has undertaken extensive and costly discovery related to Ziff Davis's claims, only for Ziff Davis to now renege on its promises and refuse to keep pace. Ziff Davis should not be permitted to pull this bait and switch. If OpenAI is forced to continue spending significant resources on discovery in the *Ziff Davis* case well past the MDL discovery cutoff, much of that discovery is likely to be cumulative or duplicative. This is especially true because some or all of Ziff Davis's claims (or OpenAI's defenses) may be resolved by the Court's summary judgment rulings in the remaining cases. Such an outcome is clearly prejudicial to OpenAI. *See, e.g., Readick v. Avis Budget Grp., Inc.*, No. 12-cv-3988 (PGG), 2014 WL 1683799, at *5 (S.D.N.Y. Apr. 28, 2014) (finding prejudice to defendant where "[u]nless a stay is granted, [defendant] will

be forced to engage in potentially duplicative and costly discovery. To the extent [a more-advanced case] disposes of some or all of Plaintiff's claims, discovery in *Readick* will serve little or no purpose."); *Finn v. Barney*, No. 08-cv-2975 (LTS) (KNF), 2008 WL 5215699, at *3 (S.D.N.Y. Dec. 8, 2008) (internal citation omitted) ("Permitting Plaintiff to engage in discovery in his action, which clearly arises out of the same nucleus of common facts as the pending class action, would prejudice Defendants through the imposition of premature and potentially duplicative discovery burdens.").

Beyond this prejudicial discovery burden, Ziff Davis's delay and proposed extension also threatens OpenAI's full and fair opportunity to present its case. Ziff Davis's proposed extension would strip OpenAI of its ability to submit reply expert reports, a right OpenAI specifically requested and the Court granted. *See* ECF 80, 05/22/2025 Hearing Tr. at 56:19-20 (the Court) (noting that "given the obligation of the party that bears the burden of proof to go first," such as for OpenAI's fair use defense, reply expert reports are critical). In other words, Ziff Davis seeks to use its own inability to complete discovery as a pretext to nullify a necessary procedure that OpenAI requested and that the Court has acknowledged as important. That result would be inequitable, to say the least. Also, as explained above, Ziff Davis's proposal would allow it to see OpenAI's expert reports in the other News Cases before completing fact discovery or serving its own opening reports. Ziff Davis should not be permitted to leverage its delay to obtain a strategic advantage in the litigation.

### C. A stay will not prejudice Ziff Davis.

Ziff Davis has not, and cannot, identify any specific prejudice it will suffer if the Court grants OpenAI's request for a stay. At most, it may protest that a stay will delay resolution of its claims. However, "[b]ecause delay results inherently from the issuance of a stay, courts have found that mere delay does not, without more, necessitate a finding of undue prejudice and clear tactical

13

disadvantage." *McCracken v. Verisma Sys., Inc.*, No. 6:14-cv-06248 (MAT), 2018 WL 4233703, at *3 (W.D.N.Y. Sept. 6, 2018) (internal quotation marks omitted); *see also LaSala*, 399 F. Supp. 2d at 430 (internal citation omitted) ("[I]t does not suffice for any party-plaintiff . . . to assert . . . an inherent right [to proceed in litigation] and rest its case on that bald, abstract proposition, without articulating in concrete terms the practical, real life effects of the potential deprivation of that right under the circumstances of the particular case at bar.").

Even if that were not the law, there is no reason to suspect that any delay resulting from a stay would unduly prejudice Ziff Davis. Ziff Davis waited more than a year to file its complaint, sitting on its claims until after the MDL was created. *See* ECF 300 ¶ 9 (noting that "by letters dated February 5, 2024 and May 20, 2024, Ziff Davis put OpenAI on notice of Ziff Davis's claims"). Any further delay caused by a stay therefore would be incremental and nonprejudicial. *See Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co.*, No. 17-cv-5916 (AJN), 2018 WL 3849840, at *2 (S.D.N.Y. Aug. 10, 2018) (granting motion a stay in part because "the Court can find no prejudice to [plaintiff] if resolution were delayed;" "[i]f this action were truly exigent, such that significant delay accrued significant harms to [plaintiff], [plaintiff] would not have waited" more than a year to file its complaint).

Moreover, after joining the MDL, Ziff Davis failed to keep pace as promised. Having been given the opportunity to proceed with its claims, and now being unable to do so due to its own lack of diligence, Ziff Davis cannot now claim prejudice from a stay. Were there a true risk of such prejudice, Ziff Davis would have acted more urgently to complete discovery by the existing deadlines. It failed to do so, and consequently cannot now complain about prejudice arising from a problem of its own making.

Indeed, if anything, a stay would *minimize* prejudice to Ziff Davis. By staying the case in

its entirety, the Court would allow the parties to litigate all of Ziff Davis's claims—those that are currently stayed and those that are not—in one fell swoop. Granting Ziff Davis's request for an extension, on the other hand, would force the parties to litigate its claims in two separate tranches (themselves separate from the main News Case tranche). And Ziff Davis has repeatedly asserted that bifurcation is prejudicial. For example, in its opposition to OpenAI's motion for a partial stay, Ziff Davis wrote that it "seeks to litigate together all the causes of action it has asserted in this proceeding due to their fundamental interconnectedness and the significant burden bifurcation would impose . . . . Forcing Ziff Davis to wait to move forward with some of these claims and proceed with fact discovery on them at some undetermined later time and in some undetermined context would inflict **severe prejudice**." ECF 252 at 6 (emphasis added). The Court should take Ziff Davis at its initial word that proceeding with all of its claims at once would minimize any prejudice Ziff Davis might suffer. Thus, this factor favors staying the entire case, as well.

> **D.      The interests of non-parties and the public favor staying the *Ziff Davis* case in its entirety.**

Finally, the public interest also favors a stay. Ziff Davis's proposed extension threatens to bog down these MDL proceedings and create myriad inefficiencies that might prolong adjudication of core issues in the coordinated cases. Staying the *Ziff Davis* case, by contrast, will promote a streamlined MDL process and serve judicial economy. *See* ECF 80, 05/22/2025 Hearing Tr. at 36:22-23 (the Court) ("there's a public interest in these things being resolved"); *Royal Park Invs. SA/NV*, 2018 WL 3849840, at *3 ("With respect to the public, while the public has an interest in prompt adjudication in this and all other cases, the public is also not served by any wasting of judicial resources"); *In re Zimmer M/L Taper Hip Prosthesis or M/L Taper Hip Prosthesis with Kinectiv Tech. & Versys Femoral Head Prods. Liab. Litig.*, No. 18-cv-10393, 2021 WL 5963392, at *5 (S.D.N.Y. Dec. 16, 2021) (internal citation omitted) ("The public, too,

15

has an interest in judicial economy—one that weighs against the investment of court resources that may prove to have been unnecessary.").

## V.     CONCLUSION

For all these reasons, Ziff Davis's proposal to create a special track for extended Ziff Davis-specific discovery "would be contrary to the interests of the Court, non-parties, and the public in a speedy resolution of the core copyright issues in this MDL." ECF 968 at 15. Because of Ziff Davis's conduct—and by Ziff Davis's own admission—the current discovery schedule has become unworkable. OpenAI therefore respectfully asks the Court to stay the *Ziff Davis* case.

Dated: December 19, 2025

| | |
|---|---|
| /s/ *Elana Nightingale Dawson* | /s/ *Rose S. Lee* |
| **LATHAM & WATKINS LLP** | **MORRISON & FOERSTER LLP** |

Andrew M. Gass (*pro hac vice*)
 andrew.gass@lw.com
San Francisco, CA 94111
Telephone: 415.391.0600

Sarang V. Damle
 sy.damle@lw.com
Luke A. Budiardjo
 luke.budiardjo@lw.com
1271 Avenue of the Americas
New York, NY 10020
Telephone: 212.906.1200

Elana Nightingale Dawson (*pro hac vice*)*
 elana.nightingaledawson@lw.com
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Telephone: 202.637.2200

Joseph C. Gratz (*pro hac vice*)
 jgratz@mofo.com
Tiffany Cheung (*pro hac vice*)
 tcheung@mofo.com
425 Market Street
San Francisco, CA 94105
Telephone: 415.268.7000

Rose S. Lee (*pro hac vice*)*
 roselee@mofo.com
707 Wilshire Boulevard, Suite 6000
Los Angeles, CA 90017
Telephone: 213.892.5200

Carolyn M. Homer (*pro hac vice*)
 cmhomer@mofo.com
2100 L Street, NW, Suite 900
Washington, DC 20037
Telephone: 202.650.4597

/s/ *Andrew S. Bruns*
**KEKER, VAN NEST & PETERS LLP**
Robert A. Van Nest (*pro hac vice*)
 rvannest@keker.com
R. James Slaughter (*pro hac vice*)
 rslaughter@keker.com
Paven Malhotra
 pmalhotra@keker.com
Michelle Ybarra (*pro hac vice*)
 mybarra@keker.com
Andrew S. Bruns (*pro hac vice*)
 abruns@keker.com
633 Battery Street
San Francisco, CA 94111-1809
Telephone:  415 391 5400
Facsimile:  415 397 7188

*Attorneys for Defendants*

---

*All parties whose electronic signatures are included herein have consented to the filing of this document, as contemplated by Rule 8.5(b) of the Court's ECF Rules and Instructions.

3938072