# Exhibit B—News Chart

**Exhibit B (News Chart)**

Key: Green represents Plaintiffs' filing; Purple represents Defendants' filing.

| Motion | Date Filed | Opp. | Topic in Dispute | Moving Party | Responding Party | Status | Parties' Positions |
|---|---|---|---|---|---|---|---|
| **I.** | **Motions Filed During Week of January 5** | | | | | | |
| *Times* Dkt. 311 (Public Filing) Dkt. 311-1 (Public Filing) Dkt. 311-2 (Public Filing) Dkt. 311-3 (Public Filing) Dkt. 311-4 (Public Filing) Dkt. 311-5 (Public Filing) Dkt. 1014 | 11/18/24 01/02/26 | *Times* Dkt. 338 (Public Filing) Dkt. 338-1 (Public Filing) Dkt. 1100 | Microsoft's Production of Output Logs | News Plaintiffs | Microsoft | The Court heard argument at the December 5, 2025 conference, and ordered the Parties to meet and confer and to provide an update on December 10, Dkt. 910, which the parties provided, Dkt. 950. News Plaintiffs filed a follow-on motion on January 2 that is set to be argued at the January 15 conference. | **News Plaintiffs' Position**: News Plaintiffs seek to compel Microsoft to immediately produce the 8.1 million Copilot output logs referencing News Plaintiffs' names or domains in a readily searchable format via a remote review environment allowing for meaningful and efficient review. Despite agreeing to produce this information, Microsoft continues to delay production. Microsoft has neither responded to News Plaintiffs' requests for a remote review environment nor their request that Microsoft provide a date certain for production. With less than two months left in fact discovery, it is imperative that News Plaintiffs get access to this data immediately. News Plaintiffs hope that Microsoft will produce this data by January 9, as requested, but if Microsoft fails to do so News Plaintiffs request that this Court issue an order compelling Microsoft to produce this data within a day of that ruling.<br><br>**Microsoft's Position:** News Plaintiffs' request for immediate production is premature and untenable, violating meet and confer requirements. Microsoft is willing to provide secure remote access to the data logs, but the Parties have not (1) conferred regarding technical details for how Microsoft will make the data available; (2) ironed out a protocol governing data handling, such as a procedure for requests to remove data excerpts from the remote environment; and (3) Microsoft requires more time to identify and redact third-party PII. The Court should order News Plaintiffs to complete meet and confer before issuing an order for production.<br>Throughout discovery, Microsoft has productively engaged with News Plaintiffs to determine a methodology for reasonable discovery into the petabytes of Copilot log data. The Parties agreed on relevant data fields and search terms resulting in approximately 8.2 million logs Microsoft has agreed to produce. But now that Microsoft has collected the logs, News Plaintiffs have abandoned meet and confer and instead prematurely filed this motion over the New Years holiday—only three days after the December 30th conferral |

| Motion | Date Filed | Opp. | Topic in Dispute | Moving Party | Responding Party | Status | Parties' Positions |
|---|---|---|---|---|---|---|---|
| | | | | | | | regarding the manner, timing, and procedures governing production. The parties are not at an impasse. The Court should deny News Plaintiffs' request and order further meet and confer. |
| Dkt. 1028 (Public Filing) Dkt. 1032 (Sealed Filing) | 01/05/26 | Dkt. 1126 (Public Filing) Dkt. 1130 (Sealed Filing) | The Times's profit-and-loss statements | OpenAI | The Times | This dispute is fully briefed and the court has not yet heard argument. | **OpenAI's Position:** OpenAI requests an order compelling The Times to produce product-specific P&L Statements for the five verticals The Times put at issue in the Complaint – News, Wirecutter, Games, Cooking, and The Athletic. The Times does not dispute the relevance of these P&Ls, which bear directly on The Times's allegations of harm and damages to the products that it put at issue in its Complaint. And The Times's only argument as to burden is its unsupported assertion—lacking any affidavit or declaration—that production of a mere 100 already-identified documents would be unduly burdensome because its production of aggregate, company-wide revenue numbers (in the "Flash Books") should suffice. But the Flash Books report only consolidated and high-level information (likely prepared from these underlying documents), which conceals key details regarding product-level revenues and expenses. The Times's contention that the Flash Books already contain this information is a red herring. The Times's own filings demonstrate that the Flash Book P&Ls are mere summaries that omit numerous categories of information from The Times's product-specific P&Ls, which The Times separately maintains for those same verticals. *See* ECF 1032 Ex. F OpenAI is simply requesting that those existing underlying documents be produced, and not for the creation of any new documents (like one for The Athletic which the Times states does not exist).<br><br>The Times is not entitled to cherry-pick exclusively high-level and consolidated revenue numbers. This is especially true given The Times's overall revenues have increased year-over-year and that The Times has indicated that its theory of harm is therefore more nuanced and product specific. The Times's attempt to maintain this theory of harm—while simultaneously withholding the underlying data necessary to test it—should be rejected. The Court should order The Times to produce its already-existing product-specific P&Ls for News, Wirecutter, Games, Cooking, and The Athletic.<br><br>**The Times's Position:** OpenAI's sole basis for compelling the product-specific P&Ls is that they allegedly "provide |

| Motion | Date Filed | Opp. | Topic in Dispute | Moving Party | Responding Party | Status | Parties' Positions |
|---|---|---|---|---|---|---|---|
| | | | | | | | necessary context for The Times's top line revenue numbers." Dkt. 1032 at 3. However, The Times has already produced its monthly flashbooks dating back to 2015. These flashbooks were prepared by The Times's finance department and provide a detailed breakdown of The Times's revenue and expenses by source. Furthermore, these flashbooks contain, *inter alia*, Advertising P&L, Marketing P&L, Print Products & Services P&L, Product and Design P&L, Data Insights Group P&L, Games P&L, Cooking P&L, The Athletic P&L, and Wirecutter P&L—again, all broken out separately. *See, e.g.*, Dkt. 1116, Ex. C at 6, 131–133 (Games and Cooking P&L); *id.* at 6, 8–10 (The Athletic P&L); *id.* at 134 (Wirecutter P&L). And, The Times does not maintain a standalone News P&L. Until Q3 2025, The Times separately reported adjusting operating profit, revenues, and operating costs for The Athletic in its quarterly earnings.<br><br>Crucially, The Times internally views these flashbooks as the definitive source of its financial information. The Times also notes that contrary to OpenAI's baseless assertion that these reports are preliminary, The Times produced the final, published versions of the flashbooks to Defendants; that it *also* produced preliminary versions for some months does not support OpenAI's request for yet more discovery. Given the extensive financial information contained in these monthly flashbooks, The Times fails to see why OpenAI also needs product specific P&Ls dating back to 2015. Such a request would subject The Times to undue burden, as it would be required to collect and produce over 100 P&Ls across multiple different verticals. |
| Dkt. 394 (Public Filing) Dkt. 394-1 (Public Filing) Dkt. 394-2 | 7/30/25 | Dkt. 435 (Sealed Filing) Dkt. 435-1 (Sealed Filing) Dkt. 436 | OpenAI's Production of Output Log Data | News Plaintiffs | OpenAI | The Court granted News Plaintiffs' motion to compel on November 7, 2025. Dkt. 734. Judge Stein affirmed that order on January 5, 2026. Dkt. | **News Plaintiffs' Position**: News Plaintiffs submit that OpenAI has likely engaged in sanctionable conduct in violation of this Court's orders to preserve consumer ChatGPT logs and to produce the 20 million de-identified sample of consumer ChatGPT logs. *First*, OpenAI has substituted roughly 10% of News Plaintiff's requested 20 million sample of logs (approximately two million logs) because, according to OpenAI, it: (i) deleted approximately 5% the logs notwithstanding this Court's Preservation Order, and (ii) "filtered" out another ~5% of the requested logs without informing News Plaintiffs. OpenAI refused to identify which logs it substituted from News Plaintiffs' original sample or provide information regarding the |

3

| Motion | Date Filed | Opp. | Topic in Dispute | Moving Party | Responding Party | Status | Parties' Positions |
|---|---|---|---|---|---|---|---|
| (Public Filing) Dkt. 394-3 (Public Filing) Dkt. 394-4 (Public Filing) Dkt. 394-5 (Public Filing) Dkt. 394-6 (Public Filing) Dkt. 398 (Public Filing) Dkt. 398-1 (Public Filing) Dkt. 398-2 (Public Filing) Dkt. 398-3 (Public Filing) Dkt. 398-4 (Public Filing) | | (Public Filing) Dkt. 436-1 (Public Filing) Dkt. 436-2 (Public Filing) Dkt. 403 (Public Filing) Dkt. 403-1 (Public Filing) Dkt. 403-2 (Public Filing) Dkt. 403-3 (Public Filing) Dkt. 403-4 (Public Filing) Dkt. 403-5 (Public Filing) Dkt. 403-6 (Public Filing) | | | | 1021. News Plaintiffs filed an additional motion on January 5, 2026, which is set to be argued at the January 15 conference. | timing of these deletions or the specific reasons for each substitution. *Second*, OpenAI inappropriately redacted the 20 million logs made available to News Plaintiffs in a manner that significantly frustrates News Plaintiffs' analysis. OpenAI has applied over 19 billion redactions in over 15.4 million output logs (not including redactions to the user id applied to all 20 million logs), including redactions to URLs (over 1.1 million URLs redacted) as well as News Plaintiffs' names, bylines, and headlines, among other information. News Plaintiffs respectfully request that this Court: (1) issue an order for OpenAI to show cause why it should not be held in contempt for violating this Court's orders, and (2) set an evidentiary hearing following the close of expert discovery to determine appropriate remedies or sanctions from OpenAI's conduct over the course of the litigation regarding output log discovery.<br><br>**OpenAI's Position**: News Plaintiffs' motion contains very serious accusations but is devoid of any legal substance, much less actual facts. They claim that OpenAI has "likely" violated either this Court's May 13 Preservation Order or its orders compelling production of a 20 million de-identified sample of consumer ChatGPT logs ("Production Order"). Neither is true.<br>First, News Plaintiffs complain that OpenAI violated the Preservation Order by "delet[ing] approximately 5% of the logs" they selected for sampling. But this Court confirmed that the Order did not require OpenAI to suspend the "deletion processes" that enable users to delete their conversations (nor would that be feasible). 5/27/2025 Hr'g Tr. 34:17-20. Instead, the Court required OpenAI to "preserve and segregate" conversation data going forward in separate "30-day tables," which is exactly what OpenAI did. OpenAI did not violate the Preservation Order.<br>Second, News Plaintiffs suggest that OpenAI violated the Production Order by filtering and redacting the logs before production. As for filtering: OpenAI disclosed the need to filter the logs (e.g., to exclude out-of-scope models) over six months ago, and News Plaintiffs did not object, and the Production Order does not address the processing or filtering of the merits sample. As for redactions: News Plaintiffs' suggestion that OpenAI redacted logs to obstruct their analysis of the logs is baseless and unequivocally false. The Production Order specifically requires OpenAI to redact private |

4

| Motion | Date Filed | Opp. | Topic in Dispute | Moving Party | Responding Party | Status | Parties' Positions |
|---|---|---|---|---|---|---|---|
| Dkt. 656 (Public Filing) Dkt. 656-1 (Public Filing) Dkt. 656-2 (Public Filing) Dkt. 656-3 (Public Filing) Dkt. 656-4 (Public Filing) | 10/15/25 | Dkt. 410 Dkt. 679 Dkt. 679-1 Dkt. 681 Dkt. 681-1 | | | | | information, which is exactly what OpenAI did by applying a best-in-class content-agnostic de-identification process designed to look for and redact information that could be used to identify a user — whether that content appears in plaintext or in a URL. And News Plaintiffs neglect to mention that OpenAI worked through the holidays to address the redaction-related issues they raised, including by re-producing a version of the same data on December 23 with fewer redactions. OpenAI did not violate the Production Order.<br><br>OpenAI recently completed one of the largest productions of user data in history, in the face of extraordinary technical and privacy challenges. In so doing, OpenAI complied with each and every one of this Court's directives. Because News Plaintiffs have not shown otherwise, and because they have failed to identify any factual disputes that require their requested evidentiary hearing, their motion should be denied. |
| Dkt. 719 | 10/30/25 | Dkt. 717 | | | | | |
| Dkt. 742 | 11/12/25 | Dkt. 746 | | | | | |
| Dkt. 752 | | | | | | | |
| Dkt. 840 | 11/24/25 | | | | | | |
| Dkt. 1061 | 01/05/26 | Dkt. 1126 | | | | | |

5

| Motion | Date Filed | Opp. | Topic in Dispute | Moving Party | Responding Party | Status | Parties' Positions |
|---|---|---|---|---|---|---|---|
| Dkt. 1065 (Public Filing)<br><br>Dkt. 1059 (Sealed Filing)<br><br>Dkt. 1148-1 (Sealed Ex. H - Corrected) | 01/05/26 | Dkt. 1120 | Daily News Plaintiffs' identification of the asserted copyrighted works and 30(b)(6) deposition testimony thereto | Defendants | Daily News Plaintiffs | This dispute is fully briefed and the court has not yet heard argument. | **Defendants' Position:** Defendants move (i) to compel Daily News Plaintiffs to identify, as sought in Interrogatory No. 2, the specific articles they claim to own and assert in this case (the "Asserted Works") and (ii) for four additional hours of 30(b)(6) deposition testimony on Plaintiffs' ownership and registration of the Asserted Works.  In any copyright case, the parties and the court must know which specific copyrighted works the plaintiff is asserting.  That is why Defendants requested that information from Plaintiffs shortly after Plaintiffs filed suit in 2024.  Daily News Plaintiffs do not dispute that, a year and a half ago–in response to that request–they  agreed to identify the specific articles they claim to own and assert, and then said they had done so in spreadsheets produced in September 2024. But this was not true, Plaintiffs revealed just weeks ago that they have never provided a list of the Asserted Works.  The spreadsheets produced in 2024 in fact contain potentially millions of articles that Plaintiffs neither own nor assert.  Plaintiffs now say they will not provide such a list until the end of discovery.  This is not workable and is contrary to law.  Defendants need the list to develop their defenses in this case and to use during depositions.  That is why the law requires that Plaintiffs identify the copyrighted works they are asserting, just as every other plaintiff in this MDL claims to have done.  Defendants thus seek an order requiring Daily News Plaintiffs to produce a list of Asserted Works by January 23, 2026.<br><br>Because of Plaintiffs' obfuscation, Defendants spent approximately four hours deposing Plaintiffs' 30(b)(6) designees on ownership and registration of the Asserted Works without an accurate list of the Asserted Works. Even Plaintiffs' designees could not identify the specific articles Plaintiffs claim to own and assert.  Plaintiffs' claims to the contrary are belied by the record.  Plaintiffs also produced, *during the deposition on ownership*, a new list of 2,500 names, claiming that Plaintiffs are only asserting articles by the people listed.  But even then, the designee could not say which articles those were, and admitted that it was impossible to do so with the information available.  The designee also admitted that she had not reviewed all of the documents necessary to address whether Plaintiffs owned all the articles in the spreadsheets.  Defendants should thus be permitted to take a four-hour |

6

| Motion | Date Filed | Opp. | Topic in Dispute | Moving Party | Responding Party | Status | Parties' Positions |
|---|---|---|---|---|---|---|---|
| | | | | | | | 30(b)(6) deposition on ownership and registration of the Asserted Works, once Plaintiffs identify them, and not have the time counted towards the deposition hours cap.<br><br>*Daily News* **Plaintiffs' Position:** OpenAI has not justified reopening the 30(b)(6) depositions on the copyright registrations and ownership. *Daily News* Plaintiffs produced article spreadsheets and ~36.5TB of copies of the newspaper deposits registered at the Copyright Office over a year ago, among other discovery as to the registrations and ownership. As to scope of the copyright registrations, *Daily News* Plaintiffs' 30(b)(6) witness testified that "everything is covered, including the issues, articles, website." *Daily News* Plaintiffs' 30(b)(6) witness on ownership came prepared to testify as to ownership of the asserted newspaper issues, ownership of the asserted articles, chain of title of the copyright registrations, any assignments and/or name changes, and the facts relevant to determine ownership in work-for-hire situations. That witness also came prepared with written aids to assist with her testimony in the form of lists of staff writers and freelancers (provided at the beginning of the deposition), and also explained in her deposition other ways to determine ownership beyond the written aids. She also fully testified as to ownership of the article identified in OpenAI's motion in the portion of her answer that OpenAI elided from its brief.<br><br>Accordingly, OpenAI's request for additional time to reopen the 30(b)(6) depositions should be denied. *Daily News* Plaintiffs have also committed to voluntarily winnowing the article spreadsheets down to the articles over which they assert ownership no later than the close of fact discovery. |
| [Dkt. 1052](Dkt. 1052) | 01/05/26 | [Dkt. 1115](Dkt. 1115) | OpenAI Source Code and Training Data Printouts | Ziff Davis | OpenAI | This dispute is fully briefed and the court has not yet heard argument. | **Ziff Davis's Position:** Ziff Davis seeks an order requiring OpenAI to run URL searches across all training data that includes the URL field for all Ziff Davis domains, and N-Gram searches (as it has done and was ordered to do for other News Plaintiffs, using the same parameters used for other News Plaintiffs), and to re-print source code and training data that it has already provided to other News Plaintiffs. *See, e.g.*, 24-cv-4872, Dkt. 223 at 2 ("As directed by the Court, the parties met and conferred regarding proposed datasets and threshold values for the proposed "N-Gram Search" of OpenAI training data. OpenAI will attempt to run an agreed |

7

| Motion | Date Filed | Opp. | Topic in Dispute | Moving Party | Responding Party | Status | Parties' Positions |
|---|---|---|---|---|---|---|---|
| | | | | | | | N-gram search on an identified set of training datasets and produce the results"). OpenAI should be compelled to make the training data available via the more efficient Databricks or Snowflake tools that are available to OpenAI engineers in the ordinary course. Indeed, OpenAI produced the Output Logs in Databricks. . After weeks and months of refusals, OpenAI now says that it "agreed" to some of this relief, just before the deadline for filing this month's discovery motions. In the same breath, OpenAI also now contends that it has been seeking information from Ziff Davis "for four months," which is incorrect, and still suggests that Ziff Davis does not need printouts provided to other News Plaintiffs (even though it seemingly says that issue is "moot").  Contrary to OpenAI's assertions, Ziff Davis and its experts (and others) have shown that the mechanisms available in the source code room are unnecessarily slow. OpenAI now backs away from its offer to investigate making the data available in Databricks. These issues need to come to a resolution. Absent a firm stipulation, OpenAI should be ordered to comply by a firm deadline. Notably it appears that OpenAI has historically purportedly agreed to "moot" a motion but then failed to comply.  *See e.g.*, update below regarding Dkt. 788 where OpenAI agreed to respond to RFAs but has failed to do so.<br><br>**OpenAI's Position**:  As Ziff Davis openly acknowledges, its motion to compel was almost entirely moot. *Before Ziff Davis filed its motion*, OpenAI had already agreed to provide nearly all of the discovery that Ziff Davis requests. Specifically, the parties reached agreement on URL searches (on December 31) and cross-production of source code printouts (on January 5). Ziff Davis's claim that the Court's intervention is nevertheless necessary because OpenAI "has failed to comply" is absurd, as the parties reached agreement on these issues within the last week.<br><br>Ziff Davis's demand for n-gram searches is frivolous. OpenAI asked Ziff Davis to produce its own n-grams, which are needed to conduct that search, **four months ago**.  (Plaintiffs deny this in their statement above, which is at odds with their motion, which admits to the September 2025 meeting where OpenAI asked for all of Ziff Davis's n-gram data.) OpenAI doesn't have the information it needs to begin negotiations over the correct |

8

| Motion | Date Filed | Opp. | Topic in Dispute | Moving Party | Responding Party | Status | Parties' Positions |
|---|---|---|---|---|---|---|---|
| | | | | | | | search parameters, let alone begin a search, until Ziff Davis produces its n-grams.<br><br>Ziff Davis's request for cross-production of training-data printouts (which is contrary to the Court's Protective Order) should be denied. The printouts created by *other* Plaintiffs reflect their analysis of evidence they hope will support their specific claims (e.g., the Class plaintiffs are focused on books, the newspaper plaintiffs are focused on their websites, and so on). Those printouts are irrelevant to Ziff Davis's case. And given their volume, they would be incredibly burdensome to produce (though OpenAI does not object to Ziff Davis obtaining the printouts from those Plaintiffs directly).<br><br>Finally, Ziff Davis's request for OpenAI to build a brand new, Ziff Davis-specific technical platform should be rejected. OpenAI has met and conferred with Ziff Davis in a good faith effort to address its perceived difficulties with training data inspections. But Ziff Davis's request for a new inspection platform would be unduly burdensome. OpenAI did investigate building a new Databricks environment, as promised; it would require at least months of engineering work. And Ziff Davis has yet to explain why the existing inspection set up–which all other Plaintiffs have used–is insufficient. For all these reasons, Ziff Davis's motion should be denied in full. |
| Dkt. 1063 (Public Version)<br><br>Dkt. 1058 (Sealed Version) | 01/05/26 | N/A | The Times's production of active user data | Microsoft | The Times | Resolved. *See* Dkt. 1104. | **The Parties' Joint Statement:** The parties believe they have reached agreement on Microsoft's letter motion to compel The Times's production of its active user data. The Times is continuing to investigate its ability to produce certain portions of this data, but given The Times's representations to date the parties do not believe this issue needs to be heard at the January 15, 2026 discovery conference. Microsoft reserves all rights to re-raise this issue should The Times's investigation ultimately require it to do so. |
| Dkt. 866 | 11/24/25 | Dkt. 856 | Microsoft GPT-4o Discovery | News Plaintiffs | Microsoft | The parties first briefed these issues in November (Dkt. 856, | **News Plaintiffs' Position:** Microsoft should be ordered to produce: (1) custodial documents from three employees who worked on Refreshed Copilot, and for whom Microsoft failed to timely provide search term hit counts, in violation of the Court's December 5 Order; (2) limited go-and-get documents |

9

| Motion | Date Filed | Opp. | Topic in Dispute | Moving Party | Responding Party | Status | Parties' Positions |
|---|---|---|---|---|---|---|---|
| Dkt. 1081 | 01/05/26 | Dkt. 1122 | | | | Dkt. 866) and the Court heard argument at the December conference. The Court ordered the parties to meet-and-confer and to provide an update in the December 10 status chart, which the parties provided. Dkt. 950. The Court thereafter instructed Plaintiffs to re-raise any remaining disputes in advance of the January 15 conference. Dkt. 967,<br><br>News Plaintiffs have filed a renewed request for this discovery, which is fully briefed and set to be | relating to Refreshed Copilot, (3) limited go-and-get documents relating to Copilot Search, and (4) supplemental interrogatory responses addressing just three of Microsoft's 500+ implementations of GPT-4o and GPT-4o Mini, which can simply confirm the information Microsoft has already provided through meet-and-confers. These requests are substantially narrowed versions of the GPT-4o discovery that Plaintiffs requested at the December conference.<br><br>**Microsoft's Position:**  The Court should deny News Plaintiffs' Motion seeking discovery into New Copilot and Copilot Search. News Plaintiffs continue to use every reasonable compromise proposed by Microsoft and agreed to in front of the Court as a basis for seeking ever more discovery, running afoul of the proportionality requirement ordered by Judge Stein. First, Plaintiffs once again seek to expand the scope of the case to include new products that were not—and, indeed, *could not*—have been asserted in the original complaints, and thus run afoul of the Court's prior orders. Second, although Plaintiffs frame their requests as "narrow" and "limited," meeting their demands would require Microsoft to compound its discovery efforts to date; Microsoft would need to re-review *thousands* of new custodial documents, which would require interviewing new personnel and onboarding an entirely new team of reviewers. The "go-and-get" documents Plaintiffs seek are not readily available for quick retrieval but would require extensive preliminary investigation to identify and analyze a completely new pool of user data. Microsoft simply cannot meet Plaintiffs' demands by the current fact discovery deadline, and their previous statements to the Court that they are seeking narrow discovery into new products have proven to be demonstrably false. |

10

| Motion | Date Filed | Opp. | Topic in Dispute | Moving Party | Responding Party | Status | Parties' Positions |
|---|---|---|---|---|---|---|---|
| | | | | | | argued on January 15. | |
| Dkt. 1023 (Public Filing) Dkt. 1025 (Sealed Filing) | 01/05/26 | Dkt. 1136 (Public Filing) Dkt. 1137 (Sealed Filing) | The Times's data underlying its surveys and studies concerning the health of The Times's business | OpenAI | The Times | This dispute is fully briefed and the court has not yet heard argument. | **OpenAI's Position:** OpenAI moves to compel The Times to produce the data underlying 10 specific surveys and studies that are cited within Times-produced presentations that draw conclusions regarding The Times's brand and allegations that Defendants' products substitute for its works. The Times has made clear it intends to rely on these presentations to support its market harm and trademark dilution arguments, going so far as to refuse to produce other discovery on the grounds that these presentations suffice. Yet it refuses to produce the underlying data that would allow OpenAI to challenge the presentations' conclusions; OpenAI does not know the questions asked, the sample size of those surveyed, or their individual responses. The Times seeks to present its packaged conclusions and prevent OpenAI from effectively responding to them. The Times should be compelled to produce this data during the fact discovery period and has not explained with any specificity why doing so will be unduly burdensome.<br><br>The Times's responses ring hollow. First, OpenAI's request is narrowly tailored to specific surveys and studies referenced in cited presentations, multiple of which are simply updated versions for different quarters. As to The Times's argument that OpenAI failed to sufficiently confer, OpenAI first met-and-conferred with The Times regarding this issue on December 17, and multiple times afterwards, most recently on December 23. The Times has failed to engage or respond since then.<br><br>**The Times's Position:** OpenAI's characterization that it is seeking "10 specific surveys and studies" is inaccurate. Instead, OpenAI is seeking *all* surveys and studies referenced in ten different *categories* of reports (i.e., Brand Tracker reports, Games Sub-Brand Tracker reports, Cooking Sub-Brand Tracker reports)—many of which include multiple presentations—over multiple years. In total, OpenAI seeks the underlying data from surveys and studies referenced in twenty-five different presentations—many of which reference multiple surveys and studies. In light of OpenAI's overbroad request, The Times offered to look into what it could feasibly collect and produce. However, without waiting for a response |

| Motion | Date Filed | Opp. | Topic in Dispute | Moving Party | Responding Party | Status | Parties' Positions |
|---|---|---|---|---|---|---|---|
| | | | | | | | from The Times, OpenAI filed the instant motion. That is improper. *See* Dkt. 967 at 3 ("If it becomes apparent from future briefing that the parties are not engaging in a good faith meet and confer process on discovery disputes that can and should be resolved without court intervention, such motions may be denied on their face, and costs may be apportioned under Fed. R. Civ. P. 37(a)(5)."). Accordingly, the Court should deny OpenAI's motion. |
| Dkt. 1054 | 01/05/26 | Dkt. 1138 | Microsoft Bing Index Searches | News Plaintiffs | Microsoft | This dispute is fully briefed and the court has not yet heard argument. | **News Plaintiffs' Position:** News Plaintiffs seek to compel Microsoft to either search the current Bing Index for News Plaintiffs' domains or, alternatively, stipulate that the version of the Bing Index it sold and transferred to OpenAI contained full copies of their Asserted Works. News Plaintiffs' request follows the same parameters of the search that Microsoft has already agreed to run for Class Plaintiffs, except News Plaintiffs are seeking searches for their domains rather than shadow library domains. This discovery seeks evidence of conduct that is central to News Plaintiffs' infringement claims: Microsoft's unauthorized copying and sharing of News Plaintiffs' copyrighted works with OpenAI to build large language models ("LLMs"). Microsoft opposes this request, arguing that the searches are irrelevant and that the current Bing Index is an improper proxy for the version of the Bing Index transferred to OpenAI. However, this argument lacks merit, as the Court has already rejected the same relevance arguments in the Class Plaintiffs' motion and has explicitly found the current index to be a suitable proxy. Microsoft's refusal to provide the same discovery it has already agreed to for the Class Plaintiffs is not only inconsistent but also unjustified.<br><br>Microsoft announced for the very first time the day its opposition was due and the day before this chart was due that it may have readily available tools News Plaintiffs may use to search the current Bing Index. News Plaintiffs will continue to meet and confer with Microsoft as they investigate whether these belatedly announced tools are sufficient to provide the requested discovery.<br><br>**Microsoft's Position:** News Plaintiffs' demand that Microsoft produce Bing Index data for their sites comes far too |

12

| Motion | Date Filed | Opp. | Topic in Dispute | Moving Party | Responding Party | Status | Parties' Positions |
|---|---|---|---|---|---|---|---|
| | | | | | | | late given that they waited to even request this data until after Microsoft had already negotiated with Class Plaintiffs for six months to come to a compromise in light of the claims and facts of Class Plaintiffs' case. News Plaintiffs are in a materially different posture than Class Plaintiffs given that they, like all webmasters, already have access to the information that they are requesting from Microsoft via both a Site explorer tool and a URL Inspection tool. Microsoft should not have to incur the burden and expense of providing this same data to News Plaintiffs in discovery as well. Additionally, the current Bing Index is an incredibly poor proxy for what was transferred to OpenAI given the frequent refresh of news content in the Bing Index. Unlike Class Plaintiffs, News Plaintiffs also do not have a "download" claim and exert control over what content Bing Index can index. Finally, News Plaintiffs' proposed stipulation is improper and factually inaccurate, and News Plaintiffs' motion should be denied. |
| [Dkt. 1066](Dkt. 1066) | 01/05/26 | [Dkt. 1118 (Public Filing)](Dkt. 1118) [Dkt. 1127 (Sealed Filing)](Dkt. 1127) | OpenAI's Searches of Azure Containers | News Plaintiffs | OpenAI | This dispute is fully briefed and the court has not yet heard argument. | **News Plaintiffs' Position:** News Plaintiffs seek to compel OpenAI to apply their proposed search terms across 24 specific Azure storage containers—custodial data sources—to produce documents containing or reflecting the use of News Plaintiffs' works, including datasets reflecting regurgitation analyses of News Plaintiffs works. News Plaintiffs' requested searches are similar to the searches OpenAI has already agreed to run (and that it had been ordered to run) for Class Plaintiffs. The requested searches are highly relevant because they provide direct evidence of infringement and OpenAI's knowledge of it. OpenAI objects to News Plaintiffs' requested searches, claiming they are outside the scope of discovery and technically infeasible. OpenAI's arguments are incorrect and not substantiated. News Plaintiffs' discovery requests explicitly sought documents related to the training process, use of their content, and regurgitation analyses, and OpenAI agreed to provide this information. Moreover, OpenAI has failed to demonstrate any technical barrier that isn't also present in the searches it has already agreed to conduct for Class Plaintiffs. OpenAI has only represented that its searches for file names including News Plaintiffs' terms returned 636 million hits but has not provided a hit report to allow the parties to meaningfully meet and confer to eliminate potential false positives. |

| Motion | Date Filed | Opp. | Topic in Dispute | Moving Party | Responding Party | Status | Parties' Positions |
|---|---|---|---|---|---|---|---|
| | | | | | | | **OpenAI's Position**: News Plaintiffs' new demand to search Azure containers, even if significantly narrowed, is overbroad, technically infeasible, and irrelevant to Plaintiffs' claims. Their proposed keyword search of raw and interim data, logs, binary files, and other technical information stored in Azure containers is untethered from their existing RFPs (which, like their claims, are limited to *training* data) and unrelated to their June 10 motion (which sought specific, named files). Plaintiffs' searches, even after their purported "narrowing," yield roughly one billion hits. (Plaintiffs' statement quotes a preliminary estimate of 643 million files, but based on further investigation, OpenAI has updated this estimate).<br><br>Plaintiffs say their search is comparable in burden to the Azure searches OpenAI is conducting for Class Plaintiffs. It is not. Class Plaintiffs and OpenAI have been working for months to narrow the search scope and develop techniques to eliminate false positives, whereas News Plaintiffs' request arrived months later, without any agreement between the parties on relevant scope, and asks to search a quantity of data orders of magnitude larger than can be feasibly *transferred* in time for the close of discovery, let alone reviewed and produced. Even a significantly scaled down version of their search would sweep in massive volumes of irrelevant technical material requiring file-by-file manual review conducted not by contract attorneys but by individuals at OpenAI with both a technical background and familiarity with the files to understand what information they contain. In light of the involved, bespoke review process required by this kind of technical data, even a significantly narrowed version of Plaintiffs' proposed search (hitting on, say, tens of thousands and not one billion files) would still take *several months* to complete. This is an infeasible effort to boil the ocean for data that is not the basis of any pleaded claim, when OpenAI has already found, or offered to find, the only datasets Plaintiffs ever actually identified. |
| [Dkt. 1043](#) | 01/05/26 | [Dkt. 1112](#) | OpenAI RFP Disputes | News Plaintiffs | OpenAI | This dispute is fully briefed and the court has | **News Plaintiffs' Position:** News and Class Plaintiffs seek an order compelling OpenAI to produce OpenAI witness deposition transcripts and the Altman and Brockman memos from *Musk v. Altman*, No. 4:24-cv-04722-YGR (N.D. Cal.) |

14

| Motion | Date Filed | Opp. | Topic in Dispute | Moving Party | Responding Party | Status | Parties' Positions |
|---|---|---|---|---|---|---|---|
| | | | | | | not yet heard argument. | ("*Musk*"). The *Musk* case and this MDL have substantially overlapping allegations and OpenAI's witness testimony and the Altman and Brockman memos are responsive to Plaintiffs' RFPs and relevant to direct and vicarious copyright infringement, trademark dilution, and the commercialization inquiry of fair use factor one.<br><br>OpenAI agreed on January 7 to produce a copy of its capitalization table without redactions, so that portion of News Plaintiffs' motion is resolved.<br><br>**OpenAI's Position**: Plaintiffs' demand for cross-production of litigation materials from an unrelated separate action—including witness deposition transcripts and the purported Altman and Brockman memos—should be denied. Cross-production is improper where the claims in two actions do not substantially overlap. Here, the unrelated *Musk* litigation involves different plaintiffs and different causes of action. The claims in this MDL and those in *Musk* do not overlap at all. By Plaintiffs' own admission, this MDL concerns alleged "vicarious copyright infringement, trademark dilution, and the commercialization inquiry of fair use factor one." ECF 1043 at 2. By contrast, plaintiff in *Musk* asserts contract, fraud, unfair competition, antitrust, and RICO claims. As the case law makes clear, what matters is whether the claims from the two actions overlap. The mere presence of two overlapping witnesses over the same period of time is insufficient to justify cross production. Plaintiffs also fail to show that the requested deposition transcripts and the Altman and Brockman memos produced by a third party in the unrelated litigation are relevant and responsive to their document requests. |
| [Dkt. 157](#)<br><br>[Dkt. 1034](#) | 6/11/25<br><br>01/05/26 | [Dkt. 190](#)<br><br>N/A | OpenAI's Production of User Engagement Metrics | News Plaintiffs | OpenAI | Resolved. | **The Parties' Joint Statement:** Based on representations from OpenAI on January 7 and 8 regarding the status of its production, the parties believe that they have resolved News Plaintiffs' letter motion and thus do not believe this issue needs to be heard at the January 15, 2026, discovery conference. News Plaintiffs reserve all rights to re-raise this issue if necessary. |

15

| Motion | Date Filed | Opp. | Topic in Dispute | Moving Party | Responding Party | Status | Parties' Positions |
|---|---|---|---|---|---|---|---|
| **II.** | **Other Filings** | | | | | | |
| Dkt. 148<br><br>Dkt. 648 (Public Filing)<br>Dkt. 648-1 (Public Filing)<br>Dkt. 648-2 (Public Filing)<br>Dkt. 648-3 (Public Filing)<br>Dkt. 648-4 (Public Filing)<br>Dkt. 648-5 (Public Filing)<br>Dkt. 767 (Public Filing)<br>Dkt. 788 | 6/10/25<br><br>10/15/25<br><br>11/18/25 | Dkt. 668 (Public Filing)<br><br>Dkt. 813 (Public Filing) | Microsoft's Express License Defense | The Times | Microsoft | This dispute was fully briefed at Dkts. 148 & 168; argued at the June 25, 2025 conference; and decided at Dkt. 270. The Times's follow-on motion at Dkt, 648 was argued at the October 29, 2025 conference and decided at Dkt. 724. The Times's second follow-on motion (Dkt. 767) was argued at the December 4 conference and decided at Dkt. 910. | **The Times's Position**: Following the December conference, the Court ordered Microsoft to by January 9, 2026 (1) "respond to The Times's contention interrogatory" seeking the basis of Microsoft's express license defense, and (2) "identify a date" for a 30(b)(6) deposition to address Microsoft's basis for its express license defense. Dkt. 910.<br><br>The Times will review Microsoft's forthcoming response and raise any deficiencies at the January 15 hearing.<br><br>**Microsoft's Position:** Per the parties' agreement, as memorialized in Dkt. 1090 & 1092, Microsoft intends to respond to The Times's Interrogatory Nos. 11 and 12 by January 9, 2026 and to identify its 30(b)(6) witness on the topic of its express license defense. Microsoft will otherwise respond to The Times's contention interrogatories in accordance with the revised schedule set by the Court (Dkt. 1092) on January 16, 2026. |
| | 11/18/25 | Dkt. 817 | OpenAI's Responses to RFAs | Ziff Davis | OpenAI | This dispute was argued at the December 4 hearing and | **Ziff Davis's Position:**<br><br>Ziff Davis provides an update as to Dkt. 788. OpenAI has similarly included such updates on prior dispute charts. For example, in past charts OpenAI included updates on substantial completion despite it not filing an additional brief |

16

| Motion | Date Filed | Opp. | Topic in Dispute | Moving Party | Responding Party | Status | Parties' Positions |
|---|---|---|---|---|---|---|---|
| | | | | | | fully resolved at Dkt. 910. | on the same issue. Dkt. 591-1 at 21. Ziff has raised this issue at the January 2, 2025 meet and confer and followed up written correspondence multiple times.<br><br>Per the Court's Order, the parties also conferred on the balance of the RFAs—with the result that OpenAI agreed to answer an additional four RFAs along the same lines, and Ziff Davis withdrew the remaining RFAs. However, OpenAI failed to comply. Instead, OpenAI interjected *additional* cut-and-paste objections to all 399 RFAs and still failed to provide a valid answer. Indeed, for all but 2 of the RFAs, OpenAI "denied" the RFAs on the basis that it (i) "lacks sufficient information" and (ii) based on its objections.<br><br>As Ziff Davis has explained to OpenAI, a purported lack of knowledge is *not* a basis for denying an RFA under Rule 36(a)(4). *See Nycomed US Inc. v. Glenmark Generics Ltd.*, No. 08-CV-5023 (CBA), 2009 WL 10709073, at *2 (E.D.N.Y. Aug. 7, 2009) ("party may not deny RFA *and* claim lack of knowledge"); *id.* (party's denial "predicated on its objections . . . does not meet the substance of the request"). Further, OpenAI fails to explain why it cannot admit or deny these requests, as required. *See* Rule 36(a)(4) (if the answering party does not admit or deny, "the answer must. . . state *in detail* why the answering party cannot truthfully admit or deny it"); *Herrera v. Scully*, 143 F.R.D. 545, 548 (S.D.N.Y. 1992) (citing cases requiring responding party to identify the reasonable investigation that it conducted).<br><br>As the Court recognized at the last hearing, the "bargain" OpenAI struck here was that it would *answer* most of the RFAs if Ziff Davis withdrew the rest. Having struck that bargain, OpenAI still fails to respond to the RFAs, which should be deemed admitted at this point. *See* Rule 36(a)(6) ("On finding that an answer does not comply with this rule, the court may order either that the matter is admitted or that an amended answer be served.").<br><br>**OpenAI's Position**: OpenAI objects to Ziff Davis's inclusion of an RFA issue in the News Chart. Unlike the update Ziff Davis points to (which was an update in response to the Court's order to meet and confer), Ziff Davis's RFA motion (ECF 788) |

17

| Motion | Date Filed | Opp. | Topic in Dispute | Moving Party | Responding Party | Status | Parties' Positions |
|---|---|---|---|---|---|---|---|
| | | | | | | | was heard at the November 2025 discovery conference and fully resolved when OpenAI agreed to supplement its RFA responses (ECF 910 (denying Ziff Davis's motion)), which OpenAI completed on December 21, 2025. |
| | | | | | | | Ziff Davis seeks to raise a new issue regarding OpenAI's supplemental RFA responses, but has neither met and conferred with OpenAI nor filed any motion concerning this new issue. As the Court has repeatedly advised, the parties must meet and confer in good faith before raising a discovery dispute. *See, e.g.*, ECF 967 at 3. Ziff Davis misrepresents that the parties have met and conferred. The parties conferred on January 2 regarding OpenAI's responses to Ziff Davis's interrogatories, not RFAs. A single comment from Ziff Davis's counsel raising the parties' need to discuss RFA responses does not constitute a meet and confer. |
| | | | | | | | Ziff Davis's eleventh-hour attempt to add issues to the News Chart that are either fully resolved or have not been the subject of a conferral process is improper, not made in good faith, and wastes judicial resources. The Court should disregard Ziff Davis's attempt to put a new issue before the Court. To the extent this Court entertains Ziff Davis's newly-raised issue, it should deny Ziff Davis's improper request to deem the at-issue RFAs admitted. OpenAI did exactly what it promised—it provided supplemental responses, all of which are proper responses under the Federal Rules, answering each RFA it agreed to supplement. Specifically, responding to RFAs with "lack[ing] sufficient information" is proper as OpenAI has made reasonable inquiries, and the information it knows or can readily obtain is insufficient to enable it to admit or deny. See Fed. R. Civ. P. 36(a)(4) (allowing parties to respond to RFAs by stating "why the answering party cannot truthfully admit or deny it"). Ziff Davis points to no authority to the contrary. |

18