UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE:<br><br>OPENAI, INC.,<br>COPYRIGHT INFRINGEMENT LITIGATION<br><br><br>This Document Relates To:<br><br>ZIFF DAVIS, INC. et al, v. OPENAI, INC. et al.,<br>No. 1:25-cv-04315 | 25-md-03143 (SHS) (OTW)<br><br>Hon. Sidney H. Stein<br>Hon. Ona T. Wang |

**REPLY IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO STAY ZIFF DAVIS'S FIRST AMENDED COMPLAINT**

4000633

**I.      INTRODUCTION**

Ziff Davis ("ZD") devotes the bulk of its opposition to rewriting history. ZD asks the Court to believe that—despite having expressly represented that it was "necessary to place fact and expert discovery in the ZD case on a separate track" and that completing discovery on time was "a near impossibility," ECF 963 at 1-3—ZD now has no desire or need to extend the case schedule, and that it was, in fact, *OpenAI* that wanted a schedule extension.

These representations are verifiably—and obviously—untrue. More importantly, they miss the point. Whatever ZD now claims about who said what, it ultimately does not—and cannot—seriously dispute that the relevant *Kappel* factors overwhelmingly favor a stay. Among other things, a stay will promote judicial economy and minimize prejudice to OpenAI by: (1) allowing the *Ziff Davis* parties to leverage the Court's rulings on summary judgment in the other MDL cases, (2) consolidating litigation of all of ZD's claims at once, and (3) avoiding any further changes to the case schedule caused by ZD's dilatory discovery conduct.

ZD offers little to counterbalance those considerations. Indeed, its opposition offers only repackaged versions of the same argument: a stay will delay resolution of its claims. But the law is clear that such a generalized assertion is insufficient. *See LaSala v. Needham & Co.*, 399 F. Supp. 2d 421, 430 (S.D.N.Y. 2005). And, in any event, ZD's argument fails on its own terms. Regardless of how this motion is resolved, ZD's claims cannot be fully adjudicated in this MDL, as substantial portions of its case have already been stayed and will necessarily remain unresolved until remand.

1

The question before the Court, therefore, is whether ZD's preference to press some claims immediately justifies significantly burdening the Court and prejudicing OpenAI. Because it does not, the Court should grant OpenAI's motion to stay the *Ziff Davis* action in its entirety.[1]

## II.    ARGUMENT

### A.    Ziff Davis's opposition misrepresents the record.

ZD's mischaracterizations of the record frame nearly all of its prejudice and burden arguments. They therefore warrant correction at the outset.

#### 1.    Ziff Davis's opposition is inconsistent with its prior statements and the record.

ZD now asserts that it was OpenAI that first questioned the viability of the existing discovery schedule. That assertion is inconsistent with ZD's own statements to the Court. On December 12, 2025, ZD filed a letter stating that "the February 27, 2026 fact discovery cutoff no longer seems viable" as to its claims, that completing discovery on the existing schedule was "a near impossibility," and that its case "can and should be separately tracked" from the MDL. ECF 963 at 1-3. ZD also asked the Court to direct the parties to confer regarding an adjusted schedule specific to its case. *Id*. at 3.

Nothing in that letter suggested that ZD was merely responding to a scheduling concern raised by OpenAI. To the contrary, ZD affirmatively sought relief from the existing schedule based on its own concerns about the status of its discovery at the time.

ZD attempts to reconcile this inconsistency by suggesting that its December 12 letter was later "mooted" by the Court's ruling on OpenAI's partial stay motion. But the letter did not condition ZD's request for schedule relief on the outcome of that motion. To the contrary, ZD

---

[1] As ZD noted in its request for an extension to file its opposition, the parties are available to argue this motion during the Court's already-scheduled hearing on January 16, 2026.

2

4000633

grounded its request in concrete, then-existing discovery constraints—anticipated deposition volume, unresolved ESI negotiations, and the risk that discovery would extend beyond the MDL cutoff. Those constraints have not been resolved and, in several respects, have only intensified.[2]

### 2. Ziff Davis's attempts to rewrite the record are false and immaterial.

ZD attempts to recast OpenAI's motion as a dispute about blame for compressed discovery. It goes so far as to suggest "this Court should consider appropriate sanctions" against OpenAI without identifying any conduct that would purportedly warrant such a result. ECF 1146 ("Opp.") at 14. ZD's statements on the status of discovery are at best misleading.

One example is illustrative. ZD suggests that *OpenAI* is somehow to blame for the nascent state of depositions in the case, suggesting that OpenAI waited until the "eleventh hour" to request deposition dates. Opp. at 17. Yet, it is not clear how OpenAI could have acted any more expeditiously than it did, given ZD's discovery conduct.

For months, OpenAI pressed ZD to begin its production of documents, repeatedly requesting a substantial completion date in September, and asking for rolling productions leading up to that deadline—precisely to avoid a deposition crunch at the end of discovery. *See* ECF 381 at 2 ("Absent the proposed substantial completion deadline, OpenAI may have insufficient time to serve supplemental discovery and take related depositions before the discovery cutoff."). ZD rejected these requests at every turn and ultimately held back all of its documents until nearly the final date to substantially complete its production on October 31, 2025. Within weeks of receiving ZD's very first document in the case, and after expediting review of ZD's documents, OpenAI

---

[2] For instance, ESI negotiations remain ongoing, due to late requests from ZD. Just before the holidays—and a week *after* filing its December 12 letter—ZD requested a brand new set of search terms. Meet-and-confer related to those terms remains ongoing, but as drafted they would require OpenAI to review more than 100,000 new documents (*i.e.*, more documents than ZD has produced in this entire litigation). In other words, *ZD's* delay tactics in discovery–not OpenAI's–threaten to derail this Court's schedule.

3

requested deposition dates for every witness it currently plans to depose. ZD waited nearly two weeks to respond to that request. When it did, it tentatively offered dates for only two witnesses in the month of December. But those offers were illusory and could not realistically proceed because ZD made clear it would not complete its production of those witnesses' documents until *after* their offered dates.

After these initial offers, OpenAI accepted each of the first dozen deposition dates offered by ZD. Nonetheless, only a *single* deposition has occurred thus far. That languid pace is due *exclusively* to ZD's refusal to offer their witnesses earlier. The result is a needless time crunch at the end of discovery: due to ZD's delay, OpenAI will be forced to take 21 depositions—every ZD deposition in the case but one—within the final 30 business days of discovery.

In short, ZD's version of events is fiction and intentionally misleading. But more importantly, it misses the point. While ZD's discovery delays and tactics are relevant to how the case arrived at its current posture, the question before the Court is forward-looking: whether, given the present state of discovery, it makes sense to proceed on a fragmented and accelerated track that risks duplication, inefficiency, and further disruption to the MDL as a whole. It does not. *See* discussion of *Kappel* factors *infra* II.B.

### 3. Ziff Davis says it cannot substantively engage with OpenAI's anticipated motion for summary judgment.

There is one important aspect of ZD's December 12 letter that it does not and cannot disavow: its statement that, regardless of the discovery timetable, ZD anticipates relying on Rule 56(d) in response to any motion for summary judgment filed by OpenAI. ECF 963 at 3. Indeed, ZD doubles down on that position in its opposition, claiming it will invoke Rule 56(d) due to alleged "OpenAI[] discovery failures." *See* Opp. at 18 n.8. OpenAI and the Court are left to guess what these "failures" are. ZD neither identifies supposed deficiencies nor proposes how they could

4

be cured. And to the extent ZD is referring broadly to alleged deficiencies it has raised in various discovery motions, ZD has not explained why the discovery dispute process that all other MDL parties have used is insufficient to address ZD's complaints.

Regardless, ZD made its intentions clear: if the parties proceed through summary judgment, their efforts will be for naught. Summary judgment will not resolve *any* of ZD's claims.

### B. The *Kappel* factors favor a stay.

#### 1. The interests of the Court favor staying *Ziff Davis*.

ZD's opposition conspicuously fails to address this *Kappel* factor–not surprisingly–because it unequivocally supports a stay. *See Kappel v. Comfort*, 914 F. Supp. 1056, 1058 (S.D.N.Y. 1996). As OpenAI noted in its opening brief, a stay will simplify proceedings for the Court and the parties. The parties will be able to leverage the Court's rulings on the substantive issues in the other News Cases to, for example, focus discovery on the key factual disputes that informed those rulings. The result will be, at worst, fewer disputes for the Court to resolve if the case ultimately proceeds and, at best, complete (or near-complete) resolution of ZD's claims as a result of summary judgment in the other News Cases.

These considerations strongly favor staying the case. *See In re OxyContin Antitrust Litig.*, No. 04-md-1603 (SHS), 2012 WL 5184949, at *6-7 (S.D.N.Y. Oct. 19, 2012). Indeed, "[c]ourts in this district routinely issue stays when awaiting the outcome of proceedings which bear upon the case, even if such proceedings are not necessarily controlling of the action to be stayed." *Royal Park Invs. SA/NV v. Deutsche Bank Nat'l Tr. Co.*, No. 17-cv-5916 (AJN), 2018 WL 3849840, at *2 (S.D.N.Y. Aug. 10, 2018) (internal citation omitted). This Court should do the same.

ZD's sudden assertion that it can, in fact, complete discovery by the current cutoff does not alter that conclusion. Indeed, the Court should view ZD's abrupt reversal with skepticism. Less than a month earlier, ZD told the Court, in no uncertain terms, that it could not complete discovery

on the current schedule. *See* ECF 963. As described above, those representations were unequivocal. *See generally id*. ZD has identified nothing else that has changed in the intervening weeks that supports its dramatic retreat from its prior statements about the infeasibility of completing discovery on schedule.

Pressing forward under these circumstances—after ZD has expressly acknowledged that it likely cannot comply with the discovery cutoff—would simply throw good money after bad, investing additional judicial and party resources in what is almost certainly a doomed enterprise. Indeed, even if the parties nominally complete discovery by the current deadline, the case is still overwhelmingly likely to be thrown off schedule. As ZD itself has explicitly acknowledged, it intends to point to alleged unidentified "deficiencies" in OpenAI's document productions to forestall a final resolution on the merits, regardless of how the rest of discovery plays out. ECF 963 at 3; Opp. at 18 n.8.

Thus, the only sensible course is to stay the action now and address discovery for all of ZD's claims in a single, consolidated proceeding. The Court should not be required to shepherd the parties through discovery—and ultimately decide summary judgment—on a record that ZD itself promises to mischaracterize as incomplete.

## 2. The burden and prejudice faced by OpenAI also favors a stay.

ZD does not contest that pushing *Ziff Davis* onto a separate schedule would cause OpenAI severe prejudice that would warrant staying the case. And because of ZD's dilatory conduct to date–including, as just one blatant example, its failure to produce all documents relevant to ZD witnesses in advance of their depositions–proceeding on the current schedule would also work substantial prejudice on OpenAI. As a result, a stay—rather than an unnecessarily condensed or protracted schedule—is the appropriate remedy.

As explained above, taking ZD at its word, even if the parties manage to complete the

6

current sprint toward the close of fact discovery, ZD appears poised to later argue that this discovery was insufficient to resolve its claims, thereby delaying resolution of those claims until the parties complete discovery after the stay is lifted. Compelling the parties to bear that duplicative burden is textbook prejudice under the *Kappel* framework. *See, e.g.*, *Readick v. Avis Budget Grp., Inc.*, No. 12-cv-3988 (PGG), 2014 WL 1683799, at *5 (S.D.N.Y. Apr. 28, 2014); *Finn v. Barney*, No. 08-cv-2975 (LTS) (KNF), 2008 WL 5215699, at *3 (S.D.N.Y. Dec. 8, 2008).[3]

The limited time remaining to complete discovery only amplifies that prejudice. Completing depositions will be unnecessarily onerous. The parties are currently set to take 21 depositions across 30 business days *for ZD witnesses alone*. As described above, this compressed schedule is ZD's fault. ZD's strategic choices—not any lack of diligence by OpenAI—created this predicament. A stay is the appropriate remedy.

### 3. A stay will not prejudice Ziff Davis.

OpenAI's opening brief presented multiple reasons why ZD will not be prejudiced by a stay, none of which ZD rebutted. First, because ZD waited more than a year to file its complaint, *see* ECF 300, any additional delay is unlikely to be prejudicial. *See Royal Park Invs. SA/NV*, 2018 WL 3849840, at *2. Second, because the need for a stay has arisen from ZD's own lack of urgency, it cannot now claim prejudice from that stay. Third, a stay would minimize prejudice to ZD by consolidating the litigation of all of its claims into a single proceeding, which ZD has previously

---

[3] ZD tries to distinguish these cases by arguing that its case is not a "later filed, duplicative lawsuit." Opp. at 21 (quoting *Readick*, 2014 WL 1683799, at *3). But *Ziff Davis* is a tagalong action in an MDL. It is, by its very nature, both later-filed and duplicative. In any event, ZD cannot contest the underlying proposition these cases stand for: avoiding duplicative discovery is a worthwhile reason to stay a case. That justification warrants granting OpenAI's motion, for the reasons stated above.

argued would *minimize* its prejudice. *See* ECF 252 at 6.[4]

In the face of these concessions, ZD advances variations of the same complaint: it will be prejudiced by a delay in the resolution of its claims. *See* Opp. at 18-19. But the law is clear that "mere delay does not, without more, necessitate a finding of undue prejudice." *McCracken v. Verisma Sys., Inc.*, No. 6:14-cv-06248 (MAT), 2018 WL 4233703, at *3 (W.D.N.Y. Sept. 6, 2018) (internal quotation marks omitted). Instead, a party claiming such prejudice must "articulat[e] in concrete terms the practical, real life effects of" staying the case. *LaSala*, 399 F. Supp. 2d at 430. ZD never even attempts to make that showing, opting instead to make three arguments, none persuasive.

First, ZD argues that a stay is inappropriate given the "enormous resources" it has expended litigating the case so far. Opp. at 19. But, those spent resources are sunk costs. And it "is widely agreed that honoring sunk costs is obviously and clearly irrational, and that doing so is, without exception, to be avoided." *Grand Canyon Tr. v. Provencio*, 26 F.4th 815, 826 (9th Cir. 2022) (internal quotation marks omitted); *see also Stryker Spine, a Div. of Howmedica Osteonics Corp. v. Spine Grp. of Wisconsin*, LLC, 320 F. Supp. 3d 985, 991 (E.D. Wis. 2018) ("The court is mindful against committing the 'sunk cost fallacy'. . . .").

Second, ZD argues that the stage of the case disfavors a stay. Opp. at 19. But that is a factor courts consider when deciding "to stay proceedings pending the conclusion of a PTO patent reexamination." *Sanofi-Synthelabo v. Apotex Inc.*, No. 02 CIV. 2255 (SHS), 2010 WL 1541435,

---

[4] ZD responds to this last point by arguing that "a stay would run totally afoul of the MDL's stated goal to streamline litigation by necessitating relitigating proceedings in separate courts, and prolonging resolution for all parties involved." Opp. at 20. But it never explains the basis for this assertion. As described in detail above, staying the entire *Ziff Davis* case would avoid duplicative proceedings. That is precisely why the parties in the other tagalong cases have requested, and the Court has granted, stays in those cases. *See* ECF 538; ECF 984; ECF 999.

8

4000633

at *1 (S.D.N.Y. Apr. 15, 2010). ZD cites no authority suggesting that the stage of the case is relevant under the *Kappel* framework, which both parties agree governs this motion. *See* Opp. at 14.

In any event, the argument makes little sense here. The need for a stay did not arise from ordinary case progression, but from ZD's own discovery tactics and its own recent acknowledgment that it cannot meet the existing discovery deadline—an admission that threatens to disrupt the MDL schedule and prejudice the other MDL proceedings. Had ZD accurately represented its ability to complete discovery when it first entered the MDL, OpenAI would have sought a stay from the outset. *See* ECF 80, May 22, 2025 Hr'g Tr. at 67:8-14 ("Either Ziff Davis is stayed or it proceeds on the common issues[,] but we don't want . . . to have this tagalong case then upset the applecart . . . . .").

Third, ZD asserts that it should not be forced to stand on the sidelines while other News Cases proceed to summary judgment. But it identifies no concrete prejudice from doing so. Multiple district courts have already issued opinions addressing whether the use of copyrighted works to train large language models constitutes fair use—without any apparent prejudice to ZD. And if ZD were truly concerned about being unable to participate while those issues are litigated, it could have sought to join the MDL much earlier. *See Royal Park Invs. SA/NV*, 2018 WL 3849840, at *2.

Moreover, ZD has repeatedly insisted that its case raises issues distinct from those presented in the other News Cases. *See, e.g.*, Opp. at 22. It therefore cannot credibly argue that it will be disadvantaged by rulings issued in those cases. Those decisions will not bind ZD any more than they bind the other stayed tagalong actions. What they will do, however, is provide valuable guidance that will streamline future discovery and inform any party discussions—considerations

9

that weigh decisively in favor of a stay.

      **4.  The interests of non-parties and the public favor staying *Ziff Davis*.**

  There can be no serious dispute that staying the ZD action is the most efficient course. Given the public's interest in the efficient resolution of disputes, this factor favors a stay. *Royal Park Invs. SA/NV*, 2018 WL 3849840, at *3.

  ZD argues that the public interest would be disserved by further delaying resolution of its case. But, as explained above, some delay is inevitable–indeed, ZD's case cannot be resolved alongside the MDL because many of ZD's claims are already stayed. The only meaningful question is whether that delay will be managed in a way that conserves judicial and party resources. A stay best ensures that outcome.

  ZD also contends that removing it from ongoing discovery would prejudice the other News Plaintiffs and third parties such as Microsoft. Any such concern, however, can be readily addressed in the stay order itself—for example, by permitting ZD to continue participating in discovery on a limited basis, which OpenAI would not oppose. *See In re Ford Motor Co. Bronco II Prods. Liab. Litig.*, No. CIV. A. 95-1966, 1996 WL 148294, at *2 (E.D. La. Apr. 1, 1996) ("[A]lthough proceedings are stayed in the tag-along actions, I permit counsel for the tag-along plaintiffs to participate in the core discovery . . . ."). Accordingly, a stay remains the most sensible and equitable course.

**III. CONCLUSION**

  For the foregoing reasons, OpenAI respectfully requests that the Court stay the *Ziff Davis* case in its entirety.

Dated: January 13, 2026

| | |
|---|---|
| /s/ Allison Blanco | /s/ Rose Lee |
| **LATHAM & WATKINS LLP** | **MORRISON & FOERSTER LLP** |
| Andrew M. Gass (*pro hac vice*) | Joseph C. Gratz (*pro hac vice*) |
|  andrew.gass@lw.com |  jgratz@mofo.com |
| San Francisco, CA 94111 | Tiffany Cheung (*pro hac vice*) |
| Telephone: 415.391.0600 |  tcheung@mofo.com |
|  | 425 Market Street |
| Sarang V. Damle | San Francisco, CA 94105 |
|  sy.damle@lw.com | Telephone: 415.268.7000 |
| Luke A. Budiardjo |  |
|  luke.budiardjo@lw.com | Rose S. Lee (*pro hac vice*)* |
| 1271 Avenue of the Americas |  roselee@mofo.com |
| New York, NY 10020 | 707 Wilshire Boulevard, Suite 6000 |
| Telephone: 212.906.1200 | Los Angeles, CA 90017 |
|  | Telephone: 213.892.5200 |
| Elana Nightingale Dawson (*pro hac vice*) |  |
|  elana.nightingaledawson@lw.com | Carolyn M. Homer *(pro hac vice)* |
| 555 Eleventh Street, NW, Suite 1000 |  cmhomer@mofo.com |
| Washington, D.C. 20004 | 2100 L Street, NW, Suite 900 |
| Telephone: 202.637.2200 | Washington, DC 20037 |
|  | Telephone: 202.650.4597 |
| Alison S. Blanco (*pro hac vice*)* |  |
|  allison.blanco@lw.com |  |
| 650 Town Center Dr., 20th Fl. |  |
| Costa Mesa, CA 92626 |  |
| Telephone: 714.540.1235 |  |
|  | /s/ Andrew S. Bruns |
|  | **KEKER, VAN NEST & PETERS LLP** |
|  | Robert A. Van Nest (*pro hac vice*) |
|  |  rvannest@keker.com |
|  | R. James Slaughter (*pro hac vice*) |
|  |  rslaughter@keker.com |
|  | Paven Malhotra |
|  |  pmalhotra@keker.com |
|  | Michelle S. Ybarra (*pro hac vice*) |
|  |  mybarra@keker.com |
|  | Andrew S. Bruns (*pro hac vice*) |
|  |  abruns@keker.com |
|  | 633 Battery St. |
|  | San Francisco, CA 94111 |
|  | Telephone: 415.391.5400 |

*Attorneys for Defendants*

\* All parties whose electronic signatures are included herein have consented to the filing of this document, as contemplated by Rule 8.5(b) of the Court's ECF Rules and Instructions.

11

4000633