**VIA ECF**

November 18, 2025

Hon. Ona T. Wang
Southern District of New York

> *In re OpenAI, Inc., Copyright Infringement Litigation*, 1:25-md-3143 (SHS) (OTW)
> This Document Relates To: No. 1:23-cv-3285 (SHS) (OTW)

Dear Magistrate Judge Wang:

I write on behalf of the Daily News Plaintiffs[1] concerning OpenAI's refusal to supplement its answers to Interrogatory Nos. 9, 11 and 13 in the Daily News Plaintiffs' Fourth Set of Interrogatories. Ostensibly, OpenAI answered these interrogatories. But OpenAI's responses provide little (or no) responsive information. Instead, OpenAI uses its responses to provide self-serving statements, without addressing the substance of the interrogatories. *See* Ex. A at 8-12.

The parties met and conferred and exchanged emails regarding the dispute. *See* Ex. B. OpenAI has refused to supplement, and thus, the Daily New Plaintiffs seek an order requiring OpenAI to provide complete responses to Interrogatory Nos. 9, 11, and 13 within one week of the December 4th hearing (i.e., by December 11th).

### I. Interrogatory No. 9

Interrogatory No. 9 reads:

> Identify all Customized Products and Services that can be used to access, store, provide, or view Publishers' Content behind paywalls or other access control measures.

Ex. A at 7. The Customized Products and Services include "Custom GPTs" or "GPTs," which were described by OpenAI in its November 6, 2023, post titled "Introducing GPTs" (available at https://openai.com/index/introducing-gpts/). *See* Ex. C at 5. These types of products and services deployed on OpenAI's platforms – and OpenAI's knowledge of the same – are relevant to the Daily News Plaintiffs' direct, contributory, and willful copyright infringement claims, as well as fair use factors 1 and 4. *See* DNP Dkt. 1, ¶ 147 (alleging that OpenAI's Custom GPT store contains numerous Custom GPTs specifically designed to circumvent paywalls).

Despite the clear relevance of the interrogatory, OpenAI ***did not identify a single Custom GPT*** that it is aware of. Instead, it provided a general statement of its policies:

> OpenAI does not develop products to access, store, provide, or view content published by Plaintiffs in violation of applicable laws, service terms, or policies,

---

[1] Plaintiffs Daily News, LP; The Chicago Tribune Company, LLC; Orlando Sentinel Communications Company, LLC; Sun-Sentinel Company, LLC; San Jose Mercury-News, LLC; DP Media Network, LLC; ORB Publishing, LLC; and Northwest Publications, LLC.

1

> nor does OpenAI operate or direct the functionality of third party developed GPTs, including whether and how user-developed GPTs may access or interact with content published by Plaintiffs. Consistent with OpenAI's service terms and policies, users "must ensure [their] GPT complies with the Service Terms (available at https://openai.com/policies/service-terms/) and Usage Policies (available at https://openai.com/policies/usage-policies/)."

Ex. A at 8. Notably, OpenAI does not dispute that such Custom GPTs exist.[2] Likewise, it does not dispute that it is aware of such Custom GPTs, and that it has the ability to obtain the information sought by the interrogatory. It simply refuses to provide the requested information. OpenAI "is obliged to respond" by furnishing the information available to it, and thus, the Daily News Plaintiffs respectfully request that this Court compel it do so. *See In re Auction Houses Antitrust Lit.,* 196 F.R.D. 444, 445 (S.D.N.Y. 2000).

During the meet and confer, OpenAI's basis for its refusal to identify any Custom GPTs was that the Daily News Plaintiffs had identified an initial set of relevant Custom GPTs in Requests for Admission. *See* Ex. D at 116-245. To the extent OpenAI is arguing that the information is equally available to the Daily News Plaintiffs, this argument is unavailing. OpenAI has unique knowledge of its products that cannot otherwise be obtained through publicly available channels. For example, OpenAI oversees and monitors all the GPTs made available on its platform, including GPTs that are no longer in operation or not visible in the GPT store. *See* Dkt. 1, ¶ 147; Ex. F ("Review and approval process"). Regardless, "[i]t is no objection to interrogatories . . . that the information sought is within the knowledge of the interrogating party." *Weiss v. Chrysler Motors Corp.*, 515 F.2d 449, 456 (2d Cir. 1975) (quoting *Bowles v. Safeway Stores*, 4 F.R.D. 469, 470 (W.D.Mo. 1945)).

## II. Interrogatory No. 11

Interrogatory No. 11 reads:

> Identify all bases for Your decision to delay, abandon, or otherwise not implement the "Media Manager" products and services described by You in the post titled "Our approach to data and AI," dated May 7, 2024 (available at https://openai.com/index/approach-to-data-and-ai/)...

Ex. A at 8-9. OpenAI never launched the Media Manager tool, which would have "enable[d] creators and content owners to tell [OpenAI] what they own and specify how they want their works to be included or excluded from machine learning research and training." *Id*. The bases underlying OpenAI's decision not to launch Media Manager are relevant to the Daily News Plaintiffs' claim that OpenAI's infringement is willful (Dkt. 1, ¶ 198), as well as OpenAI's implied license defense (Dkt. 352 at 40). And OpenAI does not dispute that this is relevant.

OpenAI did not identify *any* basis for its decision to delay, abandon, or otherwise not implement these products and services. Ex. A at 10. Instead, it merely reiterated the fact that

---

[2] Nor could it. Examples of paywall-evading Custom GPTs were cited in the Complaint, such as the "Paywall Remover" and "News Summarizer" Custom GPTs. Dkt, 1, ¶¶ 147-152.

OpenAI did not launch Media Manager. *Id.* During the parties' meet and confer, OpenAI explained that it could not provide ***any*** of the requested bases without divulging privileged information, and refused to further supplement its response on this basis. *See* Ex. B.

It is improbable that all bases for OpenAI's decision to delay, abandon, or otherwise not implement "Media Manager" are privileged. However, to the extent OpenAI's privilege claims are legitimate, OpenAI must respond to Interrogatory No. 11 with more than a boilerplate privilege objection. *See In re Shopping Carts Antitrust Litig.,* No. M-21-29-CLB, 1982 WL 1817, at *5 (S.D.N.Y. Mar. 11, 1982) ("[A] broad refusal to answer an interrogatory is not permitted when based solely on a claim of attorney client privilege. In order to make a proper objection, [a party] must 'present the underlying circumstances or facts demonstrating the existence of the privilege.'") (citations omitted). A sweeping refusal to answer warrants more than the statement that "OpenAI further objects to this Interrogatory to the extent it seeks information protected by the attorney-client privilege…." *See* Ex. A at 9.

### III. Interrogatory No. 13

Interrogatory No. 13 reads:

> Describe in detail each Market for Defendants' Generative AI Products and Services, including without limitation, for each Market: (a) a Market Description, (b) the Market Performance, and (c) the Marketing and Distribution Channels.

Ex. A at 10. The market for Defendants' Generative AI Products and Services is relevant to fair use factors 1 and 4, and OpenAI has not contested the relevance of this interrogatory.

OpenAI's supplemental response provides some, but not all, of the information sought. Particularly, OpenAI's supplemental response lacks any information on "Market Performance" and leaves out other pertinent information requested by Interrogatory No. 13. Examples of relevant, omitted information include identification of OpenAI's revenue figures and license agreements, as well as a description of OpenAI's target audiences and market share (e.g., indicating the products and services that Defendants' Generative AI Products and Services compete with). OpenAI's refusal to provide this information violates its obligations to fully answer the interrogatory. *See* Fed. R. Civ. P. 33(b)(3).

When Plaintiffs raised this deficiency, OpenAI refused to supplement its response on the ground that it did not "agree with" Plaintiffs' definitions for the terms used in this interrogatory. *See* Ex. B. Notwithstanding OpenAI's failure to explain what specific aspects of these definitions it does not agree with, to the extent OpenAI objects to the interrogatories as vague or ambiguous, these terms are clearly defined.[3] *See* Ex. C at 5-6. That OpenAI does not agree with Plaintiffs' clear and specific definitions does not give it carte blanche to withhold information.

---

[3] "Market Description" is defined as information about a Market, including "the geographic scope, target audience, and any other relevant market segments or information used to define the market." "Market Performance" is defined as information about the performance in each Market, including "sales figures, revenue, market share, and any other relevant financial metrics." "Market and Distribution Channels" means "information about the means by which the Generative AI Products and Services are distributed in each Market, including … license agreements."

3

The background of this interrogatory is worth noting. Interrogatory No. 13 is a verbatim copy (including the definitions) of an interrogatory that OpenAI itself first propounded to each of the Daily News Plaintiffs on October 18, 2024 (*see* Ex. E at 7), and to which the Daily News Plaintiffs have responded. That is, ***OpenAI objects to an interrogatory and definitions that OpenAI itself drafted and served***. OpenAI's disagreement with terms it originally wrote, and its refusal to fully answer Interrogatory No. 13 on the identified grounds, is impermissibly evasive. *See* Fed. R. Civ. P. 37.

## IV. Conclusion

For the foregoing reasons, the Daily News Plaintiffs seek an order requiring OpenAI to provide complete responses to Interrogatory Nos. 9, 11, and 13. Counsel for the Daily News Plaintiffs will be prepared to address these issues at the December 4th Hearing.

November 18, 2025

Respectfully submitted,

*/s/ Steven Lieberman*
Steven Lieberman
Rothwell, Figg, Ernst & Manbeck, P.C.

cc:   All Counsel of Record (via ECF)