# RUTTENBERG IP LAW
A PROFESSIONAL CORPORATION

February 13, 2026

<u>VIA ECF</u>
Hon. Ona T. Wang
Daniel Patrick Moynihan United States Courthouse
500 Pearl St.
New York, NY 10007-1312

cc: All Counsel of Record (via ECF)

Re: <u>In re: OpenAI, Inc., Copyright Infringement Litigation, 1:25-md-03143-SHS-OTW</u>
<u>This Document Relates To: Ziff Davis, Inc. et al. v. OpenAI, Inc. et al., Case No.</u>
<u>25-cv-04315-SHS-OTW</u>

Dear Judge Wang:

Below, the parties (Ziff Davis and OpenAI) provide an update regarding the issues raised in Ziff Davis's motions to compel (Dkt. Nos. 550, 778, 1052, 1092, 1202, 1210) and the most recent discovery dispute chart (Dkt. 1274) that summarized these issues. The Court directed the parties "to file a status letter on February 13, 2026 informing the Court as to what issues remain." Dkt. 1279 at 3.

The parties have made significant progress narrowing the issues and are hopeful that final resolution can be reached as to the majority of issues.

## I.      Interrogatories 7 and 16 (Dkt. 1210)

*Ziff Davis's Position:*

Ziff Davis moved to compel in response to Interrogatory Nos. 7 and 16, for which OpenAI provided *zero* information in its written responses. Dkt. 1210-3 at 17-19, 34-36. It now claims that it has previously produced responsive documents, but says it cannot identify those by Bates Number until next week. (OpenAI made this offer for the first time today at 8:12 pm.) While Ziff Davis welcomes that long-overdue information, on the face of the categories of documents OpenAI says it produced, those documents will not provide several pieces of critical regarding OpenAI's scraping and use of Ziff Davis content. Those categories are:

(i)     Ziff Davis URLs scraped by or at OpenAI's direction, including the dates of scraping, and how those results were used; and

(ii)    The specific training datasets into which the Ziff Davis content was incorporated.

Indeed, to resolve both of these interrogatories, Ziff Davis *already* has offered to narrow the interrogatories to *just the foregoing two requests*. OpenAI can provide this information by narrative response, by production of new documents or by identification of produced documents

by Bates Number (or some combination of all three), but any invocation of Rule 33(d) must be "sufficient[ly] detail[ed] to enable [Ziff Davis] to locate and identify" the document, and enable Ziff Davis to "determine[d] the request information." Fed. R. Civ. Proc. 33(d)—*i.e.*, not just general references to OpenAI's training data. **Ziff Davis respectfully requests that the Court compel OpenAI to provide the above two categories of information.**

*OpenAI's Position:*

Ziff Davis's "narrowed" requests still suffer from the same fundamental deficiencies—both requests seek duplicative information that OpenAI has produced or made available for inspection through more appropriate methods of discovery, as explained in OpenAI's response letter and prior conferrals. ECF 1251.

Ziff Davis's revised version of Interrogatory 7 asks OpenAI to identify all training datasets that allegedly incorporate Ziff Davis content. Ziff Davis's new version of Interrogatory 16 does not narrow the request in any meaningful way and instead demands *additional* information of specific dates that Ziff Davis content was allegedly scraped. But OpenAI has already produced extensive discovery on its training data, whether Ziff Davis's content is in the training data, OpenAI's scraping and crawling efforts, and what Ziff Davis content was scraped or used by OpenAI, if any. Specifically, OpenAI has (1) made its training datasets available for inspection (which Ziff Davis did not inspect for six months); (2) produced documents identifying relevant training datasets; (3) produced results from (a) Ziff Davis expert's own inventory and comprehensive searches of alleged Ziff Davis content in OpenAI's training data and (b) OpenAI's own searches for Ziff Davis content in the training data; (4) offered knowledgeable witnesses for depositions; (5) agreed to supplement 385 RFAs concerning the alleged use of Ziff Davis content (which is to be served next week); and (6) is actively conferring with Ziff Davis about the possibility of n-gram searches.

Nevertheless, during the parties' February 13 conferral,[1] OpenAI explained that in order to reach a compromise, OpenAI will supplement its Rule 33(d) response to Interrogatory No. 7 by Tuesday, February 17 to identify specific datasets through a list of produced documents by Bates numbers, as Ziff Davis requested above. OpenAI believes this supplementation will at least resolve Ziff Davis's dispute as to category (ii).

II. **Source code and Training Data (Dkt. 1052)**

*Ziff Davis's Position:*

a. N-Gram Searching

Ziff Davis's Motion (Dkt. 1052) asks that the Court "compel OpenAI to run N-Gram searches by a date certain in substantially the same manner that OpenAI ran these searches for

---

[1] Ziff Davis's contention that OpenAI did not make its supplementation offer until 8:12pm ET is simply not true.

other News Plaintiffs."[2] Dkt. 1052 at 3. Again, N-gram searching is critical for identifying infringing content in OpenAI's training data. However, OpenAI has yet to confirm whether it will perform the requested N-Gram searching for Ziff Davis, now stating that it needs to complete a "technical analysis" of the format of Ziff Davis's content to determine it is "usable" for such searching.

Contrary to OpenAI's suggestion below, Ziff Davis has not "changed tack." OpenAI's response below—*i.e.*, that it cannot "pre-commit to a search that has unspecified parameters and burden"—is concerning. As detailed in its motion, Ziff Davis has been seeking this information for nearly six months now (shortly after joining this case), whereas OpenAI has been (at best) non-committal.[3] What Ziff Davis seeks is no different than what OpenAI provided (and was ordered to provide, *see infra*, § 2(c)) to the other News Plaintiffs.

Ziff Davis is committed to producing its asserted works in whatever format is needed. But OpenAI can certainly commit *now* to running the searches as soon as any technical issues are resolved. **Ziff Davis respectfully requests that the Court order OpenAI to run the N-Gram searches as soon as any last technical issues are resolved.**

  b.  Reproduction of Source Code Printouts Provided to Other News Plaintiffs

In its Motion (Dkt. 1052), Ziff Davis seeks "production of source code…printouts" provided to any other News Plaintiffs. Dkt. 1052 at 1–2. In response, OpenAI argued that it had already *agreed* "to cross-produce source code printouts," and that a motion regarding source code printouts was therefore unnecessary. Dkt. 1115 at 1. While OpenAI has produced certain specific source code printouts that were identified by filename, despite multiple inquiries, OpenAI will not produce the remainder of the source code printouts produced to other News Plaintiffs. To narrow the dispute, Ziff Davis asked if OpenAI would agree to produce further code identified by filename. OpenAI declined to provide an express agreement. In its discussion below, OpenAI tries to walk back the commitments it previously made in its response to Ziff Davis's original motion. **Ziff Davis respectfully requests that the Court compel OpenAI to cross-produce any source code printouts provided to other News Plaintiffs**.

  c.  Reproduction of Training Data Using Databricks/Snowflake

In its Motion (Dkt. 1052), Ziff Davis also seeks production of training data using Databricks or Snowflakes, which (according to cited deposition testimony) are available in the ordinary course to OpenAI engineers. These tools would enable more searches of the training data at a much faster pace. Dkt. 1052 at 3. OpenAI opposed that request (Dkt. 1115 at 3) and continues in its refusal. Ziff Davis has offered to withdraw this request if OpenAI confirms that it will conduct N-gram searches and produce the results (*see supra* § II(a))), but OpenAI has yet to agree.

As explained previously, searching the OpenAI training data in its current form is exceedingly slow, particularly given the number of asserted works and the size of the databases. However, the database could be made available with other tools that would exponentially

---

[2] OpenAI also erroneously argues that Ziff Davis only produced its asserted works this week. To be clear, Ziff Davis *re-produced* its asserted works (at OpenAI's request) to facilitate the search.
[3] *See, e.g.*, Dkt. 1052-4 (OpenAI's counsel: "we have not agreed to run an n-gram search").

3

accelerate such searches, such as through Databricks, which is how OpenAI recently made available its output log productions.

Ziff Davis understands that other News Plaintiffs ultimately overcame these hurdles by having OpenAI conduct its own searches or URLs and N-grams, as requested above. *See*, 24-cv-4872, Dkt. 223 at 2 ("As directed by the Court, the parties met and conferred regarding proposed datasets and threshold values for the proposed 'N-Gram Search' of OpenAI training data. OpenAI will attempt to run an agreed N-gram search on an identified set of training datasets and produce the results"). With the benefit of those search results, Ziff Davis expects that (like other plaintiffs) it could conduct more limited and targeted searches of training data, using the existing architecture.

Accordingly, absent agreement of OpenAI running the requested searches (which it did for other Plaintiffs), **Ziff Davis respectfully requests that the Court order OpenAI to reproduce the training data in Databricks.**

*OpenAI's Position:*

Ziff Davis's motion to compel regarding source code and training data, ECF 1052, remains both premature and unnecessary for the reasons explained in prior updates to the Court, *see* ECF 1115 at 1-4; ECF 1192 at 4-5; ECF 1274-3 at 12-13. OpenAI provides further updates below.

      a. N-Gram Searches

As explained several times to both the Court and Ziff Davis, OpenAI cannot run (or even evaluate the correct parameters for) any n-gram searches for Ziff Davis content before Ziff Davis produces the text of its copyrighted works in a format that can be extracted and processed for analysis. Yet Ziff Davis filed its motion to compel before it even *tried* to produce this data.[4]

On February 10–three days ago–Ziff Davis finally began producing purportedly corrected data files. OpenAI has already committed to reviewing the data files to confirm that the format is usable. OpenAI has also already committed to analyzing the data to try to determine what sort of n-gram search may be possible and appropriate as it has done for other Plaintiffs.

Until 11:19 PM on the date this filing was due, Ziff Davis's half of this status update asked the Court to compel OpenAI to "confirm that it will run the N-Gram [sic] search by no later than February 23." But Ziff Davis has now completely changed tack again. OpenAI expects it will be able to complete its initial technical analysis by February 23, but the parties will need to engage in additional meet and confer discussions based on the results of that work. The n-gram search assistance that OpenAI provided to other plaintiffs was customized to their unique data. It took OpenAI many weeks to do the technical analysis for other plaintiffs. Meet and confer discussions followed, and then, even after agreement on search parameters, OpenAI needed additional time to perform the search, conduct quality control tests, and then produce the results. OpenAI has explained this to Ziff Davis several times,[5] but it seems not to understand that it is impossible for

---

[4] *See* ECF 1149-2 at 8 ("OpenAI asked Ziff Davis to produce its own n-grams, which are needed to conduct that search, four months ago. . . . OpenAI doesn't have the information it needs to begin negotiations [on an n-gram search]".).

[5] *See, e.g.,* ECF 1274-3 at 13 ("As explained in Dkt 1115 and Dkt. 1192, OpenAI cannot evaluate whether an n-gram search is appropriate here, and if it is, how the search should be structured,

OpenAI to pre-commit to a search that has unspecified parameters and burden. (Ziff Davis also mistakenly believes that the Court previously ordered OpenAI to run n-gram searches for other plaintiffs. Rather, the Court directed the plaintiffs to provide additional information to OpenAI, and then the parties resolved their dispute after a further meet and confer. *See* 1:23-cv-11195-SHS-OTW, ECF 441 at 2 and ECF 462 at 2).

Other plaintiffs have conducted their own n-gram searches using the computing environment that OpenAI provided, and Ziff Davis could have begun that work in ***May 2025***. Instead, it requested OpenAI's assistance in September, whereupon OpenAI asked Ziff Davis to schedule its first inspection and share its own n-gram data. If Ziff Davis wanted a firm commitment on whether OpenAI would be able to perform an n-gram search on its behalf, it would not have waited until 2.5 weeks before the close of fact discovery to produce the necessary data in the format that the parties agreed to. No further Court action is needed at this time.

       b. Reproduction of Source Code Printouts Provided to Other News Plaintiffs

OpenAI has produced all source code printouts that Ziff Davis has requested in compliance with the governing Protective Order, *see* ECF 367 at 17-18, and it even agreed to cross-produce a series of specific source-code files to avoid burdening the Court with this dispute. *See* ECF 1115 at 1 (citing ECF 1115-1 at 3). Ziff Davis was able to identify those files with specificity, indicating that they had engaged in at least a *de minimis* analysis to determine that the files were relevant. Ziff Davis confirmed its agreement with this compromise, but still–inexplicably–filed its motion later the same day. Regardless, OpenAI upheld the agreed compromise position and shipped a production of the requested printouts on January 20. But Ziff Davis now distorts that agreement in an effort to further circumvent the Protective Order, requesting *even more* source code printouts beyond those that OpenAI agreed to cross-produce. This is despite OpenAI making clear, as part of the parties' prior agreement, that "OpenAI will not agree to any additional cross-production requests of source code printouts," and "[a]ll future printouts requests will need to be made in compliance with the procedures set forth in the Protective Order." ECF 1115-1 at 3.

The Protective Order contains a series of heavily negotiated protections to ensure that OpenAI's sensitive source code is distributed only when necessary. For example, the Protective Order does not permit a plaintiff to "request paper copies for the purpose of avoiding electronic review on the Source Code Computer(s) in the first instance." ECF 367 at 17. And the requesting party must identify the requested files with specificity. *Id*. at 18. Ziff Davis has utterly failed to explain why it should be exempted from these Protective Order provisions, or why it should now get relief above and beyond its prior agreement with OpenAI. Ziff Davis can follow the Protective Order's requirements for any additional source code it seeks, and OpenAI, in turn, will abide by its obligations under the same Order–as it has consistently done. Ziff Davis has not even tried to identify the specific source code files that it seeks, and thus it cannot articulate why production is relevant and proportional. And to be clear, contrary to Ziff Davis's assertion above, OpenAI has not "walk[ed] back" any prior commitments; it complied with the parties' agreement, and it is *Ziff*

---

until Ziff Davis first produces readable copies of its own n-grams. Ziff Davis agreed that it would produce that data in December but the data it produced (after filing its motion) was not usable. No other plaintiff has had such difficulty producing this material. And no other plaintiff started a meet-and-confer discussion about n-gram searches--let alone filed a motion to compel--before producing the necessary data, in a usable format, that they wanted OpenAI to help search for.").

*Davis* that now seeks relief above and beyond the parties' previous compromise. No Court intervention is needed.

### c. Reproduction of Training Data Printouts Provided to Other News Plaintiffs

Ziff Davis removed all discussion of training data printouts from its portion of this joint update, so OpenAI understands this issue to be resolved.

### d. Reproduction of Training Data Using Databricks/Snowflake

Ziff Davis has not raised the "databricks/snowflake" issue in any of the parties' recent discussions, so OpenAI understood this issue to be resolved. Ziff Davis now re-raises its request in its portion of the joint update, but its request remains infeasible for all the reasons previously stated. *See* ECF 1115 at 3; ECF 1192 at 5. OpenAI's experts have already investigated and determined that constructing such a bespoke technical platform for Ziff Davis's use would take "several months of engineering work." ECF 1115 at 3.

Ziff Davis claims that it will drop this request if OpenAI runs its requested n-gram searches, but as explained above and previously, OpenAI could not agree to run any such searches until receiving usable proposed search terms from Ziff Davis–which it says it finally provided just a few days ago. No further Court action is needed.

## III. RFAs (Dkt. 1202)

*Ziff Davis's Position:*

Ziff Davis moved again to test the sufficiency of OpenAI's RFAs. (Dkt. 1202). At the December 2025 Discovery Conference, OpenAI agreed (and was ordered to) answer 395 RFAs (it later agreed to answer four more) by December 22, 2025, with Ziff Davis withdrawing the rest. Dkt. 910 at 3. OpenAI asked that Ziff Davis withdraw the rest of the RFAs because that would avoid OpenAI litigating its objections as to the agreed-upon RFAs.[6]

However, on December 22, OpenAI simply provided new boilerplate objections to the RFAs that it was ordered to answer. Further, its cut-and-paste responses fail to comply with Rule 36 (as detailed in the motion, with supporting case law).[7] Ziff Davis has pursued these though multiple meet-and-confers for another month and a half (in addition to meet-and-confers before the initial motion). For weeks now, OpenAI has promised a further supplement, but has yet to provide one. And OpenAI's suggestion (below) that it needs URLs (which it did not request until long after the Court-ordered deadline, and which Ziff Davis promptly provided upon request) is a

---

[6] *See* 12/5/2025 Hr'g Tr. at 213:11-14 (OpenAI's counsel: "we have meritorious objections as to the [395 RFAs] … I'm happy to talk about what our meritorious objections to the 395 are, but I don't know it's a good use of anyone's time. I think we're going to end up answering most of those as part of a deal."); *Id.* at 215:17-19 ("We'll give you the 395, and we want to be done").

[7] For example, a responding party cannot simultaneously "deny" an RFA and assert "lack of information," which are mutually exclusive. *See Nycomed US Inc. v. Glenmark Generics Ltd.,* No. 08-CV- 5023 (CBA), 2009 WL 10709073, at *2 (E.D.N.Y. Aug. 7, 2009) ("party may not deny RFA and claim lack of knowledge"). Further, if the responding party invokes "lack of information," it must "state in detail" why it cannot admit or deny. Fed. R. Civ. P. 36(a)(4).

red-herring—*i.e.*, responses based on URLs would be nonresponsive and are unlikely to resolve anything. **Ziff Davis respectfully requests that the Court compel OpenAI to provide a full response in accordance with Rule 36 or deem these RFAs admitted.**

*OpenAI's Position:*

Ziff Davis's demand remains premature and unwarranted for the reasons stated in OpenAI's response letter. ECF 1249. OpenAI complied with the Court's Order. For each RFA, OpenAI provided a substantive response—an admission, denial, or lack of information response. Ziff Davis mischaracterizes the responses as consisting of objections without answers. OpenAI provided an answer to each of Ziff Davis's RFAs while preserving valid objections.[8] This is precisely what Rule 36 permits.

Furthermore, the RFAs hinge on specific content tied to Ziff Davis's brands, yet Ziff Davis did not identify the relevant URLs associated with each of its 46 brands until February 8. Without that identifying information, OpenAI could not complete a targeted inquiry. Now that Ziff Davis has finally provided OpenAI with the required URLs, OpenAI has informed Ziff Davis that supplementary responses are forthcoming next week—which will resolve the issues Ziff Davis raises here. Ziff Davis's bare assertion that URLs are irrelevant is wrong, and it provides no explanation as to how OpenAI could otherwise perform the requisite searches.

### IV.  Date Range (Dkt. Nos 550, 778)

*Ziff Davis's Position:*

At the December discovery conference, the Court denied Ziff Davis's request that OpenAI update its production through August 2025 (Dkt. 778), but "directed [the parties] to meet and confer on limited post-July 2024 categories for discovery." Dkt. 910 at 2 ¶ 6. Despite those instructions, OpenAI refuses to produce any such categories. Ziff Davis raised this via an update in the Joint Discovery chart for February 2026, (Dkt. 1274-3 at 12-14), and follows-up here.[9]

To resolve this dispute, Ziff Davis has made multiple proposals, including most recently suggesting just the following six categories: (i) communications with Ziff Davis; (ii) documents relating or referring to Ziff Davis's content and trademarks; (iii) documents concerning Mashable hallucinations; (iv) documents concerning OpenAI's assignment of rights in output; (v) analyses, studies, measurements, testing, experimentation, assessments, or other evaluation of the value of Ziff Davis content; (vi) documents concerning the removal of any copyright management information from Ziff Davis content. OpenAI erroneously characterizes these as overbroad, and has yet to provide any counterproposal.

Below, OpenAI also contends that Ziff Davis's request requires a new motion and/or that the request is somehow foreclosed by this Court's ruling and/or Judge Stein's subsequent order overruling Ziff Davis's objection thereto (Dkt. 1228). These arguments miss the mark. This is not

---

[8] Contrary to Ziff Davis's suggestion, the Court did not order OpenAI to forfeit objections. Nor did OpenAI agree to waive objections.

[9] As previously explained, OpenAI sought custodial productions from Ziff Davis through August 2025, and much of its deposition questioning has focused on post-July 2024 documents

a new motion—it is an update on the Court's directive provided in adjudicating Ziff Davis's prior motion. Further, in overruling Ziff Davis's objections, Judge Stein noted *with approval* this Court's "instruction that the parties confer regarding potential categories of more limited discovery post-dating July 2024." Dkt. 1228.

*OpenAI's Position:*

Ziff Davis's demand is procedurally improper as there is **no motion pending** before the Court and **no motion held in abeyance**, and thus, **nothing to update** the Court on. Regardless, the relief Ziff Davis seeks has been foreclosed by the Court's and Judge Stein's rulings. ECFs 968, 1228. In direct contravention of those rulings, Ziff Davis demands the "wholesale discovery" that this Court and Judge Stein rejected under the guise of "narrowed" categories of documents. *See id.* Specifically, the Court denied Ziff Davis's motion to compel discovery through August 2025 (ECF 778) and made clear that "no other motions [were to be filed] on this unless and until Judge Stein rules on the motion to stay; and then *only if the motion to stay comes out and opens things up*." 12/4/25 Hr'g Tr. at 200:2–5; ECF 910. Judge Stein's Order did not open things up; rather, it expressly *limited the scope of discovery* to the models already in scope across the MDL (where the last in-scope model was released in July 2024). ECF 968. Judge Stein also overruled Ziff Davis's Rule 72(a) Objection, affirming the Court's December 5 ruling on Ziff Davis's motion to compel.[10] *See* ECF 1228.

Ziff Davis now attempts to relitigate this issue for a third time. But pursuant to this Court's and Judge Stein's Orders, OpenAI is not required to collect and produce documents through August 8, 2025. In any case, the six categories Ziff Davis proposes are not targeted "go gets." Instead, they are sweeping categories that span nearly every aspect of its case and would require the very "wholesale discovery" that both this Court and Judge Stein rejected. The Court was clear that "[w]e're not doing compromise offers with limited custodians and limited search terms" (12/4/25 Hr'g Tr. at 199:25-200:1), but the categories Ziff Davis lists demand exactly that. For example, the only way OpenAI can produce post-July 2024 "documents relating or referring to Ziff Davis's content and trademarks" is to update its custodial collections from July 2024 through August 2025 and then run over 100 Ziff Davis brand-specific search terms.

Respectfully submitted,

| | |
|---|---|
| */s/ Thomas Gorman* | */s/ Guy Ruttenberg* |
| Thomas E. Gorman | Guy Ruttenberg |
| Keker, Van Nest & Peters LLP | Ruttenberg IP Law, A Professional Corporation |
| Counsel for OpenAI Defendants | Counsel for Ziff Davis Plaintiffs |

---

[10] Ziff Davis mischaracterizes Judge Stein's Order. Judge Stein ruled that "Ziff Davis has identified no clear error in Judge Wang's decision to wait for clarification of the appropriate scope of discovery in this case, especially in light of her instruction that the parties confer regarding potential categories of more limited discovery post-dating July 2024." ECF 1228. This statement was clearly made to address Ziff Davis's failure to identify any clear error and was not endorsing the broader post-July 2024 discovery that Ziff Davis demands.