KEKER VAN NEST & PETERS    LATHAM & WATKINS LLP    MORRISON FOERSTER

February 20, 2026

**VIA ECF**

Hon. Ona T. Wang
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, NY 10007-1312

cc: *All Counsel of Record (via ECF)*

Re:   **OpenAI's Supplemental Brief Opposing Plaintiffs' Motion to Compel Mr. Brockman's Private Journal and Deposition Transcripts from *Musk v. Altman*;** *In re OpenAI Inc. Copyright Infringement Litigation*, Case No. 1:25-md-03143; This Document Relates to: All Actions.

Dear Magistrate Judge Wang:

Mr. Brockman's journal is quintessentially private. It contains his mental impressions regarding his personal and professional life. It is stored in an encrypted folder that only he can access. And though certain entries in the journal reflect on his role at OpenAI, "[a] private diary is made no less private because it contains material relating to an officer's corporate employment. Work is part of a person's life, and references to one's work activities will naturally tend to be included in an individual's record of activities." *In re Grand Jury Subpoena Duces Tecum Apr. 23, 1981*, 522 F. Supp. 977, 984 (S.D.N.Y. 1981) (cleaned up).

Courts in the Second Circuit "are to give weight to legitimate privacy interests" when considering a disputed discovery request. *Kunstler v. City of New York*, 2006 WL 2516625, at *11 (S.D.N.Y. Aug. 29, 2006). Plaintiffs' only theory of relevance here is that the public excerpts of the journal allegedly "relate to the commercial nature of OpenAI's endeavors[.]" ECF 1303 ("Mot.") at 3. But OpenAI has produced thousands of documents related to this issue, and Plaintiffs have had the opportunity to question dozens of witnesses—including a 30(b)(6) designee—on related issues. Given the cumulative nature of the discovery at issue and Mr. Brockman's "legitimate privacy interests," Plaintiffs' request is not proportional to the needs of the case, and their motion to compel production of the journal should be denied.

Plaintiffs do not engage with the serious privacy concerns at issue. Nor do they address that Mr. Brockman only produced select portions of his private journal in the unrelated *Musk* litigation because, unlike here, *he is a named defendant in that action*. Instead, Plaintiffs simply declare that the journal is not personal because it is "discoverable ESI." They are wrong.

4124682

Page 2

Lastly, Plaintiffs' third attempt to compel cross production of deposition transcripts from the *Musk* litigation (a request that the Court has already denied) should also be denied.

I.      **Courts in the Second Circuit Weigh Privacy Interests in Discovery Disputes.**

Courts within the Second Circuit regularly weigh privacy interests in determining the proper scope of discovery, including with regard to personal journals. Courts in this Circuit have "broad discretion to tailor discovery to the needs of the case and the interests of the discovered party," and are instructed "to give weight to legitimate privacy interests[.]" *Kunstler*, 2006 WL 2516625, at *11. In doing so, "the court, in its discretion, is authorized . . . to fashion a set of limitations that allows as much relevant information to be discovered as possible, while preventing unnecessary intrusions into the legitimate interests–including privacy and other confidentiality interests–that might be harmed by the release of the material sought." *Id.*

The same analysis pertains to personal journals. In *McSweeney v. Bayport-Bluepoint Central School District*, for example, the plaintiff, who sought damages for emotional distress, kept a diary. 2010 WL 11700817, at *2 (E.D.N.Y. Jan. 11, 2010). Although the plaintiff's emotional condition (and thus mental state) was at issue, the court observed that this "scarcely gives defendants license to rummage through all aspects of the plaintiff's life in search of possible source[s] of stress or distress." *Id.* (cleaned up). The court ultimately held that "the burden on the [] plaintiff – i.e., the invasion of her privacy – clearly outweighs the minimal and remote benefit, if any, that the production of the requested diary would provide to defendants." *Id.*

Private journals are treated with similar discretion in other contexts as well. In *In re Grand Jury Subpoena Duces Tecum Dated Apr. 23, 1981*, the court considered "whether [] subpoenaed calendars are private and therefore privileged, or corporate and therefore subject to call." 522 F. Supp. at 979. Although the court's analysis arose in the grand jury context, its careful examination of whether documents are corporate or personal is instructive here.

The court distinguished between the subpoenaed witness's desk calendars and his pocket calendars. *Compare id.* at 983 (finding the desk calendars corporate because they were "provide[d]" by the company, were used "primarily for corporate business[,]" contained "overwhelmingly corporate" content, and were left open on the desk with the secretary having access), *with id.* at 983–84 (concluding that "[a]s for the pocket calendars, little authority even indirectly supports the [] contention that they . . . are corporate documents[,]" that "[n]umerous decisions either protect personal diaries or state that nonbusiness documents are protected by the privilege from compelled production[,]" and that they were accessible to no one but the witness).

The court ultimately ordered production of the desk calendars but not the pocket calendars, which it held "should be protected as private papers." *Id.* at 984. In doing so, the court rejected an argument materially indistinguishable from Plaintiffs' position here:

> Just as the inclusion of personal matter with or on corporate documents does not change the nature of the corporate documents, ***the law should not deprive documents private in nature of the protection of the privilege merely because they include some corporate material. A private diary is made no less private because it contains material relating to an officer's corporate employment.***

4124682

Page 3

> Work is part of a person's life, and references to one's work activities will naturally tend to be included in an individual's record of activities. . . . [W]here the business notations are made merely as a convenience or aid to the individual involved, the document should retain its privileged status. . . . Furthermore, ***the production of such documents is likely to intrude on many aspects of what the witness expected to be his or her private life or thoughts***[.]

*Id.* (emphasis added). This Circuit has applied the *In Re Grand Jury* test to determine if a document is a personal or business record, the factors of which include: (1) who prepared the document, (2) the nature of its contents, (3) its purpose or use, (4) who maintained possession and who had access to it, (5) whether the corporation required its preparation, (6) and whether its existence was necessary to the conduct of the corporation's business. *In re Three Grand Jury Subpoenas, Dated Jan. 5, 1988*, 847 F.2d 1024, 1030 (2d Cir. 1988); *see also In Re Grand Jury Proceeding*, 971 F.3d 40, 56 (2d Cir. 2020). Applying those factors here confirms the personal nature of Mr. Brockman's journal: (1) he created the journal himself; (2) the journal is filled with personal details about his life; (3) he used it to record his impressions about his private and professional life; (4) no one else—certainly no one at OpenAI—had access to it, and it was kept in an encrypted file; (5) OpenAI never required Mr. Brockman to create or maintain a personal journal—it was entirely his own voluntary undertaking; and (6) it was not relied on by the company to conduct business.

The Court should not treat Mr. Brockman's private journal any differently just because it contains "material relating to an officer's corporate employment." *In re Grand Jury Subpoena Duces Tecum Dated Apr. 23, 1981*, 522 F. Supp. at 984.

## II.    Plaintiffs Fail to Undermine the Private Nature of Mr. Brockman's Journal.

Perhaps recognizing that courts in the Second Circuit regularly weigh privacy interests in adjudicating discovery disputes, Plaintiffs' resort to word games in an attempt to undermine Mr. Brockman's legitimate privacy interests in his journal, and to recast the document as a business record. Plaintiffs first contend that the journal cannot be personal because, during his deposition in this case, Mr. Brockman "corrected" counsel when the journal was referred to as a "diary," so they contend without explanation that diaries and journals are somehow subject to different treatment. Motion at 2. But nothing in the cited testimony undermines the private nature of the journal—whatever it is called. Mr. Brockman was asked about excerpts from [REDACTED]" produced in the Musk litigation, and he simply responded that "[REDACTED] [REDACTED]" Ex. 1 (Brockman Dep. Tr.) at 454:16–21. Nothing in this exchange undermines the obvious conclusion: Mr. Brockman's journal is an inherently private document.

Plaintiffs next rely on the fact that Mr. Brockman did not expressly call the journal "personal" during his deposition. That is ridiculous. Plaintiffs never asked Mr. Brockman whether the journal was personal, so he cannot be faulted for not answering a question that was not asked. Plaintiffs spent nearly ***eleven hours*** deposing Mr. Brockman and asked only four questions about the journal. Those questions all concerned his ***personal*** financial goals; ***none*** probed whether the journal was personal or business in nature. Plaintiffs likely avoided this line of

4124682

Page 4

questioning because they are well aware of the nature of the journal and did not want Mr. Brockman's testimony to that effect on the record.

That Mr. Brockman occasionally, and sometimes contemporaneously, recorded his thoughts about work meetings in his personal journal does not convert that private document into an OpenAI business record subject to discovery, and Plaintiffs cite *no* authority suggesting otherwise. To the contrary, the excerpts of Mr. Brockman's journal that have been unsealed in *Musk* establish that even his notes about work are *personal* reflections. See, e.g., *Musk v. Altman*, No. 4:24-cv-04722-YGR (ND. Cal.) ("*Musk*"), ECF 379-78 at 9 ("** post meeting[.] shit, [I] feel so good."); *Musk*, ECF 379-81 at 2 ("Ok so what do I *really* want? I want to want to be an engineer. But I think now is a crazy shot to be the one in charge and to step up to the challenge."); *id.* ("On the other hand, . . . this is probably the most interesting thing you'll do. So given that, when will I ever have a chance to be free and truly own my destiny?").

### III. Production of Mr. Brockman's Journal Is Not Proportional to the Needs of the Case

Despite the Court's instruction that Plaintiffs should address "whether compelling the production of Brockman's journal is relevant and proportional to the needs of this case[,]" ECF 1287 at 2, Plaintiffs spend very little of their five-page brief addressing the Court's question. Plaintiffs recite the same argument from their prior brief that Mr. Brockman's private journal is relevant to "the commercial nature of OpenAI's endeavors—a key part of Factor 1 of the fair use analysis." Mot. at 3. But this catch-all assertion would explode the bounds of discovery to encompass anything related to OpenAI's business. That cannot be—and is not—correct, as courts have found. The first fair use factor concerns "the purpose and character of the use" of the asserted copyrighted works—not the personal financial goals or impressions of a company executive. 17 U.S.C. § 107(1); *Hachette Book Grp., Inc. v. Internet Archive*, 115 F.4th 163, 184–86 (2d Cir. 2024). The cited portions of Mr. Brockman's journal say nothing about—and are thus irrelevant to—OpenAI's purported use of Plaintiffs' works to train the models in scope.

But even if the Court were to credit Plaintiffs' overbroad theory of relevance, Plaintiffs' request should be denied as disproportionate to the needs of the case. See Fed. R. Civ. P. 26(b)(2)(C)(i)–(ii) ("The court must limit . . . discovery . . . if it determines that . . . the discovery sought is unreasonably cumulative or duplicative . . . [or] the party seeking discovery has had ample opportunity to obtain the information by discovery in the action"). Plaintiffs have had ample opportunity to obtain—and in fact have already obtained—abundant information about OpenAI's creation of a for-profit entity under the controlling nonprofit and the alleged "commercial nature of OpenAI's endeavors." OpenAI has produced thousands of documents on this topic, including emails, Slack communications, and financial information showing revenues by product and by model. Multiple (fact and corporate) witnesses have testified about OpenAI's corporate form as well. *See, e.g.*, Ex. 2 (Korovesis Dep. Tr.) at 24:4–5 (OpenAI's for-profit arm was created "█████████████████████████"); *id.* at 37:20–38:5 ("█████████████████████████████████████████████████████████████████████████████████"); Ex. 3 (Altman Dep. Tr.) at 173:25-175: 4 ("█████████████████████████████████████████████").

4124682

Page 5

It defies common sense to contend that the production of Mr. Brockman's private reflections in his personal journal is necessary to establish the commerciality of OpenAI's operations. Plaintiffs already have documents establishing the precise dollar figures OpenAI has received from paying customers for its products and services. Said differently, what evidence of "the commercial nature of OpenAI's endeavors" do Plaintiffs expect to get from an executive's private journal that they do not already have from thousands of documents, hours of testimony, and, importantly, financial information? Plaintiffs fail to specify, because this demand has nothing to do with probing the commercial nature of OpenAI's operations. If it did, presumably Plaintiffs would have asked Mr. Brockman during his nearly eleven-hour deposition about his journal excerpts that purportedly speak to commerciality. They did not. Instead, the only excerpt Plaintiffs used in the deposition concerned his personal financial goals—demonstrating that Plaintiffs' true goal is to obtain personal information. Ex. 1 at 454:16–455:16.

Plaintiffs do not state any other basis for relevance. The closest they get is an admission that their request for Mr. Brockman's journal is a fishing expedition. *See* Mot. at 3 ("There is no question from the public excerpts alone that Mr. Brockman's notebook contains responsive material. The only question is what other responsive material it contains." (emphasis omitted)). Because compelling production would unquestionably intrude upon Mr. Brockman's legitimate privacy interests solely to further Plaintiffs' boundless discovery demands, the requested relief is not proportional to the needs of the case and should be denied.

### IV. Plaintiffs' Demand for *Musk* Litigation Materials Continues to Be Deficient

In January, the Court denied Plaintiffs' motion for production of transcripts and exhibits from the *Musk* litigation, admonishing that any renewed request will require a "different showing" of relevance and proportionality. Jan. 15, 2026 Hr'g Tr. at 240:17-241:1. Plaintiffs have refused to heed the Court's order and have now ***thrice*** briefed the ***same*** arguments that the Court rejected in January. *Compare* ECF 1043 at 2–3, *with* ECF 1200 at 2–3 *and* Mot. at 4–5.

Plaintiffs' request should be rejected for the same reasons that the Court rejected it in January. The law is clear that cross-production of discovery from another action is only permitted when the request is narrowly tailored and the other action is essentially identical, and cross-production should be denied where cases merely have some similarities. *In re Exactech Polyethylene Orthopedic Prods. Liab. Litig.*, 347 F.R.D. 572, 583 (E.D.N.Y. 2024). The claims in this MDL and those in the *Musk* litigation do not overlap at all, and the two actions involve different plaintiffs and different defendants. Courts deny cross-production under these circumstances. *See Chen v. Cincinnati Inc.*, 2007 WL 1191342 (E.D.N.Y. Apr. 20, 2007). Plaintiffs' conclusory assertion that the requested *Musk* materials bear on issues in this case is insufficient. They do not identify overlapping issues, or explain how the *Musk* materials are relevant to issues in this case.

Rather than address this deficiency, Plaintiffs argue that their request is reasonable because they are not seeking every deposition transcript and every document from the *Musk* litigation, nor are they seeking production of the transcripts for every deposition in which the six witnesses have testified. But this argument is a non sequitur. The case law cited by both parties is clear that Plaintiffs must show substantial similarity, and they have failed to do so.

4124682

Page 6

Respectfully,

| KEKER, VAN NEST & PETERS LLP[1] | LATHAM & WATKINS LLP | MORRISON & FOERSTER LLP |
|---|---|---|
| */s/ Andrew F. Dawson*<br>Andrew F. Dawson | */s/ Rose S. Lee*<br>Rose S. Lee | */s/ Herman H. Yue*<br>Herman H. Yue |

---

[1] All parties whose electronic signatures are included herein have consented to the filing of this document.

4124682