**VIA ECF**

March 3, 2026

>   *In re OpenAI, Inc.*, *Copyright Infringement Litigation*, 25-md-3143 (SHS) (OTW)
>   This Document Relates To: All Actions

Dear Magistrate Judge Wang:

      Pursuant to the Court's February 13 Order (Dkt. 1297), News and Class Plaintiffs (collectively, "Plaintiffs") submit this joint letter brief outlining Plaintiffs' remaining discovery disputes.

      Plaintiffs and Defendants agree no wholesale extension of the February 27 fact discovery deadline is warranted. The remaining disputes Plaintiffs raise here are limited to discrete issues that will not require Defendants to undertake substantial additional work, including no new custodial searches, but are necessary to fill gaps in the discovery Plaintiffs have received to date.

      For ease of review, Plaintiffs divided the disputes into the following categories: (I) missing or incomplete datasets and output logs, (II) missing documents from OpenAI, (III) missing documents from Microsoft, (IV) deposition follow-up, and (V) privilege disputes. Plaintiffs also preview in section (VI) potential sanctions motions. While all these issues are important, Plaintiffs have highlighted in blue the five issues they consider the most critical to fair adjudication of this case.[1]

### I.  Missing or Incomplete Datasets and Output Logs

      Despite their obvious relevance to this case, and despite Plaintiffs' diligent pursuit, Plaintiffs await production of the following:

    **a.  Missing OpenAI Output Logs:**

      OpenAI has failed to produce readily available, searchable, and already de-identified logs of ChatGPT conversations. These include logs with ▓ and ▓ million entries that plaintiffs only recently discovered, and potentially others that OpenAI has yet concealed. These conversations bear directly on how OpenAI products may generate outputs that infringe, substitute for, or dilute the markets for Plaintiffs' copyrighted works. *See* Dkt. 1312 (Motion), Dkt. 1336 (Opposition), and Dkt. 1358 (Reply). OpenAI must be ordered to produce these logs immediately, as it should done have voluntarily long ago.

    **b.  Microsoft's and OpenAI's Unworkable Output Log "Print" Protocol**:

      Defendants' output logs are among the most relevant evidence in this case, but they were only produced in the final weeks of the discovery period. The output logs are currently only accessible in highly restricted, remote, "sandboxed" environments, to a limited number of Plaintiffs' technical consultants and attorneys. Plaintiffs have requested a "print" protocol for obtaining electronic selections for legal analysis and preparing expert reports and exhibits, without

---

[1] A chart summarizing all issues is attached as Appendix A.

the burdens imposed by Defendants' review environment. *See* Ex. 1 (Proposed Protocol). Defendants have refused and insist instead on limiting production of log excerpts to hard copies totaling no more than 1,000 total log entries and that Plaintiffs' access to the logs themselves will be terminated when expert discovery ends. Plaintiffs seek access through the end of trial so that they can adequately prepare their case. The Court should adopt Plaintiffs' proposed output log "print" protocol, and order access through trial.

c. **Missing Project ▮▮▮ Web Crawl Dataset:**

OpenAI refuses to produce or make available the dataset for Project ▮▮▮ ▮▮▮ ▮▮▮" Ex. 2 (Canel Depo) at 78:10-13. Plaintiffs believe their content was included in that crawl, rendering this evidence central to this case, a belief that is bolstered by Microsoft's admission that ▮▮▮ Project ▮▮▮. *Id.* at 106:17-108:9. Yet Defendants have refused to produce the actual copy of the ▮▮▮ data which would show the full story—Microsoft's excuse being that it did not retain its copy, and OpenAI's excuse being that the dataset is too large. The Court should order OpenAI to produce this dataset or make it available for inspection without further delay.

d. **Missing Audiobooks Dataset:**

OpenAI refuses to search for and produce ▮▮▮ audiobook files that OpenAI researchers downloaded. In late 2020, ▮▮▮ Ex. 3 (OPCO_MDL_000133738). OpenAI researcher ▮▮▮" and ▮▮▮" *Id.* OpenAI's position is that ▮▮▮)[2]—only ▮▮▮ When Plaintiffs asked OpenAI's counsel if they had spoken to ▮▮▮ or searched for the audiobook files, OpenAI's counsel refused to answer. Lists of ▮▮▮ audiobook files hosted by ▮▮▮ are available on the Wayback Machine. *See* Ex. 4. Plaintiffs thus request that OpenAI search their own files for (and produce) ▮▮▮ audiobook files which were available on ▮▮▮ as of January 2021.

e. **Common Crawl PDFs:**

Plaintiffs seek the production of PDFs that OpenAI scraped from the Internet in an attempt to replace LibGen and obtain more books. This data is critical to Class Plaintiffs' download claim and should have been produced long ago. The ▮▮▮ Common Crawl compilation ▮▮▮ d purposefully omitted PDFs that were larger than 1 megabyte. However, Common Crawl recorded the URLs of these so-called "truncated PDFs." So, ▮▮▮ ▮▮▮ *See* Ex. 5 (OPCO_MDL_000001460) at 3; Ex. 6 (OPCO_MDL_000481197) at 2-9; Ex. 18 OPCO_MDL_000208860) at 3; Ex. 7 (OPCO_MDL_000212377) at 7-12; Ex. 8

---

[2] A fact which Plaintiffs only learned in a deposition today despite months of conferrals and OpenAI's prior commitment to search his personal container in November 2025 ▮▮▮

(OPCO_MDL_004397833); Ex. 9 (Excerpts of Brockman Depo.) at 173:20-23, 177:2-179:15, 210:1-214:24. The researcher in charge of processing ▮▮▮▮▮ testified that ▮▮▮▮▮. Ex. 10 (Excerpts of Xu Depo.) at 15:25-16:9, 20:25-23:6. The material produced to date does not permit identification of which books ▮▮▮▮▮ (and thus the full extent of infringement). Despite the central relevance of this material, OpenAI has refused to produce the Common Crawl PDFs dataset on burden grounds but failed to substantiate this claim.

    f. **Local Production of 5 OpenAI Training Datasets:**

Plaintiffs seek local production of five ▮▮▮▮▮ training datasets. OpenAI has impeded Plaintiffs' experts from efficiently accessing these datasets by limiting review to inspection in San Francisco and inadequately provisioning the inspection so that Plaintiffs cannot inspect simultaneously. OpenAI claims these datasets are "sensitive," unduly burdensome to produce, and partially irrelevant. But the parties have already negotiated protocols for local production after Judge Illman ordered OpenAI to locally produce a different training dataset prior to consolidation, Ex. 11 at 10; OpenAI has presented no evidence of burden; and that some portion of the data *may* be unrelated to Plaintiffs' claims is no basis for refusing the whole. Neither Plaintiffs' nor their experts should have their access to this critical data restricted by OpenAI's availability during expert discovery. *See* Ex. 12 (Plaintiffs rescheduling training data inspection because OpenAI's 3 inspection laptops were in use). OpenAI should produce the 5 training datasets listed in Ex. 32.

    g. **Google Cloud Data Related to Torrenting:**

Plaintiffs seek production of datasets related to two Google Cloud projects that OpenAI may have used to ▮▮▮▮▮. On January 26, Plaintiffs requested OpenAI to confirm that two Google Cloud projects were not related ▮▮▮▮▮ Ex. 13. These Google Cloud virtual computer clusters show many ▮▮▮▮▮ Ex. 13; *see also* Ex. 14 (OPCO_MDL_001944822) (discussing torrenting and ingress and egress). Because ▮▮▮▮▮ is in scope of Plaintiffs' downloading claim, the Court should compel OpenAI either (1) to confirm that the Google Cloud data referenced in Ex. 13 is unrelated to ▮▮▮▮▮ or (2) to produce datasets and documents related to this ▮▮▮▮▮.

    h. **Source Code Printouts:**

Class Plaintiffs seek production of additional source code related to OpenAI's ▮▮▮▮▮. OpenAI objected to this print request as exceeding Class Plaintiffs' limit of 900 pages of printed source code under Paragraph 21(l) of the Protective Order, *see* Ex. 15, but this argument fails: the Protective Order expressly recognized the uncertainty around the number of printed pages needed and allows parties to exceed the 900-page limit for good cause. Plaintiffs have good cause given the importance of OpenAI's download of books ▮▮▮▮▮

---

[3] OpenAI's counsel claims Mr. Xu misspoke due to his poor English. OpenAI's counsel did not ask Mr. Xu any questions at his deposition to challenge this testimony. And the testimony speaks for itself: ▮▮▮▮▮ 23:2-6.

███████████ to Plaintiffs' direct infringement claim. Class Plaintiffs respectfully request an order compelling OpenAI to produce this print request and to confer on additional print requests by Class Plaintiffs (as Class Plaintiffs expect further printouts will be needed during expert discovery).

## II.    Missing Documents from OpenAI

    **a.    Giraffe Evaluations and Newly Disclosed Slack Channel:** OpenAI should produce its "Project Giraffe" evaluations, including those stored in non-custodial data sources. ███████████████████████████████████████████████████████████ These evaluations either specifically addressed Times content ███████████████████████, which includes Plaintiffs' content. Plaintiffs' request for these evaluations is fully briefed. Dkts. 1220, 1267, 1312, 1337, 1360.

    Additionally, on February 26, 2026—the day before the close of fact discovery—OpenAI produced documents which disclosed for the first time that ████████████████████████████████████████████████████████████████████████████████████ *See, e.g.,* Ex. 16 (OPCO_MDL_004857416). Plaintiffs now have concerns that OpenAI did not adequately search and produce documents from this Slack channel (and perhaps similar channels) and accordingly seek the full discussion in the channel given its relevance to The Times's claims, along with any other Slack channel discussions that OpenAI has not appropriately produced.

    **b.    ████████████████████ Agreement with Walmart**: Plaintiffs seek production of OpenAI's contracts with retailers for its ████████████████ program, a feature for purchasing products within ChatGPT without having to visit a retailer's site. This feature competes with News Plaintiffs' sites, including The Times's Wirecutter site for product recommendations. OpenAI has agreed to produce these contracts, ██████████████████████████████████████ ████████ Those concerns are misplaced, particularly because the agreement can be designated "Outside Counsel Only" under the Protective Order. Plaintiffs have informed ████████ that it should intervene to oppose this production in advance of the March 10 hearing.

    **c.    Greg Brockman Work Notes:** The parties have filed supplemental briefing addressing OpenAI's refusal to produce responsive portions of Mr. Brockman's notebook. Dkts. 1303, 1335.

    **d.    Related *Musk* Depositions:** The parties have filed supplemental briefing addressing OpenAI's refusal to produce limited deposition transcripts from the *Musk* Case. Dkts. 1303, 1335. Since then, former OpenAI board member Tasha McCauley was deposed and confirmed that her *Musk* deposition covered ████████████████████████████████████████████████

    **e.    Ziff Davis Discovery Disputes:** Ziff Davis and OpenAI remain at an impasse as to the issues presented in Ziff Davis's Feb. 17, 2026 Motion to Compel (Dkt. 1322), including (i) N-Gram searching/databricks, (ii) deficient responses to ROGs 7 and 16, and (iii) Court-ordered categories of post-July 2024 documents. These issues have been addressed in prior briefing, most recently at Dkts. 1322, 1315 and 1210. The parties are continuing to confer regarding (i), although OpenAI declined to engage regarding issues (ii) and (iii).

### III. Missing Documents from Microsoft

a. **Microsoft Products that Use the GPT-4o Model:** Plaintiffs renew their request for limited discovery concerning Microsoft products powered by the infringing GPT-4o model, which Judge Stein declared to be in scope in his October 27, 2025 Order. Dkt. 707 at 6.

i. **"New" Copilot:** Plaintiffs seek production of discrete data metrics and licensing agreements for this version of the Copilot chatbot. Microsoft's Rule 30(b)(6) witness on metrics data for "New" Copilot (David Levenson) ████████████████████████████████████████████████████████████████████████████████████████████. In addition, Plaintiffs learned through meet-and-confers that Microsoft has entered into ████████████████████████████████████████████████████. These documents and data are relevant to damages and the fair use analysis, including to prove how Microsoft's ongoing use of Plaintiffs' content impacts the market for Plaintiffs' works.

ii. **Copilot Search:** Plaintiffs seek documents sufficient to show the extent to which people are using the Copilot Search chatbot, which is powered by GPT-4o, to access news content. These documents are relevant to fair use factor four because they bear on how this product substitutes for News Plaintiffs' content.

iii. **Additional Implementations of GPT-4o:** Plaintiffs seek minimal discovery about just three of the 500 other products powered by the GPT-4o Model: (1) Summarize Top News, (2) Recipe Tips, and (3) Bing Shopping. As before, Plaintiffs only seek to confirm and memorialize information that Microsoft's counsel has already provided about these products—(A) each product uses the GPT-4o model, (B) each product is operational and being used by Microsoft users and customers, and (C) a basic description of how each product works and what it does. Plaintiffs will accept an interrogatory response or deposition to confirm and memorialize this information. Plaintiffs asked Microsoft deponents about these products but none were knowledgeable about them. These three products are relevant because each one leverages an infringing large language model (GPT-4o) to compete with News Plaintiffs' sites.

b. **Microsoft Financial Data**: Plaintiffs' dispute on M365 financials and marketing materials has been fully briefed. *See* Dkts 1310 & 1318. There is now no dispute that Microsoft offered the infringing LLMs as part of its M365 consumer and enterprise subscriptions and not merely as a separate add-on subscription. Accordingly, Plaintiffs are entitled to M365 subscription financials under black-letter disgorgement law, information Plaintiffs have sought for over a year. Separately, Plaintiffs have requested limited additional information following the February 26 Rule 30(b)(6) deposition of Microsoft's witness on revenue and profits topics (Katie Griffiths). The parties are continuing to confer on this additional information.

### IV. Deposition Follow-Ups

a. <u>**Disputes about Microsoft witnesses not yet deposed:**</u> Microsoft is refusing to make three witnesses available for depositions in violation of the governing deposition protocol. Dkt. 355. Plaintiffs collectively have ~ 43 hours remaining from their Court-ordered time caps, which is more than enough time to depose these witnesses, yet Microsoft has refused to produce them.

i. **Glen Weyl:** Glen Weyl is a Microsoft employee with knowledge about ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ which is relevant to fair use factor four. Plaintiffs requested his deposition on January 19, over a month before the close of fact discovery. Without seeking a protective order, Microsoft has refused to provide dates for this deposition. Plaintiffs seek an order that Dr. Weyl be deposed no later than March 20.

ii. **William Buchwalter:** William Buchwalter is a Microsoft employee with knowledge of the ▮▮▮▮▮▮▮ and Microsoft's evaluation of that data. Ex. 29 [Song Depo Tr. At 96:10-22]; *see also id.* 103:1-7 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Mr. Buchwalter also likely has knowledge of ▮▮▮▮▮▮▮. *See* Ex. 17 (MSFT_AI_MDL_001327351) (Buchwalter comparing ▮▮▮▮▮ OpenAI's Books2 dataset). Microsoft's employees' knowledge about, access to, and use of the ▮▮▮▮▮ is clearly relevant, including for Plaintiffs' contributory infringement claims. Microsoft has failed to provide dates for this deposition or seek a protective order since Plaintiffs first requested this deposition on January 17, over a month before the close of fact discovery. Plaintiffs seek an order that Mr. Buchwalter be deposed no later than March 20.

iii. **Kevin Scott:** This Court denied Microsoft's motion for a protective order to block and/or limit this deposition of Microsoft's Chief Technology Officer, granting Plaintiffs up to seven hours to depose Mr. Scott. Dkt. 910 (December 5, 2025 Order) at 8. The parties then scheduled Mr. Scott's deposition for February 26, 2026. Five days before that deposition, counsel for Microsoft disclosed an issue with deposing Mr. Scott that required postponement. The parties are conferring about how to address Mr. Scott's unavailability, including whether Microsoft will stipulate to admitting Mr. Scott's documents at trial in lieu of presenting him for deposition.

d. **Disputes about OpenAI witnesses not yet deposed:**

i. **Vik Goel:** Vik Goel is a former OpenAI employee who ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Plaintiffs requested his deposition on January 19, shortly after discovering Mr. Goel's role in that project. Counsel for OpenAI responded on February 2, noting that Mr. Goel no longer works at OpenAI and now lives abroad. Plaintiffs have been trying to locate Mr. Goel to serve him with a deposition subpoena but have been unable to find an address for him. Plaintiffs have asked OpenAI to provide any address they have, but OpenAI has not yet responded. Plaintiffs set aside time for this deposition from their hours budget and will seek to depose Mr. Goel when they locate him.

ii. **Chris Koch:** Mr. Koch is a current OpenAI employee whom OpenAI described in supplemental interrogatory responses as a witness it may rely on. Plaintiffs proposed to forego his deposition if OpenAI would confirm it is not planning to rely on him and that an upcoming Rule 30(b)(6) deposition of another OpenAI employee (Barrett Zoph) will address the information that Mr. Koch knows about (i.e., the "mid-training" process). OpenAI has neither accepted this proposal nor offered a date for Mr. Koch to be deposed.

e. **Disputes about witnesses already deposed:**

    i. **Rule 30(b)(6) Deposition of Vinnie Monaco:** Plaintiffs seek to re-open the deposition of OpenAI employee Vinnie Monaco for an additional six hours. Mr. Monaco is OpenAI's Rule 30(b)(6) witness on key topics including OpenAI's retention of output log data, including for the preservation order in this case. Plaintiffs deposed Mr. Monaco on January 27 and 28 and moved to re-open the deposition on January 29 (Dkt. 1220), given Mr. Monaco's failure to adequately prepare for his topics and OpenAI's belated production of documents and data on the same day of his deposition. This dispute is now fully briefed, including supplemental briefing this Court requested. Dkts. 1312, 1337, 1360. Since Mr. Monaco's deposition, OpenAI has also disclosed the Giraffe Slack channel mentioned above, which includes Mr. Monaco.

    ii. **Rule 30(b)(6) Deposition of Eric Rynerson:** Plaintiffs seek to re-open the deposition of Mr. Rynerson, OpenAI's designated Rule 30(b)(6) witness on two topics: (1) how OpenAI analyzes user log data to assess how users are using ChatGPT, and (2) OpenAI's expectations for how end-users would use its models and product. Mr. Rynerson was unprepared to testify on highly relevant aspects of these topics, including how OpenAI analyzes output logs to assess how people use ChatGPT, any output log analysis regarding uses that elicit copyrighted content, any analysis regarding problematic uses of ChatGPT (e.g., violence, self-harm, sexual content, hate speech, harassment, and criminal advice), and how OpenAI analyzes user log data, such as when OpenAI users click on links. OpenAI also belatedly produced documents the final week of fact discovery (after Mr. Rynerson's deposition) evidencing certain use cases of its products and models (that OpenAI evidently believes show their benefits). Accordingly, Plaintiffs seek an additional half-day (3.5 hours) 30(b)(6) deposition on these topics and additional documents no later than March 20.

    iii. **Mustafa Suleyman, CEO of Microsoft AI:** Class Plaintiffs seek to re-open the deposition of Mustafa Suleyman because Microsoft's counsel improperly instructed the witness not to answer relevant questions about the contents of the Bing Index. Since 2024, Suleyman has been the CEO of Microsoft AI. In 2022, Suleyman was a co-founder and employee of Inflection AI. ███████████████████████████████████████ ███████████████████████████████████ Because neither Microsoft nor OpenAI retained this version of the Bing Index, Plaintiffs have devoted significant time and resources to discovery related to this version of the Bing Index ███ ████████████████████████ Padma Gaggara, Microsoft's Rule 30(b)(6) witness on the Bing Index, was unable to answer Plaintiffs' questions about ███████████████ ██████████████████████████████████████████ Ex. 19 (Excerpts of Gaggara Depo.) at 104:3-12. Given Microsoft's lack of knowledge, Mr. Suleyman is likely the only witness who can answer questions about the contents of the 2022-2023 Bing Index. But when Plaintiffs asked him about the contents of the index, Microsoft's counsel improperly instructed him not to answer. *See* Ex. 20 (Excerpts of Suleyman Rough Depo.) at 119-123. Class Plaintiffs thus seek to re-open Mr. Suleyman's deposition and ask that Microsoft present him for deposition no later than March 20.

    iv. **OpenAI 30(b)(6) Witness on Preservation Issues:** News Plaintiffs seek a two-hour Rule 30(b)(6) deposition with an OpenAI witness prepared to testify about OpenAI's preservation and/or deletion of the New York Times Annotated Corpus, which is a dataset OpenAI ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ This dataset is important because, when OpenAI acquired this dataset, it agreed not to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ News Plaintiffs contend that OpenAI violated this agreement when it ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ News Plaintiffs are concerned that OpenAI may have deleted its copy of the dataset after using it. Plaintiffs have been seeking such a deposition since October 2025, when they successfully compelled a Rule 30(b)(6) deposition about OpenAI's "preservation, and/or deletion of data or content used for any stage of training and/or developing [its models]." Dkt. 848 at 6 (November 24, 2025 Order granting Plaintiffs' request for this deposition topic). Following that order, the parties scheduled this deposition for March 3, and the week before the deposition, Plaintiffs as a courtesy informed OpenAI they expected to question the witness about OpenAI's preservation and/or deletion of the New York Times Annotated Corpus. OpenAI improperly claimed the deposition would not cover this issue and did not prepare its witness to testify on this subject, as confirmed by the witness during the deposition.

## V. Privilege Disputes

    a. **Pending requests for *in camera review*:** Consistent with the Court's instructions at the February 11 hearing, Class Plaintiffs have submitted additional letters in support of their request for *in-camera* review of 26 OpenAI documents and 4 Microsoft documents.

    b. **Waiver at Dkts. 1051 & 1057:** The Court previously directed the parties to confer as to the impact of Judge Stein's Order at Dkt. 1276 on Dkt. 1051 (seeking waiver against OpenAI) and Dkt. 1057 (same re: Microsoft). Judge Stein's Order held, *inter alia*, that OpenAI had not made a subject matter waiver because it had elected not to "offer evidence of its state of mind regarding the legality of its conduct to rebut Class Plaintiffs' allegations of willfulness," not to assert any "good faith or state of mind defense," and not to "put its state of mind regarding the legality of its actions at issue by, for example, offering testimony that OpenAI employees believed their activities to be lawful." Dkt. 1276 at 7-8 & n.4. OpenAI has confirmed that this election also applies to the News Cases. Ex. 21 [Nick Goldberg's 2/27 email]. And Microsoft similarly confirmed that it would "abide by the conditions in Judge Stein's [O]rder." Ex. 22 [Annette's 3/2 email]. As such the waiver issue in Dkts. 1051 & 1057 is resolved.

    c. **OpenAI's redacted documents and** ▮▮▮▮▮▮▮▮▮▮ Plaintiffs have identified 29 additional redacted documents where OpenAI appears to be impermissibly asserting privilege.[4] The list of additional documents is attached as Appendix C, and Plaintiffs request *in-camera* review of these documents because they appear to be not privileged for the reasons raised in the Court's October 1 order, including (1) the lack of a predominantly legal (as opposed to business or technical) purpose and (2) the discussion of mere legal issues (rather than legal advice). *See* Dkt. 618 at 2, 5.

---

[4] Plaintiffs first asked OpenAI to confer about the majority of these documents on February 24. Because OpenAI failed to respond until March 2, the parties were only able to confer about a sample of these documents prior to the submission of this brief.

Plaintiffs also request an order compelling OpenAI to log its communications related to its ███ mitigations. OpenAI witnesses testified that OpenAI ███████████████████████████████████████████████████████████████████████████████ *See, e.g.*, Ex. 23 (Excerpts of Ahmad Depo) at 13:8-15. When asked about these efforts, both witnesses claimed privilege over the entire process. One testified repeatedly that "█████████████████████████████████████ *See, e.g., id.* at 101:23-24. Plaintiffs inquired with OpenAI's counsel whether OpenAI asserted privilege or work product over ███████████ documents in its privilege logs—and cited several RFPs that clearly encompass such documents— but OpenAI responded that it did not log them and argued they didn't need to do so because the documents are not responsive. This argument is nonsensical—Plaintiffs served multiple requests related to OpenAI's efforts to prevent regurgitation, and these efforts are relevant to OpenAI's knowledge and willfulness. *See, e.g.*, ██████████████████████████████████████████████████████████████ ████████████. OpenAI must immediately produce all documents related to ████ ██████ and log any of these documents OpenAI is withholding as privileged.

   d. **OpenAI's redacted documents involving David Lansky:** Class Plaintiffs also seek a ruling that several OpenAI communications involving former in-house counsel David Lansky are not privileged. ████████████████████████████████████████████████ The Court should scrutinize OpenAI's assertions of privilege over Lansky's communications to determine "whether the predominant purpose of the communication was to convey business advice and information or, alternatively, to obtain or provide legal advice." Dkt. 618 at n.9 ((quoting *In re Aenergy, S.A.*, 451 F. Supp. 3d 319, 323 (S.D.N.Y. 2020)). Plaintiffs have attached five redacted documents where Mr. Lansky's communications or involvement appear to be predominantly business or technical in nature rather than legal. *See* Appendix C Entry Nos. 1391, 1395, 1398, 3010, and 3109. Plaintiffs also challenge OpenAI's February 28, 2026 clawback of OPCO_MDL_004619860, another document indicating that Mr. Lansky's role █ ███████████████ was predominantly business rather than legal. These documents are not privileged for the reasons articulated at Dkt. 618 n.9, and Plaintiffs request a ruling on these documents that will govern additional privilege assertions related to Mr. Lansky.

   e. **OpenAI's Copyright Policies:** Plaintiffs seek to compel OpenAI's policies related to copyright. In the deposition of Johannes Heidecke (OpenAI's Rule 30(b)(6) designee on "OpenAI's general policies related to AI safety"), OpenAI's counsel refused to allow Heidecke to answer two entirely policy-related questions: ████████████████████████████████████ ███████████████████████████████████████████████████████████████████████ and (2) regarding certain ███████████████████████████████████████████████████ ████████████ *See* Ex. 25 (Heidecke Depo) at 46:1-19 & 132:8–139:25. By refusing to answer either question, Mr. Heidecke flouted the "general rule" that "communications relating to company policy do not meet the requirements of the attorney-client privilege and so are not privileged." *United States v. Int'l Bus. Machs. Corp.*, 66 F.R.D. 206, 210 (S.D.N.Y. 1974). The mere fact that "██████████████████████████████████████████████ in no way justifies his *complete* refusal to answer. *See* Ex. 25 at 46:11 & 139:23. Policies are not necessarily privileged, and the reasons behind policies are not privileged. *See* Jan. 16, 2026 Hearing Tr. at 5 (Judge Stein: "It seems to me

that reasons are not privileged. Communications are privileged."). In lieu of re-opening Mr. Heidecke's deposition and because the policy issue re-occurred in other depositions, *see, e.g.,* Ex. 26 (Sohl's 30(b)(6)) at 255:17-260:24, 360:5-23, 406:13-419:15; Ex. 27 (Paino's 30(b)(6) deposition) at 263:12-266:17, Plaintiffs request OpenAI immediately produce all policies related to copyright and confirm that OpenAI is not withholding any copyright policies based on privilege.

f. **Microsoft redacted documents:** Plaintiffs also seek in camera review of 7 redacted documents listed in Appendix B. These documents are not privileged for reasons raised in the Court's October 1 order, including because the communications (1) lack a predominant legal (as opposed to business or technical) purpose or (2) reflect communications about vague legal issues rather than actual legal advice. *See* Dkt. 618 at 2, 5. For example, Ex. 28 (MSFT_AI_MDL_001676968) and Ex. 30 (MSFT_AI_MDL_001363894) are about Microsoft's strategies ▅▅▅▅▅▅▅▅▅▅▅▅▅▅▅ Neither Microsoft's strategies nor the reasons behind those strategies are privileged. The same is true for Microsoft's policies and discussions ▅▅▅▅▅▅▅▅▅▅▅▅▅ Ex. 31 (MSFT_AI_MDL_001402467). Because these documents are not privileged, the Court should review all seven documents listed in Appendix B in camera.

VI. **Preview of Forthcoming Sanctions Motions**

As a result of OpenAI's misrepresentations and belated disclosures about its abilities to search (and its prior searches over) its training datasets and output logs for Plaintiffs' copyrighted content, Plaintiffs have requested an opportunity to recover their fees and costs pursuant to Fed. R. Civ. P 37(a)(5). This motion would include fees and costs related to the 20 million output log sample and onsite inspections in the training data sandbox. ECF 1312.

Moreover, as a result of, *inter alia*, OpenAI's deletions, redactions, and substitutions of the 20 million output log sample and other deleted output log data, including those made in violation of this Court's orders, Plaintiffs may seek substantive sanctions, including in the form of inferences and preclusions, after we complete our questioning of Mr. Monaco, finish discovery and analysis of all materials, and ascertain the full scope of prejudice.

VII. **Procedural & Administrative Issues**

Plaintiffs sent Defendants a proposal for a modest extension of expert discovery deadlines in light of the number of depositions scheduled for March, as well as the recent production of output log data. Plaintiffs' proposed extension does not impact the August 14, 2026 summary judgment deadline.

Respectfully,

 _/s/_Davida Brook_____
Davida Brook
Susman Godfrey LLP
Counsel for The New York Times Company
News Plaintiffs' Liaison Counsel

10

                                                                                                                                                      */s/ Justin A. Nelson*
                                                                                                                                                      Justin A. Nelson
                                                                                                                                                      Susman Godfrey LLP
                                                                                                                                                      Interim Lead Class Counsel

cc:    All Counsel of Record (via ECF)