KEKER
VAN NEST
& PETERS

LATHAM&WATKINS LLP

MORRISON
FOERSTER

<u>**VIA ECF**</u>
Hon. Ona T. Wang
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, NY 10007

RE:    **OpenAI's Supplemental Briefing in Opposition to Plaintiffs' Motion to Compel the Production of the *Musk* Deposition Materials**, *In Re: OpenAI, Inc., Copyright Infringement Litigation*, No. 1:25-md-3143; This Document Relates To: All Actions

Dear Judge Wang:

Two months ago, when this Court rejected Plaintiffs' initial demand for wide-ranging discovery from the *Musk* litigation, it cautioned Plaintiffs that any future request must make a "different showing" and establish that Plaintiffs "don't have it from what [they] already have." 1/15/26 Hr'g Tr. at 240:24–25. Plaintiffs fail to make such a showing here. They argue that the deposition transcripts they seek are relevant because the witnesses in question testified about matters related to commercialization of OpenAI's products. As previously explained, Plaintiffs' theory of relevance is grossly overbroad and would lead to boundless discovery. But regardless, Plaintiffs have had ample opportunity to obtain—and in fact have already obtained—abundant information about OpenAI's creation of a for-profit entity under the controlling nonprofit and the alleged commercial nature of OpenAI's endeavors. Indeed, Plaintiffs' supplemental brief quotes in detail deposition testimony from multiple witnesses in this case in which they were examined on this very subject, and OpenAI has previously described the broad swath of documents that have been produced on the issue. *See, e.g.*, ECF No. 1335 at 4. Plaintiffs therefore cannot satisfy this Court's requirement that any production from the *Musk* case pertain to matters not otherwise covered by discovery already produced.

Plaintiffs do not dispute that discovery in this case has already thoroughly addressed commercialization, but they now contend that they are entitled to cumulative discovery because it theoretically could reveal a basis for impeachment of certain witnesses. This new tack fails as well. *First*, Plaintiffs have never cited a ***single*** case in which cross-production of discovery material was authorized because, theoretically, it might reveal a basis to impeach a witness. Nor could they. Such an approach would lead to automatic cross-production where there is any alleged overlap in subject matter, which is clearly not the rule. *Second*, Plaintiffs' attempt to corroborate their impeachment theory relies on misinterpretations of the deposition record. A proper reading of the testimony in question establishes that there is no basis for impeachment, and no justification to obtain cumulative discovery. Plaintiffs' motion to compel must be denied.

## I.    Production of the irrelevant *Musk* deposition materials would be disproportionate.

Tacitly accepting that the legal claims and causes of action in the respective cases are materially different, Plaintiffs hinge their requests on the argument that the *Musk* deposition

materials are relevant because they "overlap" with the topic of "OpenAI's early commercialization efforts," which purportedly relate to OpenAI's "fair use defense." ECF No. 1449 at 2. But Plaintiffs misstate the fair use analysis. Factor 1 of the fair use analysis focuses on the commercial nature of OpenAI's and Microsoft's purported use of Plaintiffs' *works*, not Defendants' corporate form or status. *See Hachette Book Grp., Inc. v. Internet Archive*, 115 F.4th 163, 184–86 (2d Cir. 2024). That is, "[t]he crux of the profit/nonprofit distinction, then, is . . . whether the *user* stands to profit from the exploitation *of the copyrighted material* without paying the customary price." *Id.* at 184 (emphases added) (cleaned up). Thus, Plaintiffs' conflation of OpenAI's early commercialization efforts with OpenAI's alleged use of Plaintiffs' works is erroneous.

In addition, even if Plaintiffs' theory of relevance *were* viable, the record demonstrates that Plaintiffs have already obtained wide-ranging discovery—both documentary and testimonial—on the subjects they identify. OpenAI has produced thousands of documents on this topic, including emails, Slack communications, and financial information showing revenues by product and by model. Multiple (fact and corporate) witnesses have testified about OpenAI's corporate form as well. *See, e.g.*, ECF No. 1335 at 4. Of particular import here, the individual witnesses whose transcripts Plaintiffs seek *have already been deposed in this matter*. *See* 3/10/26 Hr'g Tr. at 131:18–19 (Plaintiffs admitting to the Court that they "depose[d] these folks in this case"). Duplicative transcripts from another matter are *per se* cumulative. Production of the *Musk* deposition materials, therefore, plainly conflicts with Rule 26. *See* Fed. R. Civ. P. 26(b)(2)(C)(i)–(ii) ("[T]he court must limit the frequency or extent of discovery" when "the discovery sought is unreasonably cumulative or duplicative" or "the party seeking discovery has had ample opportunity to obtain the information by discovery in the action").

## II.    The theoretical existence of impeachment material cannot justify production.

Given the facially cumulative nature of Plaintiffs' request, Plaintiffs speculate as to additional ways in which the duplicative deposition transcripts might be relevant. They allege that the *Musk* transcripts might provide a basis to impeach witnesses at trial in the event the testimony in the two depositions differs. ECF No. 1449 at 1. At the outset, Plaintiffs have never cited *any* case in which a court authorized cross-production simply because there is a theoretical possibility that the cross-production might yield impeachment material. Indeed, such an exception would swallow the general rule that such productions are disfavored. *See In re Exactech Polyethylene Orthopedic Prods. Liab. Litig.*, 347 F.R.D. 572, 583 (E.D.N.Y. 2024) (stating that courts may only permit the production of "discovery from another case . . . when the requests are narrowly tailored to request discovery from another case that is essentially identical").

Nor is there any factual basis to believe such impeachment material exists here. Plaintiffs' cherry-picking of isolated snippets of deposition testimony fails to establish any inconsistency. For instance, Plaintiffs accuse Mr. Altman of testifying inconsistently about when he was involved in OpenAI's decision or discussions related to forming a for-profit entity. More specifically, they argue that Mr. Altman's testimony that he did not recall taking part in a "decision to pursue a for-profit entity by the end of 2017" is inconsistent with his testimony in *Musk* that he had participated in discussions about possibly forming a for-profit in that

2

timeframe. *See* ECF No. 1449 at 2. But as a matter of logic and language, there is no inconsistency here. Participating in discussions is different from actually making a decision. Indeed, Mr. Altman's deposition testimony in this matter explained the timeline clearly and aligns perfectly with his testimony in *Musk*. In a separate passage of Mr. Altman's testimony in this matter, which is not cited in Plaintiffs' brief, Mr. Altman explained that in the relevant timeframe the group "was thinking about what kind of entity we would need to be," and that he did not "remember when in 2018 we kind of agreed on what the structure was going to be." OAI Ex. A at 24:9–11, 24:17–20. And regardless, the precise timeline of discussions and decisions regarding possible changes to OpenAI's corporate structure is peripheral even under Plaintiffs' theory of relevance to OpenAI's fair use defense. Plaintiffs have not even ***alleged*** any inconsistency regarding the actual corporate structure or any related issue that would be relevant to their view of fair use.

The same holds true for Plaintiffs' reliance on Mr. Altman's testimony in the respective cases "about OpenAI's . . . partnership with Microsoft." ECF No. 1449 at 2. Plaintiffs allege that Mr. Altman testified in *Musk* that OpenAI entered its agreement with Microsoft in order to "develop and deploy [certain] products," while in this matter he testified that at the time of the Microsoft agreement OpenAI was "not thinking about building a product." *Id.* This alleged inconsistency does not exist. *First*, Mr. Altman's testimony in this case regarding "products" pertained to language contained in an exhibit shown to him during the deposition; Plaintiffs' claim that it represents Mr. Altman's explanation of the agreement with Microsoft is false. *Second*, Mr. Altman's testimony in the two cases is identical with regard to the anticipated benefits of the Microsoft partnership. In discussing the Microsoft agreement in *Musk*, Mr. Altman explained that OpenAI "needed help" and "more resources than we had as a company," including Microsoft's compute. ECF No. 1162-6 at 362:22–25. In describing the agreement in this case, Mr. Altman explained that OpenAI was not "capable of building systems" at the necessary scale and "need[ed] a lot of compute," and that Microsoft was one of very few companies in the world with the necessary resources. OAI Ex. A at 198:4–5, 209:12. Plaintiffs' claimed "evol[ution]" in Mr. Altman's testimony on this subject simply does not exist.

Plaintiffs' attempts to find inconsistencies in Mr. Brockman's testimony fail for similar reasons. Plaintiffs contend that Mr. Brockman testified in *Musk* that OpenAI had "'concluded' by November 2017 that OpenAI would become a for-profit," and that this testimony differed from his testimony in this matter. ECF No. 1449 at 3. But the *Musk* transcript demonstrates that, contrary to Plaintiffs' claims, no final conclusion had been made in November 2017, as Mr. Brockman explained the merits and demerits of various courses of action, including either maintaining a non-profit or forming of a public-benefit corporation. *See* ECF No. 1162-1 at 229:14–230:17. As with Mr. Altman's testimony, there is simply no daylight between Mr. Brockman's testimony in *Musk* and his testimony here.

*      *      *

Plaintiffs have had multiple chances to justify the cumulative discovery they seek from the *Musk* litigation. Because there is no adequate justification, they cherry-pick from the testimonial record in order to claim inconsistency between depositions. Their claimed inconsistencies, however, are imagined and ultimately irrelevant even to their overbroad view of

3

OpenAI's fair use defense. Plaintiffs do not even allege inconsistencies as to the issues they believe to be most significant, such as the actual substance of OpenAI's corporate structure or the nature of OpenAI's partnership with Microsoft. On those issues (and many others), Plaintiffs have obtained more than adequate discovery in this case, and their unjustified request for more should be denied.

Sincerely,

| KEKER, VAN NEST & PETERS LLP | LATHAM & WATKINS LLP | MORRISON & FOERSTER LLP |
|---|---|---|
| */s/ Andrew F. Dawson* | */s/ Herman H. Yue* | */s/ Rose S. Lee* |
| Andrew F. Dawson (*pro hac vice*) | Herman H. Yue | Rose S. Lee (*pro hac vice*) |

4