**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE: OPENAI, INC., COPYRIGHT INFRINGEMENT LITIGATION<br><br>This Document Relates To:<br><br>*The New York Times Co. v. Microsoft Corp. et al.*, No. 1:23-cv-11195<br><br>*Daily News L.P., et al. v. Microsoft Corp. et al.*, No. 1:24-cv-03285<br><br>*The Center for Investigative Reporting, Inc. v. OpenAI, Inc. et al.,* No. 1:24-cv-04872<br><br>*Ziff Davis, Inc. v. OpenAI, Inc. et al.,* No. 1:25-cv-04315 | 1:25-md-03143 (SHS) (OTW)<br><br>**MEMORANDUM OF LAW IN SUPPORT OF OPENAI DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS**<br><br>ORAL ARGUMENT REQUESTED |

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ...................................................................................................1

II.    BACKGROUND ....................................................................................................2

        A.    Legal Background..................................................................................2

                1.    Pre-*Cox* Contributory Infringement Case Law ...........................3

                2.    The Supreme Court's Decision in *Cox* and its Elimination of Material Contribution Liability.........................................................4

        B.    Factual and Procedural Background .......................................................5

III.    LEGAL STANDARD.............................................................................................8

IV.    ARGUMENT.........................................................................................................9

        A.    *Cox* Forecloses News Plaintiffs' Claims Premised on Knowledge of and Material Contribution to Infringement.......................................................9

        B.    News Plaintiffs Did Not Allege, and Have Explicitly Disavowed, Any Claim That OpenAI Induced Infringement...............................................10

        C.    News Plaintiffs Did Not Allege, and Cannot Now Allege, That OpenAI's Services Are Tailored to Infringement .................................................12

V.    CONCLUSION....................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Abbey House Media, Inc. v. Apple Inc.*,
66 F. Supp. 3d 413 (S.D.N.Y. 2014)........................................................................................4

*Andersen v. Stability AI Ltd.*,
744 F. Supp. 3d 956 (N.D. Cal. 2024) ...................................................................................13

*Arista Recs. LLC v. Lime Grp. LLC*,
784 F. Supp. 2d 398 (S.D.N.Y. 2011)....................................................................................11

*Arista Recs. LLC v. Usenet.com, Inc.*,
633 F. Supp. 2d 124 (S.D.N.Y. 2009).....................................................................................11

*Arista Recs., LLC v. Doe 3*,
604 F.3d 110 (2d Cir. 2010).....................................................................................................4

*Citibank, N.A. v. Aralpa Holdings LP*,
No. 1:22-cv-08842, 2023 WL 5971144 (S.D.N.Y. Sept. 14, 2023) .........................................8

*Cox Commc'ns, Inc. v. Sony Music Ent.*,
146 S. Ct. 959 (2026)................................................................................... *passim*

*DiFolco v. MSNBC Cable L.L.C.*,
622 F.3d 104 (2d Cir. 2010).....................................................................................................6

*Ellis v. Chao*,
336 F.3d 114 (2d Cir. 2003)..............................................................................................9, 14

*Evans v. Bronxworks, Inc.*,
No. 1:24-cv-07507, 2025 WL 3483580 (S.D.N.Y. Dec. 4, 2025)............................................9

*Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc.*,
443 F.2d 1159 (2d Cir. 1971)...........................................................................................1, 4, 10

*Glob.-Tech Appliances, Inc. v. SEB S.A.*,
563 U.S. 754 (2011)...............................................................................................................10

*Goldberg v. Pace Univ.*,
88 F.4th 204 (2d Cir. 2023) .....................................................................................................9

*Henry v. A.B. Dick Co.*,
224 U.S. 1 (1912)......................................................................................................................3

*Hesse v. Godiva Chocolatier, Inc.*,
    463 F. Supp. 3d 453 (S.D.N.Y. 2020)..................................................................................8

*Ironshore Specialty Ins. Co. v. Color Techns., Inc.*,
    No. 1:23-cv-07526, 2024 WL 3634860 (S.D.N.Y. Aug. 1, 2024) ............................................8

*Kalem Co. v. Harper Bros.*,
    222 U.S. 55 (1911)...............................................................................................3, 13

*L-7 Designs, Inc. v. Old Navy, LLC*,
    647 F.3d 419 (2d Cir. 2011)...................................................................................9

*Luvdarts, LLC v. AT&T Mobility, LLC*,
    710 F.3d 1068 (9th Cir. 2013) ..............................................................................13

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster Ltd.*,
    545 U.S. 913 (2005)...........................................................................................3, 7, 13

*Range v. Grand Greene LLC*,
    1:24-cv-02500, 2025 WL 1144700 (S.D.N.Y. Apr. 17, 2025)...................................................9

*Screen Gems-Columbia Music, Inc. v. Mark-Fi Recs., Inc.*,
    256 F. Supp. 399 (S.D.N.Y. 1966)..........................................................................4

*Sony Corp. of Am. v. Universal City Studios, Inc.*,
    464 U.S. 417 (1984)........................................................................................2, 3, 7, 13

*Sony Music Ent. v. Cox Commc'ns, Inc.*,
    93 F.4th 222 (4th Cir. 2024), *rev'd*, 146 S. Ct. 959 (2026) ....................................................4

*VHT, Inc. v. Zillow Grp., Inc.*,
    918 F.3d 723 (9th Cir. 2019) ..............................................................................13

*Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*,
    127 F. Supp. 3d 156 (S.D.N.Y. 2015).....................................................................8

**STATUTES**

35 U.S.C. § 271(b) ...............................................................................................................10

**TREATISES**

4 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 13E.03[B] (rev.
    ed. 2026) ........................................................................................................4

**OTHER AUTHORITIES**

College Students and ChatGPT Adoption in the US, OpenAI (Feb. 20, 2025),
    https://openai.com/global-affairs/college-students-and-chatgpt/...........................................14

iii

*Introducing ChatGPT Gov*, OpenAI (Jan. 28, 2025), https://openai.com/global-affairs/introducing-chatgpt-gov/ ........................................................................14

*Introducing ChatGPT Plus*, OpenAI (Feb. 1, 2023), https://openai.com/blog/chatgpt-plus.....................................................................6

*Introducing OpenAI for Healthcare*, OpenAI (Jan. 8, 2026), https://openai.com/index/openai-for-healthcare/ ....................................................14

*Introducing OpenAI for Nonprofits*, OpenAI (May 30, 2024), https://openai.com/index/introducing-openai-for-nonprofits/ ................................14

OpenAI and the California State University System Bring AI to 500,000 Students and Faculty, OpenAI (Feb. 4, 2025), https://openai.com/index/openai-and-the-csu-system/...............................................................................................................14

Sébastien Bubeck et al., *Sparks of Artificial General Intelligence: Early Experiments with GPT-4* (Apr. 13, 2023), https://arxiv.org/pdf/2303.12712.pdf.....................................................................6

*Stories*, OpenAI Academy, https://academy.openai.com/public/collections/stories-hub................................................................................................................14

*Use*, OpenAI (Dec. 11, 2024), https://openai.com/policies/row-terms-of-use/revisions/2024-12-11/......................................................................................8

## I.     INTRODUCTION

The Supreme Court's landmark decision in *Cox Communications, Inc. v. Sony Music Entertainment*, 146 S. Ct. 959 (2026), is dispositive of the contributory copyright infringement claims asserted by Plaintiffs The New York Times Co. ("The Times"), Daily News Plaintiffs, The Center for Investigative Reporting ("CIR"), and Ziff Davis (collectively, "News Plaintiffs") as a matter of law.   *Cox* fundamentally reshaped—and significantly narrowed—the standard for contributory infringement, abrogating the "knowledge plus material contribution" theory on which News Plaintiffs' claims depend.   News Plaintiffs' contributory infringement claims should therefore be dismissed with prejudice.

When News Plaintiffs initially brought their claims against OpenAI,[1] before *Cox* was decided, there were three potential contributory infringement theories recognized by courts: (1) that the defendant had induced the alleged infringement, (2) that the defendant had provided a product or service that was not capable of substantial noninfringing uses, or (3) that the defendant knew of and materially contributed to the alleged infringement.   *See Cox*, 146 S. Ct. at 967-68; *id.* at 969-74 (Sotomayor, J., concurring in the judgment); *Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc.*, 443 F.2d 1159, 1162 (2d Cir. 1971).   As early as August 2025, News Plaintiffs expressly disclaimed reliance on the first theory, inducement, in a hearing before this Court.   *See MDL*[2], Dkt. 525 ("Aug. 12, 2025 Discovery Conf.") at 25:20-25 ("[News Plaintiffs] do not have a claim by inducement.").   News Plaintiffs have never relied on the second theory, and could not (and cannot) plausibly do so given the wide number of non-infringing uses of OpenAI's large

---

[1] In this brief, "OpenAI" or "OpenAI Defendants" refers collectively to Defendants OpenAI, Inc., OpenAI LP, OpenAI GP, LLC, OpenAI LLC, OpenAI OpCo LLC, OpenAI Global LLC, OAI Corporation, LLC, and OpenAI Group PBC.

[2] *MDL* refers to the docket in *In re: OpenAI, Inc. Copyright Infringement Litigation*, No. 25-md-03143.

language models.  Instead, News Plaintiffs' claim of contributory liability is based solely on the third theory: that OpenAI allegedly knew of instances of direct infringement using OpenAI's services and materially contributed to such infringement by failing to stop it.  But the Supreme Court in *Cox* expressly rejected this theory, and held that material contribution is not sufficient to make out contributory infringement.  146 S. Ct. at 969 ("[C]ontributory liability cannot rest only on a provider's knowledge of infringement and insufficient action to prevent it.").

Because *Cox* has now made clear that the only theory of contributory infringement that News Plaintiffs have pursued is overruled, and given that News Plaintiffs have no viable claims under either remaining theory of infringement recognized in *Cox*, each of News Plaintiffs' contributory liability claims fails as a matter of law and should be dismissed with prejudice.[3]

## II.    BACKGROUND

### A.    Legal Background

"The Copyright Act does not expressly render anyone liable for infringement committed by another."  *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 434-35 (1984) (citation omitted).  But the Supreme Court has long recognized two theories of contributory copyright liability, borrowed from patent law: inducement, and sale or distribution of a product lacking substantial noninfringing uses.  And, for many years, a number of lower courts adopted a third theory: material contribution, which was based on common law aiding-and-abetting.  *Cox* preserved the first two longstanding theories of liability recognized in the Court's own precedent, while abrogating the third, lower-court-made material contribution theory.

---

[3] After the Supreme Court's decision in *Cox* was announced, OpenAI sent News Plaintiffs several emails asking whether they would voluntarily dismiss their contributory infringement claims, since those claims are now foreclosed as a matter of law.  News Plaintiffs never responded, making this motion necessary.

### 1.    Pre-*Cox* Contributory Infringement Case Law

**a.**    The first traditional ground of contributory liability is inducement of copyright infringement.  *See, e.g.*, *Kalem Co. v. Harper Bros.*, 222 U.S. 55, 62-63 (1911).  Under this theory, a person who intentionally distributes a device or provides a service "with the object of promoting its use to infringe copyright, as shown by clear expression or other affirmative steps taken to foster infringement," is liable for inducement.  *Metro-Goldwyn-Mayer Studios Inc. v. Grokster Ltd.*, 545 U.S. 913, 936-37 (2005).

*Grokster* presented a paradigmatic example of inducement.  There, the defendant companies engaged in "express promotion [and] marketing" of their software for sharing and downloading infringing content, and the "principal object" of the business "was use of their software to download copyrighted works."  *Grokster*, 545 U.S. at 926.  Grokster explicitly marketed its service as "the next Napster," encouraged users to share copyrighted material for free, and even prompted users to download specific copyrighted songs.  *Id.* at 922-24, 926.

**b.**    The second longstanding basis for contributory liability is the knowing sale or distribution of a product or service that is "unsuited for any commercial noninfringing use"—*i.e.*, one that is not "capable of substantial noninfringing uses" or "commercially significant noninfringing uses."  *Sony*, 464 U.S. at 441-42 (citation omitted).  "[W]here an article is 'good for nothing else' but infringement, there is no legitimate public interest in its unlicensed availability, and there is no injustice in presuming or imputing an intent to infringe."  *Grokster*, 545 U.S. at 932 (citations omitted).

By contrast, the law "absolves the equivocal conduct of selling an item with substantial lawful as well as unlawful uses."  *Id.*  Thus, the sale or distribution of a product "does not constitute contributory infringement if the product is widely used for legitimate, unobjectionable purposes."  *Sony*, 464 U.S. at 442; *see also Henry v. A.B. Dick Co.*, 224 U.S. 1, 48 (1912) ("[A] sale of an

article which, though adapted to an infringing use, is also adapted to other and lawful uses, is not enough to make the seller a contributory infringer.").

**c.** In addition to these two theories of contributory infringement recognized by the Supreme Court, some courts had also imposed contributory liability based on a third theory: "material contribution." This now-vitiated theory imposed contributory liability on "one who, with knowledge of the infringing activity, . . . materially contributes to the infringing conduct of another." *Arista Recs., LLC v. Doe 3*, 604 F.3d 110, 117 (2d Cir. 2010) (emphasis modified) (quoting *Gershwin*, 443 F.2d at 1162); *see also Abbey House Media, Inc. v. Apple Inc.*, 66 F. Supp. 3d 413, 419 (S.D.N.Y. 2014) (discussing material contribution); *Sony Music Ent. v. Cox Commc'ns, Inc.*, 93 F.4th 222, 233-37 (4th Cir. 2024) (same), *rev'd*, 146 S. Ct. 959 (2026). Material contribution was ostensibly rooted in "the common law doctrine that one who knowingly participates or furthers a tortious act is jointly and severally liable with the prime tortfeasor." *Gershwin*, 443 F.2d at 1162 (quoting *Screen Gems-Columbia Music, Inc. v. Mark-Fi Recs., Inc.*, 256 F. Supp. 399, 403 (S.D.N.Y. 1966)).

The material contribution standard swept broadly, exposing a wide range of defendants to liability on the theory that they "provid[ed] substantial assistance to the direct infringer." *Abbey House Media*, 66 F. Supp. 3d at 419. Under this framework, courts found defendants liable for knowingly participating in or providing the tools that were used for infringement. *See* 4 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 13E.03[B] (rev. ed. 2026) (providing examples).

 2. **The Supreme Court's Decision in *Cox* and its Elimination of Material Contribution Liability**

In *Cox*, the Supreme Court reaffirmed that "[t]he provider of a service is contributorily liable for the user's infringement only if it intended that the provided service be used for

infringement."  146 S. Ct. at 967.  But critically, it clarified that "[t]he intent required for contributory liability can be shown *only*" under the first two theories—*i.e.*, "if the [defendant] induced the infringement or the provided service is tailored to that infringement."  *Id.* (emphasis added).  And because *Cox* holds that the "*only*" viable theories of liability are inducement and tailoring, the Supreme Court's decision necessarily forecloses contributory copyright liability based on the common-law-based knowledge-and-material-contribution theory previously recognized by lower courts.  *Id.* (emphasis added); *see also id.* at 969-70, 972 (Sotomayor, J., concurring in the judgment) (acknowledging that "materially contribut[ing] to infringement . . . is rooted in the common-law doctrine of aiding and abetting" and observing that the majority opinion eliminates "the possibility that other common-law theories of such liability, like aiding and abetting, could apply").  The *Cox* majority did not reject the Fourth Circuit's ruling because the lower court had adopted a too-lenient standard for material contribution.  Instead, it concluded that the Fourth Circuit's decision was wrong because material contribution *is not a valid theory of secondary liability at all.  See id.* at 968-69 (majority op.).

As a result, prior cases that based contributory copyright infringement liability on any theories beyond inducement or tailoring have been categorically abrogated.  *See Cox*, 146 S. Ct. at 971 (Sotomayor, J., concurring in the judgment) (recognizing elimination of "other forms of secondary liability derived from the common law").

B.      **Factual and Procedural Background**

OpenAI was founded in 2015 to "advance digital intelligence in the way that is most likely to benefit humanity as a whole."  *NYT*, Dkt. 585, Second Amended Compl. ("NYT SAC") at ¶ 56; *see also DN*, Dkt. 1, Compl. at ("DN Compl.") ¶ 53; *ZD*, Dkt. 105, First Amended Compl. ("ZD

5

FAC") at ¶ 59.[4]  It entered the field of "natural language processing" ("NLP"), which includes the development of statistical tools called "language models."  *See* Sébastien Bubeck et al., *Sparks of Artificial General Intelligence: Early Experiments with GPT-4* at 4, 98 (Apr. 13, 2023), https://arxiv.org/pdf/2303.12712.pdf; *see also* NYT SAC ¶ 71 n.9 (citing article); DN Compl. ¶ 68 n.13 (same).[5]  These models can "predict[] words that are likely to follow a given string of text" based on statistics derived from a body of text—much like a weather model can predict the rain using statistics derived from historical weather data.  NYT SAC ¶ 75; *see also* DN Compl. ¶¶ 73-75; *CIR*, Dkt. 88, First Amended Compl. ("CIR FAC") ¶ 48; ZD FAC ¶¶ 80-81.  Users interact with OpenAI's models using ChatGPT, a consumer-friendly platform that allows everyday users to "chat" with an OpenAI model through a user interface.  *See generally Introducing ChatGPT Plus*, OpenAI (Feb. 1, 2023), https://openai.com/blog/chatgpt-plus; *see also* NYT SAC ¶ 156 n.43 (citing article); DN Compl. ¶ 179 n.75 (same).

News Plaintiffs' contributory copyright infringement claim hinges on OpenAI's alleged knowledge of users engaging in direct infringement using OpenAI's models and alleged material contribution to that infringement by continuing to provide access to its allegedly infringing models and failing to take action to stop users' alleged infringement.  As to knowledge, News Plaintiffs allege that OpenAI knew of "direct infringement by end-users because Defendants undertake extensive efforts in developing, testing, and troubleshooting their LLM models and GPT-based

---

[4] "*NYT*" refers to the docket in *The New York Times Company v. Microsoft Corporation, et al.*, No. 23-cv-11195; "*DN*" refers to the docket in *Daily News LP, et al. v. Microsoft Corporation, et al.*, No. 24-cv-3285; "*ZD*" refers to the docket in *Ziff Davis, Inc., et al. v. OpenAI, Inc., et al.*, No. 25-cv-04315; "*CIR*" refers to the docket in *The Center for Investigative Reporting, Inc. v. OpenAI, Inc., et al.*, No. 24-cv-4872.

[5] By "refer[ing] [to these documents] in [their] complaint[s]," the Times and Daily News Plaintiffs incorporated them by reference.  *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111-12 (2d Cir. 2010).

6

products" and are "fully aware that their GPT-based products are capable of distributing unlicensed copies or derivatives of the copyrighted" works.  NYT SAC ¶¶ 187; *see also* DN Compl. ¶¶ 214; CIR FAC ¶ 144; ZD FAC ¶ 230.  As to material contribution, they allege that OpenAI "materially contributed to and directly assisted with the direct infringement perpetuated by end-users of the GPT-based products" by (i) developing models "capable of distributing unlicensed copies" to end-users, (ii) "building and training" the models using the works at issue, and continuing to provide access to those models to users, and (iii) "deciding what content is actually outputted by the GenAI products," including allegedly infringing outputs.  NYT SAC ¶ 186; *see also* DN Compl. ¶ 212; CIR FAC ¶ 143; ZD FAC ¶¶ 227-228.  In essence, News Plaintiffs' theory is that OpenAI should be held liable for allegedly failing to do more to stop all alleged infringement using its services. *See, e.g.*, DN Compl. ¶ 156 (alleging that OpenAI "[h]as the ability to prevent [its] GenAI products from outputting material that infringes" News Plaintiffs' works but that OpenAI "failed to implement such measures").

Notably, News Plaintiffs do not—and cannot—allege that OpenAI's models or ChatGPT are incapable of substantial or commercially significant noninfringing uses.  *Cf. Cox*, 146 S. Ct. at 967-68.  They do not, for example, allege that either OpenAI's models or ChatGPT is "'good for nothing else' but infringement," *Grokster*, 545 U.S. at 932 (citation omitted), or that either was "'especially' made" for infringement, *Sony*, 464 U.S. at 436 (citation omitted).  Nor do News Plaintiffs allege that "infringement is the principal practice with th[is] software," *Grokster*, 545 U.S. at 933, or that "infringement [i]s the overwhelming source of revenue from the[se] products," *id.* at 948 (Ginsburg, J., concurring).

To the contrary, News Plaintiffs' allegations (and common sense) demonstrate that OpenAI's services have commercially significant noninfringing uses.  They acknowledge that

ChatGPT is a general-purpose "text-generating chatbot that, given user-generated prompts, can mimic human-like natural language responses" across a wide variety of use cases. NYT SAC ¶ 61. That includes everything from business productivity to coding to math to marketing. *See, e.g.*, NYT SAC ¶ 63; DN Compl. ¶ 60; ZD FAC ¶ 93. And News Plaintiffs' allegations similarly demonstrate that OpenAI takes numerous steps to *prevent* infringement using its services. News Plaintiffs concede, for example, that OpenAI has "implemented guardrails to try to limit verbatim and close paraphrasing in output[s]." ZD FAC ¶ 154. They similarly acknowledge that OpenAI's LLMs will not generate content that may violate its content policy, including the intellectual property rights of others. DN Compl. ¶ 153; CIR FAC ¶ 83; *see, e.g.*, *Terms of Use*, OpenAI (Dec. 11, 2024), https://openai.com/policies/row-terms-of-use/revisions/2024-12-11/ (same).[6] And they concede that OpenAI provides tools "to allow copyright owners to block their work from being incorporated into training sets." CIR FAC ¶ 111.

## III.   LEGAL STANDARD

"Under Rule 12(c), after the pleadings have closed, 'but early enough not to delay trial,' a party may move for judgment on the pleadings." *Citibank, N.A. v. Aralpa Holdings LP*, No. 1:22-cv-08842, 2023 WL 5971144, at *5 (S.D.N.Y. Sept. 14, 2023) (quoting *Wells Fargo Bank, N.A. v. Wrights Mill Holdings, LLC*, 127 F. Supp. 3d 156, 167 (S.D.N.Y. 2015)). "A Rule 12(c) motion for judgment on the pleadings is subject to the same legal standards as a Rule 12(b)(6) motion to dismiss." *Ironshore Specialty Ins. Co. v. Color Techns., Inc.*, No. 1:23-cv-07526, 2024 WL 3634860, at *3 (S.D.N.Y. Aug. 1, 2024). "To survive a motion for judgment on the pleadings, a pleading must contain sufficient factual matter, accepted as true, to state a claim to relief that is

---

[6] *See* DN Compl. ¶ 154, n.65 (citing OpenAI's terms of use); *Hesse v. Godiva Chocolatier, Inc.*, 463 F. Supp. 3d 453, 463 (S.D.N.Y. 2020) (courts may take "judicial notice of information publicly announced on a party's website" if "authenticity is not in dispute").

plausible on its face." *Id.* (alteration omitted) (quoting *Goldberg v. Pace Univ.*, 88 F.4th 204, 210 (2d Cir. 2023)). "On a 12(c) motion, the court considers 'the complaint, the answer, any written documents attached to them, and any matter of which the court can take judicial notice for the factual background of the case.'" *Range v. Grand Greene LLC*, 1:24-cv-02500, 2025 WL 1144700, at *2 (S.D.N.Y. Apr. 17, 2025) (quoting *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011)).

The Court should grant a motion for judgment on the pleadings with prejudice and without leave to amend when "there is no indication that a valid claim could be stated." *Evans v. Bronxworks, Inc.*, No. 1:24-cv-07507, 2025 WL 3483580, at *1 (S.D.N.Y. Dec. 4, 2025); *see also Ellis v. Chao*, 336 F.3d 114, 127 (2d Cir. 2003) ("[I]t is well established that leave to amend a complaint need not be granted when amendment would be futile.").

## IV.    ARGUMENT

News Plaintiffs' theory of contributory copyright infringement based on knowledge and material contribution is precisely what the Supreme Court rejected in *Cox*. The Supreme Court has now made clear that "[t]he intent required for contributory liability can be shown *only* if [1] the party induced the infringement or [2] the provided service is tailored to that infringement." *Cox*, 146 S. Ct. at 967 (emphasis added). But News Plaintiffs have failed to allege (indeed, have never pursued) either theory of contributory liability. Each of the News Plaintiffs' contributory infringement claims must therefore be dismissed.

### A.    *Cox* Forecloses News Plaintiffs' Claims Premised on Knowledge of and Material Contribution to Infringement

When this Court denied OpenAI's motion to dismiss News Plaintiffs' contributory copyright infringement claim, it did so based on Plaintiffs' now-abrogated material contribution theory of liability. *See NYT*, Dkt. 514; *MDL,* Dkt. 968 at 13 (denying motion to dismiss Ziff

Davis's contributory liability claim for the same reasons set forth in *NYT,* Dkt. 514).  Based on Plaintiffs' allegations, and prior (but now abrogated) Second Circuit precedent endorsing the material contribution theory, this Court found that News Plaintiffs had plausibly alleged OpenAI's knowledge of direct infringement and material contribution to that infringement, and that this was sufficient to plead a claim.  *NYT*, Dkt. 514 at 14-15 (citing *Gershwin*, 443 F.2d at 1162).

Now, however, the Supreme Court's decision in *Cox* forecloses material contribution as a viable basis for contributory liability.  *See Cox*, 146 S. Ct. at 967; *see also id.* at 969-70, 972 (Sotomayor, J., concurring in the judgment).  As the Supreme Court explained, the material contribution theory subjects a defendant to contributory liability merely for "supplying a product with knowledge that the recipient will use it to infringe copyrights."  *Id.* at 968 (citation omitted). But that theory "conflict[s] with th[e] Court's repeated admonition that contributory liability cannot rest only on a provider's knowledge of infringement and insufficient action to prevent it." *Id.* at 969.

Accordingly, News Plaintiffs no longer state a plausible claim for contributory copyright liability after *Cox*.

**B.**     **News Plaintiffs Did Not Allege, and Have Explicitly Disavowed, Any Claim That OpenAI Induced Infringement**

News Plaintiffs do not have any other viable bases for a contributory infringement claim. First, they did not allege—and in fact have affirmatively disavowed—inducement as a basis for liability.  "A provider induces infringement if it actively encourages infringement through specific acts."  *Cox*, 146 S. Ct. at 967.  The provider must "express an affirmative intent that the product be used to infringe."  *Id.* at 968 (cleaned up); *see also* 35 U.S.C. § 271(b); *Glob.-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 760 (2011) ("The term 'induce' means '[t]o lead on; to influence; to prevail on; to move by persuasion or influence.' . . . [I]nducement must involve the taking of

10

affirmative steps to bring about the desired result."). Even if the seller of a service knows of the use of the service for infringement, and is indifferent to that fact, that is insufficient to show inducement. *Cox*, 146 S. Ct. at 968 ("[M]ere indifferent supposition or knowledge on the part of the seller that the buyer will use the product unlawfully is not enough to make the seller liable for the buyer's conduct." (cleaned up)). Cases finding inducement liability involve egregious behavior by defendants who actively and expressly broadcast the message that their products or services should be used to infringe. *See, e.g.*, *Arista Recs. LLC v. Lime Grp. LLC*, 784 F. Supp. 2d 398, 427-28 (S.D.N.Y. 2011) (Limewire "initiat[ed] press campaigns . . . relating to 'file-sharing and getting free MP3's'"; ran advertisements that "promoted LimeWire with direct references to other infringement-fostering programs" like Napster and Kazaa; and "tested and sought to improve LimeWire's ability to search for and download unauthorized copies of digital recordings," among other inducements); *Arista Recs. LLC v. Usenet.com, Inc.*, 633 F. Supp. 2d 124, 132 (S.D.N.Y. 2009) (noting that the record was "replete with instances of Defendants and their employees specifically engendering copyright infringement and targeting infringement-minded users to become subscribers of Defendants' service").

Here, none of News Plaintiffs' allegations concern inducement of infringement. As noted, at most Plaintiffs allege that OpenAI knew of alleged infringement using its models. NYT SAC ¶ 187 (alleging that OpenAI "knew or had reason to know of direct infringement by end-users because Defendants undertake extensive efforts in developing, testing, and troubleshooting their LLM models and GPT-based products"); *see also* DN Compl. ¶ 214; CIR FAC ¶ 144; ZD FAC ¶¶ 228-30. But none of News Plaintiffs' operative complaints alleges even a single instance of OpenAI advertising use of its services for infringement, instructing users on how to use those services to infringe, or otherwise "actively" engaging in "specific acts" that would "encourage"

11

users to infringe. *Cox*, 146 S. Ct. at 967. That is because such evidence does not exist.

Indeed, News Plaintiffs admit that OpenAI expressly *prohibits* and *tries to prevent* infringement using its services. *See, e.g.*, ZD FAC ¶ 154 (acknowledging OpenAI tries to prevent verbatim outputs); DN Compl. ¶ 153 (acknowledging OpenAI tries to prevent outputs that violate content policies, including anti-infringement policy); CIR FAC ¶ 83 (similar). Those admissions undermine any claim of inducement liability. *See Cox*, 146 S. Ct. at 968 (relying on Cox's anti-infringement policies and enforcement as evidence undermining inducement liability).

Unsurprisingly, News Plaintiffs have explicitly disclaimed an inducement theory of liability. *See* Aug. 12, 2025 Discovery Conference at 25:20-25. When arguing against the proportionality of discovery into OpenAI's "substantial noninfringing uses" defense, counsel for News Plaintiffs was clear: "[Y]es, [News Plaintiffs] have a claim involving contributory infringement, but *it is not* contributory infringement by inducement. [News Plaintiffs] *do not* have a claim by inducement." *Id.* at 22:22-25:25 (emphasis added). This Court has likewise recognized that News Plaintiffs' contributory infringement claim is not based on inducement. *See NYT*, Dkt. 514 (recognizing News Plaintiffs are alleging "contributory copyright infringement *by material contribution*" (emphasis added)). Fact discovery and now expert discovery have proceeded apace, based on News Plaintiffs' assurances. News Plaintiffs' own admission is a sufficient basis to conclude that News Plaintiffs are not pursuing—and cannot now pursue—an inducement theory under *Cox*.

### C. News Plaintiffs Did Not Allege, and Cannot Now Allege, That OpenAI's Services Are Tailored to Infringement

News Plaintiffs have never alleged nor asserted that OpenAI's models or ChatGPT are "tailored to infringement" or that either lacks substantial noninfringing uses. Indeed, their complaints are devoid of allegations that OpenAI especially made its models or ChatGPT for

12

infringement or that infringement is the primary purpose and use of those services.  That alone is sufficient reason to conclude they have not pleaded a contributory infringement claim under this theory.  But Plaintiffs could not plead such a claim even if they now wished to assert one.

"A service is tailored to infringement if it is 'not capable of substantial or commercially significant' noninfringing uses."  *Cox*, 146 S. Ct. at 967 (quoting *Grokster*, 545 U.S. at 942 (Ginsburg, J., concurring)).  A service or product lacks substantial or commercially significant noninfringing uses when it "ha[s] been 'especially' made" for infringing uses, *Sony*, 464 U.S. at 436, 440 (quoting *Kalem*, 222 U.S. at 63), or when it "is 'good for nothing else' but infringement," *Grokster*, 545 U.S. at 932 (citations omitted).  By contrast, the Supreme Court rejected contributory infringement liability premised on the mere sale of the Betamax product in *Sony*, because the Betamax was "capable of substantial noninfringing uses."  464 U.S. at 456.  As the Court found, the Betamax "[wa]s widely used for legitimate, unobjectionable purposes," including "'time-shifting'—the practice of recording a program to view it once at a later time, and thereafter erasing it," which the Court concluded constituted fair use.  *Id*.  The same was true in *Cox*.  The Supreme Court held that Cox did not "provid[e] a service tailored to infringement" because "Internet service [i]s clearly 'capable of substantial or commercially significant noninfringing uses,'" since "Internet access . . . is used for many purposes other than copyright infringement." 146 S. Ct. at 968; *see also VHT, Inc. v. Zillow Grp., Inc.*, 918 F.3d 723, 746 (9th Cir. 2019) (acknowledging real estate websites capable of substantial noninfringing uses); *Luvdarts, LLC v. AT&T Mobility, LLC*, 710 F.3d 1068, 1072 (9th Cir. 2013) (same for cell service).

So too here.  Even if News Plaintiffs wished to raise this claim for the first time now, they could not plausibly allege—consistent with their obligations under Rule 11—that OpenAI's services lack valid, lawful, and noninfringing uses. *Cf. Andersen v. Stability AI Ltd.*, 744 F. Supp.

3d 956, 968 (N.D. Cal. 2024) (noting that "plaintiffs do not dispute that [the defendant's AI model] is capable of substantial noninfringing uses").  Users leverage OpenAI's models for a diverse range of tasks across industries, including medicine and healthcare, science, small businesses, education, and nonprofits, to name just a few.[7]  ChatGPT is used for countless noninfringing purposes, for example, by leading healthcare institutions "to synthesize medical evidence alongside institutional guidance and apply it to a patient's specific context," "draft clinical and administration documentation," and "adapt patient-facing education materials";[8] by universities and educators to enhance educational outcomes through "tutoring" and "personalized access to information across different formats and languages";[9] by government agencies and departments, like the Los Alamos National Laboratory to support "scientific research and innovation";[10] and by nonprofits to "draft[] effective grant proposals."[11]  These examples only scratch the surface.  There is simply no way for News Plaintiffs to plausibly allege in good faith that OpenAI's services are tailored to infringement.  The Court can—and should—resolve this issue now.  It should dismiss News Plaintiffs' contributory infringement claim with prejudice.  *Ellis*, 336 F.3d at 127.

---

[7] OpenAI's public website also includes numerous other examples of relevant use cases.  *See, e.g.*, *Stories*, OpenAI Academy, https://academy.openai.com/public/collections/stories-hub.

[8] *Introducing OpenAI for Healthcare*, OpenAI (Jan. 8, 2026), https://openai.com/index/openai-for-healthcare/.

[9] College Students and ChatGPT Adoption in the US, OpenAI (Feb. 20, 2025), https://openai.com/global-affairs/college-students-and-chatgpt/; OpenAI and the California State University System Bring AI to 500,000 Students and Faculty, OpenAI (Feb. 4, 2025), https://openai.com/index/openai-and-the-csu-system/.

[10] *Introducing ChatGPT Gov*, OpenAI (Jan. 28, 2025), https://openai.com/global-affairs/introducing-chatgpt-gov/.

[11] *Introducing OpenAI for Nonprofits*, OpenAI (May 30, 2024), https://openai.com/index/introducing-openai-for-nonprofits/.

14

## V.   CONCLUSION

For the foregoing reasons, OpenAI's motion should be granted and News Plaintiffs' contributory infringement claim should be dismissed with prejudice.

Dated: June 11, 2026                          Respectfully submitted,

/s/ Sarang V. Damle                           /s/ Joseph C. Gratz*
**LATHAM & WATKINS LLP**                      **MORRISON & FOERSTER LLP**
Andrew M. Gass (*pro hac vice*)               Joseph C. Gratz (*pro hac vice*)
 andrew.gass@lw.com                            jgratz@mofo.com
San Francisco, CA 94111                       Tiffany Cheung (*pro hac vice*)
Telephone: 415.391.0600                        tcheung@mofo.com
                                              Caitlin Sinclaire Blythe (*pro hac vice*)
Sarang V. Damle                                cblythe@mofo.com
 sy.damle@lw.com                              425 Market Street
Luke A. Budiardjo                             San Francisco, CA 94105
 luke.budiardjo@lw.com                        Telephone: 415.268.7000
1271 Avenue of the Americas
New York, NY 10020                            Lily Li (*pro hac vice*)
Telephone: 212.906.1200                        YLi@mofo.com
                                              755 Page Mill Road
Elana Nightingale Dawson (*pro hac vice*)     Palo Alto, CA 94304
 elana.nightingaledawson@lw.com               Telephone: 650.813.5600
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004
Telephone: 202.637.2200


                                              /s/ Nicholas S. Goldberg*
                                              **KEKER, VAN NEST & PETERS LLP**
                                              Robert A. Van Nest (*pro hac vice*)
                                               rvannest@keker.com
                                              R. James Slaughter (*pro hac vice*)
                                               rslaughter@keker.com
                                              Paven Malhotra
                                               pmalhotra@keker.com
                                              Michelle S. Ybarra (*pro hac vice*)
                                               mybarra@keker.com
                                              Nicholas S. Goldberg (*pro hac vice*)
                                               ngoldberg@keker.com
                                              633 Battery St.
                                              San Francisco, CA 94111
                                              Telephone: 415.391.5400


                          *Attorneys for OpenAI*

---

\* All parties whose electronic signatures are included herein have consented to the filing of this document.

16

## CERTIFICATE OF COMPLIANCE

In accordance with Local Civil Rule 7.1(c), I certify that the foregoing Memorandum of Law is 4386 words, exclusive of the caption page, table of contents, table of authorities, and signature block. The basis of my knowledge is the word-count feature of the word-processing system used to prepare this memorandum.

Dated: June 11, 2026                                           By:  */s/ Sarang V. Damle*

                                                                              Sarang V. Damle

17