**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE:<br><br>OPENAI, INC.,<br>COPYRIGHT INFRINGEMENT LITIGATION<br><br>This Document Relates to:<br><br>*The New York Times Co. v. Microsoft Corp. et al.*,<br>No. 1-23-cv-11195<br><br>*Daily News, LP et al. v. Microsoft Corp. et al.*,<br>No. 1-24-cv-3285 | Civil Action No. 1:25-md-03143 |

**DEFENDANT MICROSOFT CORPORATION'S MEMORANDUM OF LAW IN**
**OPPOSITION TO THE NEW YORK TIMES CORPORATION'S AND**
**DAILY NEWS PLAINTIFFS' CROSS-MOTIONS FOR LEAVE TO AMEND**

**TABLE OF CONTENTS**

INTRODUCTION .............................................................................................................. 1

ARGUMENT ..................................................................................................................... 2

I.   *Cox* Does Not Provide Good Cause to Add Well-Established Inducement or Tailored-to-Infringement Theories. ................................................................................................ 3

II.  Plaintiffs Did Not Act With The Diligence Rule 16 Requires. .................................... 5

III. Amendment Now Would Unfairly Prejudice Microsoft. .............................................. 8

CONCLUSION ................................................................................................................. 11

**TABLE OF AUTHORITIES**

**Page(s)**

<u>**Cases**</u>

*Agerbrink v. Model Serv. LLC*,
    155 F. Supp. 3d 448, 454 (S.D.N.Y. 2016)................................................................11

*Cox Communications, Inc. v. Sony Music Entertainment*,
    146 S. Ct. 959 (2026) ............................................................... *passim*

*DeCastro v. City of New York*,
    2020 WL 4932778 (S.D.N.Y. Aug. 24, 2020) ............................................................2

*Duling v. Gristede's Operating Corp.*,
    265 F.R.D. 91 (S.D.N.Y. 2010) ...............................................................................10

*Edgewood Partners Ins. Ctr. Inc. v. PPD Dev., L.P.*,
    2026 WL 801880 (S.D.N.Y. Mar. 23, 2026) .........................................................10

*Elsevier Inc. v. Grossmann*,
    2017 WL 1843298 (S.D.N.Y. May 8, 2017) ........................................................4, 5

*Jones v. Abel*,
    2026 WL 836798 (S.D.N.Y. Mar. 26, 2026) ...........................................................2

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*,
    545 U.S. 913 (2005)..............................................................................................3, 4, 9

*Parker v. Columbia Pictures Indus.*,
    204 F.3d 326 (2d Cir. 2000)....................................................................................2

*Point 4 Data Corp. v. Tri-State Surgical Supply & Equip., Ltd.*,
    2012 WL 2458060 (E.D.N.Y. June 27, 2012), *aff'd*, 2012 WL 3306612
    (E.D.N.Y. Aug. 13, 2012).......................................................................................10

*RJR Nabisco v. Eur. Cmty.*,
    579 U.S. 325 (2016)................................................................................................5

*Stillman v. InService America, Inc.*,
    455 F. App'x 48, 51 (2d Cir. 2012) ....................................................................10, 11

*White v. DistroKid*,
    738 F. Supp. 3d 387 (S.D.N.Y. 2024).....................................................................8

*Woodworth v. Erie Ins. Co.*,
    2009 WL 3671930 (W.D.N.Y. Oct. 29, 2009) .....................................................5, 8

*Woodworth v. Erie Ins. Co.*,
 2009 WL 1652258 (W.D.N.Y. June 12, 2009), *report and recommendation*
 *adopted as modified*, 2009 WL 3671930 (W.D.N.Y. Oct. 29, 2009) ........................................5

**Statutes**

Fed. R. Civ. P. 15(a) ...........................................................................................................2

Fed. R. Civ. P. 16.................................................................................................. *passim*

Fed. R. Civ. P. 16(b) ...........................................................................................................2

**INTRODUCTION**

The New York Times Company and Daily News Plaintiffs (together, "News Plaintiffs") claim that their proposed amendment is merely an effort to "conform" their pleadings to *Cox Communications, Inc. v. Sony Music Entertainment*, 146 S. Ct. 959 (2026), which forecloses their current contributory infringement claim against Microsoft. It is plain on the face of the proposed amendment that this is not the case. Rather than simply withdrawing the claim or tweaking its contours, News Plaintiffs seek to add brand new inducement and tailored-to-infringement claims that were long available to them. As News Plaintiffs themselves concede, *Cox* did not create or in any way alter these theories they now wish to assert; it simply foreclosed the material contribution theory they chose to pursue throughout fact and expert discovery.

Nor can News Plaintiffs point to newly discovered evidence to support amendment. The materials on which they rely have been in their possession for over a year, and in most instances, nearly two years. The time to amend has long passed, and Rule 16 demands diligence before permitting an amendment. This is for good reason: It safeguards both the Court's carefully established schedule and the Parties' ability to litigate in reliance on it, particularly in a case as complex as this one. The new claims would substantially alter the landscape in multiple ways: (1) they focus on later models and products about which Judge Wang has appropriately limited the scope of discovery; (2) the "tailored-to-infringement" claim is an inherent assertion of product design and functionality that was not evaluated, tested, or opined about in Microsoft's expert reports; and (3) the new inducement theory requires discovery into specific intent to infringe, which implicates an additional set of witnesses from the ones who were deposed during fact discovery.

Microsoft has produced more than one million pages of documents, over forty fact

witnesses, and fifteen expert reports all in reliance upon the existing scope of the case. Permitting News Plaintiffs to amend their Complaints at this late stage would be unfairly prejudicial. News Plaintiffs cannot establish the good cause Rule 16 requires, and weighed against the obvious prejudice, their Motions should be denied.

## **ARGUMENT**

Where a scheduling order is in place, a party seeking to amend its pleadings after the deadline for amendment has passed must satisfy Rule 16(b)'s good-cause standard rather than Rule 15(a)'s more lenient standard, and failure to do so is itself sufficient grounds to deny leave to amend. *See Parker v. Columbia Pictures Indus.*, 204 F.3d 326, 340 (2d Cir. 2000) (affirming decision to deny leave to amend based on failure to establish good cause). A "finding of 'good cause' depends on the diligence of the moving party." *Id.* (citation omitted). Good cause is absent where the proposed amendment rests on information the movant "knew or should have known" before the deadline. *DeCastro v. City of New York*, 2020 WL 4932778, at *7 (S.D.N.Y. Aug. 24, 2020) (citation omitted).

Rule 16 serves an important case-management function. Parties plan and litigate their cases in reliance on the Court's scheduling order. They are entitled to expect that order will be enforced absent a compelling reason to depart from it. *See Jones v. Abel*, 2026 WL 836798, at *2 (S.D.N.Y. Mar. 26, 2026). As this Court has emphasized, the standard set forth by Rule 16 is therefore "not . . . forgiving." *Id.* (citation omitted).

News Plaintiffs' Motions seek to assert theories that were available from the outset based on factual material they had obtained long before discovery closed. They cannot meet Rule 16's demanding "good cause" standard.

2

## I.    *Cox* Does Not Provide Good Cause to Add Well-Established Inducement or Tailored-to-Infringement Theories.

From the outset of this case, News Plaintiffs elected to pursue against Microsoft only the "material contribution" variety of contributory infringement.  Although the other two recognized variants, inducement and "tailored-to-infringement," were available to them, News Plaintiffs never asserted them.  In fact, The Times' own counsel represented to the Court that its claim was "not contributory infringement by inducement," and reiterated that it did "not have a claim by inducement."  Ex. A (August 12, 2025 Hr'g Tr.) at 25:23-25.

With this in mind, News Plaintiffs' reliance on *Cox* as an "intervening change in controlling law" is puzzling.  *MDL*[1] ECF No.1596.01 (DN Mot.) at 6; *MDL* ECF No. 1590.01 (NYT Mot.) at 2.[2]  The only relevant way in which *Cox* changed the governing law is that it rejected material contribution as an independent basis for contributory liability.  That is why News Plaintiffs have properly withdrawn Count IV of their Complaints, and why they delete the words "material contribution" from the count they here seek to amend.  But that development does not explain, much less excuse, News Plaintiffs' reliance on *Cox* to justify their eleventh-hour strategic decision to switch theories.

Inducement has been a viable theory of contributory copyright liability for decades.  The Supreme Court explained in *Grokster* that "[o]ne infringes contributorily by intentionally inducing or encouraging direct infringement."  *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545

---

[1] *MDL* refers to the docket in *In re: OpenAI Copyright Infringement Litigation*, No. 1:25-md-03143.

[2] *Cox* was decided in late March and cannot have escaped News Plaintiffs' attention.  OpenAI requested on multiple occasions that News Plaintiffs in this case withdraw their material contribution claims.  *See MDL* ECF No. 1587 (OpenAI's Rule12(c) Motion for Judgment on the Pleadings) at 2 n.3.  Yet only now, two months from summary judgment with fact discovery having been completed months ago, News Plaintiffs claim *Cox* permits amendment.  The delay alone should foreclose amendment.

3

U.S. 913, 930 (2005). News Plaintiffs themselves identify inducement as one of three recognized theories that existed before *Cox*. DN Mot. at 6; NYT Mot. at 3. That concession alone undercuts any argument that *Cox* suddenly supplied a theory News Plaintiffs could not previously have pleaded.

Also available all along was News Plaintiffs' new alternative contention that Microsoft supplied services purportedly "tailored to infringement." News Plaintiffs concede that this theory, too, was recognized before *Cox*. DN Mot. at 6; NYT Mot. at 3. And the standard they point to— that a service is "tailored to infringement if it is 'not capable of substantial or commercially significant noninfringing uses'"—derives from the preexisting case law on which *Cox* relied. *Cox*, 146 S. Ct. at 967 (2026) (quoting *Grokster*, 545 U.S. at 942); *see also Cox*, 146 S. Ct. at 968 ("[A] party is liable [for contributory infringement] when it sells a product used for infringement knowing the same to be especially made or especially adapted for use in an infringement."). However News Plaintiffs choose to label their proposed amendment, every affirmative theory they now seek to add was available well before *Cox*—and, for that matter, well before either Plaintiff filed its Complaint.

*Cox* therefore did not create some modified standard to which News Plaintiffs need to conform. It killed the claim they chose to plead and press through discovery. News Plaintiffs cannot transform the loss of their material contribution theory into an opportunity to add a different theory long after the amendment deadline has passed.

News Plaintiffs cite no case suggesting otherwise. They rely on *Elsevier Inc. v. Grossman* for the proposition that good cause is established "when plaintiffs have diligently sought leave upon a change in controlling law." *Elsevier Inc. v. Grossmann*, 2017 WL 1843298, at *9 (S.D.N.Y. May 8, 2017). But in that case, the proposed amendment followed the Supreme Court's

4

decision in *RJR Nabisco v. European Community*, 579 U.S. 325 (2016), which altered the elements a civil RICO plaintiff had to allege and prove. *Elsevier*, 2017 WL 1843298, at *7, *9. The court accordingly considered whether the plaintiff diligently revised its pleading to meet a new legal requirement. *Id*. Here, by contrast, *Cox* did not set forth a newly available inducement theory or require News Plaintiffs to plead facts that were previously irrelevant. It foreclosed News Plaintiffs' chosen material contribution theory while leaving intact the alternative theories they could have asserted all along.[3] News Plaintiffs' reliance on *Cox* is a convenient excuse that is not sufficient to permit amendment at this point in the case.

## II.    Plaintiffs Did Not Act With The Diligence Rule 16 Requires.

News Plaintiffs' belated amendment is also not justified by new factual revelations. Rather, the record shows that News Plaintiffs had the information they now rely on long before they sought amendment. Their own Motions premise the proposed Count III revisions on Microsoft documents, communications, and deposition testimony concerning the Bing Index, alleged data transfer, and user-agent crawlers. DN Mot. at 7-9; NYT Mot. at 4-5. Most of those materials were produced in 2024, and the remaining materials were produced no later than February 24, 2025.

The following production chronology, drawn from the exhibits Plaintiffs have submitted with their Motions, underscores Plaintiffs' lack of diligence:

---

[3] Plaintiffs also cite *Woodworth v. Erie Insurance Co.* for the proposition that the good cause standard can be "satisfied by showing that the substantive law changed, or that the moving party discovered new evidence, following the scheduling deadline." *Woodworth v. Erie Ins. Co.*, 2009 WL 1652258, at *3 (W.D.N.Y. June 12, 2009), *report and recommendation adopted as modified*, 2009 WL 3671930 (W.D.N.Y. Oct. 29, 2009). But they leave out that the District Court ultimately *denied* leave to amend, rejecting the Magistrate Judge's conclusion that the absence of prejudice to the defendant could overcome the plaintiff's lack of diligence. *Woodworth v. Erie Ins. Co.*, 2009 WL 3671930, at *3 (W.D.N.Y. Oct. 29, 2009).

| NYT Ex. | DN Ex. | MDL Bates | Produced to NYT | Produced to DN |
|---|---|---|---|---|
| A | A | MSFT_AI_MDL_000235434 | June 14, 2024 | Sept. 27, 2024 |
| B | B | MSFT_AI_MDL_000467526 | Sept. 10, 2024 | Sept. 27, 2024 |
| C | C | MSFT_AI_MDL_000470494 | Sept. 10, 2024 | Sept. 27, 2024 |
| G | G | MSFT_AI_MDL_000118608 | June 10, 2024 | Sept. 27, 2024 |
| H | H | MSFT_AI_MDL_000046570 | May 30, 2024 | Sept. 27, 2024 |
| I[4] | I | MSFT_AI_MDL_000177811 | June 10, 2024 | Sept. 27, 2024 |
| J | J | MSFT_AI_MDL_000045666 | May 30, 2024 | Sept. 27, 2024 |
| K | K | MSFT_AI_MDL_001051845 | Jan. 23, 2025 | Jan. 23, 2025 |
| M | -- | MSFT_AI_MDL_001052306 | Jan. 23, 2025 | Jan. 23, 2025 |
| N | N | MSFT_AI_MDL_001276374 | Feb. 24, 2025 | Feb. 24, 2025 |

The Times cannot plausibly contend that it needed to wait until now to assert its new theory. It amended its Complaint once on August 12, 2024, when it already possessed several of the documents listed above, including documents that now form the foundation of the Bing Index and crawler allegations. *NYT*[5] ECF No. 170. The Times amended its Complaint again on May 28, 2025, after every document in the chart had been produced. *NYT* ECF No. 585. Those amendments demonstrate both that The Times was actively evaluating its pleading and that it had ample opportunity to include an inducement or tailored-service theory if it wished to pursue one.

The Daily News Plaintiffs likewise possessed the same materials no later than February 2025, with most documents produced to them by September 2024. Those production dates alone foreclose any claim that the Motions were prompted by newly discovered facts or filed with diligence.

Even if the documents produced by Microsoft were not themselves sufficient to put

---

[4] The Times's Motion appears to cite MSFT_AI_MDL_000177811 as Exhibit D, although the exhibit filed with the motion is labeled Exhibit I.

[5] *NYT* refers to the docket in *The New York Times Co. v. Microsoft Corp. et al.*, No. 1:23-cv-11195-SHS.

Plaintiffs on notice of the facts underlying their proposed amendment, the August 2025 Rule 30(b)(6) deposition of Microsoft's Vice President, AI Padma Gaggara plainly was. By then, the relevant issues had been the subject of active discovery for months. In early 2025, Class Plaintiffs raised questions concerning Microsoft documents describing data provided to OpenAI and, on April 1, 2025, moved to compel discovery into Microsoft's Bing Index. *Authors Guild*[6] ECF No. 365. That dispute, and the Parties' subsequent submissions, were heard at the Court's May and June 2025 discovery conferences. *See* Ex. B (June 25, 2025 Hr'g Tr.) at 5:6-9:25. Thus, based on the discovery already produced—which was equally available to News Plaintiffs—they could have amended their Complaints accordingly.

The deposition of Ms. Gaggara followed directly from those proceedings. After the June 2025 conference, the Court directed Microsoft and Class Plaintiffs to meet and confer regarding whether the Bing Index dispute could be resolved through a Rule 30(b)(6) deposition. The resulting August 20, 2025 deposition (the transcript of which News Plaintiffs have submitted as Exhibit E to their Motions), together with the documents Plaintiffs already possessed, provided News Plaintiffs with a further basis to pursue the theory they only now seek to add. Indeed, News Plaintiffs later represented to the Court that they "discovered that Microsoft transferred copies of the Bing Index to OpenAI through Class Plaintiffs' Court-ordered Rule 30(b)(6) deposition of Padma Gaggara and Class Plaintiffs' subsequent briefing on the issue." *MDL* ECF No. 1054 at 2. That representation confirms that News Plaintiffs learned the core factual premise of their proposed amendment no later than August 2025—approximately ten months before filing these Motions.

---

[6] *Authors Guild* refers to the docket in *Authors Guild, et al. v. OpenAI Inc., et al.*, No. 1:23-cv-08292-SHS.

Nor do the additional materials News Plaintiffs submit excuse their delay. The depositions on which News Plaintiffs purport to rely were completed by early February 2026—the latest being Satya Nadella's on February 4, 2026, the transcript of which News Plaintiffs submit as Exhibit O. News Plaintiffs therefore had that testimony more than four months before filing their Motions and, critically, while fact discovery remained open through February 27, 2026. If News Plaintiffs believed the testimony furnished a basis for a different contributory infringement theory, Rule 16 required them to seek leave promptly to amend their Complaints. Instead, they waited until fact discovery closed and expert discovery was well underway, and the summary judgment briefing was swiftly approaching. Plaintiffs' failure to act is precisely the kind of delay that Rule 16's diligence requirement is designed to prevent.

### III.    Amendment Now Would Unfairly Prejudice Microsoft.

"[E]ven where the moving party has been diligent, a court may nonetheless *deny* a late motion to amend when it would prejudice the non-moving party." *Woodworth v. Erie Ins. Co.*, 2009 WL 3671930, at *3 (W.D.N.Y. Oct. 29, 2009). The prejudice here is substantial. Fact discovery has been closed for months; three rounds of expert reports have all been served and expert discovery closes on August 3, 2026; and opening summary judgment briefs are due a month later. Allowing Plaintiffs to alter the central theory of Microsoft's alleged contributory liability at this late stage would deny Microsoft a fair opportunity to defend against brand new claims.

The proposed theories are not new labels for the claim News Plaintiffs have already pleaded; they are different claims, requiring proof of different facts. Under the material contribution framework on which Plaintiffs have proceeded to date, liability may rest on actual or constructive knowledge coupled with assistance or encouragement. *See, e.g.*, *White v. DistroKid*, 738 F. Supp. 3d 387, 403 (S.D.N.Y. 2024). Inducement is a distinct theory altogether: it requires

8

intentional encouragement through specific acts. *See Grokster*, 545 U.S. at 930 (2005) ("One infringes contributorily by intentionally inducing or encouraging direct infringement."). And a tailored-to-infringement theory is different still; a party is liable under a tailored-to-infringement theory "when it sells a product used for infringement knowing the same to be especially made or especially adapted for use in an infringement" and the product is "not capable of 'substantial' or 'commercially significant' noninfringing uses." *Cox*, 146 S. Ct. at 967-68 (2026) (quoting *Grokster*, 545 U.S. at 942 (Ginsburg, J., concurring)). Each theory carries its own elements and its own defenses.

News Plaintiffs' proposed new claims would drastically reshape these cases in several respects. *First*, the proposed amendments center on models and products that have already been the subject of extensive motion practice between the parties, and as to which the Court has imposed limits on scope.[7] *Second*, the "tailored-to-infringement" theory necessarily implicates product design and functionality, which Microsoft has not fully evaluated in defending this case, including both its affirmative and defensive discovery efforts. For instance, Microsoft would have supplemented its expert analyses and testimony to address in detail how the algorithm works or the source code and selection of grounding material. *Third*, the "intent" element of inducement demands proof of a specific intent to infringe with respect to the acts and products underlying the new claim, and it draws in a different set of witnesses than those deposed during fact discovery.

Plaintiffs' assertion that Microsoft will not be prejudiced because the amended claims "relate[] closely to the original claims" is just wrong. DN Mot. at 11; NYT Mot. at 7 (both quoting

---

[7] *See MDL* ECF No. 707 (Order expressly limiting the scope of GPT models and products at issue); *MDL* ECF No. 856 (Microsoft's Motion for a Protective Order to limit the scope of products implementing GPT-4o); *MDL* ECF No. 855 (Class and News Plaintiffs' joint motion to compel discovery into additional implementations of GPT-4o); *MDL* ECF No. 1552 (Microsoft's supplemental brief regarding the narrowed scope of financial discovery into Microsoft products).

*Duling v. Gristede's Operating Corp.*, 265 F.R.D. 91, 102 (S.D.N.Y. 2010)). The relevant question is not whether the claims share a high-level factual backdrop. It is whether the amendment would change what Plaintiffs must prove and what Microsoft must defend against, and whether allowing it now would disrupt the orderly resolution of this case. It plainly would. Microsoft has already produced over one million pages of documents, over forty fact witnesses, and fifteen expert reports all in reliance upon the existing scope of the case; and the Parties are in the midst of expert depositions and preparing summary judgment motions, making the prejudice to Microsoft especially acute. *See Edgewood Partners Ins. Ctr. Inc. v. PPD Dev., L.P.*, 2026 WL 801880, at *7 (S.D.N.Y. Mar. 23, 2026) ("Prejudice may exist, *inter alia*, when the amendment would: (i) require the opponent to expend significant additional resources to conduct discovery and prepare for trial; or (ii) significantly delay the resolution of the dispute.") (citation omitted); *Point 4 Data Corp. v. Tri-State Surgical Supply & Equip., Ltd.*, 2012 WL 2458060, at *8 (E.D.N.Y. June 27, 2012), *aff'd*, 2012 WL 3306612 (E.D.N.Y. Aug. 13, 2012) (denying leave to amend even though movant disclaimed any intention to reopen discovery because "defendants (and the Court) would certainly suffer some prejudice by the filing of an amended complaint this late in the proceeding, as that would necessarily prolong the resolution of the case.").

Plaintiffs' cases do not compel a different result. None applied the more demanding Rule 16 diligence standard that governs here, and each turned on circumstances absent from this case. In *Duling v. Gristede's Operating Corp.*, the court found no prejudice because the scheduling order already provided for an additional 90-day extension of fact discovery once the court ruled on the parties' class certification motions, which were still pending. 265 F.R.D. 91, 100 (S.D.N.Y. 2010). In *Stillman v. InService America, Inc.*, the Second Circuit affirmed a finding of no prejudice because the defendants had been put on notice of the new theory through an earlier jury-charge

10

request, and the relevant documents and witnesses were already in their custody and control.  455

F. App'x 48, 51 (2d Cir. 2012).  Microsoft received no comparable notice here.  To the contrary,

as discussed above, The Times expressly represented to the Court that it was *not* pursuing an

inducement theory.  Ex. A (August 12, 2025 Hr'g Tr.) at 25:23-25.  Nor is the relevant evidence

limited to Microsoft's own files or witnesses; Plaintiffs' theories necessarily implicate OpenAI's

conduct, use, and intent as well.  *Agerbrink v. Model Service LLC* is equally unavailing.  There,

the court found no prejudice because fact discovery remained open when the plaintiff moved to

amend.  155 F. Supp. 3d 448, 454 (S.D.N.Y. 2016).

**CONCLUSION**

The Court should deny Plaintiffs' Motions.  Plaintiffs waited until the eleventh hour to

advance theories they could have pleaded at the outset.  They have offered no adequate justification

for their delay, and the risk of prejudice to Microsoft is concrete: fact discovery is closed, expert

discovery is nearly complete, and summary judgment briefing is imminent.  Granting leave now

would require Microsoft to defend against fundamentally new claims without the opportunity to

develop a record on the facts those claims demand.

Dated: July 9, 2026

Respectfully Submitted,

*/s/      Annette L. Hurst*

ORRICK, HERRINGTON & SUTCLIFFE LLP
Annette L. Hurst (admitted pro hac vice)
Daniel Justice (admitted pro hac vice)
Amanda H. Schwartz (admitted pro hac vice)
The Orrick Building
405 Howard Street
San Francisco, CA  94105-2669
Telephone: (415) 773-5700
Facsimile: (415) 773-5759
ahurst@orrick.com
djustice@orrick.com
aschwartz@orrick.com

Christopher J. Cariello
Marc Shapiro
Lisa T. Simpson
51 West 52nd Street
New York, NY 10019
Telephone: (212) 506-3778
Facsimile: (212) 506-5151
ccariello@orrick.com
lsimpson@orrick.com

Sheryl Koval Garko (admitted pro hac vice)
Laura Brooks Najemy (admitted pro hac vice)
222 Berkley Street
Boston, MA 02116
Telephone: (617) 880-1800
Facsimile: (617) 880-1801
sgarko@orrick.com
lnajemy@orrick.com

Monica Svetoslavov (admitted pro hac vice)
Louis Andrew Schreiber
2100 Pennsylvania Avenue NW
Washington, DC 20037
Telephone: (202) 339-8400
Facsimile: (202) 339-8500
msvetoslavov@orrick.com
aschreiber@orrick.com

FAEGRE DRINKER BIDDLE & REATH LLP
Jeffrey S. Jacobson
1177 Avenue of the Americas
New York, New York 10036
Telephone: (212) 248-3191
jeffrey.jacobson@faegredrinker.com

Jared B. Briant (admitted pro hac vice)
Kirstin L. Stoll-DeBell (admitted pro hac vice)
1144 15th Street, Suite 3400
Denver, Colorado 80202
Telephone: (303) 607-3588
jared.briant@faegredrinker.com
kirstin.stolldebell@faegredrinker.com

Lora A. Brzezynski (admitted pro hac vice)
Brianna Silverstein (admitted pro hac vice)
1500 K Street, N.W., Suite 1100
Washington, DC 20005
Telephone: (202) 230-5000
Facsimile: (202) 842-8465
Lora.brzezynski@faegredrinker.com
Brianna.silverstein@faegredrinker.com

Carrie A. Beyer (admitted pro hac vice)
320 South Canal Street, Suite 3300
Chicago, IL 60606-5707
Telephone: (312) 569-1000
Facsimile: (312) 569-3000
carrie.beyer@faegredrinker.com

Elizabeth M.C. Scheibel (admitted pro hac vice)
2200 Wells Fargo Center, 90 S. 7th Street
Minneapolis, MN 55402
Telephone: (612) 766-7000
Facsimile: (612) 766-1600
elizabeth.scheibel@faegredrinker.com

*Attorneys for Defendant Microsoft Corporation*