**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE:<br><br>OPENAI, INC.,<br>COPYRIGHT INFRINGEMENT LITIGATION<br><br>This Document Relates To:<br><br>Case No. 1:23-cv-08292 (SHS) (OTW)<br>Case No. 1:23-cv-10211 (SHS) (OTW) | 1:25-md-03143 (SHS) (OTW)<br><br>**ORAL ARGUMENT REQUESTED** |

**MEMORANDUM OF LAW IN SUPPORT OF**

**DEFENDANTS' MOTION TO STRIKE SUSMAN GODFREY L.L.P.-FUNDED STUDY**

**AND SUPPLEMENTAL REPORT OF MICHAEL LASINSKI**[1]

[1] Defendants file this Motion to Strike as a noticed motion because the requested relief affects summary judgment proceedings and any potential trial. This Motion does not address whether the Lasinski Supplement or Chakrabarty Paper is admissible under Federal Rule of Evidence 702 or *Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993). Defendants will raise any such challenges separately, in accordance with the schedule set by the Court.

# TABLE OF CONTENTS


I. INTRODUCTION ....................................................................................................1

II. BACKGROUND ....................................................................................................3

A. Plaintiffs disclose Dr. Chakrabarty and Dr. Dhillon under the Protective Order without disclosing Susman's funding of Dr. Chakrabarty's research. ..........3

B. After the expert-report deadlines, Dr. Chakrabarty and Dr. Dhillon post a paper addressing market dilution. ....................................................................4

C. Susman serves a supplemental report from Mr. Lasinski on the eve of his deposition and the close of expert discovery. ..................................................5

D. Defendants discover that Susman funded the Chakrabarty Paper. ..........................5

E. Class Plaintiffs refuse to withdraw the Lasinski Supplement or the Chakrabarty Paper, and rely on them at summary judgment. ................................6

F. Susman also concealed its funding of the Chakrabarty Paper in the *In re Mosaic LLM Litigation* case. ....................................................................8

III. ARGUMENT ....................................................................................................8

A. Class Plaintiffs violated Rule 26. ....................................................................9

1. The Lasinski Supplement is not a proper supplement under Rule 26(e). ....................................................................................................10

2. Class Plaintiffs cannot evade Rule 26 by smuggling the Chakrabarty Paper in through Mr. Lasinski. ..............................................11

3. The Lasinski Supplement should be precluded. .......................................12

IV. CONCLUSION ....................................................................................................15

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Daubert v. Merrell Dow Pharmaceuticals*,
509 U.S. 579 (1993)....................13, 14

*Frydman v. Verschleiser*,
14-cv-5903, 2017 WL 1155919 (S.D.N.Y. Mar. 27, 2017)....................13

*Hazel-Atlas Glass Co. v. Hartford-Empire Co.*,
322 U.S. 238 (1944)....................14

*Kelly v. Beliv LLC*,
No. 21-cv-8134, 2024 WL 1076217 (S.D.N.Y. Mar. 12, 2024)....................13

*Lidle v. Cirrus Design Corp.*,
No. 08-cv-1253, 2009 WL 4907201 (S.D.N.Y. Dec. 18, 2009)....................9, 10, 12

*Oklahoma v. Tyson Foods, Inc.*,
No. 05-cv-329, 2009 WL 2252129 (N.D. Okla. July 24, 2009)....................2, 12

*Pal, M.D., v. New York University*,
No. 06-cv-5892, 2008 WL 2627614 (S.D.N.Y. June 30, 2008)....................14

*Point Prods. A.G. v. Sony Music Ent., Inc.*,
No. 93-cv-4001, 2004 WL 345551 (S.D.N.Y. Feb. 23, 2004)....................13

*Sandata Techs., Inc. v. Infocrossing, Inc.*,
05-cv-9546, 2007 WL 4157163 (S.D.N.Y. Nov. 16, 2007)....................9, 12

*In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig*,
22-md-3047, 2024 WL 5088103 (N.D. Cal. Dec. 11, 2024)....................12

*Softel, Inc. v. Dragon Med. & Scientific Commc'ns, Inc.*
118 F.3d 955 (2d Cir.1997)....................12, 13

*Yukos Capital S.A.R.L. v. Feldman*,
977 F.3d 216 (2d Cir. 2020)....................14

*In re Zofran (Ondansetron) Prods. Liab. Litig.*,
392 F. Supp. 3d 179 (D. Mass. 2019)....................2, 11

**Statutes**

17 U.S.C. § 107(4)....................3

**Other Authorities**

Federal Rule of Civil Procedure 26 ....................2, 8, 9, 10, 11, 12

Federal Rule of Civil Procedure 37 ....................2, 8, 12

Federal Rule of Evidence 702 ....................1

## I. INTRODUCTION

Defendants OpenAI and Microsoft ("Defendants") move to preclude Class Plaintiffs from relying at summary judgment or trial on evidence funded by their own counsel outside the expert-disclosure process and then presented as independent academic research. Unable to muster any evidence of harm after years of discovery, Class Plaintiffs' counsel Susman Godfrey L.L.P. ("Class Counsel" or "Susman") paid Stony Brook University professor Dr. Tuhin Chakrabarty to research "[h]ow AI generated books dilute the market for human authors." Declaration of Victor Chiu ISO Motion to Strike ("Chiu Decl."), Ex. A. Dr. Chakrabarty then co-authored a working, non-peer-reviewed paper purporting to show exactly that (the "Chakrabarty Paper"). The paper was initially self-published on July 22, 2026. Susman had disclosed Dr. Chakrabarty and one of his co-authors as retained experts months earlier—but the resumes Susman provided ***omitted*** that Susman had funded Dr. Chakrabarty's research. Neither Dr. Chakrabarty nor the other disclosed expert ever served an expert report in this case. And after Defendants specifically objected that Dr. Chakrabarty's resume was incomplete, Susman provided what it represented was an "updated resume" that still omitted Susman's own funding of his market-dilution research.

Defendants learned of Susman's funding only recently when OpenAI's counsel uncovered this version of Dr. Chakrabarty's resume on his website, showing a $100,000 "gift" from "Susman Godfrey L.L.P." sponsoring the research subject of the Chakrabarty Paper:

FUNDING

**Susman Godfrey L.L.P.** *Dec 2025 - 2026*
Unrestricted Gift for sponsored research *100,000$*
How AI generated books dilutes the market for human authors?

*Id.*

Rather than disclose Dr. Chakrabarty's opinions through the ordinary expert process, Class Plaintiffs backchanneled his litigation-funded work into the case through a different expert, Mr. Michael Lasinski. On Sunday, August 2, 2026, the day before Mr. Lasinski's deposition and after all expert-report deadlines had passed, Susman served a "supplemental" report by Mr. Lasinski devoted entirely to the Chakrabarty Paper. Chiu Decl. Ex. Q. At his deposition, Mr. Lasinski testified that he did not know Susman had funded the research, stating that "funding something like this would be inconsistent with what I've known the Susman Godfrey firm to do." Chiu Decl. Ex. B (August 3, 2026 Deposition of Michael Lasinski ("Lasinski Tr.")) 119:2-4. Susman counsel defending the deposition sat silent and did nothing to correct this testimony.

Thus, Susman's role in funding Dr. Chakrabarty's supposedly independent research remained undisclosed both when Susman identified Dr. Chakrabarty as an expert and when it introduced his work through Mr. Lasinski. And Class Plaintiffs have now carried that same omission into summary judgment: they submitted the Chakrabarty Paper as an exhibit; devoted thirteen paragraphs of their statement of facts to summarizing it, Dkt. No. 1987 ¶¶ 858-871; and cite it in their brief and statement of facts simply as an "academic stud[y]," without disclosing their counsel's funding of the research. *Id*. ¶ 858; Dkt. No. 1982 at 16.

Rules 26 and 37 do not permit this. This was not independent research that happened to arise after Mr. Lasinski served his expert reports or was previously unknown to Class Counsel. Susman funded the research underlying the Chakrabarty Paper months before expert reports were due and then routed the results through another expert after the deadlines had passed, all while concealing its role as the study's sponsor and financial backer. As another court observed in similar circumstances, it is "troublesome, to say the least," for a party to pay a consulting expert to conduct and publish a study, have a testifying expert rely on it, and then shield the underlying arrangement from scrutiny. *In re Zofran (Ondansetron) Prods. Liab. Litig*., 392 F. Supp. 3d 179, 186 (D. Mass. 2019); *cf. Oklahoma v. Tyson Foods, Inc.*, No. 05-cv-329, 2009 WL 2252129, at *4 (N.D. Okla. July 24, 2009) (striking declarations of consulting experts who did not submit written reports because it would be "fundamentally unfair" for a party "to supplement the record

with reports of alleged 'consulting experts' whose identity and opinions have been shielded [from disclosure]").

For these reasons and those discussed below, the Court should strike Mr. Lasinski's August 2 supplemental report (the "Lasinski Supplement"), strike the portions of Class Plaintiffs' summary judgment motion that refer to the Chakrabarty Paper,[2] and preclude Class Plaintiffs from relying on the Chakrabarty Paper in this litigation.

## II. BACKGROUND

### A. Plaintiffs disclose Dr. Chakrabarty and Dr. Dhillon under the Protective Order without disclosing Susman's funding of Dr. Chakrabarty's research.

Class Plaintiffs disclosed Dr. Tuhin Chakrabarty and Dr. Paramveer Dhillon as potential experts on February 18, 2026, Chiu Decl. Ex. C, and provided their resumes as required under the Protective Order. Chiu Decl. Exs. D, E. On February 21, 2026, Microsoft objected that Dr. Chakrabarty's resume appeared to be incomplete and Dr. Dhillon's resume had last been updated in 2020. Chiu Decl. Ex. F. On February 23, 2026, OpenAI likewise objected that Dr. Chakrabarty's resume "appears to be incomplete in material ways" and that Dr. Dhillon's resume did not appear "current." *Id*. Susman responded that same day by providing what it represented were "updated" resumes for both experts. *Id*.

Even the "updated" resume Susman provided for Dr. Chakrabarty did not disclose that Susman was then funding Dr. Chakrabarty's research concerning market dilution. Chiu Decl. Ex. G. Neither Dr. Chakrabarty nor Dr. Dhillon ever served an expert report in this case.

[2] The Chakrabarty Paper is attached as Exhibit 763 to the Nelson Declaration in support of Class Plaintiffs' Motion for Partial Summary Judgment. Dkt. No. 2034. It is referenced on pages 16 and 36 of Class Plaintiffs' summary judgment brief, Dkt. No. 1982, and in paragraphs 858-871 of Class Plaintiffs' statement of undisputed facts, Dkt. No. 1987.

Class Plaintiffs separately proffered Michael Lasinski as their expert on statutory damages and market harm under the fourth fair-use factor. *See* 17 U.S.C. § 107(4). Mr. Lasinski served opening, rebuttal, and reply reports on these issues pursuant to the deadlines set by the Court. Dkt. No. 1452.

### B. After the expert-report deadlines, Dr. Chakrabarty and Dr. Dhillon post a paper addressing market dilution.

On July 22, 2026—after the deadlines for all expert reports had passed—Dr. Chakrabarty, Dr. Dhillon, Xinyue Liu, and Professor Jane Ginsburg uploaded to the internet a working paper titled "Generative AI floods and dilutes the market for books."[3] Chiu Decl. Exs. H, I. They then uploaded two subsequent versions of the paper on July 26, 2026 and August 3, 2026, respectively. Chiu Decl. Exs. H, J, K. The paper remains identified as a "Working Paper Under Review." Chiu Decl. Ex. H.

The Chakrabarty Paper purports to "measure[] how generative AI" impacts "a real book market once its output reache[s] the catalog and compete[s] for sales." Chiu Decl. Ex. J at 1. Its abstract asserts that the research "bear[s] directly on the market-effect question at the center of the fair use defense to copyright infringement." *Id*. The July 22 and July 26 versions of the Chakrabarty Paper did not disclose that it was funded by Susman and did not make any of its underlying data available. Chiu Decl. Exs. I, J. The August 3 version of the Chakrabarty Paper again did not disclose its funding source. Chiu Decl. Ex. K.

---

[3] Xinyue Liu is a "second-year PhD student . . . advised by [Dr.] Chakrabarty." Xinyue Liu, Github Pages (Last updated: Aug. 26, 2026), https://cauchy221.github.io/. Professor Ginsburg is a copyright professor at Columbia Law School who describes herself as "a staunch defender of authors' rights." Jane C. Ginsburg, *Morton L. Janklow Professor of Literary and Artistic Property Law* (July 2026), https://www.law.columbia.edu/faculty/jane-c-ginsburg.

### C. Susman serves a supplemental report from Mr. Lasinski on the eve of his deposition and the close of expert discovery.

On Sunday, August 2, 2026, the afternoon before Mr. Lasinski's deposition, Class Plaintiffs served a supplemental report devoted entirely to the Chakrabarty Paper and which cited the July 26, 2026 version. Chiu Decl. Ex. Q. At his deposition the next day, Mr. Lasinski testified that he did not analyze any of the data underlying the Chakrabarty Paper. Lasinski Tr. 117:24-118:21. Mr. Lasinski also testified that he had never spoken with Dr. Chakrabarty or any of his co-authors "about this paper or any other matters related to this litigation." *Id*. 113:6-17. When Mr. Lasinski was asked whether he understood that Dr. Chakrabarty and Dr. Dhillon "were retained as experts by Plaintiffs in this matter," counsel from Susman objected: "I'm not sure why this is appropriate to ask Mr. Lasinski about." *Id.* 114:21-115:7. Mr. Lasinski ultimately testified that he did not "know that this means that [Dr. Chakrabarty and Dr. Dhillon] were retained." *Id*. 115:11-16.

Mr. Lasinski likewise did not know who had funded the research he was relying upon. When asked whether "the study was funded by Plaintiffs in this case or the Susman Godfrey firm," Mr. Lasinski testified: "I don't know the funding sources," but "to be clear . . . funding something like this would be inconsistent with what I've known the Susman Godfrey firm to do." *Id*. 118:22-119:4. Counsel from Susman, who was defending the deposition, did not correct the record or comment on the issue of funding. *Id*.

### D. Defendants discover that Susman funded the Chakrabarty Paper.

After Mr. Lasinski's deposition, OpenAI independently located a substantially similar version of Dr. Chakrabarty's resume on his website. Chiu Decl. ¶ 3, Ex. A. Unlike the "updated" resume Susman provided in February, however, the version OpenAI found contains a section

specifying $100,000 in "Funding" from Susman in December 2025:

**FUNDING**

**Susman Godfrey L.L.P.** *Dec 2025 - 2026*
Unrestricted Gift for sponsored research *100,000$*
How AI generated books dilutes the market for human authors?

Chiu Decl. Ex. A.

The resume identifies the $100,000 as an "Unrestricted Gift for sponsored research" on "How AI generated books dilutes the market for human authors?"—the same subject covered in the Chakrabarty Paper and in Mr. Lasinski's supplemental report. *Id*.

Thus, according to Dr. Chakrabarty's own resume, Susman's funding had begun approximately two months before Susman provided Defendants with his supposedly "updated" resume, and the stated subject of that funding was the same market-dilution issue addressed by the Chakrabarty Paper and Mr. Lasinski's supplemental report. Neither of the resumes Class Plaintiffs provided in February disclosed that the research was sponsored or the source of funding. Chiu Decl. Exs. D, G. Nor did the Chakrabarty Paper itself. *See, e.g.*, Chiu Decl. Ex. J.

### E. Class Plaintiffs refuse to withdraw the Lasinski Supplement or the Chakrabarty Paper, and rely on them at summary judgment.

On August 25, 2026, OpenAI wrote to Class Plaintiffs regarding the circumstances surrounding the Chakrabarty Paper. Chiu Decl. Ex. L. OpenAI explained that it intended to move to strike Mr. Lasinski's supplemental report, and any reliance on the Chakrabarty Paper, and asked counsel to explain among other things, the details regarding Susman's funding of Dr. Chakrabarty's research, its role in the Chakrabarty Paper, and whether other counsel-funded research had been or would be used in this litigation.

Two days later, on August 27, 2026, Dr. Chakrabarty changed the resume on his public-facing website and removed the reference to Susman's $100,000 gift. Chiu Decl. ¶ 15, Ex. M. The revised resume now states, in fine print and barely legible font, that "[a] previous version of

[Dr. Chakrabarty's] resume stated that [he] received an unrestricted gift for sponsored research from Susman Godfrey LLP in the amount of $100,000. This was incorrect as the research was done for In re Mosaic LLM litigation for which [his] institution was compensated in a lesser amount:"

**FUNDING**

**McGraw Hill LLC** — *Jun 2026 - 2027*
Understanding Memorization of Training Data in Large Language Models — *126,000$*
How AI generated books are stored in Language Models?

**The French Publishers Association** — *July 2026*
Extracting French Copyrighted books from Base and Finetuned Language Models — *24,000$*
Training data extraction from non-aligned models.

** A previous version of my resume stated that I received an unrestricted gift for sponsored research from Susman Godfrey LLP in the amount of $100,000. This was incorrect as the research was done for In Re Mosaic LLM litigation for which my institution was compensated in a lesser amount.

Chiu Decl. Ex. M.

Even taken at face value, the revised resume does not deny that Susman funding facilitated the research presented in the Chakrabarty Paper. Whether the money was nominally earmarked for this MDL or the *In re Mosaic LLM Litigation* case, it supported the same researcher investigating the same market dilution question that is the subject of the Chakrabarty Paper, which in turn is the subject of Mr. Lasinski's supplemental report.

When the parties conferred, Class Counsel could not or would not provide answers to nearly ***any*** of the questions raised in OpenAI's August 25 letter. Class Counsel said that the $100,000 "gift" referenced in Dr. Chakrabarty's prior resume was given in connection with another AI copyright lawsuit they filed (the *In re Mosaic LLM Litigation* case) and stated that Susman had asked Dr. Chakrabarty to revise his resume accordingly. Chiu Decl. ¶¶ 16-22, Ex. N. But Class Counsel did not deny that Susman funded the research described in the Chakrabarty Paper, which was the subject of Mr. Lasinski's supplemental report. Chiu Decl. ¶ 25. OpenAI requested that Class Plaintiffs withdraw the Lasinski Supplement and agree not to rely on or reference the Chakrabarty Paper in any way. Chiu Decl. ¶ 23. OpenAI repeated its request for further details in a letter sent to Class Counsel on August 29, 2026. Chiu Decl. Ex. N. Class

Counsel responded the following day but again provided no further details and declined to withdraw the Lasinski Supplement. Chiu Decl. Ex. O.

Class Plaintiffs have since relied on the Chakrabarty Paper in support of summary judgment. They submitted the Paper as an exhibit and devoted 13 paragraphs of their statement of undisputed facts to summarizing its findings. Dkt. No. 1987 ¶¶ 858-871. Plaintiffs' summary-judgment brief likewise cites the Paper as an "academic stud[y]." Dkt. No. 1982 at 16. None of these submissions disclose that Susman funded Dr. Chakrabarty's underlying research.

### F. Susman also concealed its funding of the Chakrabarty Paper in the *In re Mosaic LLM Litigation* case.

Susman followed the same playbook in the *In re Mosaic LLM Litigation* case—the case Dr. Chakrabarty now says Susman's research funding was originally provided for. Plaintiffs in *In re Mosaic LLM Litigation* (again represented by Susman) disclosed both Dr. Chakrabarty and Dr. Dhillon as experts and served a report from Dr. Dhillon on market "dilution." Chiu Decl. Ex. R ¶¶ 3-4. A few days before Dr. Dhillon's deposition, however, Susman withdrew him as a testifying expert, represented that plaintiffs would not rely on his opinions, and asked defendants to cancel his deposition, which they did. *Id.* ¶ 4. Susman then cited the Chakrabarty Paper co-authored by Dr. Dhillon in opposition to summary judgment, as did two of its supporting amici, without disclosing its funding of the Paper. Chiu Decl. ¶ 29, Ex. R ¶ 2.

## III. ARGUMENT

The Court should strike the Lasinski Supplement and preclude Class Plaintiffs from relying on the Chakrabarty Paper for two independent reasons. ***First***, the Lasinski Supplement is untimely and not a proper supplement under Rule 26(e). Rule 26(e) permits correction of materially incomplete or inaccurate disclosures; it does not permit a party to add new—let alone previously planned—support for existing opinions after disclosure deadlines. The Lasinski Supplement does exactly that, without justification and with substantial prejudice to Defendants. It should be precluded under Rule 37. ***Second***, Class Plaintiffs should not be permitted to present the Chakrabarty Paper as neutral, independent research when, in fact, their counsel (who has a

direct financial interest in the outcome of this case as Class Counsel) funded the underlying research and then planted it into the case through Mr. Lasinski outside of Rule 26's ordinary expert disclosure requirements. That maneuver deprived Defendants of access to Dr. Chakrabarty's underlying data and a timely opportunity to test his work through expert discovery. Class Counsel misled both Defendants and their own expert into thinking research they paid for was neutral science.[4] Class Plaintiffs should not be permitted to launder litigation-funded expert work into the case in this manner. These actions harm the integrity of the judicial process. Again, preclusion is the appropriate remedy.

### A. Class Plaintiffs violated Rule 26.

Expert reports must be served "at the times and in the sequence that the court orders," Fed. R. Civ. P. 26(a)(2)(D), unless they qualify as proper "supplements" under Rule 26(e). Although Rule 26(e) requires supplementation when a prior disclosure becomes materially incomplete or incorrect, it does not permit experts to "continually bolster, strengthen, or improve" their opinions after the disclosure deadline. *Sandata Techs., Inc. v. Infocrossing, Inc.*, 05-cv-9546, 2007 WL 4157163, at *6 (S.D.N.Y. Nov. 16, 2007). Nor is Rule 26(e) "a vehicle to permit a party to serve a deficient opening report and then remedy the deficiency through the expedient of a 'supplemental' report." *Lidle v. Cirrus Design Corp.*, No. 08-cv-1253, 2009 WL 4907201, at *5 (S.D.N.Y. Dec. 18, 2009).

Class Plaintiffs' August 2 Lasinski Supplement does exactly what these rules prohibit: it does not correct an inaccurate or incomplete prior opinion but instead purports to add new empirical support for Class Plaintiffs' existing market harm theory based entirely on research funded by Class Plaintiffs' own counsel months before the expert deadlines. Class Plaintiffs cannot manufacture the evidence that supposedly justifies a late "supplement," shield that

---

[4] This maneuver appears designed to mislead the general public as well; the New York Times, also represented by Susman in this litigation, reported on the Chakrabarty Paper without disclosing its counsel's role. *See* Alexandra Alter, *How A.I. Books Sneak Their Way Into Stores*, NYT (July 28, 2026), https://www.nytimes.com/2026/07/28/books/ai-bookselling-amazon.html.

evidence from the ordinary expert disclosure process, and then launder it back into the case through another expert as expert discovery closes.

**1. The Lasinski Supplement is not a proper supplement under Rule 26(e).**

The Lasinski Supplement is not a "supplement." Mr. Lasinski had already served opening, rebuttal, and reply reports addressing market harm pursuant to the Court's schedule. The Lasinski Supplement does not identify any prior statement that had become inaccurate or incomplete. Instead, it is devoted entirely to the Chakrabarty Paper, which purports to offer empirical evidence that Class Plaintiffs contend supports their existing market-dilution theory. Rule 26(e) does not permit that. The rule exists to ensure that an adversary receives corrected or newly complete disclosures, not to give the proponent another opportunity to improve its expert case after the deadlines have passed. *Lidle*, 2009 WL 4907201, at *5.

Class Plaintiffs cannot justify the Lasinski Supplement on the grounds that the Chakrabarty Paper was not publicly posted until July (*i.e.*, after the expert report deadlines). This was not independent research that Mr. Lasinski happened to discover after serving his reports. Susman funded Dr. Chakrabarty's research beginning in December 2025 and could have served either Mr. Lasinski's supplemental report, or a report from Dr. Chakrabarty himself, by the applicable deadline. Whether Susman originally funded Dr. Chakrabarty's research for this MDL or *In re Mosaic LLM Litigation* makes no difference: Class Counsel sponsored and funded Dr. Chakrabarty's research before the expert deadlines passed; had identified Dr. Chakrabarty as one of their experts *in this case* in early 2026; twice provided an incomplete resume for Dr. Chakrabarty; and now seek to use his funded work as belatedly-disclosed expert evidence from Mr. Lasinski here.

Market dilution is not a new issue either. Class Plaintiffs have alleged from the outset that AI-generated works "flood" the market and cause market harm, *see, e.g.*, Dkt. No. 183 (Consolidated Class Action Complaint) ¶ 158, and Defendants' April 24, 2026 expert reports squarely addressed that theory. If Class Plaintiffs intended to rely on empirical research

commissioned by their own counsel to rebut those opinions, the time to disclose it was through the expert process established by the Court, not after the report deadlines had expired and less than twenty-four hours before Mr. Lasinski's deposition.

Class Plaintiffs thus cannot justify their untimely service of the Lasinski Supplement under Rule 26(e).

**2. Class Plaintiffs cannot evade Rule 26 by smuggling the Chakrabarty Paper in through Mr. Lasinski.**

The Lasinski Supplement is not just late; it instead appears to be a deliberate effort to gain an advantage by evading Rule 26. "It is troublesome, to say the least, for a party to engage a consulting, non-testifying expert; pay for that individual to conduct and publish a study, or otherwise affect or influence the study; engage a testifying expert who relies upon the study; and then cloak the details of the arrangement with the consulting expert . . . in order to conceal it from a party opponent and the Court." *In re Zofran*, 392 F. Supp. 3d at 186. To make matters worse, Susman appears to have concealed its funding of the Chakrabarty Paper from Class Plaintiffs' own expert, Mr. Lasinski, despite asking him to rely on it. Dr. Chakrabarty himself was also apparently ignorant of the fact that the tens of thousands of dollars Susman was funneling his way to conduct market-dilution research and publish papers was tied to a specific litigation, much less which one.[5] And Class Plaintiffs have now completed the maneuver: their summary judgment submissions rely extensively on the Chakrabarty Paper and describe it to the Court simply as an "academic stud[y]," without disclosing that their own counsel funded the underlying research.[6] Dkt. No. 1982 at 16.

[5] Dr. Chakrabarty listed the gift as "unrestricted" on his resume as recently as August 2026, Chiu Decl. Ex. A, and only removed that language when contacted by Susman in August following OpenAI's discovery, Chiu Decl. Ex. M. Defendants understand that Susman gave Dr. Chakrabarty at least $70,000 that funded the research described in the Chakrabarty Paper. Chiu Decl. Ex. P.

[6] Susman's conduct in the *In re Mosaic LLM Litigation* case further confirms its circumvention of expert discovery here was no accident: after securing cancellation of co-author Dr. Dhillon's deposition by representing that plaintiffs would not rely on his opinions, Susman cited the Chakrabarty Paper at summary judgment without disclosing its funding. Chiu Decl. Ex. R.

This maneuver deprived Defendants of the opportunity to fully analyze and rebut the Chakrabarty Paper—and the Court of the ability to properly assess its reliability. Had Class Plaintiffs properly disclosed the Chakrabarty Paper and underlying data and materials, Defendants would have evaluated the data on which the study is based, deposed Dr. Chakrabarty and his co-authors, and tested the study's methodology and conclusions through the ordinary discovery process. Instead, Defendants were only able to depose Mr. Lasinski, who knew nothing about Dr. Chakrabarty's underlying data and who mistook the Chakrabarty Paper to reflect neutral, independent research. Lasinski Tr. 116:4-12, 117:24-119:4.

Courts recognize that it is "fundamentally unfair" for a party "to supplement the record with reports of alleged 'consulting experts'"—like Dr. Chakrabarty here—"whose identity and opinions have been shielded [from disclosure]." *Tyson Foods*, 2009 WL 2252129, at *6-8 (striking declarations of consulting experts who did not submit written reports); *cf. In re Soc. Media Adolescent Addiction/Pers. Inj. Prods. Liab. Litig*, 22-md-3047, 2024 WL 5088103, at *4 (N.D. Cal. Dec. 11, 2024) (declaration "transformed" consulting expert "into a testifying expert"). The expert disclosure requirements in Rule 26 were designed specifically to "avoid ambush at trial." *Lidle*, 2009 WL 4907201, at *5.

**3. The Lasinski Supplement should be precluded.**

Preclusion of the Lasinski Supplement and Chakrabarty Paper is the only appropriate remedy. Class Plaintiffs' untimely introduction of the Chakrabarty Paper was unjustified and substantially prejudiced Defendants. Preclusion is thus "necessary to achieve the purpose of Rule 37 as a credible deterrent rather than a paper tiger." *Sandata*, 2007 WL 4157163, at *7 (internal quotation marks omitted). Each of the four factors the Second Circuit considers when evaluating a request for preclusion favor preclusion here. *See Softel, Inc. v. Dragon Med. & Scientific Commc'ns, Inc.* 118 F.3d 955, 961 (2d Cir.1997) (listing the factors); *see also Lidle*, 2009 WL 4907210, at *6 (explaining that "*Softel* has also been applied by district courts in assessing the propriety of a preclusion order" and collecting cases).

***First***, as discussed above, Class Plaintiffs have no adequate explanation for the late disclosure. Market dilution is not a new issue: Class Plaintiffs have alleged from the outset that AI-generated works "flooding" the market somehow harm them. *See, e.g.*, Dkt. No. 183 (Consolidated Class Action Complaint) ¶ 158. Nor was the Chakrabarty Paper newly-discovered independent evidence. Susman had been funding Dr. Chakrabarty's market-dilution research since December 2025, months before the expert-report deadlines. Class Plaintiffs cannot fund the creation of purported evidence before the disclosure deadlines and then rely on later public posting of that evidence to justify introducing it as a "supplement."

***Second***, since Defendants only seek in this motion to preclude Class Plaintiffs from relying on a single aspect of Mr. Lasinski's offered opinions—those related to the Chakrabarty Paper—the second *Softel* factor favors preclusion as well. Preclusion of the Chakrabarty Paper will not "foreclose" Class Plaintiffs' case. *See Frydman v. Verschleiser*, 14-cv-5903, 2017 WL 1155919, at *3 (S.D.N.Y. Mar. 27, 2017). Class Plaintiffs "can still . . . attempt to prove their claims," through both "fact evidence" and the opinions of their experts, including Mr. Lasinski, to the extent those opinions are not otherwise excludable. *Id*. The fact that Class Plaintiffs consider the Chakrabarty Paper important enough to serve an entirely new expert supplement devoted to it and showcase it in their summary judgment papers "only serves to underscore the inexcusable quality of its delayed submission." *Kelly v. Beliv LLC,* No. 21-cv-8134, 2024 WL 1076217, at *8 (S.D.N.Y. Mar. 12, 2024) (fact that belated expert report was "critical to a party's case" weighed toward preclusion); *Point Prods. A.G. v. Sony Music Ent., Inc.*, No. 93-cv-4001, 2004 WL 345551, at *11 (S.D.N.Y. Feb. 23, 2004) (same).

***Third***, the late disclosure has substantially prejudiced Defendants. Class Plaintiffs served the Lasinski Supplement less than twenty-four hours before Mr. Lasinski's deposition and the close of expert discovery. Defendants had not received the disclosures ordinarily associated with the underlying expert work; the version of the Chakrabarty Paper on which Mr. Lasinski relied did not provide its underlying data; and Mr. Lasinski himself had neither reviewed that data nor spoken with the Chakrabarty Paper's authors. Class Plaintiffs thus deprived Defendants of a

meaningful opportunity, within the Court's expert schedule, to test and respond to the purported new empirical evidence.

***Fourth***, reopening expert discovery is not an appropriate cure for Class Plaintiffs' discovery violations. Expert discovery is closed, summary judgment already filed, and *Daubert* briefing is imminent. Reopening the expert process now would require Defendants to revisit work that should have been completed under the Court's established schedule, would impact the summary judgment and *Daubert* briefing schedule, and would reward the improper disclosure that caused the prejudice. The Court has already moved the summary judgment, *Daubert*, and expert report deadlines multiple times. *See* Dkt. No. 1452; Dkt. No. 1664. Class Plaintiffs "should not be permitted to upset a [case] schedule which was extremely liberal and to which [their] adversary adhered." *Pal, M.D., v. New York University*, No. 06-cv-5892, 2008 WL 2627614, at *6 (S.D.N.Y. June 30, 2008).

The Court also has the inherent authority to preclude the Lasinski Supplement and Chakrabarty Paper to "prevent [Class Plaintiffs] from perpetrating a fraud on the court," *Yukos Capital S.A.R.L. v. Feldman*, 977 F.3d 216, 235 (2d Cir. 2020), or interfering with the judicial system's ability to impartially adjudicate this action. Such interference includes concealing counsel's role in creating purportedly neutral scientific evidence. *See Hazel-Atlas Glass Co. v. Hartford-Empire Co.*, 322 U.S. 238, 251 (1944) (vacating judgment obtained using an article ghostwritten by counsel but presented as the work of a disinterested expert).

That is what Susman did here. When disclosing Dr. Chakrabarty as an expert, Susman omitted that it funded the research subject of the Chakrabarty Paper, continued to omit that funding even after providing what it represented was an "updated resume," and allowed Mr. Lasinski to testify at his deposition that Susman would not provide such funding. And even since its funding of the research has come to light, Susman has refused to answer straightforward questions about the nature of its relationship with Dr. Chakrabarty and his co-authors. As Mr. Lasinski himself acknowledges, it would be "inconsistent" for a law firm to fund a study for litigation and then present it through an expert as neutral academic literature. Lasinski Tr.

118:22-119:4. The Court should therefore exercise its inherent authority to prohibit Class Plaintiffs from presenting the Susman-funded Chakrabarty Paper as neutral, objective scientific evidence.

## IV. CONCLUSION

For these reasons, the Court should strike Mr. Lasinski's supplemental report and preclude Class Plaintiffs from citing or relying upon the Chakrabarty Paper in this litigation.

Respectfully submitted,[7]

KEKER, VAN NEST & PETERS LLP

Dated: September 23, 2026

By: */s/ Victor Chiu*

VICTOR CHIU *(pro hac vice)*
633 Battery Street
San Francisco, CA 94111-1809
pmalhotra@keker.com
Telephone: 415 391 5400
Facsimile: 415 397 7188

Attorneys for Defendants
OPENAI, INC., OPENAI GP, LLC,
OPENAI, LLC, OPENAI OPCO LLC,
OPENAI GLOBAL LLC, OAI
CORPORATION, LLC, OPENAI
HOLDINGS, LLC

ORRICK, HERRINGTON & SUTCLIFFE LLP

Dated: September 23, 2026

By: */s/ Annette L. Hurst*

[7] All parties whose electronic signatures are included herein have consented to the filing of this document.

________________________________
ANNETTE L. HURST *(pro hac vice)*
The Orrick Bldg.
405 Howard Street
San Francisco, CA 94105
ahurst@orrick.com
Telephone: 415 773 5700
Facsimile: 415 773 5759

Attorneys for Defendants
MICROSOFT CORPORATION

**CERTIFICATE OF COMPLIANCE**

In accordance with Local Civil Rule 7.1(c), I hereby certify that the foregoing Memorandum of Law in support of Defendants' Motion to Strike is 4,634 words, exclusive of the caption page, table of contents, table of authorities, and signature block. The basis of my knowledge is the word count feature of the word-processing system used to prepare this memorandum.

Dated: September 23, 2026

By: */s/ Victor Chiu*
Victor Chiu (*pro hac vice*)