**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE:<br><br>OPENAI, INC.,<br>COPYRIGHT INFRINGEMENT LITIGATION<br><br>This document relates to:<br><br>News Cases<br><br>1:23-cv-11195-SHS-OTW<br>1:24-cv-01515-SHS-OTW<br>1:24-cv-03285-SHS-OTW<br>1:24-cv-04872-SHS-OTW<br>1:25-cv-04315-SHS-OTW | 25-md-3143 (SHS) (OTW)<br><br>Hon. Sidney H. Stein<br>Hon. Ona T. Wang |

**OPENAI DEFENDANTS' SUR-REPLY IN SUPPORT OF THEIR BRIEF IN OPPOSITION TO NEWS PLAINTIFFS' MOTION FOR SANCTIONS**

OpenAI respectfully submits this Sur-Reply to address arguments, evidence, and factual assertions raised for the first time in News Plaintiffs' Reply Brief, MDL ECF 1932. Plaintiffs' Reply sets forth new expert analysis that rushes to impugn the adequacy of the Merits Sample based on a deeply flawed comparison; the Reply newly distorts OpenAI's prior statements accurately conveying the technical limits of the company's ability to retrieve and search vast datasets; and the Reply offers a new interpretation of the Preservation Order at odds with the text of the Order, OpenAI's contemporaneous (and communicated) understanding of that Order, and the many settlement conferences held between the parties and the Court. At bottom, none of Plaintiffs' arguments—especially its new ones—offer any basis to impose sanctions.

***1. New Expert Analysis.*** For the first time on reply, Plaintiffs submit the Supplemental Expert Report of Dr. Tom Goldstein, Pls.' Ex. 69, which contains new statistical analyses that purport to show that the Merits Sample underrepresents RAG (retrieval-augmented generation) conversations. Dr. Goldstein's central claim is that the Project Giraffe dataset bearing 9 million

conversations contains a much higher prevalence of plugin and browsing conversations than the Merits Sample, and he argues this signals a "statistically significant" difference between the two datasets. Reply at 7; Pls.' Ex. 69 at ¶ 80.

This analysis is fundamentally flawed. As OpenAI's rebuttal expert, Dr. Taylor Berg-Kirkpatrick, has demonstrated, the 9 million dataset is not a representative sample of ChatGPT conversations and cannot serve as a valid benchmark. *See* Defs.' Opp. at 22 n.6, MDL ECF 1672; Defs.' Ex. 13. *First*, the 9 million dataset has more RAG conversations not because the Merits Sample is deficient or unrepresentative, but because OpenAI deliberately engineered the 9 million dataset to inflate RAG data. As OpenAI engineer Edmund Wong explained, the 9 million dataset was "used to oversample browsing and plugin conversations"—*i.e.*, RAG conversations—"because conversations in the general population did not naturally contain many browse or plugin conversations." Defs.' Ex. 13 at ¶ 18(e). *Second*, the 9 million dataset did not draw data evenly from all the months relevant to Plaintiffs' infringement claims; the Merits Sample, by contrast, sampled ChatGPT conversations from every relevant month. *See id.* ¶ 11. In any event, News Plaintiffs distort their own expert's analysis by claiming that the 9 million dataset "contain[s] over ten times the amount of RAG conversations" as the Merits Sample. In reality, Dr. Goldstein found a 10X difference in the prevalence of a single plugin ("web_pilot") across the two datasets, not a 10X difference in all RAG conversations.

Because of this flawed analysis, Dr. Goldstein's comparison of the two datasets "has no bearing on the representativeness of the Merits Sample." *Id.* ¶ 20. If anything, the low RAG rate in the Merits Sample is a product of Plaintiffs' own sampling methodology, which took an equal number of conversations from each month, thereby skewing the sample toward earlier periods when RAG was either unavailable or used by a small subset of users. Opp. at 28 n.8.

***2. New Mischaracterization of OpenAI's Statements to the Court.*** Plaintiffs (at 11-12) twist the record in claiming that OpenAI "misrepresented … its preservation and search capabilities" by suggesting that it lacked "any mechanism to search output logs."

OpenAI made no such representation. When OpenAI discussed its search capabilities, OpenAI expressly distinguished its ability to search data "that is more than 30 days old [and] stored in a compressed format"—"which cannot be searched without first decompressing the data"—from its ability to search data that is less than 30 days old, which OpenAI routinely reviews for "safety purposes." Defs.' Ex. 2 (MDL ECF 64-4, Monaco Decl. ¶¶ 3-4); *accord* Defs.' Ex. 4 (NYT ECF 425, Trinh Decl. ¶¶ 4, 9) (similar). Far from disclaiming any search capability whatsoever, OpenAI began working with Plaintiffs in *2024* on a sampling methodology precisely so the parties could search output logs for Plaintiffs' content. *See* NYT ECF 423 (discussing efforts).

Nor is there any merit to Plaintiffs' late-breaking assertion (at 12) that OpenAI should have volunteered to search newly generated conversations for Plaintiffs' content "on a weekly basis." As Plaintiffs well know, that is exactly what OpenAI did under the Court-ordered spoliation sampling exercise, which proved that the exclusion of user-deleted and temporary chats did not bias the Merits Sample, much less in any statistically significant way. *See* MDL ECF 463; Opp. at 4, 13. Following this spoliation exercise, the parties stipulated to the termination of the Preservation Order and created the Merits Sample—the only statistically valid dataset in this litigation. *See* Opp. at 13-15.

***3. New Interpretation of the Preservation Order.*** For the first time, Plaintiffs (at 4) argue that the Court's statement that the Preservation Order did not require "wholesale preservation" concerned only API and enterprise data—not consumer data. This new characterization of the record is false and warrants correction.

The full transcript of the May 27, 2025, hearing shows that Magistrate Judge Wang's clarification about "wholesale preservation" was not limited to API data, but rather addressed the scope of the Preservation Order as a whole. In response to OpenAI's counsel's description of the "ongoing technical burden for retaining *consumer data* and any API data," Judge Wang stated: "I have seen repeated references" in filings "to wholesale preservation, which was not my intent." Pls.' Ex. 31 (Hr'g Tr. 33:17-24).[1] Then OpenAI's counsel said: "In our view—*and correct me if I'm wrong*"—the Court issued "a wholesale preservation order, do not delete anything." *Id.* at 34:3-7. Judge Wang immediately corrected that impression: "I'm not saying stop *all* your deletion processes. Stop in any way." *Id.* at 34:17-20 (emphasis added). On that express understanding, OpenAI notified the Court of the preservation steps it was taking and the steps it was not. *See* Opp. at 10-11. OpenAI also kept the Court and Plaintiffs' counsel informed of its preservation practices in real time during court-ordered settlement conferences in June, August, and September 2025.[2] Opp. at 11 & n.4. As a result, the parties and the Court all moved forward together based on OpenAI's transparent understanding of its preservation obligations. OpenAI therefore had no need to "seek an amendment to the Court's orders," as Plaintiffs (at 5) now suggest, because OpenAI had *already* secured clarification from the Court that "wholesale preservation"—including preservation of all consumer data—was not required.

[1] All emphases are added.

[2] Mindful of the Court's admonition to not disclose "protected settlement communications" that took place during these confidential and off-the-record "settlement conferences," OpenAI will not disclose further details regarding these conferences here or elsewhere in its brief. *See* MDL ECF 708. However, they are an important part of the factual record, including because they informed OpenAI's own understanding of what its obligations were and whether it was complying with them, as well as what Plaintiffs and the Court understood about OpenAI's actions. Additionally, OpenAI wishes to contextualize Plaintiffs' own descriptions of these conferences. *See* Mot. App'x A at 27-29.

In short, OpenAI accurately disclosed the technical limitations surrounding wholesale preservation of API *and consumer* data; OpenAI understood its preservation measures to be sufficient and shared its understanding with Plaintiffs' counsel and the Court; and OpenAI reasonably understood the Court to have affirmatively authorized the deletion of pre-Preservation Order consumer logs that Plaintiffs now challenge. That history reflects earnest efforts at transparent compliance, not willful defiance of any Court order. *See* Opp. 24-26.

* * *

For the foregoing reasons, OpenAI respectfully requests that the Court deny News Plaintiffs' motion for sanctions in its entirety. At a minimum, the Court should disregard the new arguments, evidence, and characterizations improperly raised for the first time in the Reply.

Respectfully submitted,

Dated: September 24, 2026

By: */s/ Lisa S. Blatt*

LISA S. BLATT
WILLIAMS & CONNOLLY LLP
*680 Maine Avenue SW*
*Washington, DC 20024*
*(202) 434-5000*
*lblatt@wc.com*

By: */s/ R. James Slaughter*

R. JAMES SLAUGHTER
KEKER, VAN NEST & PETERS LLP
*633 Battery Street*
*San Francisco, CA 94111*
*(415) 391-5400*
*rslaughter@keker.com*

By: */s/ Margaret Graham*

MARGARET GRAHAM
LATHAM & WATKINS LLP
*1271 Avenue of the Americas*
*New York, NY 10020*
*(212) 906-1200*
*margaret.graham@lw.com*

By: */s/ Joseph C. Gratz*

JOSEPH C. GRATZ
MORRISON & FOERSTER LLP
*425 Market Street*
*San Francisco, CA 94105*
*(415) 268-7000*
*jgratz@mofo.com*

*Attorneys for Defendants*
OPENAI, INC., OPENAI GP, LLC, OPENAI, LLC, OPENAI OPCO LLC, OPENAI GLOBAL LLC, OAI CORPORATION, LLC, OPENAI HOLDINGS, LLC

* All parties whose electronic signatures are included herein have consented to the filing of this document, as contemplated by Rule 8.5(b) of the Court's ECF Rules and Instructions.