UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE: | : 25-md-3143 (SHS) (OTW) |
| OPENAI, INC., COPYRIGHT INFRINGEMENT LITIGATION | : |
| | : |
| This Document Relates To: 1:23-cv-11195-SHS-OTW | : **ORAL ARGUMENT REQUESTED** |
| | : |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION PURSUANT TO FED. R. CIV. P. 24(b) BY BLOOMBERG INDUSTRY GROUP, INC. TO INTERVENE FOR LIMITED PURPOSE OF UNSEALING AND UN-REDACTING CERTAIN DOCUMENTS**

GEORGE LLP
Carnegie Hall Tower
152 West 57th Street, 28th Floor
New York, New York 10019
Telephone: (212) 413-2600
Facsimile: (212) 413-2629
*Attorneys for Bloomberg Industry Group, Inc.*

*Of Counsel*:
Jeffrey A. Mitchell, Esq.
Edward T. Hagan, Esq.

# TABLE OF CONTENTS

**Page**


FACTS RELEVANT TO THIS MOTION ........ 1

A. BACKGROUND ........ 1

B. THIS CASE CONCERNS MATTERS OF PUBLIC SIGNIFICANCE ........ 3

C. THE ISSUES OF PUBLIC INTEREST ........ 5

ARGUMENT ........ 6

I. BLOOMBERG INDG MAY PROPERLY INTERVENE ........ 6

II. THERE IS A PRESUMPTIVE RIGHT OF ACCESS TO DOCUMENTS FILED IN THIS ACTION ........ 7

III. THE PRESUMPTION OF PUBLIC ACCESS IS ENTITLED TO SUBSTANTIAL WEIGHT ........ 9

A. The Presumption Is Not Overcome Here ........ 11

B. Legitimate Privacy/Privilege Concerns May Be Protected ........ 13

CONCLUSION ........ 14

## TABLE OF AUTHORITIES

**CASES** **PAGE**

*Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132 (2d Cir. 2016)....9, 10

*Brown v. Maxwell*, 929 F.3d 41 (2d Cir. 2019) ....7, 11, 12, 14

*Gardner v. Amazon.com LLC*, 2026 WL 1815528 (S.D.N.Y. June 24, 2026) ....7

*Giuffre v. Maxwell*, 146 F.4th 165 (2d Cir. 2025) ....8, 9

*Giuffre v. Maxwell*, 325 F. Supp. 3d 428 (S.D.N.Y. 2018) ....6, 7

*Gov't of United States Virgin Islands v. JPMorgan Chase Bank, N.A.*, 807 F. Supp. 3d 301 (S.D.N.Y. 2025)....8, 10, 11

*Hartford Courant Co. v. Pellegrino*, 380 F.3d 83 (2d Cir. 2004)....8

*In re New York Times Co.*, 828 F.2d 110 (2d Cir. 1987) ....8, 11, 12

*In re Pineapple Antitrust Litig.*, 2015 WL 5439090 (S.D.N.Y. Aug. 10, 2015) ....6

*Lugosch v. Pyramid Co. of Onondaga ("Lugosch III")*, 435 F.3d 110 (2d Cir. 2006)....6, 7, 8, 10, 11, 12, 13

*MetLife, Inc. v. Fin. Stability Oversight Council*, 865 F.3d 661 (D.C. Cir. 2017) ....7

*N.Y. Civil Liberties Union v. N.Y.C. Transit Auth. ("NYCTA")*, 684 F.3d 286 (2d Cir.2012)....8

*Newsday LLC v. Cnty. of Nassau*, 730 F.3d 156 (2d Cir. 2013)....8, 11, 12

*Nixon v. Warner Communications, Inc.*, 435 U.S. 589 (1978) ....7

*Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980) ....8

*Trump v. Deutsche Bank AG*, 940 F.3d 146 (2d Cir. 2019)....6

*United States v. Amodeo*, 71 F.3d 1044 (2d Cir. 1995) ....9, 10, 12

*United States v. Erie Cnty., N.Y.*, 763 F.3d 235 (2d Cir. 2014) ....11

*United States v. HSBC Bank USA, N.A.*, 863 F.3d 125 (2d Cir. 2017)....8

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

**RULES**

Fed. R. Civ. P. 5.2 .......... 13

Fed. R. Civ. P. 24(b) .......... 1, 6, 7

Proposed Intervenor Bloomberg Industry Group, Inc. ("Bloomberg INDG") respectfully submits this memorandum of law in support of its motion under Federal Rule of Civil Procedure 24(b) to intervene for the limited purpose of (i) asking the Court to unseal all redactions made in the proposed Amended Complaint filed by Plaintiff The New York Times Company (the "NYT" or "Times") on June 25, 2026 (Dkt. No. 1415-2/1590-2) in connection with its Motion to File a Third Amended Complaint, and to unseal Exhibits A through O filed in support thereof (Dkt. Nos. 1415-4/1590-4 to Dkt. Nos. 1415-18/1590-18), (ii) to participate in the motions to seal exhibits and redact documents that were and are to be filed in connection with the parties' motions for summary judgment, and (iii) for such other further and different relief as the Court deems just and proper. The requested relief is subject to narrowly tailored redactions for personal identifiers and any other information as to which the proponent of sealing satisfies the governing constitutional and common-law standards.

**<u>FACTS RELEVANT TO THIS MOTION</u>**

## A. <u>BACKGROUND</u>

The sealed documents at issue here were not merely exchanged in discovery. The Times placed them before the Court in support of its cross-motion for leave to assert new theories of contributory copyright infringement against Microsoft (the "Cross-Motion"). Levy Decl.[1] ¶¶ 3-5. The allegations relying on those sealed documents were also substantially redacted in the proposed Third Amended Complaint (the "Proposed TAC"), and in the redline of that pleading. *Id.* The Court then exercised its adjudicatory authority when it denied the Cross-Motion by Memorandum Order (Dkt. No. 1449) on August 6, 2026 (the "Memorandum Order"). The proposed pleading and its supporting exhibits, in their entireties, are therefore judicial documents under controlling

[1] *See* accompanying Declaration of Annelise Levy ("Levy Decl.").

Second Circuit law.

The Cross Motion was filed on June 25, 2026. At issue are redactions in the Proposed TAC (Dkt. No. 1415-2/1590-2), and the accompanying Exhibits filed in support of it. (Dkt. Nos. 1415-4/1590-4 to 1415-18/1590-18)(the "Subject Exhibits"). Levy Decl. ¶ 4. The Proposed TAC that was filed contains redactions on pages 22 through 25 and 67 through 68 (Dkt. No. 1415-2/1590-2), which include substantially or completely redacted paragraphs 73 through 80 and 193 through 197. *Id*. These corresponding redactions were also made in the redlined proposed Third Amended Complaint (Dkt. No. 1415-3/1590-3). The Subject Exhibits were all filed under seal. Levy Decl. ¶ 4.

The Cross-Motion was denied in the Memorandum Order, which cited to paragraphs 189 through 198 of the Proposed TAC in describing the contributory infringement theories the NYT sought leave to add. Memorandum Order at 2. The Court also referred to the discovery record underlying the proposed amendment, including the timing of Microsoft's document productions and the significance of more recent deposition testimony. *Id.* at n.7. As a result, the public can read the Court's conclusion, but because of the redactions and sealed exhibits, it cannot fully assess the allegations and evidentiary record presented in support of the rejected Cross-Motion.

When motions for summary judgment were filed by the News Plaintiffs, OpenAI and Microsoft on September 4, 2026, again a massive amount of exhibits were filed under seal, and supporting papers contained redactions of material facts. It appears from the parties' proposed Stipulated Omnibus Sealing Order filed on August 31, 2026 (Dkt. No. 1681) that they have until January 13, 2027 to file an omnibus motion to seal exhibits, opposition to which is due on January 20, 2027. Bloomberg INDG also requests leave to intervene on that motion, and any other related sealing requests as well, and to file an opposition thereto.

## B. THIS CASE CONCERNS MATTERS OF PUBLIC SIGNIFICANCE

Bloomberg INDG is a news organization that reports on legal and government matters. Levy Decl., ¶ 3. This case obviously raises issues of great interest not only to Bloomberg INDG's readers and subscribers, but to the public at large as well. *Id*. However, throughout this case, many documents filed and considered by the Court have been sealed or contain redactions, and in the case of the documents at issue here, apparently without a judicial determination that whatever was sealed or redacted was narrowly tailored, on a redaction-by-redaction or document-by-document basis.

That is precisely the informational gap the rights of access are designed to prevent. Under both the First Amendment and the common law, the public is entitled to understand not only what a court decided, but also what the parties asked the court to decide and the materials they submitted to obtain a result. The fact that NYT's motion was denied does not diminish this presumption. Nor can a discovery confidentiality designation, the parties' agreement, or generalized concern about commercially sensitive information substitute for document-specific findings demonstrating that sealing is necessary and narrowly tailored. Once documents are filed for a court's consideration, the public's presumed right of access becomes a paramount consideration.

This case concerns artificial intelligence, and, among other things, whether its dependence on copyrighted works to generate results, even some works that are behind paywalls, is infringement. Given the rapid and mostly unrestrained growth of AI, there are many competing interests at stake, not just those of the parties themselves. Whatever the Court ultimately decides, the public has a right to know what is being argued by each side and why. Indeed, what OpenAI or Microsoft might consider technical *know how* could influence how certain issues are decided. Facts are therefore important to this case, and should not be withheld from the public simply because a party might prefer to not have them known. Stated differently, just because AI results

are generated by technological processes, the creators of which would prefer remain secret, does not entitle them to unilaterally designate what the public can and cannot know about them.

Bloomberg INDG does not seek disclosure of account numbers, personal contact information, or other sensitive personal identifiers. *See* Levy Decl. ¶¶ 10-12. If a party can establish that a particular passage contains a genuine trade secret or other information the disclosure of which would cause a concrete and substantial injury, and has no separate bearing on a particular issue being decided, the Court may consider a targeted redaction. But the present wholesale sealing of fifteen exhibits and substantial portions of a proposed pleading is inconsistent with the required presumption of openness, individualized review and narrow tailoring. Levy Decl. ¶ 12.

On July 2, 2026, OpenAI filed a Motion to Seal the items that are the subject of this motion, supported by a Declaration of its Senior Litigation Counsel. (Dkt. Nos. 1421-1422). The motion did not contain a detailed description of why each document and request to seal was appropriate. It only generally claimed that, collectively, the redactions and sealing withheld "detailed terms and contract prices in OpenAI's agreements with Microsoft and confidential communications reflecting negotiations of same; dashboards detailing OpenAI's workstreams and milestones; and technical specifics about OpenAI's large language models." (Dkt. No. 1421 at 2). The Court never determined that each sealing/redaction decision was narrowly tailored in the manner required by applicable case law.[2]

Bloomberg INDG and the public at large should be entitled to have the entirety of the record upon which the Court decided the motion to amend, without redactions or exhibit sealing.

---

[2] It appears probable that absent an objection from a party, there was no judicial determination about the propriety of any redaction or sealing decisions.

The wholesale sealing of fifteen exhibits and substantial portions of a proposed pleading is inconsistent with the required presumption of openness, individualized review and narrow tailoring that the law requires. Levy Decl. ¶ 12. For that reason as well, Bloomberg INDG should be granted leave to intervene on any sealing motions for the summary judgment motions too, so it can also challenge such requests to seal or redact as it deems warranted under applicable law on those motions as well.

### C. THE ISSUES OF PUBLIC INTEREST

This is an important case at the cutting edge of intellectual property law. At issue, among other things, are the IP protections afforded to copyright holders where their works are republished, in many cases verbatim, by an AI generated response. That means the rights of others not parties to this case will be affected by its outcome, and they are entitled to the fullest extent possible to have access to facts and documents the Court will rely upon in rendering its decisions. In order to report on this case accurately, and to understand the Court's decisions, Bloomberg INDG's writers and editors require access to underlying documents upon which decisions are based.

Here, the Proposed TAC sought to add a contributory infringement claim for which the Court in its Memorandum Order denied leave to file. To fully understand that decision, it is important for Bloomberg INDG to know what the particular allegations at issue were, and how and why the Times believed the exhibits filed under seal supported its request to add this claim. Without unfettered access to these allegations and documents, Bloomberg INDG only has half of the picture – the Court's denial without the full record on which the denial was based. It sought to obtain the consent of Microsoft and the Times to the relief requested here, but Microsoft declined, and the NYT failed to respond. Levy Decl., Exs. A and B.

Accordingly, the motion of Bloomberg INDG to intervene should be granted, and upon intervention, the parties directed to file the Proposed TAC without any redactions, and to

unseal Exhibits A to O filed in support of the Times' cross-motion to amend. In addition, it should be granted leave to intervene in any sealing motions on the motions for summary judgment.

## ARGUMENT

### I. BLOOMBERG INDG MAY PROPERLY INTERVENE

A motion to intervene is the accepted procedure by which a nonparty, including a news organization, may seek access to sealed judicial records. In *Trump v. Deutsche Bank AG*, 940 F.3d 146, 150 (2d Cir. 2019) (citations omitted), the Second Circuit said, "Representatives of the press . . . 'must be given an opportunity to be heard on the question of their exclusion' from a court proceeding, . . . and we have recognized a similar right of news media to intervene in this Court to seek unsealing of documents filed in a court proceeding[.]"; *see also*, *Lugosch v. Pyramid Co. of Onondaga ("Lugosch III")*, 435 F.3d 110, 112-13 (2d Cir. 2006) (several media organizations moved to intervene to secure access to documents filed under seal); *In re Pineapple Antitrust Litig*., No. 04 MD. 1628 (RMB)(MHD), 2015 WL 5439090, at *1 (S.D.N.Y. Aug. 10, 2015) (New York Times writer filed a motion to intervene along with a motion to unseal documents to "assist in a journalistic project.").

In *Giuffre v. Maxwell*, 325 F. Supp. 3d 428, 433 (S.D.N.Y. 2018), *vacated and remanded in part for factual findings in Brown v. Maxwell*, 929 F.3d 41 (2d Cir. 2019), the Miami Herald and one of its reporters moved under Rule 24(b) to intervene in the defamation case brought by the late Epstein victim Virginia Giuffre against Ghislane Maxwell. It asked the court to unseal all of the documents filed previously under seal in the case. U.S. District Judge Robert W. Sweet allowed the requested intervention, saying that "[b]ecause courts, including this one, 'have repeatedly recognized that members of the press (and other non-parties) may seek to pursue modification of confidentiality orders that have led to sealing of documents filed with the court,'

and since 'the appropriate procedural mechanism to do so is a motion to intervene,' the motion of *Brown* and the Miami Herald to intervene is granted." *Id.* at 437.

This Motion is also timely. Bloomberg INDG moved promptly after the Memorandum Order made clear the importance of the sealed materials and redacted paragraphs to a public understanding of that decision. Limited intervention will not reopen the merits, require merits discovery, or delay adjudication of the parties' claims. None will suffer any cognizable prejudice from being required to justify continued sealing under standards that already govern documents filed with the Court. Thus, Bloomberg INDG may properly move under Fed. R. Civ. P. 24(b) to intervene and challenge the redactions in the Proposed TAC, as well as the fact that the Subject Documents were filed under seal.

## II. THERE IS A PRESUMPTIVE RIGHT OF ACCESS TO DOCUMENTS FILED IN THIS ACTION

"The common law right of public access to judicial documents is firmly rooted in our nation's history." *Lugosch*, 435 F.3d at 119. "It is clear that the courts of this country recognize a general right to inspect and copy public records and documents, including judicial records and documents." *Nixon v. Warner Communications, Inc.*, 435 U.S. 589, 597-98 (1978). "There is a presumption of public access to judicial documents, and the Court must find that the presumption has been overcome before sealing a document." *Gardner v. Amazon.com LLC*, No. 25-CV-8285 (JPO) (RFT), 2026 WL 1815528, at *1 (S.D.N.Y. June 24, 2026) (citing *Lugosch*, 435 F.3d at 119-20).[3]

[3] Indeed, court documents are also deemed judicial records when the court did not rely on them. That is because the public's right of access is not limited to "materials [that] persuaded the court," but also to materials "which failed to do so (and why)." *MetLife, Inc. v. Fin. Stability Oversight Council*, 865 F.3d 661 (D.C. Cir. 2017).

"[J]udicial documents are subject to a presumptive right of public access, whether on common law or First Amendment grounds." *Gov't of United States Virgin Islands v. JPMorgan Chase Bank, N.A.*, 807 F. Supp. 3d 301, 307 (S.D.N.Y. 2025) (quoting *United States v. HSBC Bank USA, N.A.*, 863 F.3d 125, 134 (2d Cir. 2017)). "To qualify as a judicial document[,] the materials at issue must be relevant to the performance of the judicial function and useful in the judicial process." *Id.* (quoting *Giuffre v. Maxwell*, 146 F.4th 165, 176 (2d Cir. 2025)). The determination of whether a document is or is not judicial "is a binary decision made as of the time of the document's filing." *Id.* (quoting *Giuffre*, 146 F.4th at 176, 178). Accordingly, "[a]ll that matters in identifying motion materials as judicial documents 'relevant to the performance of the judicial function' is that they 'would reasonably have the tendency to influence a district court's ruling on a motion,' even if that motion is later mooted, including by settlement." *Id.* at 307-08 (quoting *Giuffre*, 146 F.4th at 178 (alteration in original)).

In *Newsday LLC v. Cnty. of Nassau*, 730 F.3d 156, 163-64 (2d Cir. 2013), the Second Circuit said:

> The Supreme Court has held that the First Amendment presumptive right of access applies to all criminal trials. *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 580, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980). We have extended that principle and held that the First Amendment right applies "to civil trials and to their related proceedings and records." *N.Y. Civil Liberties Union v. N.Y.C. Transit Auth. ("NYCTA")*, 684 F.3d 286, 298 (2d Cir.2012). In so holding, we have noted that the First Amendment "does not distinguish between criminal and civil proceedings," but rather "protects the public against the government's arbitrary interference with access to important information." *Id.* (internal quotation marks omitted). Based on this logic, we have held that the First Amendment right applies, among other things, to summary judgment motions and documents relied upon in adjudicating them, *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 124 (2d Cir. 2006), pretrial motions and written documents submitted in connection with them, *In re New York Times Co.*, 828 F.2d 110, 114 (2d Cir. 1987), and docket sheets, *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 93 (2d Cir. 2004).

The Memorandum Order leaves little doubt that there should be full public access to the Proposed TAC and the Subject Exhibits. The Court expressly cited the Proposed TAC's

paragraphs 189 through 198, including allegations within the redacted portion, when describing the new liability theories NYT sought to add. Memorandum Order at 3. The Subject Exhibits likewise were selected and filed by NYT to support the Cross-Motion. Whether the Court discussed each exhibit by name is not dispositive; Second Circuit precedent rejects assigning judicial status or weight based solely on the extent of a court's express citation to a filing. *Giuffre*, 146 F.4th at 179, 181-82.

The fact that the Proposed TAC was never accepted as the operative pleading does not change the analysis. It was a proposed pleading submitted for judicial consideration and approval, and the Court acted on the request to file it. Moreover, pleadings occupy a central place in the judicial process because they define the claims and relief a litigant asks a court to adjudicate. *See Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 139-41 (2d Cir. 2016). The Proposed TAC and the materials offered to justify its filing therefore are judicial documents.

## III. THE PRESUMPTION OF PUBLIC ACCESS IS ENTITLED TO SUBSTANTIAL WEIGHT

Once a document is classified as judicial, the Court determines the weight of the common-law presumption by considering the role the material played in the exercise of Article III power and its value to those monitoring the federal courts. *United States v. Amodeo*, 71 F.3d 1044, 1049-50 (2d Cir. 1995). The Proposed TAC warrants a strong presumption of public access because it set out the new claims and factual allegations NYT asked the Court for leave to add. *See Bernstein*, 814 F.3d at 142-43 (the presumption is strong where a pleading is highly relevant to Article III power and materially assists public understanding). The right of public access applies to documents that "have historically been open to the press and general public" and where "public access [to those documents] plays a significant positive role in the functioning of the particular

process in question." *Id.* at 141 (quoting *Lugosch v. Pyramid Co.*, 435 F.3d 110, 120 (2d Cir. 2006) (alteration in original)).

A "second approach considers the extent to which the judicial documents are derived from or are a necessary corollary of the capacity to attend the relevant proceedings." *Id.* (quoting *Lugosch*, 435 F.3d at 120). "If either test is satisfied, the First Amendment right of public access attaches, and, at the third step, continued 'sealing of the documents may be justified only with specific, on-the-record findings that sealing is necessary to preserve higher values and only if the sealing order is narrowly tailored to achieve that aim.'" *Gov't of United States Virgin Islands*, 807 F. Supp. 3d at 308 (quoting *Lugosch*, 435 F.3d at 124).

As *Lugosch III* explained:

> A court's conclusion that a qualified First Amendment right of access to certain judicial documents exists does not end the inquiry. "[D]ocuments may be sealed if specific, on the record findings are made demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *In re New York Times Co*., 828 F.2d at 116 (internal quotation marks omitted). "Broad and general findings by the trial court, however, are not sufficient to justify closure." *Id.*

*Lugosch III,* 435 F.3d at 120.

In a case of this importance, it is hard to conjure any claim of confidentiality that could plausibly implicate values higher than the First Amendment, other than, perhaps, attorney/client privilege or truly private personal information. *See Bernstein*, 814 F.3d at 144-45. But even then, "at the second step the court must determine the weight of the presumption of public access by assessing the role that the 'material at issue [plays] in the exercise of the Article III judicial power and the resultant value of such information to those monitoring the federal courts.'" *Gov't of United States Virgin Islands*, 807 F. Supp. 3d at 308 (quoting *United States v. Amodeo*, 71 F.3d 1044, 1049 (2d. Cir. 1995) (alteration in original)). Then, "after determining the weight of the

presumption of access, the court must balance competing considerations against [disclosure]." *Id.* (quoting *Lugosch*, 435 F.3d at 120 (alteration in original)).

The Subject Exhibits and Proposed TAC redactions, at a minimum, require a substantial presumption of public access. In *Brown*, the Second Circuit held that materials submitted in connection with non-dispositive motions, including discovery and in limine motions, were entitled to a *strong* presumption of public access because they called upon the court to exercise judicial power. 929 F.3d at 49-50, 53. The same reasoning applies with particular force here: the Subject Exhibits were offered to support a substantive proposed amendment seeking leave to add new liability theories based on extensive discovery. The presumptive right of access to civil proceedings and their records, including pretrial motions and documents submitted in connection with them, is recognized by the Second Circuit. *Newsday LLC*, 730 F.3d at 163-64; *In re New York Times Co.*, 828 F.2d 110, 114 (2d Cir. 1987). Such access enables the public to evaluate the claims advanced, the evidence offered, and the fairness and integrity of the Court's resolution. *See Newsday*, 730 F.3d at 166-67.

**A. <u>The Presumption Is Not Overcome Here</u>**

The First Amendment right of access "is stronger and can only be overcome under more stringent circumstances than the common law presumption[.]" *United States v. Erie Cnty., N.Y.*, 763 F.3d 235 (2d Cir. 2014). Thus, in all cases where the First Amendment right of access applies, the common law right does too. *See Newsday LLC*, 730 F.3d at 164 n.9 ("Because in all cases where the First Amendment applies the common law right applies a fortiori, we need not address the common law right.").

The Second Circuit has explained why the default is to favor public access to documents filed in the record of a case:

> The presumption of access is based on the need for federal courts, although independent—indeed, particularly because they are independent—to have a measure of accountability and for the public to have confidence in the administration of justice. Federal courts exercise powers under Article III that impact upon virtually all citizens, but judges, once nominated and confirmed, serve for life unless impeached through a process that is politically and practically inconvenient to invoke. Although courts have a number of internal checks, such as appellate review by multi-judge tribunals, professional and public monitoring is an essential feature of democratic control. Monitoring both provides judges with critical views of their work and deters arbitrary judicial behavior. Without monitoring, moreover, the public could have no confidence in the conscientiousness, reasonableness, or honesty of judicial proceedings. Such monitoring is not possible without access to testimony and documents that are used in the performance of Article III functions.

*United States v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995).

Generally, courts have broadly applied the presumption of access to pre-trial motion papers, including the documents that the parties rely upon to support their respective positions. *See Newsday*, 730 F.3d at 163-64 (citing *In re New York Times Co.*, 828 F.2d at 114). Motion papers and supporting exhibits are without question "judicial documents." They are also clearly the types of documents that are traditionally available to the press and general public, and that are necessary corollaries of the capacity to attend the relevant proceedings.

The materials available to Bloomberg INDG do not disclose document-specific findings explaining why the redacted allegations and each of the fifteen Subject Exhibits must remain sealed in full. Levy Decl. ¶¶ 3, 9, 12. That absence is consequential. Broad or conclusory assertions, such as those offered by OpenAI in its letter motion to seal, cannot overcome either right of access; the Court must make particularized findings and consider each document individually. *Lugosch*, 435 F.3d at 120; *Brown*, 929 F.3d at 47-48, 53.

Nor does a confidentiality designation made during discovery answer the sealing question. A protective order governs disclosure among litigants during discovery; it does not determine public access rights after a party chooses to file material to obtain judicial relief. *Lugosch*, 435 F.3d at 125-26. The parties cannot, by agreement or designation, displace the Court's obligation to apply the constitutional and common-law standards to judicial documents.

**B. <u>Legitimate Privacy/Privilege Concerns May Be Protected</u>**

Bloomberg INDG recognizes that legitimate privacy interests may justify limited protection. Personal identifiers should be handled in accordance with Fed. R. Civ. P. 5.2, and truly sensitive nonparty information or bona fide trade secrets that have no independent bearing on a decision may warrant targeted redaction upon a sufficient evidentiary showing. But those interests do not justify concealing entire exhibits or complete paragraphs where narrower redactions can protect the specific information at risk. Significantly, some of what might otherwise be considered trade secrets may be relevant to a Court's decision on the infringement issue. For example, how AI derives its information may implicate copyright issues. To understand how the Court may treat a certain issue could also implicate how the technology works. Confidentiality may not be used as both a sword and a shield, meaning if the technology is important to a court determination, the public has a right of access to it.

Likewise, it does not appear from the record that any specific finding was ever made by the Court that the redactions in the Proposed TAC, or the sealing of the Subject Exhibits, was essential, let alone that this was "narrowly tailored" to assure that the public's right of access to filed documents is protected to the fullest extent possible. The appropriate remedy is to direct public filing of the Proposed TAC, the corresponding redline and the Subject Exhibits. If NYT, Microsoft or another party contends that any discrete information must remain protected, it should be required to submit a narrowly tailored proposed redaction and a declaration establishing,

passage by passage, the higher value or countervailing interest at stake, the concrete harm that disclosure would cause and why a less restrictive alternative is inadequate.

This procedure respects legitimate confidentiality interests without allowing the exception to swallow the rule. It also permits the Court to conduct the individualized review required by *Brown* and to make any findings required by *Lugosch*. Because the Court's ruling is already public and the parties' merits litigation can proceed independently, prompt unsealing will advance public understanding without disrupting the underlying action.

Accordingly, Bloomberg INDG's motion to intervene, and to then un-redact and unseal the subject documents, should be granted. Its motion to intervene in the sealing motions on the summary judgment motions should be granted as well.

## CONCLUSION

Bloomberg INDG respectfully requests that its motion be granted.

Dated: New York, New York
September 29, 2026

Respectfully submitted,
GEORGE LLP

By: s/Jeffrey A. Mitchell
Jeffrey A. Mitchell
Edward T. Hagan
Carnegie Hall Tower
152 West 57th Street, 28th Floor
New York, New York 10019
Telephone: (212) 413-2600
Facsimile: (212) 413-2629
jmitchell@georgellp.com
ehagan@georgellp.com

*Attorneys for Bloomberg Industry Group, Inc.*

**CERTIFICATION OF COMPLIANCE**

I hereby certify that this memorandum of law complies with the word-count limitation of 8,750 words. According to the word-processing system used to prepare this document, the text contains 4,480 words, excluding the parts exempted by the local rules and individual practices.

Dated: September 29, 2026
New York, New York

s/Jeffrey A. Mitchell
Jeffrey A. Mitchell