**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **IN RE:**<br>**OPENAI, INC., COPYRIGHT INFRINGEMENT LITIGATION**<br><br>This Document Relates To:<br>Case No. 1:23-cv-08292-SHS-OTW<br>Case No. 1:23-cv-10211-SHS-OTW | **ECF CASE**<br><br>1:25-MD-03143-SHS/OTW |

**CLASS PLAINTIFFS' NOTICE OF NONOPPOSITION**

The premise of Defendants' motion is that one of the papers cited by Class Plaintiffs' expert, *Generative AI Floods and Dilutes the Market for Books* ("Generative AI Paper"), was "funded by [Class Plaintiffs'] counsel." Dkt. 2046 at 1. That premise is incorrect. The attached declarations of the Generative AI Paper's two principal authors confirm that the funding did not come from Susman Godfrey or any other counsel for Class Plaintiffs. *See* Declaration of Dr. Paramveer Dhillon ¶¶ 3-6 ("Dhillon Decl."); Declaration of Dr. Tuhin Chakrabarty ¶¶ 3-6 ("Chakrabarty Decl.").

Susman Godfrey did retain Dr. Dhillon as an expert in both this Action and *In re Mosaic LLM Litigation*, Case No. 3:24-cv-01451-CRB (N.D. Cal.). Susman Godfrey also retained Dr. Chakrabarty for work in the *Mosaic* litigation. Plaintiffs' counsel compensated Dr. Dhillon for his work in this Action and the *Mosaic* action, and also compensated Dr. Chakrabarty's institution for his work in the *Mosaic* litigation. Plaintiffs disclosed both Dr. Dhillon and Dr. Chakrabarty as experts under the protective order in both cases.[1] As leading experts in their field, it is no surprise

[1] Dr. Chakrabarty was disclosed as an expert under the protective order in both the *Mosaic* litigation and this Action. He was, however, retained only in the *Mosaic* litigation and his institution received no compensation for work in this Action.

that Plaintiffs would contact them or that their litigation work would overlap with the subject matter of their academic research and the Generative AI Paper. But Susman Godfrey did not fund the Generative AI paper, nor did it provide edits or comments to the paper.

Defendants assert that Plaintiffs have been "[u]nable to muster any evidence of harm after years of discovery." Dkt. 2046 at 1. This is also incorrect. The Generative AI Paper aside, a mountain of evidence exists that substantiates the impact of Defendants' conduct on the market for Plaintiffs' works. This includes OpenAI's then-Policy Director acknowledging that OpenAI's was "creating systems that substitute for the labor of [] people," including "fiction authors . . . on Amazon"; empirical studies and data confirming the explosion of AI generated books; and Microsoft's internal predictions of a "doom loop" that would result from its end product that "threatens the economic foundations of its essential suppliers" (i.e., human authors). *See, e.g.,* Dkt. 1848 (Class Plaintiffs' MSJ) at 1-15; Dkt. 1988 (Class Plaintiffs' Statement of Undisputed Facts) ¶ 749; *id.* at ¶¶ 765-67 ("doom loop"); *id.* at ¶¶ 706-774; *id.* at ¶¶ 841-57. The Generative AI Paper is, at most, cumulative evidence in a record rife with testimony and documents that validate Plaintiffs' claims of factor-four market harm.

The relief that Defendants seek here is that Plaintiffs will not rely on the Generative AI Paper and will withdraw the Supplemental Report of Michael Lasinski discussing the paper. Plaintiffs' service of the Supplemental Report and reliance on the Generative AI Paper was proper. But because the Generative AI Paper is cumulative of other evidence already in the record, and in light of Defendants' concern with a testifying expert relying on a report served after the rebuttal report deadline, Plaintiffs will withdraw their reliance on the Generative AI Paper and do not oppose the requested relief.

Dated: October 2, 2026

Respectfully submitted,

*/s/ Justin A. Nelson*

Justin A. Nelson (*pro hac vice*)
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, TX 77002
Tel.: 713-651-9366
jnelson@susmangodfrey.com

*Interim Lead Counsel for Class Plaintiffs*