**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

IN RE OPENAI, INC., COPYRIGHT INFRINGEMENT LITIGATION

This document relates to:

No. 1:23-cv-08292 (SHS) (OTW)
No. 1:23-cv-10211 (SHS) (OTW)
No. 1:25-cv-03482 (SHS) (OTW)

Case No. 25-MD-03143-SHS/OTW

Hon. Sidney H. Stein

**REDACTED—PUBLIC VERSION**

# CLASS PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO MICROSOFT'S MOTION FOR SUMMARY JUDGMENT

# TABLE OF CONTENTS

INTRODUCTION ..... 1

FACTUAL BACKGROUND ..... 5

I. Microsoft Trailed Google In the Race to Develop AI Technology ..... 5

II. The Microsoft-OpenAI Partnership ..... 7

A. Microsoft Partnered With OpenAI to Race Ahead of Google ..... 7

B. Microsoft Formed a Strategic Partnership To Support OpenAI's Commercial Products [redacted] ..... 7

C. The Joint Development and Collaboration Agreements ..... 9

D. [redacted] ..... 9

III. [redacted] ..... 10

A. [redacted] ..... 10

B. [redacted] ..... 13

C. [redacted] ..... 13

IV. Microsoft Benefitted Financially From Its Copyright Infringement ..... 15

V. Microsoft and OpenAI Exploited Plaintiffs' Works to Train the At-Issue LLMs to Displace Human Authors ..... 16

VI. [redacted] ..... 17

VII. Microsoft Now Attempts to Change Its Course By Disavowing Piracy ..... 18

LEGAL STANDARD ..... 19

I. Summary Judgment ..... 19

II. Copyright Law ..... 19

A. Direct Infringement ..... 19

B. Vicarious Infringement ..... 20

C. Fair Use ..... 20

ARGUMENT ..... 21

I. Microsoft Does Not Dispute Any Element of Direct Infringement ..... 23

II. [redacted] ..... 23

A. Factor One: [redacted] ..... 24

1. [redacted] ..... 24

2. [redacted] ..... 26

3. Microsoft Cannot Borrow OpenAI's Allegedly Lawful Purpose to Justify Its Distribution of Plaintiffs' Works ..... 27

B. Factors Two and Three: Plaintiffs' Copyrighted Works Are at the Core of Copyright Protection and [redacted] ..... 30

C. Factor Four: [redacted] ..... 30

III. [redacted] ..... 33

A. Factor One: [redacted] ..... 34

B. Factor Two and Three Favor Plaintiffs ..... 37

C. Factor Four: Microsoft's Conduct Harms the Market for Plaintiffs' Copyrighted Works ..... 37

IV. Copying and Distributing Plaintiffs' Works to Assist LLM Training Is Not Fair Use ........ 38

V. Microsoft Is Vicariously Liable for OpenAI's Infringement........ 39

VI. Microsoft Is Liable for Contributory Infringement ........ 40

CONCLUSION........ 40

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*A&M Recs., Inc. v. Napster, Inc.*,
239 F.3d 1004 (9th Cir. 2001) .......... 30, 38

*Am. Geophys. Union v. Texaco Inc.*,
60 F.3d 913 (2d Cir. 1994) .......... 28, 29, 38

*Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*,
598 U.S. 508 (2023) .......... 3, 20, 21, 24

*Arista Records, Inc. v. MP3Board, Inc.*,
2002 WL 1997918 (S.D.N.Y. Aug. 29, 2002) .......... 32

*Arista Recs., LLC v. Doe 3*,
604 F.3d 110 (2d Cir. 2010) .......... 19, 20

*Arista Recs. LLC v. Usenet.com, Inc.*,
633 F. Supp. 2d 124 (S.D.N.Y. 2009) .......... 20

*Bartz v. Anthropic PBC*,
787 F. Supp. 3d 1007 (N.D. Cal. 2025) .......... 38

*Basic Books, Inc. v. Kinko's Graphics Corp.*,
758 F. Supp. 1522 (S.D.N.Y. 1991) .......... 28, 29, 36

*Bird v. Microsoft*,
1:25-cv-05282 (S.D.N.Y.) .......... 18

*BMG Music v. Gonzalez*,
430 F.3d 888 (7th Cir. 2005) .......... 38

*Campbell v. Acuff-Rose Music Inc.*,
510 U.S. 569 (1994) .......... 24, 30

*EMI Christian Music Grp., Inc. v. MP3tunes, LLC*,
844 F.3d 79 (2d Cir. 2016) .......... 20, 39

*Fin Guar. Ins. Co. v. Putnam Advisory Co.*,
12 Civ. 7372 (AT), 2020 WL 264146 (S.D.N.Y. Jan. 17, 2020) .......... 40

*Fox News Network, LLC v. TVEyes, Inc.*,
883 F.3d 169 (2d Cir. 2018) .......... 28

*Griffin v. Sheeran*,
351 F. Supp. 3d 492 (S.D.N.Y. 2019) .......... 19

*Hachette Book Grp., Inc. v. Internet Archive*,
115 F.4th 163 (2d Cir. 2024) ........ *passim*

*Hachette Book Grp., Inc. v. Internet Archive*,
664 F. Supp. 3d 370 (S.D.N.Y. 2023), aff'd, 115 F.4th 163 (2d Cir. 2024) ........ 19, 32, 33

*In re Crude Oil Commodity Litig.*,
No. 06 Civ. 6677, 2007 WL 2589482 (S.D.N.Y. Sept. 8, 2007) ........ 40

*In re Frontier Commc'ns Corp.*,
658 B.R. 277 (Bankr. S.D.N.Y. 2024) ........ 20, 39

*Infinity Broad. Corp. v. Kirkwood*,
150 F.3d 104 (2d Cir. 1998) ........ 24, 29, 31

*Jorgensen v. Epic/Sony Recs.*,
351 F.3d 46 (2d Cir. 2003) ........ 19

*Kadrey v. Meta Platforms, Inc.*,
788 F. Supp. 3d 1026 (N.D. Cal. 2025) ........ 25, 38

*L.A. News Serv. v. Reuters Television Int'l*,
149 F.3d 987 (9th Cir. 1998) ........ 29

*L.A. News Serv. v. Tullo*,
973 F.2d 791 (9th Cir. 1992) ........ 29, 36

*Manon v. Pons*,
131 F. Supp. 3d 219 (S.D.N.Y. 2015) ........ 34

*O'Neil v. Ratajkowski*,
563 F. Supp. 3d 112 (S.D.N.Y. 2021) ........ 20

*Princeton Univ. Press v. Mich. Document Servs., Inc.*,
99 F.3d 1381 (6th Cir. 1997) ........ 29, 36

*Thomson Reuters v. Ross Intel.*,
2026 WL 2932557 (3d Cir. Sept. 29, 2026) ........ 4, 6

*UMG Recordings, Inc. v. MP3.Com, Inc.*,
92 F. Supp. 2d 349 (S.D.N.Y. 2000) ........ 24

*Williams v. Crichton*,
84 F.3d 581 (2d Cir. 1996) ........ 19

**Statutes**

17 U.S.C. ........ 19

17 U.S.C. § 106(3) ........ 32

17 U.S.C. § 107 ........ 21, 24

17 U.S.C. § 107(4) .......... 31

17 U.S.C. § 501(b) .......... 20

**Rules**

Fed. R. Civ. P. 30(b)(6).......... 26

## INTRODUCTION

From Lord Byron to the Milky Way, Microsoft's motion for summary judgment focuses on everything except record evidence. Microsoft Br. at 1, 7, 32. Once Microsoft's infringing conduct is set out in full, it's clear why Microsoft ignores the facts and spins this case into a battle between "literary pursuits and scientific innovation" that is as fanciful as Lord Byron's *Don Juan*. Microsoft Br. at 32.

All told, Plaintiffs' claims against Microsoft are in no way "narrow." Microsoft Br. at 9. Microsoft is directly liable for copyright infringement because it distributed troves of copyrighted works to OpenAI in exchange for [redacted]. Moreover, Microsoft is vicariously liable for OpenAI's own infringement. [redacted].

Microsoft turned to infringement because it was racing to commercialize AI technology. Before Microsoft partnered with OpenAI, [redacted]. SUF¶618. [redacted] ASUF¶21; Nelson Decl. Ex. 166 at –444-45.

For Microsoft, catching up meant cutting corners. [redacted] but nevertheless agreed to join forces through a commercial partnership. As the parties collaborated, Microsoft learned more about OpenAI's use of copyrighted materials. [redacted]

[redacted]. SUF¶694. [redacted]. SUF¶691.

As its partnership with OpenAI progressed, Microsoft continued taking shortcuts. [redacted] SUF¶¶775,589 (emphasis added). [redacted].

Through its partnership with OpenAI, Microsoft profited from models that mine and mimic the protected expression in Plaintiffs' books. These same models harm Plaintiffs, and other authors, by threatening their livelihood. Because of products like Microsoft [redacted] SUF¶743. [redacted]

Microsoft's Director of Applied Science, Dr. Brent Hecht, [redacted] SUF¶765 [redacted] SUF¶765. [redacted] SUF¶754 (emphasis added).

Building bigger and faster LLMs did not—and does not—have to come at Plaintiffs' expense. The robust AI licensing market shows that technology companies *can* compensate authors while developing new commercial products. Microsoft understands as much. [redacted]. And Microsoft now

represents to shareholders that it does not train "on data from domains listed in the Office of the United States Trade Representative (USTR) Notorious Markets for Counterfeiting and Piracy List," including LibGen. SUF¶663 Microsoft's own CEO, Satya Nadella, [redacted] SUF¶384; ASUF¶45.

[redacted]. Instead, Microsoft banks on a single mistaken argument, contending that *any* infringing conduct related to LLM training is fair use as matter of law. Microsoft Br. at 9–32. Microsoft's sweeping position fails for several reasons.

*First*, copying and distributing copyrighted works in exchange for valuable consideration is different from LLM training. Microsoft ignores this use altogether, but when Microsoft's conduct is analyzed separately, as *Andy Warhol Found. for the Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508, 533 (2023) requires, its commercial horse trades do not amount to a fair use.

*Second*, record evidence shows that [redacted] Microsoft Br. at 23.

*Third*, even if the arguments above are not sufficient to deny summary judgment, Microsoft still fails to carry its burden; as a matter of law, training an LLM on copyrighted materials is not fair use.

*Fourth*, Microsoft is vicariously liable for OpenAI's infringements. [redacted]. With its reputation on the line, and enormous profits at stake, Microsoft chose to press ahead and cash in on tainted technology. Here, too, Microsoft's fair use defense fails.

*Fifth*, summary judgment on Plaintiffs' contributory infringement claim is improper. Microsoft has not adequately briefed this issue, but even if it had, its fair use defense would fail here as well.

* * *

Microsoft moves for summary judgment without acknowledging, let alone defending, its own conduct. With its witnesses plagued by mass amnesia—conveniently unable to recall Defendants' documented reliance on LibGen—Microsoft runs from the record. ASUF¶¶23–24. Rather than reckon with material facts, Microsoft accuses Plaintiffs of asserting their rights in order to "prevent technological progress" and "extract rents on innovation." Motion at 32. "Under [Defendant]'s framing, this case *appears* to concern the future of AI legal technology. But appearances can be deceiving. In truth, this is no more than an ordinary copyright case." *Thomson Reuters v. Ross Intel.*, 2026 WL 2932557 at *1 (3d Cir. Sept. 29, 2026) (emphasis in original). [redacted] SUF¶384; ASUF¶45. Nadella is right. Settled law does not allow Microsoft to use Plaintiffs' works without permission. Accordingly, this Court should reject Microsoft's fair use defense and deny its motion for summary judgment.

## FACTUAL BACKGROUND

Plaintiffs are bestselling and award-winning book authors,[1] and The Authors Guild, which is the oldest and largest professional organization for published writers in the United States. Plaintiffs' Asserted Works[2] span a variety of styles, subject matters, sales volumes, and genres, including literary fiction, genre fiction, drama, history, and biography.[3]

Microsoft is a technology company that develops and sells software, cloud computing services, and artificial intelligence products. SUF¶121. In July 2019, Microsoft formed a strategic partnership with OpenAI. SUF¶122. Since then, [redacted] SUF¶125.

### I. Microsoft Trailed Google In the Race to Develop AI Technology

Before Microsoft partnered with OpenAI, Google had emerged as the world's leading artificial intelligence company. SUF¶612. [redacted] ASUF¶6. [redacted] SUF¶615. Google built on its momentum in 2017, publishing "Attention Is All You Need," a seminal research paper announcing the transformer architecture used by OpenAI years later. SUF¶616. [redacted] SUF¶628.

---

[1] Several of the named Plaintiffs are entities through which authors conduct professional activities, called loan-out companies. SUF¶1.

[2] The 194 Asserted Works ("Works") are listed in Appendix A to Plaintiffs' Statement of Undisputed Material Facts. Dkt. 1987-1.

[3] In addition to Plaintiffs' Statement of Undisputed Material Facts ("SUF"), filed alongside Plaintiffs' motion for partial summary judgment, Plaintiffs have filed with this opposition brief a statement of additional undisputed material facts ("ASUF").

[redacted] SUF¶617. [redacted] *Id.* By 2019, [redacted]. SUF¶618.

[redacted]

ASUF¶21.

[redacted] SUF¶631. [redacted] *Id.* [redacted] SUF¶618.

[redacted] Nelson Decl. Ex 217(b) at –345; SUF¶629. [redacted]

[redacted] [SUF¶619. [redacted]. SUF¶620.

## II. The Microsoft-OpenAI Partnership

### A. Microsoft Partnered With OpenAI to Race Ahead of Google

Fixated on Google's lead, and aware of its own deficiencies, Microsoft targeted OpenAI in search of commercial success.

[redacted] SUF¶622. [redacted] Nelson Decl. Ex. 166 at –445.

[redacted] Nelson Decl. Ex. 166 at –444-45. [redacted] *Id.*

### B. Microsoft Formed a Strategic Partnership To Support OpenAI's Commercial Products [redacted]

Microsoft raced to partner with OpenAI [redacted]

[redacted] SUF¶335. [redacted]

[redacted] Nelson Decl. Ex. 810 at –432. [redacted] SUF¶336. [redacted] SUF¶336; Nelson Decl. Ex. 702. [redacted] SUF¶188, 336.

[redacted]. SUF¶190. [redacted] SUF¶190, 337. [redacted] SUF¶337.

[redacted]. SUF¶656. [redacted]. ASUF¶19. [redacted] SUF ¶ 338.

[redacted]. ASUF¶20. [redacted]

[redacted] ASUF¶ 22. [redacted] Nelson Decl. Ex. 166 at –445. [redacted]. ASUF¶58.

### C. The Joint Development and Collaboration Agreements

In July 2019—just months after the demonstration—Microsoft and OpenAI formally agreed to exchange information, share data, and jointly develop new technology. [redacted]. *See* SUF¶¶637, 646, 649.

[redacted] SUF¶¶635, 637, 638. [redacted] SUF¶652.

[redacted]

[redacted] SUF¶645. [redacted] SUF¶ 647, 681; 683.

[redacted] SUF¶689. [redacted] SUF¶690.

[redacted] SUF¶696; Nelson Decl. Ex. 59(a) at 292:2–17, 296:22–297:2. [redacted]. SUF¶691; Nelson Decl. Ex. 28 at 246:4–247:6, 251:2–13.

[redacted]

[redacted] SUF ¶775. [redacted] SUF¶¶589, 590.

[redacted]. SUF¶¶75, 573–596, 597–606. [redacted]. SUF¶¶937, 939, 940.

[redacted]

[redacted] SUF¶¶580, 583. [redacted] SUF¶580. [redacted] SUF¶¶ 580, 584; ASUF¶25. [redacted] SUF¶580

[redacted]. SUF¶940. [redacted]. ASUF¶26. [redacted] ASUF¶27. [redacted]. SUF¶594.

[redacted] Nelson Decl. Ex. 143 at –215. [redacted] ASUF¶¶33–34. [redacted] SUF¶587. [redacted] SUF¶588.

[redacted] SUF¶592.

[redacted] Nelson Decl. Ex. 173 at –441. [redacted] SUF¶591.

[redacted] ASUF¶29. [redacted] ASUF¶¶29–30. [redacted] ASUF¶30.

[redacted] SUF¶593; ASUF¶28. [redacted] *See* Nelson Decl. Ex. 143 at –215; SUF¶940. [redacted] SUF¶605; Nelson Decl. Ex. 12 at 38:3–38:9.

[redacted] ASUF¶36. [redacted] SUF¶594. [redacted] ASUF¶37

[redacted] SUF¶¶604–606.

[redacted] SUF¶¶ 599–600. [redacted]. ASUF¶¶41–42.

[redacted] SUF¶604.

[redacted] SUF¶604. [redacted] SUF¶939. [redacted] ASUF¶43.

[redacted] SUF¶936.

[redacted] SUF¶573. [redacted]

[redacted]. SUF¶¶573–574; ¶¶517–519.

[redacted] SUF¶575. [redacted] SUF¶577; *see* Nelson Decl. Ex. 777 at -380; Nelson Decl. Ex. 882.

[redacted]. *Supra* at 11–13.

[redacted] SUF¶653. [redacted] *Supra* at 9. [redacted] SUF¶658.

[redacted]. SUF¶659. [redacted] SUF¶659. [redacted] SUF¶659. [redacted],

[redacted]. SUF¶660.

## IV. Microsoft Benefitted Financially From Its Copyright Infringement

[redacted] Microsoft profited from the development of LLMs in several ways. Nelson Decl. Ex. 40 at 210:11-211:2

[redacted]. SUF¶701. [redacted]. SUF¶702.

[redacted]. SUF¶703. [redacted]. SUF¶704.

[redacted] Nelson Decl. Ex. 167 at -407; SUF¶705. [redacted] Nelson Decl. Ex. 167 at -407; SUF¶705.

[redacted]. ASUF¶21; SUF¶705. But Microsoft did not need to infringe

to get ahead. Nelson Decl. Ex. 160 at -906; SUF¶705. [redacted]. Class Br. at 30–31; SUF¶¶495–516. [redacted] SUF¶622; Nelson Decl. Ex. 166 at -445.

## V. Microsoft and OpenAI Exploited Plaintiffs' Works to Train the At-Issue LLMs to Displace Human Authors

[redacted]. SUF¶622; *see* Class Br. at 10–16. [redacted] SUF¶743. [redacted] SUF¶741. [redacted] SUF¶742.

[redacted] SUF¶765. [redacted]

[redacted] SUF¶765. [redacted]. SUF¶767. [redacted] SUF¶754.

[redacted] SUF¶851; SUF¶849-54. [redacted]. SUF¶853. [redacted]. SUF¶852. Researchers have confirmed this surge, finding that the number of new book titles appearing each month on Amazon nearly tripled between 2022 and late 2025. SUF¶855.

Beyond flooding the market, books with AI-generated content have achieved financial success. [redacted] SUF¶854.

[redacted] [redacted]

[redacted] SUF¶¶775-814. [redacted] SUF¶813. [redacted]

[redacted] ASUF¶¶47–49. [redacted] ASUF¶50. [redacted]. SUF¶¶801-805.

Microsoft is not alone. Across the industry, AI companies are paying copyright holders for licenses or for past use of copyrighted data in AI development. SUF¶¶825-36.

## VII. Microsoft Now Attempts to Change Its Course By Disavowing Piracy

After catching up by taking shortcuts, Microsoft now rebukes the shadow libraries [redacted]. Microsoft's 2024 and 2025 proxy statements both state that "we do not train on data from domains listed in the Office of the United States Trade Representative Notorious Markets for Counterfeiting and Piracy list[,]" which has long included LibGen.[4] SUF¶663 [redacted] ASUF¶45 (emphasis added). [redacted] Nelson Decl. Ex. 40 at 302:8–303:1.

[4] It appears that Microsoft has engaged in its own separate mass piracy, which is the subject of a different case (currently stayed) in this MDL, *Bird v. Microsoft*, 1:25-cv-05282 (S.D.N.Y.). Although Class Plaintiffs have not received direct discovery, it appears that Microsoft possessed [redacted] ASUF¶¶54–55. [redacted]. ASUF¶¶55–56.

## LEGAL STANDARD

### I. Summary Judgment

Courts grant summary judgment "'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Griffin v. Sheeran*, 351 F. Supp. 3d 492, 496 (S.D.N.Y. 2019) (quoting Fed. R. Civ. P. 56(a)). Microsoft "bears the initial burden of informing the district court of the basis of its motion and identifying the matter that it believes demonstrates the absence of a genuine issue of material fact." *Hachette Book Grp., Inc. v. Internet Archive*, 664 F. Supp. 3d 370, 378 (S.D.N.Y. 2023) (internal citations and quotations omitted), aff'd, 115 F.4th 163 (2d Cir. 2024). "If the moving party meets its burden, the nonmoving party must produce evidence in the record and may not rely simply on conclusory statements or on contentions that the affidavits supporting the motion are not credible." *Id.* (quotations omitted). "In deciding a motion for summary judgment, the district court 'must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor.'" *Griffin*, 351 F. Supp. 3d at 496 (quoting *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d Cir. 1998)).

### II. Copyright Law

#### A. Direct Infringement

Establishing a *prima facie* case of direct copyright infringement requires "(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original." *Williams v. Crichton*, 84 F.3d 581, 587 (2d Cir. 1996). "A certificate of registration from the United States Register of Copyrights constitutes prima facie evidence of the valid ownership of a copyright." *Jorgensen v. Epic/Sony Recs.*, 351 F.3d 46, 51 (2d Cir. 2003). "'[C]opying' is shorthand for the infringing of any of the copyright owner's five exclusive rights described in [17 U.S.C.] § 106," *Arista Recs., LLC v. Doe 3*, 604 F.3d 110, 117 (2d Cir. 2010), including the right of reproduction

and distribution. *Id.* "The legal or beneficial owner of an exclusive right under a copyright is entitled . . . to institute an action for any infringement of that particular right committed while he or she is the owner of it." 17 U.S.C. § 501(b).

### B. Vicarious Infringement

Vicarious infringement occurs where a defendant (1) "had the right and ability to supervise" the infringing conduct and (2) a "direct financial interest" in the same. *EMI Christian Music Grp., Inc. v. MP3tunes, LLC,* 844 F.3d 79, 99 (2d Cir. 2016) (internal quotations omitted). "[A] defendant need not have 'formal power to control' where a direct infringer 'depend[s] upon [the defendant] for direction.' . . . Rather, '[t]he ability to block infringers' access to a particular environment for any reason whatsoever is evidence of the right and ability to supervise.'" *Arista Recs. LLC v. Usenet.com, Inc.*, 633 F. Supp. 2d 124, 157 (S.D.N.Y. 2009) (cleaned up). Where "a defendant has the right to block access, such right must be 'exercised to its fullest extent' to 'escape imposition of vicarious liability.'" *In re Frontier Commc'ns Corp.,* 658 B.R. 277, 294 (Bankr. S.D.N.Y. 2024) (quoting *A&M Recs., Inc. v. Napster, Inc.*, 239 F.3d 1004, 1023 (9th Cir. 2001)).

### C. Fair Use

Microsoft does not argue that Plaintiffs have failed to establish a *prima facie* case of direct or vicarious copyright infringement and instead moves for summary judgment based on fair use. Microsoft Br. at 9–32. Because fair use is an affirmative defense, Microsoft bears the burden of proof. *See O'Neil v. Ratajkowski*, 563 F. Supp. 3d 112, 128 (S.D.N.Y. 2021). At summary judgment, Microsoft's fair use defense fails where "there is an absence of evidence to support an essential element of [Microsoft's] case." *Id.* (quotation omitted).

Under *Warhol*, courts assess fair use with respect to each specific "use" of a copyrighted work because "[t]he same copying may be fair when used for one purpose but not another." *Warhol*, 598 U.S. at 533. To determine whether a particular use is fair, courts consider four factors:

(1) "the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes"; (2) "the nature of the copyrighted work"; (3) "the amount and substantiality of the portion used in relation to the copyrighted work as a whole"; and (4) "the effect of the use upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107. The fourth factor is "undoubtedly the single most important element of fair use." *Hachette Book Grp., Inc. v. Internet Archive*, 115 F.4th 163, 189 (2d Cir. 2024) (internal quotations omitted).

## ARGUMENT

Although *Warhol* instructs courts to consider each use separately, 598 U.S. at 533, Microsoft seeks summary judgment "on all claims" for a single reason, contending that infringing conduct related to LLM training is fair use as a matter of law. Microsoft Br. at 9-33. By resting on this argument—and nothing more—Microsoft asks this Court to hold that a mere affiliation with OpenAI, which trained LLMs, immunizes Microsoft from liability for all copyright infringement that is even loosely related to that partnership. Because Microsoft has not established its affirmative defense beyond any genuine dispute of material fact, summary judgment is improper.

Plaintiffs set forth the reasons the Court should deny summary judgment in six parts.

*Part I* states only that, as an initial matter, Microsoft has failed to dispute any element of Plaintiffs' *prima facie* case of copyright infringement against Microsoft.

*Part II* applies copyright law's four "fair use" factors to [redacted]

[redacted]

*Part III* analyzes these same “fair use” factors as they apply to a [redacted]

*Part IV* incorporates by reference Plaintiffs’ brief in opposition to OpenAI’s motion for summary judgment, and the arguments therein, which state an independent reason to deny summary judgment—LLM training is not a fair use as a matter of law. *See* Class OAI Opp. Br. at § II.

*Part V* explains that a reasonable juror could find Microsoft vicariously liable for OpenAI’s direct infringements. [redacted]. Fair use does not exculpate Microsoft here either.

*Part VI* addresses Plaintiffs’ contributory infringement claim, which Microsoft mentions only in a two-sentence footnote. Microsoft has not adequately briefed this issue, but even if it had, its fair use defense would fail here as well.

## I. Microsoft Does Not Dispute Any Element of Direct Infringement

As an initial matter, Microsoft does not dispute any of the elements of Plaintiffs' direct copyright infringement claims against Microsoft. *See generally* Microsoft Br. at 9-33. Nor can it. Plaintiffs have established a *prima facie* case of copyright infringement [redacted]. *See* Class Br. at 38–39. And Plaintiffs have established a *prima facie* case of copyright infringement [redacted] *Id.*

[redacted]

[redacted] *See supra* at 11–13.

[redacted]. *Id.* at 11. [redacted]. *Id.* [redacted] *Id.* at 12. [redacted] *Id.* [redacted]. *Id.* [redacted] *Id.* [redacted] *Id.* at 11. [redacted]. *Id.* at 14–15.

Instead of adhering to *Warhol*'s command, Microsoft ignores whether this particular use—[redacted]—is considered fair. It is easy to understand. All four factors weigh against horse trading as fair use.

### A. Factor One: [redacted]

The first fair use factor is "the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes." 17 U.S.C. § 107. Under this factor, courts consider whether a defendant had a sufficient "independent justification" for a use, *Warhol*, 598 U.S. at 547; whether and the degree to which a use is "transformative"—that is, whether it "adds something new, with a further purpose or different character, altering the first with new expression, meaning or message," *Campbell v. Acuff-Rose Music Inc.*, 510 U.S. 569, 579 (1994); and "the commercial nature of the use," *Warhol*, 598 U.S. at 532–33.

A commercial use weighs more strongly against fair use if it is likely to substitute for the original. *Id.* at 531–32. A defendant's ability to identify "a particularly compelling justification" is necessary where "an original work and copying use share the same or highly similar purposes" or "where wide dissemination of a secondary work would otherwise run the risk of substitution for the original[.]" *Id.* at 532, 547.

[redacted]

Distributing full, unmodified copies of copyrighted works is not transformative. As the Second Circuit has explained, quoting Judge Leval's "frequently-cited article on fair use": "a use of copyrighted material that 'merely repackages or republishes the original' is unlikely to be deemed a fair use." *Infinity Broad. Corp. v. Kirkwood*, 150 F.3d 104, 108 (2d Cir. 1998) (quoting Leval, Toward a Fair Use Standard, 103 Harv. L. Rev. 1105, 1111 (1990)); *accord UMG Recordings, Inc. v. MP3.Com, Inc.*, 92 F. Supp. 2d 349, 351 (S.D.N.Y. 2000) ("Here, although

defendant recites that My.MP3.com provides a transformative 'space shift' by which subscribers can enjoy the sound recordings contained on their CDs without lugging around the physical discs themselves, this is simply another way of saying that the unauthorized copies are being retransmitted in another medium—an insufficient basis for any legitimate claim of transformation."). Far from transformative, [redacted]. *See supra* at 11–13.

[redacted], Microsoft cites an out-of-context sentence from *Kadrey v. Meta Platforms, Inc.*, 788 F. Supp. 3d 1026 (N.D. Cal. 2025), to argue that [redacted] "a reasonable first step towards training an LLM." *See* Microsoft Br. at 23. But *Kadrey*'s reference to a "reasonable first step towards training" described the *Defendant's* "download of LibGen to see whether the books in the database made for good training data." *Kadrey*, 788 F. Supp. 3d at 1048. And Judge Chhabria in *Kadrey* first found that "all of the downloads the plaintiffs identify had the ultimate purpose of LLM training." *Id.*

[redacted]. ASUF¶¶28–32. [redacted] ASUF¶29.

Microsoft's reliance on *Kadrey* is also misplaced [redacted]

[redacted]

[redacted]

Nelson Decl. Ex. 173 at –440. [redacted] Nelson Decl. Ex 1 at 69:11-24. [redacted] ASUF¶34. [redacted] SUF¶591.

[redacted]. For this reason, the purpose and character of Microsoft's use weighs heavily against fair use.

[redacted] Microsoft Br. at 23–24.

Far from undisputed, Microsoft's mischaracterization is contradicted by its own Rule 30(b)(6) representatives. [redacted]

[redacted].

Nelson Decl. Ex. 874 at 60:20-60:24. [redacted] ASUF¶32. [redacted] Nelson Decl. Ex. 875 at 128:6–15 (emphasis added).

[redacted] Nelson Decl. Ex. 867 at 32:9–18.

[redacted]. Microsoft Br. at 23. [redacted] Microsoft argues that "training an LLM is fair use as a matter of law," Microsoft Br. at 9–32—and that training LLMs is highly transformative, Microsoft Br. at 10–16—but Microsoft has failed to establish that its own uses of Plaintiffs' Works were for the purpose of training LLMs. For this reason, Microsoft's motion for summary judgment must be denied.

**3. Microsoft Cannot Borrow OpenAI's Allegedly Lawful Purpose to Justify Its Distribution of Plaintiffs' Works**

As stated above, [redacted]. But even if the purpose was training, [redacted], Microsoft still could not prevail on a fair use defense by latching on to the conduct of OpenAI, a third-party recipient.

As courts applying factor one have held, the conduct of third-party recipients of copyrighted works is irrelevant to the *distributor*'s fair use defense. In *Am. Geophys. Union v. Texaco Inc.*, 60 F.3d 913 (2d Cir. 1994), the Second Circuit explained that a company could not make unlimited photocopies of copyrighted articles, even if all the copies were ultimately in pursuit of "research." *Id.* at 924. Under such a rule, "the concept of a 'transformative' use would be extended beyond recognition." *Id. Texaco* is unequivocal: "Texaco cannot gain fair use insulation for [its employee's] archival photocopying of articles (or books) simply because such copying is done by a company doing research." *Id.* As the *Texaco* court explained: "It would be equally extravagant for a newspaper to contend that because its business is 'news reporting' it may line the shelves of its reporters with photocopies of books on journalism." *Id.*; *see also Fox News Network, LLC v. TVEyes, Inc.*, 883 F.3d 169, 178 n.4 (2d Cir. 2018) ("[t]hat a secondary use can facilitate research does not itself support a finding that the secondary use is transformative.").

Similarly, a series of "copyshop" cases have also held that the uses by third-party recipients of copyrighted works do not exculpate the defendant-distributor's infringing conduct. In *Basic Books, Inc. v. Kinko's Graphics Corp.*, 758 F. Supp. 1522 (S.D.N.Y. 1991), plaintiffs alleged that Kinko's copied excerpts of their books without permission, assembled them into course packets, and distributed those course packets to college students in exchange for money. 758 F. Supp. at 1526. Kinko's argued that the downstream use of the course packets was educational—not

commercial—but the court focused on the use of the defendant-distributor: "The use of the Kinko's packets, in the hands of the students, was no doubt educational. However, the use in the hands of Kinko's employees is commercial." *Id.* at 1531.

Similarly, in *Princeton Univ. Press v. Mich. Document Servs., Inc.*, 99 F.3d 1381, 1389 (6th Cir. 1997), the Sixth Circuit rejected a fair-use defense where a commercial copyshop defendant relied on the educational uses of books by its student-customers. As the *Princeton Univ. Press* court reasoned: "the fact is that the copying complained of here was performed on a profit-making basis by a commercial enterprise. And '[t]he courts have . . . properly rejected attempts by for-profit users to stand in the shoes of their customers making nonprofit or noncommercial uses.'" *Id.* at 1389 (quoting Patry, Fair Use in Copyright Law, at 420 n. 34); *see also Infinity*, 150 F.3d at 112 ("[L]arge-scale photocopying, even for the statutorily-approved purpose of educational use, can still infringe.").

And in *L.A. News Serv. v. Tullo*, 973 F.2d 791 (9th Cir. 1992), the Ninth Circuit rejected the same downstream-use justification. The court held that, in direct copyright infringement cases involving a violation of the distribution right, "the ultimate use to which the customer puts the tape is irrelevant, as is the use [defendant's] customers make of the tapes [defendant] sells." *Id.* at 797 (citing *Sony Corp. of Am. v. Universal City Studios*, 464 U.S. 417 (1984)); *accord L.A. News Serv. v. Reuters Television Int'l*, 149 F.3d 987, 994 (9th Cir. 1998) ("[T]he question of whether defendants' copying and transmission of the works constitutes fair use is distinct from whether their subscribers' broadcasts of the works are fair use.").

Like the copyists in *Texaco*, *Basic Books*, *Princeton Univ. Press*, and *L.A. News. Serv.*, Microsoft is a commercial enterprise [redacted]. In those cases, the copies distributed by the defendants had an ultimate,

downstream, educational purpose, and yet each court focused on a different use—specifically, the act of a commercial enterprise copying from copyrighted works and distributing those works for value without authorization. [redacted] the commercial purpose and character of the use weighs heavily against Microsoft.

### B. Factors Two and Three: Plaintiffs' Copyrighted Works Are at the Core of Copyright Protection and [redacted]

The second fair use factor "calls for recognition that some works are closer to the core of intended copyright protection than others, with the consequence that fair use is more difficult to establish when the former works are copied." *Campbell*, 510 U.S. at 586. "[B]oth fiction and nonfiction books," like those authored by Plaintiffs, "contain original expression close to the core of intended copyright protection." *Internet Archive*, 115 F.4th at 187 (internal quotation omitted). This factor thus weighs against fair use.

Under the third factor, courts consider whether "the amount and substantiality of the portion used in relation to the copyrighted work as a whole . . . are reasonable in relation to the purpose of the copying." *Campbell*, 510 U.S. at 586. "[C]opying an entire work militates against a finding of fair use," which is what Microsoft did here. *Napster*, 239 F.3d at 1016 (citation omitted).

Microsoft offers no argument whatsoever regarding the application of factors two and three to its [redacted] Microsoft concedes, as it must, that these factors weigh against fair use.

### C. Factor Four: [redacted]

The fourth and final factor is the effect of the copying on the "potential market for or value of the copyrighted work." 17 U.S.C. § 107(4). This factor encompasses "not only the market harm caused by the particular actions of the alleged infringer, but also the market harm that would result from unrestricted and widespread conduct of the same sort." *Internet Archive*, 115 F.4th at 189 (quoting *TVEyes*, 883 F.3d at 179). In other words, this factor considers both the actual market harm caused by the defendant's actions and the potential market harm that would occur if everyone engaged in the same conduct. Microsoft bears the burden to show its distribution did *not* harm Plaintiffs. *Infinity*, 150 F.3d at 110 ("[Defendant] bears the burden of showing that his use does not cause this type of harm to Infinity's interests").

Microsoft has offered no evidence of any kind to carry its burden. Microsoft's discussion of market harm focuses entirely on training. Microsoft Br. at 25-33. But Plaintiffs' direct infringement claims against Microsoft are not about Microsoft training its own LLMs. [redacted] *See* ASUF¶¶29–32.

Microsoft's failure to offer evidence on this factor is unsurprising. As Plaintiffs' expert Michael Lasinski has documented, "[e]xamples of common book licensing categories include . . . digital and print-on-demand distribution rights." Lasinski Decl. Ex. B ¶43. Copyright owners, absent Court-sanctioned distribution of their copyrighted works, have benefited from these rights by reaching agreements, for example, (a) to distribute works as ebooks and audiobooks (*id.* ¶¶ 27-28, 35, 38-39, 167, 174, 308) and (b) to distribute works in connection with Amazon Alexa (*id.* ¶¶ 133-136).

If distributing unlicensed books for free as part of any commercial relationship or third-party use were widespread, it would destroy the market for Plaintiffs' works. Just as the Second

Circuit explained in *Internet Archive*: "Publishers' library eBook licensing market is both reasonable and developed." 115 F.4th at 192. Plaintiffs, not Microsoft, possess the right to distribute their Works in exchange for value. *See* 17 U.S.C. § 106(3). But just like in *Internet Archive*, Microsoft has "usurped a market that properly belongs to the copyright holder." *Internet Archive*, 115 F. 4th at 192. (citing *TVEyes*, 883 F.3d at 180); *Arista Records, Inc. v. MP3Board, Inc.*, 2002 WL 1997918, at *13 (S.D.N.Y. Aug. 29, 2002) (such conduct "on [its] face could harm the market for the original works.").

Moreover, [redacted] *Supra* at 17–18. [redacted] SUF¶¶ 775-790. [redacted] SUF¶777. [redacted]. Nelson Decl. Ex. 204 at -007; ASUF¶¶47-49. [redacted] SUF¶791. [redacted] SUF¶801.

None of Microsoft's agreements covered Plaintiffs' Works and none of Microsoft's payments went to Plaintiffs. As the evidence shows, the explanation for this is simple. [redacted]

[redacted] ASUF¶49. [redacted] ASUF¶50. [redacted] As the *Internet Archive* court held, even absent "empirical data" regarding the impact of such widespread use, courts may "rely on" the simple "logical inference[]" that widespread free acquisition of the works would harm the market for the works. *Internet Archive*, 115 F.4th at 193.

For these reasons, the fourth factor weighs against Microsoft's fair use defense [redacted], and Microsoft has not met its burden to establish otherwise.

[redacted]

For many of the same reasons, and some additional ones, Microsoft has also failed to establish its fair use defense with respect to its [redacted]

As Class Plaintiffs establish in their motion for summary judgment, [redacted]. Class Br. at 7-8. [redacted] ASUF¶42;SUF¶604. [redacted]

[redacted] *See* SUF¶¶604–605.

[redacted] Microsoft Br. at 18 (emphasis added). [redacted] Microsoft may not raise it for the first time in its reply. *See Manon v. Pons*, 131 F. Supp. 3d 219, 238 (S.D.N.Y. 2015) (declining to address summary judgment argument raised for first time in reply based on "standard rule" that "'arguments may not be made for the first time in a reply brief'") (quoting *Simpson v. City of New York*, 793 F.3d 259, 264 (2d Cir. 2015)).

Regardless, Microsoft cannot defend [redacted] on fair use grounds.

**A. Factor One:** [redacted]

[redacted] *Supra at* 14.

Here, [redacted], Microsoft cannot defend its conduct by claiming that LLM training is fair use and therefore any infringement in pursuit of that purpose is fair use *ipso facto*. [redacted]

[redacted]

Nelson Decl. Ex. 867 at 81:1-23; ASUF¶43.

[redacted], Microsoft cannot now claim that the purpose and character of the [redacted] was to "help pro bono attorneys" or "assist scientists researching new compounds," which are the lofty purposes Microsoft ascribes to artificial intelligence generally. Microsoft Br. at 3.

[redacted] ASUF¶41. [redacted]

[redacted]. SUF¶594, 604–606; ASUF¶¶38–39. [redacted] ASUF¶39. [redacted]

[redacted]

Nelson Decl. Ex. 875 at 148:7-14.

[redacted] Microsoft's conduct fits squarely within the copyshop cases *Basic Books*, *Princeton Univ. Press*, and *L.A. News. Serv. See supra* at 30–31. Just like the defendants in those cases, Microsoft cannot rely on the fair use alleged by the recipient of the copyrighted works because "'[t]he courts have . . . properly rejected attempts by for-profit users to stand in the shoes of their customers making nonprofit or noncommercial uses.'" *Princeton Univ.*, 99 F.3d at 1389 (quoting Patry, Fair Use in Copyright Law, at 420 n. 34).

Microsoft's position is even weaker than the defenses rejected in the copyshops cases. In those cases, the copyshop defendants at least understood that they were distributing copies of copyrighted works to "university professors and students" for the ultimate purpose of education. *See, e.g.*, *Basic Books*, 758 F. Supp. at 1528. Here, however, [redacted] Nelson Decl. Ex. 867 at 81:22-23;

SUF¶594. [redacted] the first factor weighs against fair use.

### B. Factor Two and Three Favor Plaintiffs

As above, these factors weigh in favor of Plaintiffs.

### C. Factor Four: Microsoft's Conduct Harms the Market for Plaintiffs' Copyrighted Works

Microsoft has not even attempted to meet its burden with regard to the market harm to Plaintiffs' resulting from [redacted] Nor can it. [redacted] *Supra* at 31. It requires no more than a simple "logical inference[]" to conclude that widespread distribution among technology companies of this kind would harm the market for Plaintiffs' Works. *Internet Archive*, 115 F.4th at 193. [redacted]

Sticking its head above the parapet, Microsoft attempts to defend OpenAI's piracy with an argument OpenAI itself does not advance—that [redacted] are simply an issue relevant to "bad faith." Microsoft Br. at 19. Microsoft is wrong.

*First*, [redacted].

The long-line of piracy cases confirms this. The Ninth Circuit held peer-to-peer downloaders liable

because they "got for free" what they would "otherwise have to buy," not because they downloaded in bad faith. *Napster,* 239 F.3d at 1015; *BMG Music v. Gonzalez*, 430 F.3d 888, 890 (7th Cir. 2005). Even outside the piracy context, the Texaco researchers infringed because their copying displaced subscription and licensing fees, not because the researchers had any malintent. *Texaco*, 60 F.3d at 931. The facts here tell the same story: as in *Bartz v. Anthropic PBC*, "the initial copies [of Plaintiffs' works] were pirated to create a central, general-purpose library, as a substitute for paid copies to do the same thing." *Bartz v. Anthropic PBC*, 787 F. Supp. 3d 1007, 1026 (N.D. Cal. 2025).

*Second,* even if it were a matter of "bad faith," *Kadrey*—Microsoft's sole citation—is inapposite. Even the *Kadrey* court recognized that evidence that a defendant's piracy "benefitted those who created the libraries and thus supported and thus supported and perpetuated their unauthorized copying and distribution of copyrighted works" would constitute copyright infringement "[i]n the vast majority of cases." 788 F. Supp. 3d at 1047. *Kadrey* found such evidence lacking in its record, but the Court can make no similar finding here. As Plaintiffs' Expert explains, piracy annually costs authors hundreds of millions of dollars in lost sales. *See* Seeley Decl. Ex. A at ¶¶53–62. And Defendants' actions, in particular, have the additional effect of harming authors by "normaliz[ing] piracy" throughout the AI industry and thus "encourag[ing] others to use shadow libraries." *Id*. at ¶63. Indeed, as the shadow library Anna's Archive recently boasted: "shadow-libraries were dying" until "[v]irtually all major companies building LLMs contacted us to train on our data." *Id*. at ¶¶65, 63–76.

## IV. Copying and Distributing Plaintiffs' Works to Assist LLM Training Is Not Fair Use

As stated above, record evidence contradicts [redacted] Microsoft Opening Br. at 23. Even if the reasons stated *supra* were not sufficient to deny summary judgment, Microsoft still fails to

carry its burden because training an LLM on copyrighted materials is not fair use as matter of law, as explained in Class Plaintiffs' Memorandum of Law in Opposition to OpenAI's Motion for Summary Judgment, and any contrary finding could not be made on this record. *See generally* Class OAI Opp. Br. Accordingly, this Court should reject Microsoft's only argument in support of its Motion. Microsoft Br. at 9–33.

## V. Microsoft Is Vicariously Liable for OpenAI's Infringement

Summary judgment in favor of Microsoft is improper for a separate reason. In addition to its direct liability for copying and distributing Plaintiffs' Works, Microsoft is also vicariously liable for OpenAI's direct infringements. *See* Class Br. at 40. Microsoft does not dispute that Plaintiffs have established a *prima facie* claim for vicarious infringement. Nor can it.

*First*, [redacted]. *EMI Christian*, 844 F.3d at 99. [redacted]. *Supra* at 10–11; Class Br. at 40. [redacted] *Id.* at 10–11. [redacted]. *Id.*; *see In re Frontier*, 658 B.R. at 293 (defendant must exercise its control rights to "fullest extent" to avoid vicarious liability).

*Second*, Microsoft had a "direct financial interest" in OpenAI's infringing actions. *EMI Christian*, 844 F.3d at 99. [redacted]. *Supra* at 15–16; Class Br. at 40; *see also EMI Christian*, 844 F.3d at 99 (increase in subscribers/customers due to infringement qualifies as "obvious and direct financial

interest."). [redacted]. *Supra* at 15–16.

*Finally*, Microsoft's fair use defense fails here too for the reasons stated in Plaintiffs' Opposition to OpenAI's Motion for Summary Judgment.

## VI. Microsoft Is Liable for Contributory Infringement

In a footnote, Microsoft asserts that a "finding that LLM training is fair use" would "independently foreclose" Plaintiffs' contributory infringement claim. Microsoft Br. at n.2. Microsoft does not explain why.

Summary judgment is improper for three reasons. First, Microsoft's assertion—buried in a two-sentence footnote—is inadequately raised and therefore waived. *See Fin Guar. Ins. Co. v. Putnam Advisory Co.*, 12 Civ. 7372 (AT), 2020 WL 264146, at *2 (S.D.N.Y. Jan. 17, 2020) ("The Court did not expressly address this argument in its summary judgment order because courts routinely decline[] to consider arguments mentioned only in a footnote on the grounds that those arguments are inadequately raised.") (internal quotation marks and citation omitted); *In re Crude Oil Commodity Litig.*, No. 06 Civ. 6677, 2007 WL 2589482, at *3 (S.D.N.Y. Sept. 8, 2007) ("Arguments which appear in footnotes are generally deemed to have been waived."). Second, even if the Court considers Microsoft's *ipse dixit*, its fair use defense fails for the reasons stated *supra* and in Class Plaintiffs' Opposition to OpenAI's motion for summary judgment. Third, Plaintiffs' contributory infringement claim depends on disputed factual questions. *See* Class Br. at n.4; Class Pls. Opp. Br. to Microsoft's Motion for Judgment on the Pleadings.

## CONCLUSION

For the reasons set forth above, and in Plaintiffs' Opening Motion, this Court should deny Microsoft's motion for summary judgment and grant Plaintiffs' motion for partial summary judgment.

Respectfully submitted,

/s/ Justin Nelson
Justin A. Nelson
SUSMAN GODFREY L.L.P.
1000 Louisiana Street, Suite 5100
Houston, TX 77002
Telephone: 713.651.9366
jnelson@susmangodfrey.com
***Interim Lead Counsel for Class Plaintiffs***

## CERTIFICATE OF SERVICE

I hereby certify that on October 23, 2026, I caused the foregoing document to be electronically filed with the Clerk of the United States District Court for the Southern District of New York using the CM/ECF system, which shall send electronic notification to all counsel of record.

*/s/ Tyler Alabanza-Behard*
Tyler Alabanza-Behard

**CERTIFICATE OF WORD COUNT**

In accordance with Local Civil Rule 7.1(c) and the Court's Order at Dkt. 1664, 25-md-3143, I certify that the foregoing Memorandum of Law is 12,029 words, including footnotes but exclusive of the caption page, table of contents, table of authorities, certificates and signature block. The basis of my knowledge is the word count feature of the word-processing system used to prepare this memorandum.

*/s/ Tyler Alabanza-Behard*
Tyler Alabanza-Behard