UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE: OPENAI, INC., COPYRIGHT INFRINGEMENT LITIGATION<br><br>THIS DOCUMENT RELATES TO: ALL CASES | 25-md-3143 (SHS) (OTW)<br><br>Hon. Sidney H. Stein<br>Hon. Ona T. Wang |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF SAG-AFTRA, AFM, WGAW, AND WGAE FOR LEAVE TO FILE BRIEF AS AMICI CURIAE IN SUPPORT OF PLAINTIFFS**

## PRELIMINARY STATEMENT

Proposed amici curiae Screen Actors Guild-American Federation of Television and Radio Artists ("SAG-AFTRA"), American Federation of Musicians of the United States and Canada ("AFM"), Writers Guild of America, West, Inc. ("WGAW"), and Writers Guild of America East, Inc. ("WGAE") (collectively, the "Unions") respectfully move for leave to file the accompanying brief in support of Plaintiffs in connection with the parties' cross-motions for summary judgment. The Court has invited such motions, provided they are filed with the proposed brief and the brief does not exceed 6,000 words. Dkt. 1663; *see* Dkt. 2049 (extending the deadline to October 30, 2026). The Unions' proposed brief, attached as Exhibit A to the motion, complies with both requirements.

Collectively, the Unions represent over 250,000 writers, performers, journalists, musicians, and other media and entertainment professionals whose work

is embodied in the news, films, television programs, and recordings used to train generative AI models. The Unions are not parties here.

The Unions offer the Court something the parties cannot: the perspective of the working people behind many of the works that are being used to train generative artificial intelligence (AI) systems, and decades of experience negotiating how those works are licensed as new technologies emerge, including for AI training. The Unions, individually or in combination, have previously filed *amicus briefs* on copyright questions affecting their members, including in the Supreme Court, the Second Circuit, and the Third Circuit to provide their unique perspectives.

**INTEREST OF THE PROPOSED AMICI**

SAG-AFTRA is the world's largest labor union representing working media artists, with more than 160,000 actors, announcers, broadcasters, journalists, recording artists, singers, stunt performers, voiceover artists, and other media professionals. AFM represents more than 80,000 professional musicians who perform in orchestras, bands, and theaters and make music for films, television, commercials, and sound recordings. WGAW and WGAE (collectively, “WGA”) together represent approximately 18,000 professional writers of film, television, news, documentaries, and online media.

The Unions bargain collectively with the companies that own and license the works at issue in AI training disputes. Under those agreements, the Unions' members share in the revenue from licensing their work to different markets through residuals, royalties, and contributions to their pension and health plans. Both SAG-AFTRA and

WGA have negotiated terms with employers addressing AI, including terms addressing the licensing of covered work for AI training. How this Court resolves the fair use question will directly affect those terms and the many entertainment and media professionals whose livelihoods depend on them.

## I. The Court Has Discretion to Accept an Amicus Brief That Offers a Perspective Beyond the Parties'.

District courts have broad discretion to permit amicus participation. This Court has recognized that an amicus brief "should normally be allowed . . . when the *amicus* has an interest in some other case that may be affected by the decision in the present case . . . , or when the *amicus* has unique information or perspective that can help the court beyond the help that lawyers for the parties are able to provide." Dkt. 440 (quoting *In re Terrorist Attacks on Sept. 11, 2001*, No. 03-md-1570, 2022 WL 17326181, at *2 (S.D.N.Y. Nov. 29, 2022) (quoting *Ryan v. Commodity Futures Trading Comm'n*, 125 F.3d 1062, 1063 (7th Cir. 1997))). And here the Court has expressly invited amicus submissions on the summary judgment motions. Dkt. 1663. The Unions' brief satisfies both grounds.

## II. The Unions Offer a Perspective the Parties Cannot.

The parties are news publishers, book authors, and the companies that design, train, and sell the accused AI models. The Unions represent a much larger group whose work is also used to train those models: the performers, musicians, screenwriters, journalists, background actors, and many others across the news and

entertainment industries. Their perspective bears on the questions before the Court in three ways that the parties' briefs do not fully address.

*First*, the Unions can explain how licensing revenue reaches the people who create copyrighted works in entertainment and media. Creative employment is intermittent and project-based and the royalties, residuals (royalty-like payments), and benefit-plan contributions that flow from ongoing licensing of existing works help sustain the Unions' members between jobs, including impacting their qualification for health insurance. That human dimension of the fourth fair use factor, and of the public interest, is not something the parties are positioned to describe.

*Second*, the Unions have firsthand experience with how licensing markets for new technologies develop. When streaming emerged, the Unions bargained for the right to share in that new market across multiple negotiating cycles; streaming payments are now a key part of their members' compensation. The Unions are now doing the same with AI. SAG-AFTRA's and WGA's 2023 agreements with the Alliance of Motion Picture and Television Producers ("AMPTP"), which ended months-long strikes, addressed AI-generated material; their 2026 agreements include terms addressing the licensing of covered work to train generative AI systems. AFM's 2024 agreement with the AMPTP, which runs through mid-2027, also includes generative AI terms. That experience speaks directly to whether a market for AI training licenses is "likely to be developed," *Am. Geophysical Union v. Texaco Inc.*, 60 F.3d 913, 930 (2d Cir. 1994), and to Defendants' argument that licensing is unworkable.

*Third*, the Unions can describe harms that reach beyond the works and parties before the Court: the effects on performers, musicians, writers, and local journalists, among others, and on the public that depends on their work. The proposed brief draws on the summary judgment record, the Unions' bargaining experience, and independent research to describe those harms.

## III. The Court's Decision Will Affect Interests Beyond This Case.

The Unions are not parties to this case, but their members' work is embedded in the films, television programs, recordings, and news that AI developers use to train their models. A ruling that AI training is categorically fair use would reach all of that work, and more, and would undercut terms the Unions and the industry reached at the bargaining table. The Unions thus have a direct interest in how this decision will affect their members' work and the terms they have bargained over.

## IV. The Proposed Brief Is Timely, Concise, and Not Duplicative.

The motion is timely under the schedule the Court set. Dkt. 2049. The proposed brief is within the 6,000-word limit. Dkt. 1663. And it does not repeat the parties' arguments. Where the parties address an issue, such as the fair use decisions on which Defendants rely, or the relationship between training and a model's outputs, the brief notes that briefing and turns instead to the Unions' members. The brief will not delay the proceedings or require any change to the briefing schedule.

## CONCLUSION

For the foregoing reasons, the Unions respectfully request that the Court grant leave to file the proposed brief attached as Exhibit A to the motion.

Dated: October 29, 2026

Respectfully submitted,

/s/ *Danielle S. Van Lier*

Danielle S. Van Lier (CA SBN: 200435)
(*pro hac vice* pending, ECF No. 2116)
5632 Van Nuys Blvd., #2155
Sherman Oaks, CA 91401
(424) 265-5564
Danielle@VanLierLaw.com

*Counsel for Proposed Amici Curiae*

**CERTIFICATE OF COMPLIANCE**

Pursuant to Local Civil Rule 7.1(c), I certify that this memorandum of law contains 1129 words, excluding the caption, table of contents, table of authorities, signature block, and required certificates, as counted by the word-processing program used to prepare it.

Dated: October 29, 2026

/s/ *Danielle S. Van Lier*

Danielle S. Van Lier (CA SBN: 200435)
(*pro hac vice* pending, ECF No. 2116)
5632 Van Nuys Blvd., #2155
Sherman Oaks, CA 91401
(424) 265-5564
Danielle@VanLierLaw.com

*Counsel for Proposed Amici Curiae*