UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE:<br><br>OPENAI, INC.,<br>COPYRIGHT INFRINGEMENT LITIGATION<br><br>This Document Relates To:<br>*All Cases* | 25-md-3143 (SHS) (OTW) |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR LEAVE TO FILE A BRIEF AS *AMICI CURIAE* IN SUPPORT OF PLAINTIFFS' MOTIONS FOR SUMMARY JUDGMENT**

Pursuant to the Court's Order of August 27, 2026 (ECF 56), the Recording Industry Association of America, National Music Publishers Association, American Association of Independent Music, Songwriters of North America, Black Music Action Coalition, National Academy of Recording Arts & Sciences, Inc., American Society of Composers, Authors and Publishers, Broadcast Music, Inc., and Artist Rights Alliance move for leave to file a brief as *Amici Curiae*, attached as Exhibit A to the accompanying Notice of Motion, in support of Plaintiffs' Motions for Summary Judgment.

**INTERESTS OF AMICUS CURIAE**

*Amici curiae* ("*Amici*") represent the creators behind much of this country's most valuable music. *Amici* and their members have previously submitted comments to the U.S. Copyright Office on artificial intelligence ("AI") issues, and many are members of the Human Artistry Campaign. Many of *Amici's* members are also parties to lawsuits challenging the unauthorized copying of their copyrights to train artificial intelligence systems. *Amici* represent many diverse segments of the music industry in the United States, and their members own or



33265\004\7253448.v1

control the majority of music consumed in the United States. They are well positioned to address the legal issues and real-world impacts of training AI systems on copyrighted content.

The Recording Industry Association of America ("RIAA") is a 501(c)(6) nonprofit trade organization that supports and promotes the creative and financial vitality of recorded music and the people and companies that create it in the United States. RIAA's several hundred members -- ranging from major American music companies with global reach to artist-owned labels and small businesses -- make up this country's most vibrant and innovative music community. RIAA's members create, manufacture, and/or distribute sound recordings that comprise the majority of all legitimate recorded music consumption in the United States. They also own copyrights and/or other exclusive rights in sound recordings embodying the performances of some of the most popular and successful recording artists of all time. In support of its members, RIAA works to protect the intellectual property rights of artists and music labels.

The National Music Publishers Association ("NMPA") is a nonprofit trade association representing the United States music publishing and songwriting industry. Over the last one hundred years, NMPA has served as the leading voice representing American music publishers before Congress, in the courts, within the music, entertainment, and technology industries, and to the public. NMPA's membership includes publishers of all sizes, from major music publishers to independently owned and operated publishers, representing musical works of all genres. Taken together, compositions owned or controlled by NMPA's hundreds of members account for the vast majority of musical compositions licensed for commercial use in the U.S.

The American Association of Independent Music ("A2IM") is a not-for-profit organization that exists to support and strengthen the independent recorded music sector and the value of recorded music copyrights. Membership currently includes a broad coalition of

hundreds of independently owned American music labels. A2IM represents these small and medium-sized enterprises' interests in the marketplace, in the media, on Capitol Hill, and as part of the global music community. In doing so, it supports a key segment of America's creative class that represents America's diverse musical and cultural heritage. *Billboard* Magazine identified the independent music label sector as over 40% of the music industry's global recorded music revenue in 2020 based on copyright ownership.

Songwriters of North America ("SONA") is an organization formed by and for professional songwriters, advocating on their behalf before legislative bodies, administrative agencies, and courts. SONA is an open and diverse community that unites enthusiastic music creators and thoughtful business leaders to create a unified voice to protect the rights of songwriters and their artistic expression and compensation. SONA represented its members in the recent U.S. Copyright Office Listening Sessions and continues to advocate for and educate songwriters about AI developments.

Black Music Action Coalition ("BMAC") works to create a unified force of action focused on racial equity and justice within the music industry to improve communities and drive systemic change. BMAC advocates on behalf of artists, songwriters, producers, managers, agents, executives, and lawyers to create access, equity, and opportunity for artists and industry professionals. BMAC participated in the Copyright Office's Listening Sessions. In its ongoing fight for economic justice, AI is at the forefront of BMAC's agenda.

National Academy of Recording Arts & Sciences, Inc. (the "Academy") is a 501(c)(6) nonprofit membership organization representing thousands of recording artists, songwriters, producers, engineers, and other music professionals whose creative works are protected by copyright. The Academy's primary purposes include advancing the arts and sciences of

recording, recognizing outstanding creative achievement through the GRAMMY AWARDS® -- music's only peer-recognized accolade -- and advocating for the interests of recording artists, songwriters, studio professionals, and other music makers before national, state, and local policymakers. The Academy has a substantial interest in preserving the copyright protections upon which its members rely to create, license, and monetize their works, and in maintaining the integrity of the licensing markets that sustain the music industry. The Academy has been actively engaged in AI issues on behalf of its members through public advocacy, industry dialogue, and educational programming, and has a direct interest in ensuring that copyrighted musical works are not copied for commercial AI training purposes without authorization.

The American Society of Composers, Authors and Publishers ("ASCAP") is an unincorporated membership association of more than 1.1 million songwriters, composers, lyricists, and music publishers, who together have created and own the copyrights to more than 20 million musical works. Founded in 1914, ASCAP is the oldest performing rights organization in the United States. ASCAP's members depend on ASCAP to negotiate licenses with music users, track public performances, distribute royalties, and advocate on their behalf.

Broadcast Music, Inc. ("BMI") is one of the world's leading performing rights organizations, representing the public performance rights in over 25 million musical works created and owned by more than 1.5 million songwriters, composers, and music publishers. BMI ensures its affiliates get paid when their music is played publicly, works to advance their careers through performance, educational, and promotional opportunities, and advocates on their behalf to safeguard the value of their music.

Artists Right Alliance ("ARA") is a non-profit organization co-founded and run by dedicated artists that fights for the rights of working musicians in the modern music economy.

**ARGUMENT**

District courts have broad discretion to permit third parties to participate as *amicus curiae* in cases before them. *See Auto. Club of N.Y., Inc. v. Port Auth.*, 2011 U.S. Dist. LEXIS 135391, at *5 (S.D.N.Y. Nov. 22, 2011). *See also In re GLG Life Tech Corp. Sec. Litig.*, 287 F.R.D. 262, 265 (S.D.N.Y. 2012). Indeed, this Court invited third parties to move for leave to submit *amicus* briefs in its August 27, 2026 Order. As a general matter, courts in this district permit *amicus curiae* submissions that are relevant to issues presented by the cases before them. *See, e.g.*, *Neversink Gen Store v. Mowi USA, LLC*, 2021 U.S. Dist. LEXIS 258476 (S.D.N.Y. Feb. 9, 2021) (granting letter motion for leave to file *amicus* brief); *New York v. NSF*, 2025 LX 234186, at *19 (S.D.N.Y. June 30, 2025) (allowing participation where *amicus*' "perspective may be useful to the Court's consideration of this case").

More specifically, an *amicus* brief "should normally be allowed when … the *amicus* has an interest in some other case that may be affected by the decision in the present case … or when the *amicus* has unique information or perspective that can help the court" beyond the submissions of the parties. *Auto. Club of N.Y.*, 2011 U.S. Dist. LEXIS 135391, at *6 (citation omitted). Courts are also more likely to grant leave to an *amicus curiae* "in cases involving matters of public interest." *Andersen v. Leavitt*, 2007 U.S. Dist. LEXIS 59108, at *7 (E.D.N.Y. Aug. 13, 2007) (citation modified).

*Amici* are particularly well-situated to submit the attached brief for multiple reasons. First, *Amici* and their members collectively represent, promote and protect the copyrights of a huge portion of the U.S. music industry, including the bulk of recorded music and musical compositions consumed and licensed in the U.S. They are stewards for some of the most

artistically and commercially significant copyrights in America culture, in parallel with the authors and news organizations represented by the Plaintiffs in this case.

Second, *Amici* and their members have extensive specific experience with and an important perspective on many of the issues before the Court, including: the widespread proliferation of AI-generated music in traditional markets for music consumption and the manifest harms to those markets; the robust existing market for licensing music to train AI models and the threats that market faces from unauthorized training on copyrights; and the operational and economic feasibility of licensing copyrights on a mass basis to ensure that new technologies use copyrights in lawful ways that reward creators and support those technologies.

Third, *Amici*'s members are plaintiffs in multiple lawsuits challenging LLMs that train on copyrighted lyrics and music-generative AI models that train on copyrighted sound recordings. *See, e.g., Concord Music Group, Inc. et al. v. Anthropic PBC*, Civil Action No. 24-cv-03811-EKL (N.D. Cal.); *Concord Music Group, Inc. et al. v. Anthropic PBC,* Civil Action No. 5:26-cv-00880-EKL (N.D. Cal.); *Sony Music Entertainment et al. v. Uncharted Labs, Inc.*, Civil Action No. 1:24-cv-04777-AKH (S.D.N.Y.); *UMG Recordings, Inc., et al. v. Suno, Inc.*, Civil Action No. 1:24-cv-11611 (FDS) (D. Mass). Those cases focus on many of the same issues before the Court in the instant matter, including the specific purpose of training an AI model on particular types of copyrights; the market effects of training on copyrighted works; and more broadly, how the first and fourth fair use factors apply to the use of copyrighted materials in training AI models. A decision in this case may thus have a bearing on these parallel litigations.

Finally, the accompanying brief is appropriate given this dispute's relevance to matters of public interest relating to the protections afforded to artistic works and the risks to those protections posed by AI models that train on those works. *Amici* have provided *amicus* briefs in

many other cases involving technologies that infringe copyrights *en masse*, including other AI cases, and respectfully submit that their experience and perspective on the issues before the Court will prove useful and relevant.

## CONCLUSION

For the foregoing reasons, *Amici* respectfully request that this Court grant leave to file the accompanying *amicus* brief.

Dated: October 30, 2026

Respectfully submitted,

/s/ Jonathan Z. King
Jonathan Z. King
Cowan, Liebowitz & Latman, P.C.
114 West 47th Street
New York, New York 10036
(212) 790-9200

*Counsel for Amici Curiae*