**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE OPENAI, INC.,<br>COPYRIGHT INFRINGEMENT<br>LITIGATION<br><br>This Document Relates to:<br>*All Cases* | No.: 1:25-md-03143 (SHS) (OTW)<br><br>Hon. Sidney H. Stein |

**BRIEF OF REPRESENTATIVES JAMIE RASKIN, JERROLD NADLER, AND HENRY C. "HANK" JOHNSON, JR., AS AMICI CURIAE IN RESPONSE TO THE STATEMENT OF INTEREST OF THE UNITED STATES**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .......... ii

INTEREST OF AMICI CURIAE .......... 1

INTRODUCTION AND SUMMARY OF ARGUMENT .......... 2

ARGUMENT .......... 3

I. THE DOJ'S STATEMENT IMPROPERLY INTERJECTS NATIONAL SECURITY INTO A MATTER OF COPYRIGHT LAW .......... 3

II. THE STATEMENT OF INTEREST REFLECTS THE VIEWS OF A SINGLE AGENCY, OMITS THE PERSPECTIVE OF THE EXPERT BODY, AND UNDERSCORES THE DEGREE TO WHICH THE DOJ IS ACTING BEYOND ITS AUTHORITY .......... 6

III. THE STATEMENT'S PROPOSED POLICY CHANGE CONSTITUTES A SEISMIC SHIFT WELL OUTSIDE THE CONSTITUTIONALLY INTENDED AND CONGRESSIONALLY AUTHORIZED AMBIT OF THE DOJ AND IGNORES COPYRIGHT'S CRITICAL ROLE IN THE U.S. ECONOMY AND OUR NATION'S CULTURAL AND POLITICAL INFLUENCE .......... 8

CONCLUSION .......... 10

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Andrus v. Glover Constr. Co.*, 446 U.S. 608 (1980) ....................5

*Authors Guild v. Google, Inc.*, 804 F.3d 202 (2d Cir. 2015) ....................5

*Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204 (1988) ....................4

*Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569 (1994) ....................4

*Golan v. Holder*, 565 U.S. 302 (2012) ....................10

*Google LLC v. Oracle Am., Inc.*, 593 U.S. 1 (2021) ....................4

*Harper & Row, Publishers, Inc. v. Nation Enters.*, 471 U.S. 539 (1985) ....................5, 8, 9

*West Virginia v. EPA*, 597 U.S. 697 (2022) ....................4, 8

**Constitutional Provisions**

U.S. Const. art. I, § 8, cl. 8 ....................1, 8

**Statutes**

17 U.S.C. § 101 *et seq.* ....................1

17 U.S.C. § 106 ....................5

17 U.S.C. § 107 ....................3, 4

19 U.S.C. § 2242(a)(1) ....................10

**Court Filings**

Brief for the United States as Amicus Curiae in Support of Neither Party, *Dramatic Publ'g Co. v. Est. of Nelle Harper Lee*, No. 23-1309 (7th Cir. Apr. 15, 2025), ECF No. 35 ....................7

Brief for the United States of America as Amicus Curiae in Support of Appellee, *Atticus LLC v. Dramatic Publ'g Co.*, No. 23-1226 (2d Cir. Mar. 20, 2024), ECF No. 75 ....................7

Statement of Interest of the United States, *Duffy v. Yardi Sys., Inc.*, No. 2:23-cv-01391-RSL (W.D. Wash. Mar. 1, 2024), ECF No. 149 ....................7

Statement of Interest of the United States, *In re OpenAI, Inc. Copyright Infringement Litig.*, No. 1:25-md-03143 (S.D.N.Y. Sept. 1, 2026), ECF No. 1682 ....................1, 3, 4, 6, 10

Statement of Interest of the United States, *Louis v. SafeRent Sols., LLC*, No. 22cv10800-AK (D. Mass. Jan. 9, 2023), ECF No. 37 ....................7

Statement of Interest on Behalf of the U.S. Copyright Office, *I.C. ex rel. Solovsky v. Delta Galil USA*, No. 14-cv-7289 (GHW) (S.D.N.Y. July 5, 2016), ECF No. 101 ............7

**Other Authorities**

Evan Cooper, Stimson Ctr., *The Power of US Cultural Diplomacy* (Nov. 2025) ..........................10

Exec. Order No. 14,365, *Ensuring a National Policy Framework for Artificial Intelligence*, § 1, 90 Fed. Reg. 58,499 (Dec. 16, 2025) ......................................................9

The Federalist No. 43 (James Madison) ..........................................................................8

Jéssica Dutra & Robert Stoner, Secretariat, *Copyright Industries in the U.S. Economy: The 2024 Report* (Feb. 2025) (prepared for the Int'l Intell. Prop. All.).........................9, 10

Joseph S. Nye, Jr., *Soft Power: The Means to Success in World Politics* (2004)..........................10

Office of the U.S. Trade Representative, *2026 Special 301 Report* (Apr. 2026) ..........................10

Rules of the House of Representatives, 119th Cong., R. X, cl. 1(l)(14) (2025) .............................1

Sara Fischer & Kerry Flynn, *Scoop: DOJ's Copyright Filing Took Key Agencies by Surprise*, Axios (Sept. 19, 2026)...........................................................................6

*Too Big to Prosecute? Examining the AI Industry's Mass Ingestion of Copyrighted Works for AI Training: Hearing Before the Subcomm. on Crime & Counterterrorism of the S. Comm. on the Judiciary*, 119th Cong. (July 16, 2025)............9

U.S. Copyright Office, *Artificial Intelligence Study*, https://www.copyright.gov/policy/artificial-intelligence/index.html .................................6

U.S. Copyright Office, *Copyright and Artificial Intelligence, Part 3: Generative AI Training* (pre-publication version May 2025) ..................................................................6

## INTEREST OF AMICI CURIAE[1]

The Constitution vests copyright power with Congress. U.S. Const. art. I, § 8, cl. 8. Congress has expressed that authority in the Copyright Act. 17 U.S.C. § 101 *et seq*. Within the House of Representatives, the Committee on the Judiciary has jurisdiction over the Copyright Act, the Copyright Office, and the Department of Justice (the "DOJ"). The Committee exercises copyright jurisdiction through its Subcommittee on Courts, Intellectual Property, Artificial Intelligence, and the Internet (the "IP Subcommittee").[2] That exercise includes examination of current copyright practices and oversight of implementation of copyright laws passed by Congress.

Amici are three senior Members of that Committee. Representative Jamie Raskin is the Ranking Member of the House Judiciary Committee. Representative Jerrold Nadler is a former Chair of the House Judiciary Committee. Representative Henry C. "Hank" Johnson, Jr., is the Ranking Member and former Chair of the IP Subcommittee.

Amici have a direct institutional interest in how the Copyright Act is applied, and in ensuring that the balance Congress struck in that Act is maintained. The Statement of Interest of the United States (the "Statement" or "Stmt.") that was filed on September 1, 2026, in this litigation implicates both concerns.[3]

---

[1] No counsel for a party authored this brief in whole or in part, and no party or counsel for a party made a monetary contribution intended to fund its preparation or submission. No person other than Amici and their counsel made a monetary contribution to its preparation or submission.

[2] Rules of the House of Representatives, 119th Cong., R. X, cl. 1(l)(14) (2025).

[3] *See* Statement of Interest of the United States, *In re OpenAI, Inc. Copyright Infringement Litig.*, No. 1:25-md-03143 (S.D.N.Y. Sept. 1, 2026), ECF No. 1682.

## INTRODUCTION AND SUMMARY OF ARGUMENT

The DOJ has injected its views in this case in a manner that runs contrary to its standard practice under this Administration and prior Administrations, without input from the federal bodies that possess actual expertise in the subject at hand. The Statement is breathtaking in its scope. Rather than specifying any particular copyright claim or even type of claim that might be a national security concern, or for that matter any particular type of security threat, the Statement proposes what is in effect a blanket exemption that would, if adopted, preclude every copyright claim that might fall within the nearly unbounded ambit of "training LLMs." That is not a specific, tailored exception to copyright law. It's a bulldozer that would eliminate copyright protection with respect to AI training for all works in all circumstances.

Congress has not delegated to the DOJ, or to any other agency, the authority to assert even specific national security exceptions to the Copyright Act, much less wide-ranging exemptions. The DOJ has not engaged in formal (or even informal) rulemaking before arriving at its landscape-changing construction of copyright law. The agency's Statement of Interest is due no deference at all.

First, the Statement rests in significant part on the argument that the Court should ignore governing law. National security is not a fair use factor. Section 107 of the Copyright Act directs courts to weigh four factors, and national security is not among them. By asking the Court to weigh it anyway, both directly and by recasting it as a "public benefit" under the fourth factor, the Statement invites the Court to read a national security exception into the Copyright Act. The Supreme Court has declined to expand fair use before, and the DOJ's litigating position is not entitled to deference on whether to do so now.

Second, the Statement speaks for the DOJ leadership, not for the government as a whole. It appears to have been filed without consulting, or even notifying, the U.S. Copyright Office

(the "Copyright Office"), the federal body with primary expertise in this type of intellectual property. That departs from the DOJ's own prior practice, in copyright matters and beyond, under both the current and prior Administrations.

Third, the Statement ignores the purpose of the Copyright Clause and the Copyright Act by discounting the magnitude of what copyright does for the country. The core copyright industries contributed more than $2 trillion to the American economy in 2023 and employed millions of Americans, and American creative works are among the Nation's most powerful sources of influence abroad. The Framers and Congress secured those benefits by giving authors an economic stake in what they create. The Statement's premise that copyright is "not just (or even primarily) about protecting financial incentives for original authorship," Stmt. at 17, cannot be squared with this history.

## ARGUMENT

### I. THE DOJ'S STATEMENT IMPROPERLY INTERJECTS NATIONAL SECURITY INTO A MATTER OF COPYRIGHT LAW

The Statement warns that "[r]ules of law that make it significantly more difficult to develop a robust AI industry in the United States . . . threaten national security." Stmt. at 2. It then urges that any market harm "cannot overcome the significant, world-changing value of the training use's transformative purpose." *Id.* at 19. The Statement thus asks the Court to include national security within its fair use analysis. But national security is not a fair use factor under the Copyright Act.

Section 107 sets out four factors: the purpose and character of the use; the nature of the copyrighted work; the amount and substantiality of the portion used; and the effect of the use upon the potential market for or value of the copyrighted work. 17 U.S.C. § 107. National security is not among them. To treat it as a fair use consideration would be to add a national

security exception that Congress did not enact. *See Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 578 (1994) (holding that fair use considerations must be interpreted "in light of the purposes of copyright"). Furthermore, the breadth of the exception the DOJ urges this Court to adopt raises a serious question whether the DOJ has the authority, absent the clear authorization of Congress, to insist on a broad exemption with such "economic and political significance." *West Virginia v. EPA*, 597 U.S. 697, 721 (2022). That principle applies with particular force here since the DOJ does not administer the Copyright Act, and the consideration on which the Statement relies appears nowhere in the text of the Act. *See also Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 213 (1988) ("Deference to what appears to be nothing more than an agency's convenient litigating position would be entirely inappropriate.").

The Statement further attempts to unilaterally alter the traditional understanding of fair use under the fourth factor, which is limited to "the effect of the use upon the potential market for or value of the copyrighted work."[4] Relying on *Google LLC v. Oracle America, Inc.*, 593 U.S. 1, 35–36 (2021), it asks the Court to count as a public benefit that "LLMs can, for example, help national security officials analyze and draw inferences from (unprotected) real-world facts such as those conveyed in New York Times articles." Stmt. at 19; *see id.* at 17–18. Yet *Google* does not support that use of the factor. The question the Court posed there was whether the claimed benefits are "related to copyright's concern for the creative production of new expression." 593 U.S. at 35–36. Helping AI firms to train models from news articles is not that kind of benefit. Nor are New York Times articles mere collections of facts. They reflect the

[4] 17 U.S.C. § 107.

structure, framing, and analysis that their authors bring to the facts, which is the kind of creative expression copyright exists to protect.[5]

The Supreme Court has refused to enlarge fair use in any manner close to what the DOJ is proposing. In *Harper & Row, Publishers, Inc. v. Nation Enterprises*, the Court found "no warrant for expanding the doctrine of fair use to create what amounts to a public figure exception to copyright." 471 U.S. 539, 560 (1985). It held instead that "[w]hether verbatim copying from a public figure's manuscript in a given case is or is not fair must be judged according to the traditional equities of fair use." *Id.* An appeal to national security deserves no different treatment. However weighty the interest might be, it does not permit a court to add a category to Section 107.

That conclusion follows from a settled rule of statutory construction. "Where Congress explicitly enumerates certain exceptions to a general prohibition, additional exceptions are not to be implied, in the absence of evidence of a contrary legislative intent." *Andrus v. Glover Constr. Co.*, 446 U.S. 608, 616–17 (1980). Fair use is itself such an exception: Section 106 grants copyright owners their exclusive rights "[s]ubject to sections 107 through 122." 17 U.S.C. § 106. Nothing in Section 107, or anywhere else in the Act, suggests that Congress meant to exempt uses that one department of the Executive Branch believes serve national security.

[5] *Cf. Authors Guild v. Google, Inc.*, 804 F.3d 202, 207 (2d Cir. 2015) (holding fair use where Google Books made "available information about Plaintiffs' books without providing the public with a substantial substitute for matter protected by the Plaintiffs' copyright interests").

## II. THE STATEMENT OF INTEREST REFLECTS THE VIEWS OF A SINGLE AGENCY, OMITS THE PERSPECTIVE OF THE EXPERT BODY, AND UNDERSCORES THE DEGREE TO WHICH THE DOJ IS ACTING BEYOND ITS AUTHORITY

The Statement reflects the views of the DOJ leadership, not those of the U.S. government as a whole. There is no indication that it was informed by the entity with copyright expertise, and in that respect it departs from the practice that the DOJ has followed under both the current and prior Administrations.

The Copyright Office is the federal body with primary expertise in copyright. The Statement appears to have been filed without consulting with that office, which was reportedly surprised by the filing, or even giving it any advance notice.[6]

The omission is significant because the Copyright Office has studied the very question the Statement addresses. Its Report on AI Training was the product of two years of consideration, multiple listening sessions, and review of thousands of comments.[7] Yet, the Statement mentions that work only in a footnote, and only to dismiss it. Stmt. at 16 n.17.

The DOJ has not always treated the Copyright Office's views in this manner. In 2016, the DOJ filed a statement of interest in this District in *I.C. ex rel. Solovsky v. Delta Galil USA* on

---

[6] *See* Sara Fischer & Kerry Flynn, *Scoop: DOJ's Copyright Filing Took Key Agencies by Surprise*, Axios (Sept. 19, 2026), https://www.axios.com/2026/09/19/justice-department-openai-new-york-times.

[7] The Copyright Office launched its Artificial Intelligence Initiative in March 2023. The Copyright Office has issued three parts of its report: Part 1, on digital replicas (July 31, 2024); Part 2, on the copyrightability of AI-generated outputs (January 29, 2025); and Part 3, on generative AI training, released in pre-publication form on May 9, 2025. The Copyright Office released the pre-publication version "in response to congressional inquiries and expressions of interest from stakeholders," and has stated that the final version will be published "without any substantive changes expected in the analysis or conclusions." U.S. Copyright Office, *Artificial Intelligence Study*, https://www.copyright.gov/policy/artificial-intelligence/index.html. Drawing on the Copyright Office's review of the copyright statute and case law, the Copyright Office Training Report concluded that "the copying of expressive works from pirate sources in order to generate unrestricted content that competes in the marketplace, when licensing is reasonably available, is unlikely to qualify as fair use." *U.S. Copyright Office, Copyright and Artificial Intelligence, Part 3: Generative AI Training* 74 (pre-publication version May 2025), https://www.copyright.gov/ai/Copyright-and-Artificial-Intelligence-Part-3-Generative-AI-Training-Report-Pre-Publication-Version.pdf.

behalf of the Register of Copyrights.[8] That statement described the Copyright Office's duty to administer the copyright law and asserted that it was proper for the court to consider, and give weight to, the Copyright Office's views.

The practice of interagency consultation has extended beyond copyright. The 2023 statement of interest in *Louis v. SafeRent Solutions* was a joint statement of the DOJ and the Department of Housing and Urban Development on the Fair Housing Act.[9] The 2024 statement of interest in *Duffy v. Yardi Systems, Inc.* was a joint statement of the DOJ and the Federal Trade Commission concerning algorithmic pricing.[10]

The same practice has been applied when the DOJ files amicus briefs on copyright questions. In April 2025, under the current Administration, the DOJ filed an amicus brief in the Seventh Circuit in *Dramatic Publishing Co. v. Estate of Nelle Harper Lee* in coordination with the Copyright Office.[11] And in 2024, the DOJ filed a similar brief in the Second Circuit in *Atticus LLC v. Dramatic Publishing Co.*, which identified Copyright Office counsel as of counsel.[12] The Statement filed here reflects no comparable coordination. The Court is thus asked to adopt a categorical rule of copyright law without the views of the government's own copyright expert. The lack of relevant expertise or cross-agency consensus adds weight to the conclusion

---

[8] Statement of Interest on Behalf of the U.S. Copyright Office, *I.C. ex rel. Solovsky v. Delta Galil USA*, No. 14-cv-7289 (GHW) (S.D.N.Y. July 5, 2016), ECF No. 101, https://copyright.gov/rulings-filings/411/solovsky-v-delta-galil-usa-no-14-cv-7289--sdny-july-5-2016.pdf.

[9] Statement of Interest of the United States, *Louis v. SafeRent Sols., LLC*, No. 22cv10800-AK (D. Mass. Jan. 9, 2023), ECF No. 37.

[10] Statement of Interest of the United States, *Duffy v. Yardi Sys., Inc.*, No. 2:23-cv-01391-RSL (W.D. Wash. Mar. 1, 2024), ECF No. 149.

[11] Brief for the United States as Amicus Curiae in Support of Neither Party, *Dramatic Publ'g Co. v. Est. of Nelle Harper Lee*, No. 23-1309 (7th Cir. Apr. 15, 2025), ECF No. 35, https://www.copyright.gov/rulings-filings/briefs/dramatic-publishing-co-v-estate-of-nelle-harper-lee-23-1309-7th-cir-2025.pdf.

[12] Brief for the United States of America as Amicus Curiae in Support of Appellee, *Atticus LLC v. Dramatic Publ'g Co.*, No. 23-1226 (2d Cir. Mar. 20, 2024), ECF No. 75, https://www.copyright.gov/rulings-filings/briefs/Atticus-LLC-v-The-Dramatic-Publishing-Co-No-23-1226-2d-Cir-Mar-20-2024.pdf.

that the DOJ, in submitting a Statement of Interest of such broad-ranging consequence, is acting well beyond its authority.

## III. THE STATEMENT'S PROPOSED POLICY CHANGE CONSTITUTES A SEISMIC SHIFT WELL OUTSIDE THE CONSTITUTIONALLY INTENDED AND CONGRESSIONALLY AUTHORIZED AMBIT OF THE DOJ AND IGNORES COPYRIGHT'S CRITICAL ROLE IN THE U.S. ECONOMY AND OUR NATION'S CULTURAL AND POLITICAL INFLUENCE

It is difficult to overstate the economic and cultural significance of the change in national policy embodied in the Statement of Interest. Its dramatic impact underscores the extent to which the DOJ is acting in an ultra vires capacity, *see West Virginia*, 597 U.S. at 721, and the prudence of according little weight to its filing.

By minimizing the value and importance of copyright, the Statement disregards the import and design of the Constitution's Copyright Clause, which gives copyright power to Congress, not the Executive Branch, and empowers Congress "[t]o promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries."[13] The Framers understood that protecting authors serves the public interest. As James Madison explained in Federalist No. 43:

> The utility of this power will scarcely be questioned. The copyright of authors has been solemnly adjudged, in Great Britain, to be a right of common law. The right to useful inventions seems with equal reason to belong to the inventors. *The public good fully coincides in both cases with the claims of individuals*.[14]

The Supreme Court has drawn the same connection, recognizing that "the Framers intended copyright itself to be the engine of free expression." *Harper & Row*, 471 U.S. at 558.

---

[13] U.S. Const. art. I, § 8, cl. 8.

[14] The Federalist No. 43 (James Madison), Avalon Project, Yale L. Sch., https://avalon.law.yale.edu/18th_century/fed43.asp (emphasis added).

Congress built the Copyright Act of 1976 on that foundation. The Act encourages creators to produce new works, which in turn benefits the public. Interpreting the Act in *Harper & Row*, the Court explained that "copyright is intended to increase and not to impede the harvest of knowledge," and that "[t]he rights conferred by copyright are designed to assure contributors to the store of knowledge a fair return for their labors." *Id.* at 545–46.

In ignoring the purpose of the Copyright Clause and the Copyright Act, the DOJ discounts what copyright protection does for the country and is at odds with the President's 2025 executive order, which states that the national framework for artificial intelligence should "ensure that . . . copyrights are respected."[15]

Adopting the Statement's position would be financially devastating to the copyright community and the Nation. Copyright and creators are central to the American economy. In 2023, the core copyright industries contributed more than $2 trillion to the U.S. economy, nearly 8% of GDP, and sales of select U.S. copyright products in overseas markets reached nearly $273 billion.[16] When interdependent and supporting industries are included, the contribution rises to $3.3 trillion, or more than 12% of GDP.[17]

Those industries are also a major source of well-paid American jobs. The core copyright industries employed almost 11.6 million workers in 2023, representing 5.43% of the entire U.S. workforce and 6.10% of total private employment. When interdependent and supporting

---

[15] Exec. Order No. 14,365, *Ensuring a National Policy Framework for Artificial Intelligence*, § 1, 90 Fed. Reg. 58,499, 58,499 (Dec. 16, 2025), https://www.whitehouse.gov/presidential-actions/2025/12/eliminating-state-law-obstruction-of-national-artificial-intelligence-policy/. *See also Too Big to Prosecute? Examining the AI Industry's Mass Ingestion of Copyrighted Works for AI Training: Hearing Before the Subcomm. on Crime & Counterterrorism of the S. Comm. on the Judiciary*, 119th Cong. (July 16, 2025) (statement of Sen. Josh Hawley (R-Mo.), Chair) ("Today's hearing is about the largest intellectual property theft in American history.").

[16] Jéssica Dutra & Robert Stoner, Secretariat, *Copyright Industries in the U.S. Economy: The 2024 Report* 1 (Feb. 2025) (prepared for the Int'l Intell. Prop. All.), https://iipa.org/files/uploads/2025/02/IIPA-Copyright-Industries-in-the-U.S.-Economy-Report-2024_ONLINE_FINAL.pdf.

[17] *Id.*

industries are included, that number rises to more than 21.1 million workers, accounting for 9.91% of all U.S. employment and 11.14% of all private employment. Average 2023 compensation for core copyright workers was $141,880, compared with $94,363 for all U.S. workers.[18]

The value of creative industries extends beyond their economic impact. American creative works are among the most powerful sources of the Nation's influence internationally,[19] and both Congress and the Executive have treated securing protection for copyrighted works abroad as a matter of national trade and foreign policy.[20]

By asserting that "copyright law is not just (or even primarily) about protecting financial incentives for original authorship anyway," Stmt. at 17, the DOJ misapprehends the Copyright Clause as the Framers understood it and the Copyright Act as Congress enacted it. The Statement fails to appreciate that the financial incentive to create is the means by which copyright achieves its public purpose.

## CONCLUSION

For the foregoing reasons, the Court should accord the DOJ's Statement of Interest little if any weight.

---

[18] *Id.*

[19] *See* Joseph S. Nye, Jr., *Soft Power: The Means to Success in World Politics* 3 (2004); Evan Cooper, Stimson Ctr., *The Power of US Cultural Diplomacy* (Nov. 2025), https://www.stimson.org/2025/the-power-of-us-cultural-diplomacy/.

[20] *See* 19 U.S.C. § 2242(a)(1) (directing the U.S. Trade Representative to identify foreign countries that deny adequate and effective protection of U.S. intellectual property rights); *Golan v. Holder*, 565 U.S. 302, 335 (2012) (crediting Congress's judgment that adhering to the Berne Convention would secure greater protection for American works abroad); Office of the U.S. Trade Representative, *2026 Special 301 Report* (Apr. 2026), https://ustr.gov/trade-topics/intellectual-property/special-301/2026-special-301-report.

Dated: October 30, 2026

Respectfully submitted,

/s/ Richard Powers
Richard Powers (96120901)
Daniel McCallum (*pro hac vice* motion forthcoming)
Perry H. Apelbaum (*pro hac vice* motion forthcoming)
Michael Swerdlow (*pro hac vice* motion forthcoming)
KRESSIN POWERS LLC
400 Seventh Street NW
Washington, DC 20004
Telephone: (202) 464-2905
richard@kressinpowers.com
dan@kressinpowers.com
perry@kressinpowers.com
michael@kressinpowers.com

*Counsel for Amici Curiae Representatives Jamie Raskin, Jerrold Nadler, and Henry C. "Hank" Johnson, Jr.*

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Civil Rule 7.1(c), the undersigned certifies that this brief complies with the word-count limitation of the Court's Order of August 7, 2026 (ECF No. 1663), which provides that a proposed amicus brief shall be no more than 6,000 words. As calculated by the word-count function of the word-processing program used to prepare it, the brief contains 3,173 words, excluding the caption, table of contents, table of authorities, signature block, and this certificate. The undersigned further certifies that no party's counsel authored the brief in whole or in part, and that no party, party's counsel, or person other than Amici and their counsel contributed money intended to fund its preparation or submission.

Dated: October 30, 2026

/s/ Richard Powers
Richard Powers