UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE:<br><br>OPENAI, INC.,<br>COPYRIGHT INFRINGEMENT LITIGATION<br><br>This Document Relates To:<br><br>1:23-cv-08292-SHS-OTW<br>1:23-cv-10211-SHS-OTW<br>1:25-cv-03482-SHS-OTW | 1:25-md-03143-SHS-OTW<br><br>Hon. Sidney H. Stein<br>Hon. Ona T. Wang<br><br>Redacted — Public Version |

**DECLARATION OF GREGORY K. LEONARD**
**IN SUPPORT OF OPENAI'S REPLY IN SUPPORT OF ITS**
**MOTION FOR SUMMARY JUDGMENT IN THE CLASS CASES**

I, Gregory K. Leonard, Ph.D., declare:

1. I submit this Declaration in support of OpenAI Defendants' (collectively, "OpenAI") Reply in support of their Motion for Summary Judgment in the Class Cases.

## I. QUALIFICATIONS

2. My name is Gregory K. Leonard. I am an economist and Vice President at Charles River Associates, 601 12th Street, Oakland, CA. Charles River Associates provides economic, financial, and business strategy consulting in the U.S. and other countries throughout the world. I received a Sc.B. in Applied Mathematics-Economics from Brown University in 1985 and a Ph.D. in Economics from the Massachusetts Institute of Technology in 1989. After receiving my Ph.D., I became an assistant professor at Columbia University. I subsequently moved into economic consulting and worked at several economic consulting firms prior to joining Charles River Associates.

3. My specialties within economics are applied microeconomics, the study of the behavior of consumers and firms, and econometrics, the application of statistical methods to economic data. I have published over sixty articles in scholarly and professional publications. Many of these articles address topics in industrial organization and the economics of intellectual property. I have also served as an expert witness in a number of litigation matters before U.S. District Courts, state courts, arbitration panels, and the (U.S.) International Trade Commission. In the area of economic analysis related to copyrights specifically, I served as an economics expert in *Oracle v. Google*, the Phonorecords III, Phonorecords IV, Web V, and Web VI proceedings before the Copyright Royalty Board, and arbitrations between the Radio Music Licensing Committee and, respectively, SESAC and ASCAP.

## II. ASSIGNMENT

4. I have been asked by counsel for OpenAI to perform an economic analysis of the alleged harm that Plaintiffs—purported owners of book copyrights—claim to have suffered as a result of OpenAI's alleged use of the Asserted Works. I understand that the Plaintiffs in this case are David Baldacci, Taylor Branch, Michael Connelly, Sylvia Day, Jonathan Franzen, Christopher Golden, Andrew Sean Greer, John Grisham, David Henry Hwang, George R.R. Martin, Jodi Picoult, Stacy Schiff, James Shapiro, the Authors Guild, and other companies that claim to have ownership stakes in some of the Asserted Works.

5. I previously prepared the Expert Report of Gregory K. Leonard, Ph.D., dated April 24, 2026 ("Leonard Opening Report"), the Expert Rebuttal Report of Gregory K. Leonard, Ph.D., dated May 29, 2026 ("Leonard Rebuttal Report"), and the Expert Reply Report of Gregory K. Leonard, Ph.D., dated June 26, 2026 ("Leonard Reply Report") in this matter. I also prepared the Errata to the Expert Report of Gregory K. Leonard, Ph.D., dated June 10, 2026 ("Leonard Errata").

6. I was deposed in this matter on July 22, 2026.

7. I also submitted a declaration in support of OpenAI's Motion for Summary Judgment on Consolidated Class Plaintiffs' Claims, MDL ECF 1729, and a declaration in support of OpenAI's Opposition to Class Plaintiffs' Motion for Summary Judgment, MDL ECF 2135.

8. I stand by and reaffirm each of the statements and opinions set forth in my reports, which remain true and correct to the best of my knowledge, information, and belief.

9. Attached hereto as **Exhibit A** is a true and correct excerpt of the Leonard Opening Report I submitted in this matter on April 24, 2026.

10. Attached hereto as **Exhibit B** is a true and correct excerpt of the Leonard Reply Report I submitted in this matter on June 26, 2026.

## III. BACKGROUND

11. Plaintiffs allege that they have authored or have ownership stakes in a total of 212 Asserted Works.[1]

12. I understand that OpenAI made its GPT-3 large language model ("LLM") available in its API in July 2020 and launched its LLM-powered chatbot known as ChatGPT to the public in November 2022.[2]

13. For purposes of this declaration, I collectively refer to OpenAI's LLMs at issue in this matter as the "In-Scope LLMs," which is defined to include OpenAI's GPT-3, GPT-3.5, GPT-3.5 Turbo, GPT-4, GPT-4 Turbo, GPT-4o, and GPT-4o mini LLMs.[3]

## IV. OPINIONS

### A. Analyses of Ebook Sales Are Not Necessary to Demonstrate the Lack of Harm to Plaintiffs

14. I performed five types of empirical analyses using various data sources, including annual reports from the Association of American Publishers ("AAP data"), individual book sales data in the United States from Circana ("Circana data"), and pricing data from Barnes & Noble ("Barnes & Noble data").[4] I understand that the Circana data produced in this matter is an output from Circana's broader BookScan database, which is widely considered the most comprehensive

[1] Leonard Opening Report ¶¶ 33-34 & Ex. 1.
[2] *Id.* ¶ 38.
[3] *Id.* ¶ 35.
[4] Leonard Reply Report ¶ 86; Leonard Opening Report ¶¶ 163–165, 217. As I have previously noted, the sales and royalty reports produced by Plaintiffs and their publishers had several inconsistencies and limitations that made them unsuitable for analyzing sales trends. See *id.*

and accurate source of book sales data and is relied upon by industry participants such as publishers, authors, and agents to make business decisions.[5]

15. The results of all my empirical analyses across multiple data sources, including the data source routinely used by stakeholders in the book-selling market, consistently support the lack of harm to sales and prices of the Asserted Works based on OpenAI's alleged use of such works.[6]

16. Ebooks constitute a small fraction of trade book revenue, including for works like the Asserted Works, and are not the "preferred format for purchase" by consumers.[7] In 2024, well after the public release of ChatGPT, printed books represented 76.4% of trade book net revenue in the United States, while ebooks represented only 10% of trade book net revenue in the United States.[8] No evidence or empirical analysis presented in this matter explains why, if sales of the Asserted Works had been significantly and systematically harmed as Plaintiffs claim, that harm would not be observable in the data sources I relied upon. Nor does any evidence or analysis presented in this matter show that OpenAI's alleged use of the Asserted Works had any effect on ebook sales of the Asserted Works. Therefore, to the extent that OpenAI's alleged use of the Asserted Works harmed Plaintiffs' sales, it is economically and logically reasonable to evaluate such harm using data on print books, as I did in my empirical analyses.

### B. None of [redacted] Is Evidence of a Licensing Market for LLM Training in Which Plaintiffs Could Participate

17. Mr. Lasinski [redacted]

[5] Leonard Opening Report ¶ 164. Circana's BookScan database tracks sales of print books.
[6] Leonard Reply Report ¶ 86, 102.
[7] *Id.* ¶ 100.
[8] *Id.*

[redacted].[9] No Plaintiff has ever entered into an agreement licensing any Asserted Works for training LLMs, [redacted].[10] Furthermore, there is no evidence [redacted].

18. [redacted][11] However, no evidence cited by Mr. Lasinski indicates that [redacted] gained any market traction among generative AI companies or that trade books are part of any LLM training arrangement. [redacted].[12]

19. [redacted] No evidence presented in this matter indicates that any generative AI company has ever licensed [redacted].

---

[9] Leonard Reply Report ¶ 138.
[10] *Id.*
[11] Leonard Opening Report ¶ 284.
[12] *Id.*
[13] Leonard Reply Report ¶ 139.
[14] *Id.*

20. [redacted]

21. [redacted] No evidence presented in this matter indicates that any generative AI company has yet entered into a license for any book through [redacted]

22. [redacted] When I filed my reply report in June 2026, [redacted] No evidence presented in

---

[15] Leonard Opening Report ¶ 281.
[16] *Id.*
[17] *Id.* ¶¶ 282-283.
[18] Leonard Reply Report ¶ 140.
[19] *Id.*
[20] *Id.*
[21] Leonard Reply Report ¶ 141.
[22] *Id.*
[23] *Id.*

this matter establishes that [redacted]

23. None of the other entities Mr. Lasinski identified as [redacted] operates a marketplace, exchange, or transactional platform for licensing trade books for LLM training.[24] Thus, Mr. Lasinski's [redacted] is not informative in demonstrating a licensing market for books for LLM training in which Plaintiffs could participate with their Asserted Works.[25]

24. Mr. Lasinski also points to [redacted] Mr. Lasinski does not provide any analysis demonstrating that [redacted] Therefore, the fact that [redacted] does not establish that a market exists or is likely to develop in the foreseeable future.

25. In sum, none of the intermediaries or collective licensing organizations identified by Mr. Lasinski establishes that a licensing market for LLM training in which Plaintiffs could participate currently exists or is likely to develop in the foreseeable future.

---

[24] Leonard Reply Report ¶ 142.
[25] *Id.*
[26] *Id.* ¶ 143.
[27] Leonard Reply Report ¶ 143.

I declare under penalty of perjury that the foregoing is true and correct, and that I have personal knowledge of these facts and am competent to testify thereto if called upon to do so. Executed this 19th day of November, 2026, in Hillsborough, California.

GREGORY K. LEONARD