**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE:<br><br>OpenAI, INC.,<br><br>COPYRIGHT INFRINGEMENT LITIGATION<br><br>This Document Relates To:<br><br>1:23-cv-11195-SHS-OTW<br>1:24-cv-01515-SHS-OTW<br>1:24-cv-03285-SHS-OTW<br>1:24-cv-04872-SHS-OTW<br>1:25-cv-04315-SHS-OTW | 25-md-3143 (SHS) (OTW) |

**NEWS PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT ON OPENAI'S INFRINGEMENT OF NEWS PLAINTIFFS' CONTENT USED FOR RETRIEVAL AUGMENTED GENERATION AND OUTPUTS**

# TABLE OF CONTENTS


I. Introduction ........................................................................................................ 1

II. Background ........................................................................................................ 3

A. The Specific ChatGPT Conversations Underlying this Motion. ........................................ 3

B. ChatGPT outputs include copies of articles on which the LLMs were trained. ................. 4

C. ChatGPT copies Plaintiffs' news articles as inputs during RAG and in model outputs. .... 7

1. ChatGPT copies Plaintiffs' news articles through the Microsoft Bing [redacted] ....... 9

2. ChatGPT copies Plaintiffs' news articles using its crawling and scraping bots. .......... 10

3. ChatGPT copies Plaintiffs' news articles using CustomGPTs. .................................... 25

D. The record vastly understates OpenAI's copying of Plaintiffs' news articles in grounding and in outputs. ........................................................................................................ 29

1. ChatGPT engages in substantial and systematic grounding on and output of Plaintiffs' news articles. ........................................................................................................ 29

2. OpenAI's own studies demonstrate that news is a primary use case for ChatGPT. ..... 35

3. The logs vastly understate OpenAI's infringement. .................................................... 36

III. Argument ........................................................................................................ 38

A. OpenAI copied Plaintiffs' works for RAG and in chatbot outputs. ................................. 38

1. Plaintiffs own valid copyrights. ........................................................................ 38

2. OpenAI infringed Plaintiffs' works through the RAG process and in outputs. ............ 39

3. OpenAI is responsible for this infringement. ............................................................ 40

B. OpenAI's infringements are not fair use. ........................................................................ 41

1. Grounding on Plaintiffs' works is not fair use. ........................................................ 41

2. Outputting Plaintiffs' works is not fair use. ............................................................ 45

IV. Conclusion ........................................................................................................ 45

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ABKCO Music, Inc. v. Sagan*,
50 F.4th 309 (2d Cir. 2022) ....................................................40

*American Geophysical Union v. Texaco Inc.*,
60 F.3d 913 (2d Cir. 1994)....................................................43

*Andy Warhol Found. for Visual Arts, Inc. v. Goldsmith*,
11 F.4th 26 (2d Cir. 2021) ....................................................43

*Arica v. Palmer*,
970 F.2d 1067 (2d Cir. 1992)....................................................44

*Associated Press v. Meltwater U.S. Holdings, Inc.*,
931 F. Supp. 2d 537 (S.D.N.Y. 2013)....................................................45

*Capitol Recs., Inc. v. MP3tunes, LLC*,
48 F. Supp. 3d 703 (S.D.N.Y. 2014)....................................................40

*Cartoon Network LP, LLLP v. CSC Holdings, Inc.*,
536 F.3d 121 (2d Cir. 2008)....................................................40

*Castle Rock Ent., Inc. v. Carol Pub. Grp., Inc.*,
150 F.3d 132 (2d Cir. 1998)....................................................39

*Eldred v. Ashcroft*,
537 U.S. 186 (2003)....................................................41

*EMI Christian Music Grp., Inc. v. MP3tunes, LLC*,
844 F.3d 79 (2d Cir. 2016)....................................................40

*Fox News Network, LLC v. TVEeyes, Inc.*,
883 F.3d 169 (2d Cir. 2018)....................................................41

*Hachette Book Group, Inc. v. Internet Archive*,
115 F.4th 163 (2d Cir. 2024) ....................................................45

*Kadrey v. Meta Platforms, Inc.*,
788 F. Supp. 3d 1026 (N.D. Cal. 2025) ....................................................44

*Nihon Keizai Shimbun, Inc. v. Comline Business Data, Inc.*,
166 F.3d 65 (2d Cir. 1999)....................................................39, 45

*Thomson Reuters Enter. Ctr. GmbH v. ROSS Intel. Inc.*,
193 F.4th 271 (3d Cir. 2026) ....................43, 45

*Twin Peaks Prods., Inc. v. Publications Int'l, Ltd.*,
996 F.2d 1366 (2d Cir. 1993)....................39

*Wainwright Securities, Inc. v. Wall Street Transcript Corp.*,
558 F.2d 91 (2d Cir. 1977)....................39, 45

*Warner Bros. Ent. Inc. v. RDR Books*,
575 F. Supp. 2d 513 (S.D.N.Y. 2008)....................39

# TABLE OF CITATION CONVENTIONS

| Citation | Document | ECF No. |
|---|---|---|
| NP-Mot | News Plaintiffs' Memorandum of Law in Support of Motion for Summary Judgment | 1728 |
| NP-SOF | News Plaintiffs' Corrected Rule 56.1 Statement of Material Undisputed Facts | 1985 |
| OAI-Mot | OpenAI's Memorandum of Law in Support of Motion for Summary Judgment on News Plaintiffs' Claims | 1749 |
| OAI-SOF | OpenAI's Rule 56.1 Statement | 1735 |
| MSFT-Mot | Defendant Microsoft Corporation's Memorandum of Law In Support Of Motion For Summary Judgment In News Plaintiffs' Consolidated Cases | 1699 |
| NP-Opp | News Plaintiffs' Omnibus Memorandum of Law in Opposition to Defendants' Motions for Summary Judgment | 2119 |
| NP-CSOF | News Plaintiffs' Counterstatement of Material Facts | 2126 |
| OAI-Opp | OpenAI's Opposition to News Plaintiffs' Motion for Partial Summary Judgment | 2216 |
| OAI-Reply | OpenAI's Reply Memorandum of Law in Support of Motion for Summary Judgment on News Plaintiffs' Claims | 2572 |
| Def-Resp-NP-SOF | Defendants' Response to News Plaintiffs' Rule 56.1 Statement | 2253 |
| NP-Ex | News Plaintiffs' Exhibits | 1777, 1785, 1786, 1790, 1792, 1799, 1803, 1807, 1809, 1812, 1823, 1829, 1830, 1833, 1834, 1837, 1839, 1841, 1842, 1843, 1844, 1846, 1847, 1849, 1851, 1852, 1854, 1856, 1857, 1861, 1863, 1869, 1871, |

| Citation | Document | ECF No. |
|---|---|---|
| | | 1874, 1876, 1877, 1878, 1880, 1882, 1885, 1887, 1888, 1891, 1893, 1896, 1897, 1899, 1902, 1903, 1905, 1909, 2136, 2148, 2162, 2163, 2165, 2166, 2168, 2172, 2176, 2177, 2178, 2182, 2186, 2193, 2198, 2209, 2214, 2219, 2221, 2223, 2559, 2564, and *those* Filed Concurrently with this Brief |
| NP-Reply | News Plaintiffs' Omnibus Reply Memorandum of Law in Support of News Plaintiffs' Motion for Summary Judgment | 2542 |
| NP-Reply-R56.1 | News Plaintiffs' Responses to Defendant OpenAI's "Additional Facts" | 2551 |
| NP-Sanctions-Mot | Memorandum of Law in Support of News Plaintiffs' Motion for Sanctions Against OpenAI | 1618 |
| NP-Supp'l-R56.1 | News Plaintiffs' Supplemental Rule 56.1 Statement of Material Undisputed Facts | Filed Concurrently with this Brief |
| Goldstein-Decl. | Declaration of Tom Goldstein in Support of News Plaintiffs' Motion for Summary Judgment on OpenAI's Infringement of News Plaintiffs' Content Used for Retrieval Augmented Generation and Outputs | Filed Concurrently with this Brief |

## I. Introduction

News Plaintiffs move for summary judgment that OpenAI infringed News Plaintiffs' works that OpenAI (1) copied as inputs for ChatGPT's retrieval augmented generation ("RAG") or "grounding" process and (2) copied in ChatGPT outputs. News Plaintiffs also move for summary judgment that (3) OpenAI's copying of News Plaintiffs' works to deliver responses to its users is not fair use. Summary judgment is appropriate because there is undisputed evidence of copying, and the purpose and effect of copying News Plaintiffs' articles for RAG and outputs is to substitute for the original news sources.[1]

While OpenAI has purported to raise issues of fact about how to calculate the number of News Plaintiffs' works that it infringed through RAG and in its outputs—though not whether such a calculation should be performed—even the skewed sample that it provided shows that it copied News Plaintiffs' articles [redacted] of times for RAG and in ChatGPT outputs. In fact, the record shows that during RAG and output, OpenAI copied copyrighted content from News Plaintiffs' publications at [redacted] of times ***per day***. This conclusion follows directly from scaling up the instances of infringement in the sample in proportion to the total volume of ChatGPT conversations, which is the very approach that OpenAI successfully advocated to justify producing a sample in lieu of searching all its logs. *See* Section II.D.1, *infra*. While the true scale of OpenAI's copying is undoubtedly higher given the corruption of the sample caused by OpenAI's spoliation of evidence and tampering (detailed in News Plaintiffs' sanctions motion),[2] for the purposes of this motion News Plaintiffs rely solely on the limited evidence that OpenAI has provided. OpenAI

[1] The Intercept brings only DMCA claims, and therefore does not join this motion, other than to the extent fair use arguments are deemed relevant to DMCA claims.

[redacted]

cannot dispute the evidence proving it copied News Plaintiffs' articles in RAG inputs and model outputs at scale.

Specifically, as discussed in more detail below, two facts are beyond dispute. First, OpenAI's customers and business clients routinely use ChatGPT as a substitute source for the copyrighted works they would otherwise have to get directly from News Plaintiffs' publications. As explained below in Section II.B, even in the limited samples OpenAI provided during discovery, its users frequently ask ChatGPT for content from News Plaintiffs' publications, and ChatGPT obliges. Second, the scale of the infringement is such that, during the time period relevant to this litigation, OpenAI must have infringed News Plaintiffs' copyrights [redacted]. *See infra* Section II.D.1.

OpenAI claims that this copying—like its circumvention of paywalls to get News Plaintiffs' articles, its use of News Plaintiffs' articles for training, and its exchanging News Plaintiffs' articles with Microsoft—is fair use because it is all transformative. Copying News Plaintiffs' expressive journalism to deliver news, they argue, cannot qualify as "substitution" even if it diminishes the market for News Plaintiffs' journalism and creates satisfying substitutes for their articles. Although OpenAI shielded most of the direct evidence of substitution from discovery, even the small sample of RAG outputs it produced contain compelling examples of substitution—both involving regurgitation in outputs and instances in which copying News Plaintiffs' articles for RAG led to outputs that substitute for the articles themselves. What the AI companies seek is a dramatic expansion of the fair use doctrine that would disregard controlling precedent and allow them to copy News Plaintiffs' articles for free, forcing news publishers to compete with the substitute that AI companies can only provide by copying the publishers' journalism. And they do this at scale, presumably unconcerned about removing the economic

incentives that power the entire news industry. Copyright law was designed to prevent precisely this kind of exploitation.

## II. <u>Background</u>

News Plaintiffs incorporate the facts in their prior briefing and Rule 56.1 statements. The below facts are limited to facts germane to this Motion.

### A. The Specific ChatGPT Conversations Underlying this Motion.

ChatGPT is a consumer-facing product that has over [redacted] weekly active users and over [redacted] paid subscribers. NP-SOF-575, 580. It provides responses to user queries called outputs. These outputs include verbatim copies of Plaintiffs' news articles as well as other substitutive content such as article summaries. NP-Mot-15-31. Sometimes when this happens, it is because the LLMs that power ChatGPT were trained on a particular news article, causing the LLM to "memorize" that news article (*i.e.*, encode a copy of that article in the model) and later provide it to users. NP-SOF-925-926,942-943,945,949. Other times, ChatGPT "grounds" on Plaintiffs' articles—meaning ChatGPT copies the articles from News Plaintiffs' sites, in real time, and uses the article to respond to the user's query. NP-SOF-971-1035, 1229-1256. In both cases, the resulting output may infringe Plaintiffs' works.

Plaintiffs now seek summary judgment for infringement of 23 specific works appearing in the ChatGPT conversations that OpenAI produced in discovery. Plaintiffs will at trial address the full scope of infringement from OpenAI's grounding on and outputting of Plaintiffs' asserted works, including extrapolation of this infringement to the full scope of conversations over the relevant time period, following resolution of their pending sanctions motion.

OpenAI copied the 23 works in the following ways:

- **Output (16 works)**: ChatGPT relied on its memorized training data or grounding data to provide a verbatim or near-verbatim copy of Plaintiffs' works in the output to the user.
- **RAG (21 works)**: ChatGPT copied Plaintiffs' works during the grounding process, and then provided a response to the user that substitutes for the work, such as a summary of the article.[3]

Plaintiffs below provide an overview of how ChatGPT copies Plaintiffs' works in practice, beginning with the model training process and continuing with the grounding/RAG process.

**B. ChatGPT outputs include copies of articles on which the LLMs were trained.**

One reason ChatGPT outputs Plaintiffs' articles in response to user queries is because, as set forth in News Plaintiffs' prior briefs, the LLMs that power ChatGPT were intentionally trained on Plaintiffs' articles and designed to deliver news. NP-Mot-15; NP-SOF-850-852. During pre-training, OpenAI passed millions of copies of Plaintiffs' articles through the models. NP-SOF-849. The models thus encoded specific text from those articles in their parameters (a process called "memorization"), which the models can output verbatim or near-verbatim. NP-SOF-925-26. Then during later stages of training, including "mid-training," OpenAI [redacted] NP-Reply-R56.1-1859. There is no dispute that ChatGPT outputs verbatim or near-verbatim training data in response to user queries, including copies of Plaintiffs' articles. OAI-Mot-4. The only dispute is how often this happens, and that dispute can be resolved at trial. *Id.*

[3] There are 23 total works at issue (not 37) because 14 of the works fall into both the "output" and "RAG" categories. Specifically, ChatGPT copied 14 works during the grounding process and also provided a verbatim or near-verbatim copy of those same 14 works in outputs to users.

The example below (OPCO_OAI_OUTPUT9161) is an output from the ChatGPT logs produced in this case, showing [redacted]

[redacted]

NP-Supp'l-R56.1-1859.

ChatGPT also regurgitates Plaintiffs' articles in outputs that contain "hallucinations," which, for example, falsely attribute those articles to other authors. NP-SOF-1740-41. By February 2023, OpenAI and Microsoft knew [redacted] NP-SOF-1729,1736. OpenAI's produced logs include multiple examples where ChatGPT regurgitates training data while misattributing the source to a different publisher. For example, in OPCO_OAI_OUTPUT00009195, ChatGPT reproduced [redacted]

[redacted]

NP-Supp'l-R56.1-1860. Yet ChatGPT [redacted]. NP-Supp'l-R56.1-1860.

**C. ChatGPT copies Plaintiffs' news articles as inputs during RAG and in model outputs.**

RAG is a technique by which ChatGPT copies material from the web, including news articles, and provides that material to the model to respond to user queries. NP-SOF-971-1035,

1229-1256. Microsoft calls this process "grounding," and OpenAI refers to it as "Browse" (the name OpenAI gave to its RAG function). MSFT-Mot-5; OAI-Mot-12. ChatGPT can do this convincingly because OpenAI intentionally trained the underlying LLMs to ground on news articles. NP-SOF-918-919. [redacted] NP-SOF-918-919. [redacted] NP-SOF-917. [redacted] NP-SOF-1000; NP-Supp'l-R56.1-1889. OpenAI's focus on news content during the model training process made ChatGPT better at processing news articles for RAG to produce news-style outputs. NP-SOF-873; NP-CSOF-24-27.

During the RAG process, ChatGPT copies content from the web, including Plaintiffs' news articles, following [redacted] NP-Supp'l-R56.1-1879; NP-SOF-1000; Def-Resp-NP-R56.1-485; NP-Mot-13.

As summarized in the next subsections, OpenAI copies Plaintiffs' articles for RAG in at least three ways: (1) through [redacted] (2) using OpenAI crawler and scraper bots; and (3) with CustomGPTs.

*1. ChatGPT copies Plaintiffs' news articles through the Microsoft Bing* [redacted]

OpenAI maximizes the amount of content it retrieves from the webpages it uses for RAG. NP-Supp'l-Rule56.1-1880. As one employee explained, [redacted] NP-Supp'l-Rule56.1-1880. In fact, the content retrieved [redacted] during step one of the RAG process includes far more content than what is captured for traditional "ten blue link" search results. NP-Supp'l-Rule56.1-1881-82. For RAG, [redacted] (OpenAI's words). NP-Supp'l-Rule56.1-1881-82.

Defendants knew it was wrong for OpenAI to exploit [redacted] to copy content for RAG. OpenAI even referred [redacted] for accessing and copying content from sites that blocked OpenAI. NP-Supp'l-Rule56.1-1884. Microsoft called the conduct [redacted] while OpenAI characterized it as a [redacted] to intentionally circumvent websites' protective features, such as robots.txt—the very feature OpenAI claims that publishers should use to "exclude works" "from collection by OpenAI." NP-Supp'l-Rule56.1-1885-86; OpenAI-Opp-12n.9.[4]

OpenAI's intentional use [redacted] is reflected in the produced ChatGPT conversation logs. In one conversation (OPCO_OAI_OUTPUT00007229), ChatGPT attempted [redacted]. NP-Supp'l-Rule56.1-1876. But OpenAI's [redacted]

[4] The Robots Exclusion Protocol is a standard used by website owners to allow or disallow crawling by bots, which website owners implement through "robots.txt" files, NP-SOF-479-82.

[redacted]. NP-Supp'l-Rule56.1-1877. ChatGPT then [redacted] NP-Supp'l-Rule56.1-1878.

This [redacted] approach to accessing content is far from an edge case. According to OpenAI's expert, Dr. Feamster, [redacted] NP-Supp'l-Rule56.1-1887.

2. *ChatGPT copies Plaintiffs' news articles using its crawling and scraping bots.*

Defendants have also scraped, downloaded, and otherwise impermissibly obtained copies of Plaintiffs' works to ground ChatGPT responses. Defendants used computer programs known as web crawlers or scrapers to access Plaintiffs' webpages and extract their content for grounding. NP-SOF-714, 782–89. It is undisputed that Plaintiffs employed paywalls, terms of service, and use directives (*i.e.*, robots.txt disallows) on their websites to protect their works from scraping. *See* Defs-Resp-NP-SOF-473, 477, 488–490, 494–99, 502–05, 518, 519, 522, 523, 525, 526, 530, 532–47. Yet OpenAI has repeatedly bypassed Plaintiffs' robots.txt disallows, paywalls, and use directives to retrieve and copy Plaintiffs' restricted content, including Asserted Works. NP-SOF-463,493,501,1019,1559.

Indeed, OpenAI's expert [redacted]. NP-Supp'l-Rule56.1-1888; NP-SOF-1559. Although Microsoft's CEO Satya Nadella testified that [redacted]

[redacted] NP-SOF-793, 795, Defendants have continued purposefully violating Plaintiffs' clear directives when scraping Plaintiffs' articles for grounding purposes. NP-SOF-463,493,501,1019,1559.

The following ChatGPT conversation (OPCO_OAI_OUTPUT00006743) illustrates OpenAI's use of bots to ground model outputs. NP-Supp'l-R56.1-1861. [redacted] NP-Supp'l-R56.1-1861.

[redacted] NP-Supp'l-R56.1-1862.

[redacted] NP-Supp'l-R56.1-1862–63.

[redacted]

[redacted] NP-Supp'l-R56.1-1863. [redacted]

NP-Supp'l-R56.1-1863.

[redacted]

[redacted]

[redacted]

[redacted] NP-Supp'l-R56.1-1865.

[redacted]

In the above example, ChatGPT copied content directly from Plaintiff's site.

Sometimes, however, ChatGPT copies Plaintiffs' news articles from other sites, known as pirate websites, which are illegal sites, often hosted in foreign countries, that publish full, unauthorized copies of Plaintiffs' articles. NP-SOF-1699-1700. For example, in a produced February 29, 2024, conversation (OPCO_OAI_OUTPUT_00003178), [redacted] NP-Supp'l-R56.1-1866.

[5] In the produced logs, [redacted]

[redacted]

ChatGPT accessed the [redacted]

[redacted] NP-Supp'l-R56.1-1867; *Times* Dkt. 1 ¶ 121.

In another example, [redacted] NP-Supp'l-R56.1-1868.

[redacted]

ChatGPT then output verbatim text from the article to the user. NP-Supp'l-R56.1-1869. Even OpenAI's expert, Dr. Berg-Kirkpatrick, [redacted] NP-Supp'l-R56.1-1870.

[redacted]

[redacted]

[redacted]

These are not isolated examples. OpenAI routinely copies Plaintiffs' articles from third-party sites, including from known pirate sites like Dnyuz. *See, e.g.*, NP-Supp'l-R56.1-1871 [redacted]. [redacted] (convo_ID 810ee325fc98c64741f292acdc4a26c8). NP-SOF-1060. [redacted] NP-SOF1061. *See also* NP-Ex.-461 at 196-206 (providing additional examples). As OpenAI is well aware, Plaintiffs have no way to protect their work when it appears on these platforms. NP-SOF-1433-35.

3. *ChatGPT copies Plaintiffs' news articles using CustomGPTs.*

OpenAI's "CustomGPT" products also infringe Plaintiffs' works by grounding on Plaintiffs' articles. [redacted] NP-Supp'l-R56.1-1872.

CustomGPTs are what they sound like: "custom versions of ChatGPT that [users] can create for a specific purpose." Def-Resp-NP-SOF-588. Like OpenAI's flagship ChatGPT product, CustomGPTs are chatbots powered by OpenAI's LLMs, and users must visit chatgpt.com or use the ChatGPT app to create or use a CustomGPT. Def-Resp-NP-SOF-590-91,1014. OpenAI allows users who create CustomGPTs to share them with OpenAI's entire user base, including by adding them to OpenAI's "GPT Store"—a dedicated place for users to search for and find CustomGPTs. Def-Resp-NP-SOF-595. OpenAI assesses each CustomGPT for compliance with OpenAI's usage policies twice—once when the CustomGPT is shared with other users, and again before it is posted to OpenAI's GPT Store. Def-Resp-NP-SOF-594,596.

[redacted] NP-Supp'l-Rule-56.1-1899. [redacted] NP-Supp'l-Rule-56.1-1901.

OpenAI has admitted to hosting at least [redacted] news-related CustomGPTs, all of which were publicly available in February 2026—years after Plaintiffs filed suit. NP-Supp'l-Rule-56.1-1902. Examples include: [redacted] NP-SOF-1470. [redacted] NP-Supp'l-Rule-56.1-1903. [redacted]

OpenAI provides instructions to the models, in the form of a "system prompt," for how to use CustomGPTs. NP-Supp'l-R56.1-1873. OpenAI's instructions include the following information for the WebPilot CustomGPT: [redacted]

[redacted] NP-Supp'l-R56.1-1874. [redacted] NP-Supp'l-R56.1-1872.

[redacted]

[redacted]

*See* NP-SOF-1018.

CustomGPTs like WebPilot are widely used; OpenAI's records reveal [redacted] conversations for "WebPilot" alone. NP-Supp'l-Rule-56.1-1904.

**D. The record vastly understates OpenAI's copying of Plaintiffs' news articles in grounding and in outputs.**

For their output and grounding claims, Plaintiffs seek summary judgment of infringement for a modest number of Asserted Works because only a tiny percentage of ChatGPT's [redacted] daily conversations were produced and only a small fraction of the produced conversations involved the RAG process. OpenAI's discovery misconduct also systematically suppressed the kinds of conversations that are most likely to show infringing outputs and RAG inputs. Nevertheless, even a conservative extrapolation from the produced conversations shows that [redacted] of instances of such infringements have occurred at an ever-increasing and extraordinary pace. The numbers discussed in this section include Asserted Works and non-asserted works to provide context for the scope of OpenAI's use of Plaintiffs' articles that it claims to be fair. Plaintiffs leave the issue of liability for a specific number of extrapolated infringements to the trier of fact. But the broader extent and trend of the projection demonstrates that the specific instances on which Plaintiffs presently move are not isolated examples.

*1. ChatGPT engages in substantial and systematic grounding on and output of Plaintiffs' news articles.*

The evidentiary record shows that OpenAI committed a staggering volume of RAG and output-based infringements through its consumer ChatGPT product. *See* NP-Mot-13-31.

a) Extrapolation of OpenAI's RAG-based infringement.

As explained below, *see* Section II.D.3, the 20 million sample included only [redacted] unique conversations that invoked the RAG process. NP-Supp'l-R56.1-1829. Put differently, only [redacted] of the 20 million logs included conversations where ChatGPT grounded on web content. Focusing on those logs, Plaintiffs' expert Dr. Goldstein quantified the number of unique conversations and number of times for which ChatGPT grounded on The Times's and DNP's content.

[redacted]

NP-Supp'l-R56.1-1844.

In addition, CIR's expert Dr. Wenger identified [redacted] occurrences of motherjones.com articles in the RAG pipeline. NP-Supp'l-R56.1-1845.

Mr. Delorey, for Ziff Davis, located at least [redacted] total conversations in the sampled production in which a RAG tool retrieved content from a Ziff Davis domain. NP-SOF-1026. Below is a breakdown by domain. NP-Supp'l-R56.1-1846-47.

[redacted]

[redacted]

Given that the 20 million sample represents less than [redacted] of the total ChatGPT conversations over the sampling period, the number of chats containing Plaintiffs' articles should be approximately [redacted] times larger than what is observable in the 20 million sample. NP-Supp'l-R56.1-1851. As Dr. Goldstein explained, one reasonable and appropriate extrapolation is to multiply the number of RAG occurrences in the 20 million sample by [redacted] to obtain a rough approximation of the number of chats containing Plaintiffs' content. NP-Supp'l-R56.1-1851. Indeed, OpenAI's stated basis for providing this 20 million sample was to [redacted] NP-Supp'l-R56.1-1850.[6]

This extrapolation yields [redacted] of instances of RAG-based copying of The Times's and DNP's content during the December 2022-December 2024 sampling period. NP-Supp'l-R56.1-

[6] *See also* ECF 1336 (OpenAI: "[T]he purpose of the 20M Sample was to be representative of the entire universe of relevant ChatGPT conversations. That sample will enable statistically relevant conclusions about the 'prevalence' of different kinds of outputs generally.").

1852. The table below provides the results of this extrapolation for all Plaintiffs. NP-Supp'l-R56.1-1853

[redacted]

These extrapolations are even higher following the December 2024 cutoff date of the 20 million sample. [redacted] NP-Supp'l-R56.1-1854. [redacted]

[redacted]

One can then apply the frequency of Plaintiffs' articles in the RAG pipeline in the 20 million sample of conversations to the broader set of [redacted] daily conversations. Specifically, as set forth in the table below, and explained by Dr. Goldstein, The Times's domain appeared in RAG in [redacted] unique conversations. NP-Supp'l-R56.1-1856; Goldstein-Decl. ¶ 7. That is a ratio of about [redacted] conversations in the 20 million sample. *Id.* [redacted] The complete findings are listed in the table below:

[redacted]

[redacted]

NP-Supp'l-R56.1-1856.

These extrapolations are conservative because they consider only the small number of RAG conversations in the 20 million sample (approximately [redacted] of all conversations). Dr. Berg-Kirkpatrick admitted that [redacted], NP-Supp'l-R56.1-1832, [redacted]. NP-Supp'l-R56.1-1832-33.

Even if the finder of fact were to accept that OpenAI's 20 million sample was representative of the relevant sampling period, the sample still demonstrates that OpenAI committed a staggering volume of RAG-based infringements through its consumer ChatGPT product.

b) Extrapolation of OpenAI's output-based infringement.

OpenAI's technical expert, Dr. Berg-Kirkpatrick, admitted to [redacted]

219). Using the same methodology above, these [redacted]. NP-Supp'l-R56.1-1857. [redacted] NP-Supp'l-R56.1-1858; Goldstein-Decl. ¶ 8.

2. *OpenAI's own studies demonstrate that news is a primary use case for ChatGPT.*

OpenAI's own commissioned studies corroborate Plaintiffs' extrapolations by showing that news is a primary use case for ChatGPT. [redacted]

[redacted] NP-Supp'l-R56.1-1892. [redacted]

[redacted]

The figures are even more staggering when the "Browse" feature is considered. Specifically, when ChatGPT invokes its "Search" capabilities, the number of queries for "current info" jumps from approximately [redacted] of all queries, including over [redacted] of queries directed to "current events and news." NP-Supp'l-R56.1-1894.[7] In fact, OpenAI [redacted]. NP-Supp'l-R56.1-1896. And, the prevalence of news-related queries is further corroborated by a recent study from the Reuters Institute for the Study of Journalism, which found that the 12% of persons "in the USA who say they have used generative AI for news in the past week by now rivals the online reach of CNN and the New York Times." NP-Supp'l-R56.1-1897-98.

Finally, OpenAI's own sample supports these findings. **Specifically, Dr. Goldstein's empirical analysis of the 20 million sample shows that** [redacted]**.** NP-SOF-1021,1683-84.

3. *The logs vastly understate OpenAI's infringement.*

As set forth in News Plaintiffs' sanctions motion, the calculations and extrapolations discussed above significantly understate the scope and scale of OpenAI's infringement for several reasons.[8]

[7] [redacted]

[8] News Plaintiffs dispute that the sample is representative. We can infer that OpenAI sought to benefit by tampering with the sample through its discovery misconduct, including its misrepresentations of its abilities to preserve and search for Plaintiffs' content in its conversation logs. *See* NP-Sanctions-Mot.

Low Number of RAG Conversations: The 20 million log sample understates the number of RAG conversations for two reasons. *First,* because OpenAI only produced logs [redacted], the 20 million sample excludes OpenAI's RAG-based search product, ChatGPT Search, which OpenAI rolled out to logged-in users on December 16, 2024, and all users on February 5, 2025. NP-Supp'l-R56.1-1833. *Second,* because of its "processing error," OpenAI substituted [redacted]. NP-Supp'l-R56.1-1834; NP-Sanctions-Mot-18. The result is that only [redacted] conversations—approximately [redacted] of the sample—contain any RAG data, NP-SOF-1020, which Plaintiffs' expert found "is a low number." NP-Supp'l-R56.1-1835-36; NP-Sanctions-Mot-18.

Redactions: OpenAI initially produced the 20 million sample with over [redacted] redactions using an AI tool that OpenAI did not use in the ordinary course of its business. NP-Supp'l-R56.1-1837; NP-Sanctions-Mot-19. After Magistrate Judge Wang described OpenAI's over-redactions as "mind boggling" and ordered OpenAI to reproduce the sample, a significant number of inappropriate redactions remain, including to Plaintiffs' domains, names, and other fields that were unnecessary to protect user privacy (or any other legitimate reason). NP-Supp'l-R56.1-1838-39.

Truncations: Many of the RAG search results are truncated in the 20 million sample and terminate quickly with "..." rather than showing the entire copied text. NP-Supp'l-R56.1-1840. Accordingly, the logs provide an incomplete record of Plaintiffs' articles that OpenAI copied for grounding.

[redacted]: There is an enterprise version of ChatGPT, including for businesses to provide ChatGPT accounts to their employees. NP-SOF-578-79. There is also an OpenAI API platform, which allows other companies, including other AI companies, to

use OpenAI's models to power their own systems. NP-SOF-582-87. However, the 20 million sample [redacted]. NP-Supp'l-R56.1-1831. Accordingly, there is no output log evidence in the record as to how OpenAI supplies infringing materials to its "more than **1 million business customers around the world**," NP-Supp'l-R56.1-1841, including to other AI developers also accused of infringement in this Court, like Perplexity, NP-Supp'l-R56.1-1842.

Limitations of the Additional Conversation Datasets: OpenAI contends that the 78 million, 10 million, and 9 million additional ChatGPT conversation datasets Magistrate Judge Wang ordered it to produce are not representative. NP-Supp'l-R56.1-1843. [redacted]. NP-Supp'l-R56.1-1843.

Because Plaintiffs' extrapolations are based on the flawed and incomplete information that OpenAI produced during discovery, OpenAI is in no position to complain that the calculations are imprecise—particularly because Plaintiffs' calculations are conservative and therefore understated.

## III. Argument

There is no material dispute that OpenAI infringed Plaintiffs' Asserted Works through RAG and in outputs, notwithstanding the substantial deficiencies in the log sample that was produced.

### A. OpenAI copied Plaintiffs' works for RAG and in chatbot outputs.

#### *1. Plaintiffs own valid copyrights.*

Plaintiffs registered their copyrighted works and submitted Rule 1006 summaries that include the registration and ownership basis for each Asserted Work at issue in this Motion. NP-

Supp'l-R56.1-1826-27. Plaintiffs are entitled to summary judgment on validity and ownership of the Asserted Works, and refer the Court to the arguments included in Plaintiffs' Combined Summary Judgment Brief, NP-Mot-33-35, and Plaintiffs' Reply brief, NP-Reply-3-5.

*2. OpenAI infringed Plaintiffs' works through the RAG process and in outputs.*

Plaintiffs included the legal standard for infringement in their prior summary judgment briefs. *See* NP-Mot-33-36. While OpenAI focuses extensively on *verbatim* reproductions of news articles in outputs, OAI-Mot-4–5, the standard for substantial similarity is not so exacting. *See Nihon Keizai Shimbun, Inc. v. Comline Business Data, Inc.*, 166 F.3d 65, 71 (2d Cir. 1999) ("[T]he quantitative analysis of two works must always occur in the shadow of their qualitative nature."); *Castle Rock Ent., Inc. v. Carol Pub. Grp., Inc.*, 150 F.3d 132, 139 (2d Cir. 1998) (finding a *Seinfeld* trivia quiz book substantially similar to television series); *Twin Peaks Prods., Inc. v. Publications Int'l, Ltd.*, 996 F.2d 1366, 1372–73 (2d Cir. 1993) (finding substantial similarity based on "a detailed recounting of the first eight episodes" of the *Twin Peaks* series); *Wainwright Securities, Inc. v. Wall Street Transcript Corp.*, 558 F.2d 91, 96 (2d Cir. 1977) (finding a summary of financial reports substantially similar); *Warner Bros. Ent. Inc. v. RDR Books*, 575 F. Supp. 2d 513, 526, 535 (S.D.N.Y. 2008) (finding *Harry Potter* Lexicon, "which synthesizes information from the series and generally provides citations for location of that information rather than offering commentary," substantially similar to novels, despite "amount[ing] to only a fraction of the seven-book series").

As noted above, there are 23 works at issue for this motion. Exhibits Z1-22 to the concurrently filed Goldstein Declaration include comparisons of 21 of The Times's and Dailly News Plaintiffs' Asserted Works to copies OpenAI made in the RAG process and/or in outputs from the conversation logs. NP-Supp'l-R56.1-1826. The remaining two works at issue are from

Ziff Davis. NP-Supp'l-R56.1-1827. OpenAI's infringement as to grounding and output on the Asserted Works are tabulated below. NP-Supp'l-R56.1-1827.

| Plaintiff | Asserted Works Infringed in ChatGPT RAG Process | Asserted Works Infringed in ChatGPT Outputs[9] |
|---|---|---|
| The Times | 15 | 13 |
| DNP | 4 | 3 |
| Ziff Davis | 2 | - |

3. *OpenAI is responsible for this infringement.*

To be liable for direct infringement, a defendant must have engaged in "volitional conduct" that "causes the copying or distribution." *ABKCO Music, Inc. v. Sagan*, 50 F.4th 309, 321 (2d Cir. 2022) (cleaned up). This Court and the Second Circuit have held that infringers engage in volitional conduct when their software systems play an active, intentional role in curating copyrighted information or providing the infrastructure for its delivery. *Compare, e.g.*, *EMI Christian Music Grp., Inc. v. MP3tunes, LLC*, 844 F.3d 79 (2d Cir. 2016); *Capitol Recs., Inc. v. MP3tunes, LLC*, 48 F. Supp. 3d 703 (S.D.N.Y. 2014); *with Cartoon Network LP, LLLP v. CSC Holdings, Inc.*, 536 F.3d 121, 131 (2d Cir. 2008) (finding DVR system "automatically obeys commands and engage in no volitional conduct").

Here, OpenAI selected and copied Plaintiffs' news articles during each stage of training as well as during grounding, thus causing ChatGPT to output Plaintiffs' content. *Supra* Sections II.B–C; NP-Mot-11–17; NP-Opp-4. OpenAI also trained and adapted ChatGPT to use CustomGPTs, [redacted], and OpenAI reviewed, approved, and hosted these CustomGPTs on its own

[9] There are 23 total works at issue (not 37) because 14 of the works—12 from The Times and 2 from DNP— fall into both the "output" and "RAG" categories. Specifically, ChatGPT copied 14 works during the grounding process and also provided a verbatim or near-verbatim copy of those same 14 works in outputs to users.

website. *Supra* Section II.C.3; *Fox News Network, LLC v. TVEeyes, Inc.*, 883 F.3d 169, 181 (2d Cir. 2018). As illustrated in one of OpenAI's own internal presentations, [redacted]

[redacted]

NP-Supp'l-R56.1-1883.

**B. OpenAI's infringements are not fair use.**

*1. Grounding on Plaintiffs' works is not fair use.*

RAG is not fair use for the simple reason that its purpose and effect is to generate a substitute for an original news article at the exact point of potential demand for the article—that is, when a user enters a prompt seeking to learn about a topic for which they would otherwise read the copied article. Defendants' copying of the News Plaintiffs' expressive works for RAG undermines the incentives to invest in high-quality journalism and is antithetical to the goals of copyright law, which has for more than two centuries given authors "limited monopolies" to "promote the creation and publication of free expression." *Eldred v. Ashcroft*, 537 U.S. 186, 219 (2003). As set forth above, the scale of OpenAI's replacement behavior is massive. And just as

OpenAI intended, readers are increasingly turning to ChatGPT for current news that OpenAI admits can only be provided through RAG. OAI-Mot-12 (describing how Browse was developed to address the model's "limitation" that "there was a 'knowledge cutoff' after which point the tool was blind to the world"); NP-Supp'l-R56.1-1897-98 (Reuters 2026 study which found that 12% of persons "in the USA [] say they have used generative AI for news in the past week[, which] rivals the online reach of CNN and the New York Times," and that the use of generative AI for news has tripled from 2024 to 2026 in the countries for which that data is available). Copying vast quantities of expressive content to divorce original news publishers from their readers simply cannot be fair use. This conclusion is so self-evident that not one of the nearly five dozen amicus submissions or the DOJ statement of interest has argued to the contrary.

Plaintiffs' prior briefing addresses the applicable legal standard and foundation for why RAG is not fair use, as set forth below:

| Brief | Section |
|---|---|
| NP-Mot | Section IV (pp. 50-75) |
| NP-Opp | Section I.B (pp. 32-45) |
| NP-Reply | Section II.B (pp. 13-17, 22-26) |

But in view of OpenAI's arguments that Plaintiffs "conflate training with Browse," OAI-Opp-6, Plaintiffs address a few specific points regarding OpenAI's copying of Plaintiffs' content for grounding.

Factor 1: ChatGPT does not transform the grounded content into something new. Instead, OpenAI's conversation logs reveal that ChatGPT often copies content for RAG and then reproduces that content verbatim in the output shown to the user. *E.g.*, NP-Supp'l-R56.1-1863,1869,1872. In fact, Plaintiffs' expert found that ChatGPT [redacted] NP-SOF-1010–1012, 1032–1033. But even when it does not do so, OpenAI's copying News Plaintiffs' articles through

RAG is not transformative because it serves the same purpose as the original: delivering news to human readers.

Factor 3: OpenAI copies entire articles as part of the RAG process. *See supra* Section II.C. [redacted] *See supra* Section II.C.1. OpenAI also scrapes entire webpages usings its bots. *See supra* Section II.C.2. And OpenAI approved and supported CustomGPTs that OpenAI admitted scrape entire webpages, even from behind paywalls. *See supra* Section II.C.3.

Factor 4: As explained in prior briefing, the factor four analysis addresses "not merely the specific instances of copying" but also "the category of a defendant's conduct." *American Geophysical Union v. Texaco Inc.*, 60 F.3d 913, 927 n.12 (2d Cir. 1994). This Court must consider the harms that would occur if "the sort of copying in which [OpenAI] engaged were to become a widespread practice." *Andy Warhol Found. for Visual Arts, Inc. v. Goldsmith*, 11 F.4th 26, 50 (2d Cir. 2021). Here, OpenAI's infringement for RAG is already widespread, as proven through OpenAI's output log productions. Should this Court treat the 20 million log sample as representative—notwithstanding its deficiencies (Section II.D.3)—the sample still demonstrates that OpenAI engages in substantial and systematic copying of Plaintiffs' articles for RAG.

Even where copying for grounding does not result in *another* copy being displayed to users, OpenAI's fair use defense fails. As Plaintiffs have elsewhere explained, the issue under the fourth fair use factor is whether the copying results in the creation of a market substitute, with no requirement that the substitute itself be a copy. NP-Opp-23–24; NP-Reply-15–16. *Thomson Reuters Enter. Ctr. GmbH v. ROSS Intel. Inc.*, 193 F.4th 271, 288–89 (3d Cir. 2026) (finding ROSS's copying of Westlaw headnotes to train AI for a rival legal research tool harmed both

existing and potential markets for those works). As the *Kadrey* court put it, "indirect substitution is still substitution." *Kadrey v. Meta Platforms, Inc.*, 788 F. Supp. 3d 1026, 1054 (N.D. Cal. 2025).

OpenAI has consistently invoked statements that substitution must relate to "expression" to argue that Second Circuit law permits them to copy News Plaintiffs' expressive works to substitute for them, provided they modify the form of expression shown to users. OAI-Reply-2,5. This is a misreading of the case law.

OpenAI invokes *Arica v. Palmer*, for example, to argue that "[h]arm from works that do not republish protected expression from the original is not cognizable." OAI-Reply-5. But *Arica* was a case in which the defendant copied only "marginal amounts of expressive content." 970 F.2d 1067, 1073-74, 1079 (2d Cir. 1992). The court found that whether defendant's book was substitutive should be analyzed based only on the three one-sentence excerpts that defendant copied, not the defendant's entire book. *Id.* at 1078 ("[T]he relevant market effect is that which stems from defendant's use of plaintiff's 'expression,' <u>**not that which stems from defendant's work as a whole**</u>." (emphasis added)). The point was that the defendant copied very few of the plaintiff's words, and so was "perfectly entitled to create a competing work" using her own. *Id.* Put differently, the secondary work did <u>not</u> serve as a substitute for the original—nor was the entire original work copied.

Here, however, there is no dispute that OpenAI copied all or substantially all the text of News Plaintiffs' articles (including their expression) to provide responses to users. Def-Resp-NP-SOF-1004-06. The fact that users did not always see this full-scale copying is not some sort of escape hatch from the ordinary rules of copyright law, and no case holds otherwise. To the contrary, the only court to squarely address the issue has made clear that copying expressive content to

create a competing product is not fair use even when that copied expression is not shown to users. *See Thomson Reuters*, 193 F.4th at 288–89.

2. *Outputting Plaintiffs' works is not fair use.*

OpenAI has never argued that copying Plaintiffs' works for display in chatbot outputs is fair. Nor would that argument be credible. Courts have repeatedly rejected claims that it is fair use to copy protected works to make them available in a different product or format. *Hachette Book Group, Inc. v. Internet Archive*, 115 F.4th 163, 190 (2d Cir. 2024) (finding no fair use where defendant offered "effectively the same product" as rightsholders—books—and made them available for free); *Associated Press v. Meltwater U.S. Holdings, Inc.*, 931 F. Supp. 2d 537, 556–57 (S.D.N.Y. 2013) (finding copying articles to provide the "online equivalent to the traditional news clipping service" not fair); *Nihon*, 166 F.3d at 70–71; *Wainwright Securities Inc.*, 558 F.2d at 96.

ChatGPT has generated outputs that infringe Plaintiffs' works directly, and has done so at a substantial scale, *supra* Section II.D.1. Its only excuse has been that such "regurgitations" of News Plaintiffs' content are rare when compared with the vast number of ChatGPT logs that exist. OAI-Mot-9. But the size of OpenAI's business does not insulate it from liability for failing to ask permission before copying news publishers' content.

## IV. <u>Conclusion</u>

News Plaintiffs respectfully ask the Court to enter summary judgment that OpenAI has infringed News Plaintiffs' Asserted Works during the RAG process and in outputs.

Dated: November 25, 2026

*<u>/s/ Ian Crosby</u>*
Ian Crosby (*pro hac vice*)
Katherine M. Peaslee (*pro hac vice*)

Susman Godfrey L.L.P.
401 Union Street, Suite 3000
Seattle, WA 98101
Telephone: (206) 516-3880
Facsimile: (206) 516-3883
icrosby@susmangodfrey.com
kpeaslee@susmangodfrey.com

Davida Brook (*pro hac vice*)
Emily K. Cronin (*pro hac vice*)
Adnan Muttalib (*pro hac vice*)
Susman Godfrey L.L.P.
1900 Ave of the Stars, Suite 1400 Los Angeles, CA
90067 Telephone: (310) 789-3100
Facsimile: (310) 789-3150
dbrook@susmangodfrey.com
ecronin@susmangodfrey.com
amuttalib@susmangodfrey.com

Elisha Barron (5036850)
Zachary B. Savage (ZS2668)
Alexander Frawley (5564539)
Eudokia Spanos (5021381)
Susman Godfrey L.L.P.
One Manhattan West
New York, NY 10001 Telephone: (212) 336-8330
Facsimile: (212) 336-8340
ebarron@susmangodfrey.com
zsavage@susmangodfrey.com
afrawley@susmangodfrey.com
espanos@susmangodfrey.com

Steven Lieberman (SL8687)
Jennifer B. Maisel (5096995)
Kristen J. Logan (*pro hac vice*)
Rothwell, Figg, Ernst & Manbeck, P.C.
901 New York Avenue, N.W., Suite 900 East
Washington, DC 20001
Telephone: (202) 783-6040
Facsimile: (202) 783 6031
slieberman@rothwellfigg.com
jmaisel@rothwellfigg.com
klogan@rothwellfigg.com

*Attorneys for Plaintiff*
*The New York Times Company*

/s/ *Steven Lieberman*
Steven Lieberman (SL8687)
Jennifer B. Maisel (5096995)
Robert Parker (*pro hac vice*)
Jenny L. Colgate (*pro hac vice*)
Alexandra Hughes (*pro hac vice*)
Mark Rawls (*pro hac vice*)
Michael H. Jones (*pro hac vice*)
Kristen J. Logan (*pro hac vice*)
Bryan B. Thompson (6004147)
Mary L. Mullins (*pro hac vice*)
ROTHWELL, FIGG, ERNST & MANBECK, P.C.
901 New York Avenue, N.W., Suite 900 East
Washington, DC 20001
Telephone: (202) 783-6040
Facsimile: (202) 783-6031
slieberman@rothwellfigg.com
jmaisel@rothwellfigg.com
rparker@rothwellfigg.com
jcolgate@rothwellfigg.com
ahughes@rothwellfigg.com
mrawls@rothwellfigg.com
mjones@rothwellfigg.com
klogan@rothwellfigg.com
bthompson@rothwellfigg.com
mmullins@rothwellfigg.com

*Attorneys for Daily News Plaintiffs*

/s/ *Matthew Topic*
Jon Loevy (pro hac vice)
Michael Kanovitz (*pro hac vice*)
Matthew Topic (*pro hac vice*)
Thomas Kayes (*pro hac vice*)
Steven Art (*pro hac vice*)
Kyle Wallenberg (pro hac vice)
Shelley Geiszler (*pro hac vice*)
LOEVY & LOEVY
311 North Aberdeen, 3rd Floor
Chicago, IL 60607
312-243-5900 (p)
312-243-5902 (f)
jon@loevy.com
mike@loevy.com
matt@loevy.com
kayes@loevy.com

steve@loevy.com
wallenberg@loevy.com
geiszler@loevy.com

Stephen Stich Match (No. 5567854)
Lauren Sonnenberg (*pro hac vice*)
LOEVY & LOEVY
222 Sutter Street, Suite 600A
San Francisco, CA 94108
(312) 243-5900
match@loevy.com
sonnenberg@loevy.com

*Attorneys for Plaintiffs The Center for Investigative Reporting, Inc. and The Intercept Media, Inc.*

/s/ *Lance Koonce III*
Lacy H. ("Lance") Koonce, III
Matthew A. Leish
Brendan Kehoe
Lucy Hoffman
Maya Katalan Klaris
Law PLLC
161 Water Street
New York, NY 10038
Telephone: (646) 779-4882
lance.koonce@klaris.com
matthew.leish@klarislaw.com
brendan.kehoe@klarislaw.com
lucy.hoffman@klarislaw.com
maya.katalan@klarislaw.com

Guy Ruttenberg (*pro hac vice*)
Ruttenberg IP Law,
A Professional Corporation
1801 Century Park East Suite 1920
Los Angeles, CA 90067
Telephone: (310) 627-2270
ZD-AICopyright@ruttenbergiplaw.com

John R. Cuti
Cuti Frisch PLLC
233 Broadway, Suite 1720
New York, NY 10279

*Attorneys for Plaintiffs Ziff Davis, Inc., Ziff Davis, LLC, IGN Entertainment, Inc., Everyday Health Media, LLC, Mashable, Inc., and CNET Media, Inc.*

**CERTIFICATE OF WORD COMPLIANCE**

Pursuant to Local Civil Rule 7.1(c), the foregoing Memorandum of Law complies with the Court's November 12, 2026, Order (ECF 2518) as it contains 7,497 words, according to the word processing program used to prepare it.

*/s/ Ian Crosby*
Ian Crosby